BINGHAM McCUTCHEN LLP
DAVID M. BALABANIAN (SBN 37368)
david.balabanian@bingham.com
KRISTEN A. PALUMBO (SBN 215857)
kristen.palumbo@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Attorneys for Creditor
LIQUIDBITS CORP.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re:

HASHFAST TECHNOLOGIES, LLC,

    Debtor.

Case No. 14-30725 DM

Chapter 7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP. FOR ENTRY OF AN ORDER APPOINTING A CHAPTER 7 TRUSTEE PURSUANT TO SECTION 303(G) OF THE BANKRUPTCY CODE, OR FOR ALTERNATIVE RELIEF**

Creditor Liquidbits Corp. ("Liquidbits"), through its undersigned attorneys, hereby submits this Memorandum of Points and Authorities in Support of its Motion for Entry of an Order Appointing a Chapter 7 Trustee Pursuant to Section 303(g) of the Bankruptcy Code, or for Alternative Relief (the "Motion"). In support of the Motion, Liquidbits also submits the accompanying *Declaration of Gregory Bachrach in Support of Emergency Motion of Liquidbits Corp. for Entry of an Order Appointing a Chapter 7 Trustee Pursuant to Section 303(g) of the*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725  Doc# 9  Filed: 05/21/14  Entered: 05/21/14 13:43:14  Page 1 of 11

*Bankruptcy Code, or for Alternative Relief* ("Bachrach Declaration"), *Declaration of Willem van Rooyen in Support of Emergency Motion of Liquidbits Corp. for Entry of an Order Appointing a Chapter 7 Trustee Pursuant to Section 303(g) of the Bankruptcy Code, or for Alternative Relief* ("van Rooyen Declaration"), and *Declaration of Kristen A. Palumbo in Support of Emergency Motion of Liquidbits Corp. for Entry of an Order Appointing a Chapter 7 Trustee Pursuant to Section 303(g) of the Bankruptcy Code, or for Alternative Relief* ("Palumbo Declaration"), and respectfully states as follows:

## JURISDICTION

This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409. The statutory bases for the relief requested in the Motion are sections 303(f) and 303(g) of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), and Rule 2001 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The urgent appointment of an interim Chapter 7 trustee is crucial to this case to ensure that there is any value left in the bankruptcy estate if and when an order for relief is entered. At present, the alleged debtor, Hashfast Technologies LLC ("Hashfast"), is seeking to transfer all or substantially all of its assets out of the reach of creditors for little or no value. Hashfast has sought to enter into a "joint venture" with at least one bitcoin mining company under which Hashfast would either transfer all of its current inventory of bitcoin mining chips to the joint venture, outside of the United States, or use such inventory to mine for bitcoins and then transfer the bitcoins out of the United States so that their ownership would be "untraceable." This conduct not only flouts applicable fraudulent transfer law, but would be in direct violation of a prepetition order from an emergency arbitrator that enjoins Hashfast from disposing of its inventory.

Compounding this loss, the value of the bitcoin mining technology that Hashfast manufactures is depreciating at an alarming rate. Because of the nature of bitcoin technology, the

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725    Doc# 9    Filed: 05/21/14    Entered: 05/21/14 13:43:14    Page 2 of 11

value of the majority of Hashfast's product declines approximately 18% every 10 days.

For all of these reasons, the urgent appointment of an interim Chapter 7 trustee to take all appropriate steps to realize the value of Hashfast's inventory -- the sole source of recovery for Hashfast's creditors -- is critical to ensure that Hashfast's estate is not dissipated before an order for relief can be entered. In the alternative, pending the Court's consideration of the appointment of an interim Chapter 7 trustee or until an interim Chapter 7 trustee is appointed, Liquidbits requests that the Court confirm that the order of the emergency arbitrator is still binding on Hashfast, or that the Court issue a like order as permitted by Section 303(f) of the Bankruptcy Code and that the Court in any event direct Hashfast to provide an accounting of all of its receipts and disbursements since the Petition Date to determine whether all proceeds and other assets have been used to support its business and were not diverted to third parties.

## BACKGROUND

Hashfast manufactures and sells bitcoin mining technology and hardware. Bachrach Decl. at ¶ 3; van Rooyen Decl. at ¶ 3. Hashfast's assets are comprised primarily of its inventory of "Golden Nonce Chips." Palumbo Decl., Ex. D at 2 (Hashfast's "assets are primarily inventory of its 'Golden Nonce' mining chips.").

Bitcoins are a form of cryptographic currency which are widely traded in real time at exchanges all over the world. Bachrach Decl. at ¶ 4; van Rooyen Decl. at ¶ 4. Bitcoins are created in accordance with a data protocol which is decentralized, under no central control, and accordingly, virtually impossible for any party to change. *Id*. This protocol establishes the process, known as "mining," by which new bitcoins are created through a competitive "winner takes all" race to calculate or decode "blockchains." *Id*. The protocol is designed to increase the processing difficulty for mining bitcoins each month in order to account for the continuing increases in data processing technology. *Id*. Bitcoin mining requires powerful and high-functioning equipment capable of quickly running complex calculations. Bachrach Decl. at ¶ 4.

Liquidbits is a data processing company for bitcoin mining operations. Bachrach Decl. at ¶ 2. On October 3, 2013, Liquidbits and Hashfast entered into a written agreement (the "Order

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725    Doc# 9    Filed: 05/21/14    Entered: 05/21/14 13:43:14    Page 3 of 11

Confirmation Agreement"), for the purchase by Liquidbits of certain bitcoin mining equipment manufactured by Hashfast. *Id.* at ¶ 7. The Order Confirmation Agreement is attached as Exhibit 1 to the Bachrach Declaration. Pursuant to the Order Confirmation Agreement, in exchange for $6 million in up-front payments made by Liquidbits,[1] Hashfast agreed to deliver to Liquidbits 2,500 Sierra units (systems used to mine bitcoins) manufactured by Hashfast. Bachrach Decl., Ex. 1 at §§ 1, 2. The Order Confirmation Agreement incorporates the Hashfast Terms of Sale and attaches them as Exhibit 1 thereto. Paragraph 15(b) of the Hashfast Terms of Sale states that any claim, dispute or controversy between the buyer and Hashfast "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION."

Beginning in October 2013, Liquidbits made or caused to be made $6 million in payments to Hashfast under the Order Confirmation Agreement. Bachrach Decl. at ¶ 7. By March 2014, Hashfast had delivered to Liquidbits only a small portion of the equipment that it had agreed to deliver in the Order Confirmation Agreement. *Id.*

In an effort to contain the considerable and continuing economic damages being inflicted on Liquidbits by the late delivery and non-performance by Hashfast, in March 2014, Liquidbits agreed to amend the Order Confirmation Agreement. *Id.* at ¶ 8. On March 4, 2014, the parties entered into a Memorandum of Understanding (the "MOU"), attached as Exhibit 2 to the Bachrach Declaration. Among other things, the MOU converted the equipment (2,500 Sierra units) identified in the original agreement into 30,000 Golden Nonce Chips (the "Chips").[2] Bachrach Decl., ¶ 8 and Ex. 2 at p.2. Since the MOU was executed, however, Hashfast has only delivered 2,000 of the Chips that Liquidbits purchased. Bachrach Decl. at ¶ 9.

---

[1] In addition to those up-front payments, Liquidbits agreed to pay Hashfast twenty-five percent (25%) of the operational revenues resulting from the commercial use of the units to be delivered. Bachrach Decl., Ex. 1 at § 3.

[2] To get the Chips, which are cut from wafers, to a form that can be used for bitcoin mining, the Chips need to be composited onto substrates. Substrates are mounted on mining boards and then built into systems (Sierra units). That process typically takes approximately 30 days. Bachrach Decl. at ¶ 11.

4

Despite prolonged efforts by Liquidbits to obtain the remaining 28,000 Chips that it had purchased, Hashfast has repeatedly refused to deliver them to Liquidbits or to provide Liquidbits with a refund of the amounts paid for the undelivered Chips. *See* Bachrach Decl. at ¶ 10.

As a result of the protocol by which new bitcoins are created, the value of the Chips is subject to rapid degradation. *See* Bachrach Decl. at ¶¶ 5-6. The value of the equipment used in bitcoin mining, including the Chips and the wafers used to make them, declines approximately 18% every 10 days. *Id*. The 28,000 Chips that Liquidbits purchased but never received from Hashfast will be valueless in less than 90 days. *See id.* at ¶ 13; *see also* van Rooyen Decl. at ¶ 7.

Because of the rapid depreciation in the value of the Chips, and pursuant to the Hashfast Terms of Sale, on April 14, 2014, Liquidbits filed a demand for arbitration with the American Arbitration Association (the "Arbitration"). Liquidbits sought emergency injunctive relief to prevent Hashfast's sale, transfer or delivery of the Chips, or the wafers from which they are cut, to third parties. Palumbo Decl. at ¶ 2.

On May 8, 2014, an emergency arbitrator issued *Emergency Interim Order No. 1* (the "Emergency Order"), a copy of which is attached as Exhibit A to the Palumbo Declaration. The Emergency Order unequivocally restrains and enjoins Hashfast "from (i) selling or otherwise transferring ownership of, (ii) giving possession, custody or control of, and/or (iii) granting any security interest in, all or any portion of Hashfast's current inventory of Golden Nonce Chips (and wafers from which the Chips are cut) up to and including the sum of 28,000 Golden Nonce Chips … until further Order of the Emergency Arbitrator or the Arbitration Panel after same is convened and approved." Palumbo Decl., Ex. A at 9.

Liquidbits' claim in the Arbitration is not the only claim pending against Hashfast. In 2014, at least four additional arbitrations have been filed against Hashfast, and two federal lawsuits are pending, both accusing Hashfast of fraud. Palumbo Decl., Ex. C. at p. 1; *see also* Palumbo Decl., Ex. F, Ex. G at ¶¶ 30-34, Ex. H at ¶¶ 53-56. Hashfast's financial and legal troubles have been reported in the press. Palumbo Decl., Exs. C, D, E. As the news reports recount, in addition to claims liked those made by Liquidbits, related to delayed or failed orders,

and other failed promises, "[m]any customers have accused [Hashfast] of outright fraud." Palumbo Decl., Ex. D at p. 1, Ex. E at p.2.

In addition, in April 2014, Hashfast's then acting CFO reported to Liquidbits that Hashfast's "accounting was a shambles and that millions of dollars could not be accounted for." Bachrach Decl. at ¶ 16.

On May 9, 2014 (the "Petition Date"), an involuntary petition seeking relief under Chapter 7 of the Bankruptcy Code was filed against Hashfast by certain of its other creditors. On May 12, 2014, Hashfast filed *Hashfast Technology LLC's Notice and Suggestion of Bankruptcy* in the Arbitration, notifying the tribunal that the Arbitration was automatically stayed pending further order of this Bankruptcy Court pursuant to section 362 of the Bankruptcy Code. Palumbo Decl., Ex. B.

Despite the clear, valid and binding terms of the Emergency Order in the Arbitration, which remains in force regardless of the filing of the involuntary petition, Hashfast is currently selling or seeking to dispose of its entire inventory, including the Chips, for little or no consideration. *See* van Rooyen Decl. at ¶¶ 10-11; *see also* Bachrach Decl. at ¶ 15.

On or about May 17, 2014, the Chief Technology Officer of Hashfast, Simon Barber, proposed a "joint venture" between DigiMex Ltd ("DigiMex")[3] and Hashfast or Hashfast's principal shareholders to Willem van Rooyen, the Managing Director of DigiMex. van Rooyen Decl. at ¶ 10. Among the terms of the proposed "joint venture" were the transfer of all or substantially all of the assets of Hashfast (in the form of its entire inventory of hardware) to a new entity. *Id.* The consideration to be paid for this transfer of assets ranged from a tiny fraction of the market value (for power supplies) to none at all for Hashfast's entire inventory of Chips. *Id.* Mr. Barber described this consideration as "liquidation pricing." *Id.* Based on the operations proposed and the nature of the involvement of DigiMex, which operates outside the United

---

[3] DigiMex is a computational processing company for bitcoin mining operations. van Rooyen Decl. at ¶ 2.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725    Doc# 9    Filed: 05/21/14    Entered: 05/21/14 13:43:14    Page 6 of 11

States, Mr. van Rooyen believes that Mr. Barber meant that Hashfast's assets would be transferred out of the United States. *Id.*

In the same conversation, Mr. Barber also proposed, as an alternative, that the current assets of Hashfast, *i.e.* the Chips, could be constructed into a joint "mining" operation, the productive output of which would be bitcoins. *Id.* at ¶ 11. These bitcoins, once created, could then be transferred outside of the United States and their ownership would be untraceable. *Id.*

Liquidbits has also separately learned that, since the issuance of the Emergency Order in the Arbitration and the Petition Date, Hashfast has offered to sell its Chips to another bitcoin mining company for $250 per Chips. Bachrach Decl. at ¶ 15. This price is well-below the current market price for the Chips. *Id.* Indeed, Hashfast personnel have represented that each Chip has a market value of $450 or $600. Bachrach Decl., at ¶ 14; van Rooyen Decl, at ¶ 9.

Based on all of these facts, Liquidbits has serious concerns that Hashfast is currently seeking to move its assets out of the reach of creditors before an order for relief can be entered.

**RELIEF REQUESTED**

By the Motion, Liquidbits requests entry of an Order, pursuant to section 303(g) of the Bankruptcy Code, directing the United States trustee to appoint an interim Chapter 7 trustee to take all appropriate steps to realize the value of the Chips as expeditiously as possible in order to maximize their value to the estate and Hashfast's creditors.[4]

In the alternative, or until such time as an interim Chapter 7 trustee may be appointed, Liquidbits requests that the Court (i) confirm that the Emergency Order is still binding on Hashfast, or (ii) issue a like order as permitted by section 303(f) of the Bankruptcy Code enjoining Hashfast from (x) selling or otherwise transferring ownership of, (y) giving possession,

---

[4] Fed. R. Bankr. P. 2001(b) provides that "[a]n interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under § 303(i) of the Code." In light of the facts of this case, Liquidbits requests that the Court waive this bond requirement.

custody or control of, and/or (z) granting any security interest in, all or any portions of the Chips and wafers from which the Chips are cut, until further order of the Bankruptcy Court.

Liquidbits also requests that this Court direct Hashfast to provide an accounting of all of its receipts and disbursements since the Petition Date to verify that all proceeds and other assets are being used to support its business and not being diverted to third parties.

**BASIS FOR RELIEF**

A. **Appointment Of An Interim Chapter 7 Trustee Is Necessary To Prevent Immediate And Irreparable Loss To The Estate.**

While section 303(f) of the Bankruptcy Code generally permits a putative debtor to continue to run its business until the order for relief is entered, "[s]ection 303(g) provides a remedy to prevent an alleged debtor dissipating his or her assets by allowing a party in interest to seek appointment of an interim trustee during the involuntary 'gap period.'" *In re Levin*, Nos. 10-27946-BKC-RBR, 10-33696-BKC-RBR, 2011 WL 1469004, at *2 (Bankr. S.D. Fla. 2011). That section states, in relevant part:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and **if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee** under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g) (emphasis added). "Thus, interim trustees have been installed in instances where the court has found that it would protect and preserve property of the estate, *In re Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr. S.D. Cal. 1981); *In re Reed*, 11 B.R. 755, 757 (Bankr. S.D.W. Va. 1981); prevent concealment, waste or loss of assets by the alleged debtor, *In re Alpine Lumber & Nursery*, 13 B.R. at 979; *In re Rush*, 10 B.R. 518, 523 (Bankr.N.D.Ala.1980); or prevent irreparable harm which would likely result between the time of the filing of the petition and the scheduled hearing, *In re Reed*, 11 B.R. at 757." *In re DiLorenzo*, 161 B.R. 752, 754 n. 8 (Bankr. S.D.N.Y. 1993). Here, the appointment of an interim trustee is crucial for each of these reasons.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725    Doc# 9    Filed: 05/21/14    Entered: 05/21/14 13:43:14    Page 8 of 11

With each passing day, the Chips that are in Hashfast's inventory continue to depreciate rapidly. While this fact alone might justify the appointment of an interim trustee to ensure their quick and orderly liquidation so that the estate does not suffer unnecessary losses, the harm is compounded by Hashfast's desperate actions. Despite applicable law and the existence of a valid, enforceable Emergency Order enjoining Hashfast from disposing of the Chips, Hashfast is nonetheless attempting to move all of its assets out of the reach of creditors. *See* van Rooyen Decl. at ¶ 10. Hashfast's attempt to establish a "joint venture" with DigiMex outside of the United States and arguably outside the jurisdiction of this Court and its attempts to sell off Chips at prices well below market value, raises serious concerns that Hashfast is seeking to dispose of its entire inventory and divert all proceeds to its shareholders or other insiders. *See id.* at ¶¶ 10-11. If Hashfast is permitted to continue unchecked, then Liquidbits believes that it will siphon all of its estate's value out of the reach of its creditors before an order for relief can be entered.

Even if Hashfast were merely continuing to sell its Chips in the ordinary course of business, Liquidbits fears that Hashfast may attempt to divert the proceeds of any such sales away from its estate. Just last month, Hashfast's then acting CFO informed Liquidbits that Hashfast's "accounting was a shambles and that millions of dollars could not be accounted for." Bachrach Decl. at ¶ 16. Hashfast has been sued for fraud in two federal lawsuits and at least one arbitration, and is widely accused by its customers in the press of committing fraud. Palumbo Decl., Ex. D at p. 1, Ex. E at p.2, Ex. F, Ex. G at ¶¶ 30-34, Ex. H at ¶¶ 53-56.

To prevent Hashfast's estate from suffering further harm, and to ensure that creditors are not subjected to greater losses than necessary, it is crucial that this Court order the appointment of a Chapter 7 trustee. Absent the immediate appointment of a trustee to realize the value of the Chips, there may be nothing left in the estate to liquidate by the time an order for relief is entered.

B. **In The Alternative, Or Until A Chapter 7 Trustee Is Appointed, Hashfast Must Be Enjoined From Selling The Chips To Preserve Estate Value and Must Provide an Accounting.**

Section 303(f) of the Bankruptcy Code states: "[n]otwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725   Doc# 9   Filed: 05/21/14   Entered: 05/21/14 13:43:14   Page 9 of 11

business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f).

Based on a plain reading of this provision, Liquidbits believes that the Emergency Order remains in full force and effect "as if" this involuntary case "had not been commenced." Under the Emergency Order, Hashfast is enjoined from, *inter alia*, selling or otherwise transferring ownership of the Chips. Hashfast's conduct in attempting to dispose of its assets since the Petition Date directly violates the Emergency Order.

Additionally, section 303(f) permits this Court "to stay any business transactions it fears will jeopardize the rights of creditors." *In re Wilson*, 62 B.R. 43, 46 (E.D. Tenn. 1985); *see also In re Dilley*, 378 B.R. 1, 8 (Bankr. D. Me. 2007) (order restricting debtor's use of property under section 303(f) has the effect of a preliminary injunction); *In re Gaudreault*, 315 B.R. 1, 5 (Bankr. D. Mass. 2004) (same) (quoting *Wilson*); *cf. In re David*, 23 B.R. 773, 777-78 (9th Cir. BAP 1982) (section 303(f) permits a bankruptcy court to take custody of proceeds of sale of real property).

Here, Hashfast's actions since this involuntary case was commenced -- flouting the Emergency Order by attempting to transfer all or substantially all of its assets out of the United States for little or no consideration -- are clearly jeopardizing the rights of creditors like Liquidbits. In the event that this Court does not immediately appoint an interim Chapter 7 trustee, Liquidbits seeks an order (i) confirming that the Emergency Order is still binding on Hashfast or, alternatively, (ii) enjoining Hashfast from continuing to sell or otherwise dispose of the Chips and wafers from which they are cut or any other inventory under section 303(f) of the Bankruptcy Code, and (iii) directing Hashfast to provide an accounting of all of its receipts and disbursements since the Petition Date to determine whether all proceeds and other assets have been used to support its business and were not diverted to third parties.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725   Doc# 9   Filed: 05/21/14   Entered: 05/21/14 13:43:14   Page 10 of 11

**CONCLUSION**

WHEREFORE, Liquidbits respectfully requests that the Court enter an Order (i) directing the United States Trustee to appoint an interim Chapter 7 trustee, or, in the alternative or until an interim Chapter 7 trustee is appointed, (ii) enjoining Hashfast from continuing to sell or otherwise dispose of the Chips or wafers from which they are cut, (iii) directing Hashfast to provide an accounting of all of its receipts and disbursements since the Petition Date to determine whether all proceeds and other assets have been used to support its business and were not diverted to third parties, and (iv) granting such other and further relief as is just and proper.

DATED: May 21, 2014

Respectfully submitted,

BINGHAM McCUTCHEN LLP

By: /s/ Kristen A. Palumbo
David M. Balabanian
Kristen A. Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
T: 415.393.2000
F: 415.393.2286
david.balabanian@bingham.com
kristen.palumbo@bingham.com

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP.

Case: 14-30725    Doc# 9    Filed: 05/21/14    Entered: 05/21/14 13:43:14    Page 11 of 11