UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re: | Case No. 14-30725 DM |
|---|---|
| HASHFAST TECHNOLOGIES, LLC, | Chapter 7 |
| Debtor. | |

**DECLARATION OF WILLEM VAN ROOYEN IN SUPPORT OF EMERGENCY MOTION OF LIQUIDBITS CORP. FOR ENTRY OF AN ORDER APPOINTING A CHAPTER 7 TRUSTEE PURSUANT TO SECTION 303(G) OF THE BANKRUPTCY CODE, OR FOR ALTERNATIVE RELIEF**

I, Willem van Rooyen, declare as follows:

1. I am the Managing Director of DigiMex Ltd ("DigiMex"), chartered in the British Virgin Islands, domiciled in Hong Kong, and a principal place of operation in Canada. I have been the Managing Director of DigiMex since September 2013. I have personal knowledge of the matters set forth in this declaration and if called as a witness I could and would testify competently to them.

2. DigiMex is a computational processing company for bitcoin mining operations.

3. Hashfast Technologies LLC ("Hashfast") manufactures and sells bitcoin mining technology and hardware.

1

4. Bitcoins are a form of cryptographic currency which are widely traded in real time at exchanges all over the world. Bitcoins are created in accordance with a data protocol which is decentralized, under no central control, and accordingly, virtually impossible for any party to change. This protocol establishes the process, known as "mining," by which new bitcoins are created through a competitive "winner takes all" race to calculate or decode "blockchains." The protocol is designed to increase the processing difficulty for mining bitcoins each month in order to account for the continuing increases in data processing technology.

5. On 12 August 2013, DigiMex and Hashfast entered into a written agreement for the purchase by DigiMex of certain equipment manufactured by Hashfast and used in bitcoin mining. DigiMex made all specified payments to Hashfast under the original agreement. Despite this, Hashfast delivered the specified equipment, substantially behind schedule, much of which was defective.

6. The Golden Nonce Chips are unique in design and have unique capabilities. No equivalent chip exists in the general marketplace. "ASIC" is an acronym for "Application Specific Integrated Circuit," which is essentially a chip built for a dedicated purpose (i.e., a specific application). The Chips are high-performing ASICs, which means that they are designed for a dedicated purpose -- i.e., bitcoin mining. ASICs that are not specifically designed for bitcoin mining cannot be used to mine bitcoins.

7. As a consequence of the protocol by which new bitcoins are created, the Golden Nonce Chips will be valueless within the next 90 days. The network is a competitive market. More hardware is deployed into the bitcoin space every day, which increases competition and consequently reduces the value of the reward. The cost of electricity of running the mining equipment, and the physical hosting space for that equipment, after a certain period of time (here, 90 days) end up exceeding the value of the reward.

8. After the investment of substantial time and money over a period of ten weeks, DigiMex was able to engineer corrections to the various defective element of the

products delivered by Hashfast. Pursuant to the terms of the contract, DigiMex, sought compensation for the costs imposed by the late delivery and non-functional equipment. In response to these demands, Eduardo DeCastro (the Chief Executive Officer of Hashfast) committed to provide a further 600 Terra-Hash of equipment. This equipment has never been received.

9. In earlier communications with personnel at Hashfast, it had been represented to me that Golden Nonce Chips had a market value of in excess of $450.00 US each, and power supply units had a market value of approximately $125.00 US each..

10. On or about May 17, 2014, I had an in-person conversation with Simon Barber (the Chief Technology Officer of Hashfast) at the BitCoin conference in Amsterdam, Holland during which Mr. Barber proposed a "joint venture" between DigiMex and Hashfast or the principal shareholders of Hashfast. Among the terms of the proposed "joint venture" were the transfer of all, or substantially all of the assets of Hashfast (in the form of its entire inventory of hardware) to a new entity. The consideration to be paid for this transfer of assets ranged from a tiny fraction of the market value (for power supplies) to none at all for its entire inventory of Golden Nonce Chips. Mr. Barber described this consideration as "liquidation pricing." While not explicitly stated, based on the operations proposed and the nature of the involvement of DigiMex which operates in outside the United States, I understood this to mean that these assets would be transferred out of the United States.

11. In this same conversation, of on or about May 17, 2014, Mr. Barber proposed that in the alternative to the "joint venture," the current assets of Hashfast, could be constructed into a joint "mining" operation, the productive output of which would be Bitcoins. These Bitcoins, once created, can be transferred beyond US jurisdiction and their ownership can be untraceable.

12. Neither, I nor any company or entity of which I am the beneficial owner of any portion thereof have any commercial relationship with Liquidbits Corporation or its

principals or shareholders, nor am I the beneficial owner of any portion of any entity which is also owned in full or in part by Liquidbits, its principals or shareholders

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration was executed on May 20, 2014.

_____
Willem van Rooyen