KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

[Proposed] Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | (Proposed to be) Jointly Administered with: |
| | Case No. 14-30866 |
| Debtor and Debtor-In-Possession | Chapter 11 |
| Affects HASHFAST LLC, a Delaware limited liability company, | **DECLARATION OF MONICA HUSHEN IN SUPPORT OF DEBTORS' CHAPTER 11 FILINGS AND FIRST DAY MOTIONS** |
| Debtor and Debtor-In-Possession | |

I, Monica Hushen, hereby declare under penalty of perjury,

1. I am the Chief Financial Officer of HashFast Technologies LLC ("HashFast Technologies") and authorized representative of HashFast LLC ("HashFast" and, together with

1. HashFast Technologies, the "<u>Debtors</u>").[1] I am generally familiar with the Debtors' day-to-day operations, business affairs, and books and records.

2. An involuntary petition under chapter 7 of the Bankruptcy Code was filed against HashFast Technologies on May 9, 2014 [Doc. No. 1]. The involuntary summons was served on May 13, 2014, by United States Mail [Doc. No. 5]. On June 3, 2014, HashFast Technologies filed its Conditional Consent to an Order for Relief [Doc. No. 36] and its Motion to Convert to Chapter 11 [Doc. No. 35]. The Court entered its order converting HashFast Technologies' case to one under chapter 11 on June 5, 2014 [Doc. No. 40].

3. On the date hereof (the "<u>Petition Date</u>"), HashFast filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") (collectively, these "<u>Chapter 11 Cases</u>").

4. The Debtors are operating their business and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. In order to enable the Debtors to minimize the adverse effects of the commencement of the Chapter 11 Cases on their business operations, the Debtors have requested various types of relief in certain "first day" motions (each, a "<u>First Day Motion</u>" and collectively, the "<u>First Day Motions</u>"). The First Day Motions seek relief aimed at, among other things, ensuring the continuation of the Debtors' cash management system and other business operations without interruption. Approval of these First Day Motions will aid in maintaining the Debtors' day-to-day business operations with minimal disruption and will be critical to the success of these Chapter 11 Cases and the Debtors' reorganization efforts.

6. I submit this declaration (the "<u>Declaration</u>") in support of the First Day Motions. I am familiar with the contents of each First Day Motion (including the exhibits thereto), and I

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion (as hereinafter defined).

2

Case: 14-30725    Doc# 54    Filed: 06/06/14    Entered: 06/06/14 19:18:11    Page 2 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

believe that the relief sought in each First Day Motion (i) is necessary to enable the Debtors to operate in chapter 11 with minimum disruption or loss of productivity or value; (ii) constitutes a critical element in achieving a successful bankruptcy process; and (iii) is in the best interests of the Debtors, their estates and creditors.

7. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, on information supplied to me by other members of the Debtors' management team and/or professionals retained by the Debtors, on information learned from my review of relevant documents, or in my opinion based upon my experience and knowledge of the Debtors' operations, financial condition, and present liquidity needs. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of each Debtor.

8. Part I of this Affidavit provides an overview of the Debtors' business operations and describes the Debtors' corporate history and prepetition capital structure and the circumstances surrounding the commencement of these Chapter 11 Cases. Part II sets forth the relevant facts in support of each of the First Day Motions.

## PART I

**A.      Current Business Operations and Capital Structure**

9. The Debtors design, develop, manufacture, and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

10. The Debtors operate out of their headquarters in San Francisco, California. The Debtors employ approximately 8 employees and 4-5 contractors. The Debtors' senior-most officer is Simon Barber, who serves as President of HashFast and Chief Technology Officer of HashFast Technologies. Mr. Barber is also the Debtors' co-founder, together with Eduardo de

3

Case: 14-30725   Doc# 54   Filed: 06/06/14   Entered: 06/06/14 19:18:11   Page 3 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

Castro, who is no longer an officer or director of either of the Debtors. I am HashFast Technologies' Chief Financial Officer and have been with the company since April 7, 2014. Mr. Barber and I are the only officers of the Debtors.

11. Starting in late 2013, the Debtors began experiencing difficulties in their ability to produce the ASIC chips and other hardware in a timely manner. Those difficulties included ASIC chip and board design errors that required additional effort and time to correct. As a result of those delays, the Debtors failed to meet certain delivery deadlines that had been set by their customers, all of whom had prepaid for product. Those failures led to refund demands and litigation, all of which exacerbated the Debtors' cash flow problems. Those cash flow problems resulted in the Debtors failing to have sufficient resources to pay certain of their vendors and contractors, certain of whom had in their possession large amounts of ASIC chips and other inventory that belongs to the Debtors, which further hindered the Debtors' ability to make sales and generate cash flow.

12. Since I have been with the Debtors, the Debtors have embarked on several cost-saving measures, including headcount reductions, and focusing intensely on maximizing the value of Debtors' assets. As of the date hereof, the Debtors' assets fall into two categories: current inventory and intellectual property. The current inventory consists mainly of ASIC chips (in wafer form or in various stages of completion), mining boards, as well as various other system components used in the Bicoin mining business. The intellectual property consists of some patents, mask works, and design specifications useful in designing current and future chips, boards, and systems for Bitcoin mining.

## PART II

13. Concurrently with the filing of the Chapter 11 Cases, the Debtors have filed a number of First Day Motions, consisting of procedural motions and motions relating to the

4

Case: 14-30725  Doc# 54  Filed: 06/06/14  Entered: 06/06/14 19:18:11  Page 4 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

Debtors' business operations. The Debtors submit that approval of each First Day Motion is an important element of its reorganization efforts and is necessary to ensure a smooth transition into chapter 11 with minimal disruption to their operations. I have reviewed each of the First Day Motions, including the exhibits thereto, and believe that the relief requested therein is critical to the Debtors' ability to achieve a successful reorganization. Factual information with respect to each First Day Motion is provided below and in each First Day Motion.[2]

**A.  Procedural Motions**

    **(1)  Debtors' First Day Motion For an Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing the Joint Administration of Their Chapter 11 Cases**

14. The Debtors in these Chapter 11 Cases are affiliated entities. HashFast Technologies is the wholly-owned subsidiary of HashFast. The Debtors request that, in light of the fact that HashFast filed a petition in this Court and HashFast Technologies' case has been converted to a chapter 11 case, the Court can and should jointly administer these Chapter 11 Cases.

15. The joint administration of these cases will promote economical and efficient administration of the Debtors' estates. The Debtors anticipate that numerous motions, applications, notices, and orders will relate to several of the Debtors' cases. Joint administration of these cases will permit use of a single general docket for all of the Debtors' cases and avoid duplicative filings by the Court, the Debtors, and parties in interest. Thus, the Debtors believe joint administration of the Debtors' estates will reduce costs and minimize the potential for confusion, which is in the best interests of the Debtors' estates, their creditors and all other parties in interest.

---

[2] All defined terms used in this Part II of this Declaration, but not otherwise defined, shall have the same meaning as set forth in the applicable first day motion referred to unless otherwise so stated.

**B.     Motions Relating to Business Operations**

   **(1)   Debtors' First Day Motion for An Order (i) Approving Continued Use of Existing Bank Accounts, Business Forms, and Cash Management System, and (ii) To Obtain Limited Waiver of the Requirements of 11 U.S.C. § 345(b)**

   16.   The Debtors utilize a cash management system (as it may be modified, the "Cash Management System") in the day-to-day operations of their business. In connection with the Cash Management System, prior to the Petition Date, the Debtors maintained four bank accounts in the ordinary course of their business, including one merchant account, one operating account and one collateral account (collectively, and as they may be modified, the "Bank Accounts"). The Bank Accounts are maintained at Silicon Valley Bank ("Silicon Valley") and Bridge Bank ("Bridge", collectively with Silicon Valley, the "Banks").

   17.   The Bank Accounts and the Cash Management System are listed and demonstratively described on Exhibit 2 to the Debtors' motion for continued use of their Cash Management System.

   18.   The Debtors fund their operations through the merchant and operating accounts, both of which are held at Silicon Valley. Each of the Silicon Valley depository accounts receive electronic transfers and credit card payments in U.S. dollars from the Debtors' customers. Payroll for the Debtors' employees is funded through an account at Bridge, which is funded by one of the Silicon Valley depositary accounts.

   19.   The Debtors also hold two Bitcoin wallets that in the aggregate, as of June 3, 2014, hold 0.062052 Bitcoins.

   20.   The Cash Management System constitutes a customary and essential business practice. The Debtors' Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtors in size and complexity. The widespread use of such systems, moreover, is attributable to the numerous benefits they provide, including the ability

6

Case: 14-30725   Doc# 54   Filed: 06/06/14   Entered: 06/06/14 19:18:11   Page 6 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

to (a) control and monitor corporate funds, (b) ensure cash availability, and (c) reduce administrative expenses by facilitating the movement of funds.

21. In light of the substantial size and complexity of the Debtors' operations, the Debtors' efforts to preserve and enhance the value of their estates will be hampered if their cash management procedures are disrupted.

22. For much the same reasons, the Debtors further seek the authority to implement ordinary course changes to their Cash Management System, without further order of the Court, in the event that the Debtors conclude that changes in the Cash Management System are beneficial to their estates. In addition, the Debtors request authority to open and close bank accounts. The Debtors request that the Banks be authorized to honor the Debtors' requests to open or close any bank accounts.

23. As set forth above, within their Cash Management System, the Debtors maintain four Bank Accounts. To avoid substantial disruption to the normal operation of their business and to preserve a "business as usual" atmosphere with respect to cash management function, as part of their request to maintain their Cash Management System, the Debtors hereby also request permission to continue to use their Bank Accounts.

24. The Debtors request further that the Banks be authorized to continue to follow the instructions of all parties authorized to issue instructions with respect to the Bank Accounts. Allowing these accounts to be maintained with the same account numbers will assist the Debtors in accomplishing a smooth transition to operating as debtors in possession.

25. As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments. The Debtors believe that tax obligations can be paid most efficiently out of the existing Bank Accounts, that the U.S. Trustee can adequately monitor the flow of funds into, among and out of the Bank Accounts, and that the creation of new

7

debtor in possession accounts designated solely for tax obligations would be unnecessary and inefficient.

26.  To protect against the possible inadvertent payment of prepetition claims, the Debtors will immediately advise their Banks not to honor checks issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by the Debtors.

27.  In the ordinary course of their business, the Debtors use a variety of checks and other business forms (collectively, and as they may be modified, the "Business Forms").  By virtue of the nature and scope of the Debtors' business operations and the large number of suppliers of goods and services with whom the Debtors deal on a regular basis, it is important that the Debtors be permitted to continue to use their Business Forms without alteration or change.  To avoid disruption to the Cash Management System and unnecessary expense, the Debtors request authorization to continue to use their Business Forms substantially as such forms exist immediately before the Petition Date, without reference to their status as debtors in possession and the bankruptcy cases number.

28.  The Debtors also request authorization to use their existing check stock, provided, however, that upon depletion of the Debtors' check stock, the Debtors will obtain new check stock reflecting their status as debtors in possession.

29.  In the absence of such relief, the Debtors' estates will be required to bear a potentially significant expense, which the Debtors respectfully submit is unwarranted.

30.  Concurrently with the filing of this motion, the Debtors have filed motions requesting authority to pay, in their sole discretion and in the ordinary course of their business, certain prepetition obligations to customers, taxing authorities, employees, essential shippers, and other entities.  With respect to some of that debt, prior to the Petition Date, the Debtors may have issued checks that have yet to clear the banking system.  In other cases, the Debtors would issue

8

the relevant checks post-petition on account of such prepetition debt once the Court entered an order permitting the Debtors to do so. The Debtors intend to inform their Banks which prepetition checks should be honored pursuant to orders of the Court authorizing such payment.

31. As a result of the foregoing, the Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or Automated Clearing House ("ACH") transfers should be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date. Pursuant to the relief requested in this motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with the Court's order or otherwise.

32. The Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees"). The Debtors also request that the Banks be authorized to charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the Bank Accounts in the normal course of business.

33. The Debtors seek a waiver of section 345(b) of the Bankruptcy Code permitting the Debtors to maintain their Bank Accounts without the need to post a bond or other security to the extent that, at any given time, funds are deposited in their Bank Accounts in excess of the limits of

9

Case: 14-30725   Doc# 54   Filed: 06/06/14   Entered: 06/06/14 19:18:11   Page 9 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

section 345.  As shown on Exhibit 2 to the Cash Management Motion, the Debtors maintain their Bank Accounts at Silicon Valley and Bridge.  Silicon Valley and Bridge are on the list of depositories for Chapter 11 debtor funds authorized by the United States Trustee for the Northern District of California.  Local Rule 2015-1(b) provides that "[t]here shall be a rebuttable presumption that funds which are deposited with an entity which is included on the United States Trustee's most recent list of 'cooperating depositaries' have been deposited in accordance with 11 U.S.C. § 345(b)."  Because the Debtors' funds are only with banks that are on the U.S. Trustee's list, it is presumed that the Debtors are in compliance with Section 345(b) of the Bankruptcy Code.

34. Also, In light of the amount of funds that will flow through the estates, the regular deposits, and the minimal or zero balances of certain of the Bank Accounts, it would be unnecessary and wasteful for the Debtors to be forced to incur the expense of obtaining a bond given the safeguards embedded in the Debtors' Cash Management System for the preservation of the funds therein. The Debtors submit that their current practices provide sufficient protection for their cash and that it would be in the estates' best interests for the Debtors to continue to follow these practices. Moreover, Silicon Valley and Bridge (where the Debtors maintain their operating Accounts) are well-known and fiscally strong institutions, which provide services critical to the Debtors' operations.  For these reasons, the Debtors request that this Court's order provide a waiver of the provisions of section 345 of the Bankruptcy Code.

I believe that the commencement of these Chapter 11 Cases is in the best interests of the Debtors' stakeholders and other parties-in-interest.  As it did during the prepetition period, the Debtors, with the assistance of its professionals, will continue to maintain and enhance the going concern value of the companies while pursuing its reorganization strategy.

10

Case: 14-30725    Doc# 54    Filed: 06/06/14    Entered: 06/06/14 19:18:11    Page 10 of 11
US_100588171v3_385402-00001 6/6/2014 2:00 PM

I declare under penalty of perjury that the forgoing is true and correct.

Dated: June 6, 2014

Monica Hushen
Chief Financial Officer of HashFast Technologies LLC and authorized representative of HashFast LLC