Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:        amcdow@bakerlaw.com
              mdelaney@bakerlaw.com

[Proposed] Attorneys for OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES, LLC, a California limited liability company,<br><br>Debtor and Debtor in Possession. | Lead Case No.: 3:14-bk-30725-DM<br><br>(Proposed to be) Jointly Administered with:<br><br>Case No.: 3:14-bk-30866-DM<br><br>Chapter 11 |
| ☐ Affects HASHFAST LLC, a Delaware limited liability company,<br><br>Debtor and Debtor in Possession. | **OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S FIRST DAY MOTION FOR AN ORDER (I) APPROVING CONTINUED USE OF EXISTING BANK ACCOUNTS, BUSINESS FORMS, AND CASH MANAGEMENT SYSTEM, AND (II) TO OBTAIN LIMITED WAIVER OF THE REQUIREMENTS OF 11 U.S.C. § 345(b)**<br><br>Hearing:<br>Date:    June 27, 2014<br>Time:    10:00 a.m.<br>Place:   U.S. Bankruptcy Court<br>         235 Pine Street<br>         San Francisco, CA 94104<br>Judge:   Hon. Dennis Montali |

The Official Committee of Unsecured Creditors (the "Committee") hereby submits the within opposition (the "Opposition") to the *Debtor's First Day Motion for an Order (I) Approving Continued Use of Existing Bank Accounts, Business Forms, and Cash Management*

*System, and (II) to Obtain Limited Waiver of the Requirements of 11 U.S.C. § 345(b)* [Docket Entry ("D.E.") 51] (the "Motion").[1]  In support thereof, the Committee respectfully submits as follows:

## I. INTRODUCTION

HashFast Technologies LLC and HashFast LLC (collectively, the "Debtors") request authority to maintain their current cash management system and, indeed, allow the Debtors to alter their cash management system and pay certain unidentified prepetition claims without further Court order or oversight.  Although the Committee recognizes that maintaining the current cash management systems in some respects may be beneficial, the Committee opposes the Debtors' request for carte blanche, especially in light of the apparent prepetition misconduct of HashFast Technologies LLC's ("HFT") management.

As discussed herein, the Committee proposes a compromise—the maintenance of the current cash management system under revised terms and only upon further disclosures, including, but not limited to, disclosures regarding the Debtors Bitcoin accounts and depositories. The Committee respectfully submits that the proposed system will protect the creditors and increase transparency while minimizing as many of the impediments coincident to bankruptcy as possible.

## II. DISCUSSION

### A. Maintenance of the Cash Management System

The Debtors maintain a non-traditional cash management system—a system designed around the currencies in which the Debtors transact business.  The system involves a traditional cash management system including bank accounts and a merchant account used to process payments in traditional currency.  The system also involves a non-traditional system designed around transactions in Bitcoin.  While maintenance of both systems may be required to support the ongoing operations of the Debtors, the Committee respectfully submits that further disclosures and limitations are necessary to ensure the protection of the creditors.

---

[1] The Committee reserves the right to submit further or additional arguments or objections orally during the hearing on the Application.

- 2 -

1. Further Disclosures regarding Traditional Cash Management System Required

The Debtors request that "the Banks be authorized to continue to follow the instructions of all parties authorized to issue instructions with respect to the Bank Accounts." Motion, D.E. 51, at p. 8. Although it may be necessary to grant several individuals access to Debtors' bank accounts, the Committee requests that the Debtors identify these individuals. Without the identity of these individuals, the Court and Committee cannot determine whether all the authorized individuals need to have or should have unrestricted access to the bank accounts and the funds held therein.

2. Further Disclosures regarding Non-Traditional Cash Management System Required

The Debtors (or at minimum HFT) conducted substantial business in Bitcoin. Akin to transactions in traditional currency, Bitcoins are transferred from one "address" or account to another. The Bitcoins may thereafter remain in a Bitcoin wallet, Bit-pay account, a currency exchange account, or a few other types of accounts designed to hold or transact in Bitcoin. Regardless of the fact that the Debtors received thousands of Bitcoin worth millions of dollars during its operations, the Motion is nearly devoid of any discussion of the Debtors' Bitcoin management system. Indeed, the Motion merely states that the Debtors "hold two Bitcoin wallets that in aggregate, as of June 3, 2014, hold 0.062052 Bitcoins." Motion, D.E. 51, at p. 5.[2]

Bitcoins are valuable and highly portable electronic currency. Without full disclosure and oversight of the Debtors' Bitcoin management system, it is impossible to determine whether the Bitcoins are properly accounted for, who has access to the Bitcoins, where the Bitcoins are electronically stored, whether the Debtors transact business in Bitcoins with their vendors, or whether the Debtors routinely convert Bitcoins to traditional currency. Whether inadvertently or otherwise, the Debtors have failed to disclose the existence and/or the status of a number of accounts which are unique to the Bitcoin space, and which could contain Bitcoin, cash, or both.

---

[2] The June 3, 2014 number appears to be out of date according to the HFT's Schedule B, which indicates that HFT alone possessed 5.1680623 Bitcoins as of June 23, 2014 in an undisclosed account.

- 3 -

Accordingly, the Committee requests that the Debtors disclose all information about their Bitcoin accounts, including, but not limited to: the Bitcoin wallet software, services or mechanisms they currently use and/or have used in the past; the Bit-pay accounts they use and/or have used in the past; the Bitcoin address(es) used to send, receive or store Bitcoin; all accounts with third-party Bitcoin wallet services, exchanges or payment processors; and all individuals and entities that have or had access to any Bitcoin account or wallet.

The Committee respectfully submits that it is imperative that the Debtors fully describe their Bitcoin management system prior to the entry of any order that allows the Debtors to maintain this system. Without this information, the Court is unable to determine whether the proper procedures are in place to protect the Debtors' Bitcoin assets and ensure the success of any of Debtors' Bitcoin transactions.[3]

   3. <u>Modifications to the Debtors' Proposed Terms for Maintenance of the Cash Management System and, as applicable, the Bitcoin Management System</u>

In addition to further disclosures, the Debtors request relief that unnecessarily diminishes the Court's oversight of Debtors' financial health and transactions.

   a. *Debtors Request for Authority to Implement Ordinary Course Changes Vague and Potential Harmful*

The Debtors request "authority to implement ordinary course changes to their Cash Management System, without further order of the Court, in the event that the Debtors conclude that changes in the Cash Management System are beneficial to their estates." <u>Motion</u>, D.E. 51, at p. 6. Although the request is ambiguous (especially with respect to "ordinary course changes"), it appears that the Debtors want authority to open and close bank accounts as they see fit. First, this request appears contradictory to the contention that it is imperative to maintain the current cash management system. That being said, it also poses a substantial issue with respect to overseeing

---

[3] Indeed, due to the difficulty of overseeing transactions in Bitcoin, the Committee questions whether it is prudent to maintain any Bitcoin system beyond merely being able to accept payment in Bitcoin and thereafter immediately convert the Bitcoin into traditional currency.

- 4 -

the reorganization and tracking the Debtors' income and expenses if the Debtors can transfer funds between and open and close bank accounts in their sole and absolute discretion.

Accordingly, the Committee requests that the Court deny the request for authority to "implement ordinary course changes" without Court approval.

### b. *The Debtors have not Justified the Continued Use of Checks Stock*

The Debtors also request authority to continue "to use their existing check stock…." Motion, D.E. 51, at p. 9. The Debtors, however, do not provide any explanation why they need to use existing check stock or cannot order new checks indicating their status as a debtor in possession for all future payments. It is important to have check stock that indicates a debtor's new capacity as debtor in possession to provide notice to recipients of the payments of the bankruptcy and to identify prepetition payments from postpetition payments. This is especially true if the Debtors are authorized to continue using their prepetition bank accounts.

Without a compelling reason (which there is none), the Committee submits that the Debtors should not be excused from the requirement to obtain new check stock identifying them as debtors in possession and their respective bankruptcy cases. It is also appropriate to order the Debtors to cease using any check stock that does not identify their new fiduciary capacity and the pendency of the bankruptcy cases.

**B. Honoring Select Prepetition Checks Is Not Justified**

In addition to authority to maintain their prepetition cash management systems, the Debtors also request authority to pay prepetition obligations postpetition from existing bank accounts. In requesting this authority, it appears that the Debtors are evoking the Doctrine of Necessity; however, as the Debtors fail to cite a single case or statute, it is difficult to determine the basis for the relief sought.

The Doctrine of Necessity, which is arguably incorporated into 11 U.S.C. § 105(a), however, is not "a roving commission to do equity." *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Rather, § 105(a) only permits order that comport with the other provisions of Bankruptcy Code. The payment of some creditors ahead of other without a compelling reason

constitutes a violation of the carefully constructed hierarchy governing distributions in bankruptcy case and, indeed, such payments may be recovered by the estate as either preferential or fraudulent transfers. *See, e.g.,* 11 U.S.C. §§ 547, 548; *see Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S. 286 (1882). Such payments, however, are the exception and not the rule.

The Debtors have requested authority to pay prepetition claims without providing any information. Rather, the Debtors request blanket authority to instruct their banks to honor or dishonor prepetition checks in their sole and absolute discretion. *See* Motion, D.E. 51, at p. 9 ("the Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or Automated Clearing House … transfers should be honored or dishonored …."). Without compelling reasons for the payment of the claims, the request contravenes the distributions schemes established by the Bankruptcy Code without cause. Accordingly, the Committee respectfully submits that the request for blanket authority be denied without prejudice to the Debtors bringing a separate motion that (1) specifically identifies the payments the Debtors seek to allow and (2) demonstrates under applicable law why the payments are essential to reorganization.

**C.  Waiver Of The Bond Requirement Under § 345 Permissible With Respect To Traditional Depositories**

The Debtors seek a waiver of the bond requirement under § 345 on the theory that the Debtors' bank accounts are on deposit with institutions approved by the United States Trustee ("UST"). The Committee is amenable to granting the Debtors an exemption as to funds held in the accounts with the Silicon Valley Bank and Bridge Bank. The Committee, however, requests that the Court order the Debtors to post a bond sufficient to ensure the current value of all funds held as Bitcoin. Bitcoin is a non-traditional currency that fluctuates in value (and, indeed, if phased-out, may lose all value) and is held in online depositories, often time outside the United States and beyond the reach of currently existing regulatory law. Accordingly, the retention of estate assets as Bitcoins in online institutions presents a significant risk and the posting of an adequate bond to cover this risk would not unduly burden the bankruptcy estates.

## III. CONCLUSION

The Committee respectfully requests that the Court enter an order: (1) denying the request for authority to honor prepetition checks; (2) denying the request for authority to continue to use existing bank stock; (3) denying the request for authority to change the cash management system in the ordinary course without prior Court approval; (4) denying the request for an exemption to the bond requirement of § 345 as to any funds held as Bitcoin; (5) requiring the Debtors to provide all information relating to any Bitcoin account; and (6) provide all requested information as to the Debtors' traditional cash management system. The Committee requests that the Court reserve judgment on the approval of the cash management system in general until the Debtors provide the requested information.

Dated: June 26, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Ashley M. McDow*
Ashley M. McDow
Michael T. Delaney

[Proposed] Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS