KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered with: |
| Debtor and Debtor-In-Possession | Case No. 14-30866 |
| | Chapter 11 |

□ Affects HASHFAST LLC, a Delaware limited liability company,

Debtor and Debtor-In-Possession

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365 AND FED. R. BANKR. P. 2002, 6004, 6006, 9014 AND 9019 FOR ENTRY OF ORDERS (I) AUTHORIZING THE SALE OF ESTATE PROPERTY, (II) AUTHORIZING THE SALE OF ESTATE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (III) AUTHORIZING THE (A) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) ASSUMPTION OF CERTAIN LIABILITIES; AND (C) GRANTING CERTAIN RELATED RELIEF**

1

)  [Proposed] Hearing
)  Date:  July 28, 2014
)  Time:  2:00 p.m.
)  Place: 235 Pine St., 19th Floor
)         San Francisco, CA 94104
)  Judge: Honorable Dennis Montali.

TO:    Uniquify, Inc., Ciara Technologies, and Sonic Manufacturing Technologies, as parties potentially claiming an interest in the assets to be sold, and all other parties entitled to notice.

The above-captioned debtors and debtors-in-possession (the "Debtors") submit this motion (the "Motion") for entry of orders (i) authorizing and approving the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") to a newly-created affiliate ("Purchaser") of Liquidbits Corp. ("Liquidbits") in accordance with the Term Sheet for Emergency Section 363 Sale dated July 18, 2014 (the "Term Sheet"), a true and correct copy of which is attached hereto as **Exhibit 1**, (ii) authorizing and approving the Sale of the Acquired Assets to the Purchaser free and clear of liens, claims, encumbrances and interests, (iii) authorizing and approving of the license of the intellectual property of the Debtors to Purchaser upon the terms set forth in the Term Sheet, (iv) authorizing and approving the release of all claims against Liquidbits and its affiliates other than Purchaser and (v) authorizing the (a) assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") to Purchaser (b) the assumption of certain liabilities (the "Assumed Liabilities") by Purchaser and (c) granting certain related relief. In support of this Motion, the Debtors submit the Declaration of Monica Hushen, attached hereto as **Exhibit 2** (the "Hushen Declaration") and respectfully represent as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

1.     On May 9, 2014 (the "Petition Date"), certain petitioning creditors filed a chapter 7 Involuntary Petition against Hashfast Technologies LLC under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") [Doc. No. 1].  On June 3, 2014, HashFast

2

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Technologies LLC filed its Conditional Consent to an Order for Relief [Doc. No. 36] and its Motion to Convert to Chapter 11 [Doc. No. 35]. This Court entered its order converting HashFast Technologies LLC's case to one under chapter 11 on June 5, 2014 [Doc. No. 40].

2. On June 6, 2014, HashFast LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. On July 9, 2014, this Court granted the Debtors motion to jointly administer the case of HashFast LLC with the case of its wholly-owned subsidiary HashFast Technologies LLC [Doc. No. 12]. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. No request been made for the appointment of a chapter 11 trustee or examiner.

5. On June 23, 2014, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

6. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 363, 365, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, 9014 and 9019 and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of California (the "Local Rules") 2002-1, 6004-1 and 6006-1.

## II. BACKGROUND

**A.    Background and Current Business Operations.**

8. The Debtors design, develop, manufacture and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

9. The Debtors' current inventory consists mainly of ASIC chips (in wafer form or in various stages of completion), mining boards as well as various other system components used in

3

US_100818398x5_385402-00003 7/18/2014 1:2] PM

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

the Bitcoin mining business. They also own certain intellectual property that includes, without limitation, trade secrets, mask works related chip design and patents.

10. In the ordinary course of their business, the Debtors rely on Uniquify, Inc. ("Uniquify"), Ciara Technologies ("Ciara") and Sonic Manufacturing Technologies ("Sonic") (collectively, the "Supply Chain Service Providers") to assemble the Debtors' inventory of technology hardware and transport the finalized product to shippers to complete the Debtors' sales. The Supply Chain Service Providers are also presently in custody of a substantial amount of the Debtors' product and component inventory, which is central to the Debtors' business. The Debtors estimate that the total product and component inventory held by the Supply Chain Service Providers has a current market value of approximately $5.7 million.

11. Debtor Hashfast Technologies included the Supply Chain Service Providers on its Schedule F – Creditors Holding Unsecured Claims Nonpriority Claims for claims totaling roughly $771,000, with the claims by Ciara and Uniquify being in dispute [Doc. No. 87]. The Supply Chain Service Providers have advised the Debtors that they will not provide any services and refuse to distribute the product and component inventory unless they receive an incremental payment of the amount allegedly owed to them on account of the Debtors' prepetition obligation.

**B.    The Debtors' Marketing and Sales Efforts.**

12. The Debtors, with the assistance of their advisors, actively marketed the Acquired Assets since April 2014, focusing on a sale of their assets, obtaining financing from banks or other lending sources, and/or obtaining equity infusions from capital sources.

13. As discussed above, the bulk of the Debtors' inventory consists of incomplete chips and boards now in the possession of the Supply Chain Service Providers. Every chip requires an average of approximately $450 to build out into a usable bitcoin mining system. But the Debtors do not have the funds to complete their inventory in order to maximize the value of their assets. Accordingly, the Debtors have been actively seeking a party to provide them with the needed liquidity to assist them in the release and completion of the build out of its inventory.

14. The Debtors have marketed the Acquired Assets by, without limitation, meeting with: (i) no fewer than 2 key competitors in the bitcoin mining equipment manufacturing and

4

the Bitcoin mining business. They also own certain intellectual property that includes, without limitation, trade secrets, mask works related chip design and patents.

10. In the ordinary course of their business, the Debtors rely on Uniquify, Inc. ("Uniquify"), Ciara Technologies ("Ciara") and Sonic Manufacturing Technologies ("Sonic") (collectively, the "Supply Chain Service Providers") to assemble the Debtors' inventory of technology hardware and transport the finalized product to shippers to complete the Debtors' sales. The Supply Chain Service Providers are also presently in custody of a substantial amount of the Debtors' product and component inventory, which is central to the Debtors' business. The Debtors estimate that the total product and component inventory held by the Supply Chain Service Providers has a current market value of approximately $5.7 million.

11. Debtor Hashfast Technologies included the Supply Chain Service Providers on its Schedule F – Creditors Holding Unsecured Claims Nonpriority Claims for claims totaling roughly $771,000, with the claims by Ciara and Uniquify being in dispute [Doc. No. 87]. The Supply Chain Service Providers have advised the Debtors that they will not provide any services and refuse to distribute the product and component inventory unless they receive an incremental payment of the amount allegedly owed to them on account of the Debtors' prepetition obligation.

**B.    The Debtors' Marketing and Sales Efforts.**

12. The Debtors, with the assistance of their advisors, actively marketed the Acquired Assets since April 2014, focusing on a sale of their assets, obtaining financing from banks or other lending sources, and/or obtaining equity infusions from capital sources.

13. As discussed above, the bulk of the Debtors' inventory consists of incomplete chips and boards now in the possession of the Supply Chain Service Providers. Every chip requires an average of approximately $450 to build out into a usable bitcoin mining system. But the Debtors do not have the funds to complete their inventory in order to maximize the value of their assets. Accordingly, the Debtors have been actively seeking a party to provide them with the needed liquidity to assist them in the release and completion of the build out of its inventory.

14. The Debtors have marketed the Acquired Assets by, without limitation, meeting with: (i) no fewer than 2 key competitors in the bitcoin mining equipment manufacturing and

4

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel | 310.788.4471 fax

delivery market, (ii) no fewer than 10 debtor-in-possession financers, including several large banks, financing institutions, and funds that specialized in distressed financing transactions, and (iii) 3 venture capitalists heavily involved in the bitcoin industry. But none of these efforts resulted in any offers to purchase the Acquired Assets or any alternative form of investment or financing of the Debtors or their assets.

15. In addition, the Debtors met with 2 liquidators regarding a liquidation sale of the Acquired Assets, both of whom proposed to take significant off the top commissions (up to 20% in some instances) of any sale that occurred. These negotiations showcase the uncertain, disadvantageous liquidation market that exists for the Acquired Assets.

16. Only Liquidbits submitted even a preliminary proposal regarding the purchase of the Acquired Assets. On July 18, 2014, the Debtors and Liquidbits finalized the Term Sheet. The Term Sheet provides that Liquidbits will create a new affiliate, Purchaser, which would purchase the Acquired Assets plus assume certain liabilities, including certain cure costs and certain post-petition administrative expenses. Since July 18, 2014, the Debtors still have not received any other offers to purchase the Acquired Assets.

17. The Purchaser's offer and the Term Sheet have been the subject of extensive discussions and negotiations with the Debtors. The Debtors have performed due diligence, evaluating Liquidbits' and the Purchaser's ability to perform under the Term Sheet. This due diligence will be made available to counsel to the Committee upon their request subject to their agreed-upon entrance into a confidentiality agreement given the nature of this information.

18. The Debtors propose to move forward with the Sale on an expedited basis and within a quick time frame because the Acquired Assets: (i) are subject to rapid depreciation given the nature of the Bitcoin mining industry and the value of the equipment used therein and (ii) are languishing in the hands of the Supply Chain Service Providers.

19. Bitcoins are a form of cryptographic currency that are widely traded in real time at exchanges all over the world. Bitcoins are created in accordance with a data protocol which is decentralized, that is, under no central control or authority. Thus, they are virtually impossible for any party to change. This protocol establishes the process, known as "mining," by which new

5

Bitcoins are created through a competitive "winner takes all" race to calculate or decode "blockchains." The protocol by design increases the amount of work required to discover a new Bitcoin so that the average discovery rate is kept somewhat constant at ~1Bitcoin every 10 minutes; this has resulted in an increase in difficulty ("<u>Difficulty</u>") every ten to fourteen (10 to 14) days, which, in turn, reduces the Bitcoin return.

20.     Bitcoin mining requires powerful and high-functioning equipment capable of quickly running complex calculations.

21.     As a consequence of the increased efficiency of mining equipment and the increase in market price of Bitcoins, the value of processing capabilities is subject to rapid depreciation in two primary ways. First, as the Difficulty in calculating or decoding a blockchain ("<u>mining</u>") can increase each ten to fourteen (10 to 14) days, a corresponding reduction occurs in productive output of the same processing equipment (measured in hashes, gigahashes, terra hashes, or petahashes) each month. Second, a blockchain once "mined" becomes permanently unavailable to any other party to "mine" and there exist no means to prevent duplication of effort among different parties or to determine how close any other party is to discovering, "mining," a new blockchain (i.e., the first party to complete the process accrues 100% of the value). As the number of blockchains which are available to be "mined" each month is fixed and immutable, the economic value of processing power is a function of the percentage of overall global processing power employed in the "mining" process. As the total processing power employed on a worldwide basis increases substantially each month, a fixed data processing output becomes a smaller and less valuable percentage each day. The marketable value of the equipment used in Bitcoin mining (including Sierra units, Golden Nonce Chips and wafers) has declined approximately 13% every ten (10) days over the past two months, and took a rapid decline of 20% at the end of June (most likely due to large mining capacity being brought on line). The devaluation is publicized and fixed by the protocol.

22.     This rapid dissipation is made even more troubling for the Debtors given the fact that the bulk of its inventory remains incomplete and will require both time and money to complete so as to fully maximize their value.

6

US_100818398v5_385402-00003-7/18/2014 1:21 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

23. Because of the rapid dissipation in the value of the inventory included within the Acquired Assets, the Debtors must move forward with the Sale on an expedited basis and within a quick time frame. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors, and other parties in interest to complete the Sale as soon as possible and, in any event, by August 1, 2014.

**C.    The Term Sheet.**

24. A summary of the principal terms of the Term Sheet, set forth in full in the Term Sheet,[1] is as follows:[2]

- Acquired Assets:  Purchaser will purchase all of the assets previously or currently used in or useful to, necessary to or related to the conduct of all of the business of the Debtors, including but not limited to all chips, system components, board components, hashing boards, other inventory and equipment and all deposit accounts, but excluding from the Acquired Assets, (i) the Debtors' intellectual property, (ii) any claims arising under sections 547, 548, 549, and 550 of the Bankruptcy Code and any other claims against insiders (the "**Excluded Claims**"), (iii) HashFast LLC's equity interests in HashFast Technologies LLC, (iv) intercompany claims between HashFast LLC and HashFast Technologies LLC, (v) an amount not to exceed 3,000 chips and 5,000 chips' worth of wafers, which the Debtors reserve the right to sell in the ordinary course of their business operations during the pendency of their bankruptcy cases, and the proceeds of such sales; and (vi) any other assets determined by Purchaser not to be purchased (collectively, the "**Excluded Inventory**").

- Consideration:  The consideration that Purchaser would pay to the Debtors will consist of, without limitation, the following:

  - 1) Cash sufficient in the total amount not to exceed $2,000,000 (a) to pay for any allowed unpaid administrative and priority claims in this Case as of the closing date of the Sale and any cure costs for any executory contracts to be assumed and assigned to Purchaser other than those with Supply Chain Service Providers, (b) to establish a cash reserve for the wind-up of the Case and (c) sufficient in an amount acceptable to Purchaser to resolve claims of the Supply Chain Service Providers to certain inventory of the Debtors, including any cure costs relating to the assumption and assignment of any executory contract with any of the Supply Chain Service Providers identified by the Purchaser to be included in the Acquired Assets;

---

[1] All defined terms used herein but not otherwise defined shall have the meaning set forth in the Term Sheet.

[2] The following summary is qualified in its entirety by reference to the provisions of the Term Sheet. In the event of any inconsistencies between the provisions of the Term Sheet and the terms herein, the terms of the Term Sheet shall govern. Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings assigned to such terms in the Term Sheet.

7

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

23. Because of the rapid dissipation in the value of the inventory included within the Acquired Assets, the Debtors must move forward with the Sale on an expedited basis and within a quick time frame. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors, and other parties in interest to complete the Sale as soon as possible and, in any event, by August 1, 2014.

## C.  The Term Sheet.

24. A summary of the principal terms of the Term Sheet, set forth in full in the Term Sheet,[1] is as follows:[2]

- Acquired Assets: Purchaser will purchase all of the assets previously or currently used in or useful to, necessary to or related to the conduct of all of the business of the Debtors, including but not limited to all chips, system components, board components, hashing boards, other inventory and equipment and all deposit accounts, but excluding from the Acquired Assets, (i) the Debtors' intellectual property, (ii) any claims arising under sections 547, 548, 549, and 550 of the Bankruptcy Code and any other claims against insiders (the "**Excluded Claims**"), (iii) HashFast LLC's equity interests in HashFast Technologies LLC, (iv) intercompany claims between HashFast LLC and HashFast Technologies LLC, (v) an amount not to exceed 3,000 chips and 5,000 chips' worth of wafers, which the Debtors reserve the right to sell in the ordinary course of their business operations during the pendency of their bankruptcy cases, and the proceeds of such sales; and (vi) any other assets determined by Purchaser not to be purchased (collectively, the "**Excluded Inventory**").

- Consideration: The consideration that Purchaser would pay to the Debtors will consist of, without limitation, the following:

  - 1) Cash sufficient in the total amount not to exceed $2,000,000 (a) to pay for any allowed unpaid administrative and priority claims in this Case as of the closing date of the Sale and any cure costs for any executory contracts to be assumed and assigned to Purchaser other than those with Supply Chain Service Providers, (b) to establish a cash reserve for the wind-up of the Case and (c) sufficient in an amount acceptable to Purchaser to resolve claims of the Supply Chain Service Providers to certain inventory of the Debtors, including any cure costs relating to the assumption and assignment of any executory contract with any of the Supply Chain Service Providers identified by the Purchaser to be included in the Acquired Assets;

---

[1] All defined terms used herein but not otherwise defined shall have the meaning set forth in the Term Sheet.

[2] The following summary is qualified in its entirety by reference to the provisions of the Term Sheet. In the event of any inconsistencies between the provisions of the Term Sheet and the terms herein, the terms of the Term Sheet shall govern. Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings assigned to such terms in the Term Sheet.

7

US_J00818398v5_385402-00003 7/18/2014 1:21 PM

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

o   2) Liquidbits' waiver of its pre-petition vendee claim against the Debtors;

o   3) Purchaser will issue to the Debtors a promissory note (the "<u>Seller Note</u>") in the principal amount of $3,000,000 bearing simple interest at 8% per annum and having a maturity date of two years from closing. The Seller Note will be secured by a perfected security interest in substantially all of Purchaser's assets;

o   4) The issuance of one class of preferred units in Purchaser that would be in preference to any other classes of equity[3] of Purchaser (the "<u>Creditor Preferred Equity</u>") to the Debtors with a liquidation preference equal to $3,000,000; and

o   5) The other liabilities of the Debtors that Purchaser expressly agrees to assume.

- <u>Post-Closing Obligations</u>: Following the closing of the Sale, Purchaser would (i) complete the manufacture of all of the chips and other processing hardware currently in the Debtors' inventory and realize on the value of the Debtors' inventory through Bitcoin mining and (ii) repay the Seller Note and redeem the Creditor Preferred Equity from the cash proceeds of that realization.

- <u>Payment of Cure Costs and certain Administrative Expenses</u>: The Debtors will assume and assign to Purchaser any executory contracts identified by Purchaser. Purchaser agrees, as indicated above, to assume certain liabilities of the Debtors, including, without limitation, amounts required to pay the cure costs of any assigned executory contract and to pay certain other administrative expense claims.

- <u>Intellectual Property</u>: The Purchaser would receive a perpetual, royalty-free, non-exclusive, world-wide, transferable license (the "<u>License</u>") of any intellectual property of the Debtors to use, process, develop or market chips, chips' worth of wafers and for use with mining equipment. The License would include the right to create derivative works and to transfer the right. Any subsequent transfer of intellectual property by the Debtors will be subject to the terms of the License.

- <u>Excluded Claims</u>: In further consideration of Liquidbits' and its affiliates' investment in the Purchaser and the waiver by Liquidbits of its vendee claim, Liquidbits and its affiliates would receive a general release from the Debtors including a release of any Excluded Claims against Liquidbits and any of its affiliates. The release would not include claims against Purchaser arising out of the Sale or other transactions contemplated by the Term Sheet.

---

[3] The Term Sheet also contemplates that, subject to applicable securities laws, creditors of the Debtors holding allowed general unsecured claims would for a limited period following the closing of the Sale have the opportunity to invest in the Purchaser.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Purchaser will also be entitled to receive a 33% interest in any recoveries on the balance of the Excluded Claims, net of expenses (the "33% Interest"). No settlement on an Excluded Claim will be permitted without the consent of Liquidbits or approval by the bankruptcy court. If an Excluded Claim is abandoned, the Excluded Claim will be assigned to Purchaser at Purchaser's request, with any recoveries thereon being for Purchaser's account. Purchaser will be consulted on all strategies and material developments relating to the existence, pursuit or abandonment of any Excluded Claims. Purchaser will not object to any motion or other court approved arrangement by which Excluded Claims are pursued by the creditors' committee or any successor.

- Private Sale/No Competitive Bidding: The Debtors have not solicited competing bids for the sale of the Acquired Assets, and due to the fact that the Acquired Assets have been extensively marketed and that they are rapidly declining in value, the Debtors do not believe that further marketing of the Acquired Assets or conducting an auction would result in a higher purchase price. Accordingly, the Debtors herein have requested to undertake the Sale without holding an auction. However, to the extent additional bidders willing to put in competitive bids are willing to submit a bid at or before the hearing on this Motion, the Debtors reserve the right to seek this Court's permission to conduct an in-court auction process.

25. The definitive documents memorializing the terms of the Sale and other transactions as set forth in the Term Sheet will be filed with the Court prior to the hearing on the Sale.

### III. RELIEF REQUESTED

26. The Debtors have determined that a prompt sale of the Acquired Assets is the best way to maximize the value of the Acquired Assets for their respective estates and creditors given the rapidly depreciating value of the inventory and the Debtor's lack of liquidity necessary to release and complete its inventory.

27. By this Motion, the Debtors respectfully request, pursuant to Bankruptcy Code sections 105, 363 and 365, Bankruptcy Rules 2002, 6004, 9007, 9014 and 9019 and Local Rules 2002-1, 6004-1 and 6006-1, that this Court enter an order approving the Sale and the other transactions contemplated by the Term Sheet. Accordingly, the Debtors seek authority to sell the Acquired Assets pursuant to the Term Sheet to Purchaser free and clear of liens, claims, encumbrances and interests, to grant the License to Purchaser, to provide to Purchaser the 33% Interest and to grant the general releases to Liquidbits and its affiliates. To effect the Sale and the other transactions contemplated by the Term Sheet, the Debtors seek an order (i) authorizing and

9

approving the Sale of the Acquired Assets to Purchaser, (ii) authorizing and approving the Sale of the Acquired Assets to Purchaser free and clear of liens, claims, encumbrances and interests, (iii) authorizing the assumption and assignment of the Assumed Contracts to Purchaser, (iv) authorizing the granting of the License to Purchaser, (v) providing to Purchaser the 33% Interest, (vi) allowing the Debtors to provide to Liquidbits and its affiliates a general release and (vii) granting such other and further relief as may be just and proper (the "Order Approving Sale") in the form attached hereto as **Exhibit 3**.

## IV. BASIS FOR RELIEF REQUESTED

**A.     The Term Sheet is Authorized by Bankruptcy Code Section 363 as a Sound Exercise of the Debtors' Business Judgment.**

28.     A debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's sale or use of assets outside the ordinary course of business should be approved by the Bankruptcy Court if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991).  Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

29.     The Debtors have a sound business justification for the Sale and the other transactions contemplated by the Term Sheet at this time and in the manner proposed in the Term Sheet.  The Debtors have determined that it is in the best interests of their creditors and estates to sell the Acquired Assets and effect the other transactions contemplated by the Term Sheet because the Sale and the other transactions maximize value for the benefit of the estates and creditors.  At the same time, the Debtors will retain ownership of and be able to realize upon the value of the

10

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Debtors' intellectual property, albeit subject to the License, while ensuring that Purchaser is able to extract value from the Acquired Assets. The transactions contemplated by the Term Sheet, including the issuance of the Seller Note and the Creditor Preferred Equity, will maximize the likelihood of a return of value to the Debtors' estates.

30.     The Term Sheet is the product of vigorous arms' length, good faith negotiations between the parties and subjected to due diligence. The consideration provided to the Debtors under the terms of the Term Sheet is, at a minimum, fair, adequate and reasonable. The Term Sheet allows for what the Debtors believe is the best possible opportunity to obtain the highest consideration for the benefit of creditors given the rapidly depreciating value of the inventory and the Debtor's lack of liquidity necessary to release and complete its inventory. The Debtors have received no other offers to buy the Acquired Assets. Thus, absent the Sale, the Debtors' inventory will precipitously deteriorate and liquidating the Acquired Assets would provide even less of a return than the Sale. Accordingly, the Sale and the other transactions contemplated by the Term Sheet will maximize the Acquired Assets' value, which is a sound business purpose warranting their authorization.

31.     Thus, this Court should approve the Debtors' Sale of the Acquired Assets and the other transactions contemplated by the Term Sheet, because they are in the best interests of the Debtors and their creditors and other parties in interest.

**B.     The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Interests.**

32.     The Debtors submit that it is appropriate to sell and transfer the Acquired Assets, grant the License and convey the 33% Interest, free and clear of liens, claims, interests and encumbrances of any nature, including in each case "interests" as such term is defined in section 363(f) of the Bankruptcy Code (collectively, "Liens and Interests"). There are no liens on the Acquired Assets, intellectual property of the Debtors or the 33% Interest of which the Debtors are aware other than any possessory liens that the Supply Chain Service Providers might hold.

33.     Bankruptcy Code Section 363(f) permits the Debtors to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests,

11

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). As Bankruptcy Code section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). Pursuant to Local Rule 6004-1(b), the Debtors submit the Declaration of Monica Hushen, which sets forth the factual basis demonstrating that the Motion comes within section 363(f) as follows:

> (a) First, it is recognized that the Supply Chain Service Providers that may hold Liens and Interests regarding the Acquired Assets may not consent to the Sale free and clear under Bankruptcy Code section 363(f)(2) if a settlement is not reached with them.

> (b) Second, even so, any Liens and Interests of the Supply Chain Service Provides regarding the Acquired Assets are subject to "bona fide dispute" as the term is used in Bankruptcy Code section 363(f)(4).

> (c) Third, even if neither Section 363(f)(2) nor 363(f)(4) apply, a sale free and clear can proceed pursuant to Bankruptcy Code section 363(f)(5) because any Liens and Interests of the Supply Chain Service Providers will attach to the proceeds of the Sale such that these parties can be compelled to accept a monetary satisfaction of their claims.

34. Courts have consistently held that a purchaser of a debtor's assets pursuant to section 363 takes free from successor liability resulting from pre-existing claims. *See MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to sale proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *WBQ P'ship v. Virginia Dept. of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 104-05 (Bankr. E.D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation is an "interest" as used in section 363(f)); *Am. Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims precluded in

12

US_100818398v5_385402-00003 7/18/2014 1:21 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

a sale of assets free and clear); *In re Hoffman*, 53 B.R. 874, 876 (Bankr. D. R.I. 1985) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); *In re New England Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees).

35.     The purpose of an order purporting to authorize the transfer of assets free and clear of "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against Purchaser arising from the Debtors' pre-sale conduct.  Under Bankruptcy Code section 363(f), Purchaser is entitled to know that the Acquired Assets and the 33% Interest are not affected by any latent Liens and Interests that will be asserted against Purchaser after the proposed transaction is consummated.

**C.     Purchaser Should be Entitled to the Protections of Bankruptcy Code Section 363(m).**

36.     Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

37.     The Term Sheet was negotiated at arm's-length, with both parties represented by their own counsel through extensive negotiations. Although the Debtors engaged in several discussions with other parties to acquire the Acquired Assets, the Debtors submit that Purchaser's proposal as contained in the Term Sheet represents Purchaser's highest and best offer for the Acquired Assets.   Accordingly, the Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m).

**D.     The Assumption and Assignment of Executory Contracts and Unexpired Leases.**

38.     A debtor in possession is "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).   The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory

13

US_100818398v5_385402-00003 7/18/2014 1:21 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g.*, *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F. 2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assoc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y 1984)). Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of the administration of the estate, and threaten a court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

39. Once an executory contract is assumed, the trustee or debtor-in-possession may elect to assign such contract. *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Doge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).

40. A "trustee may assign an executory contract…only if the trustee assumes such contract…and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). Among other things,

14

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *Accord In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present when prospective assignee expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

41.    Upon closing the Sale, Purchaser will have financial resources that are sufficient to perform under any of the Assumed Contracts. Moreover, if necessary, the Debtors will adduce facts at the hearing to approve the Sale (the "Sale Hearing") on any objection demonstrating the financial wherewithal of Purchaser and its willingness and ability to perform under the contracts to be assumed and assigned to it. The Sale Hearing therefore will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of Purchaser to provide adequate assurance of future performance under the Assumed Contracts.

42.    The Debtors propose the following procedures for notifying counterparties to executory contracts and unexpired leases of potential cure amounts in the event the Debtors decide to assume such contracts or leases (the "Notice Procedures"):

(a)    No later than July 23, 2014, the Debtors shall file with the Court and serve on all non-Debtor parties to the Assumed Contracts a notice (the "Assumption and Cure Notice"), substantially in the form of the notice attached hereto as **Exhibit 4**, identifying Purchaser as the party which will be assigned all of the Debtors' right, title, and interest in the Assumed Contracts, subject to completion of the Sale. The non-Debtor party to an Assumed Contract shall have seven days from the service of the Assumption and Cure Notice to object to the proposed assumption and assignment to Purchaser and shall state in its objection, with specificity, the legal and factual basis of its objection. If no objection is timely received, the Debtors propose that the non-Debtor party to the Assumed Contract be barred from asserting any objection with regard to the assumption and assignment of the Assumed Contract to Purchaser;

(b)    In addition, the Assumption and Cure Notice shall state the cure amount that the Debtors believe is necessary to assume such contract or lease pursuant to

15

Bankruptcy Code section 365 (the "Cure Amount"). Each non-Debtor party to the Assumed Contracts shall have seven days from the date of the Assumption and Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof);

(c)     If no objection is timely received, the Cure Amount set forth in the Assumption and Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to the Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims as to such Assumed Contract against the Debtors, Purchaser, or the property of any of them; and

(d)     If an objection to the Cure Amount is timely filed and received and the parties are unable to consensually resolve their dispute, the amount to be paid under Bankruptcy Code section 365, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors or by the objecting counterparty. At Purchaser's discretion, and provided Purchaser escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may be continued until after the closing date of the Sale and the Assumed Contract subject to such Cure Amount shall be assumed and assigned to Purchaser at closing of the Sale.

43.     At the Sale Hearing, the Debtors shall (i) present evidence necessary to demonstrate adequate assurance of future performance by Purchaser and (ii) request entry of an order requesting approval of the assumption and assignment of any Assumed Contracts to Purchaser.

44.     The Debtors respectfully submit that the proposed Notice Procedures are appropriate and reasonably tailored to provide interested parties with adequate notice in the form of the Assumption and Cure Notice of the proposed assumption and assignment of their applicable contract, as well as proposed Cure Amounts, if applicable. Such interested parties will then be given an opportunity to object to such notice. If an objection is filed, such objection will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.

16

US_100818398v5_385402-00003 7/18/2014 1:21 PM

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

45. Furthermore, to the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the Sale of any of the Acquired Assets, Purchaser will cure any such default prior to such assumption and assignment. Moreover, the Debtors will adduce facts at the Sale Hearing demonstrating the financial wherewithal of Purchaser and its willingness and ability to perform under the contracts to be assumed and assigned to it.

46. Accordingly, the Debtors submit that implementation of the proposed Notice Procedures is appropriate in these cases. The Court therefore should have a sufficient basis to authorize the Debtors to assume and assign contracts as set forth in the Term Sheet.

**E.      Release of Any Excluded Claims against Liquidbits is Permissible under Rule 9019.**

47. A bankruptcy court may approve a debtor-in-possession's settlement pursuant to Bankruptcy Rule 9019(a) upon a finding that the settlement is "fair and equitable." *A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986). Here, the release of any Excluded Claims against Liquidbits and its affiliates in exchange for the waiver of Liquidbits' substantial vendee claim against the Debtors and the other consideration to be provided by Liquidbits and Purchaser as part of the Sale is clearly fair and equitable to the Debtors' estates and other creditors. Liquidbits' vendee claim against the Debtors is scheduled at over $5 million. The value of any Excluded Claim that the Debtors might have against Liquidbits and its affiliates would total a mere fraction of that amount and would be subject to any defenses that Liquidbits and its affiliates might assert. The net value to the Debtors' estates in receiving a waiver of Liquidbits' vendee claim and proceeding with the Sale in exchange for a release of Liquidbits and its affiliates clearly and substantially outweighs any costs.

48. The settlement and release of Liquidbits and its affiliates from any Excluded Claims is therefore fair and equitable and should be authorized, as part of the Sale, pursuant to Bankruptcy Rule 9019.

**F.      Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

49. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of ten days after entry of the order, unless the court

17

US_100818398v5_385402-00003 7/18/2014 1:21 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease … is stayed until the expiration of ten days after the entry of the order, unless the court orders otherwise." The Debtors believe that Purchaser will have an interest in closing the sale of the Acquired Assets as quickly as possible after entry of the Sale Approval Order and that such timing will positively affect the ultimate value offered for the Acquired Assets. Accordingly, the Debtors request that any Sale Approval Order be effective immediately by providing that the ten-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

## V. NOTICE

50.    Under Bankruptcy Rules 2002(a) and (c)(1), the Debtors are required to notify their creditors of any proposed sale of their assets, including a disclosure of the terms and conditions of any private sale, and the deadline for filing any objections to such sale. Under Bankruptcy Rule 6004, a motion for authority to sell property free and clear of liens or other interests shall be served on the parties who have liens or other interests in the property to be sold and shall include the date of the hearing on the motion and the time within which objections may be filed. Under Bankruptcy Rule 6006(c), a motion to assume, reject or assign an executory contract or unexpired lease shall be given to the other party to the contract or lease. Pursuant to Local Rule 6006-1, notice of a motion to assume, reject or assign an executory contract or unexpired lease must also be given to the non-insider creditors that hold the 20 largest unsecured claims or to the creditors committee, and any party who has requested notice pursuant to Bankruptcy Rule 2002.

51.    Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Northern District of California; (b) proposed counsel for the Official Committee of Unsecured Creditors; (c) creditors that hold the 20 largest unsecured claims; (d) the parties to the contracts or leases that are proposing to be assumed and assigned; (e) the parties that have liens or other interests in the Acquired Assets; (f) all known taxing authorities of the Debtors; (g) counsel to Purchaser; (h) the petitioning creditors, (i) the California Franchise Tax Board, (j) the Chief Tax Collection Section, (k) the California Employment Development Department, and (l) those

18

US_100818398v5_385402-00003 7/18/2014 1:21 PM

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in the Case. The Debtors submit that, under the circumstances, no other or further notice is required.

## VI. NO PRIOR REQUEST

52.     No previous motion or other request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court enter the Order Approving Sale substantially in the form attached hereto as **Exhibit 3** (i)  authorizing and approving the Sale of the Acquired Assets to Purchaser and other transactions contemplated by the Term Sheet free and clear of liens, claims, encumbrances and interests and (ii) granting such other and further relief as may be just and proper.

Dated:  July 18, 2014

KATTEN MUCHIN ROSENMAN LLP
Peter A. Siddiqui
Jessica M. Mickelsen


By:/s/ Jessica M. Mickelsen
Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

19

# EXHIBIT 1

THIS TERM SHEET REPRESENTS AN OUTLINE OF THE BASIS ON WHICH THE
PURCHASER DESCRIBED BELOW WOULD PURCHASE THE ASSETS OF HASHFAST
LLC AND HASHFAST TECHNOLOGIES LLC. THE ACTUAL TERMS AND CONDITIONS
UPON WHICH THE PURCHASER MIGHT PURCHASE THE ASSETS ARE SUBJECT TO
SATISFACTORY COMPLETION OF INTERNAL APPROVALS, SATISFACTORY
DOCUMENTATION AND SUCH OTHER TERMS AND CONDITIONS AS ARE
REASONABLY DETERMINED BY THE PURCHASER.

## TERM SHEET FOR EMERGENCY SECTION 363 SALE

### Executive Summary

Liquidbits Corp. ("**Liquidbits**") has prepared this nonbinding term sheet for discussion
with HashFast Technologies LLC ("**HashFast**") regarding a purchase of assets from HashFast
Technologies LLC and HashFast LLC (collectively, the "**Company**") by a newly-created affiliate
of Liquidbits Corp. (the "**Purchaser**") on an accelerated time table through an emergency sale
pursuant to section 363 of the United States Bankruptcy Code (the "**Bankruptcy Code**") .

Liquidbits understands that HashFast LLC is a Delaware limited liability company, is the
parent company of HashFast and owns all of the intellectual property rights used by HashFast in
its business. Liquidbits also understands that both HashFast and HashFast LLC are debtors in
jointly administered cases in the Northern District of California under chapter 11 of the
Bankruptcy Code (collectively, the "**Case**"). This term sheet contemplates that the Purchaser
would purchase the assets of both HashFast and HashFast LLC.

Following the formation of the Purchaser, the Purchaser would purchase all of the Assets
(as defined below and with the exceptions set forth below) through an emergency section 363 sale
for the consideration described in this term sheet including a seller note in the principal amount of
$3 million and preferred equity in the Purchaser with a liquidation preference equal to $3 million.
Following the closing of the purchase, the Purchaser would (i) complete the manufacture of all of
the chips and other processing hardware currently in HashFast's inventory and realize on the
value of HashFast's inventory through bitcoin mining, and (ii) repay the seller note and redeem
the preferred equity from the cash proceeds of that realization. This structure is designed to
ensure that the value of the finished products from HashFast's current inventory would be
realized as expeditiously as possible and would flow back to HashFast's estate and its creditors.

### Terms

| | |
|---|---|
| **Assets to Be Purchased**: | All of the assets previously or currently used in or useful to, necessary to or related to the conduct of all of the business of the Company, including but not limited to all chips, system components, board components, hashing boards other inventory and equipment and all deposit accounts, but excluding from the assets (the "**Assets**") to be purchased |

(a) intellectual property,

(b) claims arising under sections 547, 548, 549, and 550 of the Bankruptcy

A/76192260.16

Code and any other claims that are against insiders (collectively, the "**Excluded Claims**"),

(c) HashFast LLC's equity interests in HashFast,

(d) intercompany claims between HashFast LLC and HashFast,

(e) an amount not to exceed 3,000 chips and 5,000 chips' worth of wafers (the "**Excluded Inventory**"), which HashFast reserves the right to sell in the ordinary course of its business operations during the pendency of the Case, and the proceeds of such sales of the Excluded Inventory, and

(f) any other assets determined by the Purchaser not to be purchased.

The Assets would be transferred to the Purchaser free and clear of any and all claims, liens, and interests in a transaction approved by the Bankruptcy Court under Sections 363 and 365 of the Bankruptcy Code.

| | |
|---|---|
| **Intellectual Property:** | In further consideration of its purchase of the Assets, the Purchaser would receive a perpetual, royalty-free, non-exclusive, world-wide, transferable license of any intellectual property of the Company to use, process, develop or market chips, chips' worth of wafers and for use with mining equipment. The license would include the right to create derivative works and to transfer the right. Any subsequent transfer of intellectual property by the Company will be subject to the terms of the license. |
| **Excluded Claims:** | In further consideration of Liquidbits' and its affiliates' investment in the Purchaser and the waiver by Liquidbits of its vendee claim as provided below, Liquidbits and affiliates would receive a general release from the Company including a release of any Excluded Claims against Liquidbits and any of its affiliates. |
| | In further consideration of its purchase of the Assets, the Purchaser shall be entitled to receive a 33% interest in any recoveries on the balance of the Excluded Claims, net of expenses. No settlement on an Excluded Claim will be permitted without the consent of Liquidbits or approval by the bankruptcy court. If an Excluded Claim is abandoned, the Excluded Claim will assigned to the Purchaser at the Purchaser's request, with any recoveries thereon being for the Purchaser's account. The Purchaser shall be consulted on all strategies and material developments relating to the existence, pursuit or abandonment of any Excluded Claims. The Purchaser will not object to any motion or other court approved arrangement by which Excluded Claims are pursued by the creditors' committee or any successor. |
| **Capital Structure of** | The Purchaser would be a Delaware limited liability company. Its operating agreement would be included as an exhibit in the motion to approve the section 363 sale, or would be filed as an exhibit thereto as soon |

2

A/76192260.16

| **Purchaser**: | as practicable after the filing of such a motion. The capitalization of the Purchaser would consist of preferred equity, common equity, investor debt and a seller note, all as further described below. The investments in the Purchaser consisting of common equity and investor debt would be sufficient to build out the chips and wafers sold to Purchaser, which amounts are estimated by the Company and the Purchaser not to exceed $8,000,000 to build out 27,000 chips and wafers. The investments would be comprised of a contribution to the Purchaser by Liquidbits of 1850 of chips purchased from HashFast and, for this purpose, valued at $370,000, and the balance in cash. |
|---|---|

*Creditor Preferred Equity*. The Purchaser would be authorized to issue one class of preferred units (the "**Creditor Preferred Equity**") that would be in preference to any other classes of equity of the Purchaser. The Creditor Preferred Equity would have a liquidation preference but would not pay mandatory dividends. The Purchaser would not be permitted to make any payments on or redeem any of its other equity interests until the Creditor Preferred Equity is redeemed in full.

Until the Creditor Preferred Equity is redeemed in full, the Purchaser would not be permitted to make payments to any insiders other than on an arm's length basis for goods, services, intellectual property licensing or debt funding. The Purchaser would appoint an independent officer acceptable to the holder of the Creditor Preferred Equity (i.e., at closing the Company) whose approval would be required to insure that any payments to any insiders are made on an arm's length basis. The holder of the Creditor Preferred Equity would be entitled to monthly reports of the finances and operations of the Purchaser and would have a right to inspect the books and records of the Purchaser from time to time on reasonable notice.

The approval of the holder of the Creditor Preferred Equity (i.e., the Company or its permitted assignee) would be required for any changes to the economic terms of the Creditor Preferred Equity or for the selection, removal or replacement of the independent officer.

The Creditor Preferred Equity would be transferable to a liquidating trust for the benefit of holders of allowed general unsecured claims of the Company. The Credit Preferred Equity would not be otherwise transferable.

*Common Equity.* The remaining equity in the Purchaser would consist of Class A Common Units and Class B Common Units that have ratable economic interests in the aggregate without distinction between classes of Common Units.

The Class A Common Units would be owned by Liquidbits or an affiliate of Liquidbits and would have the right to elect the managers of the

Case: 14-30725    Doc# 134    Filed: 07/18/14    Entered: 07/18/14 14:21:41    Page 24 of 58

Purchaser and, except as provided below, to make all decisions concerning the Purchaser.

The Class B Common Units would be owned by those creditors of HashFast or HashFast LLC that, within 30 days following the closing of the sale, choose to purchase the Class B Common Units for cash and to participate in the debt financing referred to below and who meet the eligibility requirements established by the Purchaser to comply with federal and applicable state securities law for a non-public offering. Each eligible creditor electing to purchase Class B Common Units would be entitled to purchase the Class B Common Units ratably with each other eligible creditor electing to purchase. The approval of the Class B Common Units would be required for any changes to the economic terms of the Class B Common Units. The holders of the Class B Common Units would be entitled to periodic reports of the finances and operations of the Purchaser and would have a right to inspect the books and records of the Purchaser from time to time on reasonable notice.

*Investor Debt.* The holders of the Class A Common Units and the Class B Common Units would provide debt financing to the Purchaser ratably in accordance with their ownership of Class A Common Units and Class B Common Units at the time of purchase of the Common Units. The amount of the debt financing would be determined before or as soon as possible after the closing of the sale, and the terms of the debt financing would provide for interest at the annual rate of 8%. Any debt financing would be entitled to be repaid before there is any redemption of or other distribution on the Creditor Preferred Equity, except as provided below, or the Common Units.

*Seller Note.* The Purchaser would issue to the Company a note (the "Seller Note") in the principal amount of $3 million bearing simple interest at 8% per annum and having a maturity date of two years from closing. The Seller Note would be secured by a perfected security interest in all or substantially all of the assets of the Purchaser. If the investor debt is also secured by a security interest in assets of the Purchaser, there would be an intercreditor agreement that would address the priorities between the two security interests.

The Seller Note would be transferable to a liquidating trust for the benefit of holders of allowed general unsecured claims of the Company. The Seller Note would not be otherwise transferable.

**Payments:**  Since the gross revenues of the Purchaser would be in bitcoins, all payments on the Seller Note and in redemption of the Creditor Preferred Equity would also be in bitcoins and would be transferred to a bitcoin wallet designated by the holder of the Seller Note or the Creditor Preferred Equity. Payments in bitcoins would reduce the obligations under the Seller

4

A/76192260.16

Note, or the liquidation preference of the Creditor Preferred Equity, denominated in U.S. dollars based on customary prices for sales of bitcoins in exchange for U.S. dollars

From and after the earlier to occur of (a) fourteen calendar days following the completion of the build out of all systems using the chips and wafers sold to the Purchaser by the Company (the "**Complete Build Out**"), and (b) December 1, 2014 (the "**Payment Commencement Date**"), on a periodic basis to be agreed and in any event weekly, an amount equal to 17% of the gross revenues of the Purchaser would be applied to the Seller Note and, once the Seller Note has been paid, to the redemption of the Creditor Preferred Equity. In the event systems are built out and deployed in mining activity by the Purchaser prior to the occurrence of the Complete Build Out, the Purchaser would sequester an amount equal to 17% of the gross revenues, less remaining build out costs, generated by such mining activity and distribute such amount to the Company on the Payment Commencement Date.

**Consideration:**     The consideration that the Purchaser would pay to the Company for the Assets would consist of the following:

1. Cash sufficient in the total amount not to exceed $2,000,000 (a) to pay for any allowed unpaid administrative and priority claims in the Case as of the closing date of the sale and any cure costs for executory contracts to be assumed and assigned to the Purchaser other than those with Uniquify, Sonic and Ciara Tech, (b) to establish a cash reserve for the wind-up of the Case and (c) in an amount acceptable to the Purchaser to resolve claims of Uniquify, Sonic and Ciara Tech to certain inventory of HashFast including any cure costs relating to the assumption and assignment of any executory contract with Uniquify, Sonic or Ciara Tech identified by the Purchaser to be included in the Assets;

2. Liquidbits' waiver of its pre-petition vendee claim against HashFast;

3. The Seller Note;

4. The issuance to the Creditor Preferred Equity to HashFast with a liquidation preference equal to $3 million; and

5. Any other liabilities of the Company that the Purchaser expressly agrees to assume in the definitive documentation.

**Assignment and Assumption of Certain**     The Company would assume and assign to the Purchaser those executory contracts of the Company identified by the Purchaser. The Purchaser may require an amendment to an executory contract as a condition to assumption. If the amendment is not approved by the non-debtor party or

5

A/76192260.16

| | |
|---|---|
| **Contracts**: | parties to the contract, the contract would not be assumed and assigned. |
| **Employees, Etc.**: | The Purchaser would offer employment or consulting arrangements to certain employees of HashFast (the "Designated Personnel"). Compensation for the consulting services would be paid to the Company with respect to Designated Personnel still employed by the Company. |
| **No Other Liabilities**: | Other than those executory contracts and any other liabilities that the Purchaser expressly agrees to assume in the definitive documentation, the Purchaser would assume no other liabilities whatsoever, fixed, contingent, known or unknown, matured or unmatured. |
| **Downside Protection**: | If the Purchaser determines that the cost of operations, including the cost of bitcoin mining, becomes non-economical and there are no further payments being made on the Seller Note or in the redemption of the Creditor Preferred Equity, then, at the election of the holder of the Seller Note and the Creditor Preferred Equity, the Purchaser would, to the extent permitted by law, surrender or otherwise transfer to the holder the built out systems and equipment of the Purchaser in satisfaction of the Seller Note and in full redemption of the Preferred Equity |
| **Other Material Matters**: | 1.      The definitive agreement will contain other representations, warranties, covenants and agreements customary for transactions of this type. |
| | 2.      The Bankruptcy Court will order all officers, directors and employees of the Company to transfer to the Purchaser at the closing all Assets of the Company in their possession or under their control. |
| | 3.      The closing date of the acquisition of the Assets will be subject to customary conditions for a transaction of this type but would in any event include (i) the Assets including at least 27,000 chips and chips' worth of wafers, (ii) agreement as to definitive documentation, (iii) settlements satisfactory to the Purchaser on the claims of Uniquify, Sonic and Ciara Tech to certain inventory of HashFast, including any cure costs relating to the assumption and assignment of any executory contract with Uniquify, Sonic or Ciara identified by the Purchaser to be included in the Assets, with HashFast and the Purchaser jointly participating in the settlement negotiations, (iv) approval of the Bankruptcy Court of the sale under an order in form and substance satisfactory to the Purchaser before the closing date, (v) there being no bar to assignment to the Purchaser of any executory contract elected to be assigned to the Purchaser and determined by the Purchase to be material to the transaction; (vi) the absence of a material adverse change in the business, with certain defined events excluded from the definition of material adverse change, (vii) arrangements between the Purchaser and the Designated Personnel satisfactory to the Purchaser, and |

6

(viii) the completion of the closing by an agreed upon "fast track" date.

A/76192260.16

7

# EXHIBIT 2

1  KATTEN MUCHIN ROSENMAN LLP
   Craig A. Barbarosh (SBN 160224)
2  craig.barbarosh@kattenlaw.com
   650 Town Center Drive, Suite 700
3  Costa Mesa, CA 92626-7122
   Telephone: (714) 966-6822
4
   Jessica M. Mickelsen (SBN 277581)
5  jessica.mickelsen@kattenlaw.com
   2029 Century Park East, Suite 2600
6  Los Angeles, CA 90067-3012
   Telephone: (310) 788-4425
7  Facsimile: (310) 788-4471

8  Peter A. Siddiqui (*pro hac vice*)
   peter.siddiqui@kattenlaw.com
9  525 W. Monroe Street
   Chicago, IL 60661-3693
10 Telephone: (312) 902-5455
   Facsimile: (312) 902-1061
11
   [Proposed] Counsel for Debtor and Debtor-In-Possession
12 HashFast Technologies LLC and HashFast LLC

13              **UNITED STATES BANKRUPTCY COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                   **SAN FRANCISCO DIVISION**

16 In re:                                ) Lead Case No. 14-30725
                                         )
17 HASHFAST TECHNOLOGIES LLC, a          ) (Proposed to be) Jointly Administered with:
   California limited liability company, )
18                                       ) Case No.
          Debtor and Debtor-In-Possession)
19                                       ) Chapter 11
                                         )
20 ────────────────────────────────      ) **DECLARATION OF MONICA HUSHEN**
                                         ) **IN SUPPORT OF DEBTORS' MOTION**
21 □ Affects HASHFAST LLC, a Delaware    ) **PURSUANT TO 11 U.S.C. §§ 105(A), 363,**
   limited liability company,            ) **365 AND FED. R. BANKR. P. 2002, 6004,**
22                                       ) **6006 AND 9014 FOR ENTRY OF ORDERS**
          Debtor and Debtor-In-Possession) **(I) AUTHORIZING THE SALE OF**
23                                       ) **ESTATE PROPERTY, (II)**
                                         ) **AUTHORIZING THE SALE OF ESTATE**
24                                       ) **PROPERTY FREE AND CLEAR OF**
                                         ) **LIENS, CLAIMS, ENCUMBRANCES AND**
25                                       ) **INTERESTS, AND (III) AUTHORIZING**
                                         ) **THE (A) ASSUMPTION AND**
26                                       ) **ASSIGNMENT OF CERTAIN**
                                         ) **EXECUTORY CONTRACTS AND**
27                                       ) **UNEXPIRED LEASES, (B) ASSUMPTION**
                                         ) **OF CERTAIN LIABILITIES; AND (C)**
28                                       ) **GRANTING CERTAIN RELATED**
                                         ) **RELIEF**
                                         )

1

I, Monica Hushen, hereby declare under penalty of perjury,

1.     I am the Chief Financial Officer and authorized representative of both HashFast Technologies LLC ("HashFast Technologies") and HashFast LLC ("HashFast" and, together with HashFast Technologies, the "Debtors"). I am generally familiar with the Debtors' day-to-day operations, business affairs, and books and records.

2.     This Declaration is submitted in support of the Debtors' Motion pursuant to 11 U.S.C. §§ 105(A), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities; and (C) Granting Certain Related Relief (the "Sale Motion").[1]

3.     The Debtors design, develop, manufacture and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

4.     The Debtors' current inventory consists mainly of ASIC chips (in wafer form or in various stages of completion), mining boards as well as various other system components used in the Bitcoin mining business. They also own certain intellectual property that includes, without limitation, trade secrets, mask works related chip design and patents.

5.     In the ordinary course of their business, the Debtors rely on Uniquify, Inc. ("Uniquify"), Ciara Technologies ("Ciara") and Sonic Manufacturing Technologies ("Sonic") (collectively, the "Supply Chain Service Providers") to assemble the Debtors' inventory of technology hardware and transport the finalized product to shippers to complete the Debtors'

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

2

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

sales.  The Supply Chain Service Providers are also presently in custody of a substantial amount of the Debtors' product and component inventory, which is central to the Debtors' business.  The Debtors estimate that the total product and component inventory held by the Supply Chain Service Providers has a current market value of approximately $5.7 million.

6.  Debtor Hashfast Technologies included the Supply Chain Service Providers on its Schedule F – Creditors Holding Unsecured Claims Nonpriority Claims for claims totaling roughly $771,000, with the claims by Ciara and Uniquify being in dispute.  The Supply Chain Service Providers have advised the Debtors that they will not provide any services and refuse to distribute the product and component inventory unless they receive an incremental payment of the amount allegedly owed to them on account of the Debtors' prepetition obligation.

7.  The Debtors, with the assistance of their advisors, actively marketed the Acquired Assets since April 2014, focusing on a sale of their assets, obtaining financing from banks or other lending sources, and/or obtaining equity infusions from capital sources.

8.  As discussed above, the bulk of the Debtors' inventory consists of incomplete chips and boards now in the possession of the Supply Chain Service Providers.  Every chip requires an average of approximately $450 to build out into a usable bitcoin mining system.  But the Debtors do not have the funds to complete their inventory in order to maximize the value of their assets.  Accordingly, the Debtors have been actively seeking a party to provide them with the needed liquidity to assist them in the release and completion of the build out its inventory.

9.  The Debtors have marketed the Acquired Assets by, without limitation, meeting with: (i) no fewer than 2 key competitors in the bitcoin mining equipment manufacturing and delivery market, (ii) no fewer than 10 debtor-in-possession financers, including several large banks, financing institutions, and funds that specialized in distressed financing transactions, (iii) 3 venture capitalists heavily involved in the bitcoin industry, and (iv) 2 large, Fortune 500

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

3

companies that are adding bitcoin to their electronic processing capabilities regarding purchasing the Debtors' assets. But none of these efforts resulted in any offers to purchase the Acquired Assets or any alternative form of investment or financing of the Debtors or their assets.

10. In addition, the Debtors met with 2 liquidators regarding a liquidation sale of the Acquired Assets, both of whom proposed to take significant off the top commissions (up to 20% in some instances) of any sale that occurred. These negotiations showcase the uncertain, disadvantageous liquidation market that exists for the Acquired Assets.

11. Only Liquidbits Corp. ("Liquidbits") submitted even a preliminary proposal regarding the purchase of the Acquired Assets. This proposal blossomed into a definitive agreement by which Liquidbits will create a new affiliate, Purchaser, to purchase all of the Acquired Assets. On July 18, 2014, the Debtors and Liquidbits finalized the term sheet by which Purchaser would purchase the Acquired Assets plus the assumption of certain liabilities, including cure costs and post-petition administrative expenses.

12. Since executing the Term Sheet, the Debtors still have not received any offers to purchase the Acquired Assets

13. Purchaser's offer and the Term Sheet have been the subject of extensive discussions and negotiations with the Debtors. The Debtors have performed due diligence, evaluating Liquidbit's and Purchaser's ability to perform under the Term Sheet. This due diligence will be made available to counsel to the Committee upon their request subject to their entrance into a confidentiality agreement given the nature of this information.

14. The Debtors propose to move forward with the Sale on an expedited basis and within a quick time frame because the Acquired Assets: (i) are subject to rapid depreciation given the nature of the Bitcoin mining industry and the value of the equipment used therein and (ii) are languishing in the hands of the Supply Chain Service Providers.

4

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

15. Bitcoins are a form of cryptographic currency that are widely traded in real time at exchanges all over the world. Bitcoins are created in accordance with a data protocol which is decentralized, that is, under no central control or authority. Thus, they are virtually impossible for any party to change. This protocol establishes the process, known as "mining," by which new Bitcoins are created through a competitive "winner takes all" race to calculate or decode "blockchains." The protocol by design increases the amount of work required to discover a new Bitcoin so that the average discovery rate is kept somewhat constant at ~1Bitcoin every 10 minutes; this has resulted in an increase in difficulty ("Difficulty") every ten to fourteen (10 to 14) days, which, in turn, reduces the Bitcoin return.

16. Bitcoin mining requires powerful and high-functioning equipment capable of quickly running complex calculations.

17. As a consequence of the increased efficiency of mining equipment and the increase in market price of Bitcoins, the value of processing capabilities is subject to rapid depreciation in two primary ways. First, as the Difficulty in calculating or decoding a blockchain ("mining") can increase each ten to fourteen (10 to 14) days, a corresponding reduction occurs in productive output of the same processing equipment (measured in hashes, gigahashes, terra hashes, or petahashes) each month. Second, a blockchain once "mined" becomes permanently unavailable to any other party to "mine" and there exist no means to prevent duplication of effort among different parties or to determine how close any other party is to discovering, "mining," a new blockchain (i.e., the first party to complete the process accrues 100% of the value). As the number of blockchains which are available to be "mined" each month is fixed and immutable, the economic value of processing power is a function of the percentage of overall global processing power employed in the "mining" process. As the total processing power employed on a worldwide basis increases substantially each month, a fixed data processing output becomes a smaller and less

5

Katten
KattenMuchinRosenmanllp

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

valuable percentage each day. The marketable value of the equipment used in Bitcoin mining (including Sierra units, Golden Nonce Chips and wafers) has declined approximately 13% every ten (10) days over the past two months, and took a rapid decline of 20% at the end of June (most likely due to large mining capacity being brought on line). The devaluation is publicized and fixed by the protocol.

18.     This rapid dissipation is made even more troubling for the Debtors given the fact that the bulk of its inventory remains incomplete and will require both time and money to complete so as to fully maximize their value.

19.     Because of the rapid dissipation in the value of the inventory included within the Acquired Assets, the Debtors must move forward with the Sale on an expedited basis and within a quick time frame. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors, and other parties in interest to complete the Sale as soon as possible and, in any event, by August 1, 2014.

20.     There are no entities that I am aware of that may hold Liens and Interests regarding the Acquired Assets that consent to the Sale free and clear of their Liens and Interests.

21.     To the extent that the Supply Chain Service Providers hold possessory liens, these junior liens and encumbrances are the subject of a bona fide dispute because the Debtors disputes their claims, and the Supply Chain Service Providers have advised the Debtors that they will not provide any services and refuse to distribute the product and component inventory unless they receive an incremental payment of the amount allegedly owed to them on account of the Debtors' prepetition obligation.

22.     To the extent that the Supply Chain Service Providers hold possessory liens, these Liens and Interests would attach to the proceeds of the Sale.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

6

I declare under penalty of perjury that the forgoing is true and correct.

Dated: July 17, 2014

Monica Hushen
Chief Financial Officer and Authorized
Representative of HashFast Technologies
LLC and HashFast LLC

7

# EXHIBIT 3

KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

-1-

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered with: |
| | Case No. 14-30866 |
| Debtor and Debtor-In-Possession | Chapter 11 |
| ☐ Affects HASHFAST LLC, a Delaware limited liability company, | **ORDER APPROVING DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365 AND FED. R. BANKR. P. 2002, 6004, 6006, 9014 AND 9019 FOR ENTRY OF AN ORDER (i) AUTHORIZING THE SALE OF ESTATE PROPERTY, (II) AUTHORIZING THE SALE OF ESTATE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (iii) AUTHORIZING THE (A) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) ASSUMPTION OF CERTAIN LIABILITIES; AND (C) GRANTING CERTAIN RELATED RELIEF** |
| Debtor and Debtor-In-Possession | |

A hearing on the motion pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 2006, 6006, 9014 and 9019 for Entry of Orders (i) authorizing and approving the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") to a newly-created affiliate of Liquidbits Corp. ("Purchaser") in accordance with the Term Sheet for Emergency Section 363 Sale dated July 18, 2014 (the "Term Sheet") attached thereto as **Exhibit 1**, (ii) authorizing and approving the Sale of the Acquired Assets to the Purchaser free and clear of liens, claims, encumbrances and interests, (iii) authorizing and approving of the license of the intellectual property of the Debtors to the Purchaser, (iv) authorizing and approving the release of all claims against Liquidbits Corp. ("Liquidbits") and its affiliates and (v) authorizing the (a) assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") to Purchaser (b) the assumption of certain liabilities (the "Assumed Liabilities") by Purchaser and (c) granting certain related relief. ( the "Motion"),[1] filed by the above captioned debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases (the

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

-2-

"Debtors"), was held before this Court on July 28, 2014, at 2:00 p.m., and appearances were as noted on the record.

Having considered the Motion and all related pleadings, any opposition thereto, and the arguments of counsel,

THE COURT FINDS THAT:

A.   Notice of the Motion was proper and adequate.

B.   The Purchaser (as subsequently defined) has acted in good faith and is entitled to the protections of Section 363(m) of the Bankruptcy Code.

Based on the foregoing and the findings and conclusions stated orally in the record, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1.   The notice of the Motion and the hearing thereon is approved as proper and adequate under the circumstances.

2.   The Motion is granted and the private sale to the Purchaser is approved as the highest and best offer.

3.   The Debtors are authorized to sell to the Purchaser the Acquired Assets, which include all of the assets previously or currently used in or useful to, necessary to or related to the conduct of all of the business of the Debtor, including but not limited to all chips, system components, board components, hashing boards, other inventory and equipment and all deposit accounts, but excluding from the Acquired Assets, (i) the Debtors' intellectual property, (ii) any claims arising under sections 547, 548, 549, and 550 of the Bankruptcy Code and any other claims against insiders (the "**Excluded Claims**"), (iii) HashFast LLC's equity interests in HashFast Technologies LLC, (iv) intercompany claims between HashFast LLC and HashFast Technologies LLC, (v) an amount not to exceed 3,000 chips and 5,000 chips' worth of wafers, which the Debtors reserve the right to sell in the ordinary course of their business operations during the pendency of their bankruptcy cases, and the proceeds of such sales; and (vi) any other assets determined by Purchaser not to be purchased (collectively, the "**Excluded Inventory**").

4.     The Debtors are also authorized to grant the Purchaser a perpetual, royalty-free, non-exclusive, world-wide, transferable license (the "License") of any intellectual property of the Debtors to use, process, develop or market chips, chips' worth of wafers and for use with mining equipment. The License shall include the right to create derivative works and to transfer the right. Any subsequent transfer of intellectual property by the Debtors shall be subject to the terms of the License.

5.     The Debtors are further authorized to convey to the Purchaser a 33% interest in any recoveries on the balance of the Excluded Claims, net of expenses (the "33% Interest").

6.     The Debtors shall not settle any Excluded Claim without the consent of the Purchaser and Liquidbits or the approval of this Court. The Purchaser shall be consulted on all strategies and material developments relating to the existence, pursuit or abandonment of any Excluded Claims. If an Excluded Claim is abandoned, the Debtors shall assign the Excluded Claim to the Purchaser at the Purchaser's request and any recoveries thereon shall belong to the Purchaser, free and clear of any liens, claims, interests, and encumbrances of the Debtors or any creditor. The Purchaser shall not object to any motion or other Court-approved arrangement pursuant to which Excluded Claims are pursued by the Creditors' Committee or any successor to the Creditors' Committee.

7.     The Purchaser shall provide consideration for its purchase of the Acquired Assets, the License and the 33% Interest consisting of: (i) up to $2,000,000 to pay certain administrative and priority claims and to establish a cash reserve and an amount acceptable to the Purchaser and sufficient to settle the claims of the Supply Chain Service Providers regarding certain inventory of the Debtors, (ii) the waiver of Liquidbits' pre-petition vendee claim (Docket No. 111) against the Debtors, (iii) the Seller Note, (iv) the Creditor Preferred Equity and (v) the assumption of certain liabilities of the Debtors; all in accordance with the terms and conditions that are set forth in the Asset Purchase Agreement filed with the Court on July __, 2014 [Docket No. ___] (the "Asset Purchase Agreement").

8.     Pursuant to Section 363(f) of the Bankruptcy Code, effective upon closing, the Sale of the Acquired Assets, the grant of the License and the conveyance of the 33% Interest will

-4-

vest in the Purchaser all right, title and interest of the Debtors and the bankruptcy estates in the Acquired Assets, License and the 33% Interest, free and clear of any and all claims, liens, interests, and encumbrances, including, without limitation, the liens, claims, interests, or encumbrances listed below (collectively, the "Affected Interests"):

> Any and all possessory or inchoate liens in favor of Uniquify, Inc., Ciara Technologies, and Sonic Manufacturing Technologies on the chip inventory in their respective possession

9.      Unless the holders of the liens, claims or interests identified in paragraph 8 have agreed to other treatment, their liens, claims or interests shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Acquired Assets.

10.     In accordance with Bankruptcy Rule 9019(a), the Debtors are authorized to execute a settlement and general release in favor of Liquidbits and its affiliates from all claims of the Debtors, including, without limitation, a release of any Excluded Claims against Liquidbits and any of its affiliates, except that the release shall not include a release of any claims against the Purchaser arising from the transactions contemplated by the Asset Purchase Agreement.

11.     This Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the Sale, all Affected Interests have been and hereby are adjudged and declared to be unconditionally released as to the Acquired Assets, the License and the 33% Interest.

12.     The Debtors are authorized to execute any such releases, termination statements, assignments, consents or instruments on behalf of any third party, including the holders of any liens, claims or interests identified in paragraph 8 of this Order, that are necessary or appropriate to effectuate or consummate the Sale.

13.     Other than the Assumed Contracts and the Assumed Liabilities, the Purchaser shall not assume any other liabilities of the Debtors whatsoever, fixed, contingent, known or unknown, matured or unmatured.

-5-

14.     All officers, directors and employees of the Debtors shall transfer to the Purchaser at the closing of the Sale all of the Acquired Assets in their possession or under their control and all materials necessary or useful for the Purchaser to benefit from the License.

15.     The Debtors' assumption and assignment to the Purchaser of the Assumed Contracts is integral to the transactions contemplated by the Term Sheet and is in the best interests of the Debtors and their estates, creditors, and all other parties in interest, and represents the reasonable exercise of the Debtors' business judgment. The Debtors have, to the extent necessary, cured or provided adequate assurance of cure of any default existing before the date of this Order with respect to the Assumed Contracts within the meaning of Bankruptcy Code § 365(b)(1)(A) and (f)(2)(A). The Purchaser's promise to perform the obligations under the Assumed Contracts after closing constitutes adequate assurance of future performance within the meaning of Bankruptcy Code § 365(b)(1)(C), (b)(3) (to the extent applicable), and (f)(2)(B). The Debtors are authorized to assume and assign to the Buyer the Assumed Contracts effective as of the entry of this Order.  Each counterparty to an Assumed Contract is forever barred and enjoined from asserting against the Debtors or the Purchaser, or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation arising under or related to the Assumed Contracts existing as of the closing of the transactions contemplated by the Term Sheet.  Any provision in any of Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows a party to such Assumed Contract to terminate, recapture, impose any penalty, or modify any term on the assignment of such Assumed Contract constitutes an unenforceable anti-assignment provision and is void.

16.     The Debtors and its officers, employees and agents are and they hereby are authorized to execute the Asset Purchase Agreement, or other related documents that are reasonably necessary or appropriate to complete the Sale and the other transactions contemplated by the Asset Purchase Agreement, and to undertake such other actions as may be reasonably necessary or appropriate to complete the Sale and other transactions.

17.     Except as otherwise provided in the Motion, the Acquired Assets shall be sold, transferred, and delivered to the Purchaser on an "as is, where is" or "with all faults" basis.

-6-

18.     The Purchaser is approved as a Purchaser in good faith in accordance with Section 363(m) of the Bankruptcy Code, and the Purchaser shall be entitled to all protections of Section 363(m) of the Bankruptcy Code.

19.     This Order shall be effective immediately upon entry. No automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

20.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Asset Purchase Agreement and related documents, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Acquired Assets, the License and the 33% Interest to the Purchaser, (b) resolve any disputes arising under or related to the Asset Purchase Agreement and related documents, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Acquired Assets, the License or the 33% Interest.

21.     The Asset Purchase Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by the parties without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on either Debtor's bankruptcy estate.

**END OF ORDER**

-7-

# EXHIBIT 1 TO ORDER

THIS TERM SHEET REPRESENTS AN OUTLINE OF THE BASIS ON WHICH THE
PURCHASER DESCRIBED BELOW WOULD PURCHASE THE ASSETS OF HASHFAST
LLC AND HASHFAST TECHNOLOGIES LLC. THE ACTUAL TERMS AND CONDITIONS
UPON WHICH THE PURCHASER MIGHT PURCHASE THE ASSETS ARE SUBJECT TO
SATISFACTORY COMPLETION OF INTERNAL APPROVALS, SATISFACTORY
DOCUMENTATION AND SUCH OTHER TERMS AND CONDITIONS AS ARE
REASONABLY DETERMINED BY THE PURCHASER.

## TERM SHEET FOR EMERGENCY SECTION 363 SALE

### Executive Summary

Liquidbits Corp. ("**Liquidbits**") has prepared this nonbinding term sheet for discussion
with HashFast Technologies LLC ("**HashFast**") regarding a purchase of assets from HashFast
Technologies LLC and HashFast LLC (collectively, the "**Company**") by a newly-created affiliate
of Liquidbits Corp. (the "**Purchaser**") on an accelerated time table through an emergency sale
pursuant to section 363 of the United States Bankruptcy Code (the "**Bankruptcy Code**") .

Liquidbits understands that HashFast LLC is a Delaware limited liability company, is the
parent company of HashFast and owns all of the intellectual property rights used by HashFast in
its business. Liquidbits also understands that both HashFast and HashFast LLC are debtors in
jointly administered cases in the Northern District of California under chapter 11 of the
Bankruptcy Code (collectively, the "**Case**"). This term sheet contemplates that the Purchaser
would purchase the assets of both HashFast and HashFast LLC.

Following the formation of the Purchaser, the Purchaser would purchase all of the Assets
(as defined below and with the exceptions set forth below) through an emergency section 363 sale
for the consideration described in this term sheet including a seller note in the principal amount of
$3 million and preferred equity in the Purchaser with a liquidation preference equal to $3 million.
Following the closing of the purchase, the Purchaser would (i) complete the manufacture of all of
the chips and other processing hardware currently in HashFast's inventory and realize on the
value of HashFast's inventory through bitcoin mining, and (ii) repay the seller note and redeem
the preferred equity from the cash proceeds of that realization. This structure is designed to
ensure that the value of the finished products from HashFast's current inventory would be
realized as expeditiously as possible and would flow back to HashFast's estate and its creditors.

### Terms

| | |
|---|---|
| **Assets to Be Purchased**: | All of the assets previously or currently used in or useful to, necessary to or related to the conduct of all of the business of the Company, including but not limited to all chips, system components, board components, hashing boards other inventory and equipment and all deposit accounts, but excluding from the assets (the "**Assets**") to be purchased |

(a) intellectual property,

(b) claims arising under sections 547, 548, 549, and 550 of the Bankruptcy

Code and any other claims that are against insiders (collectively, the "**Excluded Claims**"),

(c) HashFast LLC's equity interests in HashFast,

(d) intercompany claims between HashFast LLC and HashFast,

(e) an amount not to exceed 3,000 chips and 5,000 chips' worth of wafers (the "**Excluded Inventory**"), which HashFast reserves the right to sell in the ordinary course of its business operations during the pendency of the Case, and the proceeds of such sales of the Excluded Inventory, and

(f) any other assets determined by the Purchaser not to be purchased.

The Assets would be transferred to the Purchaser free and clear of any and all claims, liens, and interests in a transaction approved by the Bankruptcy Court under Sections 363 and 365 of the Bankruptcy Code.

**Intellectual Property:**

In further consideration of its purchase of the Assets, the Purchaser would receive a perpetual, royalty-free, non-exclusive, world-wide, transferable license of any intellectual property of the Company to use, process, develop or market chips, chips' worth of wafers and for use with mining equipment. The license would include the right to create derivative works and to transfer the right. Any subsequent transfer of intellectual property by the Company will be subject to the terms of the license.

**Excluded Claims:**

In further consideration of Liquidbits' and its affiliates' investment in the Purchaser and the waiver by Liquidbits of its vendee claim as provided below, Liquidbits and affiliates would receive a general release from the Company including a release of any Excluded Claims against Liquidbits and any of its affiliates.

In further consideration of its purchase of the Assets, the Purchaser shall be entitled to receive a 33% interest in any recoveries on the balance of the Excluded Claims, net of expenses. No settlement on an Excluded Claim will be permitted without the consent of Liquidbits or approval by the bankruptcy court. If an Excluded Claim is abandoned, the Excluded Claim will be assigned to the Purchaser at the Purchaser's request, with any recoveries thereon being for the Purchaser's account. The Purchaser shall be consulted on all strategies and material developments relating to the existence, pursuit or abandonment of any Excluded Claims. The Purchaser will not object to any motion or other court approved arrangement by which Excluded Claims are pursued by the creditors' committee or any successor.

**Capital Structure of**

The Purchaser would be a Delaware limited liability company. Its operating agreement would be included as an exhibit in the motion to approve the section 363 sale, or would be filed as an exhibit thereto as soon

2

Case: 14-30725    Doc# 134    Filed: 07/18/14    Entered: 07/18/14 14:21:41    Page 47 of 58

**Purchaser:**    as practicable after the filing of such a motion. The capitalization of the Purchaser would consist of preferred equity, common equity, investor debt and a seller note, all as further described below. The investments in the Purchaser consisting of common equity and investor debt would be sufficient to build out the chips and wafers sold to Purchaser, which amounts are estimated by the Company and the Purchaser not to exceed $8,000,000 to build out 27,000 chips and wafers. The investments would be comprised of a contribution to the Purchaser by Liquidbits of 1850 of chips purchased from HashFast and, for this purpose, valued at $370,000, and the balance in cash.

*Creditor Preferred Equity.* The Purchaser would be authorized to issue one class of preferred units (the "**Creditor Preferred Equity**") that would be in preference to any other classes of equity of the Purchaser. The Creditor Preferred Equity would have a liquidation preference but would not pay mandatory dividends. The Purchaser would not be permitted to make any payments on or redeem any of its other equity interests until the Creditor Preferred Equity is redeemed in full.

Until the Creditor Preferred Equity is redeemed in full, the Purchaser would not be permitted to make payments to any insiders other than on an arm's length basis for goods, services, intellectual property licensing or debt funding. The Purchaser would appoint an independent officer acceptable to the holder of the Creditor Preferred Equity (i.e., at closing the Company) whose approval would be required to insure that any payments to any insiders are made on an arm's length basis. The holder of the Creditor Preferred Equity would be entitled to monthly reports of the finances and operations of the Purchaser and would have a right to inspect the books and records of the Purchaser from time to time on reasonable notice.

The approval of the holder of the Creditor Preferred Equity (i.e., the Company or its permitted assignee) would be required for any changes to the economic terms of the Creditor Preferred Equity or for the selection, removal or replacement of the independent officer.

The Creditor Preferred Equity would be transferable to a liquidating trust for the benefit of holders of allowed general unsecured claims of the Company. The Credit Preferred Equity would not be otherwise transferable.

*Common Equity.* The remaining equity in the Purchaser would consist of Class A Common Units and Class B Common Units that have ratable economic interests in the aggregate without distinction between classes of Common Units.

The Class A Common Units would be owned by Liquidbits or an affiliate of Liquidbits and would have the right to elect the managers of the

Case: 14-30725    Doc# 134    Filed: 07/18/14    Entered: 07/18/14 14:21:41    Page 48 of 58

Purchaser and, except as provided below, to make all decisions concerning the Purchaser.

The Class B Common Units would be owned by those creditors of HashFast or HashFast LLC that, within 30 days following the closing of the sale, choose to purchase the Class B Common Units for cash and to participate in the debt financing referred to below and who meet the eligibility requirements established by the Purchaser to comply with federal and applicable state securities law for a non-public offering. Each eligible creditor electing to purchase Class B Common Units would be entitled to purchase the Class B Common Units ratably with each other eligible creditor electing to purchase. The approval of the Class B Common Units would be required for any changes to the economic terms of the Class B Common Units. The holders of the Class B Common Units would be entitled to periodic reports of the finances and operations of the Purchaser and would have a right to inspect the books and records of the Purchaser from time to time on reasonable notice.

*Investor Debt*. The holders of the Class A Common Units and the Class B Common Units would provide debt financing to the Purchaser ratably in accordance with their ownership of Class A Common Units and Class B Common Units at the time of purchase of the Common Units. The amount of the debt financing would be determined before or as soon as possible after the closing of the sale, and the terms of the debt financing would provide for interest at the annual rate of 8%. Any debt financing would be entitled to be repaid before there is any redemption of or other distribution on the Creditor Preferred Equity, except as provided below, or the Common Units.

*Seller Note*. The Purchaser would issue to the Company a note (the "Seller Note") in the principal amount of $3 million bearing simple interest at 8% per annum and having a maturity date of two years from closing. The Seller Note would be secured by a perfected security interest in all or substantially all of the assets of the Purchaser. If the investor debt is also secured by a security interest in assets of the Purchaser, there would be an intercreditor agreement that would address the priorities between the two security interests.

The Seller Note would be transferable to a liquidating trust for the benefit of holders of allowed general unsecured claims of the Company. The Seller Note would not be otherwise transferable.

**Payments:** Since the gross revenues of the Purchaser would be in bitcoins, all payments on the Seller Note and in redemption of the Creditor Preferred Equity would also be in bitcoins and would be transferred to a bitcoin wallet designated by the holder of the Seller Note or the Creditor Preferred Equity. Payments in bitcoins would reduce the obligations under the Seller

4

Note, or the liquidation preference of the Creditor Preferred Equity, denominated in U.S. dollars based on customary prices for sales of bitcoins in exchange for U.S. dollars

From and after the earlier to occur of (a) fourteen calendar days following the completion of the build out of all systems using the chips and wafers sold to the Purchaser by the Company (the "**Complete Build Out**"), and (b) December 1, 2014 (the "**Payment Commencement Date**"), on a periodic basis to be agreed and in any event weekly, an amount equal to 17% of the gross revenues of the Purchaser would be applied to the Seller Note and, once the Seller Note has been paid, to the redemption of the Creditor Preferred Equity. In the event systems are built out and deployed in mining activity by the Purchaser prior to the occurrence of the Complete Build Out, the Purchaser would sequester an amount equal to 17% of the gross revenues, less remaining build out costs, generated by such mining activity and distribute such amount to the Company on the Payment Commencement Date.

**Consideration:**   The consideration that the Purchaser would pay to the Company for the Assets would consist of the following:

1. Cash sufficient in the total amount not to exceed $2,000,000 (a) to pay for any allowed unpaid administrative and priority claims in the Case as of the closing date of the sale and any cure costs for executory contracts to be assumed and assigned to the Purchaser other than those with Uniquify, Sonic and Ciara Tech, (b) to establish a cash reserve for the wind-up of the Case and (c) in an amount acceptable to the Purchaser to resolve claims of Uniquify, Sonic and Ciara Tech to certain inventory of HashFast including any cure costs relating to the assumption and assignment of any executory contract with Uniquify, Sonic or Ciara Tech identified by the Purchaser to be included in the Assets;

2. Liquidbits' waiver of its pre-petition vendee claim against HashFast;

3. The Seller Note;

4. The issuance to the Creditor Preferred Equity to HashFast with a liquidation preference equal to $3 million; and

5. Any other liabilities of the Company that the Purchaser expressly agrees to assume in the definitive documentation.

**Assignment and Assumption of Certain**   The Company would assume and assign to the Purchaser those executory contracts of the Company identified by the Purchaser. The Purchaser may require an amendment to an executory contract as a condition to assumption. If the amendment is not approved by the non-debtor party or

A/76192260.16

| | |
|---|---|
| **Contracts**: | parties to the contract, the contract would not be assumed and assigned. |
| **Employees, Etc.**: | The Purchaser would offer employment or consulting arrangements to certain employees of HashFast (the "Designated Personnel"). Compensation for the consulting services would be paid to the Company with respect to Designated Personnel still employed by the Company. |
| **No Other Liabilities**: | Other than those executory contracts and any other liabilities that the Purchaser expressly agrees to assume in the definitive documentation, the Purchaser would assume no other liabilities whatsoever, fixed, contingent, known or unknown, matured or unmatured. |
| **Downside Protection**: | If the Purchaser determines that the cost of operations, including the cost of bitcoin mining, becomes non-economical and there are no further payments being made on the Seller Note or in the redemption of the Creditor Preferred Equity, then, at the election of the holder of the Seller Note and the Creditor Preferred Equity, the Purchaser would, to the extent permitted by law, surrender or otherwise transfer to the holder the built out systems and equipment of the Purchaser in satisfaction of the Seller Note and in full redemption of the Preferred Equity |
| **Other Material Matters**: | 1.     The definitive agreement will contain other representations, warranties, covenants and agreements customary for transactions of this type. |
| | 2.     The Bankruptcy Court will order all officers, directors and employees of the Company to transfer to the Purchaser at the closing all Assets of the Company in their possession or under their control. |
| | 3.     The closing date of the acquisition of the Assets will be subject to customary conditions for a transaction of this type but would in any event include (i) the Assets including at least 27,000 chips and chips' worth of wafers, (ii) agreement as to definitive documentation, (iii) settlements satisfactory to the Purchaser on the claims of Uniquify, Sonic and Ciara Tech to certain inventory of HashFast, including any cure costs relating to the assumption and assignment of any executory contract with Uniquify, Sonic or Ciara identified by the Purchaser to be included in the Assets, with HashFast and the Purchaser jointly participating in the settlement negotiations, (iv) approval of the Bankruptcy Court of the sale under an order in form and substance satisfactory to the Purchaser before the closing date, (v) there being no bar to assignment to the Purchaser of any executory contract elected to be assigned to the Purchaser and determined by the Purchase to be material to the transaction; (vi) the absence of a material adverse change in the business, with certain defined events excluded from the definition of material adverse change, (vii) arrangements between the Purchaser and the Designated Personnel satisfactory to the Purchaser, and |

A/76192260.16

Case: 14-30725    Doc# 134    Filed: 07/18/14    Entered: 07/18/14 14:21:41    Page 51 of 58

(viii) the completion of the closing by an agreed upon "fast track" date.

A/76192260.16

# EXHIBIT 4

Case: 14-30725   Doc# 134   Filed: 07/18/14   Entered: 07/18/14 14:21:41   Page 53 of 58

1  KATTEN MUCHIN ROSENMAN LLP
   Craig A. Barbarosh (SBN 160224)
2  craig.barbarosh@kattenlaw.com
   650 Town Center Drive, Suite 700
3  Costa Mesa, CA 92626-7122
   Telephone: (714) 966-6822
4
   Jessica M. Mickelsen (SBN 277581)
5  jessica.mickelsen@kattenlaw.com
   2029 Century Park East, Suite 2600
6  Los Angeles, CA 90067-3012
   Telephone: (310) 788-4425
7  Facsimile: (310) 788-4471
8  Peter A. Siddiqui (SBN 6278445)
   peter.siddiqui@kattenlaw.com
9  525 W. Monroe Street
   Chicago, IL 60661-3693
10 Telephone: (312) 902-5455
   Facsimile: (312) 902-1061
11
   Counsel for the Debtors
12 HashFast Technologies LLC and HashFast LLC

13              **UNITED STATES BANKRUPTCY COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                 **SAN FRANCISCO DIVISION**

16 In re:                             ) Case No. 14-30725
                                      )
17 HASHFAST TECHNOLOGIES LLC, et al.,[1] ) (Jointly Administered with HashFast LLC,
                                      ) Case No. 14-30866)
18              Debtors.              )
                                      ) Chapter 11
19                                    )
                                      )
20                                    ) **NOTICE OF ASSUMPTION AND CURE**
                                      ) **AMOUNT WITH RESPECT TO**
21                                    ) **EXECUTORY CONTRACTS OR**
                                      ) **UNEXPIRED LEASES POTENTIALLY**
22                                    ) **TO BE ASSUMED AND ASSIGNED IN**
                                      ) **CONNECTION WITH SALE OF**
23                                    ) **DEBTORS' ASSETS**
                                      )
24                                    )
                                      )
25 _____

26        **PLEASE TAKE NOTICE THAT:**
27
28 _____
   [1] The Debtors are HashFast LLC (FEIN 46-2943354) and HashFast Technologies LLC (FEIN 38-3913245).

Case: 14-30725    Doc# 134    Filed: 07/18/14    Entered: 07/18/14 14:21:41    Page 54 of 58

1.     On July 18, 2014, the above-captioned debtors and debtors-in-possession (the "Debtors") filed their motion for entry of an order (i) authorizing and approving the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") to a newly-created affiliate of Liquidbits Corp. ("Purchaser") in accordance with that certain Term Sheet for Emergency Section 363 Sale dated July 18, 2014 (the "Term Sheet"), (ii) authorizing and approving the Sale of the Acquired Assets to Purchaser free and clear of liens, claims, encumbrances and interests and (iii) authorizing the (a) assumption and assignment of certain prepetition executory contracts and unexpired leases identified by Purhcaser (the "Assumed Contracts") to Purchaser (b) the assumption of certain liabilities (the "Assumed Liabilities") by Purchaser, and (c) granting certain related relief. Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to them in the Motion or the Term Sheet.

2.     Pursuant to the terms of the Term Sheet, the Debtors will seek to assume and assign the Assumed Contracts hereto to the Purchaser, as the case may be, subject to approval at the proposed hearing to be held at 2:00 p.m. (prevailing Pacific time) on **July 28, 2014** (the "Sale Hearing") before the Bankruptcy Court.   On the date of the closing of the transactions contemplated by the Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Purchaser will pay the amount the Debtors' records reflect is owing for prepetition arrearages, if any, as set forth on **Exhibit 1** hereto (the "Cure Amount").  The Debtors' records reflect that all post-petition amounts owing under the Assumed Contracts have been paid and will continue to be paid until the assumption and assignment of the Assumed Contracts and that, other than the Cure Amount, there are no other defaults under the Assumed Contracts.

3.     Objections, if any, to the assumption and assignment of an Assumed Contract and/or to the proposed Cure Amount shall be raised orally at the Sale Hearing, or, if made in writing, must (a) state with specificity the cure amount asserted to be required, (c) include appropriate documentation thereof, (d) be filed with the Bankruptcy Court by July 24, 2014 and served on the following parties: (i) counsel to the Debtors, Katten Muchin Rosenman LLP, 2029 Century Park East, Suite 2600, Los Angeles, California   (Attn: Jessica M. Mickelsen), jessica.mickelsen@kattenlaw.com, (ii) counsel for Purchaser, Bingham McCutchen LLP, One

2

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Federal Street, Boston, MA 02110 (Attn: Edwin E. Smith), edwin.smith@bingham.com, (iii) counsel for the official committee of unsecured creditors, Baker Hostetler LLP, 11601 Wilshire Blvd., Suite 1400, Los Angeles, CA 60602 (Attn: Ashley M. McDow), amcdow@baker.com, and (iv) the Office of the United States Trustee for the Northern District of California, 235 Pine Street, Suite 700, San Francisco, CA 94104 (Attn: Julie M. Glosson), julie.m.glosson@usdoj.gov.

4. If an objection to the assumption and assignment of an Assumed Contract is timely filed and received, a hearing with respect to the objection will be held before the Bankruptcy Court at the Sale Hearing or such date and time as the Bankruptcy Court may schedule. If no objection is timely received, the non-Debtor party to the Assumed Contract will be deemed to have consented to the assumption and assignment of the Assumed Contract and will be forever barred from asserting any other claims, including but not limited to the propriety or effectiveness of the assumption and assignment of the Assumed Contract, against the Debtors or the Purchaser, or the property of either of them in respect of the Assumed Contract.

5. Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the Cure Amount set forth in the Cure Notice will be paid in accordance with the terms of the Sale Order. Further, there is adequate assurance of the Purchaser's future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Purchaser.

6. If an objection to the Cure Amount is timely filed and received and the parties are unable to resolve the dispute consensually, the amount to be paid under section 365 of the Bankruptcy Code, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors or by the objecting counterparty. At the Purchaser's discretion, and provided the Purchaser escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may be continued until after the Closing Date and the Assumed Contract(s) subjected to such Cure Amount shall be assumed and assigned to the Purchaser at the closing of the Sale.

7. If no objection is timely received, the Cure Amount set forth in **Exhibit 1** hereto will be controlling, notwithstanding anything to the contrary in any Assumed Contract or any

3

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

other document, and the non-Debtor party to the Assumed Contract will be deemed to have consented to the Cure Amount and will be forever barred from asserting any other claims in respect of such Assumed Contract against the Debtors, the Purchaser, or the Successful Bidder (as appropriate), or the property of any of them. The failure of any objecting person or entity to timely file its objection will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Sale, or the Debtors' consummation of and performance under the Agreement (including the transfer of the Acquired Assets and the Assumed Contracts free and clear of all claims, liens and interests), if authorized by the Court.

8. Prior to the date of the closing of the Sale, the Debtors may amend their decision with respect to the assumption and assignment of the Assumed Contract, including amending the Cure Amount, and provide a new notice amending the information provided in this notice, including, without limitation, a determination not to assume certain contracts.

Dated: July 18, 2014            KATTEN MUCHIN ROSENMAN LLP
                                Peter A. Siddiqui
                                Jessica M. Mickelsen


                                By: :/s/ Jessica M. Mickelsen
                                Counsel for Debtors
                                HashFast Technologies LLC and HashFast LLC

4

## **Exhibit 1**

[List of Contracts to Come]

5

US_100844821v1_385402-00003 7/18/2014 1:09 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax