TRACY HOPE DAVIS
United States Trustee for Region 17
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-2745
Telephone: (415) 705-3333
Facsimile: (415) 705-3379

By:    JULIE M. GLOSSON
         Trial Attorney (#230709)
         Email: Julie.m.glosson@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES LLC,<br><br>                Debtor-In Possession<br><br>Affects HASFAST LLC,<br><br>                Debtor-In Possession. | Lead Case No. 14-30725 DM<br><br>Jointly Administered with:<br><br>Case No. 14-30866<br><br>Chapter 11 |

**UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(A), AND IN THE ALTERNATIVE TO CONVERT CASE TO <u>CHAPTER 7 UNDER 11 U.S.C. § 1112(B)</u>**

Tracy Hope Davis, the United States Trustee for Region 17, by and through her undersigned counsel, respectfully moves the Court for an order directing the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1) and (2), and in the alternative, the United States Trustee moves for conversion of this case to chapter 7 under 11 U.S.C. § 1112(b).

## I. INTRODUCTION

The United States Trustee moves for the appointment of a chapter 11 trustee in the following jointly administered bankruptcy cases:

- In re HashFast Technologies LLC, Case No. 14-30725 ("Subsidiary"); and
- In re HashFast LLC, Case No. 14-30866 ("Parent") (collectively, "Debtors").

Cause to appoint a chapter 11 trustee under 11 U.S.C. § 1104(a), or in the alternative to convert this case to chapter 7 under 11 U.S.C. § 1112(b) exists based upon:

- Gross mismanagement of the Debtors;
- Material conflicts of interest between the two Debtors; and
- Continued losses or diminution in value with no prospect for reorganization.

In support of this motion, the United States Trustee requests that the Court consider the following documents filed concurrently herewith:

- Memorandum of Points and Authorities In Support of the United States Trustee's Motion to Appoint Chapter 11 Trustee under 11 U.S.C. § 1104(A), and in the Alternative to Convert Case to Chapter 7 under 11 U.S.C. § 1112(B);
- Declaration of Patricia A. Martin In Support of the United States Trustee's Motion to Appoint Chapter 11 Trustee under 11 U.S.C. § 1104(A), and in the Alternative to Convert Case to Chapter 7 under 11 U.S.C. § 1112(B);
- Exhibit 1 – excerpts of transcripts from the meetings of creditors in In re HashFast Technologies, LLC[1]; and
- Exhibit 2 – Summary of Raw Orders by month – attached to the Declaration of Ms. Martin.

///

---

[1] Due to the sheer volume of the transcripts, and the fact these transcripts were filed and appear in the Court's records at docket #148, only the excerpts are included in Exhibit 1

## II. STATEMENT OF FACTS

### The Nature of Debtors' Business and Procedural Posture

1. Debtors design, develop, and manufacture "certain chips and equipment" used to mine Bitcoin transactions. See Motion to Sell, ¶ 8 – dkt. #134.

2. The case of In re HashFast Technologies LLC was commenced as an involuntary petition by certain creditors on May 9, 2014.

3. The Subsidiary consented to an order for relief and moved to convert the case to chapter 11. Since conversion on June 4, 2014, HashFast Technologies has acted as debtor in possession.

4. The United States Trustee appointed an official committee of unsecured creditors ("Committee") on June 23, 2014 in HashFast Technologies, LLC.

5. HashFast LLC, the parent of HashFast Technologies, commenced a voluntary petition for relief under chapter 11 on June 6, 2014.

6. These cases were commenced after the Subsidiary was unable to deliver on orders which it had pre-sold resulting in customer refund demands and decline in sales.

### Since Inception Debtors Have Operated As A Single Economic Enterprise

7. The Parent was organized under the laws of the State of Delaware in May, 2013, and the Subsidiary was organized under the laws of the State of California in June, 2013.

8. Debtors are separate legal entities whereby operations reside with the Subsidiary, HashFast Technologies, LLC, and the Parent, HashFast LLC, owns the intellectual property, see Schedule B – case no. 14-30788.

9. The Subsidiary owns the inventory and is the sole source of funding for the Parent. See Schedule B, case no. 14-30725, Statement of Financial Affairs – item #1, case no. 14-30866.

10. Although separate legal entities, the Debtors routinely referred to themselves as "HashFast" in documents and at the meetings of creditors without distinction between the parent and the subsidiary.

11. The Debtors' financial records confirm this lack of distinction between the two entities with both entities making payments to intellectual property vendors.

|  |  | HF Parent | HF Subsidiary |
|---|---|---|---|
| Uniquify | 1st Generation | 269,000 | 7,613,939 |
| DX Corr | Generation 2 and 1.5 | 525,000 | 85,000 |
| Sandgate |  | 105,000 | 166,081 |
|  | Total | 899,000 | 7,865,020 |

12. The officers of the Parent and Subsidiary are the same: Monica Hushen, Chief Financial Officer, and Simon Barber, Chief Technology Officer.

13. Both Ms. Hushen and Mr. Barber, in addition to others, are equity security holders of the Parent. See List of Equity Security Holders – Case No. 14-30866 – dkt. #5.

14. The Parent has no employees while the Subsidiary had approximately 10 employees as of July, 2014, down from a peak of approximately 40 in April, 2014. See Martin Decl.

15. Ms. Hushen and Mr. Barber testified under oath on behalf of the Subsidiary and Parent at the first meeting of creditors in both cases on July 8, 2014. The first meeting was continued to July 15, 2014, where Ms. Hushen testified under oath. Mr. Barber was not made available for examination on July 15, 2014. The meetings in both cases have been further continued to August 12, 2014, when Mr. Simon is expected to appear and testify.

**The Debtors Insiders Are Equity Security Holders, Employees, and Creditors of Both Entities**

16. All of the officers of the Subsidiary and Parent are also equity security holders of the Parent. See List of Equity Security Holders – Case No. 14-30866 – dkt. #5.

17. Several current and former employees of the Subsidiary, including Tim Wong Eduardo de Castro, and John Skrodenis, also hold equity interests in the Parent. Id.

18. One employee of the Subsidiary, Chad Spackman, holds an 11.97% interest in the Parent, and his company, Sandgate Technologies, which did business with both Debtors. Both

Debtors scheduled Sandgate as a general unsecured creditor on their respective Schedule F. Sandgate also received payments from the Parent in the 90 days prior to filing. See Statement of Financial Affairs – Case No. 14-30866 – dkt. 17.

19. In January, 2014, Mr. Barber and then-CEO Eduardo de Castro of the Subsidiary voted to confer raises upon themselves and other employees. See Trans. July 8, 2014, 39:18 to 40:3.

20. The Subsidary shows receivables due from two employees for "[e]mployee advance", including Mr. de Castro in an amount of $31,087. See Schedule B – Case No. 14-30725 – dkt. #84.

**The Subsidiary is the Sole Source of Revenue for Both Debtors**

21. The Subsidiary reported total revenue of $19,655,709.81 from the sale of chips and equipment. See Statement of Financial Affairs, #1 – case no. 14-30725 – dkt. #92.

22. In 2013, Parent received cash totaling $1,002,643.77 from its Subsidiary and from "Equity Investments at formation." See Statement of Financial Affairs, #1 – case no. 14-30866.

23. The Subsidiary's obligation to make distributions to the Parent is governed by the only writing between the two entities: the Operating Agreement. This agreement states in pertinent part,

> 6.1 Payment. Distributions shall be made at such times, and from time to time as Member may determine.
> 6.2 Restrictions on Distributions. Notwithstanding Section 6.1, no distribution shall be made if, after giving effect to the distribution; (a) the Company would not be able to pay its debts as they become due in the usual course of business; or (b) the Company's total assets would be less than the sum of its total liabilities.

24. By comparison, the Subsidiary reported total disbursements to the Parent of $1,048,596.11 "to provide HashFast LLC with capital to pay its debts." See Statement of Financial Affairs, #23 – case no. 14-30725 - dkt. #92.

UST'S MOTION TO APPT TRUSTEE; CONVERT CASE: 14-30725, 14-30866    5
Case: 14-30725    Doc# 168    Filed: 08/08/14    Entered: 08/08/14 12:44:53    Page 5 of 10

25. There are no executory contracts scheduled by the Parent, and as discussed below, there are no licensing agreements between the Debtors for the Subsidiary's use of the Parent's intellectual property. See Schedule G – both Debtors.

**Debtors' Assets and Liabilities are Inextricably Intertwined**

26. Based upon the schedules, as filed, the Subsidiary identified assets totaling $8.6 million, consisting largely of finished and unfinished first generation chips, wafers, substrates, boards, and other Bitcoin server components.

27. The intellectual property related to the first generation chips and the $8 million in inventory is scheduled as owned by the Parent and assigned a value as "unknown."

28. The remaining scheduled assets of the Parent consist of funds held in one bank account and its 100% interest in the Subsidiary, also valued as unknown. The total value of all assets scheduled by Parent is $302.47.

29. As scheduled, the liabilities of the two entities are primarily owed by the Subsidiary, which reported claims totaling more than $15 million, consisting entirely of general unsecured claims.[2] The Parent, on the other hand, scheduled claims totaling $89,377, consisting entirely of general unsecured claims:[3]

- DX Corr Design Inc. scheduled as disputed at $0.00; and
- Sandgate Technologies at $89,377.

30. The only agreement by and between the Parent and the Subsidiary is the Subsidiary's LLC operating agreement.

31. Absent from Schedule G of either entity is a licensing agreement for use by the Subsidiary of the intellectual property owned by the Parent.

32. The Parent identified no executory contracts on Schedule G.

///

---

[2] For the Subsidiary, filed claims total $32,597,413.95.
[3] For the Parent, filed claims total $21,665,291.63.

## Debtors Have Been Unable or Unwilling to Provide the Value of Their Primary Asset, Its Intellectual Property

33. All of the intellectual property owned by or licensed to the Debtors is scheduled with a value as "unknown."

34. This is the case for the intellectual property associated with the first generation of chips which consists of two provisional patents, and trade secrets and mask works related to chip design, scheduled by the Parent. See Schedule B – Case No. 14-30866 – dkt. #19.

35. And, is also the case for the DX Corr Design, Inc. license to the Subsidiary for intellectual property related to subsequent generations, i.e., 1.5 and 2.0. See Schedule B – Case No. 14-30725 – dkt. #84.

36. Although "unknown," Mr. Barber testified that the value of the intellectual property ranged from $0 to $30 million. See Trans. July 8, 2014 – 65:13 to 66:5.

37. The proposed $2 million cash sale to Liquidbits included Debtors' intellectual property rights for which Debtor did not assign a value.

## The Subsidiary Received 89% of its Cash At a Time When It Did Not Have A Product Ready For Delivery

38. The Subsidiary began taking orders in August, 2013. See Martin Decl.

39. All sales were pre-orders in that the Debtors guaranteed delivery by December 31, 2013. Id.

40. Due to production delays and design flaws that developed between August, 2013 and December, 2013, the Subsidiary was not able to deliver product by the guaranteed ship date. Id.

41. These problems that delayed delivery were not corrected until January, 2014. Id.

42. The Subsidiary, however, continued to solicit and accept orders for pre-sales during the August to December time frame, during which it generated more than $17 million in sales. Id.

43. Of this $17 million, nearly $10 million was received in October and November. Id. at Exhibit.

44. The general unsecured creditor body for the Subsidiary is comprised largely of customers who placed pre-orders.

### The Debtors Attempt to Rush a Sale of Their Primary Assets Evidenced Continued Mismanagement

45. Under the proposed sale to Liquidbits, which was denied by the Court[4], Debtors intended to sell substantially all assets for cash not to exceed $2 million, a seller note in the principal amount of $3 million, waiver of the buyer's $5 million claim, preferred units in buyer, and assumption of unidentified liabilities. See Motion – case no. 14-30725 – dkt. # 134.

46. Under the terms of the sale, Debtors sought to transfer assets for which both Debtors still have not assigned a value, including intellectual property and avoidance actions.

47. Debtors admitted having not performed a valuation analysis for the avoidance actions as of July 15, 2014. See Trans. July 15, 2014, 53:10-19.

48. Debtors also failed to disclose the identity of the employees that were identified by Liquidbits as potential future employees.

### Debtors' Books and Records Are Not Reliable

49. Ms. Monica Hushen assumed responsibilities as the CFO of both entities on April 7, 2014.

50. Upon her arrival, Ms. Hushen described the Subsidiary's books and records upon her arrival as "not completely pulled together". She further explained that the transactional systems did not agree with the financial records, that order flow data was incomplete or inaccurate, and order chain and inventory records were incomplete. See Trans. July 15, 2014, 59:25 – 66:16.

51. By way of example, she testified that the Subsidiary was incorrectly reporting a large profit for 2013 but had only made a few shipments by the end of the year. Id.

---

[4] See Docket Text Order dated July 26, 2014.

52. Ms. Hushen testified that she focused on reconstructing the transactional systems, tying out cash flow to the companies' bank statements, and then reconciling the transactional and cash records. Ms. Hushen testified that the Quickbooks general ledger system remains unreliable. Ms. Hushen stated she could, however, produce a reliable balance sheet and profit and loss statement. Id.

53. Ms. Hushen stated that the transactions by and between the HF subsidiary and the HF parent would need to be reviewed for characterization for tax reporting purposes. Tax returns for both entities are on extension. Id.

54. Neither the Parent or Subsidiary identify claims against any third party arising from the production and design flaws that resulted in the Debtors' financial distress.

55. Several claims with vendors and trade creditors are identified as disputed. By way of example, are the $0.00 claims scheduled by both the Subsidiary and Parent for DXCorr Design. Ms. Hushen testified the dispute with DX Corr Design stemmed from confusion between the work performed and charged between the 2nd Generation and Generation 1.5 phases of DX Corr work, the manner in which DX Corr applied payments, the fact that the proposal for Generation 1.5 had not been signed by both parties, and the technology which would be deemed DX Corr intellectual property. See Martin Decl.

56. Debtors acknowledged at both meetings of creditors that amendments were needed to the schedules and Statement of Financial Affairs, but to date, none have been filed.

### III. JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157, and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and (O).

///

## IV. **PRAYER FOR RELIEF**

WHEREFORE, the United States Trustee respectfully requests the Court enter an Order directing the appointment of a chapter 11 trustee, or in the alternative, enter an order converting the case to Chapter 7, and for other relief as is just and appropriate under the circumstances.

Respectfully submitted,

Dated: August 8, 2014

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

 /s/ Julie M. Glosson
Trial Attorney
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-3333
Facsimile: (415) 705-3379