TRACY HOPE DAVIS
United States Trustee for Region 17
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-2745
Telephone: (415) 705-3333
Facsimile: (415) 705-3379

By: JULIE M. GLOSSON
Trial Attorney (#230709)
Email: julie.m.glosson@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES LLC,<br><br>Debtor-In Possession<br><br>______________________________<br><br>Affects HASFAST LLC,<br><br>Debtor-In Possession.<br><br>______________________________ | Lead Case No. 14-30725 DM<br><br>Jointly Administered with:<br><br>Case No. 14-30866<br><br>Chapter 11 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(A), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER 7 UNDER 11 U.S.C. § 1112(B)**



Case: 14-30725 Doc# 169 Filed: 08/08/14 Entered: 08/08/14 12:49:06 Page 1 of 17

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. THIS IS A CORE PROCEEDING ..... 1

III. THE UNITED STATES TRUSTEE HAS STANDING TO SEEK THE REQUESTED RELIEF ..... 1

IV. POINTS AND AUTHORITIES ..... 2

A. Appointment of Chapter 11 Trustee is Required Upon A Showing of Cause ..... 2

1. The Burden of Proof For Appointment is Preponderance of the Evidence ..... 2

2. "Cause" Exists to Appoint a Trustee Under 11 U.S.C. § 1104(a)(1) Because Debtors Have Been and Continue to Be Grossly Mismanaged. ..... 3

i. Debtors Have A History of Insider Self-Dealing ..... 4

ii. Terms of the Proposed Sale to Liquidbits Raise Questions About Debtors' Business Judgment ..... 5

iii. Debtors' Books and Records Are Not Reliable ..... 6

iv. Material Conflicts Between the Estates Evidence Gross Mismanagement Requiring The Appointment of a Trustee ..... 7

3. "Cause" Exists to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1) Because Debtors Solicited Orders For Product It Did Not Have the Present Ability to Deliver ..... 8

4. Appointment of a Trustee Under 11 U.S.C. § 1104(a)(2) Is In the Best Interests of Creditors and Estate. ..... 8

B. In the Alternative, Case Should Be Dismissed or Converted to Chapter 7 Under 11 U.S.C. § 1112(b). ..... 9

1. "Cause" Exists to Convert or Dismiss Case Because Debtors' Reports Show a Substantial Loss to the Estate and there is No Reasonable Prospect for Rehabilitation Under 1112(b)(4)(A) .......... 9

i. Substantial loss or diminution .......... 10

ii. No Likelihood of Rehabilitation .......... 10

C. This Case Should Be Converted .......... 11

D. There Are No Known Compelling Circumstances to Justify A Continuance .......... 11

V. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Cases**


Grogan v. Garner, 498 U.S. 279, 286 (1991) .......... 3

In re Altman, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999) .......... 2

In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr. D.N.H. 2007) .......... 9

In re Bellevue Place Associates, 171 B.R. 615, 622 (Bankr. N.D. Ill. 1994) .......... 4

In re Continental Holdings, Inc., 170 B.R. 919, 931 (Bank. N.D. Ohio 1994) .......... 10

In re Gateway Access Solutions, Inc., 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) .......... 9, 10

In re Hassen Imports P'ship, 2013 WL 4428508 (B.A.P. 9th Cir. 2013) .......... 9

In re Intercat, Inc., 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000) .......... 4

In re Jayo, 2006 WL 2433451, *6 (Bankr. D. Idaho July 28, 2006) .......... 9

In re Lowenschuss, 171 F.3d 673, 685-86 (9th Cir.1999) .......... 2, 8

In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998) .......... 3

In re Mense, 509 B.R. 269, 284 (Bankr. C.D. Cal. 2014) .......... 9

In re Microwave Products of America, Inc., 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989) .......... 4

In re Nelson, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006) .......... 11

In re Prods. Int'l Co., 395 B.R. 101, 107 (Bankr.D.Ariz.2008) .......... 9

In re Products Intern. Co., 395 B.R. 101, 107 (Bankr. D. Ariz. 2008) .......... 11

In re Schriock Const. Inc., 167 B.R. 569, 575 (Bankr. D.N.D 1994) .......... 10

In re SunCruz Casinos, LLC, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) .......... 3, 4

In re The 1031 Tax Group, LLC, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) .......... 3

In re V. Savino Oil & Heating Co., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) .......... 3

Sante Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.), 386 B.R. 548, 552 (Bankr. D. Del. 2008) .......... 10

Tradex Corp. v. Morse, 339 B.R. 823, 830-32 (D. Mass. 2006) .......... 2

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989) .......... 3

YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC), 505 B.R. 289, 302 (S.D. Cal. 2014) .......... 9

**Statutes**

11 U.S.C. § 102(3) .......... 4

11 U.S.C. § 1104(a) .......... 1, 2, 4, 11

11 U.S.C. § 1104(a)(1) .......... 2, 8

11 U.S.C. § 1104(a)(2) .......... 1, 8

11 U.S.C. § 1112(b) .......... 1, 9

11 U.S.C. § 1112(b)(2)(A)-(B) .......... 11

11 U.S.C. § 1112(b)(3) .......... 11

11 U.S.C. § 1112(b)(4)(A) .......... 9

11 U.S.C. § 1112(b)(4)(A)-(P) .......... 9

11 U.S.C. § 307 .......... 2

28 U.S.C. § 157(b)(2)(A) and (O) .......... 1

28 U.S.C. § 586 .......... 2

28 U.S.C. § 586(a)(3) .......... 1

28 U.S.C. § 586(a)(8) .......... 2

**Others**

Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy § 1112.04[6][a] (16th ed. 2009) .......... 10

Tracy Hope Davis, United States Trustee for Region 17, submits this memorandum of points and authorities in support of her motion to appoint a chapter 11 trustee under 11 U.S.C. § 1104(a), or in the alternative, to convert the above-captioned case to chapter 7 under 11 U.S.C. § 1112(b).

## I. <u>Introduction</u>

Cause exists for the appointment of a chapter 11 trustee in each of the above referenced chapter 11 cases due to the on-going gross mismanagement of these estates. The appointment of separate chapter 11 trustees is also necessary due to significant conflicts between the estates. The same facts that evidence gross mismanagement also justify appointment of a trustee under 11 U.S.C. § 1104(a)(2) and conversion of this case to chapter 7 under 11 U.S.C. § 1112(b). The United States Trustee's motion should be granted based upon evidence that shows Debtors have a history of self-dealing. The terms of the proposed sale to Liquidbits that include post-employment agreements for current management also raise questions about Debtors' business judgment. The Debtors' books and records are incomplete and not reliable, and the prospects for rehabilitation are remote. Moreover, by soliciting more than $17 million in pre-sales from customers when Debtors had the knowledge that the Subsidiary did not have the present ability to deliver the product constitutes incompetence, gross mismanagement or fraud within the meaning of 11 U.S.C. § 1104(a)(1) and cause for appointment of a trustee.

Although the United States Trustee has included the principal facts in the text that follows, she reserves the right to conduct discovery, and if appropriate under controlling laws and rules, to present further evidence in support of this motion at an evidentiary hearing.

## II. <u>This is A Core Proceeding</u>

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## III. <u>The United States Trustee Has Standing to Seek the Requested Relief</u>

The United States Trustee is charged with supervising the administration of cases under chapter 11 of title 11, <u>see</u> 28 U.S.C. § 586(a)(3), and may raise and be heard on any issue in any

case or proceeding, except that the United States Trustee may not file a chapter 11 plan. See 11 U.S.C. § 307.

The United States Trustee has standing to file a motion to dismiss or convert a case under chapter 11 pursuant to 11 U.S.C. § 1112(b). 28 U.S.C. § 586. In addition, section 586(a)(8) of Title 28 added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") states:

> (a) Each United States Trustee . . . shall - (8) in any case in which the United States trustee finds material grounds for any relief under section 1112 of title 11, the United States trustee shall apply promptly after making that finding to the court for relief.

The United States Trustee has standing to file a motion to appoint a trustee under 11 U.S.C. § 1104(a)(1). 11 U.S.C. § 1104(a).

## IV. Points and Authorities

### A. Appointment of Chapter 11 Trustee is Required Upon A Showing of Cause

Section 1104(a) of the Bankruptcy Code governs the appointment of a chapter 11 trustee, and provides that "the court ***shall*** order the appointment of a trustee" for cause, including gross mismanagement and incompetence, or if appointment is in the interest of creditors. See 11 U.S.C. § 1104(a)(1) and (2) (emphasis added). Whether cause exists for appointment is within the court's discretion. Lowenschuss v. Selnick (In re Lowenschuss), 171 F.3d 673, 685 (9th Cir. 1999).

#### 1. The Burden of Proof For Appointment is Preponderance of the Evidence

Parties seeking the appointment of a trustee under section 1104(a)(1) bear the burden of proving by a preponderance of the evidence that the appointment of a trustee is appropriate. The higher standard of clear and convincing evidence does not control. See Tradex Corp. v. Morse, 339 B.R. 823, 830-32 (D. Mass. 2006); In re Altman, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999), vacated in part on other grounds, 254 B.R. 509 (D. Conn. 2000) (same); see also Grogan v.

Garner, 498 U.S. 279, 286 (1991) (noting that the general standard of proof in civil and bankruptcy cases, and in non-dischargeability litigation in particular, is a preponderance of the evidence). But see In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998) (requiring clear and convincing evidence for the appointment of a trustee under 11 U.S.C. § 1104(a)); In re The 1031 Tax Group, LLC, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) (same). Although there is a presumption that a debtor will remain in possession, subsection (a)(1) "reflects criteria which mandate the appointment of a trustee for cause. . . .Under this subsection the court's discretionary powers are circumscribed and are limited to a judicial determination of whether 'cause,' as defined, exists." Tradex Corp., 339 B.R. at 827, quoting In re Eichorn, 5 B.R. 755, 757 (Bankr. D.Mass. 1980). For the reasons set forth below, the United States Trustee has satisfied her burden under section 1104(a)(1).

**2. "Cause" Exists to Appoint a Trustee Under 11 U.S.C. § 1104(a)(1) Because Debtors Have Been and Continue to Be Grossly Mismanaged.**

The presence of the statutory "causes" of fraud, dishonesty, incompetence, or gross mismanagement of a debtor's affairs for appointment of a trustee, is not a mandatory predicate to finding that "cause" exists. "Cause" for appointment of a trustee under 11 U.S.C. § 1104(a)(1) is a much broader concept:

> Section 1104(a) represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession. Under § 1104(a)(1), the words "including" and "or similar cause" before and after the enumerated examples of cause and 11 U.S.C. § 102(3) indicate that the grounds for appointing a reorganization trustee are not even limited to the derelictions specifically enumerated. The mandate of § 1104(a)(1) is explicit and should be enforced according to its plain language. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989).

In re V. Savino Oil & Heating Co., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); see also SunCruz Casinos, 298 B.R. at 828 (11 U.S.C. § 1104(a)(1) "provides a nonexhaustive list, including fraud, dishonesty, incompetence, or gross mismanagement, as conduct warranting appointment of a trustee for 'cause'."); In re Microwave Products of America, Inc., 102 B.R. 666, 671 (Bankr.



Case: 14-30725 Doc# 169 Filed: 08/08/14 Entered: 08/08/14 12:49:06 Page 8 of 17

W.D. Tenn. 1989) (same, noting that courts may consider prepetition, as well as postpetition conduct in determining the necessity of a trustee); 11 U.S.C. § 102(3)("In this title . . . 'includes' and 'including' are not limiting[.]").

Courts have given credence to the non-exhaustive nature of the list of circumstances, and substance to the term "cause," found in the text of 11 U.S.C. § 1104(a):

> Determinations to appoint a trustee pursuant to Section 1104(a)(1) are fact intensive. [citation omitted]. In addition to Section 1104(a)(1)'s enumerated examples of conduct constituting cause - fraud, dishonesty, incompetence, or gross mismanagement - courts have found cause to appoint a trustee based on the following factors:
>
> (1) Materiality of the misconduct;
> (2) Evenhandedness or lack of same in dealings with insiders or affiliated entities visa-vis other creditors or customers;
> (3) The existence of pre-petition voidable preferences or fraudulent transfers;
> (4) Unwillingness or inability of management to pursue estate causes of action;
> (5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;
> (6) Self-dealing by management or waste or squandering of corporate assets.

In re SunCruz Casinos, LLC, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003), citing In re Intercat, Inc., 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000); and In re Bellevue Place Associates, 171 B.R. 615, 622 (Bankr. N.D. Ill. 1994).

### i. Debtors Have A History of Insider Self-Dealing

From the inception of the Subsidiary in June, 2013, Debtors have managed their affairs and have done business as a single economic unit despite being separate legal entities. Prior to filing, Debtors failed to distinguish between the two entities in documents by referring collectively as "HashFast", employing the same officers for both entities[1], and both entities making payments on account of the same obligation. This conduct has continued post-petition with the sale of substantially all of the Debtors' assets without clear demarcation of which entities' assets are being sold and by referring to both entities as "HashFast" at the meeting of creditors. See Martin Decl.

---

[1] Simon Barber is the Chief Technology Officer and Monica Hushen is the Chief Financial Officer for both entities. See Statement of Financial Affairs, for each case.

By operating in a manner that fails to meaningfully distinguish between the two entities, management has engaged in a series of self-dealing transactions that demonstrate questionable business judgment that justifies appointment of a chapter 11 trustee.

First, in January, 2014, at a time when the Subsidiary had failed to deliver product, Chief Technology Officer Simon Barber and then-CEO Eduardo de Castro voted to give themselves and others raises. Mr. Barber, for example, gave himself a salary increase of approximately $76,000. See Trans. July 8, 2014, 39:18 to 40:3.[2]

Second, Mr. de Castro, who was relieved of his CEO duties on May 22, 2014, continues to earn the same salary as when he served as CEO. See Trans. July 8, 2014, 41:20 – 42:3; 159:3-17.

Third, at least one of the employees of the Subsidiary, Chad Spackman, holds an equity interest of 11.97% in the Parent, while his company, Sandgate Technologies, is a creditor of both Debtors (in the exact same amount) and received payments from the Parent in the 90 days prior to filing totaling $15,000. During the lifetime of the two entities, Sandgate received more than $270,000. See Martin Decl. ¶ 3(m).

**ii. Terms of the Proposed Sale to Liquidbits Raise Questions About Debtors' Business Judgment**

The Debtors' motion to sell substantially all of its assets to Liquidbits evidences that its management is not inclined or willing to manage this estate in a manner that is consistent with that of a fiduciary. Even if Debtors seek similar relief, the proposed sale raises serious questions about the Debtors' exercise of sound business judgment. This is evidenced by three key points in the proposal:

First, Debtors' management stood to gain from the proposed sale because the buyer had the option to offer "employment or consulting arrangements to *certain* employees of HashFast (the 'Designated Personnel')," see Term Sheet, p. 6 (emphasis added). Upon information and

[2] The transcript for the meetings of creditors that occurred on July 8, 2014 and July 15, 2014, are in the Court's record and found as an exhibit to Committee's motion for substantive consolidation. Excerpts referenced herein are attached to the United States Trustee's Motion and marked as Exhibit 1.


Case: 14-30725 Doc# 169 Filed: 08/08/14 Entered: 08/08/14 12:49:06 Page 10 of 17

belief, Debtors' CFO, Ms. Hushen, was one of the Debtors' personnel identified for potential employment by the buyer. Yet, the documents filed with the Court fail to disclose this potential arrangement or the identity of those "Designated Personnel." As the lead negotiator for Debtors[3], Ms. Hushen has a personal stake in the outcome of the sale to Liquidbits both as a shareholder of the Parent but also the potential for future employment. And, with Mr. Barber out of the country for an extended vacation, Ms. Hushen is the only officer managing day-to-day activities and negotiating terms of any sale. The presence of an active Committee does not cure the lack of confidence in management.

Second, under the terms of the sale to Liquidbits, Debtors proposed to transfer intellectual property interests and certain avoidance actions without providing a value for those assets. All of the intellectual property interests have been valued as "unknown" on their respective schedules. See Schedule B for both Debtors. As for the avoidance actions, and setting aside for the moment that none were identified with specificity in the motion, Debtors admitted just three days prior to filing the sale motion it had not undertaken an avoidance action analysis. See Trans. July 15, 2014, 53:10-19.

Third, the proposed sale to Liquidbits was more than just a sale of assets. Instead, it was a *sub rosa* plan disguised as a straightforward sale filed on an expedited basis to provide little, if any, opportunity for meaningful consideration.

**iii. Debtors' Books and Records Are Not Reliable**

Debtors' current CFO, Monica Hushen, acknowledged that at the time of her employment on April 7, 2014, the Debtors' books and records were not maintained in a reliable and competent manner. By way of example, when Ms. Hushen arrived, Debtors' records showed a profit for 2013 when the Subsidiary had not delivered its product as promised until after December 31, 2013. See Trans. July 15, 2014, 59:25 – 66:16.

[3] Mr. Barber testified on July 8, 2014, at the first meeting of creditors that Ms. Hushen was the lead negotiator. See Trans. 79:2-24.

Although Ms. Hushen undertook a lengthy reconstruction which is still ongoing, the records are not in a condition to allow for preparation of the tax returns. Id. Debtors have acknowledged their responsibility to amend their schedules to revise inventory totals, disclose all transfers to former insiders, identify claims against third party vendors arising from the production delays, but to date no amendments have been filed. See Trans. July 15, 2014, 7:6-20.

**iv. Material Conflicts Between the Estates Evidence Gross Mismanagement Requiring The Appointment of a Trustee**

Because the Debtors have been managed as a single economic unit, and have not observed basic corporate formalities for inter-company transactions, material conflicts exist between the two estates. These conflicts include the lack of licensing agreement between the two for the Subsidiary's use of the Parent's intellectual property; the transfer of funds by the Subsidiary to the Parent with no legal obligation, and isolating the potentially valuable intellectual property from the Subsidiary's creditors in a manner that could deprive the majority of creditors from recovering against the intellectual property.

First, despite the absence of a licensing agreement between the two Debtors the Subsidiary transferred more than $1 million to the Parent "to provide HashFast LLC with capital to pay its debts." See Statement of Financial Affairs, #23 – case no. 14-30725 - dkt. #92. There is no corresponding receivable shown on the Subsidiary's records for the funds transferred to the Parent. See Schedule B – case no. 14-30725 – dkt. #92. Such a receivable would ordinarily be expected when the Subsidiary did not generate a profit that would be distributed to the Parent.

Second, while the intellectual property resided with the Parent, the Subsidiary bore the greatest share of the payments to the intellectual property vendors by paying over $7.6 million to IP-related vendors while the Parent paid only $899,000. See Martin Decl. The end-product of the intellectual property owned by the Parent, to wit, the inventory is owned by the Subsidiary and valued at $8.5 million.

**3. "Cause" Exists to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1) Because Debtors Solicited Orders For Product It Did Not Have the Present Ability to Deliver**

The Subsidiary generated more than $19 million from the sale of Bitcoin mining chips, equipment, and systems since its inception. See Statement of Financial Affairs – item #1 – case no. 14-30725. More than $17 million or 89% of those sales occurred in 2013, see Martin Decl. – Exhibit 2, at a time when the Subsidiary has admitted it did not have a product ready for shipment. See Trans. July 8, 2014, 30:10 to 31:7, 138:11-16. The failure of this new company to deliver product when promised was the result of production and design flaws, which according to Mr. Barber, Debtors' Chief Technology Officer, were remedied in January, 2014. Id. By continuing to accept orders when it could not deliver, Debtors funded operations from creditor funds without adequate disclosure. Such conduct evidences incompetence, fraud or gross mismanagement within the meaning of 11 U.S.C. § 1104(a)(1), and constitutes "cause" for appointment of a trustee.

**4. Appointment of a Trustee Under 11 U.S.C. § 1104(a)(2) Is In the Best Interests of Creditors and Estate.**

The aforementioned facts, including the material conflicts and persistent self-dealing, make appointment of a trustee in the best interests of creditors and the estate under 11 U.S.C. § 1104(a)(1). Further, given that Debtors cannot or are unwilling to undertake to provide a complete and accurate valuation concerning its intellectual property, and are unable to provide an allocation of the sales proceeds between the estates, the best interests of creditors are served by the appointment of a chapter 11 trustee. Appointment of a chapter 11 trustee is in the best interests of creditors to restore confidence in the management of Debtors' assets. See In re Lowenschuss, 171 F.3d 673, 685-86 (9th Cir.1999).

By failing to amend their schedules, which Debtor have acknowledged are incomplete, justifies appointment of a chapter 11 trustee. See Trans. July 8, 2014, 22:16-24; Trans. July 15, 2014, 7:6-21.

### B. In the Alternative, Case Should Be Dismissed or Converted to Chapter 7 Under 11 U.S.C. § 1112(b).

Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that on the request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert the case to chapter 7, dismiss the case, appoint a chapter 11 trustee, or an examiner, whichever is in the best interests of creditors of the estate, if the movant establishes cause.

Section 1112(b)(4) sets forth a list of 16 grounds that constitute "cause" for conversion or dismissal. See 11 U.S.C. § 1112(b)(4)(A)-(P); see also In re Gateway Access Solutions, Inc., 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007). This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in Section 1112(b)(4). "Cause is a flexible standard, subject to the Court's discretion, and does not necessarily involve one or all of the those factors set forth in Section 1112(b)(4)." YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC), 505 B.R. 289, 302 (S.D. Cal. 2014) citing In re Prods. Int'l Co., 395 B.R. 101, 107 (Bankr.D.Ariz.2008). See also In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr. D.N.H. 2007) ("The list is not exhaustive . . . a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose."); In re Jayo, 2006 WL 2433451, *6 (Bankr. D. Idaho July 28, 2006) ("In [the Ninth] Circuit, the court has discretion to consider alleged causes not specifically listed in §1112(b).").

#### 1. "Cause" Exists to Convert or Dismiss Case Because Debtors' Reports Show a Substantial Loss to the Estate and there is No Reasonable Prospect for Rehabilitation Under 1112(b)(4)(A)

The continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation constitutes cause to convert of dismiss a case. 11 U.S.C. § 1112(b)(4)(A). In re Hassen Imports P'ship, 2013 WL 4428508 (B.A.P. 9th Cir. 2013); In re Mense, 509 B.R. 269, 284 (Bankr. C.D. Cal. 2014). Both prongs of this statutory cause are present in this case:

### i. Substantial loss or diminution

After just one month in chapter 11, Debtors are operating at a substantial deficit. See June Operating Reports. The Subsidiary's operating reports show a post-petition loss of more than $140,000, and while that was expected due to the limited ability of the Subsidiary to sell inventory, this loss is substantial and likely to continue under the circumstances of this case. "If the debtor is operating with a sustained negative cash flow or diminution in asset value after the commencement of the case, these facts are sufficient to justify a finding of 'substantial or continuing loss to…the estate.'" In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); see In re Schriock Const. Inc., 167 B.R. 569, 575 (Bankr. D.N.D 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.")(internal citation omitted). "A negative cash flow means that the estate's current liabilities are increasing more rapidly than cash is available to pay as due." Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy § 1112.04[6][a] (16th ed. 2009).

### ii. No Likelihood of Rehabilitation

"The standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather whether the debtor's business prospects justify continuance of the reorganization effort." In re Continental Holdings, Inc., 170 B.R. 919, 931 (Bank. N.D. Ohio 1994) (debtor lacked a reasonable likelihood of rehabilitation where debtor lacked reasonably certain source of income). "Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business." Sante Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.), 386 B.R. 548, 552 (Bankr. D. Del. 2008).

The sale of substantially all of the Debtors' assets outside of a plan of reorganization or liquidation makes reorganization unlikely. In addition, Debtors are noticeably silent regarding the exit strategy.

### C. <u>This Case Should Be Converted</u>

As described above, cause exists to convert or dismiss this case. Once "cause" is established, the court must then determine whether dismissal or conversion of the case, or appointment of a trustee under 11 U.S.C. § 1104(a) or an examiner is in the best interests of creditors and the estate, <u>see</u> 11 U.S.C. § 1112(b)(1), unless the court identifies "unusual circumstances" that such relief is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(2). <u>In re Products Intern. Co.</u>, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008); <u>In re Nelson</u>, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006) (section 1112(b) establishes a two-step analysis for dealing of questions of conversion or dismissal.) Once "cause" is found, the burden shifts to the debtor to show that there is a reasonable likelihood that a plan will be confirmed within a reasonable time, and, if the cause for conversion or dismissal includes an act or omission of the debtor, "(i) [] there exists a reasonable justification for the act or omission; and (ii) it will be cured within a reasonable time fixed by the court." 11 U.S.C. § 1112(b)(2)(A)-(B).

If the Court declines to order the appointment of a chapter 11 trustee, then the case should be converted to chapter 7 to preserve any remaining value for creditors.

### D. <u>There Are No Known Compelling Circumstances to Justify A Continuance</u>

Section 1112(b)(3) provides that "[t]he court shall commence the hearing" on a motion to convert or dismiss under section 1112(b)(1) "not later than 30 days after filing of the motion" and decide the motion "not later than 15 days after commencement of such hearing unless movant expressly consents to a continuance [] or compelling circumstances prevent the court from meeting the time limits." 11 U.S.C. § 1112(b)(3). The United States Trustee is not aware of compelling circumstances that justify deviating from the time frames required by section 1112(b)(3).

## V. Conclusion

WHEREFORE, the United States Trustee respectfully requests the Court enter an Order directing the appointment of a chapter 11 trustee, or in the alternative, enter an order converting the case to Chapter 7, and for other relief as is just and appropriate under the circumstances.

Respectfully submitted,

Dated: August 8, 2014

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

/s/ Julie M. Glosson
Trial Attorney
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-3333
Facsimile: (415) 705-3379