KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtors and Debtors-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HASHFAST TECHNOLOGIES LLC, *et al.*,[1]<br><br>Debtors. | Case No. 14-30725<br><br>(Jointly Administered with HashFast LLC, Case No. 14-30866):<br><br>Chapter 11<br><br>Hearing:<br>Date: September 10, 2014<br>Time: 9:30 a.m.<br>Ctrm: Hon. Dennis Montali<br>235 Pine Street, Courtroom 22<br>San Francisco, CA 94104 |

**DEBTORS' OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C § 1104(a), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER 7 UNDER 11 U.S.C. § 1112(b)**

---

[1] The Debtors are HashFast LLC (FEIN 46-2943354) and HashFast Technologies LLC (FEIN 38-3913245).

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. The Standard for Appointment of a Trustee is a High One. | 2 |
| | B. The Debtors' Management is Strong. | 4 |
| | C. The Debtors are Not Beset by Conflicts | 5 |
| | D. The Liquidbits' Sale Proposal Does Not Reflect Any Basis for a Trustee | 6 |
| | E. The Trustee's Other Arguments are Likewise Unsupported. | 7 |
| | F. A Trustee is Not in the Best Interest of Creditors | 8 |
| | G. Conversion is Not Appropriate | 9 |
| III. | CONCLUSION | 10 |

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re The 1031 Tax Group LLC*,
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ...................................................................................3

*In re Adelphia Commc'ns Corp.*,
336 B.R. 610 (Bankr. S.D.N.Y.2006) ..................................................................................3

*In re Am. Capital Equip., LLC*,
688 F.3d 145 (3d Cir. 2012) .................................................................................................9

*In re AVI, Inc.*,
389 B.R. 721 (9th Cir. B.A.P. 2008) ...................................................................................9

*In re Bayou Group, LLC*,
564 F.3d 541 (2d Cir. 2009) ................................................................................................8

*In re Bronson*,
No. 12-1320, 2013 WL 2350791 (9th Cir. B.A.P. May 29, 2013) .......................................9

*In re Euro–American Lodging Corp.*,
365 B.R. 421 (Bankr. S.D.N.Y. 2007) ............................................................................2, 3

*In re Gabriel Tech. Corp.*,
No. 13-30340DM, 2013 WL 2318581 (Bankr. N.D. Cal. May 28, 2013) ...........................7

*In re Ionosphere Clubs, Inc.*,
113 B.R. 164 (Bankr. S.D.N.Y.1990) ..................................................................................2

*In re Marvel Entertm't Group, Inc.*,
140 F.3d 463 (3d Cir.1998) ..................................................................................................3

*In re Real Estate Partners, Inc.*,
2007 WL 7025114 (Bankr. C.D. Cal. Nov. 20, 2007) .........................................................3

*In re Real Estate Partners, Inc.*,
No. 07-1440, 2009 WL 3246619 (C.D. Cal. Oct. 5, 2009) .............................................2, 3

*In re Sharon Steel Corp.*,
871 F.2d 1217 (3d Cir. 1989) ...........................................................................................2, 3

**Statutes**

11 U.S.C. § 1104(a) .....................................................................................................................1

11 U.S.C. § 1104(a)(1) ............................................................................................................2, 3

ii

11 U.S.C. § 1104(a)(2) ................................................................................................................3

11 U.S.C. § 1104(e) ....................................................................................................................4

iii

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby respectfully submit this opposition to the United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), and in the Alternative to Convert Case to Chapter 7 Under 11 U.S.C. § 1112(b) (the "Trustee Motion"), and states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Debtors' bankruptcy cases have precise goals: maximizing the value of the Debtors' assets for the benefit of their creditors and pursuing a consensual chapter 11 plan that concludes these cases. At the outset of these cases, the Debtors advised all parties of those goals and pleaded for a collaborative atmosphere in which to achieve them.

The Debtors' creditors heard that plea and have come to be critical to the success of the Debtors' goals. Important creditors, like the Official Committee of Unsecured Creditors (the "Committee"), Liquidbits Corp., and other significant creditors represented by Gallo LLP, have worked well with the Debtors to engage in consensual and value-maximizing steps to amicably and promptly resolve these cases. Indeed, as the parties reported to the Court on August 8, 2014, the Debtors and the Committee have recently met, conferred, and taken collaborative steps to resolve any disputes among them and to move forward consensually. On that very day, the United States Trustee (the "UST") filed its Trustee Motion. In other words, just when the Debtors and their creditors reached an accord, and perhaps because of that accord, the UST now seeks the appointment of a trustee or conversion. The motion is not in the best interest of these estates, nor is it legally or factually sustainable. The Trustee Motion should be denied.

None of the bases that the UST alleges in support for the appointment of a trustee is valid under the circumstances. The lack of merit to the Trustee Motion lays bare an unfortunately inflexible policy of the UST's office: if a debtor retains a chief restructuring officer, the UST will automatically move for the appointment of a trustee. The UST has been very professional and forthright about its policy, but the Debtors had hoped that, given the cooperation from their creditors, the hiring of a chief restructuring officer in this case would lend some flexibility and not

1

be met with the Trustee Motion. And it should not have been met with the Trustee Motion given the insufficient bases that the UST asserts, which the Debtors now are forced to rebut with scarce financial resources, time and focus that would be better preserved for solutions to benefit creditors of the estate, not to increase administrative burdens.

## II. ARGUMENT

The UST's stated bases for the relief sought are that the Debtors have been grossly mismanaged, material conflicts exist between the Debtors, and the Debtors are suffering losses and cannot reorganize. None of those is correct or constitutes a valid basis to appoint a chapter 11 trustee or convert these cases. In fact, contrary to the UST's summary accusations, the Debtors have strong, knowledgeable, and independent management in place to ensure that all actions are being taken with creditors' recovery in mind. Moreover, any of the UST's criticisms that do have an arguable factual basis arose from alleged incidents that occurred when different individuals were in charge of the Debtors and their affairs. In addition, no material conflicts exist among the Debtors. And their reorganization prospects continue to be likely, as the assets that the Debtors continue to possess continue to be valuable and viable sources of recovery for creditors. No creditor has sought the imposition of a chapter 11 trustee, and no party has joined in the UST's efforts. Clearly, the maintenance of the Debtors in possession is in the best interest of these estates.

### A. The Standard for Appointment of a Trustee is a High One.

The appointment of a chapter 11 trustee is an extraordinary remedy. *In re Real Estate Partners, Inc.*, No. 07-1440, 2009 WL 3246619, at *1 (C.D. Cal. Oct. 5, 2009); *see also In re Euro–American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule."). There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y.1990). The party seeking appointment of a chapter 11 trustee has the burden of showing, by clear and convincing evidence, "cause" under § 1104(a)(1),

2

or the need for a trustee under § 1104(a)(2). *Euro–American Lodging Corp.*, 365 B.R. at 426; *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y.2006) (citing *In re Marvel Entertm't Group, Inc.*, 140 F.3d 463, 471 (3d Cir.1998)). Moreover, the Court has wide discretion in considering the relevant facts in deciding whether to appoint a trustee. *In re Sharon Steel Corp.*, 871 F.2d at 1226; *Adelphia*, 336 B.R. at 656 ("The decision to appoint a chapter 11 trustee is a factual determination entrusted to the discretion of the bankruptcy judge.")

The UST has a high bar to achieve in demonstrating by clear and convincing evidence that, despite zero creditor support, a chapter 11 trustee should be appointed. In addition, in instances where debtors have taken post-petition steps to ensure that any perceived prepetition management issues are cured, the standard to appoint a trustee is even tougher. *In re The 1031 Tax Group LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007) ("When considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management, not the misdeeds of past management.") Indeed, courts have held that when a debtor has taken affirmative steps to appoint a chief restructuring officer, that act essentially vitiated prior management's alleged conduct, especially when new management is free from the taint of prior management. *Id.*; *see also In re Adelphia Communications Corp.*, 336 B.R. 610, 656-58 (Bankr. S.D.N.Y. 2006) (concluding that a trustee motion premised on section 1104(a)(1) is "nearly frivolous" because of the installment of new management); *Real Estate Partners*, 2009 WL 3246619, at *1 (refusing to appoint trustee in light of installation of responsible person with a reputation for integrity, extensive experience, no prior involvement with the debtors, appointed by consent of all debtors, and without any objection from creditors). Where alleged past management issues have been remedied, the standard for appointment of a trustee becomes the highly discretionary standard of whether such appointment "is in the interests of creditors" found at § 1104(a)(2). *In re Real Estate Partners, Inc.*, 2007 WL 7025114, at *3 (Bankr. C.D. Cal. Nov. 20, 2007).

The UST has failed to meet that high burden. The Trustee Motion must be denied.

3

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

### B. The Debtors' Management is Strong.

The Debtors are currently managed by Peter Kravitz, their chief restructuring officer and their designated responsible individual. On a daily basis, since his retention, I have worked directly with Mr. Kravitz or others assisting him in connection with his duties. The management arrangement of the Debtors has been derived through open and transparent discussions with the Debtors' creditor constituencies, including the Committee. (Declaration of Simon in Support of this Opposition ("Barber Declaration") at ¶ 3.) The UST has not, and could not, accuse either officer of the Debtors of any misconduct or mismanagement during the pendency of these cases.[2]

Instead, the UST cites minor occurrences that happened prior to the commencement of these cases and have been completely remedied entirely by the Debtors' own choice. For example, the UST complains that Simon Barber was awarded a raise in January 2014. As was made clear to the UST at the 341 meeting on July 8, Mr. Barber's annual salary went from $144,000, a sum so low that Mr. Barber was having trouble meeting his living expenses, to $220,000. (*See* Exhibit 1 to the Trustee Motion at 63-64.) Mr. Barber's initial salary was far below market, causing him to have difficulty meeting his living expenses. The Debtors conducted an investigation into the salaries paid to chief technology officers in technology companies based in the San Francisco area. That investigation confirmed that his initial salary of $144,000 was very below market and, in fact, was below the 10th percentile of San Francisco area chief technology officers. After the raise, Mr. Barber's salary was $220,000 per year, which remained 10% below the median salary for San Francisco area chief technology officers. In other words, his raise increased his salary from a below market rate to a level still below the median of the market. (Barber Declaration at ¶ 4.) In addition, Mr. Barber voluntarily took a $25,000 pay cut during the pendency of these cases. (*See* Stipulated Order by and among the Debtors and the Creditors' Committee with Respect to the Debtors' Motion to Amend Gap Period Stipulation, Docket No. 132, at ¶ 6; Barber Declaration at ¶ 5.)

---

[2] Evidencing as much, the UST did not seek relief under 11 U.S.C. § 1104(e).

4

Case: 14-30725_2_38540-2-#00189 27/2014 02 FM Filed: 08/27/14    Entered: 08/27/14 16:56:51    Page 8 of 14

The UST also incorrectly argues that Eduardo de Castro's salary has not changed despite his removal from his position of officer and director for the Debtors. Mr. de Castro has voluntarily accepted a capped, commission-only pay structure, insuring that he makes no more than $144,000 per year, which was his 2013 salary. (*Id*.; Barber Declaration at ¶ 6.)

The UST fails to connect the dots as to how reasonable salaries paid to employees of the Debtors, especially when those salaries have been voluntarily reduced, connote mismanagement. The UST's relief simply is inappropriate on that basis.

Next, the UST complains about the Debtors' confession that its prepetition books and records were not well maintained. Not so. Prior to the commencement of the Debtors' cases, the Debtors kept sufficient records to track orders and produce financial accounts and reports. In April 2014, the Debtors hired Monica Hushen for the purposes of, among other things, organizing and updating the Debtors' books and records. Until the retention of Mr. Kravitz, Ms. Hushen was the Debtors' chief financial officer and responsible person. She was an independent person who had no connection to the company until just before these cases commenced. During her time with the Debtors, Ms. Hushen embarked on the labor- and time-intensive project to ensure the reliability of the Debtors' financial records. (Barber Declaration at ¶ 7.) Ms. Hushen testified at the 341 meeting that, as of that date, the Debtors could produce reliable financial statements, balance sheets, and profit and loss statements. (*See* Exhibit 1 to the Trustee Motion at 63-64.) The Debtors' current books and records are neither poorly maintained nor unreliable, and the UST has asserted no evidence, or even argument, to the contrary.

**C.      The Debtors are Not Beset by Conflicts**

The UST alleges material conflicts between the two Debtors. Upon inspection, though, that allegation is nothing more than a highlight of normal, inter-company interactions that will have no effect on the Debtors' creditors or these estates.

The UST points to the fact that the Debtors have licensing arrangements with one another, share officers and directors, and share creditors. The UST cites to no case saying those are factors supporting the appointment of a trustee.

5

Case: 14-30725_2_3540c#0_0189 27/2014 02 PM
Case: 14-30712_2_3540c#0_0189 27/2014 02 PM    Entered: 08/27/14 16:56:51    Page 9 of 14

1   The goal of these cases is to liquidate the Debtors' current inventory and then either sell or reorganize around their intellectual property and future chip designs. (Barber Declaration at ¶ 11.) In other words, the current structure of the Debtors is likely to change significantly, thereby rendering any perceived connections between the Debtors moot.

Moreover, the Committee's substantive consolidation motion is pending before the Court and will be heard on the same date and time as the Trustee Motion. (*See* Doc. Nos. 148 and 175). The Debtors have not filed any opposition to that motion, and neither has Mr. Barber, a significant equity interest holder in these cases. Accordingly, any potential harm to these estates, of which the Debtors see little, will be removed upon the substantive consolidation of the two Debtors.

**D.  The Liquidbits' Sale Proposal Does Not Reflect Any Basis for a Trustee**

The UST asserts, with no support, that the now-withdrawn asset sale demonstrates a basis to support the appointment of a trustee. The reasoning is deeply flawed and unsupported by the facts.

The Debtors' filed their sale motion (Docket No. 134) because they believed it was the best deal they had received. In fact, as of the date hereof, it has been the only concrete offer they have received to purchase substantially all of the Debtors' inventory. (Barber Declaration at ¶ 8.) The Debtors asserted that the Liquidbits transaction had the potential to achieve $8,000,000 in proceeds for their estates. Plus, the Liquidbits transaction would have resulted in Liquidbits waiving its claims, which represents nearly one-third of scheduled unsecured claims. The Debtors believed it was in the best interest of the estate to press forward with a motion to approve the Liquidbits' proposal because it was the only deal on the table and would have been pulled from consideration by the purchaser absent a prompt closing. Under those circumstances, the Debtors felt the best way to maximize the value of the inventory was to seek expedited consideration of the sale motion.

The UST makes the unfounded accusation that Ms. Hushen had a personal stake in the closing of the Liquidbits' sale, which caused her to be a poor activist for the estates in negotiations. That is unsupported, unsupportable, and dead wrong. Ms. Hushen was an ardent

6

advocate for the Debtors in the negotiations with Liquidbits. (Barber Declaration at ¶ 9.) She was a fierce negotiator, with an appreciation for her role and duties as a designated responsible person, and demanded several important elements of the deal that made it better for creditors. For example, Ms. Hushen ensured that Liquidbits' proposal specifically excluded the purchase of Debtors' intellectual property and avoidance actions, the exact two features the UST incorrectly posits were evidence of her interestedness. Worse, the UST asserts "on information and belief" that Ms. Hushen was to be employed by the buyer post-closing. The UST has no basis for that factual assertion. In fact, until the sale hearing, the parties had not decided on whether she would work for the buyer. Unfounded and wild accusations, especially when demonstrably incorrect, cannot be the basis for the appointment of a trustee.

**E. The Trustee's Other Arguments are Likewise Unsupported.**

Littered throughout the Trustee Motion are other factual assertions that simply do not withstand scrutiny. For example, the UST alleges that the Debtors accepted orders when they could not deliver product (Docket 169 at 8) and that all of the Debtors' pre-orders had guaranteed dates of December 31, 2013. (Docket 168 at 7.) The UST cites to testimony from Simon Barber (Exhibit 1 to Trustee Motion at 2-3, 10.) But nowhere in that citation does Mr. Barber say that the Debtors accepted orders when they knew they could not deliver product. Plus, only the first batch of pre-orders were guaranteed by December 31, 2013. All subsequent pre-orders had later guaranteed dates. In January 2014, having missed the first guaranteed date, as a precaution, the Debtors ceased accepting all orders, including orders with far later guaranteed dates. (Barber Declaration at ¶ 10.). The UST's inaccurate factual reporting cannot lead to the imposition of a trustee.

Next, the UST asserts that the Debtors have suffered from substantial losses and have no likelihood of rehabilitation. The UST argues, without citation to anything, that a sale of the Debtors' inventory makes reorganization unlikely. On the contrary, the Debtors fully expect to be able to sell their current inventory and to reorganize around their intellectual property and future chip designs, all of which maintain more value than they would with the imposition of a trustee.

7

*See In re Gabriel Tech. Corp.*, No. 13-30340DM, 2013 WL 2318581, at *3 (Bankr. N.D. Cal. May 28, 2013) (Montali, B.J.) (refusing to appoint a trustee when a company with limited operations would sustain marginal losses). This currently is being worked out with the Committee and a plan is expected in the near future. Notably, the 120-day exclusivity period has not even run since an order for relief was entered for HashFast Technologies LLC effective June 4, 2014 (Docket No. 110) and a chapter 11 petition was filed for HashFast LLC on June 6, 2014 (Docket No. 1). This path only can work, and value only can be maximized, if current management is involved in the process. The last thing this estate needs is further administrative burdens of a new party to this case who lacks the history, experience, and know-how to move this case along. This serves as yet another basis for denying the Trustee Motion.

### F. A Trustee is Not in the Best Interest of Creditors

The Debtors' creditors are best served by the maintenance of the Debtors' current management and its continuing effort to sell the Debtors' inventory and to reorganize around the Debtors' intellectual property. That has been the goal from the outset of these cases, and that goal has obtained the full buy-in of the largest creditors of the Debtors, as well as the Committee. That fact is made clear by the fact that no creditor has joined the Trustee Motion. That fact alone is sufficient to rebut the UST's assertion that a trustee appointment is in the best interest of the estates. *In re Bayou Group, LLC*, 564 F.3d 541, 547 (2d Cir. 2009). In *Bayou*, the United States Trustee crusaded to unseat the management at a failed hedge fund. However, no creditor, investor, or the appointed creditors' committee supported the trustee. The court there held that the trustee failed to show any evidence why a trustee appointment was in the best interest of the estate, and, when coupled with the lack of any support from the creditor body, the motion was denied. *Id*. at 547-548.

The same outcome is warranted here. The UST has no support from any creditor. The Trustee Motion also lacks any real support for its assertion that a trustee is in the best interest of the estates. The UST's argument merely is that the Debtors' schedules need to be slightly amended and that the Debtors' intellectual property has not been appraised. The UST cites to no

8

authority as to why those two facts support a trustee appointment. Moreover, the Debtors have filed their amended schedules. (*See* HashFast Technologies LLC Docket Nos. 176-179; HashFast LLC Docket Nos. 30-34.) As for appraising the Debtors' intellectual property, the Debtors have not had it appraised, nor would the cost of such appraisal make sense under the circumstances. Included in the Debtors' intellectual property are trade secrets that require personal know-how of the Debtors' management team. (Barber Declaration at ¶ 12.) The UST does not even attempt to explore how removing that management team will preserve that value. The reason for that is clear: retaining the Debtors' current management is critical to the success of these chapter 11 cases. The Trustee Motion must be denied.

### G. Conversion is Not Appropriate

As the UST has failed to establish cause to appoint a trustee, cause does not exist to support conversion either. A finding of cause is mandatory before conversion can even be considered. *In re AVI, Inc.*, 389 B.R. 721, 729 (9th Cir. B.A.P. 2008); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). As noted above, the UST has failed to elucidate any basis for cause that withstands any scrutiny. Moreover, the Debtors' cases are just three months old, far too short a time to allege that a plan cannot be confirmed in a reasonable time. *See Am. Capital Equip.*, 688 F.3d at 162 (converting case because debtor "had been given more than five years to propose a confirmable plan, and had been unable to do so."); *In re Bronson*, No. 12-1320, 2013 WL 2350791, at *10 (9th Cir. B.A.P. May 29, 2013) (affirming conversion because a plan had not be confirmed in a 4-year-old case).

The Debtors, in collaboration with the Committee and their other creditors, intend to pursue a mutually acceptable plan as promptly as possible. Given the recently-established cooperation among the parties, there is simply no basis to convert these cases. The Trustee Motion should be denied.

9

### III. CONCLUSION

For all the forgoing reasons, because the UST has failed to support the relief sought in the Trustee Motion by clear and convincing evidence, or by any standard, this Court should deny the Trustee Motion in its entirety.

Dated: August 27, 2014

KATTEN MUCHIN ROSENMAN LLP
Peter A. Siddiqui
Jessica M. Mickelsen

By: /s/ Jessica M. Mickelsen

Counsel for Debtors and Debtors-In-Possession
HashFast Technologies LLC and HashFast LLC