KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

In re:

HASHFAST TECHNOLOGIES LLC, a California limited liability company,

    Debtor and Debtor-In-Possession

☐ Affects HASHFAST LLC, a Delaware limited liability company,

    Debtor and Debtor-In-Possession

Case No. 14-30725

(Jointly Administered with HashFast LLC, Case No. 14-30866):

Chapter 11

Hearing:
Date: September 10, 2014
Time: 9:30 a.m.
Ctrm: Hon. Dennis Montali
      235 Pine Street, Courtroom 22
      San Francisco, CA 94104

**DECLARATION OF SIMON BARBER IN SUPPORT OF DEBTORS' OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C § 1104(A), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER 7 UNDER 11 U.S.C. § 1112(B)**

I, Simon Barber, hereby declare under penalty of perjury,

1. I am the President and Chief Technology Officer of HashFast Technologies LLC ("HashFast Technologies") and HashFast LLC ("HashFast" and, together with HashFast Technologies, the "Debtors").

2. This Declaration is submitted in connection with the Debtors' Opposition to United States Trustee's Motion to Appoint Chapter 11 Trustee under 11 U.S.C § 1104(a), and in the Alternative to Convert Case to Chapter 7 Under 11 U.S.C. § 1112(b) ("Opposition"). I make this declaration based on my own personal knowledge of the facts. If called upon, I would testify as set forth herein.

3. The Debtors are currently managed by Peter Kravitz, their chief restructuring officer and their designated responsible individual. On a daily basis, since his retention, I have worked directly with Mr. Kravitz or others assisting him in connection with his duties. The management arrangement of the Debtors has been derived through open and transparent discussions with the Debtors' creditor constituencies, including the Committee.

4. While it is true that I was awarded a raise in January 2014, as I made clear at the 341 meeting on July 8, my initial annual salary was $144,000. That amount was far below market, and I was having difficulty meeting my living expenses. In order to continue to work the very long hours I was putting in towards resolving the technical issues, I needed to be able to afford child care at home. The Debtors conducted an investigation into the salaries paid to chief technology officers in technology companies based in the San Francisco area. That investigation confirmed that my initial salary of $144,000 was very below market and, in fact, was below the 10th percentile of San Francisco area chief technology officers. After the raise, my salary was $220,000 per year, which remains 10% below the median salary for San Francisco area chief technology officers. In other words, my raise increased my salary from a below market rate to a level still below the median of the market.

5. During these cases, I also voluntarily agreed to a $25,000 cut in my salary.

6. Eduardo de Castro's salary has changed following his removal from his position of officer and director for the Debtors. Mr. de Castro has voluntarily accepted a capped, commission-only pay structure, insuring that he makes no more than $144,000 per year, which was his 2013 salary.

7. Prior to the commencement of the Debtors' cases, the Debtors kept sufficient records to track orders and produce financial accounts and reports. There was one instance where a bitcoin wallet provider closed down, thereby affecting our ability to procure our transaction statements, but that has since been remedied. In April 2014, the Debtors hired Monica Hushen for the purposes of, among other things, organizing and updating the Debtors' books and records. Until the retention of Mr. Kravitz, Ms. Hushen was the Debtors' chief financial officer and responsible person. She was an independent person who had no connection to the company until just before these cases commenced. During her time with the Debtors, Ms. Hushen embarked on a project to ensure the reliability of the Debtors' financial records. I believe the Debtors' current books and records are neither poorly maintained nor unreliable.

8. With respect to the now-withdrawn Liquidbits sale motion, the Debtors' filed their sale motion because they believed it was the best deal they had received. In fact, as of the date hereof, it has been the only concrete offer they have received to purchase substantially all of the Debtors' inventory.

9. I believe Ms. Hushen was an ardent advocate for the Debtors in the negotiations with Liquidbits. Also, though she was the lead negotiator on that transaction, I provided Ms. Hushen with support throughout the negotiation process, including assisting in financial modeling and assumptions and on adding specific, protective deal terms.

10. Contrary to the UST's assertion, I did not testify that the Debtors accepted orders when they knew they could not deliver product. Also, contrary to the UST's misstatement of fact, not all of the Debtors' pre-orders were guaranteed by December 31, 2013. Only the first batch of pre-orders were guaranteed by that date. All subsequent batches had later guaranteed dates. In January 2014, having missed the first guaranteed date, as a precaution, the Debtors ceased accepting all orders, including orders with far later guaranteed dates.

11. In addition, the Debtors fully expect to be able to sell their current inventory and to take steps either to sell or reorganize around their intellectual property and future chip designs.

12. As for appraising the Debtors' intellectual property, the Debtors have not had it appraised, nor would the cost of such appraisal make sense under the circumstances. Included in the Debtors' intellectual property are trade secrets that require personal know-how of the Debtors' management team.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: August 27, 2014

Simon Barber
President and Chief Technology Officer of
HashFast Technologies LLC and HashFast
LLC