Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
    mdelaney@bakerlaw.com

Attorneys for OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES, LLC, a California limited liability company,<br><br>    Debtor and Debtor in Possession.<br><br>x  Affects HASHFAST LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor in Possession. | Case No.: 14-30725<br><br>(Jointly Administered with HashFast, LLC, Case No. 14-30866)<br><br>Chapter 11<br><br>Hearing:<br>Date:    September 10, 2014<br>Time:   9:30 a.m.<br>Place:   Courtroom 22<br>    U.S. Bankruptcy Court<br>    235 Pine Street<br>    San Francisco, CA 94104 |

**OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER UNDER 11 U.S.C. § 1112(b)**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

III. DISCUSSION ........................................................................................................ 4

    A. "Cause" Does Not Exist To Appoint A Chapter 11 Trustee ................................. 4

        1. The Appointment of the CRO and Substantive Consolidation will Eliminated Threat of Future Mismanagement ............................................ 4

        2. Unreliable Books and Records do not Warrant the Appointment of a Chapter 11 Trustee in this Case ................................................................ 7

        3. Appointment of a Chapter 11 Trustee does not Serve the Best Interests of the Creditors ...................................................................................... 9

        4. Appointment of CRO as Chapter 11 Trustee ............................................ 10

    B. "Cause" Does Not Exist To Convert The Bankruptcy Cases To Chapter 7 ......... 11

        1. Conversion under § 1112(b)(4)(A) Unwarranted ..................................... 11

IV. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re The 1031 Tax Grp., LLC*,
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ................................................................. 5, 6

*In re Adelphia Communications Corp.*,
336 B.R. 610 (Bankr. S.D.N.Y. 2006) ..................................................................... 5

*In re Blue Stone Real Estate Const. & Dev. Corp.*,
392 B.R. 897 (Bankr. M.D. Fla. 2008) .................................................................... 5

*In re Ionosphere Clubs Inc.*,
113 B.R. 164 (Bankr. S.D.N.Y. 1990) ..................................................................... 8

*In re LHC, LLC*,
497 B.R. 281 (Bankr. N.D. Ill. 2013) ....................................................................... 8

*In re Mako, Inc.*,
102 B.R. 809 (Bankr. E.D.Okla. 1988) .................................................................... 8

*In re Marvel Entertm't Group, Inc.*,
140 F.3d 463 (3d Cir. 1998) .................................................................................... 8

*Midlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*,
4 B.R. 635 (Bankr. E.D.N.Y. 1980) ........................................................................ 8

*In re Real Estate Partners, Inc.*,
2007 WL 7025114 (Bankr. C.D. Cal. Nov. 20, 2007) ............................................. 5

*Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)*,
386 B.R. 548 (Bankr. D.Del. 2008) ....................................................................... 12

*In re Sharon Steel Corp.*,
871 F.2d 1217 (3d Cir. 1998) .............................................................................. 5, 8

*In re Sundale, Ltd.*,
400 B.R. 890 (Bankr. S.D. Fla. 2009) ..................................................................... 8

*In re V. Savino Oil & Heating Co., Inc.*,
99 B.R. 518 (Bankr. E.D.N.Y. 1989) ...................................................................... 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Statutes**

*11 U.S.C. § 1104(a)* ...............................................................................*passim*

*11 U.S.C. § 1112(b)* ...............................................................................*passim*

**Rules**

Fed. R. Evid. 201 ................................................................................................ 2

**Other Authorities**

124 Cong.Rec. H11 (daily ed. Sept. 28, 1978) ............................................................. 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned bankruptcy case (the "HFT Bankruptcy") of Hashfast Technologies, LLC ("HFT") hereby submits the within opposition (the "Opposition") to the *United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), and in the Alternative to Convert Case to Chapter 7 Under 11 U.S.C. § 1112(b)* [Docket Entries ("D.E.") 168-171][1] (the "Motion"). In support of this Opposition, the Committee respectfully submits as follows:

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The United States Trustee (the "UST") moves for an order appointing chapter 11 trustees in or converting the HFT Bankruptcy and bankruptcy case of Hashfast, LLC (the "HF Bankruptcy") to cases under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").[2] The UST avers that cause exists due to the gross mismanagement of HFT and Hashfast, LLC ("HF" and collectively with HFT, the "Debtors"), material conflicts of interest between the Debtors, and continued losses or diminution of the bankruptcy estates and the absence of any prospect for reorganization. *See, e.g.*, Motion, D.E. 168, at p. 2.[3]

Although the Committee does not necessarily disagree with the factual underpinnings of the Motion, certain developments following the filing of the Motion have ameliorated or eliminated the asserted "cause." Furthermore, any remaining "cause" relating to the asserted conflicts of interest or insider dealing would be better solved by the substantive consolidation of the HFT bankruptcy estate (the "HFT Estate") and the HF bankruptcy estate (the "HF Estate") (collectively the "Estates"), as opposed to the appointment of a trustee or conversion which will unnecessarily increase administrative expenses without the necessary assurance that an individual more knowledgeable than the newly appointed management will be appointed.

---

[1] Unless otherwise noted, all docket entry citations refer to the HFT Bankruptcy.
[2] Unless otherwise noted, all statutory citations refer to the Bankruptcy Code.
[3] All page citations refer to the page numbers assigned upon the electronic filing of the relevant document as opposed to the number assigned by the UST.

- 1 -

OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE

Case: 14-30725   Doc# 192   Filed: 08/28/14   Entered: 08/28/14 00:08:06   Page 5 of 20

Alternatively, if the Court decides that "cause" exists under § 1104(a) to appoint a chapter 11 trustee, the Committee request that the UST appoint Peter Kravitz (the "CRO"), the currently serving Chief Restructuring Officer for the Debtors. The CRO is already involved in the daily operations of the Debtors and has demonstrated an ability to profitably operate the Debtors, which ultimately inures to the benefit of all creditors.

The Committee further opposes the conversion of the HFT Bankruptcy and HF Bankruptcy (collectively, the "Bankruptcy Cases"). Under the guidance of the CRO, the Debtors have substantially improved their profitability and have started making progress towards reorganization. Due to the potentially deleterious affect the conversion would have on the Debtors' operations and relative newness of the Bankruptcy Cases, the Committee submits that conversion under § 1112(b)(4)(A) is improper at this time. Additionally, conversion of the Bankruptcy Cases would eliminate the involvement of the Committee, which has worked diligently since the start of these proceedings to zealously defend the interests of unsecured creditors—the only class of pre-petition claims.

For the reasons set forth hereinafter, the Committee respectfully requests that the Court deny the Motion in its entirety.

## II. STATEMENT OF FACTS

1. On or about May 9, 2014, UBE Enterprises, Timothy Lam, Edward Hammon, Grant Pederson, and Koi Systems commenced an involuntary chapter 7 bankruptcy against HFT. *See* D.E. 1.[4] On or about June 3, 2014, HFT stipulated to the entry of an order for relief and converted the HFT Bankruptcy to a case under chapter 11 of the Bankruptcy Code. *See* D.E. 35, 36. Shortly thereafter, the UST appointed the Committee. *See* D.E. 82

2. On or about June 6, 2014, HF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced the HF Bankruptcy. *See* HF Bankruptcy, D.E. 1.

3. On or about July 8, 2014, the Court ordered the Bankruptcy Cases procedurally consolidated. *See* D.E. 121. Thereafter, the Committee moved to substantively consolidate the

---

[4] The Committee requests that the Court take judicial notice of all matters and documents on the dockets for the Bankruptcy Cases pursuant to Fed. R. Evid. 201.

- 2 -

OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE
605013656.2

Bankruptcy Cases. *See* D.E. 148. The motion to substantively consolidate the Bankruptcy Cases is presently set for hearing on September 10, 2014. *See* D.E. 175.

4. At the outset of the Bankruptcy Cases, the Debtors were controlled by pre-petition management. While investigating the assets of the Estates, it was discovered that the Debtors engaged in questionable activities pre-petition, including accepting orders for products still in development and/or production and authorizing raises to executive level management and other key employees despite an inability to satisfy its obligations. After the commencement of the Bankruptcy Cases, the Debtors' management also attempted to liquidate substantially all of the Debtors' assets on an expedited basis via a sale to Liquidbits, Inc. ("Liquidbits") (the "Liquidbits Sale"). *See* D.E. 134. The Court rejected the Liquidbits Sale proposal.

5. On or about August 8, 2014, the UST filed the instant Motion seeking the appointment of chapter 11 trustees in or conversion of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code. *See* D.E. 168-171.

6. On or about that same date, the Debtors and the Committee engaged in substantial negotiations in an effort to devise a mutually acceptable plan for the reorganization or controlled liquidation of the Debtors. As part of these negotiations, the Debtors and the Committee agreed to the appointment of Peter Kravitz as the Chief Restructuring Officer for the Debtors. At that time, the Committee was seeking to employ Province, Inc. (of which Peter Kravitz is a principal) as its financial advisor—an application the Committee has since withdrawn based upon the CRO appointment. *See* D.E. 133, 185.

7. Prior to the involvement of the CRO, the Debtors and Committee entered into a series of stipulations authorizing the sale(s) of certain inventory. *See* D.E. 132. Specifically, the stipulations limited the Debtors to selling 3000 chips and 5000 chips' worth of wafers, and up to $200,000 per month in non-chip/wafer inventory. *Id.*, at p. 2.

8. At present, the CRO controls the daily operations of the Debtors and has been named the Debtors' responsible individual for purposes of these proceedings. *See* D.E. 181, 182, 187. In only the ten (10) days since the CRO has been involved, the Debtors have actively

- 3 -

marketed the Debtors' assets, and have entered into agreements for the sale of more than $1,200,000 in inventory in an effort to further the Debtors' reorganization. *See* D.E. 191.

9. In addition to increasing sales, the Debtors have also reduced their employment roster—eliminating non-essential personnel. The resulting payroll reduction has contributed to the increase in net income generated by the Debtors following the appointment of the CRO.

## III. DISCUSSION

The UST requests the appointment of two chapter 11 trustees under § 1104(a), one for each of the Bankruptcy Cases, or, alternatively, the conversion of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code pursuant to § 1112(b). For the reasons set forth *infra*, the Committee respectfully submits that "cause" does not exist to grant the requested relief.

### A. "Cause" Does Not Exist To Appoint A Chapter 11 Trustee

The UST avers that the appointment of a chapter 11 trustee serves the best interests of creditors due to (1) gross mismanagement, (2) unreliable books and records, and/or (3) material conflicts of interest between the Debtors, which, based on the UST's arguments, appears to be a component of the gross mismanagement argument. The Committee respectfully submits that "cause" no longer exists and, as a result, the appointment of a chapter 11 trustee no longer serves the best interests of the creditors.

#### 1. The Appointment of the CRO and Substantive Consolidation will Eliminated Threat of Future Mismanagement

The UST premises the assertion of gross mismanagement on (a) pre-petition insider self-dealing, (b) pre-petition acceptance of customer orders without the ability to fulfill the orders, (c) the proposed expedited sale of substantially all of the Debtors' assets to Liquidbits, and, to a lesser extent, (d) the insulation of valuable intellectual property from creditors of HFT—the entity operating and incurring liabilities in the course of the Debtors' enterprise. *See* Motion, D.E. 169, at pp. 9-11, 13. The UST further argues that material conflicts of interest between the Debtors relating to the ownership of intellectual property rights and transactions between the Debtors evidence gross mismanagement. *Id*., at p 12.

- 4 -
OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE

605013656.2

The appointment of the CRO, however, has rectified these alleged abuses. The asserted mismanagement was perpetrated pre- and post-petition by the Debtors' former management—namely, Simon Barber, Eduardo de Castro, and/or Monica Hushen (collectively, the "Management"). Since the filing of the Motion, the Debtors have replaced the Management with the CRO. Additionally, all of the Management has either resigned from or relinquished control of the Debtors business operations. Through the appointment of the CRO, the Debtors have acted to remediate prior misconduct and prevent future mismanagement through the exclusion of the allegedly culpable parties.

As the Debtor has restructured management to redress the alleged "cause," the appointment of a chapter 11 trustee under § 1104(a) is improper.

> In authorizing appointment of a trustee for cause, section 1104(a)(1) focuses on the current management of the debtor rather than on any misdeeds of past management. Thus, the fact that the prior management of the debtor might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement does not provide grounds for the appointment of a trustee under [§ 1104](a)(1), as long as the court is satisfied that the current management of the debtor is free from the taint of prior management.

7 Collier on Bankruptcy ¶ 1104.02[3][b][ii], *citing In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1998). A corporation's ability to retain control of its operations and reorganization furthers the strong policy favoring debtors in possession and the overarching goal of the Bankruptcy Code—providing a corporation a chance to restructure its affairs. *See In re Real Estate Partners, Inc.*, 2007 WL 7025114 (Bankr. C.D. Cal. Nov. 20, 2007) ("[A] debtor should be given a reasonable opportunity to clean its own house by installing 'new management' as an alternative to appointment of a trustee based on cause outlined in § 1104(a)(1)."); *see also In re Blue Stone Real Estate Const. & Dev. Corp.*, 392 B.R. 897, 905 (Bankr. M.D. Fla. 2008) ("'Chapter 11 … is designed to allow the debtor-in-possession to retain management and control of the debtor's business operations … and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee.'"), *quoting In re Adelphia Communications Corp.*, 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006).

- 5 -

OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE
605013656.2

Case: 14-30725   Doc# 192   Filed: 08/28/14   Entered: 08/28/14 00:08:06   Page 9 of 20

The Committee acknowledges that the appointment of new management does not entirely absolve the Debtors of prior misconduct; however, it does change the inquiry to whether the new management is tainted by the actions of the prior culpable management. *See In re The 1031 Tax Grp., LLC*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007).

> [T]he Court believes that where the U.S. Trustee establishes a *prima facie* case that a tainted current member of the governing body has selected or appointed new management shortly before or after a chapter 11 filing, a court should apply heightened scrutiny in reviewing whether new management is also tainted, thereby requiring appointment of a chapter 11 trustee for "cause." Once a *prima facie* showing is made by the U.S. Trustee, the burden then shifts to the debtors, or other parties opposing the appointment of a chapter 11 trustee, to demonstrate that the new management is unconflicted by any association with the tainted members of the governing body that made the selection or appointment. If the parties opposing appointment meet this burden, the ultimate burden of establishing cause shifts back to the moving parties. *Cf.* Fed.R.Evid. 301 ("In all civil actions ... a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.").

*Id.*, at 87-88. Although the Committee concedes that the UST has not yet had an opportunity to present any evidence on this issue, it is beyond reasonable dispute that the CRO is untainted. The Debtors did not select the CRO; rather, the Committee and the Debtors agreed to the appointment of the CRO to serve as the new management for the Debtors in order to ensure the interests of the Estates and their creditors were adequately protected. Indeed, the Debtors have taken additional steps to eliminate and/or limit, as appropriate, the authority of the allegedly culpable Management. In so doing, the Debtors have remediated the prior misconduct of Management, eliminated the threat that Management may attempt to undermine or usurp the authority of the CRO, and, thus, eliminated the need for the appointment of a chapter 11 Trustee to protect the interests of the Estates and the creditors. In other words, the Debtors have eliminated any "cause" for the appointment resulting from any prior insider transactions allegedly perpetrated by Management.

The Committee further submits that substantive consolidation of the Estates would cure any residual "cause" while simultaneously benefitting the creditors of the HFT Estate. In addition to the misdeeds of the Management, the UST avers that material conflicts of interest establish

- 6 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"cause" for the appointment of a trustee. More precisely, the UST argues that the Debtors operated as a single enterprise despite separate corporate entities without licensing agreements for the use of intellectual property or contracts for the payment of any proceeds to HF and, in so doing, isolated the potentially valuable intellectual property in HF, which has no business operations or non-insider creditors. *See* Motion, D.E. 169, at p. 12.

Although the Committee does not dispute the accuracy of the factual allegations, the Committee respectfully submits that the corporate structure (or lack there-of) does not establish "cause" for the appointment of a chapter 11 trustee (or two trustees); rather, these allegations establish cause to substantively consolidate the Bankruptcy Cases. Substantive consolidation, moreover, would not only cure the alleged conflict of interest, it would substantially benefit the Estates and the creditors by allowing the creditors to benefit from the liquidation or utilization of the intellectual property, a notion which appears to be of the upmost concern to the UST. *See Id.* (arguing that the Debtors engaged in misconduct by "isolating the potentially valuable intellectual property from [HFT's] creditors in a manner that could deprive the majority of creditors from recovering against the intellectual property.").

2. Unreliable Books and Records do not Warrant the Appointment of a Chapter 11 Trustee in this Case

The UST further contends that the appointment of a chapter 11 trustee is warranted because the Debtors' books and records are unreliable, and the Debtors have failed to correct certain errors in the schedules. *See Id.*, at pp. 11-12. Although such deficiencies may constitute "cause" under § 1104(a)(1), the Committee respectfully submits that appointment of a trustee on this basis is improper as the deficiencies have been cured.

The Committee do not dispute that the Debtors admitted to certain inaccuracies in their schedules and failed to promptly amend them as promised. The Debtors, however, have recently filed amended schedules, presumably to address the concerns of the UST. *See* D.E. 176-179. Thus, although the Committee cannot warrant the accuracy or completeness of the information, it

- 7 -
OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE
605013656.2

appears that the Debtors are now attempting to act in good faith to provide full and accurate disclosures. The Committee anticipates that this will continue under the control of the CRO.

The Committee also concedes that the Debtors' records were less than perfect and a certain amount of reconstruction was necessary to ascertain the full extent of liabilities. Indeed, Monica Hushen, the former Chief Financial Officer of HFT, confirmed as much. As the UST acknowledged, however, the Debtors have been reconstructing their records since Ms. Hushen joined HFT. *See* Motion, D.E. 169, at p. 12. Based on the representations of the Debtor, the reconstruction has now been concluded and the errors remedied. *See* D.E. 189, at p. 9.

Notwithstanding the current state of the books and records, the Committee submits that what appears to be remediable errors in the Debtors' books and records do not justify a finding of "cause" under § 1104(a)(1). As courts have consistently noted, the gross mismanagement standard embodies a Congressional recognition that one must "'expect to find some degree of incompetence or mismanagement in most businesses which have been forced to seek the protections of Chapter 11'" and, thus, "'the Court must find something more aggravated that [*sic*] simple mismanagement' in order to appoint a trustee." *In re LHC, LLC*, 497 B.R. 281, 309 (Bankr. N.D. Ill. 2013), *quoting Midlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635, 645 (Bankr. E.D.N.Y. 1980); *see also In re Sundale, Ltd.*, 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009) ("'Gross mismanagement suggests some extreme ineptitude on the part of management to the detriment of the organization…. But it must rise above simple mismanagement to achieve the level envisioned by the Code.' … Poor management alone does not warrant appointment of a trustee."), *quoting In re Mako, Inc.*, 102 B.R. 809, 812 (Bankr. E.D.Okla. 1988).

In sum, the Committee respectfully submits that the previous condition of the Debtors books and records fails to evidence "gross mismanagement" or "extreme ineptitude" and, thus, does not establish "cause" for the appointment of a trustee under § 1104(a)(1).

- 8 -

### 3. Appointment of a Chapter 11 Trustee Does Not Serve the Best Interests of the Creditors

Section § 1104(a)(2) "envisions a flexible standard" and "gives the district court discretion to appoint a trustee when doing so would serve the parties' and estate's interests." *In re Marvel Entertm't Group, Inc.,* 140 F.3d 463, 474 (3d Cir. 1998), *quoting In re Sharon Steel Corp.,* 871 F.2d at 1226 (internal quotations omitted); *In re Ionosphere Clubs Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (noting that "courts look to the practical realities and necessities" in considering whether to appoint a chapter 11 trustee under § 1104(a)(2)).

"The twin goals of the standard for appointment of a trustee should be protection of the public interest and the <u>*interests of creditors*</u> ... and facilitation of a reorganization that will benefit both the creditors and the debtors...." *Id.* (emphasis added), *quoting* House Report, 124 Cong.Rec. H11, 11 (daily ed. Sept. 28, 1978). In essence, § 1104(a)(2) reflects "the practical reality that a trustee is needed." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527 n. 11 (Bankr. E.D.N.Y. 1989).

The Committee respectfully submits that the appointment of a chapter 11 trustee will not serve the best interests of the Estates and creditors and, thus, the appointment of a trustee pursuant to § 1104(a)(2) is unjustified. The Debtor has agreed to the appointment of a CRO – after extensive negotiations with the Committee - and has terminated or otherwise removed the allegedly culpable Management from power. Accordingly, the Committee is no longer concerned that the Debtors will engage in self-dealing or diminish the value of the assets of the Estates, as the UST fears. *See* D.E. 169, at p. 13. Moreover, as the Debtors' enterprise is once again generating a profit under the control of the CRO, the appointment of a trustee is no longer necessary, or is at the very least, premature.

Additionally, the Committee respectfully submits that the appointment of a trustee is not suitable in this case because of the harm the appointment would likely cause to the Estates and the creditors, and the likely impediments to reorganization that would likely result with the involvement of a trustee. As with the appointment of any trustee, there is an associated cost to

- 9 -
OPPOSITION TO UNITED STATES TRUSTEES' MOTION TO APPOINT CHAPTER 11 TRUSTEE OR CONVERT BANKRUPTCY CASE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

605013656.2

the Estates—an administrative expense that takes priority over unsecured creditors. The Estates have already incurred substantial administrative expenses and, at present, the likelihood of full repayment of general unsecured creditors seems quite low. Thus, the Committee believes the addition of another administrative expense without a present need would be imprudent.

Moreover, the involvement of a trustee (especially two trustees) could substantially impede reorganization. As the UST noted, the Debtors operate a single enterprise—HF owning intellectual property utilized by HFT and HFT selling the tangible goods, which depends on the use of the intellectual property held by HF. Additionally, while HF holds the intellectual property, which may have substantial value in excess of $10,000,000, HF is liable for little if any legitimate debt due to the fact that HFT was solely responsible and liable for the customer orders. If a trustee is appointed for one of the two Debtors, the Debtors may no longer be able to conduct the operation, which depends on the cooperation of both entities. The appointment of two trustees—one for each of the Estates—would only exacerbate the situation due to the trustee's fiduciary duty to ensure the payment and protection of each estate individually. Essentially, the appointment of two trustees may result in further insulating the intellectual property from the creditors of the HFT Estate—apparently one of the UST's primary concerns, *see* Motion, D.E. 169, at p. 12, and one of the Committee's greatest concerns.

In sum, the Committee submits that the appointment of a chapter 11 trustee should be denied under §§ 1104(a)(1) and (a)(2). In short, the appointment is no longer necessary to protect the interests of the Estates and creditors due to the appointment of the CRO, and, in fact, may cause substantial harm to the HFT Estate, which is liable for the lion's share of the obligations of the Debtors' joint enterprise—a truly inequitable result.

### 4. Appointment of CRO as Chapter 11 Trustee

If the Court is inclined to grant the Motion and appoint a chapter 11 trustee, the Committee respectfully requests that the UST consider appointing the CRO as the chapter 11 trustee. The CRO has demonstrated an ability to operate the Debtors' enterprise successfully and profitably, and perhaps more importantly, has fostered the trust of the Debtor, the creditors and

- 10 -

the Debtors' business partners. Accordingly, there would be minimal detriment to the Estates due to any learning curve or introductory period, which often accompanies the assignment of a new trustee. This is especially important in these Bankruptcy Cases due to the unusual nature of the business and the fluctuating values for the Debtors' assets and the currency occasionally used to purchase these goods (i.e., Bitcoin and Bitcoin related equipment).

### B. "Cause" Does Not Exist To Convert The Bankruptcy Cases To Chapter 7

As an alternative to the appointment of a chapter 11 trustee, the UST asks that the Court convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code pursuant to § 1112(b)(4)(A) due to continuing loss or diminution of the Estates and the absence of a reasonable likelihood of rehabilitation. *See* Motion, D.E. 169, pp. 14-16. The Committee respectfully submits that conversion is unwarranted and could cause substantial damage to the Debtors, which could result in far less distributions available for general unsecured creditors.

#### 1. Conversion under § 1112(b)(4)(A) Unwarranted

To establish cause to dismiss or convert a bankruptcy case under § 1112(b)(4)(A), the movant must demonstrate by a preponderance of the evidence that (1) the estate is experiencing *continuing* loss or diminution and (2) the debtor is unlikely to rehabilitate its affairs.

The UST avers that the Debtors are experiencing continued post-petition losses based on the June 2014 operating report filed by HFT, which showed losses of $140,000. *See Id.*, at p. 15. The Committee respectfully submits that the UST's position fails to establish "cause" sufficient to justify the extreme remedy of conversion. As a threshold matter, the monthly operating report filed by HFT does not providing any information regarding the performance of HF and, thus, cannot substantiate the conversion of the HF Bankruptcy.[5] Additionally, a single operating report fails to establish a trend—i.e., continuing loss or diminution. Rather, HFT's June 2014 operating report only establishes a single data point showing a loss in the first month of the HFT Bankruptcy—a month attended by considerable strife related to the commencement of an involuntary bankruptcy.

---

[5] The operating report filed by HF shows a *de minimis* loss for June 2014 of $15. *See* HF Bankruptcy, D.E. 29.

Further, the losses experienced in June 2014 are not indicative of the Debtors' current performance since the involvement of the CRO. Rather, the Debtors' performance prior to the involvement of the CRO in June 2014 was a function of the stipulations entered into by and between HFT and the Committee regarding the sale of HFT's inventory and HFT's payroll obligations. While the stipulations protected the creditors and HFT Estate by preserving HFT's inventory and allowing the Committee and the UST to investigate the issues associated with the former Management, the limitation placed on the sale of HFT's inventory necessarily limited the potential income. Since the involvement of the CRO, HFT has reduced its work force and more freely transacted business. The current operations have resulted in a significant increase in performance and available funds to continue the Debtors' enterprise, which has preserved the going concern value of the business.

As to the prospects for rehabilitation, the UST contends that selling substantially all of the Debtors' assets outside a plan of reorganization renders rehabilitation unlikely and that the Debtors have failed to clearly define an exit strategy. As to the latter point, the Bankruptcy Cases remain in their infancy (despite the flurry of activity). Thus, the Committee submits it is premature to conclude that rehabilitation is unlikely or convert the Bankruptcy Cases because the Debtors' exit strategy has not crystalized in less than three (3) months since the commencement of the HF Bankruptcy and conversion of the HFT Bankruptcy to chapter 11.

As to the former point, HFT has commenced liquidating certain assets (mainly wafers and miscellaneous parts) in a strategic manner in order to generate capital to finance reorganization. While a controlled liquidation may be the ultimate result of the Bankruptcy Cases, it appears that the Debtors are presently reorganizing their operations in an effort to revitalize their enterprise through the sale of chips (as opposed to assembled mining computers) in an effort to position the Debtors for ongoing operations or a sale of the Debtors as a going concern. Although the reorganization may be at its preliminary stage, the Committee respectfully submits that the actions taken to create liquidity and restart the Debtors' enterprise evidence that the Debtors are likely to "reestablish a business" or, at minimum, precludes the contrary finding. *See Santa Fe*

- 12 -

*Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)*, 386 B.R. 548, 552 (Bankr. D.Del. 2008).

Additionally, as with the appointment of a chapter 11 trustee, the conversion of the Bankruptcy Cases could substantially harm the Estates and the creditors. As previously noted, the conversion of the Bankruptcy Cases may result in harm to the creditors of the HFT Bankruptcy by insulating the potentially valuable intellectual property held by HF and increasing the administrative expense of the Bankruptcy Cases—diminishing distributions to creditors. Additionally, the appointment of a chapter 7 trustee (as opposed to a chapter 11 trustee) would result in the immediate liquidation of the assets the Debtors presently own. It is likely that such a liquidation would result in a lesser return to the Estates than a controlled liquidation (i.e., selling some assets to fund the assembly of others into more valuable products, like completed chips) or reorganization.

Furthermore, the conversion of the Bankruptcy Cases would result in the dissolution of the Committee, which has diligently served to protect the interests of unsecured creditors (the only class of pre-petition creditors) in a case which has proven to be complex and adversarial at times.

In sum, the Committee respectfully requests that the Court deny the UST's request for conversion of the Bankruptcy Cases at this time. The Debtors are making strides toward reorganization under the direction of the CRO and, in fact, have already seen net gains under the CRO's management. Thus, conversion under § 1112(b)(4)(A) is unwarranted.

### IV. CONCLUSION

In conclusion, the Committee submits that the requisite "cause" does not presently exist to appoint a chapter 11 trustee or convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code due to developments in the reorganization, the appointment of new management in the form of the CRO, and increased performance and prospects for reorganization.

- 13 -

WHEREFORE, the Committee respectfully requests that the Court enter an order denying the Motion in its entirety.

Dated: August 27, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ Ashley M. McDow
Ashley M. McDow
Michael T. Delaney

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER UNDER 11 U.S.C. § 1112(b)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 27, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL OR EMAIL** (state method for each person or entity served): On (*date*) August 27, 2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, addressed and/or by email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, OR FACSIMILE TRANSMISSION** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____
I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), and/or by facsimile transmission as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 27, 2014 | Sonia Gaeta | /s/Sonia Gaeta |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Venkat Balasubramani     venkat@focallaw.com, pete.morici@alumni.purdue.edu
- Greg P. Campbell     ecfcanb@piteduncan.com, gc@ecf.inforuptcy.com
- Patrick Chesney     pchesney@gallo-law.com, mvananda@gallo-law.com
- Michael Delaney     mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- Caroline R. Djang     cdjang@rutan.com
- W. Keith Fendrick     keith.fendrick@hklaw.com, Andrea.Olson@hklaw.com
- Julie M. Glosson     julie.m.glosson@usdoj.gov
- Elizabeth A. Green     egreen@bakerlaw.com, jdriggers@bakerlaw.com
- Robert G. Harris     rob@bindermalter.com
- Ori Katz     okatz@sheppardmullin.com
- Ashley McDow     amcdow@bakerlaw.com, SGaeta@bakerlaw.com
- Jessica M. Mickelsen     jessica.mickelsen@kattenlaw.com
- Office of the U.S. Trustee / SF     USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
- Kristen A. Palumbo     kristen.palumbo@bingham.com
- Craig Stuppi     craig@stuppilaw.com
- Sarah M. Stuppi     sarah@stuppilaw.com
- Christopher D. Sullivan     csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com
- Nancy Weng     nweng@trinhlawfirm.com, kim@trinhlawfirm.com

2. **SERVED BY UNITED STATES MAIL**:

Hon. Dennis Montali
U.S. Bankruptcy Court
Northern Division of California
235 Pine Street, 19th Floor
San Francisco, CA  94104

Julie M. Glosson
United States Trustee for Region 17
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA  94104-3484