TRACY HOPE DAVIS
United States Trustee for Region 17
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-3484
Telephone: (415) 705-3333
Facsimile: (415) 705-3379

By:   JULIE M. GLOSSON
       Trial Attorney (#230709)
       Email: julie.m.glosson@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES LLC,<br><br>              Debtor-In Possession<br><hr><br>Affects HASFAST LLC,<br><br>              Debtor-In Possession. | Lead Case No. 14-30725 DM<br><br>Jointly Administered with:<br><br>Case No. 14-30866<br><br>Chapter 11<br><br>Date:  September 10, 2014<br>Time:  9:30 a.m.<br>Ctrm:  Hon. Dennis Montali<br>         235 Pine Street, Courtroom 22<br>         San Francisco, CA |

**REPLY IN SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(a), AND IN THE ALTERNATIVE TO CONVERT CASE TO CHAPTER 7 UNDER 11 U.S.C. § 1112(b)**

Tracy Hope Davis, United States Trustee for Region 17, submits this reply in support of her Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), and In the Alternative To Convert Case to Chapter 7 Under 11 U.S.C. § 1112(b) [dkt. #168] ("Motion") and in response to the oppositions filed by Debtors and the Official Committee of Unsecured Creditors ("Committee") [dkt. #189 and 192, respectively]. In support thereof, the United States Trustee represents and alleges as follows:

## I. Introduction

In the Motion, the United States Trustee alleged that cause exists to appoint a trustee because the Debtors have been grossly mismanaged both before and after the commencement of the cases, and that separate trustees should be appointed due the significant and material conflicts between the two estates. Because of the substantial loss or diminution in value and because the Debtors' business is not likely to be reestablished, cause also exists to convert this case to chapter 7.

The Committee agrees with the material facts that constitute cause for appointment of a trustee and for conversion but prays that the Court endorse the negotiated resolution of a CRO by denying the United States Trustee's Motion.

## II. Background

Since the United States Trustee's Motion was filed on August 8, 2014, all employees have resigned leaving only the Debtors' two co-founders, Simon Barber and Eduardo de Castro, and the recently employed Chief Restructuring Officer, Peter Kravitz, to operate the Debtors. See Kravitz Decl. ¶ 3. Although a plan has not been filed, both the Debtors and Committee indicate in their respective Oppositions that the exit strategy includes liquidating existing inventory to allow for a reorganization of the intellectual property. Debtors continue to value this intellectual property as "unknown" in their amended schedules filed on August 14, 2014. See Dkt. #179.

It is also notable that Debtors have not filed the operating report for July, 2014, see PACER, which constitutes "cause" for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(F). The facts set forth in the United States Trustee's Motion are referenced and incorporated herein by reference.

## III. Argument

### A. "Cause" Exists to Appoint a Chapter 11 Trustee Because the CRO is Not New Management.

The usual presumption in favor of allowing a chapter 11 debtor to remain in possession vanishes completely when management does not or cannot perform its fiduciary duties. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'") (quoting Wolf v. Weinstein, 372 U.S. 633,

651 (1963)).  In re Stratesec, Inc., 324 B.R. 158, 160 (Bankr. D.C. 2004) (where "a fiduciary is plainly necessary to take complete control of the debtor's estate, and where the debtor itself has decided against pursuing the powers of a debtor in possession, the Bankruptcy Code generally contemplates that the office of trustee will be employed.").

### 1. CRO Serves at Behest of Old Management.

Debtors and the Committee contend that the CRO is new management; however, Mr. Barber continues to serve as the sole manager of Debtors, as has been the case since Mr. de Castro's resignation in April, 2014.  See Subsidiary Operating Agreement, § 7.2; and Parent Agreement § 3.1, attached hereto and marked as **Exhibits 3 and 4,** respectively.  Where, as here, purported new management is in fact old management, cause exists to appoint an independent individual to serve as chapter 11 trustee. Accordingly, the Motion should be granted.

By employing a Chief Restructuring Officer, Debtors have acknowledged that issues exist with respect to the Debtors' current management's ability to perform his fiduciary duty to the estates.  Under the circumstance, the appointment of a chapter 11 trustee under 11 U.S.C. § 1104 is the only available remedy.  See In re Marvel Entertainment Group, Inc., 140 F.3d 463, 474 (3rd Cir. 1998)("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee.) (Internal citation omitted).

### 2. Parties Cannot Negotiate Remedy Contrary to Statutory Mandates.

The Committee does not refute the facts that constitute cause to replace current management. See Committee Opposition § III(A)(1).  In the alternative, the Committee offers that the employment of new management in the form of a CRO is an adequate remedy.  Because the CRO has been employed to assuage concerns about Debtors' management and its ability to carry out the Debtors' fiduciary duties, the appropriate remedy is appointment of a trustee under 11 U.S.C. § 1104 not employment of a CRO who continues to answer to current management. The employment of an outside third party reach as a product of negotiation between the Committee and Debtors circumvents the Bankruptcy Code and is not the appropriate legal remedy here.  See Davis v. Elliot Management Corp.(In re Lehman Bros. Holdings,

Inc.), 508 B.R. 283 (S.D.N.Y. 2014) (district court rejected negotiated plan provision that allowed payment of individual committee members' professional fees which were expressly prohibited by the Code), vacating In re Lehman Bros. Holdings, Inc., 487 B.R. 181 (Bankr. S.D.N.Y. 2013); In re AMR Corp., 497 B.R. 690 (Bankr. S.D.N.Y. 2013) (court rejected negotiated plan provision that provided for CEO bonus that exceeded statutory limits); and RadLAX Gateway Hotel v. Amalgamated Bank, 132 S.Ct. 2065, 182 L.Ed. 2nd 967 (2012) (Supreme Court rejected plan provision that directly contravened the express and specific language of Code).

### B. "Cause" Exists to Appoint Chapter 11 Trustee Because Debtors Are Withholding the Value of Intellectual Property

In both the original schedules and as amended, Debtors valued its intellectual property at "unknown." Yet, Debtors presumably assigned some value to this category of asset when it negotiated the Liquidbits sale and as it contemplates a purported reorganization around the intellectual property. At a minimum, Debtors' Chief Technology Officer, Simon Barber, believed the intellectual property had a potential value of up to $30 million. See Exhibit 1 - Trans. July 8, 2014 – 65:13 to 66:5. By intentionally withholding a determination of the value of the intellectual property, Debtors have failed to comply with their statutory duties to disclose. See 11 U.S.C. §§ 343(a), 521, 1107(a); and Fed.R. Bankr. P. 1007. See also 18 U.S.C. § 152. Information about the Debtors' assets is presumed to be public and openly available. See 11 U.S.C. § 107(a). By stating the value as "unknown" Debtors have unilaterally withheld information to which creditors and the United States Trustee are entitled to without satisfying the statutory requirements of 11 U.S.C. § 107. See Oliner v. Kontrabecki, 745 F.3d 1024 (9th Cir. 2014); Gitto v. Worcester Tel. & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1 (1st Cir. 2005). At some point, Debtors will have to disclose adequate information to creditors in the disclosure statement, see generally 11 U.S.C. § 1125, including the value of the intellectual property if it seeks to confirm a plan. See 11 U.S.C. § 1129(a)(7).

It is also notable that although Debtors contend their schedules and Statement of Financial Affairs "need to be slightly amended," the amendments filed by the Parent inexplicably remove

Sandgate Technologies as a creditor with a claim of more than $89,377[1], and add a previously unscheduled litigation claim, to wit, Cypher Enterprises, LLC. <u>See</u> Parent – Amended Schedule F – dkt. #33.  These changes support one of the United States Trustee's conclusions: that Debtors' own books and records are not reliable thereby justifying relief under 1104(a).  After more than two months since Debtors sought relief under chapter 11, the Debtors still cannot comply with the basic disclosure requirements of 11 U.S.C. § 521 and Bankruptcy Rule 1007.  Similarly, Debtors cannot comply with the obligation to report post-petition operations as evidenced by the still unfiled July operating report that was due on August 21, 2014.  <u>See</u> PACER.

### C. In the Alternative, "Cause" Exists to Convert Case to Chapter 7 Because Operations Have Effectively Ceased.

All employees except Mr. Barber and former officer, Eduardo de Castro, have resigned.  <u>See</u> Kravitz Decl. ¶ 3.  That leaves the Debtors with just three people to liquidate inventory and propose a plan.  Further, the Subsidiary is liquidating inventory to meet short term cash needs which are projected to infuse the Debtors with sufficient funds to "enact a strategy for maximizing remaining inventory value."  <u>Id.</u> at ¶ 6. And, according to the CRO, upon his arrival on August 15, 2014, Debtors cash resources "were very low" and the "pipeline of sales and orders had dried up substantially."  <u>Id.</u> at ¶ 4.  Under these circumstances Debtors' prospects for rehabilitation are unlikely thereby warranting conversion to chapter 7.  <u>See</u> <u>In re Johnston</u>, 149 B.R. 158 (B.A.P. 9th Cir. 1992); <u>Sante Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)</u>, 386 B.R. 548, 552 (Bankr. D. Del. 2008) ("Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business.").  Therefore, in the alternative, the cases should be converted to chapter 7.

///

---

[1] The Parent's Amended Statement of Financial Affairs item #3 shows Sandgate Technologies as being owed $89,377, the same amount which was previously reported on the Parent's initial Schedule F, and which also appears as a claim scheduled by the Subsidiary.

## IV. Conclusion

Wherefore, and for the reasons set forth in the United States Trustee's Motion and supportive pleadings, the United States Trustee respectfully requests the Court order the appointment of a chapter 11 trustee under 11 U.S.C. § 1104, or in the alternative, convert this case to chapter 7 under 11 U.S.C. § 1112(b).

Respectfully submitted,

Dated: September 3, 2014

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

 /s/ Julie M. Glosson
Trial Attorney
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-3333
Facsimile: (415) 705-3379