# EXHIBIT 3

**OPERATING AGREEMENT**
FOR
**HASHFAST TECHNOLOGIES LLC**

THIS OPERATING AGREEMENT (this "**Agreement**") is made and entered as of by Hashfast, LLC (the "**Member**") as the sole and initial Member of Hashfast Technologies LLC, a California limited liability company to be formed (the "**Company**") and is as follows:

1.    DEFINITIONS.

All capitalized terms used in this Agreement are equally applicable to both the singular and plural derivations of the defined terms:

"**Act**" means the Beverly-Killea Limited Liability Company Act, codified in the California Corporations Code, Section 17000 et seq., as amended from time to time, as well as any subsequent superseding statutes (as those may be amended from time to time).

"**Member**" means the initial member identified above and all new, or substitute Members, pursuant Section 11 of this Agreement.

"**Manager**" means the initial managers identified in, and any and all additional or successor Managers designated pursuant to, Section 7.2 below.

2.    ORGANIZATION.

2.1    Formation.    Promptly upon Member's execution of this Agreement, Member shall execute and file Articles of Organization (the "**Articles**") with the California Secretary of State (the "**Secretary**") to form the Company. This Agreement shall govern Member's rights and obligations and the Company's administration to the extent permitted by the Act.

2.2    Name.    The Company's name is "**Hashfast Technologies LLC**". The Company may conduct business under any other name Member deems necessary or desirable to comply with local law.

2.3    Purpose.    The Company's purpose is to engage in any lawful act or activity for which a limited liability company may be organized under the Act on the terms and conditions and subject to the limitations set forth in this Agreement.

2.4    Term.    The Company's existence commenced on the date the Articles were filed with the Secretary and shall continue until dissolved pursuant to Section 10 of this Agreement.

2.5    Registered Office and Principal Place of Business.    The Company shall continuously maintain a registered office and agent in the State of California as required by the Act.  The Company's initial registered office and principal place of business shall be located at  2030 Fortune Drive, Suite 200, San Jose, CA 95131, or at such other location as Member may determine from time to time. The Company may also have such offices, anywhere within or without the State of California, as Member may determine from time to time.

Case: 14-30725    Doc# 194-1    Filed: 09/03/14    Entered: 09/03/14 13:49:38    Page 1 of 9

**EXHIBIT 3**

2.6     Registered Office and Agent. The Company shall continuously maintain a registered agent in the State of California as required by the Act.  The registered agent shall be as stated in the Articles or as otherwise determined by Member from time to time.

2.7     Filing of Other Certificates. The member shall execute, file, publish, and record all certificates, notices, statements, and other instruments and amendments thereto for the formation and operation of a limited liability company as the member deems appropriate.  Member is authorized to register the Company to transact intrastate business in such jurisdictions as the member deems appropriate and in connection therewith to execute and file statements of information and similar required documents.

2.8     Tax Classification: Requirement of Separate Books and Records and Segregation of Assets and Liabilities. Member acknowledges that because the Company is formed to have a single Member pursuant to Treasury Regulations Section 301.7701-3, the Company shall be disregarded as an entity separate from its owner for federal income tax purposes until the effective date of any election it may make to change its classification for federal income tax purposes to that of a corporation by filing IRS Form 8832, Entity Classification Election, or until the Company has more than one member in which case it would be treated as a partnership for federal income tax purposes (provided that the Company has not elected on Form 8832 to be treated as a corporation). In all events, however, the Company shall keep books and records separate from those of its Member and shall at all times segregate and account for all of its assets and liabilities separately from those of its Member.

3.     MEMBER.

3.1     Member Names. Member's name, federal tax identification number, and current business address are as follows:

| Name | Tax ID | Address |
|------|--------|---------|
| Hashfast LLC | 46-2943554 | 1209 NORTH ORANGE STREET WILMINGTON, DE 19801 |

3.2     Member Meetings.  No annual or regular member meetings are required.

4.     CAPITAL CONTRIBUTION.

4.1     Initial Capital Contribution.  Member has contributed cash or property to the Company equivalent to the sum of $8,700 dollars.  Such cash or property shall be the Capital Contribution of Member.

4.2     Additional Contributions.  If at any time Member determines that the Company has insufficient funds to carry out the purposes of the Company, Member may make additional capital contributions in Member's sole and absolute discretion.

4.3     No Interest.  Member shall not be paid interest on any capital contribution.

5.     LIMITATIONS ON LIABILITY; INDEMNIFICATION.  Liability of Members and Managers Generally. Except as otherwise provided in the Act, the debts, obligations and liabilities of the Company,

# EXHIBIT 3

whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member or Manager shall be personally liable for any debt, obligation or liability of the Company solely by reason of being a Member or Manager. Except as otherwise expressly required by law, the Member, in its capacity as such, shall have no liability to the Company.

5.1 <u>Fiduciary Duties</u>. To the maximum extent permissible under applicable law, the Managers shall not owe fiduciary duties to the Company or its Members. Notwithstanding the foregoing sentence, in their management of the ordinary operations of the Company's business, the Managers shall exercise reasonable care in the performance of their management duties, which standard of care shall be satisfied by the exercise of the Managers' reasonable business judgment.

5.2 <u>Exculpation</u>. No Member or Manager (and for purposes of this Section 5, an officer will be treated as a Manager if and only if such officer is a Manager) shall be liable to the Company or to any other Member, Manager or officer of the Company in damages for any action that such Member, Manager or officer of the Company takes or fails to take in such capacity, unless: (a) such action or failure to act was undertaken in bad faith or involves gross negligence, intentional misconduct, or a knowing violation of law; and (b) such liability is not limited by other provisions of this Agreement.

5.3 <u>Indemnification</u>. The Company will indemnify and hold harmless each Person who was or is a Manager or attorney acting as legal representative of the Company (each, an "***Indemnified Party***") from and against any and all losses, claims, damages, liabilities, expenses (including reasonable legal and other professional fees and disbursements), judgments, fines, settlements and other amounts incurred (collectively, the "***Indemnification Obligations***") in connection with any and all claims, demands, actions, suits, investigations, or proceedings (civil, criminal, administrative or investigative), actual or threatened, in which such Indemnified Party may be involved, as a party or otherwise, by reason of such Indemnified Party's service to, or on behalf of, or management of the affairs of, the Company, or rendering of advice or consultation with respect thereto, whether or not the Indemnified Party continues to be serving in the above-described capacity at the time any such Indemnification Obligation is paid or incurred. Notwithstanding the foregoing, (i) no indemnification shall be provided by the Company under this Section 5.3 with respect to any Indemnification Obligation that resulted from action or inaction of such Indemnified Party that, in each case, constituted gross negligence or willful misconduct and any indemnity provided under this Section5.3 shall be provided out of and to the extent of Company assets only, and the Members shall not have personal liability on account thereof.

5.4 <u>Advance of Expenses</u>. To the fullest extent permitted by applicable law, expenses (including reasonable legal fees and other professional fees and disbursements) incurred by an Indemnified Party defending any claim, demand, action, suit or proceeding may, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnified Party to repay such amount if it shall be determined that the Indemnified Party is not entitled to be indemnified as authorized in this Section 5.5.

5.5 <u>Reliance</u>. An Indemnified Party shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Indemnified Party reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements.

Case: 14-30725    Doc# 194-1    Filed: 09/03/14    Entered: 09/03/14 13:49:38    Page 3 of 9

# **EXHIBIT 3**

5.6     Indemnification Not Exclusive. The indemnification provided by Section 5.6 shall not be deemed to be exclusive of any other rights to which each Indemnified Party may be entitled under any agreement, or as a matter of law, or otherwise, both as to action in such Indemnified Party's official capacity and to action in another capacity, and shall continue as to such Indemnified Party who has ceased to have an official capacity for acts or omissions during such official capacity or otherwise when acting at the request of the Company, or any Person granted authority thereby, and shall inure to the benefit of the heirs, successors and administrators of such Indemnified Party.

5.7     Insurance on Behalf of Indemnified Party. The Company shall have the power but not the obligation to purchase and maintain insurance on behalf of each Indemnified Party, at the expense of the Company, against any liability which may be asserted against or incurred by him or her in any such capacity, whether or not the Company would have the power to indemnify the Indemnified Party against such liability under the provisions of this Agreement.

5.8     Amendment of Agreement; Separate Indemnification Agreements. The indemnification provided for in this Section 5 shall apply as written here to acts occurring prior to any amendment of this Agreement, notwithstanding such amendment to this Agreement.  The Company may enter into separate agreements providing for the indemnification of Managers, officers or other agents of the Company, on such terms as are from time to time approved by the Manager with consent of the Member, to the fullest extent permitted by applicable law.

6.     DISTRIBUTIONS.

6.1     Payment. Distributions shall be made at such times,  and from time to time as Member may determine.

6.2     Restrictions on Distributions. Notwithstanding Section 6.1, no distribution shall be made if, after giving effect to the distribution: (a) the Company would not be able to pay its debts as they become due in the usual course of business; or (b) the Company's total assets would be less than the sum of its total liabilities.

7.     MANAGEMENT.

7.1     Powers. Member shall have all necessary powers to manage and carry out the Company's purposes, business, property, and affairs, including, without limitation, the power to exercise on behalf, and in the name, of the Company all of the powers described in Act Section 17003.

7.2     Managers. Simon Barber and Eduardo de Castro shall be the managers of the Company (each are referred to individually and both collectively as the "**Manager**" in this Agreement) and, in such capacity, shall manage the Company in accordance with this Agreement. The Manager is an agent of the Company's business, and the actions of the Manager taken in such capacity and in accordance with this Agreement shall bind the Company. The Manager shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as it deems necessary or appropriate to accomplish the purpose of the Company as set forth herein. Without limiting the generality of the foregoing, the Manager shall have the power and authority to bring and defend on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise; and execute all documents or instruments, perform all duties

Case: 14-30725    Doc# 194-1    Filed: 09/03/14    Entered: 09/03/14 13:49:38    Page 4
of 9

# **EXHIBIT 3**

and powers and do all things for and on behalf of the Company in all matters necessary, desirable, convenient or incidental to the purpose of the Company, including, without limitation, all documents, agreements and instruments related to the making of investments of Company funds. The expression of any power or authority of the Manager in this Agreement shall not in any way limit or exclude any other power or authority of the Manager that is not specifically or expressly set forth in this Agreement. The Manager shall be the sole person or entity with the power to bind the Company, except and to the extent that such power is expressly delegated to any other person or entity by the Manager, and such delegation shall not cause the Manager to cease to be the Manager. The Manager may be removed without cause by Member. The Manager shall serve until removed and the Manager's successor is designated by Member or until the Manager's earlier death, retirement or incapacity. Upon the death, retirement or incapacity of the Manager, a successor shall be designated by Member.

      7.3   <u>Officers</u>. The Company shall have the following officers: Chief Executive Officer, Chief Financial Officer , Chief Technology Officer, Secretary and such other officers as the Manager may appoint with the approval of the Member, from time to time, and all such officers shall be appointed and removed at the will of the Manager and shall perform such functions as are herein provided or as specified by the Manager:

      (a) Subject to the direction of the Manager, the Chief Executive Officer will be responsible for the strategy as well as the general direction and supervision of the business and affairs of the Company and will perform such other duties as from time to time may be assigned to him by the Manager. The Chief Executive Officer, in general, shall have, and shall be entitled to exercise, all the powers generally appertaining to the chief executive officer of a California corporation. In the absence or disability of the Chief Executive Officer, the Chief Executive Officer's duties will be performed and powers may be exercised by the Chief Technology Officer. The initial Chief Executive Officer shall be Eduardo de Castro.

      (c) The Chief Financial Officer will:

      (i) have active control of and will be responsible for all matters pertaining to the accounts of the Company and its subsidiaries;

      (ii) have care and custody of all funds of the Company and will deposit the same in such banks or other depositories as the Manager, or any officer or officers, or any officer and agent jointly, duly authorized by the Manager, will from time to time direct or approve;

      (iii) supervise the auditing of all payrolls and vouchers of the Company and its subsidiaries and will direct the manner of certifying the subsidiaries and all other documents relating to such payments;

      (iv) receive, audit and consolidate all operating financial statements of the Company, its various departments, divisions and subsidiaries, their arrangement and classification;

      (v) keep a full and accurate account of all funds received and paid on account of the Company; and

      (vi) render a statement of his accounts whenever the Manager or the Chief Executive Officer will require.

# **EXHIBIT 3**

The Chief Financial Officer will perform all other necessary acts and duties in connection with the administration of the financial affairs of the Company, and will generally perform all the duties usually appertaining to the office of treasurer of a United States business enterprise. In the absence of the Chief Financial Officer, such person as will be designated by the Chief Executive Officer will perform the Chief Financial Officer's duties. The initial Chief Financial Officer shall be Simon Barber.

(d) The Secretary will attend all meetings of Member and will record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary will attend to the giving of notice of all meetings of Member. The Secretary will generally perform all the duties usually appertaining to the office of secretary of a United States business enterprise. The initial Secretary shall be Simon Barber.

The Manager may appoint, employ, or otherwise contract with such other persons or entities for the transaction of the business of the Company or the performance of services for or on behalf of the Company as it shall determine in his or her sole discretion. The Manager may delegate to any officer of the Company or to any such other person or entity such authority to act on behalf of the Company as the Manager may from time to time deem appropriate in his or her sole discretion. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed from time to time by the Manager. Except as otherwise provided by the Manager, when the taking of such action has been authorized by the Manager, the Manager or any officer of the Company, or any other person specifically authorized by the Manager, may execute any contract or other agreement or document on behalf of the Company.

8.    COMPETING ACTIVITIES.   Member may engage or invest in, independently or with others, any business activity of any type or description, including without limitation those that might be the same as or similar to the Company's business and that might be in direct or indirect competition with the Company. The Company shall not have any right in or to such other ventures or activities, or to the income or proceeds derived therefrom. Member is not obligated to present any opportunity to the Company.

9.    ACCOUNTING, RECORDS, AND REPORTS.

9.1    Fiscal Year. The Company's fiscal year shall be the calendar year.

9.2    Method of Accounting. The Company's accounting records shall be kept on a method to be determined by the member upon advice of the Company's accountants.

9.3    Books and Records. The member shall keep books and records of the Company that reflect all material Company transactions and are appropriate and adequate for the Company's business.

9.4    Bank Accounts. All Company funds shall be deposited in the Company's name in one or more banks, money funds, bank certificates of deposit, or government securities to be designated by the member.  All deposits into and withdrawals from any such Company account shall be made by the member or such persons as Member may designate, subject to the limitations provided in this Agreement.

9.5    Tax Filings. Member shall prepare and timely file the income tax returns for the Company with the appropriate authorities. Member shall also prepare and timely file, with appropriate

Case: 14-30725    Doc# 194-1    Filed: 09/03/14    Entered: 09/03/14 13:49:38    Page 6 of 9

# EXHIBIT 3

authorities, amendments to, or restatements of, the Articles and all reports required to be filed by the Company with those entities under the Act or other applicable laws, rules, regulations.

10.    DISSOLUTION.

        10.1    Dissolution Events. The Company shall dissolve, dispose of its assets, and wind up its affairs upon the first to occur of the following (each, a "**Dissolution Event**"): (a) Member's written consent, (b) Member's death or incompetence, or (c) the entry of a decree of judicial dissolution under Section 17351 of the Act.

        10.2    Assignment on Member's Death or Incompetency.  In the event of a Member's death or adjudication of incompetency, Member's personal representative may exercise all of Member's rights for the sole and exclusive purpose of winding up and dissolving the Company to settle Member's estate, including, without limitation, any power conferred under applicable law or this Agreement for the personal representative as an assignee to become a Member to exercise such rights of the dead or incompetent Member.

        10.3    Certificate of Dissolution. As soon as possible following the occurrence of a Dissolution Event, Member shall (a) execute a Certificate of Dissolution (the "**Certificate**") in such form as shall be prescribed by the Secretary, and (b) file the Certificate as required by the Act.

        10.4    Procedures upon Dissolution.

            10.4.1    General. Upon dissolution, the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors pursuant to the appropriate provisions of the Act and the procedures set forth in this Section 10.3.

            10.4.2    Control of Winding Up. Member shall have all the duties and responsibilities associated with winding up the Company's affairs. Member shall determine the time, manner, and terms of the sale of the Company assets, consistent with Member's fiduciary responsibilities and having due regard to the activity and condition of the relevant market and general financial and economic conditions.

            10.4.3    Liquidating Distributions.  Following the Company's dissolution, the Company's assets shall be applied to satisfy claims of creditors and distributed to Member in liquidation as provided in the Act.

            10.4.4    Certificate of Cancellation. On completion of the Company's winding up, Member shall file a Certificate of Cancellation in the office of, and on a form prescribed by, the Secretary.

11.    TRANSFERS, NEW MEMBERS, AND ASSIGNMENTS.

        11.1    Transfer and Assignment of Interests.  No Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate all or any part of such Member's interest in the Company without the prior written consent of all Members.  A Member assigning his, her  or its interest in the Company shall not be released from any liability the assigning Member may have to the Company or to any third party solely as a result of the assignment.

Case: 14-30725    Doc# 194-1    Filed: 09/03/14    Entered: 09/03/14 13:49:38    Page 7
of 9

## EXHIBIT 3

11.2     New or Substitute Members.  A new Member or a transferee of a Member's interest shall have the right to become a new or substitute Member only if such person (a) executes an instrument accepting and adopting all of the terms and provisions of this Agreement, and (b) pays all reasonable costs and expenses in connection with the admission of the new Member or the transferee as a substitute Member. The admission of a new Member or a transferee in violation of this Section shall be null and void.

11.3     Assignment of Economic Interests.  The assignee of a Member's economic interest shall not have any right to vote or to participate in the management and affairs of the Company or to become or exercise any rights of a Member.

12.     INDEMNIFICATION AND INSURANCE.

12.1     Indemnification of Member. The Company shall indemnify any Member and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding because he/she/it is or was a Member, officer, employee, or other agent or that, being, or having been such a Member, officer, employee, or agent, he/she/it is or was serving at the Company's request as a manager, director, officer, employee, or other agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise (collectively an "**agent**"), to the fullest extent permitted by applicable law.

13.     MISCELLANEOUS.

13.1     Successors and Assigns. This Agreement shall bind and inure to the benefit of Member and Members' successors and assigns.

13.2     Parties in Interest. Except as expressly provided in this Agreement, nothing in this Agreement shall (a) confer any rights or remedies on any persons other than the parties and their respective successors and assigns, (b) relieve or discharge the obligation of any third person to any party, or (c) shall give any third person any right of subrogation or action against any party.

13.3     Amendments. This Agreement shall not be amended except in a writing signed by Member.

13.4     Governing Law. The rights and obligations of Member shall be governed by, and this Agreement shall be construed and enforced in accordance with, the laws of the State of California.

13.5     Entire Agreement. This Agreement constitutes the entire agreement concerning the Company's affairs and the conduct of its business, and supersedes all prior agreements and understandings, whether oral or written. The Company shall have no oral operating agreements.

13.6     Severability.  If any provision of this Agreement, or the application of such provision to any person or circumstances, is held invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall continue in full force without being impaired or invalidated.

13.7     Counsel to the Company.  Counsel to the Company may also be counsel to the sole and initial Member first set forth above. The initial Member or the Company may execute on behalf of the

# EXHIBIT 3

Company and Member any consent to the representation of the Company that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction (the "**Rules**"). The Company has initially selected Strategic Counsel Corp. ("**Counsel**") as the Company's legal counsel.  If any dispute or controversy arises between Member and the Company, Counsel may represent either the Company or Member, or both, in any such dispute or controversy to the extent permitted by the Rules, and Member and the Company hereby consent to such representation.

IN WITNESS WHEREOF, the undersigned has made and entered this Agreement to be effective as of the date and year set forth below.

Member:

_____

Hashfast LLC

Date:   June 11, 2013