UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DENNIS MONTALI, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 14-30725 |
| | ) Chapter 11 |
| HASHFAST TECHNOLOGIES LLC, a | ) |
| California limited liability | ) (Jointly administered |
| company, | )  with Case No. 14-30866) |
| | ) |
| Debtor and Debtor-in-Possession. | ) |
| | ) |
| | ) |
| AFFECTS HASHFAST LLC, a Delaware | ) |
| limited liability company, | ) |
| | ) |
| Debtor and Debtor-in-Possession. | ) Monday, July 28, 2014 |
| | ) San Francisco, California |

Status conference on:  Debtors' motion pursuant to 11 U.S.C.
Sections 105(A), 363, 365, and Federal Rule of Bankruptcy
Procedures 2002, 6004, 6006, 9014, and 9019, for entry of orders:
(I) Authorizing the sale of estate property; (II) Authorizing the
sale of estate property free and clear of liens, claims,
encumbrances, and interests; and (III) Authorizing the:  (A)
Assumption and assignment of certain executory contracts and
unexpired leases and (B) Assumption of certain liabilities and
(C) Granting certain related relief.

<u>Appearances</u>:

| | |
|---|---|
| For the Debtor and<br>Debtor-In-Possession<br>(via telephone): | Jessica M. Mickelsen, Esq.<br>Katten Muchin Rosenman LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, California  90067-3012 |
| | Peter A. Siddiqui, Esq.<br>Katten Muchin Rosenman LLP<br>525 West Monroe Street<br>Chicago, Illinois  60661-3693 |
| For Eduardo deCastro: | Craig Stuppi, Esq.<br>Law Offices of Stuppi & Stuppi<br>1630 North Main Street, Suite 332<br>Walnut Creek, California  94596 |

Appearances continued on next page.

Appearances continued:

| | |
|---|---|
| For Simon Barber: | Ori Katz, Esq.<br>Sheppard, Mullin, Richter & Hampton<br>4 Embarcadero Center, 17th Floor<br>San Francisco, California 94111 |
| For the Official<br>Committee of<br>Unsecured Creditors: | Ashley McDow, Esq.<br>Baker & Hostetler, LLP<br>11601 Wilshire Boulevard, Suite 1400<br>Los Angeles, California 90025-0509 |
| For Gallo LLP,<br>interested party<br>(via telephone): | Ray E. Gallo, Esq.<br>Gallo LLP<br>1299 Fourth Street, Suite 505<br>San Rafael, California 94901 |
| For Uniquify, Inc.<br>(via telephone): | Christian Binder, Esq., for<br> Robert G. Harris, Esq.<br>Law Offices of Binder & Malter<br>2775 Park Avenue<br>Santa Clara, California 95050 |
| For Liquidbits<br>Corp. (via telephone): | Edwin E. Smith, Esq.<br>Bingham McCutchen LLP<br>399 Park Avenue<br>New York, New York 1022-4689 |
| | Ainsley G. Maloney, Esq.<br>Bingham McCutchen LLP<br>One Federal Street<br>Boston, Massachusetts 02110-1726 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Jane Galvani<br>235 Pine Street, 22nd Floor (94104)<br>Post Office Box 7341<br>San Francisco, California 94120-7341<br>(415) 268-2300 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California 95336-9124 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

1   <u>Monday, July 28, 2014</u>                    <u>2:00 o'clock p.m.</u>

2                    P R O C E E D I N G S

3        THE CLERK:  This is the Court's two o'clock calendar,

4   in the matter of HashFast Technologies LLC.

5        THE COURT:  Do we have any courtroom appearances

6   first?

7        Mr. Stuppi, good afternoon.

8        MR. STUPPI:  Good afternoon, Your Honor.  Craig

9   Stuppi.  We represent Eduardo deCastro.

10       THE COURT:  All right.

11       MR. STUPPI:  Mr. deCastro was one of the original

12   founders —

13       THE COURT:  Right.

14       MR. STUPPI:  And is a shareholder and a creditor.

15       THE COURT:  Yeah, I know who he is.  Right.

16       MR. STUPPI:  And he is in court for the first time, in

17   the second row.

18       THE COURT:  All right.  Good afternoon.  Thank you.

19       MR. KATZ:  Good afternoon, Your Honor.  Ori Katz,

20   Sheppard Mullin.  We represent Simon Barber in his individual

21   capacity.

22       THE COURT:  All right.  Thank you, Mr. Katz.

23       MR. KATZ:  Thank you.

24       MS. MCDOW:  Good afternoon, Your Honor.  Ashley McDow,

25   Baker and Hostetler on behalf of the Official Committee of

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 3 of 36

1 | Unsecured Creditors.  Mr. Idwartha (phonetic), who is the chair

2 | of the committee, is also present in court, Your Honor.

3 |        THE COURT:  All right.  Good afternoon.

4 |        All right.  Why don't I just call out the names of

5 | parties on the phone to make sure we have them.

6 |        Mr. Gallo, are you there?

7 |        MR. GALLO:  Yes.  Yes, Your Honor.

8 |        THE COURT:  Mr. Harris?

9 |        MR. BINDER:  This is Christian Binder here for

10 | creditor Uniquify and I am representing Uniquify in lieu of Mr.

11 | Harris.

12 |        THE COURT:  And Ainsley Maloney?

13 |        MS. MALONEY:  Yes, Your Honor.  I'm on the line.

14 |        THE COURT:  For Liquidbits.

15 |        And Mr. Siddiqui — yeah — Mr. Siddiqui, for the

16 | debtor.  Are you there?

17 |        MR. SIDDIQUI:  This is Pete Siddiqui, Your Honor,

18 | appearing on behalf of the debtor.  Good afternoon.

19 |        THE COURT:  Sorry — sorry, Mr. Siddiqui, I

20 | mispronounced your name.

21 |        And, Mr. Smith, are you there?

22 |        MR. SMITH:  All right.  Yes, Your Honor.  Edwin Smith

23 | on behalf of Liquidbits.  And I believe Greg Bachrach of

24 | Liquidbits is in the courtroom as well.

25 |        THE COURT:  He is.

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 4 of
36

1          And, Ms. Mickelsen.

2          MS. MICKELSEN:  Yes, Your Honor.  Jessica Mickelsen

3  appearing on behalf of the debtor.  Good afternoon.

4          THE COURT:  And I guess the other people are listen

5  only, so we won't go there.

6          Well, Ms. McDow, you and the debtors' counsel are the

7  principal players today in view of my ruling, so — or my

8  tentative ruling.  I guess that persuaded the debtor to accept

9  it.  So what have you and Ms. Mickelsen decided?

10         MS. MCDOW:  Your Honor, we've met-and-conferred in

11  accordance with Your Honor's orders.  We met as —

12  met-and-conferred and spoke as early as this morning — as late

13  as this morning I should say.  And what we have decided, and Mr.

14  Siddiqui or Ms. Mickelsen can add or change if they believe I

15  have this wrong in any respect, what we are going to do is we

16  are going to put together a final version of what we think is

17  kind of the alternative plan and course of action.  And that's a

18  comprehensive you know plan from creditors on the committee,

19  creditors not on the committee, from a number of parties who we

20  believe know what is in the best interests of this — of the

21  creditors of this estate.  So we are going to put the final

22  touches on that.  Part of it was —

23         THE COURT:  Well, when you — excuse me.  When you say

24  plan you mean —

25         MS. MCDOW:  A colloquial plan, yes, Your Honor.

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 5 of
36

1          THE COURT:  Lower case p plan.

2          MS. MCDOW:  Yes, lower case p.

3          THE COURT:  Plan of action, okay.

4          MS. MCDOW:  Although we do believe it could be an

5     upper case P if needed, but for now it is a lower case p.

6          We are going to put it forth to the debtors and we are

7     going to over the next ten days really try to figure out if

8     that's something that the debtor is willing to do, that or some

9     version similar to it.  And, if not, we have agreed that in ten

10    days we will file a motion for a trustee or an examiner, it

11    depends just how — how things flush out and what we as counsel

12    at the committee believe, you know, most effectively and

13    efficiently addresses the issues of the committee, as we see it,

14    in their proposal that is presented to us.

15         And if in those ten days we can't get there we're

16    going to put on our motion.  We would ask for dates from Your

17    Honor pretty quickly.  After that we think, again, the issues, a

18    number of them were raised in our opposition, which was not a

19    short one.  And it's —

20         THE COURT:  Oh, a piece of cake, I'll read it over the

21    weekend.

22         MS. MCDOW:  And it is — we are going to have a lot of

23    the same issues.  There is obviously going to be different

24    standards in evidence, but it's going to be much of the same

25    facts.  So we would ask for a date pretty quickly thereafter for

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 6 of
36

1   the actual motion to be heard, if necessary.

2          As for the motion for substantive consolidation,

3   although the debtors have essentially consented to it, we

4   understand they aren't the only parties at issue, and we respect

5   Your Honor's order and instruction that obviously other

6   creditors need to weigh in on that.  So we will yield to Your

7   Honor on what date what he wants to — Your Honor wants to set

8   for the substantive consolidation motion.

9          THE COURT:  I had — I had trouble understanding why it

10  was so urgent, and all I got from your papers was it might

11  influence the committee's decision.  It obviously didn't

12  influence the committee's decision.  And it seemed to me that

13  for two corporate entities — you know, use the term loosely —

14  that are selling off essentially all their assets and

15  liquidating, why would they care, and so it really impacts

16  creditors.

17         MS. MCDOW:  Agreed.

18         THE COURT:  And it didn't seem like there was any

19  reasonable notice out to all creditors.  That was my concern.

20         MS. MCDOW:  And we took it loud and clear, Your Honor.

21  We understand.  And the issue was just as you noted, which is if

22  we're going to sell all of the assets of the two companies

23  together through one sale, and that sale is actually going to go

24  forward, we need to have something formal done, but we respect —

25  we're dialing back.  And we are fully — we fully intend and are

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 7 of
36

1  obviously fine with giving notice to all creditors, even though

2  the debtor has essentially consented.  So, again, we will yield,

3  and I think debtors will agree, yield to Your Honor on timing

4  for that motion, because we understand there's potentially

5  creditors out there who may want to object.

6        THE COURT:  Well, again I certainly want to give the

7  debtors' representatives plenty of chance to be heard, but

8  suppose the ten days are not fruitful and you make your motion

9  for a trustee, is that something you want to kind of mix and

10  match with consolidation?  Wouldn't that argue in favor of

11  deferring the consolidation or — as not being any rush?

12        MS. MCDOW:  Your Honor, I think the issue is still

13  going to remain, which is how do we get all of the assets.

14  Because at least as far as the most recent lower case plan that

15  I'm aware of and that I've seen and have dealt with the

16  committee, it does contemplate both the IP which is held in

17  HashFast LLC and dealing with the inventory and the various

18  license and agreement between them.  So I still think even for

19  our lower case plan, which we hope, you know, the debtors can

20  get onboard with, and if not we'll flow kind of perhaps the

21  upper case P plan for this case that we still need all of the

22  assets either consolidated or we need to know that Your Honor's

23  not going to — not going to grant substantive consolidation and

24  we have to explore other alternatives.

25        THE COURT:  Well, remember that if you come to a point

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 8 of 36

1    of a plan, whether it be a creditor plan or a joint plan — I

2    mean a debtor's — debtors', two of them, plan, with the

3    acquiescence of the committee, the plan can itself provide for

4    consolidation.  And that takes away the separate urgency.

5          You know if the Delaware LLC, for example, had not

6    filed bankruptcy and the committee was concerned about

7    consolidation of a nondebtor with a debtor or a risk that sale

8    proceeds would go out the door, then I would think that that

9    would be an argument in favor of moving quickly.  But, for

10   example, if the committee had supported today's proposal and the

11   deal got done, there would be some cash for administrative

12   expenses, there would be a note of whether it's worth three

13   million or three dollars, or whatever, it would be an asset,

14   could — then there could be some sorting out on how it gets

15   divided later on.

16         So I'll let and you the debtor work on your immediate

17   activities, but I just don't want to get bogged down on — on

18   something that still doesn't strike me as time critical.  Sales,

19   yes.  Trustees, yes.  Substantive consolidation, not so much, at

20   least from my point over view.  Okay?

21         MS. MCDOW:  And I understand, Your Honor.  So we are

22   happy to put that one out on regular notice.  I think we all

23   agreed.  So that is something, again, we can either

24   self-calendar it with Your Honor, if Your Honor wants to set it

25   today just for ease so it's on the record, we're fine with

1    regular notice.

2        THE COURT:  Well, I will obviously make no decisions

3    until I hear from other parties, but I think given what you want

4    I'm more than willing to pencil in a date for a trustee motion

5    and to leave the consolidation motion for the party who makes it

6    to set it, open calendar.  And sometimes in cases that involve a

7    lot of people and a lot of traveling, we will modify the open

8    calendar to have dedicated calendars, but that will be largely

9    under the control of the moving party.  Okay.

10       MS. MCDOW:  That's understood, Your Honor.

11       THE COURT:  Okay.  Mr. Siddiqui or Ms. Mickelsen, does

12   one of you want to speak to the debtor then, where we are?

13       MR. SIDDIQUI:  Yes, Your Honor.  This is Peter

14   Siddiqui on behalf of the debtor.  We have — we have — Ms. McDow

15   is correct, we have met-and-conferred over the weekend and we

16   did so today in light of your — your ruling, Your Honor, and we

17   heeded it and got on it immediately.  And I would say that Ms.

18   McDow's recitation of our discussions is accurate.  I think

19   there's a little bit of — a bit of variance however, Your Honor,

20   and I'd like to articulate that.

21       But I'd like to start, Judge, if I may, that the deal

22   we proposed with Liquidbits on expedited consideration is

23   because in our judgment is the best deal available for the

24   debtor's assets.  You know we had negotiated that deal in good

25   faith, at arm's length, and quite vigorously.  And if today were

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 10 of
36

1  a sale hearing, Your Honor, we would have evidence of all of

2  those things, and we had looked forward to an opportunity and

3  perhaps still do subject to what I'm about to say in a little

4  bit, demonstrating that this is a good deal for the estate.  And

5  we think it's the best deal on the table for the estate.

6          But we recognize, Ms. Mickelsen and Ms. Hushen — the

7  CFO of the debtor — and I all recognize that our one and only

8  charge is to maximize the value of our assets for this estate.

9  And we take that responsibility very seriously.  And we are

10  happy to find an alternative deal out there that would yield a

11  better result for creditors.

12          And since Saturday, Your Honor, we were advised that

13  certain members of the committee and perhaps all of the members

14  of the committee plus other noncommittee members are interested

15  in submitting a proposal to the debtors that would potentially

16  generate a better return for creditors than the deal currently

17  on the table.  And committee counsel has advised that the

18  committee members are going to make every effort to put their

19  proposal to the debtor by the end of this week, which will give

20  us — the debtor some time to consider it and in no more than ten

21  days from today, file some sort of motion with this Court, which

22  is as your order suggested.  We did not agree, Your Honor, what

23  that motion would be, whether it would be a sale motion, a

24  renewed motion of the Liquidbits sale, a new sale motion, some

25  other form of transaction motion, perhaps financing, perhaps

Case: 14-30725    Doc# 212    Filed: 10/11/14    Entered: 10/11/14 22:15:11    Page 11 of
36

1  something, I'm not sure, because we don't know what their

2  proposal is.  We did not agree, Your Honor, that there would be

3  a trustee motion filed in a week's time and in ten days' time.

4  And we certainly didn't agree that we would consent to a trustee

5  motion if, for whatever reason, the deal proffered by the

6  committee members did not make sense to the debtors.

7        Now, Your Honor, we are very sensitive to the fact

8  that we work for the creditors and that in a way this is their

9  case and that the value that we generate as debtors'

10  representatives accretes to their benefit principally,

11  primarily, and in all other ways.  But I don't think the deal

12  was — more frankly stated, the deal is not that if we don't

13  accede to the Creditors' Committee's request that there shall be

14  a trustee motion.  I think — I don't think that's what Ms. McDow

15  meant and I am not trying to put words in her mouth, but I just

16  wanted to make that point clear.

17        But I also want to emphasize, Your Honor, that if the

18  committee's proposal is a good one we will be eager to file a

19  motion to approve it.  We'd be even more pleased if a bidding

20  war broke out and the price for our assets runs up, but we

21  haven't seen the proposal yet.  We're hopeful to see it by the

22  end of the week.  In fact, that's the commitment we have

23  received that they will take efforts to get it to us by the end

24  of the week, and we'll wait and see.

25        We are of course concerned about timing, Your Honor.

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 12 of
36

1   You said it just right, that sale motions are things that

2   require at times expedited consideration, as do trustee motions.

3   And, as you know, Judge, you're well aware that we've been

4   engaging in an ordinary-course sale effort to preserve the

5   business operations as we progress to a sale or other

6   transaction involving our assets.  And we ask the committee to

7   move a little faster than by the end of the week to submit their

8   proposal, but they have assured us that they are moving as

9   quickly as possible even at that timeframe.

10          We're also of course concerned, Your Honor, and I

11  understand the implications of your order on Saturday, but we

12  are concerned about jilting our buyer or our bird in the hand,

13  as it were.  You know we're concerned about Liquidbits'

14  willingness to proceed on the terms set out in the motion or

15  that their willingness to proceed on those terms may decrease or

16  even evaporate all together.  And we believe that risk, the risk

17  of spoiling the current deal can be ameliorated by acting

18  quickly.  That's the debtor's belief.  And we're prepared to do

19  that, Your Honor.  We are — we take this very seriously.  We

20  took your ruling to heart.  Like I said, we heeded it and

21  immediately on Saturday evening we're coordinating with each

22  other to address Your Honor's concerns.  And we —

23          THE COURT:  Well, that's good to concern because that

24  shows us a lot of work on Saturdays.

25          MR. SIDDIQUI:  Yes, Your Honor.  I will say that if —

Case: 14-30725    Doc# 212    Filed: 10/11/14    Entered: 10/11/14 22:15:11    Page 13 of
36

1    to talk briefly, just briefly on substantive consolidation, I

2    don't think you've necessarily solicited any comments.  You

3    know, we — we shared your view that it seemed a little early at

4    this stage in this case and we also share your view, though,

5    that if this is a liquidation, if these assets are all

6    liquidated, then it doesn't really concern the debtors at this

7    point, but we're happy with the conclusion that Ms. McDow

8    reached with your guidance in terms of the regular notice.

9              THE COURT:  Okay.  Well, let me wait one second.  I

10   want to make a couple comments.  And if Mr. Smith wants to be

11   heard, I'll come to him in a minute.

12             But, first of all, I meant, and I hope Mr. Smith and

13   his client didn't glean from my docket text order, not leaving

14   aside anyone else's, any criticism of them.  And I certainly

15   appreciate hard work by lots of folks, lawyers and nonlawyers

16   on, you know, a lot of drafting, a lot of thinking.  But I want

17   to at least give you some points that were of concern to me.

18   It's not appropriate today to nitpick line by line a complicated

19   motion.  And I was — but as I said in my short order, that

20   before I ever got to the objection, I had problems.

21             First of all, the first problem was with me.  I think

22   I made the mistake of thinking this was just a sale motion.  And

23   when I granted the order shortening time, although I knew

24   everything had to move quickly, I sort of said, well, the

25   committee wants one extra week, I'll defer on that because it's

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 14 of 36

1   just a sale.  Well, unfortunately, it's not just a sale.  So as

2   I work through the moving papers I really want to kick myself

3   for shortening time down as much as I did.  But, you know, that

4   was a done deal.

5          So I want to at least give you, Mr. Siddiqui, and your

6   co-counsel and your client some big-ticket heads-up.  As I say,

7   I'm not going to tell you where you should have dotted an *i* or

8   crossed a *t*.  But in no particular order, despite citing

9   asbestos cases and other for successor liability, I am not a

10  believer and nor do our Local Rules permit to sell assets free

11  and clear of unnamed, unknown people.  Our Local Rule that seem

12  to be kind of honored a bit was, and 6004, you have to name the

13  people you're trying to strip clear of liens or interests, and

14  you named three parties.  But then that goes to the question,

15  well, there really wasn't any adequate explanation of the

16  dispute that existed and certainly there was no consent and the

17  catch-all of 363(f)(5) is just a nonstarter in my book except in

18  very narrow cases.

19         So we come back to a case — you know I thought about a

20  case that hasn't been cited in years and I guess I'm so old I

21  remember it, but there's a Ninth Circuit case called *Nelson*

22  *versus Tiffany Industries*, which has to be 30 years old at

23  least, and it is the last decision I can recall from the Ninth

24  Circuit on the subject of when there may or may not be successor

25  liability.  And that case predates, you know, some of the more

Case: 14-30725    Doc# 212    Filed: 10/11/14    Entered: 10/11/14 22:15:11    Page 15 of 36

1  recent asbestos cases and some of the cases like General Motors

2  and what it's dealing with with the ignition problems, and so

3  on.  But I am not really inclined to have any kind of an order

4  that has one of these abstractions about, well, you know, there

5  is this freedom on the buyer.  So if that is something that

6  Liquidbits or anyone else wants to get some protection on, you

7  ought to go back and read *Nelson* and you ought to recognize that

8  I'm not a big fan of that.  Also — okay.  So that's a general

9  statement.

10  The impression I had is that nobody read my Standard

11  Published Practices and Procedures that have been on our court's

12  website for at least 10 years or, if not, 15 on the subject of

13  363(m).  Nobody came close to complying with the simple

14  procedures that I have there.  Nobody came close to complying

15  with my interpretation in published decisions on what you have

16  to show for a 9019 *A&C Properties* list of — to justify a

17  compromise.  And certainly I could share with the Creditors'

18  Committee the view that to take what was teed up as a sale and

19  suddenly make it a general release for a party of claims that

20  aren't even identified, that's just a nonstarter.

21  And although the committee didn't say it, I had the

22  distinct impression as I worked through the termsheet, and as I

23  mentioned in the docket text, I never did have time or

24  inclination to read the definitive agreement because I too was

25  reading a lot this weekend and some other cases that absorbed my

1   time too, it really looks like a disguised plan, because

2   although I've been a pushover on quick sales, not on disguised

3   plans, and it seemed to me that the creditors of the estate were

4   taking and being asked on limited disclosure to put all of their

5   eggs in the basket of *Newco* and a promissory note — which, by

6   the way, according to the termsheet, was subject to an

7   intercreditor agreement that was not described.  So it could

8   have been a nice secured claim that was junior to fresh money,

9   which would mean that it was completely a risk even if the

10  purchaser prospered for a while.

11          One other point and then I'm going to stop my comments

12  on what I found troublesome about the deal, and this might have

13  been nothing more than a drafting error and just an oversight,

14  but there was left to the debtor certain avoidance actions but

15  one category of avoidance actions not left to the debtor and

16  those are under Section 544 of the Bankruptcy Code.  So it's

17  nice to leave the debtor with 547 and 548, but if you take away

18  544, you may indeed be stripping the debtor of one significant

19  tool in its toolbox, and then finally the notion of letting the

20  buyer have one third or 30 percent, or whatever it was, of

21  avoidance action recoveries, seems like a long way from a

22  straight, old sale.

23          So I don't want Mr. Smith or his colleagues to feel

24  they have to make any statement that explains what happened on

25  those categories.  If there is a renewed motion to sale that has

Case: 14-30725    Doc# 212    Filed: 10/11/14    Entered: 10/11/14 22:15:11    Page 17 of
36

1   some of these big-ticket items, you got an opponent here, not in

2   the Creditors' Committee chair.

3          So I will leave it at that time.  I will say that I'm

4   prepared to suggest a date where I would hear a motion to

5   appoint a trustee, if the committee is inclined to file one, and

6   just leave any other date to be set by any party who moves it

7   but recognizing, Mr. Siddiqui, if the debtors wish to go back

8   with a new version of an old concept and the committee isn't

9   onboard, I'm still willing to shorten time as long as I know

10  what I'm being asked to shorten it for and not something as

11  far-reaching as what I did shorten.

12         And, to that end, today is the 28th of the July, and

13  if the committee and the debtor have been talking about ten

14  days, that gets you out to about August 8th, I believe, and I

15  could — if a motion was filed on the 8th or even as late as

16  August 11th, I'd be willing to hear it on a shortened time, so

17  late, for example, late — as late as Friday, August 22nd.  It

18  happens that I will not even be here for the week of August

19  11th, so I couldn't hear anything in that week in any event.

20  But why don't we cross that bridge when we come to it.  If the

21  committee makes a motion and wants to shorten time, I would be

22  inclined to shorten it for hearing around the 22nd or rolling

23  into the following week.

24         So with that I will see if anybody for Liquidbits

25  wants to say anything or Mr. Gallo, or I'll then call upon

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 18 of
36

1    anyone else who, you know, has been appeared or been active in

2    the cases so far.  Mr. Smith.

3         MR. SMITH:  Your Honor, it's Edwin Smith for

4    Liquidbits.  And, first of all, I want to thank Your Honor for

5    at least the timing of your Saturday order and you did spare a

6    lot of us from unneeded travel.  So we very much appreciate the

7    clear signal that you gave, and our families do too.

8         I would, though, like to say three very quick points,

9    Your Honor.  And the first one is Liquidbits is a creditor of

10   HashFast as well and we think perhaps the largest creditor.  And

11   even with all of the concerns Your Honor has, some of which were

12   addressed in the definitive documents, Liquidbits does believe

13   that it has offered a deal that's superior to any other

14   transaction that might be possible and is in fact in the best

15   interests of creditors.

16        This is so especially considering that the primary

17   assets of the debtor are these chips and wafers that are rapidly

18   depreciated in value.  So we're not even sure in three or four

19   weeks' time there will be any value left here, Your Honor.

20        THE COURT:  Yeah, I understand.

21        MR. SMITH:  Second, — I'm sorry.

22        THE COURT:  No, I understand that.  I mean that's been

23   — that's been the party line since we started, but I can't

24   control that, so.

25        MR. SMITH:  I understand, Your Honor.

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 19 of
36

1          Second, I want to comment on the status of Liquidbits'

2   offer because this delay is obviously critical in terms of the

3   economics.  We certainly understand the procedural standpoint

4   but with one huge caveat.  Liquidbits is willing to consider

5   keeping its offer open for the next week or two while the

6   committee explores these other options, but you know here's the

7   caveat.  Any renewed offer from Liquidbits for a sale in a week

8   or two or week or three would have to reflect the declining

9   value of the chips.  In other words, if Liquidbits were to go

10  forward with an offer, that offer would end up being at lower

11  pricing than what we have today.

12          THE COURT:  Well, that does — does that mean your

13  percentage of the avoiding actions goes down and the release

14  gets diluted also?  I mean, you know, that's only fair, right?

15          MR. SMITH:  Your Honor, I'm concentrating on the value

16  of the declining chips and not the other aspect.

17          THE COURT:  Oh, okay.

18          MR. SMITH:  And — but thank you.  I wasn't going to go

19  where you were going.

20          THE COURT:  Okay.

21          MR. SMITH:  Then — and I just want to make one other

22  comment which is that there have been a number of allegations in

23  the Creditor's Committee objection that really attempt to paint

24  Liquidbits in a very bad light.  And this is not the place for

25  Liquidbits to refute those allegations, but I just want to say

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 20 of
36

1   on the record that if the issues that were raised in the

2   objection ever become relevant before the Court, Liquidbits is

3   confident that it would be able to demonstrate a number of

4   things.  One, it's not an insider of the debtor.  In fact, as

5   Your Honor will recall, Liquidbits brought an arbitration action

6   against the debtor before the involuntary petition.  In

7   addition, Liquidbits has conducted itself in a professional way

8   in good faith in negotiating with the debtors in making this

9   offer.  And Liquidbits' claims against the debtor are

10  meritorious.  And they're not subject to any meritorious claims

11  and defenses.

12          Now we understand that the core reason for the

13  committee's rejection of Liquidbits' offer is that the

14  Creditors' Committee believes, despite the substantial upfront

15  payment by Liquidbits and further investment by Liquidbits —

16      (Cellphone chime.)

17          THE COURT:  Answer the phone, somebody.

18          MR. SMITH:  — that the creditors should not have to

19  take execution risk.  And that's a business-judgment issue on

20  which reasonable minds can differ and may not have required, we

21  think, ad hominem attacks on Liquidbits of the debtors.  But

22  presumably if there is an alternative transaction out there

23  that's going to be proposed by the committee, it will address

24  the execution-risk issue with upfront compensation for the

25  debtors.  It will provide an equal opportunity for all

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 21 of
36

1    creditors, just not members of the committee, to participate.

2    And, as the committee stressed in its objection, —

3         (Cellphone chime.)

4         MR. SMITH:  — that it would permit overbidding.

5         So of course if what the committee has in mind is an

6    opportunity that's open to all members of the committee but not

7    to other creditors, then I think the committee itself is

8    conflicted and the U.S. Trustee's Office should form a new

9    committee.  And —

10        THE COURT:  Well, but who said — who said overbidding

11   would be restricted to committee members?  I mean that wouldn't

12   be right.  I couldn't imagine that that would make sense.  But,

13   again, let's not —

14        MR. SMITH:  How can you — how can you have members of

15   the committee making a bid for HashFast for themselves as

16   members?

17        THE COURT:  Well, I don't know, but why don't we worry

18   about it when it becomes an issue.  I mean maybe a committee

19   member would have to withdraw from the committee, I don't know.

20   I'm not — you know, and maybe — but that's not a today issue.

21   There's no offer on the table that's open to overbids, so.

22        MR. SMITH:  I was trying to get some flash points for

23   the future, Your Honor.

24        THE COURT:  Yeah.  Fine, that's fine.  Okay.

25        MR. SMITH:  That's really all I have to say at this

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 22 of
36

1  point.  Thank you, Your Honor.

2          THE COURT:  Okay.  All right.  Let's go to the parties

3  in court.  Does anyone in court want to be heard on any subject?

4  Mr. Stuppi or Mr. Katz, I think — I don't recall that you have

5  appeared previously.  Or if you have, I don't recall that you

6  said anything on the record.  And you don't have to today, it's

7  just if you want to for your clients.

8          MR. STUPPI:  We don't have anything to add, thank you,

9  Your Honor.

10          THE COURT:  Okay.

11          MR. STUPPI:  We are concerned about the substantive

12  consolidation, but I understand the Court's not making a ruling

13  on that at all today.

14          THE COURT:  And that's — it's not even set at the

15  moment.

16          MR. STUPPI:  Correct.  Thank you, Your Honor.

17          THE COURT:  Mr. Katz, anything?

18          MR. KATZ:  No, Your Honor.

19          THE COURT:  Okay.  How about any of the — I won't ask

20  you by name, does any of the other counsel on the phone want to

21  be heard?

22          MR. GALLO:  Ray Gallo, Your Honor.  Just very briefly,

23  to provide a little bit of counterpoint.

24          My general view of this proposed deal initially was

25  very different from some others in that I actually felt that

 1  since, for the most part, the creditors are all involved in this

 2  Bitcoin business and we're all prepared to take the risk of

 3  engaging in mining Bitcoins, that the creditors might well be

 4  better served, especially based on the general consensus that

 5  Bitcoins are likely to increase in value, with a deal that

 6  didn't have a cap and also didn't have a floor, and that that

 7  would be a better business judgment.  And I just wanted to share

 8  that.  I don't know how widely that's shared.  It seemed to

 9  resonate with my client, but it was important to me that, you

10  know, the Court understand that, in fact, the debtor really

11  negotiated to ensure that there was some kind of a minimum, and

12  I had cautiously supported the deal subject to seeing the final

13  document, which at this point I haven't read, I understand they

14  were posted maybe late on Friday, and I got the Court's ruling

15  on Saturday or premonition of a ruling on Saturday, but the fact

16  that there was going to be a couple million dollars that would

17  be forfeit in this deal if the — if the sale was not properly

18  concluded and executed on, I found to be very encouraging.

19          And so my hope is that the — while I welcome every

20  other bid in the world of course and am thrilled if the

21  committee members or somebody wants to make another offer,

22  that's great, I certainly hope that Liquidbits will stay in the

23  party and that debtors' counsel will renew its motion and try

24  and address these concerns the Court has pointed out.

25          THE COURT:  Well, Mr. Gallo, please understand that

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 24 of 36

1    from my point of view, looking at it as a bankruptcy

2    transaction, of course you are right, if the deal had been

3    approved and closed there would be as much as $2 million on the

4    table, presumably from a purchaser who had the financial ability

5    to produce $2 million.  There's been no evidence of that, but

6    I'll assume Mr. Smith and his clients could have done that, but

7    it was then what, because I think what the committee was

8    concerned about and what certainly I independently was concerned

9    about is what are these releases, what is Liquidbits being

10   released for, what is the real value of the claim it is

11   releasing, what is the value of the avoidance claims that it's

12   going to be taking a chunk out of in the future, and — and then

13   apart from all of that.  And those are all bankruptcy and legal

14   issues.  They have nothing to do with Bitcoins per se.

15            Then the question is, well, how valuable is the

16   deferred payment of three million or three more million, or

17   whatever.  It's certainly a cap, you're right.  But —

18            MR. GALLO:  One of the interesting things, Your Honor,

19   that actually somewhat mollified me on that concern was the

20   point which, again I think probably wasn't made to you timely,

21   because I think it comes out maybe in a formal document and not

22   so much in the earlier motion, but that the — while — while

23   denoted in dollars, payments were to be made in Bitcoin, —

24            THE COURT:  No, I know that.

25            MR. GALLO:  — as I understand, to the trust — okay.

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 25 of
36

1   Well, so there was the prospect that if in fact — the committee

2   is relying in part when it says that the sky isn't falling,

3   which I — which I disagree with, I think the sky is falling, if

4   not, you know, this second; that because Bitcoins are likely to

5   go up in value the depreciating share of the world profiting

6   (phonetic) power represented by these chips isn't — doesn't

7   necessarily mean that they're going down in value.  The problem

8   of course is that every bit of opportunity to have Bitcoins and

9   whole Bitcoins that are appreciating does — does hurt.

10         I don't — I don't mean to get into details with the

11  Court.  I guess what I'm saying is I think that the Court's

12  concerns and the committee's concerns could all be addressed if

13  everybody communicated and the debtor got a more complete motion

14  on file, so I just hope that will happen.

15         THE COURT:  Okay.  Ms. McDow, wait one second.

16         Anyone else on the phone want to be heard that hasn't

17  spoken yet?

18      (No audible response.)

19         THE COURT:  Okay, Ms. McDow.

20         MS. MCDOW:  Just a couple of follow-up issues, Your

21  Honor, and I also — again, you have 30 pages of what we think is

22  wrong with the deal, so I don't intend to rehash them here.  But

23  suffice it to say certainly for the note, just to address Mr.

24  Gallo's point, a $3 million note is a $3 million note, whether

25  it's Bitcoins that are turned into dollars or what it is, so —

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 26 of
36

1          THE COURT:  Well, it's a possibly subordinated note.

2          MS. MCDOW:  Yes.

3          THE COURT:  Possibly.

4          MS. MCDOW:  So — so but again I'm not going to rehash.

5     You know where we feel on it.

6          The other issue to address, kind of the bigger — I

7     think the bigger picture about overbids and whatnot, one of the

8     big things, there may be no sale, Your Honor.  There may be a

9     cohesive plan for DIP financing and a plan that we put to the

10    debtor where — again, I have no problem telling the Court, it's

11    been told to everybody on the phone — our belief is that if we

12    could get the right person and an infusion of capital of x

13    amount, which I'm still fleshing out with members of the

14    committee, we could operate these boards ourselves, and

15    ourselves means within the case and not selling them to a third

16    party necessarily, and we could make enough money to pay all of

17    the creditors in full.

18         So again it may be — it may not be subject to overbids

19    in the sense that if it's a DIP financing it's a DIP financing,

20    whether it's a third-party lender or whether it's people on the

21    committee or other creditors in the case willing to infuse

22    capital here, again that's — that is more of the avenue we're

23    heading down, so I don't want to delude anyone that there is

24    necessarily going to be a sale that is put forth to the debtor

25    or to this Court in ten days.  It very well could be —

1              THE COURT:  What about — what about a plan?

2              MS. MCDOW:  And — or a plan.

3              THE COURT:  A capital P plan.

4              MS. MCDOW:  Yes, a capital P plan, Your Honor.

5              THE COURT:  I'm not a fan of exclusivity if there is a

6    real deal out there.

7              MS. MCDOW:  I agree, Your Honor.  And one of the

8    components is whether we bring to Your Honor a motion to

9    terminate exclusivity, and this is our capital P plan, which

10   again now it is a lower case p plan.  We haven't — we haven't

11   proposed it, but we are certainly as committee counsel looking

12   at it as a capital P plan in the sense that if we can really get

13   the numbers from the members, and this is where we have to defer

14   to our clients, that we get all the numbers we need where we can

15   get — I mean there's three big components for us in this deal,

16   which is:  One, how much is it really going to cost; B, how much

17   time is it going to take; and, three, where are we going to get

18   those funds.

19              And for us, if we can figure out all those three

20   points, then that's what the three pieces that are missing from

21   my point of view, and certainly other members of my firm is to

22   present to the debtor those three points.  And then once we have

23   a handle on what those are, we are confident that the creditors

24   can take care of the rest in the sense of who does it.  And

25   that's what we would put to the debtor and that's what we put

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 28 of
36

1    before Your Honor.

2              And, again, whether it's through a motion to terminate

3    exclusivity on that date, a motion for a trustee — which

4    obviously if granted would terminate exclusivity, whatever that

5    is, we do envision this as a capital P plan, and that's

6    certainly how I'm crafting it from my point of view at this

7    stage.

8              So I just wanted to be forthright about what is going

9    to maybe be here in ten days.  I've never — I never narrowed it

10   to a sale, and maybe that's the word around the block that

11   certainly we think there are alternatives, but one of them — you

12   know, again we don't think it takes that much money to put what

13   there is to work now.  You know, we think between seven hundred

14   and a million dollars, max in our estimation, which again with a

15   value of seven and a half million in inventory, as weird as the

16   inventory may be, we can find somebody who will lend on that,

17   so.

18             THE COURT:  But, remember, the committee can't force

19   the debtor to borrow.

20             MS. MCDOW:  Of course.

21             THE COURT:  The committee can attempt a plan that

22   includes a reorganized entity or a liquidating trustee or

23   somebody borrowing or can leverage the debtor into doing it, but

24   let's leave it at that.

25             Mr. Siddiqui, I just want to circle back to one thing

Case: 14-30725    Doc# 212    Filed: 10/11/14    Entered: 10/11/14 22:15:11    Page 29 of
36

1   you said.  You said if I hadn't issued this docket text order
2   maybe you'd have some evidence to present at the hearing and
3   maybe the next time you would, but that's part of the problem.
4   I don't want a contested hearing to turn into a trial where
5   there hasn't been an opportunity for informal if not formal
6   discovery.  So if — and I'm not inviting turning this into, you
7   know, world war three in terms of litigation, but you've got to
8   have a basic case with a declaration.  The declaration of Ms.
9   Hushen didn't get into the kinds of things that we needed, like
10  the evaluation of what was being released, the valuation of the
11  claim, the specifics of the dispute with the secured lender — I
12  mean the parties who are — you're asking to sell free and clear
13  of, and so on.
14       So — so just so you know, that's — it's my view that
15  these are brought on by motion and therefore motion means
16  supporting declarations that would make the case even if there
17  were no opposition, a prima facie case on the relevant facts.
18  Now does that mean every single word of testimony a witness
19  would give?  No.  It means the ultimate facts from a competent
20  witness to say what he or she says to support the outcome, so.
21       All right.  Well, then I'm going to — it was requested
22  that we treat this as a status conference.  It's a status
23  conference.  I'll take the committee's counsel's word that the
24  committee's going to work hard in the next several days to
25  convince the debtor on an action plan.  And, as I stated, those

1   ten days by my calculation end at about August 8th or 7th.  And

2   if I've got a motion to shorten time from the committee — the

3   committee, within a day or two of then, and I would be willing,

4   assuming we have a date — we do have time on the 22nd of August,

5   don't we?

6           THE CLERK:  Yes.

7           THE COURT:  In the afternoon?

8           THE CLERK:  Yes.

9           THE COURT:  I mean I don't like to do it on Friday

10  afternoons with people traveling, but I've already saved them

11  one weekend.  All right.  You're coming up to the podium again,

12  Ms. McDow, a problem with it?

13          MS. MCDOW:  Is there any — I know you said you were

14  gone on the 11th, Your Honor.  Is there anything sooner than

15  that?

16          THE COURT:  Well, I mean sooner gets back to, well,

17  then are we back to this urgency.  Yeah, there might be a day or

18  two sooner, but if you — when would you file your motion?  It's

19  not fair to the other side, you know, to do these things to

20  soon, like —

21          MS. MCDOW:  Understood, Your Honor.  If we filed it on

22  the 8th and not the 11th, and again I appreciate it, but I also

23  think the debtor, in fairness, has done it to us, and I think

24  they're in — again, there are going to be no surprises in what

25  we —

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 31 of
36

1      THE COURT:  I know, but I confess error, and I

2  wouldn't have shortened time if I had read the darn motion

3  first.

4      MS. MCDOW:  I understand.  Your Honor, I — I believe

5  in our meet-and-confer — and Mr. Siddiqui may disagree — but we

6  envisioned as much.  As long as we can get our act together, so

7  to speak, and get it on file on the 7th, let's say, and we can

8  commit to doing that, we'd ask for a sooner date for a response,

9  whether it means that our reply is due in a shorter period of

10 time, sobeit.

11     THE COURT:  Well, that assumes you're entitled to a

12 reply.  When would you want to have it heard?

13     MS. MCDOW:  Other than the 11th, what is the 15th — I

14 don't have a calendar in front of me, Your Honor.

15     THE COURT:  No, I just told you I'm out that week.

16     MS. MCDOW:  Oh, you're out the entire week.  I

17 misunderstood, Your Honor.  I thought you were out on the 11th.

18     THE COURT:  Well, I'm here — I'm here on Monday,

19 August 11th, but that's just simply too short.

20     MS. MCDOW:  I don't disagree.  Okay, so then the next

21 week you are out for the rest of the week.

22     THE COURT:  Most of the bankruptcy judges in the

23 country are off or a good number of them are off at a training.

24 We're going to get smarter and wiser.  Our continuing education

25 program.  So I mean I just can't excuse that.  And there may be

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 32 of
36

1   some of my colleagues that will still be here, but I can't

2   really give them the background in this case.  So it's got to be

3   the week of the 18th.

4              MS. MCDOW:  Can we have it then on the 18th, Your

5   Honor?

6              THE COURT:  Well, when would you file your motion?

7              MS. MCDOW:  We'll file it on the 7th.

8              THE COURT:  On the 7th?

9              MS. MCDOW:  Yes.

10             THE COURT:  Is August 18th available?

11             THE CLERK:  You're in trial.

12             THE COURT:  Which trial?

13             THE CLERK:  MC2.

14             THE COURT:  That's the 18th and 19th, right?

15             THE CLERK:  Yes, and 20th.

16             THE COURT:  On the MC2?

17             THE CLERK:  Yes — excuse me.  On the 20th is Chapter

18  13 in the afternoon.  You're open in the morning —

19             THE COURT:  I can do it on the morning of the 20th.

20             MS. MCDOW:  We'll take it, Your Honor.

21             THE COURT:  That's the best I can do for you.

22             MS. MCDOW:  We'll take it.

23             THE COURT:  All right.

24             MS. MCDOW:  And, Your Honor, — Your Honor.

25             THE COURT:  9:30.  I'll — okay.  It's a tentative

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 33 of
36

1  date.  At the moment there's nothing, but if I get an
2  application to shorten time —
3          THE CLERK:  Sorry, Judge.  The calendar isn't
4  populating correctly.  You do have MC2 at 9:30 a.m. on August
5  20th.
6          THE COURT:  That's MC2 versus the objection to claims,
7  right?
8          THE CLERK:  Yes.
9          THE COURT:  Now you see all these books over here, one
10 of my colleagues asked me to take a three-day trial and these
11 are days eight and nine and ten we have scheduled for that
12 three-day trial.
13         MS. MCDOW:  Understood.
14         THE COURT:  So sorry.  I'll tell you what, I'll take
15 my chances.  I'll still leave it on the morning of the 20th as
16 tentative.  Maybe it will be unnecessary and I'll figure out
17 what to do about that.  So if you file a motion for a trustee or
18 something, a big ticket item like that, by the 7th, you can — if
19 you get a stipulation from the debtor, I'll hear it on the 20th.
20 If you can't, then you'll have to make the case for why I should
21 it hear it.  But the date we'll pencil in as the 20th at 9:30.
22         MS. MCDOW:  Your Honor, is it fair to assume when you
23 say a big ticket item, for example, a motion to terminate
24 exclusivity could be heard on the same day?
25         THE COURT:  That to me, for anyone who knows me, knows

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 34 of
36

1   I don't think much of exclusivity.  I've been quoted as saying

2   it's an East Coast phenomenon.  And if anybody has a viable

3   alternative, not 'We're going to win the lottery, therefore I'd

4   like to file a plan,' I tend to break exclusivity.  The scouting

5   book on me I think says that, okay?  So.

6           MS. MCDOW:  Understood, Your Honor.

7           THE COURT:  All right.

8           MS. MCDOW:  Okay.  Thank you, Your Honor.

9           THE COURT:  Okay.  Does anyone else want to be heard?

10      (No audible response.)

11          THE COURT:  Okay.  Well, thank you all for your time.

12  Appreciate it.

13          MS. MCDOW:  Thank you, Your Honor.

14          THE COURT:  Glad I saved some of you the trip to San

15  Francisco, even though it's nice here again.

16          THE CLERK:  All rise.

17          [COUNSEL]:  Thank you, Your Honor.

18          THE COURT:  Bye.

19      (The hearing was adjourned at 2:44 o'clock p.m.)

20                          —o0o—

21

22

23

24

25

Case: 14-30725   Doc# 212   Filed: 10/11/14   Entered: 10/11/14 22:15:11   Page 35 of 36

State of California )
) SS.
County of San Joaquin )


       I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

       I further certify that I am not a party to nor in any way interested in the outcome of this matter.

       I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                  Susan Palmer
                  Palmer Reporting Services

                  Dated October 8, 2014