KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor-In-Possession | Case No. 14-30866 |
| | Chapter 11 |
| ☒ Affects HASHFAST LLC, a Delaware limited liability company, | **DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FED. R. BANKR. P. 2002, 6004, 6006, 9014 AND 9019 FOR ENTRY OF ORDER (I) AUTHORIZING THE JOINTLY CONDUCTED AUCTION OF ESTATE PROPERTY BY THE DEBTORS AND THE COMMITTEE, AND (II) AUTHORIZING THE SALE OF ESTATE PROPERTY FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS, WITH ANY DISPUTED LIENS, ENCUMBRANCES, AND INTERESTS TO ATTACH TO SALE PROCEEDS PENDING FURTHER ORDER OF THE COURT** |
| Debtor and Debtor-In-Possession | |

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

| | |
|---|---|
| | ) [Proposed] Hearing |
| | ) Date: October 31, 2014 |
| | ) Time: 9:30 a.m. |
| | ) Place: 235 Pine St., 19th Floor |
| | )           San Francisco, CA 94104 |
| | ) Judge: Honorable Dennis Montali. |

TO: The Court, and Uniquify, Inc., Signetics Korea Co., Ltd. (d/b/a Signetics High Technology, Inc.) Hypertechnologie Ciara Inc., Sonic Manufacturing Technologies, as parties potentially claiming an interest in the assets to be sold, and all other parties entitled to notice, including the Committee (as hereinafter defined) and the United States Trustee.

The above-captioned debtors and debtors-in-possession (the "Debtors") submit this motion (the "Motion") for entry of orders (i) authorizing and approving a jointly conducted auction of the Debtors' assets by the Debtor and the Committee (the "Auction"), and (ii) authorizing the sale (the "Sale") of certain of the Debtors' assets (the "Assets") free and clear of liens, encumbrances, and interests, with any disputed liens, encumbrances, and interests to attach to sale proceeds pending further order of the Court. In support of this Motion, the Debtors submit within Memorandum of Points and Authorities, the Declaration of Peter Kravitz, attached hereto as **Exhibit 1** (the "Declaration"), and any exhibits appended thereto, and respectfully represent as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

1. On May 9, 2014 (the "Petition Date"), certain petitioning creditors filed a chapter 7 Involuntary Petition against HashFast Technologies LLC under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") [Doc. No. 1]. On June 3, 2014, HashFast Technologies LLC filed its Conditional Consent to an Order for Relief [Doc. No. 36] and its Motion to Convert to Chapter 11 [Doc. No. 35]. This Court entered its order converting HashFast Technologies LLC's case to one under chapter 11 on June 5, 2014 [Doc. No. 40].

2. On June 6, 2014, HashFast LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2

3. On July 9, 2014, this Court granted the Debtors motion to jointly administer the case of HashFast LLC with the case of its wholly-owned subsidiary HashFast Technologies LLC [Doc. No. 12]. The Debtors continue to operate their business and manage the consolidated bankruptcy estate properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. On June 23, 2014, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5. On September 28, 2014, this Court entered an order substantively consolidating the Debtors' cases.

6. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 363, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, and 9014 and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of California (the "Local Rules") 2002-1, 6004-1 and 6006-1.

## II. BACKGROUND

**A.    Background and Current Business Operations.**

8. The Debtors design, develop, manufacture and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

9. The Debtors' current inventory consists mainly of ASIC chips (in wafer form or in various stages of completion), mining boards as well as various other system components used in the Bitcoin mining business. They also own certain intellectual property that includes, without limitation, trade secrets, mask works related chip design and patents.

10. In the ordinary course of their business, the Debtors rely on Uniquify, Inc. ("Uniquify"), Hypertechnologie Ciara Inc. ("Ciara") and Sonic Manufacturing Technologies

("Sonic") (collectively, the "Supply Chain Service Providers") to assemble the Debtors' inventory of technology hardware and transport the finalized product to shippers to complete the Debtors' sales. In addition, Uniquify has subcontracted with Signetics Korea Co., Ltd. (d/b/a Signetics High Technology, Inc.) ("Signetics") to perform certain of the services for which Uniquify has contract with the Debtors. The Debtors do not have any contractual privity with Signetics, and Signetics is not a debtor to or a creditor of the Debtors. Instead, Uniquify, as the Debtors' contracting party, is obligated to remit to the Debtors all of the Debtors' property Uniquify has entrusted to Signetics. The Supply Chain Service Providers are also presently in custody of a substantial amount of the Debtors' product and component inventory, which is central to the Debtors' business.

11. Insofar as any of the Supply Chain Service Providers assert a lien on any of the Assets, the Debtors and the Committee will dispute the appropriateness of any asserted lien. However, the Debtors assert that the Auction and Sale should proceed, with any resolution as to the validity and/or distribution of sale proceeds on account of any asserted lien to be reserved for later. Any disputed lien shall attach to any proceed of any sale, pending resolution of the disputed lien by the Court.

**B.     The Debtors' Marketing and Sales Efforts.**

12. The Debtors have marketed their Assets for sale since April 2014, focusing on a sale of their Assets, obtaining financing from banks or other lending sources, and/or obtaining equity infusions from capital sources.

13. As discussed above, the bulk of the Debtors' inventory consists of incomplete chips and boards now in the possession of one or more the Supply Chain Service Providers. Every chip requires a significant financial investment to build out into a usable bitcoin mining system. Unfortunately, the Debtors do not have the funds to complete their inventory in order to maximize the value of their assets, particularly given the issues between the Debtors and certain of the Supply Chain Service Providers.

14. The Debtors had previously attempted to sell their Assets for a bulk, going-concern sale. *See* Docket No. 134. However, despite that attempt and continued efforts by the Debtors'

4

management, with cooperation and collaboration with the Committee, the Debtors have concluded that they are not likely to obtain a going-concern offer from any prospective purchaser.

15. Accordingly, the Debtors have determined in their business judgment that the highest and best value for the Assets can be achieved through an Auction, at which any and all parties that have previously been contacted by the Debtors' marketing efforts, as well as another prospective bidder will be invited to submit bids.

16. The Debtors do not believe that there is sufficient interest in the Assets to delay the Auction or the sale of the Assets. The sale of the Assets at Auction at this time will maximize the value of the Assets while minimize the costs of keeping and maintaining the Assets.

17. Bitcoins are a form of cryptographic currency that are widely traded in real time at exchanges all over the world. Bitcoins are created in accordance with a data protocol which is decentralized, that is, under no central control or authority. Thus, they are virtually impossible for any party to change. This protocol establishes the process, known as "mining," by which new Bitcoins are created through a competitive "winner takes all" race to calculate or decode "blocks." The protocol by design increases the amount of work required to discover a new Bitcoin so that the average discovery rate is kept somewhat constant at ~1 block every 10 minutes; this has resulted in an increase in difficulty ("Difficulty") every ten to fourteen (10 to 14) days, which, in turn, reduces the Bitcoin return.

18. Bitcoin mining requires powerful and high-functioning equipment capable of quickly running complex calculations.

19. The value of processing capabilities is subject to rapid depreciation in two primary ways. First is the market price of Bitcoins (i.e., the exchange rate of Bitcoin/USD). Second, as the Difficulty in calculating or decoding a block ("mining") can increase each ten to fourteen (10 to 14) days, a corresponding reduction occurs in productive output of the same processing equipment (measured in hashes, gigahashes, terra hashes, or petahashes) with each increase. Also, a block once "mined" becomes permanently unavailable to any other party to "mine" and there exist no means to prevent duplication of effort among different parties (i.e., the first party to complete the process accrues 100% of the value). The economic value of processing power is a

5

US\_104917245v4\_385402-00003 10/23/2014 5:12 PM
Case: 14-30725    Doc# 210    Filed: 10/23/14    Entered: 10/23/14 16:08:22    Page 5 of 13

function of the overall global processing power employed in the "mining" process. As the total processing power employed on a worldwide basis increases, a fixed data processing output becomes a smaller percentage and thus loses value. The marketable value of the equipment used in Bitcoin mining (including Sierra units, Golden Nonce Chips and wafers) has declined over 80% in the last two months. The devaluation is publicized and fixed by the protocol.

20. This rapid dissipation is made even more troubling for the Debtors given the fact that the bulk of its inventory remains incomplete and will require both time and money to complete so as to fully maximize their value.

21. Finally, the decline in value is further amplified by the decline in Bitcoin market price of nearly 40% in the last two months.

22. Because of the rapid dissipation in the value of the inventory included within the Assets, the Debtors must move forward with the Auction on an expedited basis and within a quick time frame. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors, and other parties in interest to complete the Sale as soon as possible and, in any event, by November 21, 2014.

**C. The Assets**

23. A summary of the Debtors' Assets is as follows: (a) all of the assets previously or currently used in or useful to, necessary to, or related to the conduct of all of the business of the Debtors, including but not limited to all chips, wafers, system components, board components, hashing boards, other inventory and equipment, and (b) the Debtors' intellectual property.

24. An inventory of all Assets to be sold at Auction will be filed with the Court prior to the hearing to approve the Auction and Bid Procedures and made available to prospective bidders.

**D. The Marketing Process and Auction Procedures**

25. The Debtors and the Committee propose to work together to effect a targeted and comprehensive marketing strategy designed, in the Debtors' and Committee's collective judgment, to generate the largest amount of bidders for the Assets. Specifically, the Debtors and the Committee will advertise the Auction by directly contacting all parties that have expressed interest in the Assets in the past, sending notices to all creditors, and publishing notices in certain

on-line bitcoin forums. The Debtors and the Committee will solicit bids for any and all of the Assets. The Assets will also be directly marketed to HashFast's existing customer list, including all the parties that have made post-petition sales inquiries. Public announcement of the sale will also be made on the bitcoin forums of reddit.com and bitcointalk.org. A press release will be distributed to financial sites with an interest in Bitcoin news such as businessinsider.com, coindesk.com, bitcoinmagazine.com, and cryptocoinnews.com.

26. If in the best interest of the estates, the Assets will be sold at Auction in the following lots (each a "Lot" and, collectively, the "Lots"):

(a) Intellectual Property;

(b) Chips;

(c) Wafers;

(d) Non-chip inventory (including power supplies, fans, chassis, boards, and long lead parts);

(e) Any other Asset, including contract rights, claims, and causes of action.

27. In addition, the Debtors and the Committee propose to conduct the Auction pursuant to the following bidding procedures (the "Bid Procedures"):

(a) Participation Requirements. Any person or entity that wishes to participate in the bidding process must become a "Qualifying Bidder". A Qualifying Bidder must (i) submit a bid identifying the specific Assets for which such bid is made and the price offered for such Assets; (ii) demonstrate to the satisfaction of the Debtors and the Committee, the ability to consummate a transaction involving some or all of the Assets; (iii) not include any request for bid protection or a break-up fee; (iv) certify that such bidder has not engaged in any form of bid collusion with any other person or entity; (v) certify that such bidder will close on any bid deemed by the Debtors and the Committee to a winning bid within five days of the Sale Hearing; (vi) certify that such bidder is willing to serve as back-up bidder (a "Back-up Bidder") in the event a Prevailing Bid (as hereinafter defined) fails to close within five days of the Sale Hearing. A bid complying with the foregoing shall be "Qualified Bid".

7

(b) <u>Bid Deposit</u>.  No later than 3 business days before the Auction, a Qualifying Bidder must deliver a deposit equal to 10% of the Qualified Bid.

(c) <u>Bid Deadline</u>.  Qualified Bids must be received no later than 3 business days before the Auction.

(d) <u>Bid Delivery</u>.  Qualified Bid shall be made in writing and delivered by email to (i) the Debtors (attention:  Victor Delalgio, victor@hashfast.com); (ii) counsel to the Debtors (attention: Peter Siddiqui, Katten Muchin Rosenman LLP, peter.siddiqui@kattenlaw.com); and (iii) counsel to the Committee (attention:  Ashley McDow, Baker Hostetler LLP, amcdow@bakerlaw.com).

(e) <u>Auction</u>.  In the event the Debtors and Committee timely receive one or more Qualifying Bids, the Debtors and the Committee will conduct the Auction at the 235 Pine Street, 8th Floor, San Francisco, CA 94104, commencing at [10:00 am (Pacific time)] on a date that is 14 days after the Court approves the bidding procedures.  The Debtors and the Committee may, in their joint discretion, adjourn the date, time, and place of the Auction.

(f) <u>Auction Procedures</u>.  The Auction shall be governed by the following procedures:  (i) Representatives from the Debtors, the Committee, Qualifying Bidders, and any party the Debtor and the Committee believe in their joint discretion likely will submit a Qualifying Bid shall be entitled to attend the Auction; (ii) Qualifying Bidders must appear in person at the Auction or through a duly authorized representative; (iii) bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction; (iv) bidding increments shall be determined by the Debtors and the Committee and shall be announced during the Auction; (v) all Qualifying Bidders shall have the right to submit additional bids at the Auction; (vi) the Debtors and the Committee will commence the Auction with any Qualifying Bids for all of the Assets and then proceed to Qualifying Bids by Lot; and (vii) the Auction shall continue until there are one or more Qualifying Bids that are deemed by the Debtors and the Committee as the highest and best bids for the Assets covered by such Qualifying Bid (each, a "<u>Prevailing Bid</u>").

(g) <u>Qualifying Bids Irrevocable</u>. Each Qualifying Bid, including any bid submitted at the Auction and any Prevailing Bid, shall be an irrevocable offer and shall be binding on the Qualifying Bidder from the time it is submitted until the earlier of 48 hours after the Auction concludes.

(h) <u>Sale Hearing</u>. The Prevailing Bids will be subject to approval by this Court. The hearing to approve the Prevailing Bids shall take place on the same day as the Auction, assuming the Court is available, or, if not, the next business day.

(i) <u>Return of Deposits</u>. All deposits shall be returned to each bidder not selected by the Debtors and the Committee as the Prevailing Bid no later than 5 business days following the sale hearing.

### III. RELIEF REQUESTED

28. The Debtors have determined that a prompt sale of the Assets is the best way to maximize the value of the Assets for their respective estates and creditors given the rapidly depreciating value of the inventory and the Debtor's lack of liquidity necessary to release and complete its inventory.

29. By this Motion, the Debtors respectfully request, pursuant to sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and Local Rule 6004-1, this Court enter an order (i) authorizing and approving the conducting of the Auction pursuant to the Bidding Procedures, (ii) authorizing the sale of Assets at Auction free and clear of all liens, claims, interests and encumbrances, and (iii) authorizing the Sale free and clear of the liens, encumbrances, and interests of the Supply Chain Service Providers, with any liens of the Supply Chain Service Providers to attach to sale proceeds pending further order of the Court.

### IV. BASIS FOR RELIEF REQUESTED

**A. The Debtors' Decision to Conduct the Auction is Supported by a Sound Exercise of the Debtor's Business Judgment.**

30. A debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's sale or use of assets outside the ordinary course of business should be approved by the Bankruptcy Court if

9

the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

31. The Debtors have a sound business justification for the Auction and the Sale. The Debtors have determined that it is in the best interests of their creditors and estates to conduct the Auction and sell the Assets to maximize value for the benefit of the estates and creditors. The Auction and the Sale will also maximize the likelihood of the Debtors' ability to confirm a chapter 11 plan.

32. The Auction will be advertised, promoted, and open to the public. In most instances, the Debtors are hopeful that there will be one or more buyers at the Auction, and each Asset will be sold to the party submitting the highest and best offer. The Debtors and the Committee will provide marketing for the Auction prior to the Auction in a manner consistent with their collective experience and practice, which may include advertisements in local, state, and/or trade journals, mailings to potential buyers, and/or other advertisements to promote the Auction in a commercially reasonable manner. In connection with that marketing, the Debtors and the Committee will solicit both attendance at the Auction, as well as potential opening bids with which to start the bidding at the Auction.

33. The Debtors propose that a closing for the Sale of the Assets take place promptly after completion of the Auction. After the completion of the Auction, the Debtors propose to enter into a form bill of sale with each purchaser. A copy of the bill of sale will be filed with the Court prior to the hearing to approve the Auction and Bid Procedures and made available to prospective bidders.

10

**B. The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Interests.**

34. The Debtors submit that it is appropriate to sell and transfer the Assets free and clear of liens, claims, interests and encumbrances of the Supply Chain Service Providers (collectively, "Liens and Interests"). There are no liens on the Assets of which the Debtors are aware other than any possessory liens that one or more of the Supply Chain Service Providers claim. For the purposes of clarity, the Debtors are only seeking that the Assets be sold at the Sale free and clear of any Liens and Interest of the Supply Chain Service Providers.

35. Bankruptcy Code Section 363(f) permits the Debtors to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). As Bankruptcy Code section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). Pursuant to Local Rule 6004-1(b), the Debtors submit the Declaration of Peter Kravitz, which sets forth the factual basis demonstrating that the Motion comes within section 363(f) as follows:

    (a) First, it is recognized that the Supply Chain Service Providers that may hold Liens and Interests regarding the Acquired Assets may not consent to the Sale free and clear under Bankruptcy Code section 363(f)(2) if a compromise is not reached with them.

    (b) Second, even so, any Liens and Interests of the Supply Chain Service Provides regarding the Acquired Assets are subject to "bona fide dispute" as the term is used in Bankruptcy Code section 363(f)(4).

    (c) Third, even if neither Section 363(f)(2) nor 363(f)(4) apply, a sale free and clear can proceed pursuant to Bankruptcy Code section 363(f)(5) because any Liens and Interests of the Supply Chain Service Providers will attach to the proceeds of the Sale such that these parties can be compelled to accept a monetary satisfaction of their claims.

36. The purpose of an order purporting to authorize the transfer of assets free and clear of "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against any purchaser arising from the Debtors' pre-sale conduct. Under Bankruptcy Code section 363(f), Purchaser is entitled to know that the Assets are not affected by any Liens and Interests that will be asserted after the proposed transaction is consummated.

**C. Relief Under Bankruptcy Rules 6004(h) is Appropriate.**

37. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property…is stayed until the expiration of ten days after entry of the order, unless the court orders otherwise." The Debtors believe that Purchaser will have an interest in closing the sale of the Assets as quickly as possible after entry of an order approving the Sale and that such timing will positively affect the ultimate value offered for the Assets. Accordingly, the Debtors request that any order approving the Sale be effective immediately by providing that the stays under Bankruptcy Rules 6004(h) is waived.

## V. NOTICE

38. Under Bankruptcy Rules 2002(a) and (c)(1), the Debtors are required to notify their creditors of any proposed sale of their assets, including a disclosure of the terms and conditions of any private sale, and the deadline for filing any objections to such sale. Under Bankruptcy Rule 6004, a motion for authority to sell property free and clear of liens or other interests shall be served on the parties who have liens or other interests in the property to be sold and shall include the date of the hearing on the motion and the time within which objections may be filed. Under Bankruptcy Rule 6006(c), a motion to assume, reject or assign an executory contract or unexpired lease shall be given to the other party to the contract or lease. Pursuant to Local Rule 6006-1, notice of a motion to assume, reject or assign an executory contract or unexpired lease must also be given to the non-insider creditors that hold the 20 largest unsecured claims or to the creditors committee, and any party who has requested notice pursuant to Bankruptcy Rule 2002.

39. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Northern District of California; (b) counsel for the Official Committee of Unsecured Creditors; (c) creditors that hold the 20 largest unsecured claims; (d) the Supply Chain Service

12

Providers; (e) all known taxing authorities of the Debtors; (f) the petitioning creditors, (g) the California Franchise Tax Board, (h) the Chief Tax Collection Section, (i) the California Employment Development Department, and (j) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in the Case. The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter orders (i) authorizing and approving the Auction, (ii) authorizing and approving the Sale of the Assets free and clear of liens, claims, encumbrances and interests and (iii) granting such other and further relief as may be just and proper.

Dated: October __, 2014

KATTEN MUCHIN ROSENMAN LLP
Peter A. Siddiqui
Jessica M. Mickelsen

By: /s/ Jessica M. Mickelsen
Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

13