1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SAN FRANCISCO DIVISION)

4

5    In re:

6    HASHFAST TECHNOLOGIES LLC, a          Case No. 14-30725
     California limited liability
7    company,                             Chapter 11

8                                         San Francisco,California
                                          October 24, 2014
9                                         11:01 a.m.

          Debtor.
10   _____/

11
                    TRANSCRIPT OF PROCEEDINGS
12                     STATUS CONFERENCE

13        BEFORE THE HONORABLE DENNIS MONTALI
               UNITED STATES BANKRUPTCY JUDGE
14

15   APPEARANCES:

16
     Counsel for Official      BAKER & HOSTETLER LLP
17   Committee of Unsecured    ASHLEY McDOW, ESQ.
     Creditors:                11601 Wilshire Boulevard #1400
18                             Los Angeles, California 90025

19                                  (Appearing Telephonically)

20
     For the Debtor:           KATTEN, MUCHIN, ROSENMAN LLP
21                             BY: PETER A. SIDDIQUI, ESQ.
                               525 West Monroe Street
22                             Chicago, Illinois 60661

23                                  (Appearing Telephonically)

24

25

```
 1   APPEARANCES (CONTINUED):

 2   For Digimex Ltd.:        RUTAN & TUCKER, LLP
                              BY: CAROLINE R. DJANG, ESQ.
 3                            611 Anton Boulevard, Suite 1400
                              Costa Mesa, California 92626
 4
                              (Appearing Telephonically)
 5

 6
     For Uniquify, Inc.:      LAW OFFICES OF BINDER AND MALTER
 7                            BY: ROBERT G. HARRIS, ESQ.
                              2775 Park Avenue
 8                            Santa Clara, California 95050

 9                            (Appearing Telephonically)

10

11   For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                              BY: JULIE GLOSSON, ESQ.
12                            235 Pine Street #700
                              San Francisco, California 94104
13

14
     For creditors:           GALLO LLP
15                            BY: RAY E. GALLO, ESQ.
                              1299 Fourth Street, Suite 505
16                            San Rafael, California 94901

17

18   For Simon Barber:        SHEPPARD MULLIN RICHTER & HAMPTON
                              BY: ORI KATZ, ESQ.
19                            4 Embarcadero Center, 17TH Floor
                              San Francisco, California 94111
20

21
     For Liquidbits Corp.:    BINGHAM McCUTCHEN LLP
22                            BY: EDWIN F. SMITH, ESQ.
                              399 Park Avenue
23                            New York, New York 10022

24                            (Appearing Telephonically)

25
```

1    APPEARANCES (CONTINUED):

2
     Court Recorder:            JANE GALVANI
3                               UNITED STATES BANKRUPTCY COURT
                                235 Pine Street
4                               San Francisco, California 94104

5

6    Transcription Service:     Jo McCall
                                Electronic Court
7                               Recording/Transcribing
                                2868 E. Clifton Court
8                               Gilbert, Arizona 85295
                                Telephone: (480)361-3790
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

October 24, 2014                    11:01 a.m.

-–—oOo—-–

THE CLERK: All rise.  The court is now in session, The Honorable Dennis Montali presiding.

THE COURT: Please be seated.  Call the case and we'll start with the courtroom appearances, and then we'll go down the phone.

THE CLERK:  Matter of <u>Hashfast Technologies LLC.</u>

THE COURT: Ms. Glosson, good morning.

MS. GLOSSON: Good morning, Your Honor, Julie Glosson for the United States Trustee.

THE COURT: Mr. Katz.

MR. KATZ: Good morning, Your Honor, Ori Katz, Sheppard, Mullin, Richter & Hampton appearing on behalf of Simon Barber, an individual.

MR. GALLO: Good morning, Your Honor, Ray Gallo on behalf of approximately 80 creditors.  Our statement is on record.

THE COURT: Okay, let me -- just because we have a number of people on the phone, let me just ask if you're on the board.  I'll see if I can call up the parties.  Let's start with Ms. Djang from Digimex.  Are you there?

MS. DJANG: Good morning, Your Honor, Caroline Djang of Rutan & Tucker appearing for Digimex Limited.

1        THE COURT: And Ms. Green for the Committee?  Are

2  you there, Ms. Green?

3        MS. McDOW: Your Honor, this is Ashley McDow on

4  behalf of Baker & Hostetler on behalf of the Committee.

5  Ms. Green is not joining the call this morning.  It will

6  just be me on behalf of the Committee, Your Honor.

7        THE COURT: Okay.  I had both of you on the call.

8  Is Mr. Harris for Uniquify, are you there?

9        MR. HARRIS: Yes.  Good morning, Your Honor,

10  Robert Harris for Uniquify.

11        THE COURT: Mr. Moloney for Liquidbits –– well,

12  Mr. Smith, are you there for Liquidbits?

13        MR. SMITH: Yes, Your Honor, Edwin Smith, Bingham

14  McCutchen for Liquidbits.

15        THE COURT: And is there another Bingham McCutchen

16  counsel on the phone for Liquidbits?

17        MR. SMITH: No, Your Honor.  I'm doing this by

18  myself.

19        THE COURT: Okay.  Well again, the call list has

20  more names than –– and how about Mr. Siddiqui; are you

21  there?

22        MR. SIDDIQUI: Yes, Your Honor, good morning.

23  Peter Siddiqui, Katten Muchin Rosenman on behalf of the

24  Debtor.

25        THE COURT: All right.  Good morning.  Well, I

1  received the status conference statement, and I have no

2  problem with that, and then today I see the motion that was

3  just filed regarding the sale.  I'm not really thrilled

4  about having something as comprehensive as that heard on

5  one week's notice.  Did you intend to ask for shortened

6  time for that, Mr. Siddiqui?

7          MR. SIDDIQUI: Your Honor, perhaps.  That was

8  something I wanted to discuss on our status conference

9  today, with your permission.

10          THE COURT: Okay.

11          MR. SIDDIQUI: As you thought, the Debtor and the

12  Committee have, after considerable and open discussions,

13  have concluded that the best way to maximize value is to

14  sell the assets in an orderly auction and sale process, and

15  we did file that motion, and we anticipate asking to have

16  it heard next week if Your Honor is amenable to it.  The

17  reasoning would be that because of the fall of the bitcoin

18  price which we set out in our declaration supporting the

19  motion, that time is now to sell these assets, and we

20  think –- the Debtor and the Committee think that the

21  marketing process will take a couple of weeks, and if we

22  were to close these sales before Thanksgiving, we would

23  generate the best return for our creditors.

24          THE COURT: Okay, but I –- that's fine.  I don't

25  have a problem with that, but what would I be doing one

1  week from today?  The motion makes --

2          MR. SIDDIQUI: Your Honor, one week from today, we

3  would ask for you to approve the auction and bidding

4  procedures that we sought in the motion and enter an order

5  saying that the Debtor and the Committee are authorized to

6  conduct an auction using these procedures, an then we would

7  do -- engage in the marketing as described, and then we

8  would go and do that and then we would conduct an auction,

9  we're thinking some time during the week of November 17th

10  and at that auction generate sales of assets and then come

11  back to Your Honor and ask you to approve the sale of those

12  assets to those buyers.

13          THE COURT: Well, you anticipate an auction in the

14  court rather than in somebody's law firm.

15          MS. GLOSSON: Actually, Your Honor, that's the

16  U.S. Trustee's Office.

17          THE COURT: Oh, so it is.  Look at that.

18          MR. SIDDIQUI: Yeah, we were quite presumptuous

19  with apologies to Ms. Glosson and the Court, that Ms.

20  Glosson has the biggest space that we knew about in the

21  building there and thought that we might have sufficient

22  interest to use the meeting room if it were made available

23  to us.

24          THE COURT: Well, okay, let's -- we'll come back

25  to that in a minute.

1          MR. SIDDIQUI: But then if possible when the

2     auction concluded --

3          THE COURT: But the point is, for the moment,

4     we'll see if that's possible from the U.S. Trustee's point

5     of view, but you did not contemplate an auction in open

6     court; that's all.  And I don't care.

7          MR. SIDDIQUI: Yes, your Honor, although that is

8     not -- I think that it might be a little cumbersome given

9     the number of assets and parties, but that's correct, Your

10    Honor, not in open court.

11         THE COURT: Mr. Siddiqui, I'm not lobbying one way

12    or the other.  I just wanted to make sure you saw it, and

13    look, you filed this thing at 4:00 o'clock yesterday, and I

14    didn't even have a chance to review it in its entirety, so

15    essentially what you're wanting me to do a week from today

16    is approve the procedures that gets us to the auction.  But

17    one of the things that's also unclear is, you know, we have

18    some pretty strict rules on the free and clear procedures,

19    and unless the respondents on the motion agree to have that

20    heard on such an expedited basis -- that would be Signetics

21    Korea, Hypertechnologie, Sonic Manufacturing -- those are

22    three main respondents, and unless they've agreed to have

23    me -- or even been consulted about shortening time, it's a

24    little bit tight to do that.  By itself, the procedures I

25    don't think I would be bothered to have to approve them on

1  short notice, unless somebody really thinks that's

2  inappropriate.

3          MR. SIDDIQUI: Well, I agree with you, Your Honor,

4  and we would not be seeking consideration or a ruling on

5  that aspect, the free and clear aspect, next week.  It

6  would be in connection with the sale hearing.

7          THE COURT: Okay.  Well, I think, Mr. Siddiqui,

8  this is, you know, the old notion about local practice and

9  getting to know the judge and know the counsel, I mean if

10  you had filed a motion to approve the sale and bidding

11  procedures only, then that would come across as a -- I mean

12  you've made your case about the Debtor and the Committee's

13  view that things ought to get moving, and I'm -- again,

14  unless Mr. Gallo or any of the other counsel on the phone

15  here think that even that's the wrong thing to do, I'm on

16  board with it, and if -- I want to make sure you're not

17  fooled though about the free and clear.  Our District takes

18  very seriously what we can sell free and clear of, and

19  named respondents, not one of these blanket, you know,

20  successor liability, future claims, asbestos poisoning, and

21  all the other things that, you know, chain saw

22  malfunctions, et cetera, we simply aren't into that.  It's

23  got to be clear.  But I -- anyway, I'm doing too much

24  talking.  What else --

25          MR. SIDDIQUI: I hear you loud and clear, Your

1  Honor, and –- understood.  We are not fooled.

2       THE COURT: What else do you want to raise about

3  procedure, and then I'll see if anybody else wants to be

4  heard on this.  Anything else, Mr. Siddiqui?

5       MR. SIDDIQUI: I believe that is all I'd like to

6  raise about procedures, Your Honor.

7       THE COURT: Okay.  Well, about anything.

8       MR. SIDDIQUI: Well, actually, one other thing

9  that I want to point out, Your Honor, not so much about

10 procedures, but it is about the sale hearing, if we get to

11 it, which is, one of the assets we would like –- or bundle

12 of assets we would like to put up for sale are claims and

13 causes of action that the estate has against any entity or

14 person.  Again, these are assets we'd like to turn them

15 into money without necessarily expending resources.  So –-

16 but I want to make plain for Your Honor now –- and again,

17 I'm not advocating for anything or asking for relief, but

18 if it's the case that we sell to a party a cause of action

19 against that party, whether that party is a third party or

20 an insider, we anticipate demonstrating to Your Honor

21 evidence sufficient to meet the 9019 standard of compromise

22 at the sale hearing.

23      THE COURT: Well, are you –-

24      MR. SIDDIQUI: Again, I'm not asking for any

25 relief; I just want to give Your Honor that heads up.

1      THE COURT: Are you talking about selling avoiding

2  power actions too?

3      MR. SIDDIQUI: Whatever we've got.  But yes, Your

4  Honor.

5      THE COURT: Okay.  Well --

6      MR. SIDDIQUI: And it would be tantamount to

7  buying relief, Your Honor, it would be --

8      THE COURT: No, I know.  I know.  I know.  I mean

9  again, you're talking to an individual who has participated

10 in several of the BAP reported decisions on the sale of

11 assets to the defendant, and if you're not familiar with

12 the Lahajani case and Mickey Thompson case, you need to

13 make sure you know what those cases are, and I'm certainly

14 not opposed to the process.  Lahajani probably is the most

15 on point case.  I am not the author, but I was on the panel

16 and contributed to the finished product, and we're not

17 going to tell you in a reported case you can do something

18 and then tell you at trial court you can't.  So just be

19 guided by the ground rules there.  Those two cases together

20 are two of my favorites.

21     MR. SIDDIQUI: Very good.  Thank you, Your Honor.

22     THE COURT: Ms. Glosson, can they have an auction

23 down at your house on the eighth floor?

24     MS. GLOSSON: Your Honor, it was a surprise to me

25 when I read that.  I was not consulted in advance, and so

1  I've been –- I have nothing to say except that I would need
2  to confer with my client.
3          THE COURT: Okay.  I mean I've never in my
4  experience seen the U.S. Trustee's Offices be used for
5  that, but if that doesn't work, I can't believe we don't
6  have a participating law firm that doesn't have a San
7  Francisco office, or it could be done in court, but I
8  agree, Mr. Siddiqui, it might be a little bit cumbersome.
9  Well, why don't we –- I mean what's your current situation
10 with security?  Do you have security down on the eighth
11 floor or not?
12          MS. GLOSSON: We don't have court-like security.
13          THE COURT: Right.  Right.
14          MS. GLOSSON: We just have Federal Protective
15 Service.
16          THE COURT: Right.  Okay.  I mean obviously if
17 they had it at a law firm in town or a hotel or somewhere
18 else, there's not going to be a security issue.  I mean
19 hopefully there are no security issues involved here.  Do
20 you have a position on the request to proceed the way Mr.
21 Siddiqui described, Ms. Glosson?
22          MS. GLOSSON: Well, at first I was concerned that
23 they were seeking to sell on such shortened time because
24 that's what the prayer says.
25          THE COURT: Right.

1        MS. GLOSSON: But I think that -- although I would

2   have to say, with a caveat, I have not had an opportunity

3   to fully digest this motion that was filed late yesterday,

4   but I think that bifurcating the process to have a bid

5   procedures hearing and then a sale hearing thereafter would

6   be appropriate.  I think that perhaps six days or seven

7   days notice really isn't adequate for setting up bid

8   procedures.

9        THE COURT: Yeah, I mean I guess the question that

10  I am worried about is, is that giving the bidders adequate

11  time.

12       MS. GLOSSON: Correct.

13       THE COURT: The Committee and the Debtor can

14  establish procedures -- and maybe bidders shouldn't be

15  heard on that; maybe the selling entity has to say, if you

16  want to bid, you play by our rules.  These are our rules.

17  And I'm not convinced that -- having said that, maybe the

18  bidders have a right to be heard and maybe they don't have

19  a right to be heard.  But --

20       MS. GLOSSON: Well, it's more about -- I'm sorry.

21  I interrupted you.

22       THE COURT: No, I was thinking, we've had, not in

23  the recent past, but a few year ago when we had more quick

24  sales, it was not unusual to have an expedited hearing to

25  establish the procedures, if that's what the moving party

1  wants, and as you know, Ms. Glosson, in lots of our cases,
2  the trustee in the 7's or the debtors in possession just
3  establish their own bidding procedures and announce them.
4  And, you know, if there's some zingers in there like break-
5  up fees and stalking horses, then people like to get a
6  little bit of comfort from the Court.  But if it's just,
7  you know, the timing and when the bid has to be submitted
8  and how much good faith money has to be up front, those
9  don't even have to have preapproval.  So -- well, let's be
10  consistent with what I promised.  Does anybody else, any of
11  the other counsel, want to be heard on what Mr. Siddiqui
12  described and what we've been talking about for the last
13  few minutes?  Let's start with you, Mr. Gallo, you're here.
14  You get first priority when you're in court.

15       MR. GALLO: Thank you, Your Honor.  I obviously
16  haven't had time to fully digest what was filed either, but
17  quickly, it looks like a reasonable approach, assuming
18  there's time to get everybody the notice and see if they
19  can get the most competitive bids.

20       I have a deep concern, of course, about the loss
21  of value to the estate that's reflected in what's been
22  filed in the last week or so.

23       THE COURT: Which is what?

24       MR. GALLO: Well, when the Court has a little more
25  notice and time to read, the Court will see that what's

1  being reported, which I was aware of generally, is that
2  there's been a very dramatic loss of the value of the
3  assets, and the Court will remember that back in July, I
4  encouraged the Committee to find a way to quickly do a deal
5  with Liquidbits.  The deal that was on the table then would
6  have guaranteed the estate at least six million bucks, as I
7  recall.  And now it appears to me there's unlikely to be
8  enough –- I'm hoping there may be enough to exceed the
9  administrative expenses of the estate and give something to
10 creditors.  I'm not giving this tirade for any reason
11 except to say that I hope somebody is giving some thought
12 to the benefit of the creditors, and the representation in
13 the CMT statement that the Committee is working hard to
14 work with the creditors is inaccurate, at least as far as I
15 go.  I have never been meaningfully consulted, at least not
16 since back in June and July when I clashed with the
17 Committee on a couple of issues, and since I represent 80
18 creditors, it would have made some sense to be in touch
19 with me.  And so I just needed to get that on the record,
20 Your Honor.

21           THE COURT: Okay.  Well, if what you're also
22 saying on the record is, I should have approved that thing
23 back last summer, I mean, you know –-

24           MR. GALLO: No.  I know you had your –-

25           THE COURT:  –- there were all those other

1  problems.

2       MR. GALLO: There were, Your Honor.  The issue is

3  simply, you know, with respect to the Committee, that at

4  that time, Liquidbits was prepared to negotiate, change the

5  form of the deal, and make a deal that would have put very

6  substantial value in the estate.  I know that because I

7  personally negotiated points in that deal, and everybody

8  refused to do that, and if what we're looking at now in the

9  papers is accurate and that much value has been lost, it's

10 particularly unfortunate.  We'll see where it goes from

11 here, but -- with respect to what's before the Court, at a

12 glance, the procedure for the sale looks fine, with notice,

13 so that people can get --

14       THE COURT: So you understand -- you said before

15 you're not involved in too many bankruptcy procedures --

16 step one, I simply approve the procedures.  Then step two

17 is the dissemination, marketing, invitation to bid, and all

18 that other stuff.

19       MR. GALLO: Yes, sir.  I understand.

20       THE COURT: Mr. Siddiqui, one question before I go

21 down the list here.  How are you going to articulate the

22 causes of action, other than where you've got a known

23 prospective defendant and you want a release?  I mean are

24 you going to have a laundry list of all the preference

25 actions and all the fraudulent transfer actions and all

1  the, you know, copyright infringement actions?  How do we

2  get to that list of assets for sale?

3         MR. SIDDIQUI: Good question, Your Honor.  My

4  expectation was to list them generally.  We do have a

5  preference target list from the SOFA and other labor done

6  by the Committee and the Debtor since the filing.  As for

7  specifically identifiable causes of action that are known

8  to the Debtor, we would include that, but if, for example,

9  a party -- I'm making this up, Your Honor because I'm not

10 sure this is going to happen -- but let's say if Party A

11 comes in and says, hey, look, no one said anything about

12 suing me but just in case, I want to buy every claim that

13 the estate has against Party A for $25,000.  We're probably

14 going to sell it to that person and then investigate to

15 make sure that what we're selling, if we think it's

16 anything, meets the 9019 criteria, and then come and ask

17 Your Honor to approve that sale.

18        THE COURT: That's great.

19        MR. SIDDIQUI: So there will be a list --

20        THE COURT:  We can have general release day.

21 Just come in and buy a general release.  Put it on e-bay.

22    (Laughter.)

23        MR. SIDDIQUI: Bring your checkbook.  Right.

24        THE COURT: We can discharge student loans while

25 we're at it if you want.  We can just show the broad power

1  of the Bankruptcy Court here.

2      (Laughter.)

3      Well, that is going to be a little bit awkward,

4  you know.  I won't decide that today.

5      MR. SIDDIQUI: Well, I do want to minimize that

6  awkwardness, Your Honor, and there are –- and again, I

7  don't want to suggest more than I –- but there are

8  anticipated claims that we are selling.  You know, the

9  Committee and the Debtor have done substantial marketing by

10 talking to the people in the industry who might be the best

11 buyers for our assets and have learned that some of those

12 parties and individuals would be curious in buying a

13 release from the estate.  So we don't –- frankly, Your

14 Honor, I don't expect that there will be a lot of causes of

15 action sold on the auction date, but I do hopefully –- I

16 do, with hope, believe there will be one or more –- one or

17 two.  And again, as I noted, we fully expect that the sale

18 price will be satisfactory under the compromise standards.

19     THE COURT: I think what I'm worried about, and

20 you need to anticipate, is, let's say we have Party X and

21 you say we're going to sell some physical assets to Party X

22 and give that party a general release for $25,000, how does

23 Party Y know how to bid?  It's easy to –-

24     MR. SIDDIQUI: Well, Your Honor –-

25     THE COURT:  –- the chips have a certain value,

1  but how do you value an unknown release?

2         MR. SIDDIQUI: It's a good point, Your Honor, and

3  it's something the Committee and I will have to

4  investigate.

5         THE COURT: All right.  Mr. Katz, you're the only

6  other counsel in court who might want to speak, and then

7  we'll go to the phone.  What do you want to help me with?

8         MR. KATZ: Thank you, Your Honor.  Just briefly,

9  I'm counsel for Simon Barber in his capacity individually.

10        THE COURT: Right.

11        MR. KATZ: And this follows on the discussion you

12 just had with Mr. Siddiqui.  Mr. Barber has sat twice for

13 341 meetings.  He's been deposed at a 2004 exam.  He's

14 answered questions.  He's produced documents, and I

15 anticipate that he may be one of the, you know, Party A's,

16 that is someone looking for a release, and someone –– and

17 I'm very familiar with the Lahajani decision by the BAP ––

18 and someone who can satisfy that criteria, and will seek to

19 essentially buy the claims and buy a release.  And so

20 whatever the Committee and the Debtor decide in terms of

21 procedure, I would like to see his name on the list so that

22 people know if they believe that they've got something that

23 they want to pursue or take up.  As far as Mr. Barber goes,

24 they should be prepared to bid because I believe Mr. Barber

25 will be prepared to bid at the auction.

1          THE COURT: Okay.

2          MR. KATZ: That's it, Your Honor.  I don't have

3 any -- Mr. Barber doesn't take issue with the two-step

4 procedure, the bid procedures, the timing or the auction

5 date.

6          THE COURT: Okay.  On the phone, why don't we

7 start with Ms. McDow for the Committee, and then we'll go

8 to the counsel representing individual creditors or parties

9 in interest.  Do you want to add anything, Ms. McDow?

10          MS. McDOW: Yes, Your Honor.  I don't have so much

11 to add to what Mr. Siddiqui has said about the procedures,

12 but I certainly want to set the record straight with

13 respect to what's been before the Court and to make it

14 clear that -- and I know Your Honor knows and everyone else

15 I believe who is present -- that there has never been a

16 deal in court or otherwise that has guaranteed six million

17 dollars to this estate -- ever.  There was a deal that had

18 a promissory note for three million dollars and an equity

19 stake that had a caveat, among other things, to just turn

20 over the property.  So the representations made to the

21 Court by Mr. Gallo are false and truly offensive to the

22 Committee.  The Committee worked hard with Liquidbits to

23 try to come to a deal, both then and in recent history,

24 together with the Debtor, and we weren't able to do it in a

25 way that we thought might maximize value for the estate.

1   So obviously I take real issue with the accusations that

2   were made, because they're nothing less than accusations.

3   And we believe what we're doing now, that the climate has

4   changed as we all knew it could, and both the Debtor and

5   the Committee were trying to react to it and do what we

6   could to preserve what we could.  So we believe what we're

7   doing now accomplishes that.  We all understand the

8   climate; we always have, but it doesn't mean that any of us

9   were prepared to take a deal that we thought was less than

10  what we could get now.

11          So, Your Honor, other than that, obviously we've

12  had input into the sale motions and the concept, and we

13  will continue to work to finalize all the details relating

14  to the next step, and we're involved heavily in the auction

15  process and how it's marketed so that we can make sure it's

16  maximized, and clearly, you know, the Committee members

17  more so –- not more so, but there's a lot more input as far

18  as how we market, who we market it to, and how we do it.

19  So we're going to be working very hard over the next couple

20  of weeks to make sure we do what we can to get the best

21  value.

22          THE COURT: Okay.  Your comments are noted.  Thank

23  you.  Anyone else on the phone want to be heard on all the

24  things we're talking about, or any of the things we're

25  talking about?

1      MR. SMITH: Your Honor, it's Edwin Smith for

2  Liquidbits.

3      THE COURT: Yes, sir.

4      MR. SMITH: We feel Mr. Gallo's pain.  We don't

5  think that we had any meaningful engagements with the

6  Committee, but that's history.  And we have nothing else to

7  add.

8      THE COURT: Okay.  Thank you.  Anyone else?

9      (No response.)

10     All right.  Mr. Siddiqui, I guess what I –- I

11  guess I'm –- Ms. Glosson said "a little quick," but I think

12  the more I think about it, I think the seller, the selling

13  entity, in this case I'll treat the Committee as not a

14  seller per se, but a sponsor of the motion, they don't have

15  to invite bidders to come to fixed bidding rules, and if

16  you want me to approve bidding rules, I'm willing to do it

17  on an expedited basis.  I think I'm going to have to get

18  you to recast your motion.  I don't want to, you know, task

19  you with a multi-hour redraft, but I think something has to

20  be reflected in the docket that what you want me to hear on

21  the 31st of October is bidding procedures, bidding and

22  auction procedures, and be consistent with the comment that

23  you made a few minutes ago that you're not trying to do the

24  lien strips or the lien transfers on seven days' notice.

25  So I'm willing to do that, unless you take the queue that

1 you don't even need me to approve the sale procedures. Is

2 that something that you think is important that I do or

3 not?

4         MR. SIDDIQUI: Well, Your Honor, if I may have a

5 public sidebar with Ms. McDow --

6         THE COURT: (Laughing) You may.

7         MR. SIDDIQUI: -- I suppose I could live without

8 it, actually --

9         THE COURT: Well, I --

10         MS. McDOW: I mean here's the reality of where --

11 I'm sorry to --

12         THE COURT: No, I don't want a situation where

13 I've just given Mr. Siddiqui my free advice about the sales

14 of causes of action and then have a hearing in three weeks

15 with bidders ready, whether they're in the hallway or down

16 at the U.S. Trustee's office or across the street at the

17 hotel, and say, well, I can't approve these procedures

18 because the notice is inadequate as far as these causes of

19 action are concerned, so I mean I'm willing to participate

20 up front and approve the form of notice of what's being

21 sold, if people want me to. So go ahead, Ms. McDow.

22         MS. McDOW: I apologize, Your Honor. Here's the

23 practical reality I think of this situation, that we have

24 been working with a small group. It's not like a general,

25 you know, the level of a commercial real estate shopping

1  center or something where we need to give -- you know, put
2  it on the bankruptcy website.  We're going to publish it to
3  the same people who we've been trying to deal with for a
4  long time and who, you know, a few of them we think are
5  unwilling to bid because they're waiting for the bottom to
6  really drop out.  So we're going to be publishing to people
7  who don't necessarily already know what's going on and who
8  are aware of the process.  So I don't think having -- we
9  don't need -- I agree with Mr. Siddiqui that we don't need
10 something more formal here.  If the Court is going to, like
11 you said, enter a form of notice, it seems to me that's
12 fine.
13         THE COURT: Well, okay, but it's easy to say on
14 November such and such a day there will be an auction of
15 chips and wafers, because chips and wafers, even though --
16 you know, they're descriptive, but causes of action isn't
17 very descriptive, and that's what you need to be more
18 precise about.  That's all.
19         MS. McDOW: Your Honor, I have a suggestion.
20 Perhaps what we do is we list out -- and Mr. Siddiqui can
21 comment because we haven't talked about the details -- if
22 we come up with a list, Your Honor, of specific causes of
23 action we're going to seek to sell, so again, actions
24 against Simon Barber, for example, actions against
25 Eduardos -- I mean I'm just throwing out potentials, and to

1  the extent that we can't specifically enumerate them before

2  Your Honor, either we don't seek to sell them and whatever

3  they are, they go to the estate for the Committee or the

4  Debtor to pursue, or we –- I mean I think that's the best

5  way, thinking out loud, is that we come up with a list in

6  the next couple of days, the Committee and the Debtor work

7  together to sell specific causes of action and come up with

8  a list for Your Honor.  And to the extent that we can't

9  specifically enumerate them, what are we selling anyway.

10 So to the extent we can't do that in two days or a day

11 or –- I mean I think we could put that list together.  Just

12 as represented, we've been analyzing those things for quite

13 some time.  So perhaps –- does that make sense to you?

14        MR. SIDDIQUI: It does.  So Your Honor, if I may,

15 I believe what we would propose if it's acceptable to Your

16 Honor is let us put together the list of things we want to

17 sell, the notice we want to provide, file that with Your

18 Honor as an exhibit or amendment to this motion that's

19 currently filed and have a hearing where that –- the form

20 of notice is approved.

21        THE COURT: Okay.

22        MR. SIDDIQUI: And perhaps I could file a motion

23 to have it approved or we could just bootstrap it to this

24 motion, whatever Your Honor is comfortable with.

25        THE COURT: Well, I'm comfortable with the public

1  record being clear on what's going on, so if a stranger

2  went on Pacer or walked into the Clerk's Office and looked

3  at the current docket, that stranger would think there's a

4  sale of all these things next week, Halloween, and

5  therefore I want the docket to reflect, no, next week the

6  Court will simply approve a form of notice and sale

7  procedures, that stuff, and then --

8           MR. SIDDIQUI: Understood, Your Honor.

9           THE COURT:  -- and that that notice will then

10  tell the world that on November such and such a date, there

11  will be something, and whether it's a further hearing --

12  again, we're back to my concern about the lien transfers.

13  If the respondents will stipulate to their liens being

14  transferred and the proceeds, you won't get any problem

15  with me.  But if they won't, then they need to be either

16  given the full notice procedure or the shortened time

17  procedure has to be invoked to do the 363(f) free and

18  clear, and the parties have to be, you know, have to come

19  within one of the categories that works for you.  So that

20  means that this motion has to be recast and there has to be

21  an explanation that's adequate that tells the respondents

22  why these assets are being sold free and free of their

23  liens.  I'm saying that having not taken -- had the time to

24  work through what you said, so I see there are on page 11

25  and following, there's a whole page and a half about

1  363(f), but I frankly can't -- I can't tell whether it's

2  adequate, and I don't want to give you, you know, set you

3  up for shooting you down, but I haven't had an opportunity

4  to see whether it's sufficient in the time that I've had.

5  So --

6          MR. SIDDIQUI: I appreciate it, Your Honor, and we

7  will recast the motion as discussed.

8          THE COURT: All right.  Well, let's -- and Ms.

9  Glosson, can you get back to these counsel on whether your

10  client, the U.S. Trustee, is willing to have this auction

11  in your premises?

12          MS. GLOSSON: I can.

13          THE COURT: And if the answer is yes, then fine.

14  If the answer is no, they'll just need to make some other

15  arrangements; that's all.

16          MS. GLOSSON: Right.

17          THE COURT: We have some inexpensive hotels around

18  here (laughing), maybe.  I don't know.

19          MR. SIDDIQUI: Never found those.

20          THE COURT: We have some law firm participants

21  that might be willing to make their offices available.

22  I'll leave that to counsel to figure out how to get that

23  done.

24          MR. SIDDIQUI: Thank you, Your Honor.

25          THE COURT: Ms. McDow, does your firm have an

1 office in San Francisco?

2 　　　　　MS. McDOW: We do not, Your Honor.

3 　　　　　THE COURT: Oh, okay.  All right.  Well, you guys

4 have to work that out.

5 　　　　　MR. SIDDIQUI: We'll find a way, Your Honor.

6 　　　　　THE COURT: Okay.  Well, then if you get something

7 on file by say Tuesday, we can have the hearing on Friday,

8 or maybe we could have it even earlier, but no, let's stick

9 with the Friday hearing, if that's okay.

10 　　　　　MS. GLOSSON: Your Honor, I'm not available on

11 Friday, and I don't want to make any statements that we

12 would –- without seeing the actual document that we would

13 approve or disapprove or even have any comments at all.  We

14 just –- so I'm not available on Friday.

15 　　　　　THE COURT: Are you available on Thursday?

16 　　　　　MS. GLOSSON: I am.

17 　　　　　THE COURT: Well, I realize that's even shorter,

18 but again, I think we've narrowed down the relief that's

19 being sought, and Mr. Siddiqui, when can you have the

20 revisions done?  Can that be something as early as Monday?

21 　　　　　MR. SIDDIQUI: Tuesday for sure, Your Honor.  I do

22 have another hearing on Monday out of the office, so I –- I

23 can work –- well, we can get it filed by Tuesday for sure,

24 Your Honor.

25 　　　　　THE COURT: Ms. Glosson, can you be available?

1          MS. GLOSSON: I can try.  The problem is, Your

2   Honor, I have to travel to Eureka to conduct a meeting of

3   creditors, and so I will be in the car Tuesday and

4   Wednesday.  I will be returning on Wednesday.  I hope to

5   have access to the Internet so that I can review any

6   pleadings.

7          THE COURT: Not while you're driving.

8          MS. GLOSSON: Not while I'm driving, of course,

9   but while I'm in Eureka, I'm hoping -- I need to find out

10  if I will have access to the Internet where I'm staying,

11  and then certainly on my way home, I won't be.

12         THE COURT: Well, if it's any comfort to you, I

13  can ask -- what's the current situation in Eureka, do we

14  have -- we don't have anybody there full time in court so

15  we can't --

16         MS. GLOSSON: Right.

17         THE COURT: Okay.  So we couldn't make it

18  available to print out onto Pacer for you.  Well, perhaps I

19  can --

20         MR. SIDDIQUI: We could deliver it, Your Honor.

21         THE COURT: Yeah.  Well, you could e-mail it to

22  Ms. Glosson too; couldn't you?

23         MS. GLOSSON: Right.  I just --

24         MR. SIDDIQUI: Well, it's the same Internet

25  problem, I suppose, but we can Fed Ex it to your hotel.

1      MS. GLOSSON: Your Honor, I would expect to have

2  Internet access through my Blackberry where I could review

3  documents, but I can't make any representations that that

4  will be actually the case.

5      THE COURT: Ms. Glosson, I have to make a

6  confession to you.  I thought, until you said that, I was

7  the last person in the Western Hemisphere using a

8  Blackberry.

9      (Laughter.)

10      So now two of us.

11      MS. GLOSSON: Yes, join the club, Your Honor.

12      THE COURT: Let those I-Pads just rot away.  We

13  like our Blackberries.  Why can't we get -- let's get the

14  United States Trustee to let you fly to Eureka.  Go ahead,

15  Mr. Siddiqui.

16      MR. SIDDIQUI: Your Honor, I will work with Ms.

17  Glosson to get with her whatever it is we can get to her

18  and talk to her on the phone as she's driving to and from,

19  assuming it's legal and available in that part of

20  California.  But we will not proceed on Friday without

21  having a thorough conversation with her.  I represent that

22  to you.

23      THE COURT: Well, but she says she's not available

24  on Friday, so --

25      MS. GLOSSON: I'm not available on Friday, but I

1  would be available late Wednesday and most of Thursday to

2  have a discussion with them, so --

3          THE COURT: But you'll be available to participate

4  in a hearing on Thursday afternoon?

5          MS. GLOSSON: I could be Thursday.  I have a

6  hearing at 10:00 o'clock in Judge Blumenstiel's courtroom.

7          THE COURT: Well, Ms. Parada, can we do it on

8  Thursday in the afternoon around 2:00 o'clock?

9      (The Court and the Courtroom Deputy confer.)

10          Well, can you do an early afternoon, Ms. Glosson,

11  like 1:00 o'clock on the 30th?

12          MS. GLOSSON: I'm checking, one moment.

13      (Pause.)

14          I could do 1:00 o'clock.  Well, I could do 1:30

15  actually.

16          THE COURT: Well, I have a hotly contested motion

17  and then I'm going to have to extend til like 3:30.  So I'm

18  trying to --

19          MS. GLOSSON: So what's the time you're proposing

20  then?

21          THE COURT: 1:00 o'clock or 3:30.

22          MS. GLOSSON: Oh, I'm sorry.

23          THE COURT: But I got the impression you needed to

24  be out somewhere late on Thursday.

25          MS. GLOSSON: Well, I have a conference call at

1  noon that is expected to go at least an hour, but I could

2  tell them --

3      THE COURT: Could you do it later in the

4  afternoon, like 3:00 o'clock, 3:30.

5      MS. GLOSSON: Yeah.

6      THE COURT: How about you, Mr. Siddiqui and Ms.

7  McDow, you're the critical players. Can you do it by phone

8  on the 30th at, say, 3:00 o'clock?

9      MR. SIDDIQUI: Yes, Your Honor.

10     THE COURT: Ms. McDow?

11     MS. McDOW: That works for me, Your Honor.

12     THE COURT: Okay. Well, it's a little tight --

13     MS. McDOW: Just so the Court knows, it may be

14 that Mr. Siddiqui and I are able to get this thing out on

15 Monday. I mean I will work and see what's available, but

16 we still have this afternoon and maybe we'll get lucky and

17 we'll have it out and then we'll have the extra day, so

18 it's not to say we won't try.

19     THE COURT: Okay. So let's review the bidding.

20 The Debtor is taking the lead and there's going to be a

21 revision or an amendment or some supplement such that the

22 only action item on the immediate horizon would be for me

23 to approve on the 30th at 3:00 p.m. sale and notice

24 procedures and that there will be a separate schedule for

25 dealing with the free and clear aspects of any sale and any

1   hearing dates on the sale per se, and then in the meantime,

2   Ms. Glosson will be in touch with counsel to see if the

3   U.S. Trustee's offices are available, and if not, then

4   obviously some other arrangements will be made.

5           I'm just a little unclear on one thing, Mr.

6   Siddiqui, let's suppose that the free and clear aspect is

7   resolved.  Let's suppose the notice is approved, and let's

8   suppose there's an auction at some location outside of

9   court, and, you know, X, Y, and Z are the successful

10  bidders for the assets.  Why do we need another hearing?

11  What would we do at the next hearing?  Wouldn't you just --

12  wouldn't that conclude it, if I've approved the auction,

13  and the auction takes place, unless you want to have some

14  traditional confirmation of the auction or approval of what

15  has already occurred, but you tell me what you want and

16  we'll try to make it work.

17          MR. SIDDIQUI: Understood, Your Honor.  My

18  thinking was that the buyers would want an order saying

19  that the sale is approved and authorized.

20          THE COURT: Okay.

21          MR. SIDDIQUI: So I don't -- perhaps we don't need

22  a hearing as much as an uploading of an order saying that

23  everything has been complied with.

24          THE COURT: Well, two things, the notice has to

25  make it clear that there is another hearing.  This is not

1  round two of the auction.  When the hammer falls at the

2  auction, symbolically at least, that's it, and I probably

3  said many times before and probably said in this case, I'm

4  not going to be interested in somebody wandering into court

5  with a better offer if that person has been told, you know,

6  what the auction rules are.

7       And then secondly, make sure that any bidder and

8  the notice tells bidders if they want a 363(m) finding,

9  what they've got to do, which I think I've talked to you

10 before about that, and that's on my public procedures.  So

11 I'll leave it to you to deliberate with Ms. McDow off the

12 record and decide what you want.  If you want a follow-up

13 hearing, I don't mind doing it.  If you want to say

14 there'll be some kind of -- I think the old traditional

15 form is a return of sale, and if you say, you know, I get a

16 declaration from Mr. Kravitz that says we had the auction

17 on such and such a day and X paid Y dollars for Z asset and

18 wants an order approving it, fine.  I don't have a problem

19 with a comfort order, but it's still an order.  Either way,

20 whichever you want to do.

21       Again, not to beat a dead horse, that 363(f)

22 thing has to be done by stip or an opportunity of the

23 respondents to be heard and oppose if they are inclined to

24 do so.

25       MR. SIDDIQUI: Understood, Your Honor.

1    THE COURT: Okay.  One step at a time then.  I'll

2  look forward to talking to you all on next Thursday at

3  3:00, no Halloween costumes will be required on the day

4  before.

5    MR. GALLO: Are they permitted?

6    (Laughter.)

7    MR. SIDDIQUI: Your Honor, by way of status, I

8  have two or three small matters I'd like to update the

9  Court on, with your permission?

10    THE COURT: Sure.  Yes, please.

11    MR. SIDDIQUI: The first is with respect to Mr.

12  Kravitz' employment by the Debtor.  Since his employment,

13  the company has had some resignations, and now apart from

14  the two founders, Mr. Barber and Mr. DeCastro, there are no

15  other employees.  As such, Mr. Kravitz had to add staff

16  from his firm, Provence, to assist him in managing the day-

17  to-day affairs of the Debtor.  Nothing has changed with

18  respect to compensation, but Mr. Kravitz himself is not the

19  only employee working for the Debtor.  As such, we thought

20  perhaps a retention application for his firm would make

21  sense in light of those changed circumstances.  I wanted to

22  advise the Court of that changed circumstance and learn

23  whether there were any issues with the filing of retention.

24    THE COURT: Well, I think you're going to have to

25  take that up with Ms. Glosson first.  I mean I am sure --

1  you're going to look into that; aren't you, Ms. Glosson?

2        MS. GLOSSON: We would be interested in having a

3  discussion, yes.

4        THE COURT: Why don't you put that on the list of

5  things to talk about while she's driving down through the

6  great Redwoods and we can discuss it further on Thursday if

7  necessary.

8        MR. SIDDIQUI: Thank you, Your Honor.  And one

9  last matter of status, the Debtor in early October filed an

10 adversary proceeding to compel turnover.  Since the filing

11 of that adversary proceeding, the defendants and I have

12 worked together to try to resolve the issues raised there,

13 and we are optimistic that all of the issues raised will be

14 resolved and that the complaint will be dismissed with

15 prejudice.

16        THE COURT: Okay.

17        MR. SIDDIQUI: Accordingly, Your Honor may see a

18 stipulation to extend the answer deadline in the near term,

19 and I wanted to advise the Court of that happening.

20        THE COURT: No problem.  Good, that's fine.  Shall

21 we continue the status conference too?

22        MR. SIDDIQUI: The status conference is December

23 29th, Your Honor.  I think that's far enough out that we're

24 not going to –- nothing is going to happen between then and

25 now, other than perhaps dismissing the case.

1          THE COURT: Yeah, okay, no, that's fine.  That

2    stipulation, that's routine.  Happy to accommodate

3    particularly if you're going to get it resolved.  Okay?

4    Anything else?  Anybody want to raise anything else before

5    we conclude?

6        (No response.

7          Okay, thank you everyone for participating.  Have

8    a nice weekend, and I'll talk to some of you next Thursday.

9          ALL COUNSEL: Thank you, Your Honor.

10       (Whereupon, the proceedings are concluded at 11:44

11   a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                 CERTIFICATE OF TRANSCRIBER

5

6

7          I certify that the foregoing is a correct

8   transcript from the digital sound recording of the

9   proceedings in the above-entitled matter.

10

11  DATED: November 1, 2014

12

13

14

15

16

17

18

19

20

21

22

23

24

25