Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com
ffarivar@bakerlaw.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS



**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES, LLC, a California limited liability company,<br><br>Debtor and Debtor in Possession. | Lead Case No.: 14-30725 DM<br><br>Jointly Administered and Substantively Consolidated with Cases No. 14-30866<br><br>Chapter 11 |
| x Affects HASHFAST LLC, a Delaware limited liability company,<br><br>Debtor and Debtor in Possession. | <u>Hearing Date:</u><br>Date: December 19, 2014<br>Time: 9:30 a.m.<br>Dept.: Courtroom 22<br>235 Pine St., 19th Fl.<br>San Francisco, CA 94104<br>Judge: Hon. Dennis Montali |

**FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BAKER & HUSTETLER LLP FOR THE PERIOD OF JUNE 25, 2014 THROUGH AND INCLUDING NOVEMBER 10, 2014**



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 1 of 37

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ... 5

A. Prior Fee Applications ... 6

B. Request for Allowance of Fees and Reimbursement of Expenses ... 6

C. Proper Notice ... 6

II. FACTUAL BACKGROUND ... 7

A. The Bankruptcy Case ... 7

B. Company History, Ownership and Operation ... 10

1. Intellectual Property ... 11

2. Product Roll-out ... 11

C. Significant Events during the Bankruptcy Case ... 12

1. Employment of Professionals ... 12

2. Other Significant Matters ... 13

D. Status of Plan and Disclosure Statement ... 13

III. DETAILED LISTING OF ALL TIME SPENT BY BAKER FOR WHICH COMPENSATION IS SOUGHT AND THE HOURLY RATES OF PROFESSIONALS ... 14

A. Narrative Regarding Services Rendered in Benefit to the Estate ... 14

1. Administration (B100)/Case Administration (B110) ... 15

2. Asset Analysis and Recovery (B120) ... 17

3. Asset Disposition (B130) ... 17

4. Meeting and Communication with Creditors (B150) ... 18

5. Fee-Employment Application (B160) ... 19

6. Avoidance Action Analysis (B180) ... 20

7. Operation (B200)/ Business Operation (B210) ... 20

8. Claims and Plan (B300)/Claims Administration and Objections (B310) ... 20

9. Plan and Disclosure Statement (B320) ... 21

10. Bankruptcy Related Advice (B400) ... 22





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 2 of 37

11. Researching Laws (C200)/Fact Investigation/Development (L110)/ Analysis / Strategy (L120)/ Expert/Consultants (L130) ........................... 22

12. Deposition (L330)/ Discovery Motions (L350)/ Other Discovery (L390)/Fact Witness (L410)........................................................................ 23

13. Written Motions and Submissions (L430)/ Other Written Motions and Submissions (L250) ...................................................................... 24

14. Trial and Hearing Attendance (L450)........................................................ 24

B. Detailed Listing of Expenses by Category.............................................................. 25

C. Description of Professional Education and Experience ......................................... 25

IV. STANDARD OF LAW............................................................................................................ 26

V. CONCLUSION ........................................................................................................................ 28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 3 of 37

# TABLE OF AUTHORITIES

Page(s)

**CASES**

In re Auto Parts Club, Inc., 224 B.R. 445 (Bankr. S.D. Cal. 1998) .......... 28

In re Baldwin-United Corp., 79 B.R. 321 (Bankr.S.D.Ohio 1987) .......... 28

Blum v. Stenson, 465 U.S. 886 (1984) .......... 28

Burgess v. Klenske (In re Manoa Finance Co., Inc.) 853 F.2d 687 (9th Cir.1988) .......... 28

City of Riverside v. Rivera, 477 U.S. 561 (1986) (Rehnquist, J. dissenting) .......... 28

First National Bank of Chicago v. Committee of Creditors Holding Unsecured Claims (In re Powerline Oil Co.), 71 B.R. 767 (Bankr. 9th Cir. 1986) .......... 4, 7, 28

Missouri v. Jenkins by Agyei, 491 U.S. 274, 109 S. Ct. 2463 (1989) .......... 28

In re THC Financial Corp., 659 F.2d 951 (9th Cir.1981), cert. denied, 456 U.S. 977 (1982) .......... 27

**STATUTES**

11 U.S.C. § 101 .......... 7, 9, 28

11 U.S.C. § 105(a) .......... 8, 10

11 U.S.C. § 330 .......... 29, 30

11 U.S.C. § 363 .......... 8, 10

11 U.S.C. § 365 .......... 8

11 U.S.C. § 1107 .......... 7

11 U.S.C. § 1108 .......... 7

**RULES**

Federal Rules of Bankruptcy Procedure 1015(b) .......... 7



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 4 of 37

Federal Rules of Bankruptcy Procedure 2004 ........................................................................ *passim*

Federal Rules of Bankruptcy Procedure 6004 ........................................................................ 8, 10

Federal Rules of Bankruptcy Procedure 6006 ........................................................................ 8, 10

Federal Rules of Bankruptcy Procedure 9014 ........................................................................ 8, 10

Federal Rules of Bankruptcy Procedure 9014-1 ........................................................................ 6

Federal Rules of Bankruptcy Procedure 9019 ........................................................................ 8, 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 5 of 37

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

Baker & Hostetler LLP ("Baker" or the "Firm"), general bankruptcy counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of HashFast Technologies, LLC and Hashfast LLC (substantively consolidated so collectively, "Hashfast" and/or the "Debtors"), hereby submits its First Interim Application for Approval of Compensation and Reimbursement of Expenses (the "Application") for services rendered and expenses incurred from June 25, 2014 through and including November 10, 2014 (the "Covered Period"). In support thereof, the Firm respectfully submits as follows:

## I. INTRODUCTION

Since being retained as the general bankruptcy counsel for the Committee on June 25, 2013, the Firm has worked diligently – both independently and with the Debtors – to identify a feasible exit strategy for the Debtors which will maximize the return to the general unsecured creditors. In furtherance of this goal, the Firm successfully opposed the proposed sale of substantially all of the assets of the Debtors (which likely would have provided absolutely nothing to the general unsecured creditors despite stripping the Debtors' estate (the "Estate") of every asset of any value). The Firm also obtained substantive consolidation of the Debtors' bankruptcy cases (in order to prevent valuable intellectual property from being shielded from the creditors of the main case), successfully opposed the efforts of the office of the United States Trustee (the "UST") to convert the Bankruptcy Case or to appoint a trustee, ensured the replacement of the Debtors' management with responsible fiduciaries who have since worked diligently to maximize the value of what was left of the Debtors, and prepared extensive discovery on the Debtors' key principals and employees in an attempt to try to identify additional sources of recovery for the Estate.

At the outset of the Bankruptcy Case, the Debtors in part were controlled by pre-petition management (who the Committee believed was responsible to the rampant misconduct that precipitated the involuntary bankruptcy filing) and in part by a recently retained chief office who



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

conducted herself in a manner that caused her motives into question. While investigating the affairs of the Debtors, the Committee discovered that the Debtors were engaged in questionable activities pre-petition, including accepting orders for products still in development and/or production and authorizing raises to executive level management and other employees despite an inability to satisfy their obligations as they came due. After the commencement of the Bankruptcy Case, the Debtors' management also attempted to liquidate substantially all of the Debtors' assets on an expedited basis by and through a sale to Liquidbits, Inc. ("LB") (the "Liquidbits Sale"). As explained in detail below, due to the Committee's efforts, the Court rejected the Liquidbits Sale proposal. However, the Debtors and the Committee have since worked diligently and collaboratively to design an exit strategy for the Debtors which will maximize the value of the Estate. To this end, the Committee has drafted a plan and disclosure statement which they plan to file shortly in conjunction with the Debtors.

**A. Prior Fee Applications**

This is the Firm's first interim fee application. The Firm has had no other prior fee applications.

**B. Request for Allowance of Fees and Reimbursement of Expenses**

The Firm hereby seeks approval of the fees in the amount of $268,820.50 and expenses in the amount of $50,859.01, which totals $319,679.51 due for the Covered Period as soon as such funds are available (in whole or in part).

Baker has not received a retainer in this matter. Pursuant to Local Bankruptcy Rule 9014-1, by and through this Application, Baker requests that this Court approve the foregoing fees and costs in the aggregate amount of $319,679.51 and authorize the Debtor to pay Baker said amounts.

Baker expended a total of 642.80 hours of recorded time for services rendered during the Covered Period, at a blended rate of approximately $418.92 per hour. The Firm respectfully submits that its fees incurred in this case are reasonable, and accordingly, should be approved.

**C. Proper Notice**

The Firm has served or shall timely serve a notice of this Application, on the Court, all

creditors, the UST and all parties in interest in this Bankruptcy Case.

## II. FACTUAL BACKGROUND

### A. The Bankruptcy Case

1. On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson (collectively, the "Petitioning Creditors") commenced an involuntary bankruptcy under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against HashFast Technologies, LLC ("HFT").

2. On June 3, 2014, HFT filed the *Debtors' Conditional Consent to an Order for Relief Regarding Involuntary Petition* and *Debtors' Motion to Convert to Chapter 11*.[1] On June 4, 2014, the Court entered an order converting the Bankruptcy Case to one under chapter 11 of the Bankruptcy Code.[2] Thereafter, HFT has acted as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On June 6, 2014, HashFast, LLC ("HF," and collectively with HFT, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.[3]

4. On or about June 6, 2014, HFT filed the *Debtors' Motion for an Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing the Joint Administration of Their Chapter 11 Cases*, seeking to administratively consolidate the HFT Bankruptcy and HF Bankruptcy. *See* HFT D.E. 48. On or about July 8, 2014, the Court entered an order in the HFT Bankruptcy consolidating the Bankruptcy Case and naming the HFT Bankruptcy the lead bankruptcy case. *See* HFT D.E. 121.

5. On or about June 23, 2014, the Office of the OSUT appointed the following creditors of HFT to serve on the Committee: Hamilton Hee, Sistemas Operativos Sanitarios Ca, Uniquify, Inc., Antony Vo, Koi Systems Ltd., Digimex Ltd., and Peter Morici.

6. On June 25, 2014, the members of the Committee selected Baker to act as general

---

[1] D.E. 35 and 36.

[2] All references herein to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq.*

[3] As further explained below, HFT is the wholly-owned subsidiary of HF. HFT was engaged in the business of manufacturing and selling special purpose computers and computer chips designed for the processing of Bitcoin transactional information or "Bitcoin mining." HF owns all intellectual property rights utilized by HFT in the course of its business.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 8 of 37

bankruptcy counsel for the Committee, subject to Court approval. On July 3, 2014, the Committee filed its *Application to Employ Baker & Hostetler LLP as Bankruptcy Counsel* ["Employment Application", D.E. 114]. On July 24, 2014, the Court entered the order granting the Employment Application [D.E. 153].

7. On July 8, 2014, this Court granted the Debtors' motion to jointly administer the Debtors' bankruptcy cases.[4]

8. On July 10, 2014, the Debtors applied to the Court to appoint Monica Hushen, the Debtors' Chief Financial Officer, as the designated individual with primary responsibility for the duties and obligations of the Debtors. (D.E. 122)

9. On July 11, 2014, the Court entered an Order Appointing Monica Hushen as Debtors' Responsible Individual (D.E. 124).

10. On July 18, 2014, the Debtors filed the first sale motion entitled *Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief* (the "First Sale Motion").[5]

11. By and through the First Sale Motion, the Debtors sought to, among other things, sell substantially all of the assets of the Debtors to a purported creditor of HF, Liquidbits, Corp. ("LB"), including certain rights in intellectual property, which had never been valued, and avoidance actions which had not yet been evaluated. Perhaps most disconcerting, the First Sale Motion enabled LB to return the assets if and when they determined they were no longer worth holding onto.

12. On or about July 24, 2014, the Committee filed the *Opposition of the Official committee of Unsecured Creditors to the Debtors' Motion for Entry of Orders (1) Authorizing the*

[4] D.E. 121.
[5] D.E. 134.





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 9 of 37

*Sale of Estate Property, (2) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (3) Authorizing the (a) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (b) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief* (the "First Sale Opposition").[6]

13. On or about July 26, 2014, the Court issued a tentative ruling denying the First Sale Motion.[7] Although the Court treated the initial hearing as a status conference on the First Sale Motion, no further action was taken to seek Court approval of the proposed sale to LB.

14. On or about July 23, 2014, the Committee filed the *Official Committee of Unsecured Creditors' Motion for Substantive Consolidation*, seeking to substantively consolidate the Bankruptcy Case and their estates (collectively, the "Estates")[8] into a single estate (the "Consolidation Motion"). *See* HFT D.E. 148.

15. On or about August 8, 2014, the UST filed its motion to appoint a chapter 11 trustee or convert the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code (the "Motion to Convert").[9]

16. On August 27, 2014, the Committee filed an opposition to the Motion to Convert. D.E. 189.

17. On September 10, 2014, the Consolidation Motion and Motion to Convert came before the Court for hearing. After considering the pleadings and the arguments presented, the Court denied the Motion to Convert[10] and granted the Consolidation Motion.[11]

18. Following the denial of the First Sale Motion, the Committee began working with the Debtors to devise a globally beneficial exit strategy for the Debtors. Due to the resignation of several top officers and employees within the Debtors and the retention of certain estate assets off-shore by a Korean hardware manufacturer, the Debtors determined that the controlled

---

[6] D.E. 156.
[7] Although entered on the docket in Case No. 14-30725, the tentative ruling was not assigned a docket entry number.
[8] The HFT Bankruptcy estate may be referred to herein as the "HFT Estate". The HF Bankruptcy estate may be referred to herein as the "HF Estate".
[9] D.E. 168.
[10] D.E. 200.
[11] D.E. 202.



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 10 of 37

liquidation of Debtors' assets served the best interests of the Estate and then creditors.

19. After negotiation and collaboration with the Committee, on or about October 23, 2014, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Order (1) Authorizing the Jointly Conducted Auction of Estate Property by the Debtors and the Committee, and (2) Authorizing the Sale of Estate Property Free and Clear of Liens, Encumbrances and Interests, with any Disputed Liens, Encumbrances, and Interests to Attach to the Sale Proceeds Pending Further Order of the Court* (the "Second Sale Motion").[12]

20. On or about October 24, 2014, the Court held a hearing on the Second Sale Motion during which it requested additional information relating to the proposed auction and bidding procedures relating thereto. The Court set the Second Sale Motion for hearing and instructed the Debtors to file a proposed notice for the auction sale that set forth the proposed auction procedure and expressly identified which items of estate property will be subject to the auction.

**B. Company History, Ownership and Operation**

21. The Debtors were engaged in a single enterprise for the design, manufacture and sale of computer chips and systems utilized in Bitcoin mining. HF is the parent company of HFT and owner of 100% of the membership interest in HFT. *See* HFT D.E. 44. In turn, HF is owned by several individuals and entities in varying percentages, including, but not limited to, Eduardo de Castro (26.94%), Simon Barber (26.94%), Chad Spackman (11.97%), the Port Family Trust (11.97%), and the Wells Family Trust (11.97%).[13] *See* HF D.E. 5. In addition to being owners of HF, Eduardo de Castro and Simon Barber are executive or former executives of HFT—former CEO and current CTO, respectively.

22. HF does not engage in any business independent of HFT. HF has no meaningful business operations, no employees,[14] the same officers as HFT,[15] and the same principal place of

---

[12] D.E. 216.

[13] Based on the testimony provided by HFT's CFO during the continued Meeting of Creditors held on July 15, 2014, it appears that the ownership interests of HF have been redistributed as Monica Hushen now holds a 3% interest and Tim Wong now holds a 1% interest in HF.

[14] *See* Ex. B, 53:20-23.

[15] *See* HF D.E. 17, p. 7; HFT D.E. 92, at p. 10.

business as HFT. *See* HF D.E. 1, p. 1; Ex. B, 7:24-8:11. HF exists solely for the purpose of purportedly owning and developing certain intellectual property – identified on HF's schedules as two United States provisional patent applications and various "trade secrets, mask works related to chip design" (collectively, the "Intellectual Property") – solely for the benefit of HFT.

1. Intellectual Property

23. The Intellectual Property purportedly held by HF is primarily related to the Golden Nonce chip. In or about June 2013, one or both of the Debtors began designing their first generation Golden Nonce ("GN1"), with the assistance of Sandgate and Uniquify, Inc. ("Uniquify"). HF claims to be the exclusive owner of the intellectual property relating to the GN1 (the "GN1 IP"). HF further claims to license this intellectual property to HFT, although the Debtors have yet to produce any licensing agreement establishing this relationship.

24. Following the development of the GN1, the Debtors worked with DXCorr Design ("DXC") to design and develop subsequent generations of the GN1—generations 1.5 ("GN1.5") and 2.0 ("GN2"). The ownership of the intellectual property related to the GN1.5 (the "GN1.5 IP") is uncertain. The Debtors contend that they own the GN1.5 IP while simultaneously stating that the Debtors (or HF) received a license to use the GN1.5 IP from DXC. These contentions are mutually exclusive unless the GN1.5 IP involves multiple rights or the GN1.5 is a derivative work and, although DXC owns the GN1.5 IP, the Debtors have blocking rights due to the GN1 IP. The ambiguity is in part due to the fact that the contract between DXC and HF or HFT (another point that is uncertain) is unsigned.

25. The ownership of the GN2 intellectual property (the "GN2 IP") is not plagued by the same ambiguities as the GN1.5 IP. Indeed, as the Debtors' representative testified, the GN2 IP is owned by DXC.

26. Notwithstanding the question of ownership, the Debtors contend that HF or HFT (another uncertainty) holds at the very least a valid license or licenses to use the GN1.5 IP and GN2 IP.

2. Product Roll-out

27. In or about July 2013, HFT began advertising a special purpose computer system

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES


Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 12 of 37

built around the GN1 for sale and started accepting orders for the "batch one" mining computers in early August 2013. "Batch one" sales were quickly followed by batches two through four. Despite taking orders with short delivery guarantees, the Debtors had yet to fully develop a system capable of mass production; indeed, it appears that chips for the systems were not available until in or about November 2013.

28. The delays in production ultimately resulted in disgruntled customers. The Debtors have yet to sufficiently describe what led to the delays and the failures to fulfill customer orders on or before the guaranteed delivery dates. The Debtors merely contend that "everybody had a part in it" and that the issues causing the delivery difficulties have now been corrected.

29. Notwithstanding the delivery issues, the Debtors earned approximately $18,000,000 in the last five to six months of 2013, much of which they cannot account for.

30. Despite substantial investments in developing product and Intellectual Property, the Debtors could not meet delivery deadlines, which led to refund demands in early 2014, and ultimately the commencement of a variety of litigation and, ultimately, the HF Bankruptcy.



**C. Significant Events during the Bankruptcy Case**

1. <u>Employment of Professionals</u>

31. On or about March 5, 2014, the Committee moved to employ the Firm as its general bankruptcy counsel (the "Baker Application", D.E. 7114). The Court granted the Baker Application by order entered on or about July 23, 2014 (the "Baker Employment Order"). <u>See</u> D.E. 153. The Firm's employment is effective as of June 25, 2014 (the "Employment Date").

32. On or about July 18, 2014, the Committee filed an application to employ Province, Inc. ("Province") as financial advisor for the Committee (the "Province Application"). *See* D.E. 133. On or about July 23, 2014, the Committee filed a supplemental declaration of Peter Kraviz in support of the Province Application. D.E. 150.

33. Subsequently, the Debtors and the Committee engaged in substantial negotiations in an effort to devise a mutually acceptable plan for the reorganization and/or controlled liquidation of the Debtors. As part of these negotiations, the Debtors and the Committee agreed to the appointment of Peter Kravitz ("Kravitz"), principal of Province, as the Chief Restructuring

Officer for the Debtors, rather than the financial advisors for the Committee.

34. On or about August 19, 2014, the Debtors filed an application to employ Kravitz as the Designated Responsible Individual for the Debtors ("CRO"). *See* D.E. 181. Accordingly, on or about August 20, 2014, the Committee withdrew Kraviz Application and on the same day the court entered an Order allowing the Debtors designate Kravitz as the CRO. D.E. 191.

35. Prior to the involvement of the CRO, the Debtors and Committee entered into a series of stipulations authorizing the sale(s) of certain inventory. *See* D.E. 132. Specifically, the stipulations limited the Debtors to selling 3000 chips and 5000 chips' worth of wafers, and up to $200,000 per month in non-chip/wafer inventory.

36. At present, the CRO controls the daily operations of the Debtors, and since his appointment, the Debtors have actively marketed the Debtors' assets.

37. In addition to increasing sales, the Debtors have also reduced their employment roster—eliminating non-essential personnel. The resulting payroll reduction has contributed to the increase in net income generated by the Debtors following the appointment of the CRO.

2. Other Significant Matters

38. Since its appointment, the Committee has been in the process of gathering information regarding the Debtors, and to date has conducted the examination of the following individuals:

a. *Monica Hushen*, the Debtors' former chief financial officer;

b. *Eduardo De Castro*, the Debtors' co-founder and former chief executive officer;

c. *Simon Barber*, the Debtors' chief technology officer; and

d. *Tim Wong*, the Debtors' former chief marketing officer.

39. The Committee believes that further examination may be necessary to obtain a comprehensive understanding of the Debtors' financial condition and operations.

**D. Status of Plan and Disclosure Statement**

40. Since the hearing on the Motion to Convert on September 10, 2014, the Debtors and the Committee have worked diligently and collaboratively to devise a viable exit strategy.





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 14 of 37

41. Pursuant to the Second Sale Motion, on or about December 4, 2014, the Debtors will hold an auction of certain assets set forth therein (the "Auction").

42. The Debtors and the Committee intend to file a joint plan and supporting disclosure statement - which the Committee has already drafted - after the Auction is held, which among other things, the plan proposes to vest all of the assets (or proceeds thereof) of the Debtors, in a post confirmation trust. The post-confirmation trust will be empowered to, among other things, liquidate any remaining assets, investigate and prosecute any necessary litigation claims, and administer/object to the claims asserted against the Debtor(s). The Debtors and the Committee anticipate that the plan will receive the support of the Debtors' creditor body and will yield the highest possible return to the Estate.

## III. DETAILED LISTING OF ALL TIME SPENT BY BAKER FOR WHICH COMPENSATION IS SOUGHT AND THE HOURLY RATES OF PROFESSIONALS



Baker expended a total of 642.80 hours of recorded time for services rendered during the Covered Period, at a blended rate of approximately $418.92 per hour. Baker respectfully submits that its fees incurred in this case are reasonable. A true and correct copy of the billing report for the Covered Period detailing the time expended by, and the billing rates of, the particular professionals and paraprofessionals performing services, as well as the total fees for services performed in this case during the Covered Period, are attached to the Declaration of Ashley M. McDow (the “McDow Declaration”) as **Exhibit “A,”** and is incorporated herein by reference.

### A. Narrative Regarding Services Rendered in Benefit to the Estate

As counsel to the Committee, Baker has performed literally hundreds of discrete services and tasks. Descriptions of each of these services and tasks are contained in Baker’s detailed time records, which are attached as **Exhibit “A”** and incorporated herein by reference.[16]

What follows, is a summary of the more significant services rendered by Baker in each of the respective task code categories.

Baker categorizes all time entries for fees into a number of categories. For bankruptcy matters, Baker utilizes several categories, which for the Covered Period include: (1) Case

[16] The expense report is included at the end of the invoice.



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 15 of 37

Administration; (2) Asset Analysis and Recover; (3) Asset Disposition; (4) Relief from Stay – Adequate Protection Proceedings; (5) Meeting and Communication with Creditors; (6) Fee - Employment Application; (7) Avoidance Action Analysis; (8) Business Operation; (9) Financing – Cash Collections; (10) Claims Administration and Objections; (11) Plan and Disclosure Statement. Baker also utilizes a number of time entry categories for litigation-related services, which for the Covered Period include: (1) Researching Laws; (2) Analysis/Strategy; (3) Experts/Consultants; (4) Pleadings; (5) Written Discovery; (6) Other Discovery; (7) Written Motions and Submissions; and (8) Trial and Hearing Attendance. Inevitably, certain time entries do not fit neatly into any one category, while other time entries cross over into more than one category. Baker therefore does its best to place time entries into categories that accurately reflect the work performed. In no event were any time entries for a single task by one attorney duplicated.

1. Administration (B100)/Case Administration (B110)

The work performed under these categories includes, but is not limited to, review of the Debtors' bankruptcy schedules, communications with the members of the Committee and the Debtors regarding the administration of the Bankruptcy Case, and assessment of the Debtors' assets, liabilities, operation, and monthly operating reports. The work performed under these categories also includes,

- Review and analysis of the Debtors' first day motions, including the Utilities Motion and the Cash Collateral Motion;
- Communications with the Debtors, the Committee, and the UST regarding the administration of the Estates, including but not limited to the substantive consolidation of the Debtors, Rule 2004 Examination of the Debtors' former principals and employees, the Motion to Convert, the 341(a) hearings, the Debtors' bankruptcy schedules, assets, liabilities, monthly operating reports, employment of various professionals, and first day motions;
- Communications with the Debtors, the Committee, and the U.S. Trustee regarding the Debtors' operation, management of the Debtors' employees, the appointment




Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 16 of 37

of the CRO, the sale of the Debtors' assets, and the Debtors' exit strategy;

- Review and preparation of the Committee bylaws, Committee website, notices, and related correspondence;
- Review and analysis of claims and preparation of summary detail for the claims filed;
- Communications with the UST regarding compliance issues;
- Review and analysis of the Debtors' financial condition including its income and expenses, as well as communications with the members of the Committee regarding the same and the status of the Bankruptcy Case;
- Addressing issues regarding the management, operation, maintenance, and sale of the Debtors' assets;
- Review, analysis, and addressing of various issues regarding potential avoidance actions;
- Review and analysis of entered orders and other docket entries in the Bankruptcy Cases;
- Efforts to settle and attempt to resolve various claims and disputes with the Debtors and creditors of the Bankruptcy Case;
- Communications regarding the valuation of the Debtors' assets and communications with potential purchasers regarding the sale of the Debtors' assets;
- Analysis of the prospects for resolution of the Bankruptcy Case;
- Communications with the Debtors and members of the Committee regarding the administration of the Estate, including but not limited to the evaluation of the Bankruptcy Case, the status of the Bankruptcy Case, employment and/or fee applications of various professional is and efforts to address issues and move the Bankruptcy Case forward;
- Preparation of and draft status reports and attend status conferences; and
- Review and  analysis of issues and various communications regarding the Motion



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 17 of 37

to Convert, the Consolidation Motion, the First Sale Motion, and the Second Sale Motion.

These categories also involve time spent communicating with the Court, the UST, and various other parties regarding general issues in the Bankruptcy Case and reviewing various correspondences received regarding the Bankruptcy Case.

The total time billed to Administration (Code B100) is 26.50 hours for a total of $7,074.50. The total time billed to Case Administration (Code B110) is 135.90 hours for a total of $60,813.00.

2. Asset Analysis and Recovery (B120)

The work performed under this category includes, but is not limited to,

- Analysis of the Debtors' assets; and
- Communications with the Debtors, Province, and potential purchasers of the Debtors' assets regarding the sale of the Debtors' assets.

The total time billed to Asset Analysis and Recovery (B120) is 3.10 hours for a total of $ 1,554.00 in fees.

3. Asset Disposition (B130)

The work performed under this category includes, but is not limited to,

- Analysis regarding the potential disposition of the Estate's assets;
- Communications with potential purchasers, including LB regarding the sale of the Debtors' assets;
- Review and analysis of several proposals, offers, and counteroffers regarding the sale of the Debtors' assets, and communications with the members of the Committee regarding the same;
- Communications and analysis regarding the list of the Debtors' assets, the valuation of the Debtors' assets, the liens, the potential purchaser (i.e., LB), and potential listing price for the Debtors' assets;
- Communications regarding the First Sale Motion and the Opposition to the First Sale Motion, and the hearing thereof;





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 18 of 37

- Analysis, review, and communications regarding Motion to Approve Notice of Sale, the auction procedures, and order and other related pleadings thereto;
- Review, analysis, and communications regarding the Second Sale Motion; and
- Preparation of the Opposition to the First Sale Motion, Motion to Approve Notice of Sale, the auction procedures, and other pleadings related to the sale of the Debtors' assets.

The total time billed to Asset Disposition (B130) is 97.80 hours for a total of $ 38,538.50 in fees.

4. Meeting and Communication with Creditors (B150)

This category includes preparing and telephonically attending weekly conference calls with the Committee. Furthermore, during the Covered Period, the Firm responded to various questions from creditors regarding the bankruptcy process, the status of their claims and concerns, and treatment of their claims in a proposed plan of reorganization. This category also includes communicating with the Committee and the creditors regarding various matters in this Bankruptcy Case including but not limited to:

- The status of the Bankruptcy Case and various pleadings filed in the Bankruptcy Case;
- The status of the potential sale and sale of the Debtors' assets, offers, counteroffers, appraisal, and settlement discussions for the sale of the Debtors' assets;
- The retention of professionals and forensic accountants in the Bankruptcy Case;
- Communications regarding potential purchasers, including LB regarding the sale of the Debtors' assets;
- Communications regarding several proposals, offers, and counteroffers regarding the sale of the Debtors' assets, and communications with the members of the Committee regarding the same;
- Communications regarding the list of the Debtors' assets, the valuation of the Debtors' assets, the liens, the potential purchaser (i.e., LB), and potential listing




Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 19 of 37

price for the Debtors' assets;

- Communications regarding the First Sale Motion and the Opposition to the First Sale Motion, and the hearing thereof;
- Communications regarding Motion to Approve Notice of Sale, the auction procedures, and order and other related pleadings thereto;
- Communications regarding the Second Sale Motion; and
- Creditors' claims, fees and expenses.

The total time billed to Meeting and Communication with Creditors (Code B150) is 60.40 hours for a total of $ 28,486.00 in fees.

5. <u>Fee-Employment Application (B160)</u>

The work performed under this category includes, but is not limited to, addressing issues regarding the Baker Application, the Province Application, and related notices and orders. The work performed under these categories further includes, but is not limited to,

- Reviewing and analyzing the issues regarding the Baker Application, the Province Application, and the Kravitz Application.
- Reviewing and preparing the Kravitz Application, Baker Application, and Kravitz Application;
- Analyzing the issues and communications related to the Kravitz Application, including preparing declaration(s), and supplemental declaration(s) in support of the same;
- Analyzing and addressing the Committee's, the UST's, and the Debtors' concern regarding the Baker Application, the Province Application, and the Kravitz Application;
- Communicating with the members of the Committee, the Debtors, and other professionals regarding various applications filed in the Bankruptcy Case.

The total time billed to Fee-Employment Application (Code B160) is 14.80 hours for a total of $5,800.00 in fees.





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 20 of 37

6. Avoidance Action Analysis (B180)

The work performed under this category includes, but is not limited to, researching and analyzing issues relating to avoidance actions (the "Avoidance Action"), and communications regarding the same to allow the Committee to prosecute the Avoidance Actions.

The total time billed to Avoidance Action Analysis (Code B180) is 0.40 hours for a total of $200.00 in fees.

7. Operation (B200)/ Business Operation (B210)

The work performed under these categories includes, but is not limited to,

- Analyzing issues regarding the Debtors' budget and the Debtors' operations;
- Meeting with Debtors' principals and employees regarding potential resolution of issues in the Bankruptcy Case;
- Developing strategy and providing instruction for dealing with LB; and
- Communicating with the Debtors regarding the CRO, the Debtors' operation and sale of the Debtors' assets.

The total time billed to Business Operation (Code B200) is 1.70 hours for a total of $ 520.00 in fees. The total time billed to Operation (Code B210) is 5.00 hours for a total of $ 2,135.00 in fees.

8. Claims and Plan (B300)/Claims Administration and Objections (B310)

These categories involve time spent analyzing various proofs of claims filed in the Bankruptcy Case and other issues relating to the proofs of claims. The Firm also spent numerous hours communicating with the Debtors, as well as various other creditors regarding treatment of their claims, and discussions with the Debtors and the Committee regarding options, rights and defenses thereto. The work performed under this category also includes, but is not limited to,

- Analyzing and addressing critical vendors' issues; and
- Analyzing and addressing tax claims against the Estate.

The total time billed to Claims and Plan (Code B300) is 1.10 hours for a total of $494.00. The total time billed to Claims Administration and Objections (Code B310) is 4.50 hours for a



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 21 of 37

total of $2,184.00.

9. Plan and Disclosure Statement (B320)

This category includes time spent communicating with the Debtors and drafting the disclosure statement and the plan to be filed jointly with the Debtors. In an effort to propose a consensual disclosure statement and a plan, the Firm has been devoting considerable time addressing the concerns of the Debtors, UST, the Committee, and other creditors. This category also involves time spent for,

- Analyzing various issues, including the potential sale of the Debtors' assets and the impact of the same on the plan and the disclosure statement;
- Preparing a draft of the plan and the disclosure statement;
- Analyzing confirmation issues and requirements;
- Discussing the terms of the disclosure statement and the plan with the Committee, the Debtors, as well as a number of the other creditors in the Bankruptcy Case;
- Researching and analyzing issues regarding the Debtors' exit and reorganization strategies, including but not limited to the effect of the sale of the Debtors' assets, cram down, claim bifurcation, and lien stripping options;
- Analyzing various issues and strategizing for filing the Disclosure Statement and Plan, including but not limited to feasibility, liquidation, liabilities of the Estates, secured claims against the Estate, the sale of the Debtors' assets, and the status of the sale efforts;
- Reviewing and analyzing the Debtors' cash flow projections and income statement in support of the Disclosure Statement and Plan;
- Engaging in protracted discussions with the Debtors, and members of the Committee, and other creditors in an effort to reach a global resolution of all disputes and establish a mechanism for the sale of the Debtors' assets.

The total time billed to Plan and Disclosure Statement (Code B320) is 67.20 hours for a total of $30,138.50.



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 22 of 37

10. Bankruptcy Related Advice (B400)

Time in this category included communications with the Committee and the Debtors regarding the Debtors' operation, the bankruptcy proceedings, the Debtors' exit strategy, and Debtors' sale of assets alternatives.

The total time Bankruptcy Related Advise (Code B400) is 5.50 hours for a total of $2,637.50.

11. Researching Laws (C200)/Fact Investigation/Development (L110)/ Analysis / Strategy (L120)/ Expert/Consultants (L130)

The work performed under the categories includes, but is not limited to,

- Review and analysis of the Debtors' schedules, assets, pleadings, and corporate records and advise the Committee of strategy to proceed in the Bankruptcy Case;
- Communication with the Debtors regarding the Debtors' cash management system;
- Analysis of issues regarding the Rule 2004 Examination of the Debtors' principals;
- Evaluating the Debtors' First Sale Motion and advise the Committee of the same;
- Analysis of issues regarding the Consolidation Motion and advising the Committee regarding the same;
- Research and develop strategy regarding the Consolidation Motion, the sale of the Debtors' substantial assets, the Motion to Convert, the Debtors' exit strategy, including preparing a joint Disclosure Statement and Plan with the Debtors;
- Analyze and develop strategy regarding the disposition of substantially all of the Debtors' assets, the Debtors Second Sale Motion, potential auction and bidding procedures;
- Communications with Province regarding Province and/or Kravitz employment as a financial advisor for the Debtors' operation; and
- Communications with the Debtors, UST, and other professionals related to the analysis and strategy in the Bankruptcy Case.

The total time billed to Researching Laws (Code C200) is 0.80 hours for a total of





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 23 of 37

$280.00. The total time billed to Fact Investigation/Development (Code L110) is 0.60 hours for a total of $2,100.00. The total time billed to Analysis/Strategy (Code L210) is 31.40 hours for a total of $12,560.00. The total time billed to Experts/ Consultants (Code L130) is 7.70 hours for a total of $3,481.00.

12. <u>Deposition (L330)/ Discovery Motions (L350)/ Other Discovery (L390)/Fact Witness (L410)</u>

The work performed under these categories includes strategizing and preparing discovery pleadings, including preparation of Rule 2004 Motions, stipulations, discovery requests, notices, orders, and miscellaneous related filings in the Bankruptcy Case. More specifically, after review of the Debtors' schedules, operations, and affairs, the Committee conducted the examinations of *Monica Hushen*, the Debtors' former chief financial officer, *Eduardo De Castro*, the Debtors' co-founder and former CEO, *Simon Barber*, the Debtors' former chief technology officer, and *Tim Wong*, the Debtors' chief marketing officer.

The work performed under these categories further includes, but is not limited to,

- Communicating with the Committee, the Debtors, the principal of the Debtors, various creditors, and professionals to develop strategies for discovery;
- Preparing the Rule 2004 Motions, Stipulations, and orders thereon, and communicating with the deposed parties regarding the foregoing;
- Analyzing dates and deadlines and preparing subpoenas for the deposition of the deposed parties;
- Reviewing, preparing, and analyzing documents obtained from the Deposed parties and documents necessary for deposition of the deposed parties; and
- Conducting the depositions of the deposed parties and analyzing their deposition transcripts.

The total time billed to Deposition (Code L330) is 4.40 hours for a total of $882.00 in fees. The total time billed to Discovery Motions (Code L350) is 5.90 hours for a total of $1,960.00 in fees. The total time billed to Other Discovery (Code L390) is 77.70 hours for a total of $31,901.00 in fees. The total time billed to Fact Witness (Code L410) is 1.60 hours for a total



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 24 of 37

of $824.00 in fees.

13. Written Motions and Submissions (L430)/ Other Written Motions and Submissions (L250)

The work performed under these categories includes, but is not limited to preparing, drafting, reviewing, and/or analyzing miscellaneous pleadings filed in the Bankruptcy Case. The work performed under these category includes, but is not limited to,

- Reviewing and preparing the status report in the Bankruptcy Case;
- Analyzing issues and preparing the Consolidation Motion and the related pleadings;
- Analyzing issues and preparing various 2004 Motions/Stipulations and orders thereon and communicating with the Debtors and the Committee with respect to the same;
- Communicating with the Debtors and the Committee and internal conferences regarding the Consolidation Motion, the 2004 Motions, the Motion to Convert, First Sale Motion, First Sale Opposition, Second Sale Motion and the related pleadings, potential over bidder, bidding and auction procedures;
- Preparing the 2004 Motions, Consolidation Motion, and the Second Sale Motion;
- Preparing the Committee's Opposition to First Sale Motion and Opposition to the Motion to Convert;
- Analyzing issues and drafting Opposition to Debtors' Motion to Retain Cash Management System; and
- Evaluating and responding to various pleadings filed by the Debtors and the UST in the Bankruptcy Case.

The total time billed to Written Motions and Submissions (Code L430) is 35.70 hours for a total of $ 12,980.50 in fees. The total time billed to Other Written Motions and Submissions (Code L250) is 22.50 hours for a total of $ 8,453.50 in fees.

14. Trial and Hearing Attendance (L450)

The work performed under this category includes, but is not limited to, preparation for,



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 25 of 37

travel to and attendance at hearings and status conferences in the Bankruptcy Case.

The total time billed to Trial and Hearing Attendance (Code L450) is 28.30 hours for a total of $14,058.50.

**B. Detailed Listing of Expenses by Category**

A true and correct copy of a listing of all expenses incurred by Baker during the Covered Period is attached to the McDow Declaration as **Exhibit "A,"** and incorporated herein by this reference.[17] These include expenses Baker incurred for photocopying, online research, delivery services and mailing, travel, meals, lodging, court fees, trial transcripts, and services of other professionals such as county recorder clerks.

Baker generally handles regular and routine photocopying in-house for which Baker charges clients $0.10 per page. While Baker believes that this is less than its actual expenses incurred with regard to the supplies and labor associated with providing photocopying services, this charge reflects the photocopying charge required by the UST. Whenever feasible, Baker sends large copying projects to outside copy services that charge bulk rates for photocopying. In such instances, Baker charges clients the same amount that it pays the outside service.

All expenses for outside services such as photocopying services, messenger and express mail services, postage and research services (Lexis and/or Westlaw) for which Baker requests reimbursement are the actual expenses or less than the actual expenses incurred by Baker for such services to comply with the standards set forth by the UST. All expenses that Bake advanced on behalf of the Committee were necessarily incurred and are properly charged as administrative expenses of the Estate. Baker does not seek any additional amounts or profits with respect thereto.

**C. Description of Professional Education and Experience**

Baker is comprised, in part, of attorneys who specialize and practice in (among other areas) bankruptcy law, corporate and securities law, tax law, and business litigation, and is well qualified to represent the Committee as general bankruptcy counsel. A list of all the attorneys and paraprofessionals that rendered service in this case, along with the attorney's billing rate and

[17] The expense report is included at the end of each invoice.



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 26 of 37

the amount of time spent by the attorney during the Covered Period, is detailed in the attached invoice. In sum, the following attorneys and paraprofessionals billed the specified time at the specified rate during the Covered Period:

| **Name** | **Title** | **Rate** | **Hours Billed** |
|---|---|---|---|
| Green, Elizabeth A. | Partner | $ 515.00 | 102.00 |
| Swope, Michael J. | Partner | $ 555.00 | 1.00 |
| Damji, Lisa I | Partner | $ 510.00 | 2.20 |
| Parrish, Jimmy D. | Associate | $ 430.00 | 28.10 |
| Payne, Tiffany D. | Associate | $ 360.00 | 1.80 |
| Delaney, Michael T. | Associate | $ 350.00 | 159.30 |
| Farivar, Fahim | Associate | $ 320.00 | 18.50 |
| Layden, Andrew V. | Associate | $ 280.00 | 60.30 |
| Kepple, Brandon E | Associate | $ 370.00 | 0.80 |
| McDow, Ashley M. | Counsel | $ 500.00 | 227.10 |
| Garner, Harry | Staff Attorney | $ 350.00 | 4.50 |
| Beckmann, Silvia Elena | Paralegal | $ 180.00 | 3.80 |
| Lane, Deanna L | Paralegal | $ 230.00 | 33.40 |

## IV. STANDARD OF LAW

Prior to the enactment of the Bankruptcy Code, the rule with respect to compensation requests in the Ninth Circuit was that the Bankruptcy Court should award attorneys' fees in accordance with a "strict rule of economy test." In re THC Financial Corp., 659 F.2d 951, 955 n.2 (9th Cir.1981), cert. denied, 456 U.S. 977 (1982). This is no longer the law. The legislative history to § 330 of the Bankruptcy Code indicates that Congress was primarily concerned with protecting the public interest in the smooth, efficient operation of the bankruptcy system by encouraging competent bankruptcy specialists to remain in the field. First National Bank of Chicago v. Committee of Creditors Holding Unsecured Claims (In re Powerline Oil Co.), 71 B.R. 767, 770 (Bankr. 9th Cir. 1986); In re Baldwin-United Corp., 79 B.R. 321, 346 (Bankr.S.D.Ohio 1987). To this end, Congress specifically disavowed notions of economy of administration, and provided that compensation in bankruptcy cases should be comparable to what is charged in non-bankruptcy matters. Id. at 346.

Under the lodestar approach, the Court is to determine the number of hours reasonably expended in an attorney's representation of in a debtor's case and multiply such number by a




Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 27 of 37

reasonable hourly rate for the services performed. See Delaware Valley Citizens' Council for Clear Air, 478 U.S. at 565; In re Powerline Oil Co., 71 B.R. at 770. A reasonable hourly rate is presumptively the rate the marketplace pays for the services rendered. Missouri v. Jenkins by Agyei, 491 U.S. 274, 109 S. Ct. 2463, 2469 (1989); Burgess v. Klenske (In re Manoa Finance Co., Inc.) 853 F.2d 687, 691 (9th Cir.1988). Recognizing that the determination of an appropriate "market rate" for the services of a lawyer is inherently difficult, the Supreme Court stated:

> Market prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as its experience, skill, and reputation, varies extensively -- even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate.

Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The Supreme Court has stated that a reasonable attorney's fee "means a fee that would have been deemed reasonable if billed to affluent plaintiffs by its own attorneys." Missouri v. Jenkins by Agyei, 109 S.Ct. at 2470 (quoting City of Riverside v. Rivera, 477 U.S. 561, 591 (1986) (Rehnquist, J. dissenting)); see In re Auto Parts Club, Inc., 224 B.R. 445, 449 (Bankr. S.D. Cal. 1998). Accordingly, a reasonable hourly rate is the hourly amount to which attorneys in the area with comparable skill, experience and reputation typically would be entitled as compensation. Blum v. Stenson, 465 U.S. at 895 n.11.

Professional services rendered by Baker have been itemized by professional, noting each professional's rate, number of hours and total compensation requested. Each duty and task performed by Baker has been performed by the attorney most qualified to render such services at his or her hourly rate in the most efficient manner as required by the circumstances of these cases.

Baker respectfully submits that the hourly rates for its attorneys and paraprofessionals are reasonable and appropriate in the relevant community and in view of the circumstances of this Bankruptcy Case. Baker's hourly rates have been approved in numerous other cases similar to the case at bar. The Committee selected Baker as its bankruptcy counsel because of the Committee's confidence in Baker's ability to successfully deal with the issues arising in this Bankruptcy Case. Baker respectfully submits that based upon the factors considered pursuant to


Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 28 of 37

Bankruptcy Code section 330, the quality of the services provided and the results that have been achieved to date more than justify the allowance of the amounts requested. Baker's fees and expenses are reasonable, and the services of Baker have resulted in significant benefit to the Committee and to the Estate.

## V. CONCLUSION

**WHEREFORE**, Baker respectfully requests that this Court enter an order:

(1) Granting the Application in its entirety;

(2) Finding that the notice of the Application was proper;

(3) Approving, on an interim basis, fees in the amount of **$268,820.50** and expenses in the amount of **$50,859.01**, which totals **$319,679.51** for the Covered Period;

(4) Authorizing payment to Baker of the total amount of **$319,679.51**; and

(5) Granting such further and additional relief as the Court deems just and proper.

Dated: November 28, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Ashley M. McDow*
Ashley M. McDow
Michael T. Delaney
Fahim Farivar

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 29 of 37

## DECLARATION OF ASHLEY M. MCDOW

I, Ashley M. McDow, do hereby declare as follows:

1. I make this declaration in support of the First Interim Application of Baker & Hostetler LLP for Approval of Compensation for the Period of June 25, 2014 through and including November 10, 2014 (the "Covered Period")(the "Application"). I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am counsel at the law firm of Baker & Hostetler LLP ("Baker"), general bankruptcy counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case bankruptcy case (the "Bankruptcy Case") of HashFast Technologies, LLC and Hashfast LLC (substantively consolidated so collectively, "Hashfast" and/or the "Debtors")

3. I am the attorney primarily responsible for the representation of the Committee in the Bankruptcy Case, and am licensed to practice law in all relevant courts in the states of California and Washington.

4. I have personally reviewed the information contained in the Application, and believe its contents to be true and correct to the best of my knowledge, information and belief.

5. I am familiar with the Guidelines of the Office of the United States Committee. I believe that the Application fully complies with these requirements.

6. I believe the firm's rates reflect the market rates, which law firms of similar size and status charge clients for such services.

7. The amounts requested in the Application are based upon and supported by the business records the Firm keeps in the ordinary course of business.

8. As the supervising attorney in this Bankruptcy Case, I carefully reviewed each Firm's monthly bill and carefully evaluated each and every billing entry. I made downwards adjustments to the Firm's bills as I believed was appropriate in the exercise of my billing judgment.

9. The Application requests a total of $268,820.50 and expenses in the amount of

$50,859.01, which totals $319,679.51 due for the Covered Period.

10. Baker generally handles regular and routine photocopying in-house for which Baker charges clients $0.10 per page. While Baker believes that this is less than its actual expenses incurred with regard to the supplies and labor associated with providing photocopying services, this charge reflects the photocopying charge required by the UST. Whenever feasible, Baker sends large copying projects to outside copy services that charge bulk rates for photocopying. In such instances, Baker charges clients the same amount that it pays the outside service.

11. All expenses for outside services such as photocopying services, messenger and express mail services, postage and research services (Lexis and/or Westlaw) for which Baker requests reimbursement are the actual expenses or less than the actual expenses incurred by Baker for such services, and Baker does not seek any additional amounts or profits with respect thereto.

12. All expenses that Baker advanced on behalf of the Committee were necessary and are properly charged as administrative expenses of the estate.

13. Baker is comprised, in part, of attorneys who specialize and practice in (among other areas) bankruptcy law, corporate and securities law, tax law, and business litigation, and is well qualified to represent the Committee as bankruptcy counsel. A list of all the attorneys and paraprofessionals that rendered service in this case, along with the attorney's billing rate and the amount of time spent by the attorney during the Covered Period, is detailed in the attached invoice. In sum, the following attorneys and paraprofessionals billed the specified time at the specified rate during the Covered Period:





Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 31 of 37

| Name | Title | Rate | Hours Billed |
|---|---|---|---|
| Green, Elizabeth A. | Partner | $ 515.00 | 102.00 |
| Swope, Michael J. | Partner | $ 555.00 | 1.00 |
| Damji, Lisa I | Partner | $ 510.00 | 2.20 |
| Parrish, Jimmy D. | Associate | $ 430.00 | 28.10 |
| Payne, Tiffany D. | Associate | $ 360.00 | 1.80 |
| Delaney, Michael T. | Associate | $ 350.00 | 159.30 |
| Farivar, Fahim | Associate | $ 320.00 | 18.50 |
| Layden, Andrew V. | Associate | $ 280.00 | 60.30 |
| Kepple, Brandon E | Associate | $ 370.00 | 0.80 |
| McDow, Ashley M. | Counsel | $ 500.00 | 227.10 |
| Garner, Harry | Staff Attorney | $ 350.00 | 4.50 |
| Beckmann, Silvia Elena | Paralegal | $ 180.00 | 3.80 |
| Lane, Deanna L | Paralegal | $ 230.00 | 33.40 |

14. A true and correct copy of the invoice for the Covered Period detailing the time expended by, and the billing rates of, the particular professionals and paraprofessionals performing services, as well as the total fees for services performed in this case during the Covered Period, are attached hereto as **Exhibit "A,"** and incorporated herein by reference.[18] These include expenses Baker incurred for photocopying, online research, delivery services, mailing, travel, meals, lodging, court fees, trial transcripts, and services of other professionals such as county recorder clerks.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of November 2014, at Westlake Village, California.

______________________________
Ashley M. McDow

[18] The expense report is included at the end of each invoice.



Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 32 of 37

| Name | Title | Rate | Hours Billed |
|---|---|---|---|
| Green, Elizabeth A. | Partner | $ 515.00 | 102.00 |
| Swope, Michael J. | Partner | $ 555.00 | 1.00 |
| Damji, Lisa I | Partner | $ 510.00 | 2.20 |
| Parrish, Jimmy D. | Associate | $ 430.00 | 28.10 |
| Payne, Tiffany D. | Associate | $ 360.00 | 1.80 |
| Delaney, Michael T. | Associate | $ 350.00 | 159.30 |
| Farivar, Fahim | Associate | $ 320.00 | 18.50 |
| Layden, Andrew V. | Associate | $ 280.00 | 60.30 |
| Kepple, Brandon E | Associate | $ 370.00 | 0.80 |
| McDow, Ashley M. | Counsel | $ 500.00 | 227.10 |
| Garner, Harry | Staff Attorney | $ 350.00 | 4.50 |
| Beckmann, Silvia Elena | Paralegal | $ 180.00 | 3.80 |
| Lane, Deanna L | Paralegal | $ 230.00 | 33.40 |

14. A true and correct copy of the invoice for the Covered Period detailing the time expended by, and the billing rates of, the particular professionals and paraprofessionals performing services, as well as the total fees for services performed in this case during the Covered Period, are attached hereto as **Exhibit "A,"** and incorporated herein by reference.[18] These include expenses Baker incurred for photocopying, online research, delivery services, mailing, travel, meals, lodging, court fees, trial transcripts, and services of other professionals such as county recorder clerks.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of November 2014, at Westlake Village, California.

Ashley M. McDow

[18] The expense report is included at the end of each invoice.







BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725 Doc# 237 Filed: 11/28/14 Entered: 11/28/14 14:42:11 Page 33 of 37

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509

A true and correct copy of the foregoing document entitled (*specify*): **FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BAKER & HUSTETLER LLP FOR THE PERIOD OF JUNE 25, 2014 THROUGH AND INCLUDING NOVEMBER 10, 2014** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 28, 2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL OR EMAIL** (state method for each person or entity served): On (*date*) **November 28, 2014**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, addressed and/or by email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

***Via Regular U.S. Mail***
Hon. Dennis Montali
U.S. Bankruptcy Court Northern
Division of California
P.O. Box 7341
San Francisco, CA 94120-7341

☒Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, OR FACSIMILE TRANSMISSION** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), and/or by facsimile transmission as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 28, 2014 | Fahim Farivar | */s/ Fahim Farivar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Venkat Balasubramani venkat@focallaw.com, pete.morici@alumni.purdue.edu
Greg P. Campbell ecfcanb@piteduncan.com, gc@ecf.inforuptcy.com
Patrick Chesney pchesney@gallo-law.com, mvananda@gallo-law.com
Michael Delaney mdelaney@bakerlaw.com, SGaeta@bakerlaw.com
Caroline R. Djang cdjang@rutan.com
W. Keith Fendrick keith.fendrick@hklaw.com, Andrea.Olson@hklaw.com
Julie M. Glosson julie.m.glosson@usdoj.gov
Elizabeth A. Green egreen@bakerlaw.com, jdriggers@bakerlaw.com
Robert G. Harris rob@bindermalter.com
Ori Katz okatz@sheppardmullin.com
Ashley McDow amcdow@bakerlaw.com, SGaeta@bakerlaw.com
Jessica M. Mickelsen jessica.mickelsen@kattenlaw.com
Office of the U.S. Trustee / SF USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
Kristen A. Palumbo kristen.palumbo@bingham.com
Craig Stuppi craig@stuppilaw.com
Sarah M. Stuppi sarah@stuppilaw.com
Christopher D. Sullivan csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com
Nancy Weng nweng@trinhlawfirm.com, kim@trinhlawfirm.com

**2. SERVED BY UNITED STATES MAIL OR EMAIL** (state method for each person or entity served):

| **Recipient Name** | **Email** |
|---|---|
| Graham Adams | gadams@takelap.com |
| Servaas Tilkin | servaas.tilkin@gmail.com |
| Ray E. Gallo | rgallo@gallo-law.com |
| Process General c/o Victor Delaglio | NEF@Processgeneral.com |
| William R. Gougér | bill.gouger@summitcapitalll c.com |
| Craig Beech | craigbeech@gmail.com |
| Michael Gao | Urazexo378@gmail.com |
| Scott Gray | elphenom@yahoo.com |
| Wy Gost | wygost@yahoo.com |

Eric W. Benisek, on behalf of
Interested Party
Timefire, Inc.
Vasquez Benisek & Lindgren LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549

Eric W. Benisek, on behalf of
Interested Party
Satish Ambarti
Vasquez Benisek & Lindgren LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549

David M. Balabanian on behalf of Creditor
Liquidbits Corp.
Law Offices of Bingham McCutchen
Three Embarcadero Center
San Francisco, CA 94111-4067

Elizabeth A. Green on behalf of Creditor
Committee Official Committee Of Unsecured Creditors

Process General
5915 Edmond St., Suite 102
Las Vegas, NV 89118-2860

Baker & Hostetler LLP
200 S. Orange Ave. #2300
Orlando, FL 32801

Petitioning Creditor:
Timothy Lam
6156 Temple City Blvd.
Temple City, CA 91780

Petitioning Creditor:
Edward Hammond
3103 Powell Circle
Austin, TX 78704-6343

Petitioning Creditor:
Grant Pederson
12538 Botanical Lane
Frisco, TX 75035-0433

Chief Tax Collection Section
Employment Development Section
P.O. Box 826203
Sacramento, CA 94230

California Employment
Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280

California Franchise Tax Board
Special Procedures Bankruptcy
Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Edwin E. Smith
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

Robert G. Harris
Binder & Malter LLP
2775 Park Avenue
Santa Clara, CA 95050

AQS
401 Kato Terrace
Fremont, CA 94539

100 Bush Corporation
100 Bush Street, Suite 218
San Francisco, CA 94104

San Francisco Court Appointed
Special
Advocates
2535 Mission Street
San Francisco, CA 94110

**LIST OF 20 LARGEST UNSECURED CREDITORS**

Mark Roy
21745 Duck Creek Square
Ashburn, VA 20148

Liquidbits Corporation
20201 E. Country Club Drive,
#1502
Aventura, FL 33180

Davide Cavion
c/o Bryan Reyhani
Reyhani Nemirovsky LLP
200 Park Avenue, 17th Floor
New York, NY 10166-0004

DXCorr Design Inc.
121 West Washington Ave.
Suite 212
Sunnyvale, CA 94086

Elton Seah
761 Irwindale Avenue
Las Vegas, NV 89123

Sandgate Technologies
595 Fellowship Road
Chester Springs, PA 19425

Sonic Manufacturing
Technologies
P.O. Box 225
Santa Clara, CA 95052-0225

Strategic Counsel Corp.
227 Broadway, Suite 306
Santa Monica, CA 90401

World Electronics
3000 Kutztown Road
Reading, PA 19605

Ciara Technologies
9300 Transcanada Highway

Graeme Middleton
Middleton Solicitors

Anthony Vo
c/o Bryan Reyhani

Saint-Laurent, Quebec H451K5
Canada

135-137 Dale Street
Liverpool L2 2JH UK

Reyhani Nemirovsky LLP
200 Park Avenue, 17th floor
New York, NY 10166

Benjamin Lindner
9035 Grayland Drive, Apt. E
Knoxville, TN 37923

Future Electronics Corp.
3255 Paysphere Circle
Chicago, IL 60674

Guido Ochoa
Calle 35
Merida, Venezuela 5101

Koi Systems Ltd.
1191 Center Point Drive, Suite A
Attn: Brian Edgeworth
Henderson, NV 89074

Perkins Coie
131 S. Dearborn St., #1700
Chicago, IL 60603

Uniquify, Inc.
2030 Fortune Drive, #200
San Jose, CA 95131

Zuber Lawler & Del Duca LLP
777 S. Figueroa St., 37th Fl.
Los Angeles, CA 90017

Cypher Enterprises, LLC
Attn: Robert Bogdanowicz III
Deans & Lyons LLP
325 N. Saint Paul Street, Suite 1500
Dallas, TX 75201

**MEMBERS OF THE UNSECURED CREDITORS COMMITTEE**

Hamilton Hee
761 Irwindale Ave.
Las Vegas, NV 89123

Sistemas Operativos Sanitarios ca
Attn: Guido Ochoa
Calle 35 entre Av. 2 y 3 #2-34
Merida, Venezuela 5101

Uniquify Inc.
Attn: Robert Smith
2030 Fortune Drive #200
San Jose, CA 95131

Antony Vo
319 S. Mitchell St.
Bloomington, IN 47401

Koi Systems Ltd.
Attn: Brian Edgeworth
1191 Center Point Drive, Suite A
Henderson, NV 89074

Digimex Ltd.
Attn: Willem van Rooyen
Bel Air on the Peak, Phase 4
Tower 7, Unite 19A
Pok Fu Lam, Hong Kong

Peter Morici
1430 Patapsco St.
Baltimore, MD 21230