KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor-In-Possession | Case No. 14-30866 |
| | Chapter 11 |
| ☒ Affects HASHFAST LLC, a Delaware limited liability company, | Hearing:<br>Date: October 31, 2014<br>Time: 9:30 a.m. |
| Debtor and Debtor-In-Possession | Ctrm: Hon. Dennis Montali<br>235 Pine Street, Courtroom 22<br>San Francisco, CA 94104 |
| | **DECLARATION OF VICTOR DELAGLIO IN FURTHER SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FED. R. BANKR. P. 2002, 6004, 6006, 9014 AND 9019 FOR ENTRY OF ORDER (I) AUTHORIZING THE JOINTLY CONDUCTED AUCTION OF ESTATE PROPERTY BY THE DEBTORS AND THE COMMITTEE, AND (II) AUTHORIZING THE SALE OF ESTATE** |

1

) **PROPERTY FREE AND CLEAR OF**
) **LIENS, ENCUMBRANCES AND**
) **INTERESTS, WITH ANY DISPUTED**
) **LIENS, ENCUMBRANCES, AND**
) **INTERESTS TO ATTACH TO SALE**
) **PROCEEDS PENDING FURTHER**
) **ORDER OF THE COURT**

I, Victor Delaglio, hereby declare under penalty of perjury,

1. I am a Director at Province, Inc., and I am assisting the Chief Restructuring Officer ("CRO") of HashFast Technologies LLC ("HashFast Technologies") and HashFast LLC ("HashFast" and, together with HashFast Technologies, the "Debtors").

2. This Declaration is submitted in connection with the Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Order (i) Authorizing the Jointly Conducted Auction of Estate Property by the Debtors and the Committee, and (ii) Authorizing the Sale of Estate Property Free and Clear of Liens, Encumbrances, and Interests, with Any Disputed Liens, Encumbrances, and Interests to Attach to Sale Proceeds Pending Further Order of the Court (the "Motion"). I make this declaration based on my own personal knowledge of the facts. If called upon, I would testify as set forth herein.

3. On behalf of the Debtors, I spearheaded the marketing effort to sell the Debtors' assets at auction (the "Auction"). That marketing effort included positing the auction notice and bid procedures, as well as other marketing posts, on the forum at www.bitcointalk.org. I sent email blasts providing notice of the Auction and describing the assets for sale to approximately 1500 people. The recipients of the email blast included approximately 1250 previous customers of the Debtors, approximately 200 potentially interested persons identified through the bitcoin forums and our internal lead generation, and about 50 other prospects that I generated during my time with the Debtors. In addition, I spent hours on the phone with prospective bidders discussing both the assets for sale and the bidding procedures and requirements.

Case: 14-30725    Doc# 242-1    Filed: 12/04/14    Entered: 12/04/14 16:23:04    Page 2 of 4

4. During the marketing campaign, the Debtors received an offer to purchase, in the ordinary course, a substantial amount of the Debtors' inventory from Guido Ochoa. Mr. Ochoa has been a consistent buyer of the Debtors' assets since the commencement of these bankruptcy cases. He is also a member of the Official Committee of Unsecured Creditors. Mr. Ochoa's offer was to buy all of the Debtors' inventory, other than their ASIC chip inventory, for a price of $420,000. That offer was accompanied by a commitment from Mr. Ochoa to permit the Debtors to buy data mining boards that Mr. Ochoa will be building with the Debtors' assets, and which will be compatible the Debtors' chip inventory, at a price equal to Mr. Ochoa's cost. That commitment is valuable to the Debtors because it enables to them to sell fully integrated and tested boards using the Debtors' chip inventory at a price that both is competitive in the marketplace and generates significant margin to the Debtors. In addition, Mr. Ochoa's offer was accompanied by a further commitment from Mr. Ochoa to permit the Debtors to purchase, again at no markup, a future, fully-integrated mining board that is scheduled to be developed early next year. While that future board will not use any of the Debtors' inventory, the Debtors' ability to buy the board at cost and then reselling to the public at a margin provides real value to the Debtors and their creditors.

5. As the marketing of the Auction progress, the Debtors did not receive any offers for their Assets that exceeded the order from Mr. Ochoa. Indeed, with one exception, in my judgment, every bid the Debtors received was facially too low to even consider. Accordingly, the Debtors have accepted Mr. Ochoa's offer and have commenced fulfilling it. As of the date hereof, the Debtors have received half of Mr. Ochoa's purchase money, which is approximately $210,000.

6. The only acceptable offer the Debtors received in connection with the Motion and Auction process was from Simon Barber. Mr. Barber submitted a bid for any and all causes of action the Debtors' estate have against him (the "Barber Claims"). Mr. Barber's bid is comprised

3

of three components: (a) cash of $20,000, payable $10,000 upon entry of an order approving his bid, and $500/month for 20 months, (b) contribution of up to 60 hours of consulting services, and (c) waiver of all potential claims against the estate, which could be exceed $20,000. In addition, Mr. Barber would be discharged as an employee of the Debtors, though that discharge would not affect his obligation to provide the 60 hours of consulting services described above.

7. The Debtors solicited overbids for the Barber Claims, but none were received.

8. Accordingly, the Debtors have determined in their business judgment, and after consultation with the Committee, that Mr. Barber's bid constitutes the highest and best value for the Barber Claims.

9. In addition, after extensive discussion and collaboration with the Committee, the Debtors believe that rejecting every other bid the Debtors received for their Assets is the most prudent and value maximizing choice. Consummating the sales to Mr. Ochoa provides the highest and best opportunity to maximize value of the Debtors' remaining assets.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: December 4, 2014

Victor Delaglio