Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
           mdelaney@bakerlaw.com
           ffarivar@bakerlaw.com

Attorneys for OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Lead Case No.: 14-30725 DM |
| HASHFAST TECHNOLOGIES, LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with Cases No. 14-30866 |
| Debtor and Debtor in Possession. | Chapter 11 |
| x  Affects HASHFAST LLC, a Delaware limited liability company, Debtor and Debtor in Possession. | Hearing Date: Date:        January 23, 2015 Time:        1:30 p.m. Dept.:        Courtroom 22               235 Pine St., 19th Fl.               San Francisco, CA 94104 Judge:      Hon. Dennis Montali |

**AMENDED FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BAKER & HOSTETLER LLP FOR THE PERIOD OF JUNE 25, 2014 THROUGH AND INCLUDING NOVEMBER 10, 2014**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................... 5

   A. Prior Fee Applications ................................................................. 6

   B. Request for Allowance of Fees and Reimbursement of Expenses ......................... 6

   C. Proper Notice ............................................................................ 7

II. FACTUAL BACKGROUND ...................................................................... 7

   A. The Bankruptcy Case .................................................................. 7

   B. Company History, Ownership and Operation .................................. 11

      1. Intellectual Property ........................................................... 11

      2. Product Roll-out ............................................................... 12

   C. Significant Events during the Bankruptcy Case ............................. 13

      1. Employment of Professionals .............................................. 13

      2. Other Significant Matters ................................................... 14

   D. Debtors' Current Operation ......................................................... 14

   E. Status of Plan and Disclosure Statement ....................................... 15

III. DETAILED LISTING OF ALL TIME SPENT BY BAKER FOR WHICH COMPENSATION IS SOUGHT AND THE HOURLY RATES OF PROFESSIONALS ............................................................................. 15

   A. Source and Amount of Cash Available to Pay Baker's Allowed Fees and Expenses ................................................................................ 16

   B. Narrative Regarding Services Rendered in Benefit to the Estate ......... 16

      1. Administration (B100)/Case Administration (B110) .............. 17

      2. Asset Analysis and Recovery (B120) .................................... 18

      3. Asset Disposition (B130) .................................................... 18

      4. Meeting and Communication with Creditors (B150) .............. 19

      5. Fee-Employment Application (B160) ................................... 20

      6. Avoidance Action Analysis (B180)/ ..................................... 21

      7. Assumption – Rejection of Leases and Contracts (B185)/ Operation (B200)/ Business Operation (B210)/ Real Estate (B250) ...................... 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

8.     Claims and Plan (B300)/Claims Administration and Objections (B310) . 21

9.     Plan and Disclosure Statement (B320) ...................................... 22

10.    Bankruptcy Related Advice (B400) ............................................ 23

12.    Settlement/Nonbinding Adr (L160) ............................................ 24

14.    Pleadings (L210)/ Dispositive Motions (L240)/Written Motions and Submissions (L430)/ Other Written Motions and Submissions (L250) ... 26

15.    Trial and Hearing Attendance (L450)/ Court Mandated Conference (L230) .......................................................................................... 27

C.    Detailed Listing of Expenses by Category ............................................. 27

D.    Baker Faced Novel and Difficult Legal Questions Throughout the Covered Period. ..................................................................................................... 28

E.    Description of Professional Education and Experience ........................ 28

IV.    COMPLIANCE WITH GUIDELINES ................................................... 28

V.    STANDARD OF LAW ............................................................................. 29

VI.    CONCLUSION ......................................................................................... 31

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

In re Auto Parts Club, Inc.,
224 B.R. 445 (Bankr. S.D. Cal. 1998) ........................................................................... 28

In re Baldwin-United Corp.,
79 B.R. 321 (Bankr.S.D.Ohio 1987) ............................................................................. 28

Blum v. Stenson,
465 U.S. 886 (1984) ....................................................................................................... 28

Burgess v. Klenske (In re Manoa Finance Co., Inc.)
853 F.2d 687 (9th Cir.1988) .......................................................................................... 28

City of Riverside v. Rivera,
477 U.S. 561 (1986) (Rehnquist, J. dissenting) ............................................................. 28

First National Bank of Chicago v. Committee of Creditors Holding Unsecured Claims (In
re Powerline Oil Co.),
71 B.R. 767 (Bankr. 9th Cir. 1986) ...................................................................... 4, 7, 28

Missouri v. Jenkins by Agyei,
491 U.S. 274, 109 S. Ct. 2463 (1989) ........................................................................... 28

In re THC Financial Corp.,
659 F.2d 951 (9th Cir.1981), cert. denied, 456 U.S. 977 (1982) ................................... 27

STATUTES

11 U.S.C. § 101 ................................................................................................... 7, 9, 28

11 U.S.C. § 105(a) .................................................................................................. 8, 10

11 U.S.C. § 330 ..................................................................................................... 29, 30

11 U.S.C. § 363 ...................................................................................................... 8, 10

11 U.S.C. § 365 ............................................................................................................. 8

11 U.S.C. § 1107 ........................................................................................................... 7

11 U.S.C. § 1108 ........................................................................................................... 7

RULES

Federal Rules of Bankruptcy Procedure 1015(b) .......................................................... 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

605643952.2

Federal Rules of Bankruptcy Procedure 2004 .................................................................. *passim*

Federal Rules of Bankruptcy Procedure 6004 .................................................................. 8, 10

Federal Rules of Bankruptcy Procedure 6006 .................................................................. 8, 10

Federal Rules of Bankruptcy Procedure 9014 .................................................................. 8, 10

Federal Rules of Bankruptcy Procedure 9014-1 ................................................................ 6

Federal Rules of Bankruptcy Procedure 9019 .................................................................. 8, 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

605643952.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

Baker & Hostetler LLP ("Baker" or the "Firm"), general bankruptcy counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of HashFast Technologies, LLC and Hashfast LLC (substantively consolidated so collectively, "Hashfast" and/or the "Debtors"), hereby submits its Amended First Interim Application for Approval of Compensation and Reimbursement of Expenses (the "Application") for services rendered and expenses incurred during the pendency of this case, from June 25, 2014 through and including November 10, 2014 (the "Covered Period"). In support thereof, the Firm respectfully submits as follows:

## I.      INTRODUCTION

Since its appointment as the general bankruptcy counsel for the Committee on June 25, 2013, the Firm has worked diligently – both independently and with the Debtors – to identify a feasible exit strategy for the Debtors, which will maximize the return to the general unsecured creditors. In furtherance of this goal, the Firm successfully opposed the proposed sale of substantially all of the assets of the Debtors (which likely would have provided absolutely nothing to the general unsecured creditors despite stripping the Debtors of every asset of any value). The Firm also obtained substantive consolidation of the Debtors' bankruptcy cases (in order to prevent valuable intellectual property from being taken away from the creditors of the main case), successfully opposed the efforts of the office of the United States Trustee (the "OST") to convert the Bankruptcy Case and/or to appoint a trustee, ensured the replacement of the Debtors' management with responsible fiduciaries who have since worked diligently to maximize the value of what was left of the Debtors, and conducted extensive discovery of the Debtors' key principals and employees in order to try to identify additional sources of recovery for the Estate.

By way of background, at the outset of the Bankruptcy Cases, the Debtors were controlled by pre-petition management. While investigating the assets of the Estates, the Committee

- 5 -

605643952.2

discovered that the Debtors were engaged in questionable activities pre-petition, including accepting orders for products still in development and/or production and authorizing raises to executive level management and other key employees despite an inability to satisfy their obligations as they came due. After the commencement of the Bankruptcy Cases, the Debtors' "new" management also attempted to liquidate substantially all of the Debtors' assets on an expedited basis via a sale to Liquidbits, Inc. ("LB") (the "Liquidbits Sale"). As explained further below, presumably due in large part to the Committee's efforts, the Court rejected the Liquidbits Sale proposal. However, since then the Debtors and the Committee have worked diligently and collaboratively on bringing about a consensual resolution to this case.

To date, the Committee's efforts have largely involved assisting in the stabilization of the Debtors' business, addressing issues related to the procedural posture of the Debtors in the Bankruptcy Case, conducting discovery and fact investigation, assisting in the maintenance of effective operations, assisting in the generation of revenue for the benefit of the Estate by and through the sale of inventory and the Estate assets, and formulating a plan of reorganization that will maximize distribution to all creditors who hold allowed claims.

This is the Firm's first interim fee application for compensation of fees and reimbursement of expenses in the Bankruptcy Case. Baker respectfully requests that the Court direct the Debtors to pay Baker all allowed, unpaid fees and expenses incurred during the Covered Period, as such funds become available.

### A.      Prior Fee Applications

This is the Firm's first interim fee application.   The Firm has had no other prior fee applications.

### B.      Request for Allowance of Fees and Reimbursement of Expenses

The Firm hereby seeks approval of the fees in the amount of $267,349.50 and expenses in the amount of $47,262.24, which total $314,611.74 due for the Covered Period.

Baker has not received a retainer on this matter.   Pursuant to Local Bankruptcy Rule 9014-1, by this Application, Baker requests that this Court approve the foregoing fees and costs in the aggregate amount of $314,611.74 and authorize the Debtor to pay Baker said amounts as such

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

funds become available.

Baker expended a total of 638.70 hours of recorded time for services rendered during the Covered Period, at a blended rate of approximately $380.77 per hour. The Firm respectfully submits that its fees incurred in this case are reasonable, and accordingly, should be approved.

### C. Proper Notice

The Firm has served or shall timely serve a notice of this Application, on the Court, all creditors, the OST and all parties in interest in this Bankruptcy Case. The Firm will also timely provide a copy of the Application on the Committee in accordance with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court for the Northern District of California (the "Guidelines").

## II.   FACTUAL BACKGROUND

### A.   The Bankruptcy Case

1.      On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson (collectively, the "Petitioning Creditors") commenced an involuntary bankruptcy under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against HashFast Technologies, LLC ("HFT").

2.      On June 3, 2014, HFT filed the *Debtors' Conditional Consent to an Order for Relief Regarding Involuntary Petition* and *Debtors' Motion to Convert to Chapter 11*.[1] On June 4, 2014, the Court entered an order converting the Bankruptcy Case to one under chapter 11 of the Bankruptcy Code.[2] Thereafter, HFT has acted as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      On June 6, 2014, HashFast, LLC ("HF," and collectively with HFT, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.[3]

4.      On or about June 6, 2014, HFT filed the *Debtors' Motion for an Order Pursuant*

[1] D.E. 35 and 36.
[2] All references herein to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq.*
[3] As further explained below, HFT is the wholly-owned subsidiary of HF. HFT was engaged in the business of manufacturing and selling special purpose computers and computer chips designed for the processing of Bitcoin transactional information or "Bitcoin mining." HF owns all intellectual property rights utilized by HFT in the course of its business.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

*to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing the Joint Administration of Their Chapter 11 Cases*, seeking to administratively consolidate the HFT Bankruptcy and HF Bankruptcy. *See* HFT D.E. 48. On or about July 8, 2014, the Court entered an order in the HFT Bankruptcy consolidating the Bankruptcy Cases and naming the HFT Bankruptcy the lead bankruptcy case. *See* HFT D.E. 121.

5. On or about June 23, 2014, the Office of the OSUT appointed the following creditors of HFT to serve on the Committee: Hamilton Hee, Sistemas Operativos Sanitarios Ca, Uniquify, Inc., Antony Vo, Koi Systems Ltd., Digimex Ltd., and Peter Morici.

6. On June 25, 2014, the members of the Committee selected Baker to act as general bankruptcy counsel for the Committee, subject to Court approval. On July 3, 2014, the Committee filed its *Application to Employ Baker & Hostetler LLP as Bankruptcy Counsel* ["Employment Application", D.E. 114]. On July 24, 2014, the Court entered the order granting the Application [D.E. 153].

7. On July 8, 2014, this Court granted the Debtors' motion to jointly administer the Debtors' bankruptcy cases.[4]

8. On July 10, 2014, the Debtors applied to the Court to appoint Monica Hushen, the Debtors' Chief Financial Officer, as the designated individual with primary responsibility for the duties and obligations of the Debtors. (D.E. 122)

9. On July 11, 2014, the Court entered an Order Appointing Monica Hushen as Debtors' Responsible Individual (D.E. 124).

10. On July 18, 2014, the Debtors filed the first sale motion entitled *Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief* (the "First Sale

---

[4] D.E. 121.

Case: 14-30725    Doc# 265    Filed: 12/31/14    Entered: 12/31/14 17:18:47    Page 9 of 38

Motion").[5]

11.     By and through the First Sale Motion, the Debtors sought to, among other things, sell most of HFT's inventory, assign to their business partner Liquidbits, Corp. ("LB") certain unspecified irrevocable and transferrable license(s) to LB, and grant LB a 33% interest in any recovery from any future avoidance actions or actions against insiders for damages.  In addition, the First Sale Motion provided that LB could return any and all assets to the Debtors if it later determined that it was no longer economical for it to retain them.  In other words, if LB and the Debtors' principals (the LB's employees) decide not to mine any more, say, in 18 months, LB could have simply surrendered the assets, which, if such assets really depreciates at a rate of 15% every 10-15 days, would have been worth less than 0.1% of its then value, discharged its liability and obligation to pay any portion of the "preferred" equity and keep the perpetual licenses for the intellectual property and its 33% interest in avoidance actions.

12.     On or about July 24, 2014, the Committee filed the *Opposition of the Official committee of Unsecured Creditors to the Debtors' Motion for Entry of Orders (1) Authorizing the Sale of Estate Property, (2) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (3) Authorizing the (a) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (b) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief* (the "First Sale Opposition").[6]

13.     On or about July 26, 2014, the Court issued a tentative ruling denying the First Sale Motion.[7]  Although the Court treated the initial hearing as a status conference on the First Sale Motion, no further action was taken to seek Court approval of the proposed sale to LB.

14.     On or about July 23, 2014, the Committee filed the *Official Committee of Unsecured Creditors' Motion for Substantive Consolidation*, seeking to substantively consolidate the Bankruptcy Cases and their estates (collectively, the "Estates")[8] into a single estate (the

---

[5] D.E. 134.

[6] D.E. 156.

[7] Although entered on the docket in Case No. 14-30725, the tentative ruling was not assigned a docket entry number.

[8] The HFT Bankruptcy estate may be referred to herein as the "HFT Estate". The HF Bankruptcy estate may be referred to herein as the "HF Estate".

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

605643952.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"Consolidation Motion").  *See* HFT Doc. 148.  The Committee also filed an application to have the Consolidation Motion heard on shortened time—specifically, on June 28, 2014, at 2:00 p.m. (the "Consolidation Motion OST Application")  *See* HFT Doc. 149.

15.     On or about August 8, 2014, the OST filed its motion to appoint a chapter 11 trustee or convert the Debtors' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code (the "Motion to Convert").[9]

16.     On August 27, 2014, the Committee filed an opposition to the Motion to Convert. D.E. 189.

17.     On September 10, 2014, the Consolidation Motion and Motion to Convert came before the Court for hearing.  After considering the pleadings and the arguments presented, the Court denied the Motion to Convert[10] and granted the Consolidation Motion.[11]

18.     Following the denial of the First Sale Motion, the Committee and the Debtors commenced joint efforts to formulate a globally beneficial exit strategy for the Debtors.  Due to the resignation of several top officers and employees within the Debtors and the retention of certain estate assets off-shore by a Korean hardware manufacturer, the Debtors determined that the controlled liquidation of Debtors' assets served the best interests of the bankruptcy estates and creditors.

19.     After negotiation and collaboration with the Committee, on or about October 23, 2014, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Order (1) Authorizing the Jointly Conducted Auction of Estate Property by the Debtors and the Committee, and (2) Authorizing the Sale of Estate Property Free and Clear of Liens, Encumbrances and Interests, with any Disputed Liens, Encumbrances, and Interests to Attach to the Sale Proceeds Pending Further Order of the Court* (the "Second Sale Motion").[12]

20.     On or about October 24, 2014, the Court held a hearing on the Second Sale Motion

---

[9] D.E. 168.
[10] D.E. 200.
[11] D.E. 202.
[12] D.E. 216.

605643952.2

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

Case: 14-30725     Doc# 265     Filed: 12/31/14     Entered: 12/31/14 17:16:47     Page 11 of 38

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  during which it requested additional information relating to the proposed auction and bidding

2  procedures relating thereto.  The Court set the Second Sale Motion for hearing and instructed the

3  Debtors to file a proposed notice for the auction sale that set forth the proposed auction procedure

4  and expressly identified which items of estate property would be subject to the auction.

5          **B.**    **Company History, Ownership and Operation**

6       21.    The Debtors were engaged in a single enterprise for the design, manufacture and

7  sale of computer chips and systems utilized in Bitcoin mining.  HF is the parent company of HFT

8  and owner of 100% of the membership interest in HFT.  *See* HFT Doc. 44.  In turn, HF is owned

9  by several individuals and entities in varying percentages, including, but not limited to, Eduardo

10  de Castro (26.94%), Simon Barber (26.94%), Chad Spackman (11.97%), the Port Family Trust

11  (11.97%), and the Wells Family Trust (11.97%).[13]  *See* HF Doc. 5.  In addition to being owners of

12  HF, Eduardo de Castro and Simon Barber are executive or former executives of HFT—former

13  CEO and CTO, respectively.

14       22.    HF does not engage in any business independent of HFT.  HF has no meaningful

15  business operations, no employees,[14] the same officers as HFT,[15] and the same principal place of

16  business as HFT.  *See* HF Doc. 1, p. 1; Ex. B, 7:24-8:11.  HF exists solely for the purpose of

17  purportedly owning and developing certain intellectual property – identified on HF's schedules as

18  two United States provisional patent applications and various "trade secrets, mask works related

19  to chip design" (collectively, the "Intellectual Property") – solely for the benefit of HFT.

20          1.    Intellectual Property

21       23.    The Intellectual Property purportedly held by HF is primarily related to the Golden

22  Nonce chip.  In or about June 2013, the Debtors began designing their first generation Golden

23  Nonce ("GN1"), with the assistance of Sandgate and Uniquify, Inc. ("Uniquify").  HF claims to

24  be the exclusive owner of the intellectual property relating to the GN1 (the "GN1 IP").  HF

25  further claims to license (or have licensed) this intellectual property to HFT, although the Debtors

---

[13] Based on the testimony provided by HFT's CFO during the continued Meeting of Creditors held on July 15, 2014, it appears that the ownership interests of HF have been redistributed as Monica Hushen now holds a 3% interest and Tim Wong now holds a 1% interest in HF.

[14] *See* Ex. B, 53:20-23.

[15] *See* HF Doc. 17, p. 7; HFT Doc. 92, at p. 10.

- 11 -

605643952.2

have yet to produce any licensing agreement memorializing this agreement.

24. Following the development of the GN1, the Debtors worked with DXCorr Design ("DXC") to design and develop subsequent generations of the GN1—generations 1.5 ("GN1.5") and 2.0 ("GN2"). The ownership of the intellectual property related to the GN1.5 (the "GN1.5 IP") is uncertain. The Debtors contend that they own the GN1.5 IP while simultaneously stating that the Debtors (or HF) received a license to use the GN1.5 IP from DXC. These contentions are mutually exclusive unless the GN1.5 IP involves multiple rights or the GN1.5 is a derivative work and, although DXC owns the GN1.5 IP, the Debtors have blocking rights due to the GN1 IP. The ambiguity is in part due to the fact that the contract between DXC and HF or HFT (another point that is uncertain) appears to have never been executed.

25. The ownership of the GN2 intellectual property (the "GN2 IP") is not plagued by the same ambiguities as the GN1.5 IP. Indeed, as the Debtors' representative testified, the GN2 IP is owned by DXC.

26. Notwithstanding the question of ownership, the Debtors contend that HF or HFT (another uncertainty) holds a valid license or licenses to use the GN1.5 IP and GN2 IP.

### 2. Product Roll-out

27. In or about July 2013, HFT began advertising a special purpose computer system built around the GN1 for sale and started accepting orders for the "batch one" mining computers in early August 2013. "Batch one" sales were quickly followed by batches two through four. Despite taking orders with short delivery guarantees, the Debtors had yet to fully develop a system capable of mass production; indeed, chips for the systems were not available until in or about November 2013.

28. The delays in production ultimately resulted in unhappy customers. The Debtors have yet to satisfactorily describe what led to the delays and the failures to fulfill customer orders by the guaranteed delivery dates; however, they do contend that the issues causing the delivery difficulties have now been corrected.

29. Notwithstanding the delivery issues, the Debtors earned approximately $18,000,000 in the last five to six months of 2013—in other words, annualized revenues in excess

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 265   Filed: 12/31/14   Entered: 12/31/14 17:16:47   Page 13 of 38

of $36,000,000. The Debtors quickly spent these funds on chip design and six-figure salaries for nearly every employee.

30.     Despite substantial investments in developing product and Intellectual Property, the Debtors could not meet delivery deadlines, which led to refund demands in early 2014 and a corresponding "pinch point" or financial distress. The inability to fulfill orders lead to the commencement of a variety of litigation and, ultimately, the HF Bankruptcy.

31.     During the course of the Bankruptcy Cases, the Committee and HFT have entered into consensual agreements to allow for the continued sale of the Debtors' inventory subject to certain safeguards.

**C.     Significant Events during the Bankruptcy Case**

      1.     <u>Employment of Professionals</u>

32.     On or about March 5, 2014, the Committee moved to employ the Firm as its general bankruptcy counsel (the "Baker Application", D.E. 7114). The Court granted the Baker Application by order entered on or about July 23, 2014 (the "Baker Employment Order"). <u>See</u> D.E. 153. The Firm's employment is effective as of June 25, 2014 (the "Employment Date").

33.     The Debtors and the Committee engaged in substantial negotiations in an effort to devise a mutually acceptable plan for the reorganization or controlled liquidation of the Debtors. As part of these negotiations, the Debtors and the Committee agreed to the appointment of Peter Kravitz ("Kravitz") as the Chief Restructuring Officer for the Debtors. At that time, the Committee was seeking to employ Province, Inc. (of which Kravitz is a principal) as its financial advisor.

34.     On or about July 18, 2014, the Committee filed an application to employ Province, Inc. as Financial Advisor of the Committee (the "Province Application"). <u>See</u> D.E. 133. On or about July 23, 2014, the Committee filed a supplemental declaration of Peter Kraviz in support of the Province Application. D.E. 150.

35.     On or about August 19, 2014, the Debtors filed an application to employ Kravitz as the Designated Responsible Individual for the Debtors ("CRO"). *See* D.E. 181. Therefore, on August 20, 2014, the Committee withdrew Kravitz Application and on the same day the court

1  entered an Order allowing the Debtors designate Kravitz as the CRO.  D.E. 191.

2      36.     Prior to the involvement of the CRO, the Debtors and Committee entered into a

3  series of stipulations authorizing the sale(s) of certain inventory. *See* D.E. 132. Specifically, the

4  stipulations limited the Debtors to selling 3000 chips and 5000 chips' worth of wafers, and up to

5  $200,000 per month in non-chip/wafer inventory.

6      37.     Since the appointment of the CRO, the Debtors have marketed the Debtors' assets,

7  and have entered into agreements for the sale of more than $1,200,000 in inventory in an effort to

8  further the Debtors' reorganization. *See* D.E. 191.

9          2.     Other Significant Matters

10     38.     Since its appointment, the Committee has been in the process of gathering

11 information regarding the Debtors, and to date has conducted the examination of the following

12 individuals:

13          a.   *Monica Hushen,* the Debtors' Chief Financial Officer;

14          b.   *Eduardo De Castro,* the Debtors' co-founder;

15          c.   *Simon Barber,* the Debtors' Chief Technology Officer; and

16          d.   *Tim Wong,* the Debtors' Chief Marketing Officer.

17     39.     The Committee believes that further examination may be necessary to obtain a

18 comprehensive understanding of the Debtors' financial condition and operations.

19 **D.   Debtors' Current Operation**

20     40.     The Bankruptcy Case is proceeding on to an orderly liquidation. The Debtors have

21 ceased ordinary course operations and are engaged in the process of selling their assets in a value

22 maximizing manner being led by Kravitz.

23     41.     To this point, the Debtors have liquidated all of their inventory other than

24 approximately 15,000 ASIC chips. Those chips will be sold by the Debtors pursuant to a new

25 board design and build led by Guido Ochoa ("Ochoa").  Ochoa purchased substantially all of the

26 Debtors' remaining non-chip inventory.   He is also a substantial creditor and member of the

27 Committee.

28

- 14 -

Case: 14-30725   Doc# 265   Filed: 12/31/14   Entered: 12/31/14 17:16:47   Page 15 of 38

### E.    Status of Plan and Disclosure Statement

42.    Since the hearing on the Motion to Convert on September 10, 2014, the Debtors and the Committee have worked diligently and collaboratively on bringing about a consensual resolution to this case.

43.    The Debtors and the Committee will file imminently a joint plan and supporting disclosure statement (likely before January 15, 2015).  The Debtors and the Committee are completing the negotiation of a plan term sheet that lays out the contents of their joint plan.  In broad strokes, the plan, if confirmed, will vest all of the assets of the Debtors, or proceedings of their assets, in a post confirmation trust.  The post-confirmation trust will be empowered to liquidate any remaining assets, bring any necessary litigation claims, and reconcile the claims and administrative expenses filed and asserted against the Debtors. Ultimately, the Debtors and the Committee anticipate that the plan will receive the support of the Debtors' creditor body and will yield the highest possible return to creditors at this point.

### III.    DETAILED LISTING OF ALL TIME SPENT BY BAKER FOR WHICH COMPENSATION IS SOUGHT AND THE HOURLY RATES OF PROFESSIONALS

Baker expended a total of 638.70 hours of recorded time for services rendered during the Covered Period, at a blended rate of approximately $419.20 per hour.  Baker respectfully submits that its fees incurred in this case are reasonable.  A true and correct copy of the billing report for the Covered Period detailing the time expended by, and the billing rates of, the particular professionals and paraprofessionals performing services, as well as the total fees for services performed in this case during the Covered Period, are attached to the Declaration of Ashley M. McDow (the "McDow Declaration") as **Exhibit "A,"** and is incorporated herein by reference. Attached hereto as **Exhibit "B"** is a copy of the invoice during the Covered Period sorted by the date services were performed.   Attached hereto as **Exhibit "C"** is a summary sheet for the invoice, including the aggregate time billed at specified rate for each professional and paraprofessional who provided compensable services during the Covered Period.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

605643952.2

Case: 14-30725    Doc# 265    Filed: 12/31/14    Entered: 12/31/14 17:16:47    Page 16 of 38

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

**A.      Source and Amount of Cash Available to Pay Baker's Allowed Fees and Expenses**

Baker is informed by the Debtors' counsel that as of December 23, 2014, the Debtors had $168,030.25 in cash on hand.

**B.      Narrative Regarding Services Rendered in Benefit to the Estate**

As counsel to the Committee, Baker has performed literally hundreds of discrete services and tasks. Descriptions of each of these services and tasks are contained in Baker's detailed time records, which are attached as **Exhibit "A"** and incorporated herein by reference.[16]

As demonstrated by these records, it would be an extremely time-consuming task to describe in detail all of the services provided to the Committee by Baker during the Covered Period. What follows, therefore, is a summary of the more significant services rendered by Baker in each of the respective task code categories.

Baker categorizes all time entries for fees into a number of categories. For bankruptcy matters, Baker utilizes several categories, which for the Covered Period include: (1) Case Administration; (2) Asset Analysis and Recover; (3) Asset Disposition; (4) Relief from Stay – Adequate Protection Proceedings; (5) Meeting and Communication with Creditors; (6) Fee - Employment Application; (7) Avoidance Action Analysis; (8) Business Operation; (9) Financing – Cash Collections; (10) Claims Administration and Objections; (11) Plan and Disclosure Statement. Baker also utilizes a number of time entry categories for litigation-related services, which for the Covered Period include: (1) Researching Laws; (2) Analysis/Strategy; (3) Experts/Consultants; (4) Pleadings; (5) Written Discovery; (6) Other Discovery; (7) Written Motions and Submissions; and (8) Trial and Hearing Attendance. Inevitably, certain time entries do not fit neatly into any one category, while other time entries cross over into more than one category. Baker therefore does its best to place time entries into categories that accurately reflect the work performed. In no event were any time entries for a single task by one attorney duplicated.

---

[16] The expense report is included at the end of the invoice.

1.      Administration (B100)/Case Administration (B110)

The work performed under these categories includes, but is not limited to, review of the Debtors' bankruptcy schedules, communications with the Committee and the Debtors regarding the Administration of the Bankruptcy Case, issues in the Bankruptcy Case, and assessment of the Debtors' assets, liabilities, operation, and monthly operating reports.  The work performed under these categories also include,

- Review and analysis of the Debtors' first day pleadings and schedules;
- Communications with the Debtors, the Committee, and the U.S. Trustee regarding the administration of the Estate, including but not limited to the substantive consolidation of the Debtors, 341(a) hearing, the Debtors' bankruptcy schedules, assets, liabilities, monthly operating reports, and first day motions;
- Communications with the Debtors, the Committee, and the U.S. Trustee regarding the Debtors' operation, management, and the Debtors' exit strategy;
- Review and Preparation of the Committee bylaws, Committee website, notices, and related correspondences;
- Communications with the Court and the U.S. Trustee regarding compliance issues;
- Review and analysis of the Debtors' financial condition including its income and expense, as well as communications with the Committee regarding the same and the status of the Bankruptcy Case;
- Review and analysis of entered orders and other docket entries in the Bankruptcy Case;
- Analysis of the prospects for resolution of the Bankruptcy Case;
- Communications with the Debtors and the Committee regarding the administration of the Estate, including but not limited to the evaluation of the Bankruptcy Case, the status of the Bankruptcy Case, and efforts to address issues and move the Bankruptcy Case forward;
- Prepare and draft status reports and attend status conferences; and
- Communications regarding the valuation of the Debtors' assets and numerous

Case: 14-30725    Doc# 265    Filed: 12/31/14    Entered: 12/31/14 17:16:47    Page 18 of 38

communications with potential purchasers regarding the sale of the Debtors' assets.

These categories also involve time spent communicating with the Court, the U.S. Trustee, and various other parties regarding general issues of the Bankruptcy Case and reviewing various correspondences received regarding the Bankruptcy Case.

The total time billed to Administration (Code B100) is 5.90 hours for a total of $2,023.50. The total time billed to Case Administration (Code B110) is 42.00 hours for a total of $19,765.00.

2.  Asset Analysis and Recovery (B120)

The work performed under this category includes, but is not limited to,

- Analysis of the Debtors' assets;

- Review, analysis, and address various issues regarding the potential fraudulent transfer and avoidance actions; and

- Communications with the Debtors, Province, and the Committee regarding obtaining the turnover of the Debtors' assets.

The total time billed to Asset Analysis and Recovery (B120) is 10.50 hours for a total of $ 4,873.50 in fees.

3.  Asset Disposition (B130)

The work performed under this category includes, but is not limited to,

- Analysis regarding the potential disposition of the Estate's assets;

- Communications with the Debtors, Province, the Committee, and potential purchasers of the Debtors' assets regarding the sale of the Debtors' assets;

- Communications with potential purchasers, including LB regarding the sale of the Debtors' assets;

- Review and analysis of several proposals/offers/counteroffers regarding the sale of the Debtors' assets;

- Communications and analysis regarding the list of the Debtors' assets, the valuation of the Debtors' assets, the liens, the potential purchaser (i.e., LB), and potential listing price for the Debtors' assets, including drafting and negotiating of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

documents related thereto;

- Engage in protracted discussions with the Debtors, the Committee, the U.S. Trustee, and other creditors in an effort to reach a global resolution of all disputes and establish a mechanism for the sale of the Debtors' assets;

- Communications regarding the First Sale Motion, the Second Sale Motion, the Opposition to the First Sale Motion, Motion to Approve Notice of Sale, the auction procedures, and order and other related pleadings thereon;

- Review and analysis of the First Sale Motion, Second Sale Motion, Motion to Approve Notice of Sale, and the auction procedures;

- Analyze and develop strategy regarding the disposition of substantially all of the Debtors' assets, the Debtors Second Sale Motion, potential auction and bidding procedures; and

- Preparation of the Opposition to the First Sale Motion, Motion to Approve Notice of Sale, the auction procedures, and other pleadings related to the sale of the Debtors' assets.

The total time billed to Asset Disposition (B130) is 100.20 hours for a total of $ 39,577.50 in fees.

### 4. Meeting and Communication with Creditors (B150)

This category includes preparation for and attending meetings with Committee members. Baker spent time in this category preparing for conference calls with the Committee and engaging in the conference calls. Furthermore, during the Covered Period, the Firm responded to various questions from creditors with questions and concerns about the bankruptcy process, the status of their claims, and treatment of their claims in a proposed plan of reorganization. This category also includes communicating with the Committee and the creditors regarding various matters in this Bankruptcy Case including but not limited to:

- Status of the Bankruptcy Case and various pleadings filed in the Bankruptcy Case;
- Status of the potential sale and sale of the Debtors' assets, offers, counteroffers, appraisal, and settlement discussions for the sale of the Debtors' assets;

- Efforts to settle and attempt to resolve various claims and disputes with the Debtors and creditors of the Bankruptcy Case;
- Debtors' operation, management of the Debtors' employees, the appointment of the CRO, the sale of the Debtors' assets, and the Debtors' exit strategy;
- The retention of professionals and forensic accountants in the Bankruptcy Case; and
- Creditors' claims, fees and expenses.

The total time billed to Meeting and Communication with Creditors (Code B150) is 73.40 hours for a total of $33,942.00 in fees.

### 5. Fee-Employment Application (B160)

The work performed under this category includes, but is not limited to, addressing issues regarding the Baker Application, this Application, Province Application, and related notices and orders. The work performed under these categories further includes, but is not limited to,

- Reviewing and analyzing the issues regarding the Baker Application, this Application, Province Application, Kravitz Application, and EKMP Application.
- Reviewing and preparing the Kravitz Application, Baker Application, and Kravitz Application;
- Analyzing the issues and communications related to the Kravitz Application, including preparing declaration(s), supplemental declaration(s) in support;
- Analyzing and addressing the Committee's, the U.S. Trustee's, and the Debtors' concern regarding Baker Application, Province Application, and Kravitz Application; and
- Communicating with the Committee, the Debtors, and other professionals regarding various applications filed in the Bankruptcy Case.

The total time billed to Fee-Employment Application (Code B160) is 14.90 hours for a total of $5,850.00 in fees. The actual time spent to prepare the Application will be further reflected and charged in a future fee application. Although an invoice has yet to be issued, the Firm does not anticipate such amount to exceed 5% to 10% of the total amount of fees and costs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

requests in the Application.

      6.    <u>Avoidance Action Analysis (B180)/</u>

The work performed under this category includes, but is not limited to, researching and analyzing issues relating to avoidance actions (the "Avoidance Action"), and communications regarding the same to allow the Committee to prosecute the Avoidance Actions.

The total time billed to Avoidance Action Analysis (Code B180) is 0.40 hours for a total of $200.00 in fees.

      7.    <u>Assumption – Rejection of Leases and Contracts (B185)/ Operation (B200)/ Business Operation (B210)/ Real Estate (B250)</u>

The work performed under these categories includes, but is not limited to,

- Analyzing issues regarding the Debtors' budget and the Debtors' operation;
- Meeting with Debtors' principals regarding potential resolution of issues in the Bankruptcy Case;
- Developing strategy and providing instruction for dealing with proposed critical vendors;
- Communications with the Debtors and the Committee regarding the Debtors' business operation, management of the Debtors' employees, the appointment of the CRO, and the sale of the Debtors' assets; and
- Communications regarding the Debtors' executory contract and unexpired leases;

The total time billed to Assumption – Rejection of Lease and Contracts (Code B185) is 0.60 hours for a total of $240.00 in fees. The total time billed to Business Operation (Code B200) is 1.70 hours for a total of $520.00 in fees. The total time billed to Operation (Code B210) is 13.60 hours for a total of $6,265.50 in fees. The total time billed to Real Estate (Code B250) is 0.80 hours for a total of $412.00 in fees.

      8.    <u>Claims and Plan (B300)/Claims Administration and Objections (B310)</u>

These categories involve time spent analyzing various proofs of claims in the Bankruptcy Case and other issues relating to the proofs of claims. The Firm also spent numerous hours communicating with the Debtors, as well as various other creditors regarding treatment of their

- 21 -

claims, and further discussions with the Debtors and the Committee regarding options, rights and defenses thereto. The work performed under this category also includes, but is not limited to,

- Analyzing and addressing critical vendors' issues;
- Review and analysis of claims and preparation of summary detail for the claims filed;
- Efforts to settle and attempt to resolve various claims and disputes with the Debtors and creditors of the Bankruptcy Case;
- Efforts to settle and attempt to resolve various claims and disputes with the critical vendors and other creditors of the Bankruptcy Case; and
- Analyzing and addressing tax claims against the Estate.

The total time billed to Claims and Plan (Code B300) is 1.10 hours for a total of $494.00. The total time billed to Claims Administration and Objections (Code B310) is 34.10 hours for a total of $9,124.00.

9.      Plan and Disclosure Statement (B320)

This category includes time spent communicating with the Debtors and formulating and assisting the Debtors with drafting a consensual Disclosure Statement and the Plan. In an effort to propose a consensual disclosure statement and a plan, the Firm has been devoting considerable time obtaining and incorporating material concessions and compromises from the Debtors, U.S. Trustee, the Committee, and other creditors. This category also involves time spent for,

- Analyzing various issues including the potential sale of the Debtors' assets and strategizing for filing the Disclosure Statement and the Plan;
- Analyzing confirmation issues and requirements;
- Discussing the terms of the Disclosure Statement and the Plan with the Committee, the Debtors, the U.S. Trustee, as well as a number of the other creditors in the Bankruptcy Case;
- Researching and analyzing issues regarding the Debtors' exit and reorganization strategies, including but not limited to the effect of the sale of the Debtors' assets, cram down, claim bifurcation, and lien stripping options; and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- Analyzing various issues and strategizing for filing the Disclosure Statement and Plan, including but not limited to feasibility, liquidation, liabilities of the Estate, secured claims against the Estate, the sale of the Debtors' assets, and the status of the sale efforts.

The Debtors and the Committee will file imminently a joint plan and supporting disclosure statement. In broad strokes, the plan will vest all of the assets of the Debtors, or proceedings of their assets, in a post confirmation trust.

The total time billed to Plan and Disclosure Statement (Code B320) is 67.50 hours for a total of $30,288.50.

10.     Bankruptcy Related Advice (B400)

Time in this category included communications with the Committee and the Debtors regarding the Debtors' operation, the bankruptcy proceedings, the Debtors' exit strategy, and Debtors' sale of assets alternatives.

The total time Bankruptcy Related Advise (Code B400) is 5.50 hours for a total of $2,637.50.

11.     Fact Gathering (C100)/Researching Laws (C200)/Fact Investigation/Development (L110)/ Analysis / Strategy (L120)/ Expert/Consultants (L130)

The work performed under the categories includes, but is not limited to,

- Review and analysis of the Debtors' schedules, assets, pleadings, and corporate records and advise the Committee of strategy to proceed in the Bankruptcy Case;
- Communicate with the Debtors regarding the Debtors' cash management system;
- Analyze issues regarding the Rule 2004 Examination of the Debtors' principals;
- Evaluate the Debtors' First Sale Motion and advise the Committee of the same;
- Analyze issues regarding the Consolidation Motion and advise the Committee regarding the same;
- Advise the Committee regarding various issues in the Bankruptcy Case, potential sale of the Debtors' assets, the Debtors' operation, and Debtors' exit strategy;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- Research and develop strategy regarding the Consolidation Motion, the sale of the Debtors' substantial assets, the Motion to Convert, the Debtors' exit strategy, including preparing a joint Disclosure Statement and Plan with the Debtors;

- Analyze and develop strategy regarding the disposition of substantially all of the Debtors' assets, the Debtors Second Sale Motion, potential auction and bidding procedures;

- Review and analyze various issues regarding the potential fraudulent transfer and avoidance actions;

- Communications with Province regarding Province and/or Kravitz employment as a financial advisor for the Debtors' operation;  and

- Communications with the Debtors, U.S. Trustees, and other professionals related to the analyses and strategies in the Bankruptcy Case.

The total time billed to fact Gathering (C100) is 1.40 hours for a total of $322.00 in fees. The total time billed to Researching Laws (Code C200) is 0.80 hours for a total of $280.00.   The total time billed to Fact Investigation/Development (Code L110) is 0.60 hours for a total of $210.00.  The total time billed to Analysis/Strategy (Code L120) is 40.40 hours for a total of $17,060.00.  The total time billed to Experts/ Consultants (Code L130) is 7.70 hours for a total of $3,481.00.

12.    Settlement/Nonbinding Adr (L160)

This category includes preparation for and attending meetings with the Debtor and the Committee for potential sale and settlement discussions for the sale of the Debtors' assets. Furthermore, during the Covered Period.  This category also includes the Firm's efforts to settle and attempt to resolve various claims and disputes with the Debtors and creditors of the Bankruptcy Case.

The total time billed to Settlement/Nonbinding Adr (L160) is 19.50 hours for a total of $9,870.00.

- 24 -

Case: 14-30725   Doc# 265   Filed: 12/31/14   Entered: 12/31/14 17:16:47   Page 25 of
38

13.    <u>Written Discovery (L310)/Deposition (L330)/ Discovery Motions (L350)/ Other Discovery (L390)/Fact Witness (L410)</u>

The work performed under these categories includes strategizing and preparing discovery pleadings, including preparation of Rule 2004 Motions, Stipulations, discovery requests ("Discovery Requests"), notices, orders, and miscellaneous related filings in the Bankruptcy Case. More specifically, after review of the Debtors' schedules, operations, and affairs, the Committee conducted the examination of *Monica Hushen,* the Debtors' Chief Financial Officer, *Eduardo De Castro,* the Debtors' co-founder, *Simon Barber,* the Debtors' Chief Technology Officer, and *Tim Wong,* the Debtors' Chief Marketing Officer (collectively, the "Deposed Parties").

The work performed under these categories further includes, but is not limited to,

- Communicating with the Committee, the Debtors, the principal of the Debtors, various creditors, and professionals to develop strategies for the discovery;
- Preparing the Rule 2004 Motions, Stipulations, and orders thereon, and communicating with the Deposed Parties regarding the foregoing;
- Analyzing dates and deadlines and preparing subpoena for deposition of the Deposed Parties;
- Reviewing, preparing, and analyzing documents obtained from the Deposed parties and documents necessary for deposition of the Deposed Parties;
- Deposing the Deposed Parties and analyzing their deposition transcripts; and
- Communicating with the Debtors, the U.S. Trustee and Trustee and Kaplan's counsel regarding Kaplan's deposition.

The total time billed to Written Discovery is 3.0 hours for a total of $1,215.00. The total time billed to Deposition (Code L330) is 4.40 hours for a total of $882.00 in fees. The total time billed to Discovery Motions (Code L350) is 5.90 hours for a total of $1,960.00 in fees. The total time billed to Other Discovery (Code L390) is 78.70 hours for a total of $32,401.00 in fees. The total time billed to Fact Witness (Code L410) is 1.60 hours for a total of $824.00 in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 265   Filed: 12/31/14   Entered: 12/31/14 17:16:47   Page 26 of 38

14. <u>Pleadings (L210)/ Dispositive Motions (L240)/Written Motions and Submissions (L430)/ Other Written Motions and Submissions (L250)</u>

The work performed under these categories includes, but is not limited to preparing, drafting, reviewing, and/or analyzing miscellaneous pleadings filed in the Bankruptcy Case. The work performed under these category includes, but is not limited to,

- Reviewing and preparing the status report in the Bankruptcy Case;

- Analyzing issues and preparing the Consolidation Motion and the related pleadings;

- Analyzing issues and preparing various 2004 Motions/Stipulations and orders thereon and communicating with the Debtors and the Committee relating to the foregoing;

- Communicating with the Debtors and the Committee and internal conferences regarding the Consolidation Motion, the 2004 Motions, the Motion to Convert, First Sale Motion, First Sale Opposition, Second Sale Motion and the related pleadings, potential over bidder, bidding and auction procedures;

- Analyzing issues and preparing the 2004 Motions, Consolidation Motion, and the Second Sale Motion;

- Preparing the Committee's Opposition to First Sale Motion and Opposition to the Motion to Convert;

- Analyzing issues and drafting Opposition to Debtors' Motion to Retain Cash Management System; and

- Evaluating and responding to various pleadings filed by the Debtors and the U.S. Trustee in the Bankruptcy Case.

The total time billed to Pleadings (L210) is 5.70 hours for a total of $2,833.50. The total time billed to Dispositive Motions (L240) is 2.10 hours for a total of $999.00. The total time billed to Written Motions and Submissions (Code L430) is 35.90 hours for a total of $13,085.00in fees. The total time billed to Other Written Motions and Submissions (Code L250) is 28.60 hours for a total of $11,071.50 in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

605643952.2

15.  <u>Trial and Hearing Attendance (L450)/ Court Mandated Conference (L230)</u>

The work performed under this category includes, but is not limited to, preparation for, travel to and attendance at hearings and status conferences in the Bankruptcy Case.

The total time billed to Trial and Hearing Attendance (Code L450) is 28.30 hours for a total of $14,058.50.  The total time billed to Court Mandated Conference (L230) is 1.30 hours for a total of $669.50.

**C.  Detailed Listing of Expenses by Category**

A true and correct copy of a listing of all expenses incurred by Baker during the Covered Period is attached to the McDow Declaration as **Exhibit "A,"** and incorporated herein by this reference.[17]  These include expenses Baker incurred for photocopying, online research, delivery services and mailing, travel, court fees, trial transcripts, and services of other professionals such as county recorder clerks.

Baker generally handles regular and routine photocopying in-house for which Baker charges clients $0.10 per page.  While Baker believes that this is less than its actual expenses incurred with regard to the supplies and labor associated with providing photocopying services, this charge reflects the photocopying charge required by the OST.  Whenever feasible, Baker sends large copying projects to outside copy services that charge bulk rates for photocopying.  In such instances, Baker charges clients the same amount that it pays the outside service.

All expenses for outside services such as photocopying services, messenger and express mail services, postage and research services (Lexis and/or Westlaw) for which Baker requests reimbursement are the actual expenses or less than the actual expenses incurred by Baker for such services to comply with the standards set forth by the OST.  All expenses that Bake advanced on behalf of the Committee were necessarily incurred and are properly charged as administrative expenses of the Estate.  Baker does not seek any additional amounts or profits with respect thereto.

---

[17] The expense report is included at the end of each invoice.

605643952.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**D. Baker Faced Novel and Difficult Legal Questions Throughout the Covered Period.**

Due to the complex nature of the Debtors' case, it has been necessary for Baker to evaluate and respond to unique and complex factual and legal issues and skillfully respond in a prompt fashion. There can be no question that Baker faced novel and difficult legal issues in this case and demonstrated significant sill in advising the Committee.

**E. Description of Professional Education and Experience**

Baker is comprised, in part, of attorneys who specialize and practice in (among other areas) bankruptcy law, corporate and securities law, tax law, and business litigation, and is well qualified to represent the Committee as a general bankruptcy counsel. A list of all the attorneys and paraprofessionals that rendered service in this case, along with the attorney's billing rate and the amount of time spent by the attorney during the Covered Period, is detailed in the attached invoice. Attached hereto as **Exhibit "C"** is a summary sheet for the invoice, including the aggregate time billed at specified rate for each professional and paraprofessional who provided compensable services during the Covered Period.

**IV. COMPLIANCE WITH GUIDELINES**

The Firm has prepared the Application in compliance with all applicable guidelines. The compensation and expense reimbursement sought herein is in conformity with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court for the Northern District of California (the "Court Guidelines") and the Guidelines of the Office of the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 ("OUST Guidelines"), except to the extent set forth in the Application. The Firm will also timely provide a copy of the Application on the Committee in accordance with the Court Guidelines No. 7, "Client Review of Billing Statement."

The Firm has not entered into any agreement, written or oral, express or implied, with any other party-in-interest or any attorney for any party-in-interest in the cases for the purpose of fixing the amount of any fee or compensation to be paid from the assets of the Estate.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

605643952.2

The Firm has read the Application. To the best of the Firm's knowledge, information, and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with these guidelines, except as specifically noted. The compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the Applicant and generally accepted by the Firm's clients.

## V.    STANDARD OF LAW

Prior to the enactment of the Bankruptcy Code, the rule with respect to compensation requests in the Ninth Circuit was that the Bankruptcy Court should award attorneys' fees in accordance with a "strict rule of economy test." In re THC Financial Corp., 659 F.2d 951, 955 n.2 (9th Cir.1981), cert. denied, 456 U.S. 977 (1982). This is no longer the law. The legislative history to § 330 of the Bankruptcy Code indicates that Congress was primarily concerned with protecting the public interest in the smooth, efficient operation of the bankruptcy system by encouraging competent bankruptcy specialists to remain in the field. First National Bank of Chicago v. Committee of Creditors Holding Unsecured Claims (In re Powerline Oil Co.), 71 B.R. 767, 770 (Bankr. 9th Cir. 1986); In re Baldwin-United Corp., 79 B.R. 321, 346 (Bankr.S.D.Ohio 1987). To this end, Congress specifically disavowed notions of economy of administration, and provided that compensation in bankruptcy cases should be comparable to what is charged in non-bankruptcy matters. Id. at 346.

Under the lodestar approach, the Court is to determine the number of hours reasonably expended in an attorney's representation of in a debtor's case and multiply such number by a reasonable hourly rate for the services performed. See Delaware Valley Citizens' Council for Clear Air, 478 U.S. at 565; In re Powerline Oil Co., 71 B.R. at 770. A reasonable hourly rate is presumptively the rate the marketplace pays for the services rendered. Missouri v. Jenkins by Agyei, 491 U.S. 274, 109 S. Ct. 2463, 2469 (1989); Burgess v. Klenske (In re Manoa Finance Co., Inc.) 853 F.2d 687, 691 (9th Cir.1988). Recognizing that the determination of an appropriate "market rate" for the services of a lawyer is inherently difficult, the Supreme Court stated:

> Market prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3

as well as its experience, skill, and reputation, varies extensively -- even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate.

4  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The Supreme Court has stated that a reasonable

5  attorney's fee "means a fee that would have been deemed reasonable if billed to affluent plaintiffs

6  by its own attorneys." Missouri v. Jenkins by Agyei, 109 S.Ct. at 2470 (quoting City of Riverside

7  v. Rivera, 477 U.S. 561, 591 (1986) (Rehnquist, J. dissenting)); see In re Auto Parts Club, Inc.,

8  224 B.R. 445, 449 (Bankr. S.D. Cal. 1998). Accordingly, a reasonable hourly rate is the hourly

9  amount to which attorneys in the area with comparable skill, experience and reputation typically

10  would be entitled as compensation. Blum v. Stenson, 465 U.S. at 895 n.11.

11  Professional services rendered by Baker have been itemized by professional, noting each

12  professional's rate, number of hours and total compensation requested. Each duty and task

13  performed by Baker has been performed by the attorney most qualified to render such services at

14  his or her hourly rate in the most efficient manner as required by the circumstances of these cases.

15  Baker respectfully submits that the hourly rates for its attorneys and paraprofessionals are

16  reasonable and appropriate in the relevant community and in view of the circumstances of this

17  Bankruptcy Case. Baker's hourly rates have been approved in numerous other cases similar to

18  the case at bar. The Committee selected Baker as its bankruptcy counsel because of the

19  Committee's confidence in Baker's ability to successfully deal with the issues arising in this

20  Bankruptcy Case. Baker respectfully submits that based upon the factors considered pursuant to

21  Bankruptcy Code section 330, the quality of the services provided and the results that have been

22  achieved to date more than justify the allowance of the amounts requested. Baker's fees and

23  expenses are reasonable, and the services of Baker have resulted in significant benefit to the

24  Committee.

25  ///

26  ///

27  ///

28  ///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

1   **VI.    CONCLUSION**

2          **WHEREFORE**, Baker respectfully requests that this Court enter an order:

3          (1) Granting the Application in its entirety;

4          (2) Finding that the notice of the Application was proper;

5          (3) Approving, on an interim basis, fees in the amount of **$267,349.50** and expenses in the

6   amount of **$47,262.24**, which totals **$314,611.74** for the Covered Period;

7          (4) Authorizing payment to Baker of the total amount of **$314,611.74** or such amount that

8   the Estate allows; and

9          (5) Granting such further and additional relief as the Court deems just and proper.

10

11

    Dated:    December 31, 2014            Respectfully submitted,
12

13                                         **BAKER & HOSTETLER LLP**

14

15                                         By:    */s/ Ashley M. McDow*
                                                  Ashley M. McDow
16                                                Michael T. Delaney
                                                  Fahim Farivar
17
                                           Attorneys for OFFICIAL COMMITTEE
18                                         OF UNSECURED CREDITORS

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

# DECLARATION OF ASHLEY M. MCDOW

I, Ashley M. McDow, do hereby declare as follows:

1.       I make this declaration in support of the Amended First Interim Application of Baker & Hostetler LLP for Approval of Compensation for the Period of June 25, 2014 through and including November 10, 2014 (the "Covered Period")(the "Application").  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.       I am counsel at the law firm of Baker & Hostetler LLP ("Baker"), general bankruptcy counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of HashFast Technologies, LLC ("Hashfast" and/or the "Debtor").

3.       I am the attorney primarily responsible for the representation of the Committee in the Bankruptcy Case, and am licensed to practice law in all relevant courts in the states of California and Washington.

4.       I have personally read and reviewed the information contained in the Application, and believe its contents to be true and correct to the best of my knowledge, information and belief.

5.       Baker has not been paid or promised any compensation from any other source for services rendered in connection with the Bankruptcy Case.

6.       Baker has not entered into any agreement or understanding with any other entity for the sharing of compensation received or to be received for services rendered and/or to be rendered in connection with the Bankruptcy Case.

7.       The Firm has not entered into any agreement, written or oral, express or implied, with any other party-in-interest or any attorney for any party-in-interest in the cases for the purpose of fixing the amount of any fee or compensation to be paid from the assets of the Estate.

8.       No agreement prohibited by Title18, § 155 has been made.

9.       No division prohibited by the Bankruptcy Code will be made by Baker.

10.      To the best of my knowledge, information and belief, the compensation and

- 32 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

expense reimbursement sought herein is in conformity with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court for the Northern District of California (the "Court Guidelines"), except to the extent set forth in the Application.

11.    Baker will also timely serve a copy of the Application on the Committee in accordance with the Court Guidelines, No. 7, "Client Review of Billing Statement."

12.    I am also familiar with the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expense Filed under 11 U.S.C. § 330 (the "OST Guidelines"). I believe that the Application fully complies with the OST Guidelines.

13.    The compensation and expenses sought herein were billed at rates no less favorable than those customarily billed by Baker to non-bankruptcy clients of Baker and generally accepted by such clients.

14.    I also believe that Baker's rates reflect the market rates, which law firms of similar size and status charge clients for such services.

15.    The amounts requested in the Application are based upon and supported by the business records the Firm keeps in the ordinary course of business.

16.    As the supervising attorney in this Bankruptcy Case, I carefully reviewed each Firm's monthly bill and carefully evaluated each and every billing entry. I made downwards adjustments to the Firm's bills as I believed was appropriate in the exercise of my billing judgment.

17.    The Application requests a total of $267,349.50 and expenses in the amount of $47,262.24, which totals $314,611.74 due for the Covered Period.

18.    Baker generally handles regular and routine photocopying in-house for which Baker charges clients $0.10 per page. While Baker believes that this is less than its actual expenses incurred with regard to the supplies and labor associated with providing photocopying services, this charge reflects the photocopying charge required by the OST. Whenever feasible, Baker sends large copying projects to outside copy services that charge bulk rates for photocopying. In such instances, Baker charges clients the same amount that it pays the outside

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP
605643952.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

service.

19.    All expenses for outside services such as photocopying services, messenger and express mail services, postage and research services (Lexis and/or Westlaw) for which Baker requests reimbursement are the actual expenses or less than the actual expenses incurred by Baker for such services, and Baker does not seek any additional amounts or profits with respect thereto.

20.    All expenses that Baker advanced on behalf of the Committee were necessary and are properly charged as administrative expenses of the estate.

21.    A true and correct copy of the invoice for the Covered Period detailing the time expended by, and the billing rates of, the particular professionals and paraprofessionals performing services, as well as the total fees for services performed in this case during the Covered Period, are attached hereto as **Exhibit "A,"** and incorporated herein by reference.[18] Attached hereto as **Exhibit "B"** is a copy of the invoice for the Covered Period sorted by the date services were performed. These include expenses Baker incurred for photocopying, online research, delivery services, mailing, travel, court fees, trial transcripts, and services of other professionals such as county recorder clerks.

22.    Baker is comprised, in part, of attorneys who specialize and practice in (among other areas) bankruptcy law, corporate and securities law, tax law, and business litigation, and is well qualified to represent the Committee as bankruptcy counsel.  A list of all the attorneys and paraprofessionals that rendered service in this case, along with the attorney's billing rate and the amount of time spent by the attorney during the Covered Period, is detailed in the attached invoice.  Attached hereto as **Exhibit "C"** is a summary sheet for the invoice, including the aggregate time billed at specified rate for each professional and paraprofessional who provided compensable services during the Covered Period.

---

[18] The expense report is included at the end of each invoice.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

1       I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

2   31st day of December 2014, at Los Angeles, California.

3

4   _____

5   Ashley M. McDow

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

605643952.2

AMENDED FIRST INTERIM FEE APPLICATION OF BAKER & HOSTETLER LLP

Case: 14-30725    Doc# 265    Filed: 12/31/14    Entered: 12/31/14 17:16:47    Page 36 of 38

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): **AMENDED FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BAKER & HOSTETLER LLP FOR THE PERIOD OF JUNE 25, 2014 THROUGH AND INCLUDING NOVEMBER 10, 2014** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 31, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) December 31, 2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Presiding Judge</u>:
Judge Dennis Montali
PO Box 7341
San Francisco, CA 94120-7341

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 31, 2014 | Fahim Farivar | */s/ Fahim Farivar* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Venkat Balasubramani      venkat@focallaw.com, pete.morici@alumni.purdue.edu
Greg P. Campbell      ecfcanb@piteduncan.com, gc@ecf.inforuptcy.com
Patrick Chesney      pchesney@gallo-law.com, mvananda@gallo-law.com
Michael Delaney      mdelaney@bakerlaw.com, SGaeta@bakerlaw.com
Caroline R. Djang      cdjang@rutan.com
Fahim Farivar      ffarivar@bakerlaw.com, sgaeta@bakerlaw.com
W. Keith Fendrick      keith.fendrick@hklaw.com, Andrea.Olson@hklaw.com
Julie M. Glosson      julie.m.glosson@usdoj.gov
Elizabeth A. Green      egreen@bakerlaw.com, jdriggers@bakerlaw.com
Robert G. Harris      rob@bindermalter.com
Ori Katz      okatz@sheppardmullin.com
Ashley McDow      amcdow@bakerlaw.com, SGaeta@bakerlaw.com
Jessica M. Mickelsen      jessica.mickelsen@kattenlaw.com
Office of the U.S. Trustee / SF      USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
Kristen A. Palumbo      kristen.palumbo@morganlewis.com
Craig Stuppi      craig@stuppilaw.com
Sarah M. Stuppi      sarah@stuppilaw.com
Christopher D. Sullivan      csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com
Nancy Weng      nweng@trinhlawfirm.com, kim@trinhlawfirm.com