CHRISTOPHER D. SULLIVAN (148083)
GREGORY A. ROUGEAU (194437)
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200
Facsimile: (415) 263-9200
e-mail: csullivan@diamondmccarthy.com
grougeau@diamondmccarthy.com

Counsel for Creditor
LIQUIDBITS CORPORATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company,<br><br>Debtor and Debtor-In-Possession.<br>_____<br>☒Affects HASHFAST LLC, a Delaware limited liability company,<br><br>Debtor and Debtor-In-Possession. | Case No. 14-30725<br><br>(Substantively consolidated with *In re HashFast LLC*, Case No. 14-30866)<br><br>Chapter 11<br><br>**OBJECTION OF LIQUIDBITS CORPORATION TO AMENDED FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Date: January 23, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 22<br>Judge: Hon. Dennis Montali |

LIQUIDBITS CORPORATION ("Liquidbits") hereby respectfully objects to the Amended First Interim Application For Compensation And Reimbursement Of Expenses (the "Application")

filed by Baker & Hostetler LLP ("Baker" or the "Applicant"), counsel to the Official Committee of Unsecured Creditors (the "Committee"), as follows:

## INTRODUCTION

Baker's Application should be denied.

Putting aside numerous other issues with the Application (i.e., that the Application does not comply with the Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees ("Guidelines") with regard to "clumping" and the billing category breakdowns; that the Applicant has apparently failed to exercise any billing discretion and eliminate or write down time entries that reflect inefficiencies, duplication of effort, and other unreasonable and/or unnecessary billing entries; and that the time spent on various tasks was excessive and in many instances unnecessary), the Application simply should not be considered now because there are insufficient funds in the estate to pay Applicant and counsel for the Debtors. By its Application, Baker wants to be paid $314,611.74 on an interim basis; counsel for the Debtors wants $353,897.48. According to the Application, and that filed by the Debtors' counsel, the estates retain only $168,030.25 in cash on hand.

Not only are there insufficient funds to pay professional fees, the professionals' Applications completely ignore that the estate may have other administrative creditors who are entitled to share *pro rata* with the professionals under 11 U.S.C. § 726(b) and 503(b). Because the Debtors have not filed operating reports since the one for September (when it was disclosed only that postpetition liabilities were $0), and because the Debtor and Committee have not filed a liquidating plan which describes administrative claims and how this should be considered in light of the overall case outcome (despite having indicated to the Court three months ago that such a plan would be on file by the end of October), neither the Court, the U.S. Trustee, nor the creditors have any ability to properly evaluate the Application. That is precisely what Guideline No. 2 of the Court's Guidelines is intended to address ("In both Chapter 7 and Chapter 11 cases, the application should state the amount of money on hand in the estate *and the estimated amount of other accrued expenses of administration*."). Having not complied with that basic Guideline, Baker cannot expect that its fees should be allowed at the present time.

Liquidbits respectfully submits that the Court should deny the professionals' Applications until either a liquidating plan is confirmed or at least presented, or the cases are converted to Chapter 7. Otherwise, counsel for the Debtors and the Committee would ostensibly "carve up" what little cash remains in the estates, without considering any other administrative creditors, and leaving nothing for a plan administrator or Chapter 7 trustee to look to for payment of fees and costs associated with liquidation.

## STATEMENT OF FACTS

In its Application, Baker describes generally the history of this case, and summarizes what it believes justifies the requested interim award of fees and costs. Liquidbits, as a creditor and unsuccessful bidder of the Debtor's assets, views the history of this case, and Baker's assertion that it should be paid its fees and costs at the present time, much differently than Baker does.

On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson (collectively, the "Petitioning Creditors") commenced an involuntary bankruptcy under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against HashFast Technologies, LLC ("HashFast Technologies").

HashFast Technologies subsequently consented to entry of an order for relief, and moved to convert the case to Chapter 11. Its case was converted to Chapter 11 on June 4, 2014, by Order of the Court.

On June 6, 2014, HashFast, LLC ("HF," and collectively with Hashfast Technologies, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.

The Debtors were in the business of designing, developing, manufacturing and selling certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

On or about June 23, 2014, the Office of the United States Trustee appointed the Committee, and, on June 25, 2014, the Committee selected Baker to act as general bankruptcy counsel. Its employment application was filed on July 3, 2014, and the Court granted that application on July 24, 2014.

On July 8, 2014, the Debtors' Chapter 11 cases were ordered jointly administered, and the Debtors have since acted as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, no Trustee having been appointed in the cases.

From the outset of the cases, it was made apparent to all creditors and parties in interest that the best interests of the estate dictated an expeditious sale of the Debtors' inventory. Accordingly, on July 18, 2014, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief (the "Liquidbits Sale Motion").

In that Motion, the Debtors sought to, among other things, sell most of the Debtors' inventory to a new entity to be formed by Liquidbits, and assign that purchasing entity certain of Debtors' licenses, in exchange for cash sufficient in the total amount of up to $2,000,000 to pay for any allowed unpaid administrative and priority claims, any cure costs for any executory contracts to be assumed and assigned to the new entity, and a cash reserve to wind up the case.

As set forth in that Motion, time was of the upmost essence in that proposed transaction, as the value of the Debtors' inventory would almost certainly diminish with delay, as the Debtors' inventory consisted mainly of ASIC chips, mining boards as well as various other system components used in the Bitcoin mining business, and the value of such processing capabilities was subject to rapid depreciation. Indeed, the Motion articulated that mining technology had declined approximately 13% every ten (10) days over the two months preceding the filing of the Motion. Of additional, and particular concern, was that the Debtors' inventory was largely in an unfinished state, such that its value was likely to diminish even more precipitously with time.

The Committee, through Baker, opposed the Liquidbits Sale Motion, and on or about July 26, 2014, the Court issued a tentative ruling denying that motion. No further motion was filed.

In its Application, Baker asserts that following the Court's denial of the Liquidbits Sale Motion, the Committee and the Debtors "commenced joint efforts to formulate a globally

beneficial exit strategy for the Debtors," and that the "Debtors determined that the controlled liquidation of Debtors' assets served the best interests of the bankruptcy estates and creditors." The end result of those "controlled liquidation" efforts: the October 23, 2014 Motion Pursuant to 11 U.S.C. §§105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Order (1) Authorizing the Jointly Conducted Auction of Estate Property by the Debtors and the Committee, and (2) Authorizing the Sale of Estate Property Free and Clear of Liens, Encumbrances and Interests, with any Disputed Liens, Encumbrances, and Interests to Attach to the Sale Proceeds Pending Further Order of the Court (the "Barber Sale Motion"). And the end result of that motion: the receipt of a single qualified bid, from Simon Barber, to pay to the Debtors the sum of $20,000, with $10,000 of that amount paid over 20 months, and to provide 60 hours' of Mr. Barbers' time to the Debtors, with a release between Mr. Barber and the Debtors.

The Debtors have now ceased ordinary course operations and are apparently engaged in the process of selling their remaining assets. The Debtors have liquidated their entire inventory other than approximately 15,000 chips, which will be sold to a member of the Committee, Guido Ochoa. As stated *supra*, there remains only $168,030.25 in cash on hand in the estates, and- because the Debtors have not timely filed operating reports- creditors have no idea whether the "orderly liquidation" the Debtor and the Committee have overseen in the past seven months (i.e., since the Liquidbits Sale Motion was denied) has in any way benefitted anyone other than the estates' professionals.

## LEGAL ARGUMENT

**I.     STANDARDS APPLICABLE TO ALLOWANCE OF FEE APPLICATIONS.**

The Bankruptcy Code authorizes the bankruptcy court to award to a professional "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1). In determining the award of compensation, the court considers the nature, the extent, and the value of the professional's services, taking into account factors such as "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case . . . [and] whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task

addressed. . . ." 11 U.S.C. § 330(a)(3). The bankruptcy court cannot allow compensation for services that were not reasonably likely to benefit the estate or were not necessary to the administration of the estate. 11 U.S.C. § 330(a)(4)(A)(ii).

The law concerning allowance of fees in the Ninth Circuit is clear: professionals have an obligation to exercise billing judgment. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir.1991). As Baker notes in its Application, the "lodestar approach"- wherein Court is to determine the number of hours reasonably expended in an attorney's representation of in a debtor's case and multiply such number by a reasonable hourly rate for the services performed- is the primary method for calculating fees in bankruptcy cases.

But the "lodestar approach" is not the exclusive method for calculating fees. *In re Auto Parts Club, Inc.*, 211 B.R. 29, 35 (9th Cir. BAP 1997). The court may employ an alternative formula where the court cannot realistically quantify to numerical precision the lodestar calculation. *Id*. It is appropriate to abandon the lodestar method where the detail of time spent is grossly disproportionate to the benefit to the estate, or when the subject professional performs unnecessary services. *Id*. (citing *In re Kitchen Factors*, 143 B.R. 560, 562 (9th Cir. BAP 1992). Such is particularly the case when it is not reasonable for the professional to believe that unsecured creditors would not receive a distribution proportionate to the fees incurred. *Id*., 211 B.R. 29, 35 (citing *In re Taxman Clothing Co*., 49 F.3d 310, 316 (7th Cir. 1995) ("the estate should not be consumed by professional fees, especially where the unsecured creditors receive no distribution").

Liquidbits believes that the foregoing standard for allowance of professional fees militates against granting Baker's Application, or at the very least, significantly curtailing allowed fees. But the Court should not even have to get that far: the Application is deficient, and fails to comply with local Guidelines concerning disclosure of other outstanding administrative expenses. The Application should be denied.

**II.      THE APPLICATION FAILS TO COMPLY WITH LOCAL GUIDELINES.**

Baker has not provided sufficient information in its Application, in accordance with the Guidelines, for anyone to evaluate its merits. While Baker has disclosed that it requests

$314,611.74 on an interim basis, and has disclosed that the estate retains only $168,030.25 in cash on hand, there is absolutely no disclosure as to other outstanding administrative claims. That is sufficient in and of itself to warrant denial of the Application.

As set forth *supra*, Guideline No. 2 mandates that an application for compensation "should state the amount of money on hand in the estate *and the estimated amount of other accrued expenses of administration*." Baker asserts in its Application that it has complied with the Guidelines, but it has not. That noncompliance is hard to understand, as it is unfathomable that counsel for the Committee has not given any thought as to the amount of other Chapter 11 administrative claims. Had Baker worked with the Debtor to ensure timely completion of operating reports, with accurate reporting of Chapter 11 administrative expenses, perhaps noncompliance with the Guidelines could be excused. Absent operating reports, though, the failure to address other administrative claims should be dispositive. Baker fails to address in any fashion why it has not pushed the Debtor to submit the required operating reports. The Application cannot be granted.

The failure to disclose existing administrative claims is particularly troubling in these cases for another reason. With only $168,030.25 on hand, yet $314,611.74 requested in Baker's Application, and with Debtors' counsel seeking $353,897.48, there is no discussion in the Application as to how Baker's claim, and that of Debtors' counsel, is supposed to be paid. There are insufficient assets in the estate to pay administrative creditors, and none of the professionals involved has any reasonable proposal available in the public record as to how the estate will bridge the gap between cash on hand and the amounts sought in their Applications.

Until the Application complies with local Guidelines, and until operating reports are on file, granting the Application would be unfair to not only other administrative creditors, but general unsecured creditors and other parties in interest.

**III.   THE COURT SHOULD EXERCISE ITS DISCRETION, AND CONTINUE THE HEARING ON THE FEE APPLICATION.**

The timing of distributions for administrative expense payments, other than at the close of the case, is within the discretion of the Court. *Spartan Plastics v. Verco Indus*. (*In re Verco*

*Indus.*), 20 B.R. 664, 665 (9th Cir. BAP 1982) ("the determination of when an administrative expense is to be paid is within the discretion of the trial court"); *Local 144 Hosp. Welfare Fund v. Baptist Med. Ctr of New York, Inc.* (*Matter of Baptist Med. Ctr. of New York, Inc.*), 52 B.R. 417, 421 (E.D.N.Y.1985) (the court is not required to allow immediate payment of administrative expenses); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr.D.Del.2004) (denying immediate payment of administrative expenses finding that administrative expenses may be delayed when the estate may not be able to pay all administrative expenses in full or based on other factors). That discretion should be exercised by this Court here. Consideration of the Application should be delayed.

One obvious reason why the Court should not consider the Application is the failure of Baker to disclose other administrative claimants, discussed above.

There are other considerations, however. The manifest purpose of Section 331 of the Bankruptcy Code "is to prevent bankruptcy professionals from having to wait until conclusion of the bankruptcy case for compensation and reimbursement." *In re Kids Creek Partners, L.P.*, 236 B.R. 871, 875 (Bankr. N.D. Ill. 1999). In these cases, the professionals have already waited until nearly the conclusion of the cases to seek payment of interim fees. There is no reason for the professionals in this case to seek interim compensation now, when the cases demand either submission of a liquidating plan, or conversion to Chapter 7.

For months, the Debtors and the Committee have stated that filing a liquidating plan was imminent; such a Plan has not materialized, and the estate has been diminished in the interim. If the Application is to be believed, a Liquidating Plan should have been on file already. Creditors should have a chance to see that Plan, or request conversion of the case to Chapter 7, before the Court considers any professional fee applications. The hastened interim fee applications filed by the professionals, when there are insufficient funds in the estate to pay them, and given the posture of these cases, seem calculated to avoid having creditors make informed evaluations of the applications. The Court should decline to consider Baker's Application at the present time.

## IV. THE REQUESTED FEES ARE EXCESSIVE, AND ARE NOT "REASONABLE COMPENSATION FOR ACTUAL, NECESSARY SERVICES."

Baker's responsibility for the Debtors' failure to close their initial proposed transaction with Liquidbits, and for creditors to realize any benefit therefrom, speaks volumes. The estate has been steadily diminished over time, and notwithstanding that the estate has likely been administratively insolvent for some time, there does not appear from the Application that Baker attempted at any point in this case to scale back or moderate its accumulating fees.

As set forth above, Liquidbits believes that the fees and costs are grossly excessive. For the time being, however, and in light of the manifest failure of Baker to comply with local Guidelines, Liquidbits submits that a more thorough examination of Baker's time is premature, and therefore reserves the right to request a continued hearing for examination of the reasonableness of particular task billing entries.

## **CONCLUSION**

Baker's asserts that its "fees and expenses are reasonable, and the services of Baker have resulted in significant benefit to the Committee." Liquidbits disagrees, submits that there is no proper basis to support that claim based on the record, and requests that the Application be denied.

Dated: January 15, 20154　　　　　　　　　　DIAMOND McCARTHY LLP


　　　　　　　　　　　　　　　　　　　　　　*/s/ Gregory A. Rougeau*
　　　　　　　　　　　　　　　　　　　　　　Gregory A. Rougeau
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Creditor
　　　　　　　　　　　　　　　　　　　　　　LIQUIDBITS CORPORATION

-9-
OBJECTION TO AMENDED FIRST INTERIM APPLICATION FOR COMPENSATION
Case: 14-30725    Doc# 275    Filed: 01/15/15    Entered: 01/15/15 20:43:14    Page 9 of 9