1   Ashley M. McDow (245114)
    Michael T. Delaney (261714)
2   **BAKER & HOSTETLER LLP**
    11601 Wilshire Boulevard, Suite 1400
3   Los Angeles, CA  90025-0509
    Telephone:    310.820.8800
4   Facsimile:    310.820.8859
    Email:        amcdow@bakerlaw.com
5                 mdelaney@bakerlaw.com

6   Attorneys for the OFFICIAL COMMITTEE OF
    UNSECURED CREDITORS

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN FRANCISCO DIVISION**

11  In re                                    Lead Case No.: 14-30725 DM

12  HASHFAST TECHNOLOGIES, LLC, a            Jointly Administered and Substantively
    California limited liability company,    Consolidated with:
13
            Debtor and Debtor in Possession. Case No.: 14-30866 DM
14
                                             Chapter 11
15  _____

16   x  Affects HASHFAST LLC, a Delaware     Hearing:
        limited liability company,           Date:    [TBD]
17                                           Time:    [TBD]
            Debtor and Debtor in Possession. Place:   Courtroom 22
18                                                    235 Pine Street
                                                      San Francisco, CA 94104
19

20       **DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION SUBMITTED**
             **BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
21                   **FOR HASHFAST TECHNOLOGIES, LLC**

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| I. | | Introduction | 1 |
| | A. | Purpose of the Disclosure Statement | 2 |
| | B. | Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing | 3 |
| | | 1. Time and Place of the Confirmation Hearing | 3 |
| | | 2. Deadline for Voting on the Plan | 3 |
| | | 3. Deadline for Objecting to the Confirmation of the Plan | 4 |
| | | 4. Person to Contact for Further Information Regarding the Plan | 4 |
| | C. | Disclaimer | 4 |
| II. | | Procedural and Factual Background | 5 |
| | A. | Pre-petition Ownership and Management of the Debtors; Description and History of Debtors' Business | 5 |
| | | 1. Formation, Ownership and Management of the Debtors | 5 |
| | | 2. Operation of the Debtors | 5 |
| | | 3. Event Precipitating Bankruptcy | 6 |
| | | 4. Commencement of Bankruptcy Cases | 7 |
| III. | | Significant Events During Bankruptcy Cases | 7 |
| | A. | Joint Administration; Substantive Consolidation | 7 |
| | B. | Retention of Estate Professionals | 8 |
| | C. | Establishment of Claims Bar Date | 8 |
| | D. | Exclusivity | 8 |
| | E. | Use of Cash Collateral | 8 |
| | F. | Debtor's Schedules, Interim Statements and Operating Reports | 9 |
| | G. | Unexpired Leases and Executory Contracts | 9 |
| | H. | Attempts to Appoint a Trustee and/or Convert Bankruptcy Cases | 9 |
| | I. | Sale of Estate Property | 10 |
| | J. | Adversary Proceedings and Related Litigation | 10 |
| | K. | Plan and Disclosure Statement Proceedings | 12 |
| | L. | Claim Objections | 12 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

| IV. | | Financial Information Regarding the Debtors | 12 |
|-----|-----|-----|-----|
| | A. | Historical Financial Information | 12 |
| | B. | Financial Information Provided During the Case | 12 |
| V. | | Classification of Claims and Interests | 13 |
| VI. | | Treatment of Administrative and Priority Claims | 13 |
| | A. | Non-ordinary Course Administrative Claims | 13 |
| | B. | Administrative Claims | 14 |
| | C. | Priority Claims | 14 |
| VII. | | Treatment of Unimpaired Classes | 14 |
| VIII. | | Treatment of Impaired Classes of Claims | 14 |
| | A. | Determination of Allowed Amounts | 14 |
| | B. | Class 1 – General Unsecured Claims | 14 |
| IX. | | Treatment of Classes of Interests | 15 |
| | A. | Class 2 – Equity Interests | 15 |
| X. | | Unexpired Leases and Executory Contracts | 15 |
| XI. | | Means of Implementation | 16 |
| | A. | Means of Implementation | 16 |
| | B. | Dissolution of the Debtors | 16 |
| | C. | Causes of Action | 16 |
| | D. | Selection of Hashfast Trustee | 17 |
| | E. | Dissolution of Committee | 17 |
| | F. | Professional Fees and Expenses | 18 |
| | G. | Funds Generated During Bankruptcy Cases | 18 |
| | H. | Additional Provisions | 18 |
| | | 1. Procedures for Resolving and Treatment of Disputed Claims | 18 |
| XII. | | Tax Consequences of the Plan | 20 |
| | A. | Tax Consequences to Creditors | 21 |
| XIII. | | Confirmation Requirements and Procedures | 21 |

- ii -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| A. | | Who May Vote or Object | 22 |
| | 1. | Who May Object to Confirmation of the Plan | 22 |
| | 2. | Who May Vote to Accept/Reject the Plan | 22 |
| | 3. | What is an Allowed Claim/Interest | 22 |
| | 4. | What is an Impaired Claim/Interest | 22 |
| | 5. | Who is Not Entitled to Vote | 23 |
| | 6. | Votes Necessary to Confirm the Plan | 23 |
| | 7. | Votes Necessary for a Class to Accept the Plan | 23 |
| | 8. | Treatment of Non-Accepting Classes | 23 |
| | 9. | Request for Confirmation Despite Non-acceptance by Impaired Class(es) | 24 |
| B. | | Liquidation Analysis | 24 |
| C. | | Risk Factors | 25 |
| D. | | Feasibility | 26 |
| XIV. | | Miscellaneous Provisions | 26 |
| A. | | Effects of Confirmation | 26 |
| | 1. | Amendments to the Plan | 26 |
| | 2. | Authority to Effectuate the Plan | 26 |
| | 3. | Post-Confirmation Status Report | 26 |
| | 4. | Retention of Professionals | 26 |
| | 5. | United States Trustee Fees | 27 |
| | 6. | Governing Law | 27 |
| | 7. | Binding Effect of the Plan | 27 |
| | 8. | Successors and Assigns | 27 |
| | 9. | Inconsistencies | 27 |
| | 10. | Rules of Construction | 27 |
| | 11. | Rules of Interpretation | 28 |
| B. | | Conditions to Effectiveness of Plan | 28 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

| | | | |
|---|---|---|---|
| C. | Retention of Jurisdiction | | 29 |
| D. | Headings | | 30 |
| E. | Regulatory Approval | | 31 |
| F. | Notices | | 31 |
| G. | Manner of Payment | | 31 |
| H. | Compliance with Tax Requirements | | 32 |
| I. | Transmittal of Distributions | | 32 |
| J. | Distribution of Unclaimed Property | | 33 |
| K. | Fractional Cents; Multiple Distributions | | 33 |
| L. | Saturday, Sunday or Legal Holiday | | 33 |
| M. | Tax Treatment | | 33 |
| | 1. | Section 1146 Exemption | 33 |
| | 2. | Determination of Taxes | 33 |
| N. | Severability | | 34 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

## **DEFINITIONS**

For the purpose of the Plan, the following terms will have the meanings set forth below:

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred after the commencement of the Bankruptcy Case, of preserving Debtors' estates and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Affiliates** shall mean a person or entity that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under the common control with, the person or entity specified.  For the purposes of this definition "control" shall mean (a) a fifty percent (50%) or more common equity ownership or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management of policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

4.      **Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court**.**

5.      **Allowed Amount** shall mean the amount of an Allowed Claim.

6.      **Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim that has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; or (b) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

7.      **Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3003 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3007 or any Order of the Bankruptcy Court.

8.      **Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

9.      **Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

10.      **Baker** shall mean Baker & Hostetler, LLP, general insolvency counsel for the Official Committee of Unsecured Creditors.

11.      **Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

12.      **Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

13.     **Bankruptcy Cases** shall mean these jointly administered and substantively consolidated bankruptcy cases of *In re Hashfast Technology, LLC*, case no. 14-30725 DM, and *In re Hashfast, LLC*, case no. 14-30866 DM, which are pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division pursuant to Chapter 11 of the Code.

14.     **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of California, San Francisco Division, in which Debtors' Bankruptcy Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

15.     **Bankruptcy Estate** shall mean the substantively consolidated estates in the Bankruptcy Cases, created pursuant to Section 541 of the Code, by the commencement of the Debtors' Bankruptcy Cases and shall include all property of the estates as defined in Section 541 of the Code.

16.     **Bar Date** shall mean October 6, 2014—the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims, other than Administrative Claims, in the Bankruptcy Cases.

17.     **Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the Bankruptcy Court is closed.

18.     **Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, Bitcoin, or other similar items.

19.     **Causes of Action** shall mean any and all actions and causes of action (and the proceeds thereof) belonging to the Debtors, whether or not commenced as of the date hereof, including, but not limited to, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105, 502, and/or 544-554 (or equivalent provisions of applicable non-bankruptcy laws), as well as other state and federal causes of action, such as negligence, breach of fiduciary duty, errors, omissions, fraud, misleading statements, and neglect, among others.

20.     **Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION

legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

21.  **Class** shall mean any class into which Claims or Interests are classified pursuant to the Plan.

22.  **Class "__" Claim** shall mean the specific Class into which Claims or Interests are classified pursuant to the Plan.

23.  **Chief Restructuring Officer** or **CRO** shall mean Peter Kravitz of Province, Inc.

24.  **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof as in effect on the Confirmation Date.

25.  **Committee** shall mean the Official Committee of Unsecured Creditors appointed in the bankruptcy case styled *In re HashFast Technologies, LLC*, case no. 14-30725 DM.

26.  **Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

27.  **Confirmation Date** shall mean the date of entry of the Confirmation Order on the official docket by the Bankruptcy Court.

28.  **Confirmation Hearing** means the hearing before the Bankruptcy Court in connection with Confirmation of the Plan.

29.  **Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code.

30.  **Creditor** shall have the same meaning as set forth in Section 101(10) of the Code.

31.  **Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

32.  **Debtors** shall mean Hashfast Technologies, LLC and Hashfast, LLC, collectively.

33.  **Disclosure Statement** shall mean the disclosure statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION

605315884.5

34. **Disallowed Claim** shall mean a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

35. **Disputed Claim** shall mean a Claim against either of the Debtors which is subject to a pending objection but has not been disallowed by a Final Order of the Bankruptcy Court.

36. **Disputed Unsecured Claim** shall mean any Unsecured Claim against either of the Debtors which is subject to a pending objection but has not been disallowed by a Final Order of eth Bankruptcy Court.

37. **Distribution** shall mean the distribution to the Holders of Allowed Claims in accordance with the terms of the Plan.

38. **Effective Date** shall mean a date not later than sixty (60) days after the Confirmation Date, provided that, in no event shall the Effective Date occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met or otherwise waived as provided herein. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still be deemed to have occurred provided that all other conditions to effectiveness as set forth in the Plan have been met or otherwise waived as provided herein.

39. **Equity Interests** shall mean any and all issued or authorized membership interests in the Debtors.

40. **Equity Interest Holder** shall mean the holder of any Equity Interest.

41. **Equipment** shall mean all equipment owned by the Debtors.

42. **Estate** shall mean the substantively consolidated bankruptcy estates in the HFT Bankruptcy and HF Bankruptcy, jointly or individually, as applicable.

43. **Estate Assets** shall mean all the assets, property, and cash of the Debtors (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitation, the Causes of Action.

Case: 14-30725   Doc# 286   Filed: 01/22/15   Entered: 01/22/15 23:32:50   Page 10 of 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

44. **Excess Cash** shall mean excess Cash received from the liquidation of assets by the Hashfast Creditors Trust after payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust, including a reserve of no greater than $50,000, which may, at the discretion of the Hashfast Trustee, be set aside to be distributed as an Unsecured Creditor Distribution as provided for in the Plan.

45. **Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Hashfast Trustee, if a notice of appeal is filed timely and no stay pending appeal has been entered.

46. **Hashfast Creditor Trust** shall mean a trust created under the Plan for the benefit of Holders of Allowed Claims in Class 1.

47. **Hashfast Trust Agreement** shall mean that certain trust agreement pursuant to which the Hashfast Creditor Trust shall be created and governed.

48. **Hashfast Trustee** shall mean Michael G. Kasolas or such other person as the Committee may designate prior to the Effective Date, who shall be appointed to serve as trustee under the Hashfast Trust Agreement and in accordance with the Plan.  The Committee shall provide notice to all parties in interest in the event an alternate trustee is selected.

49. **HF** shall mean Hashfast, LLC, a Delaware limited liability company and debtor and debtor in possession in Case No. 14-30866 DM.

50. **HF Bankruptcy** shall mean *In re Hashfast, LLC*, case no. 14-30866 DM, pending in the United States Bankruptcy Court for the Northern District of California.

51. **HFT** shall mean Hashfast Technologies, LLC, a California limited liability company and debtor and debtor in possession in Case No. 14-30725 DM.

52. **HFT Bankruptcy** shall mean *In re Hashfast Technologies, LLC*, case no. 14-30725 DM, pending in the United States Bankruptcy Court for the Northern District of California.

53. **Holder** shall mean the legal or beneficial holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a holder of a Claim or Interest in such Class or of such type.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 286   Filed: 01/22/15   Entered: 01/22/15 23:32:50   Page 11 of 48

54. **Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

55. **Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

56. **Katten** shall mean Katten Muchin Rosenman, LLP, general insolvency counsel for Hashfast Technologies, LLC, and Hashfast, LLC.

57. **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Committee, the Debtors, or any other party with standing to bring such a challenge.

58. **Non-ordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

59. **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

60. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

61. **Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

62. **Petition Date** shall mean May 9, 2014—the date on which the petitioning creditors commenced the involuntary bankruptcy case against Hashfast Technologies, LLC.

63. **Plan** shall mean this Joint Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

64. **Plan Payments** shall mean payments made by the Hashfast Creditor Trust pursuant to the terms of the Plan including the payment of Non-ordinary Course Administrative Claims.

Case: 14-30725   Doc# 286   Filed: 01/22/15   Entered: 01/22/15 23:32:50   Page 12 of 48

605315884.5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

65. **Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

66. **Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

67. **Priority Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

68. **Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

69. **Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

70. **Pro Rata** shall mean with respect to an Allowed Claim in a given class, that each Allowed Claim shall receive the same proportionate distribution as other Allowed Claims in the same Class.

71. **Representative** shall mean with respect to a particular person, its Affiliates, and any director, officer, member, equity holder, owner, manager, employee, agent, consultant, advisor, or other representative of that person or its Affiliates, including, but not limited to, legal counsel, accountants and financial advisors.

72. **Reorganized Debtor** shall mean Hashfast Technologies, LLC, the surviving substantively consolidated entity which will emerge from the Bankruptcy Cases on the effective Date.

73. **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure. as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

74. **Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors shall only

be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

75. **Unclaimed Property** shall mean any Cash or any other Property of the Debtors and/or the Hashfast Creditor Trust unclaimed for a period of six (6) months after any Distribution.

76. **Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

77. **Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Administrative Claim or Priority Claim.

78. **Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

79. **Unsecured Creditor Distribution** shall mean the distributions to Holders of Allowed Unsecured Claims as provided for in the Plan.

80. **United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 17 located in the Northern District of California, San Francisco, California.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725    Doc# 286    Filed: 01/22/15    Entered: 01/22/15 23:32:50    Page 14 of 48

# DISCLOSURE STATEMENT

## I. INTRODUCTION

Hashfast Technologies, LLC (HFT), a California limited liability company, is engaged in the manufacture and sale of special purpose computers systems and computer chips designed for the processing and analyzing Bitcoin transactional information or "Bitcoin mining." HFT is the wholly-owned subsidiary of Hashfast, LLC (HF), a Delaware limited liability company, which owns or otherwise holds the rights to the intellectual property utilized by HFT in is business operations. HF is not engaged in any business endeavor separate and apart from HFT.

HFT is the debtor in the chapter 11 bankruptcy case styled *In re Hashfast Technologies, LLC*, case no. 14-30725 DM, pending in the United States Bankruptcy Court for the Northern District of California. HF is the debtor in the chapter 11 bankruptcy case styled *In re Hashfast, LLC*, case no. 14-30866 DM, pending in the United States Bankruptcy Court for the Northern District of California. The HFT Bankruptcy and HF Bankruptcy were substantively consolidated by order of the Bankruptcy Court entered on September 28, 2014.

The Debtors continue to operate their joint business venture and manage the Estate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Court has not appointed a chapter 11 trustee or examiner in the Bankruptcy Cases.

The Committee is the proponent of the Chapter 11 Plan of Liquidation. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.** Capitalized terms used and not otherwise defined in the Definitions section of this Disclosure Statement shall have the meaning ascribed to them in the Plan.

Through the Plan, the Court shall approve the creation of a liquidating trust (Hashfast Creditor Trust). On the Effective Date of the Plan, the Debtors shall utilize Cash on hand to pay all Allowed Administrative Claims and Allowed Priority Claims, unless such claimants agree to accept alternate treatment. All remaining assets of the Estate, including, without limitation, the Causes of Action, shall pass into the Hashfast Creditor Trust free and clear of any and all Claims or Interests. Thereafter, the Hashfast Trustee shall administer such assets and prosecute any Causes of Action. The Hashfast Trustee shall then distribute the proceeds from the administration

- 1 -

605315884.5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of the assets of the Hashfast Creditor Trust in the following order: (1) Holders of Allowed Administrative Claims; (2) Holders of Allowed Priority Claims; (3) administrative claims against the Hashfast Creditor Trust; and (4) Holders of Allowed Unsecured Claims.

Upon confirmation of the Plan, the treatment of Allowed Claims and Allowed Interests pursuant to the Plan supersedes any agreements or rights the holders of those Claims or Equity Interests may have with, in or against the Debtors or their assets, except to the extent the Plan expressly provides otherwise, and is in full satisfaction of the legal, equitable, and contractual rights of the holders of the Claims or Equity Interests. Unless the Plan provides otherwise, no distributions will be made and no rights will be retained on account of any Claim or Equity Interest that is not an Allowed Claim or Allowed Interest.

As is required by the Bankruptcy Code, the Plan classifies Claims and Equity Interests into various classes according to their right to priority under the Bankruptcy Code. The Plan states whether each Class of Claims or Equity Interests is impaired and provides the treatment that the Holders of each Allowed Claim or Allowed Interest within each Class shall receive.

## A. **Purpose of the Disclosure Statement**

The purpose of this Disclosure Statement is to provide information: (1) about the history of the Debtors, their business, and the Bankruptcy Cases; (2) concerning the Plan and alternatives to the Plan; (3) advising the holders of Claims and Equity Interests of their rights under the Plan; (4) to assist the Creditors and Equity Interest holders who are entitled to vote on the Plan in making an informed judgment regarding whether they should vote to accept this Plan; and (5) to assist the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer and other advisors to obtain more specific advice on how the Plan could affect you and what is the best course of action for you. Baker & Hostetler, LLP (Baker), general insolvency counsel for the Committee, doed not represent you and, as such, cannot and will not provide any specific advice about how the Plan may affect you and/or your Claim or Equity Interest.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provision(s) will govern.

By order dated [INSERT DATE], the Bankruptcy Court approved this Disclosure Statement as containing "adequate information" concerning the Plan, meaning that it contains sufficient information to enable Creditors and Interest Holders to make an informed judgment in exercising their rights to vote to accept or reject the Plan.

The only Creditors or Interest Holders who may vote for or against the Plan are those who have a Claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired Class. A Class is impaired if the legal, equitable, or contractual rights of the Claim or Equity Interests in the Class are altered. Classes of Claims or Equity Interests that are not impaired are conclusively presumed to have voted to accept the Plan and therefore are not entitled to vote on the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. As such, the terms of the Plan are not yet binding on anyone. However, if the Court later confirms the Plan, then the Plan will be binding on the Debtors, all Creditors and Equity Interest Holders.

**1.    Time and Place of the Confirmation Hearing**

The hearing during which the Bankruptcy Court will determine whether or not to confirm the Plan will take place on [INSERT DATE] in Courtroom 22 of the United States Bankruptcy Court located at 235 Pine Street, San Francisco, CA 94104.

**2.    Deadline for Voting on the Plan**

If you are entitled to vote, it is in your best interest to vote in a timely manner on the enclosed ballot and return the ballot in the enclosed envelope to Baker & Hostetler LLP, Attn: Ashley M. McDow, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025-0509.

YOUR BALLOT MUST BE <u>RECEIVED</u> BY **5:00 P.M. ON [INSERT DATE]** OR IT WILL NOT BE COUNTED.

The Debtor shall file a summary of tabulated ballots on or before [INSERT DATE].

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

**3.** **Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court and served upon the counsel for the Debtor not later than [INSERT DATE].

**4.** **Person to Contact for Further Information Regarding the Plan**

Any interested party desiring further information about the Plan may contact Ashley M. McDow of Baker & Hostetler LLP via email addressed to amcdow@bakerlaw.com or phone at (310) 442-8846.

**C.** **Disclaimer**

The information utilized to prepare the Plan, Disclosure Statement, and the supporting documents is based upon the records created and maintained by the Debtors in the ordinary course of business. Unless otherwise noted, the underlying records are unaudited. The professionals employed by the Committee prepared the Plan and the Disclosure Statement based on this information and have no independent knowledge regarding the accuracy and/or the completeness of the financial data or information contained therein or herein.

The Plan is premised in part on the recovery and liquidation of Bitcoin and/or Bitcoin mining equipment. The value of Bitcoin is volatile. Additionally, the value of Bitcoin mining equipment depends on many factors, including, but not limited to, the difficulty of mining Bitcoin and the price, availability, and performance of competing equipment. The value of Bitcoin and/or Bitcoin mining equipment may affect distributions to Creditors and Equity Interest Holders.

The liquidation analysis, projections of financial performance, and other information contained herein are estimates only, and the timing, amount, and value of actual distributions to Creditors and Equity Interest Holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or projections may or may not prove to be accurate.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Any tax disclosure(s) contained herein is not intended to be used and cannot be used for the purpose of avoiding any tax penalties that may be imposed on any person or entity. All Creditors and Equity Interest Holders should consult their own legal counsel, accountants and/or other advisors as to legal, tax, and other matters concerning their Claims or Interests.

- 4 -

The Bankruptcy Court has not yet determined whether the Plan is confirmable, and makes no recommendation as to whether or not you should support the Plan.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Pre-petition Ownership and Management of the Debtors; Description and History of Debtors' Business

#### 1. Formation, Ownership and Management of the Debtors

HF is a Delaware limited liability company formed on or about May 9, 2013. HFT is a California limited liability company formed on or about June 10, 2013. HF is the parent company of HFT and owner of 100% of the membership interest in HFT. In turn, HF is owned by several individuals and entities in varying percentages, including, but not limited to, Eduardo de Castro (26.94%), Simon Barber (26.94%), Chad Spackman (11.97%),[1] the Port Family Trust (11.97%), and the Wells Family Trust (11.97%). Following the formation of HF, the membership interests were redistributed as additional individuals and entities were added members. True and correct copies of the List of Equity Security Holders for each Debtor are attached hereto collectively as **Exhibit A** and incorporated herein by reference.

As of the Petition Date, the individuals primarily responsible for the day-to-day management and operation of HFT were Simon Barber, Eduardo de Castro, Monica Hushens, and Tim Wong. Following the commencement of the Bankruptcy Cases, several of HFT's principals resigned. Accordingly, in or about August 2014, the Debtors retained Peter Kravitz (Mr. Kravitz) of Province, Inc. (Province), as Chief Restructuring Officer. At present, Mr. Kravitz and Province are principally responsible for the day-to-day management and operation of the Debtors.

#### 2. Operation of the Debtors

The Debtors have at all relevant times been engaged in a single enterprise—namely, the designing, manufacture and sale of application-specific integrated circuit (ASIC) processors designed to process and analyze Bitcoin transactional information or "Bitcoin mining." HFT is

---

[1] Chad Spackman as well as the Port Family Trust and Wells Family Trust, or their trustees, settlors or beneficiaries, are the principals of Sandgate Technologies ("Sandgate"), which is one of the principal engineering firms used by the Debtors.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

principally responsible for research and development, designing, manufacturing, and selling the ASIC and fully-assembled computer systems incorporating the HFT ASIC.

HF is a holding company. HF does not engage in any business independent of HFT. HF has no meaningful business operations, no employees, the same officers as HFT, and the same principal place of business as HFT. HF exists to own certain intellectual property identified on HF's schedules as two United States provisional patent applications and various "trade secrets, mask works related to chip design" (the Intellectual Property) for the benefit of HFT. A true and correct copy of the schedule identifying the Intellectual Property is attached hereto as **Exhibit B** and incorporated herein by reference.

In or about June 2013, the Debtors began designing their first generation Golden Nonce ASIC (GN1), with the assistance of Sandgate and Uniquify, Inc. (Uniquify). Following the development of the GN1, the Debtors worked with DXCorr Design (DXC) to design and develop subsequent generations of the GN1—generations 1.5 (GN1.5) and 2.0 (GN2).

In or about July 2013, HFT began advertising a special purpose computer system built around the GN1 (the BabyJet) for sale and started accepting orders for the "batch one" mining computers in early August 2013. "Batch one" sales were quickly followed by batches two through four. Between August and December 2013, the Debtors sold approximately $18,000,000 in processors, computers, and related equipment.

### 3. Event Precipitating Bankruptcy

Despite a successful pre-sale, the Debtors experienced difficulties and delays in the manufacturing and roll-out of the GN1 that threatened to prevent the Debtors from meeting the December 31, 2013 guaranteed delivery date for "batch one" BabyJets. Accordingly, the Debtors paid to expedite the production of the GN1 processors and, in so doing, incurred additional unforeseen manufacturing costs. The Committee is informed and believe that Debtors utilized pre-sale revenues and funds obtained through the liquidation of Bitcoin holdings to finance the additional manufacturing expenses. However, despite expedited manufacturing, the GN1 processors were not completed until in or about November 2013, which prevented the Debtors from delivering the BabyJet computers and GN1 processors as promised.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

1   As a result, customers began requesting refunds in or about January 2014. The Debtors,

2   however, lacked the financial ability to repay the refunds. The Debtors' failure to pay the refunds

3   requested and fulfill orders in a timely manner ultimately resulted in the commencement of

4   several proceedings, including, but not limited to, multiple lawsuits.

5                    **4.       Commencement of Bankruptcy Cases**

6        On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward

7   Hammond, and Grant Pederson (the Petition Creditors) commenced the HFT Bankruptcy by

8   filing a *Chapter 7 Involuntary Petition* against HFT with the Court.

9        On or about June 3, 2014, HFT filed the *Debtor's Motion to Convert to Chapter 11* and

10  the *Debtor's Conditional Consent to an Order for Relief Regarding Involuntary Petition*. On or

11  about June 4, 2014, the Court entered an order converting the HFT Bankruptcy to one under

12  chapter 11 of the Bankruptcy Code. Since conversion of the HFT Bankruptcy, HFT has operated

13  the business as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108, subject to the

14  stipulated order governing the amount of sales and oversight allowed to the Committee.

15       On or about June 6, 2014 (the "HF Petition Date"), HF filed a voluntary petition for relief

16  under chapter 11 of the Bankruptcy Code commencing the HF Bankruptcy. The Court entered an

17  order substantively consolidating the bankruptcy estates in the Bankruptcy Cases on or about

18  September 28, 2014.

19  **III.    SIGNIFICANT EVENTS DURING BANKRUPTCY CASES**

20       **A.       Joint Administration; Substantive Consolidation**

21       On or about June 6, 2014, the Debtors filed a motion seeking authority to jointly

22  administer the Bankruptcy Cases. On or about July 8, 2014, the Court entered an order approving

23  the joint administration of the Bankruptcy Cases.

24       On or about July 23, 2014, the Committee moved to substantively consolidate the HFT

25  Bankruptcy and HF Bankruptcy. The Debtors did not oppose substantive consolidation and, on

26  or about September 28, 2014, the Court entered an order substantively consolidating the

27  Bankruptcy Cases. The Committee has continued to serve following the substantive

28  consolidation of the Bankruptcy Cases.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

## B.    Retention of Estate Professionals

On or about June 6, 2014, HFT filed an application in the HFT Bankruptcy to employ Katten Muchin Rosenman LLP (Katten) as general bankruptcy counsel (Katten Application).  On or about July 8, 2014, the Court approved the employment of Katten by and through the Katten Application.

On or about July 3, 2014, the Committee filed an application in the HFT Bankruptcy to employ Baker & Hostetler LLP (Baker) as general bankruptcy counsel (Baker Application).  On or about July 23, 2014, the Court entered an order approving the employment of Baker by and through the Baker Application.

On or about July 17, 2014, the Committee filed an application in the HFT Bankruptcy to employ Province as financial advisor.  Thereafter, the Debtors and the Committee agreed to employ Mr. Kravitz of Province as Chief Restructuring Officer to the Estate.  Accordingly, the Committee withdrew its application to employ Province.  Then, on or about November 21, 2014, the Debtors filed an application to employ Mr. Kravitz of Province as Chief Restructuring Officer.  The Court denied the Debtors' application to employ Province without prejudice on the basis that such approval was unnecessary.

## C.    Establishment of Claims Bar Date

On or about June 9, 2014, the Bankruptcy Court set October 6, 2014, as the deadline for filing a proof of claim against the Estate in the Bankruptcy Case.

## D.    Exclusivity

Pursuant to 11 U.S.C. § 1121(d), the Debtors have the exclusive right to file a plan of reorganization or solicit votes on any such plan within the first 120 and 180 days, respectively, after the Petition Date.  The Debtors have not sought or obtained an extension of the exclusivity period.  Accordingly, the exclusivity periods have now expired.

## E.    Use of Cash Collateral

There are no secured creditors holding a security interest in the income or liquid assets of the Estates; accordingly, cash collateral authority is unnecessary.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**F.** **Debtors' Schedules, Interim Statements and Operating Reports**

On or about June 23, 2014, the Debtors filed their schedules and statements of financial affairs, which describe the Debtors' assets and liabilities. On or about August 14, 2014, the Debtors filed amended statements of financial affairs and summaries of their schedules. Copies of the schedules and operating reports may be obtained through the online PACER system or in the Clerk's office for the Court.

**G.** **Unexpired Leases and Executory Contracts**

The Committee is informed and believe that the Debtors have several executory contracts and unexpired leases that may require assumption pursuant to 11 U.S.C. § 365, including license agreement for intellectual property utilized in the ordinary course of business to manufacture the ASIC processors and BabyJet. True and correct copies of the list of executory contracts and unexpired leases identified by the Debtors in their respective bankruptcy schedules are attached hereto collectively as **Exhibit C** and incorporated herein by reference. The Committee shall work with the Debtors to identify the necessary unexpired leases and/or executory contract and shall file a notice of assumption at least ten (10) days prior to the Effective Date.[2]

**H.** **Attempts to Appoint a Trustee and/or Convert Bankruptcy Cases**

Immediately following the commencement of the HFT Bankruptcy, creditor Liquidbits Corporation (Liquidbits) filed a motion seeking the appointment of an interim trustee over the HFT Estate (Liquidbits Trustee Motion). In an effort to amicably resolve the Liquidbits Trustee Motion, the Debtors, Liquidbits, and certain other creditors entered into a stipulation to govern the operation of the Debtors and sale of their assets (Liquidbits Stipulation)—a stipulation which gave effect to an order entered in an arbitration proceeding styled *Liquidbits Corp. v. HashFast Technologies LLC*, AAA Case No. 01-14-0000-1357 (Liquidbits Arbitration). The Bankruptcy Court entered an order approving the stipulation on or about May 28, 2014. Thereafter, the Debtors continued operations in accordance with the Liquidbits Stipulation.

---

[2] The Committee intends to assume all executory contracts and unexpired leases necessary to facilitate the liquidation of the Debtors' assets through the Hashfast Creditor Trust.

On or about August 8, 2014, the Office of the United States Trustee (UST) moved to convert the Bankruptcy Cases to cases under chapter 7 or appoint a chapter 11 trustee over the Estate due to alleged mismanagement and loss to the Estate, and failure to maintain corporate formalities (UST Motion to Convert). The Debtors and Committee opposed the UST Motion to Convert. On or about September 16, 2014, the Court entered an order denying the UST Motion to Convert.

## I.  Sale of Estate Property

On or about July 18, 2014, HFT moved for approval of a sale of substantially all of the Debtors' assets to Liquidbits (Liquidbits Sale). In exchange, Liquidbits agreed to provide debt in the form of a note and a portion of the income from a potential mining operation. The Committee objected on the grounds that the Liquidbits Sale was not sufficiently described and the proposed consideration was illusory. The Court denied the motion to approve the Liquidbits Sale.

Thereafter, the Committee and the Debtors continued to work towards a resolution of the Debtors' financial issues and claims, and preparation of a consensual plan. In furtherance of the consensual plan, the Debtors commenced plans to liquidate certain assets to generate funds necessary to complete the manufacture and/or release of valuable products.

On or about October 23, 2014, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of the Debtors assets, including the Intellectual Property. The Court approved the proposed sale procedure. Ultimately, the Debtors cancelled the proposed auction sale as the Debtors determined that a controlled liquidation would result in a great return to the Estate. The Debtors, however, proceeded with the sale of certain potential causes of action against Simon Barber (the Barber Claims), one of the officers of HFT. The Court approved the sale of the Barber Claims on or about December 23, 2014.

Throughout the Bankruptcy Cases, the Debtors have sold inventory in the ordinary course of business.

## J.  Adversary Proceedings and Related Litigation

As of the Petition Date, numerous state court lawsuits and alternative dispute resolution proceedings were pending. Each action sought to enforce the right to a refund from HFT for the

- 10 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

purchase prices of "Bitcoin mining" equipment. The Debtors have not removed any of the aforementioned cases to the Bankruptcy Court. All prepetition litigation is presently stayed as a result of the automatic stay in the Bankruptcy Cases.

Following the commencement of the Bankruptcy Case, the Debtors commenced an adversary proceeding against Uniquify and Signetics Korea Co., Ltd. (Signetics), two of HFT's suppliers, seeking to compel the turnover of certain Estate property within the possession and/or control of Uniquify and Signetics. Thereafter, the Debtors reached an agreement for the turnover of the sought-after property with Uniquify and Signetics. Accordingly, on or about December 10, 2014, the Debtors voluntarily dismissed the adversary proceeding.

The Committee is in the process of evaluating other potential claims and/or causes of action the Estate possesses against certain individuals and entities, including, but not limited to, avoidance actions under the Bankruptcy Code and/or California law as well as other state and federal causes of action, such as negligence, breach of fiduciary duty, errors, omissions, fraud, misleading statements, and neglect, among others. The Committee and the Debtors have determined that it is most beneficial to the Estate to grant the Committee standing to pursue these causes of action and claims pending the creation of the Hashfast Creditor Trust by and through the Plan. Accordingly, on or about January 9, 2015, the Debtors filed a motion seeking entry of a stipulated order that would grant the Committee to pursue avoidance actions under chapter 5 of the Bankruptcy Code and claims against insiders of the Debtors. In preparation for the prosecution of such actions, the Committee has prepared at least one complaint to avoid and recover a preferential and fraudulent transfers as well as a motion for writ of attachment to secure any potential recovery on the transferred assets. The Committee has also prepared numerous demand letters seeking to recovery substantial preferential transfers.

Additionally, the Committee has tendered a claim against a certain Directors and Officers insurance policy maintained by the Defendants. The insurance claims pertains to certain prepetition negligence and misconduct committed by insiders of the Debtors, including, but not limited to, breach of duty, errors, omissions, misleading statements, and neglect. The insurance carrier has accepted the claim submitted by the Committee.

- 11 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The Debtors may possess other claims or causes of action.  The Committee is continuing

2  to investigate the potential claims and causes of action, and expressly reserves the right to pursue

3  any and all potential causes of action not otherwise released by the Estate.  The Committee shall

4  identify any potential claims and causes of action the Hashfast Creditor Trust may pursue as soon

5  as practicable but in no event later than ten (10) days before the Effective Date of the Plan.

6    **K.    Plan and Disclosure Statement Proceedings**

7    This Disclosure Statement describes the first plan of reorganization submitted by any

8  party in the Bankruptcy Cases.  On or about [INSERT DATE], the Bankruptcy Court held a

9  hearing to determine whether this Disclosure Statement contained sufficient information and met

10  the requirements of 11 U.S.C. § 1125.  On or about [INSERT DATE], the Bankruptcy Court

11  entered an order approving the adequacy of this Disclosure Statement and authorizing the Debtors

12  and Committee to solicit votes on the Plan.

13    **L.    Claim Objections**

14    The Committee is presently in the process of analyzing claims.  The Committee

15  anticipates filing objections to certain Claims or classifications of certain Claims.  The Committee

16  has requested additional information to fully evaluate the Claims but has yet to obtain all

17  necessary information.  Under the Plan, any Claim objections may be brought at any time prior to

18  the Confirmation Date and/or within the first 90 days after the Effective Date of the Plan.

19  **IV.    FINANCIAL INFORMATION REGARDING THE DEBTORS**

20    **A.    Historical Financial Information**

21    Copies of the Debtors' unaudited income statements since the Petition Date in the form of

22  the Debtors' monthly operating reports are attached hereto collectively as **Exhibit D** and

23  incorporated herein by reference.  The monthly operating reports were prepared by the Debtors.

24  Accordingly, the Committee cannot authenticate or attest to the veracity of the information

25  contained therein.

26    **B.    Financial Information Provided During the Case**

27    As set forth above, the Debtors filed schedules in this Bankruptcy Case that provide

28  substantial financial information regarding its assets and liabilities as of the Petition Date.  The

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

schedules are available on-line through PACER or at the Clerk's Office. In addition to such schedules, the Debtors have prepared and filed monthly operating reports as required by the OUST, and those are also available for inspection from the same sources as the schedules.

## V. CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-VI of the Plan are divided into the following classes, which shall be mutually exclusive:

Class 1 — General Unsecured Claims

Class 1 consists of the Allowed Unsecured Claims against the Debtors.

Class 2 – Equity Interests

Class 2 consists of the Allowed Equity Interests in the Debtors.

## VI. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

### A. Non-ordinary Course Administrative Claims

Any Person, including any Professional who has rendered services to Debtors or the Committee during the course of the Bankruptcy Cases and/or that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim, specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this section by any Holder of a Non-ordinary Course Administrative Claim, other than such a Holder, if any, engaged or employed by the Hashfast Creditor Trust, shall bar such a claimant from seeking recovery on such Claim.

**B.** **Administrative Claims**

Holders of all Allowed Administrative Claims against the Debtors shall be paid in full on the Effective Date from available Cash on hand unless the Holders of Allowed Administrative Claims agree to alternate treatment.

**C.** **Priority Claims**

The Debtors are not aware of any bona fide Priority Claims. To the extent any Allowed Priority Claims do exist, such Claims will be paid (in accordance with their priority under Section 507 of the Code) on the Effective Date from available Cash on hand after payment in full of the Allowed Administrative Claims unless the Holders of Allowed Priority Claims agree to alternate treatment under the Plan.

## VII. TREATMENT OF UNIMPAIRED CLASSES

There are no unimpaired classes under the Plan.

## VIII. TREATMENT OF IMPAIRED CLASSES OF CLAIMS

**A.** **Determination of Allowed Amounts**

Treatment prescribed for Claims and Interests in the following sections shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Hashfast Creditor Trust reserves (a) the right to object to any Claim for any reason authorized by applicable bankruptcy and/or non-bankruptcy law as well as (b) the right to assert that any Claim includes amounts subject to equitable subordination or other equitable relief.

**B.** **Class 1 – General Unsecured Claims**

Class 1 consists of all Allowed Unsecured Claims against the Debtors.

The Holders of Allowed Class 1 Claims shall be entitled to receive their Pro Rata share of any and all Unsecured Creditor Distributions of Excess Cash made by the Hashfast Creditor Trust after payment in full of: (i) all Allowed Administrative Claims; (ii) all Allowed Priority Claims;

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and (iii) all administrative expenses of the Hashfast Creditor Trust. Unsecured Creditor Distributions shall be made at the sole discretion of the Hashfast Trustee; provided, however, the Hashfast Trustee shall make Unsecured Creditor Distributions anytime the Excess Cash reaches an amount greater than $100,000. Moreover, absent approval by the Bankruptcy Court, the Hashfast Trustee shall make a final Unsecured Creditor Distribution of the existing Excess Cash no later than the five (5) year anniversary of the Effective Date.

The Class 1 Claims are impaired and entitled to vote to accept or reject the Plan.

## IX.  TREATMENT OF CLASSES OF INTERESTS

### A.  Class 2 – Equity Interests

Class 2 consists of the Allowed Equity Interests of Hashfast, LLC and Hashfast Technologies, LLC. The Class 2 Equity Interests are impaired.

On the Effective Date all of the authorized, issued and outstanding Equity Interests in Hashfast and Hashfast Technologies shall be cancelled and extinguished. Moreover, the Holders of the Equity Interests shall receive no Distribution under the Plan, and are deemed to reject the Plan.

## X.  UNEXPIRED LEASES AND EXECUTORY CONTRACTS

To the extent the Debtors assume any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 1 Claim. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## XI. MEANS OF IMPLEMENTATION

### A. Means of Implementation

Prior to the Effective Date, the Debtors will continue to sell assets and inventory in the ordinary course of business (or outside the ordinary course with approval of the Bankruptcy Court). On the Effective Date, after payment of all Allowed Administrative Claims and Allowed Priority Claims, as required, remaining Cash on hand, if any, and all other assets, including the Causes of Action will be transferred to the Hashfast Creditor Trust free and clear of all liens, claims and encumbrances except as specifically provided in the Plan. The Hashfast Trustee will liquidate the assets transferred to the Hashfast Creditor Trust as soon as practicable. As assets are liquidated, the Hashfast Trustee shall pay any remaining Allowed Administrative Claims and/or Allowed Priority Claims as provided in the Plan along with administrative expenses of the Hashfast Creditor Trust, including reasonable compensation of the Hashfast Trustee not to exceed $50,000 annually without separate application and approval from the Bankruptcy Court. Any excess funds received after payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust, including a reserve no greater than $50,000 at the discretion of the Hashfast Trustee, shall be set aside as Excess Cash annually which shall be distributed as an Unsecured Creditor Distribution as provided for in the Plan.

### B. Dissolution of the Debtors

As soon as practicable after the Effective Date, the Debtors shall be dissolved. The process of dissolving the Debtors will be overseen by the Hashfast Trustee and all costs associated with dissolving the Debtors shall be charged as an administrative cost to the Hashfast Creditor Trust.

### C. Causes of Action

All Causes of Action, including any right, claim or cause of action, belonging to the Debtors or their estates against any Person or Entity, including without limitation, any claim to avoid a transfer under Section 544, 547, 548, 549 or 553(b) of the Code, and/or other state and federal causes of action, such as negligence, breach of fiduciary duty, errors, omissions, fraud, misleading statements, and neglect, among others, shall be transferred to the Hashfast Creditor

Case: 14-30725    Doc# 286    Filed: 01/22/15    Entered: 01/22/15 23:32:50    Page 30 of 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Trust and all expenses associated with prosecuting the Causes of Action and any objections to Claims will be charged as administrative costs to the Hashfast Creditor Trust. The Hashfast Creditor Trust, in its reasonable discretion, shall pursue, settle or release all such rights of action, as appropriate, in accordance with the best interest of and for the benefit of the Holders of unpaid Allowed Claims. As present, the Committee lacks adequate access to pertinent documents and/or information to fully evaluate all potential Causes of Action; accordingly, such Causes of Action are not described herein in further detail. The Committee expressly reserves the right to identify further Causes of Action and/or further identify or describe those Causes of Action reference herein, and shall do so at least ten (10) days before the Effective Date.

### D. Selection of Hashfast Trustee

The Committee has selected Michael G. Kasolas as the trustee for the Hashfast Creditor Trust. The Committee reserves the right to select an alternate Hashfast Trustee. In the event an alternate trustee is selected, the Committee shall notify all interested parties of the selection as soon as practicable but no later than ten (10) days prior to the Effective Date. The Hashfast Trustee shall continue to serve until he/she resigns or is removed for cause by order of the Bankruptcy Court. In the event the Hashfast Trustee resigns or is removed for cause, the Bankruptcy Court will select a replacement Hashfast Trustee from nominations made by Holders of unpaid Allowed Claims.

### E. Dissolution of Committee

Upon the occurrence of the Effective Date, the Committee shall be dissolved, and each individual member and any retained Professional shall be discharged from any further activities in the Bankruptcy Cases. The professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for services rendered or expenses incurred after the Effective Date, except for reasonable fees for (i) services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date as provided for in this Plan.

- 17 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### F. Professional Fees and Expenses

Notwithstanding the 120-day limitation of section 331, each Professional retained or requesting a compensation in the Bankruptcy Cases, pursuant to sections 327, 328, 330, 331 and/or 503(b) of the Code, in connection with fees incurred prior to the Effective Date shall file an application for allowance of final compensation and reimbursement of expenses in the Bankruptcy Cases on or before the thirtieth (30th) day after the Effective Date. Objections, if any, to such applications may be filed on or before the forty-fifth (45th) day after Effective Date.

### G. Funds Generated During Bankruptcy Cases

Funds generated up to and including the Effective Date will be distributed in accordance with the priorities set forth in the Code and this Plan.

### H. Additional Provisions

#### 1. Procedures for Resolving and Treatment of Disputed Claims

##### a. *Prosecution of Objections to Claims*

Unless otherwise ordered by the Bankruptcy Court, after the Effective Date and after notice and a hearing, and except as otherwise provided in the Plan, the Hashfast Creditor Trust shall have the exclusive right to make and file objections to all Claims. The costs and expenses associated with the filing and prosecution of Objections to Claims shall be borne as an administrative expense by the Hashfast Creditor Trust.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any Order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Hashfast Creditor Trust shall have, retain, reserve and be

- 18 -

entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Cases as if the Bankruptcy Cases had not been commenced.

b. *Estimation of Claims*

Pursuant to the Plan, the Committee (or Hashfast Creditor Trust following the Effective Date) may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Code, regardless of whether the Committee (or Hashfast Creditor Trust following the Effective Date) have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Committee (or Hashfast Creditor Trust following the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c. *Cumulative Remedies*

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d. *Disallowance of Certain Claims and Interests*

According to the Plan, all Claims held by Persons against whom the Debtors, the Committee or the Hashfast Creditor Trust has obtained a Final Order establishing liability for a

- 19 -

Case: 14-30725    Doc# 286    Filed: 01/22/15    Entered: 01/22/15 23:32:50    Page 33 of 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan. Both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to the Hashfast Creditor Trust.

### e. *Distributions on Disputed Claims*

Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order provided that the applicable Creditor shall not receive interest on its Allowed Claim, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim.

### f. *Disputed Claim Reserves*

After the Effective Date, the HashFast Trustee shall establish and maintain reserves for all Disputed Class 1 Unsecured Claims. For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the holders of Disputed Claims in such Class(es) had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Hashfast Creditor Trust. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Hashfast Trustee to the Creditor. The balance of such Cash, if any remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all holders of Allowed Claims entitled to receive distributions from the Hashfast Creditor Trust in accordance with the Plan.

## XII. TAX CONSEQUENCES OF THE PLAN

The implementation of the Plan may have federal, state, and local tax consequences to the Debtors, Creditors, and/or Interest Holders. The Committee has not obtained a tax opinion about the effect of the Plan on Creditors or Interest Holders. This Disclosure Statement does not constitute, and is not intended to constitute, either a tax opinion or tax advice to any person, and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

the summary contained in the Plan is provided for informational purposes only. **CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR ADVISORS**.

The discussion below summarizes only certain of the federal income tax consequences associated with implementation of the Plan. It does not cover all aspects of federal income taxation that may be relevant to the Debtors or the Holders of Claims or Interests, nor does the discussion deal with tax issues peculiar to certain types of taxpayers. No aspect of foreign, state, local, or estate and gift taxation is addressed.

### A. Tax Consequences to Creditors

Holders of a Claim who receive Cash in payment of their Claims will recognize gain or loss equal to the difference, if any, between the amount of the Cash payment(s) received that is/are not attributable to interest and their respective adjusted tax bases in their Claims.

The character of any gain or loss recognized by a holder of a Claim as capital gains or ordinary income and, if capital gains, as long-term or short-term, will depend on the holder's status, the nature of the Claim, and the holder's holding period. The character of such gain or loss may also be affected by special rules under the Internal Revenue Code. Any portion of a Claim payment that is attributable to accrued unpaid interest that the holder has not already included in income will result in the recognition of ordinary income. Holders of Claims should consult with their own tax advisors as to the character and timing of recognition of gain or loss.

### XIII. CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider as well as certain deadlines for filing Claims. The Committee CANNOT and DOES NOT represent that the discussion contained below is a complete summary

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of the law on this topic or on those issues that affect the Debtors, Creditors, the Claims or the Interest Holders.

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation and, in the case of a liquidating plan, such as the one the Committee proposes, not all requirements are relevant to confirmation.

### A.  **Who May Vote or Object**

#### 1.  **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

#### 2.  **Who May Vote to Accept/Reject the Plan**

A Creditor or Interest Holder has a right to vote for or against the Plan if that Creditor or Interest Holder has an undisputed Claim which is both (1) Allowed or Allowed for voting purposes and (2) classified in an impaired Class.

#### 3.  **What is an Allowed Claim/Interest**

As noted above, a Creditor or Interest holder must first have an Allowed Claim or Interest to have the right to vote. Generally, any proof of claim or Interest will be deemed Allowed unless there is objection to the Claim or Interest. When an objection to a Claim or Interest is filed, the Creditor or Interest holder holding the Claim or Interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

#### 4.  **What is an Impaired Claim/Interest**

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is impaired under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, a Class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that Class 100% of what they

- 22 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

are owed.  In this case, the Committee believes that all Classes of Creditors are impaired and are entitled to vote to accept or reject the Plan.  Parties who dispute the Committee's characterization of their Claim or Interest as being impaired or unimpaired may file an objection to the Plan contending that the Committee has incorrectly characterized the Class.

### 5.    Who is Not Entitled to Vote

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims that have been objected to and the objection remains unresolved; (3) Claims in unimpaired Classes; (4) Claims entitled to priority pursuant to Section 507(a)(1), (a)(2), (a)(8), or (b); and (5) Claims or Interests in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Section 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because they are required to receive certain treatment specified by the Bankruptcy Code.  Claims or Interests in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  **EVEN IF YOUR CLAIM OR INTEREST IS THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

### 6.    Votes Necessary to Confirm the Plan

If impaired Classes exist, the Bankruptcy Court cannot confirm the Plan unless: (1) all Impaired Classes vote to accept the Plan (without counting the votes of any Insiders within that Class); or (2) at least one Impaired Class votes to accept the Plan and the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes.

### 7.    Votes Necessary for a Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the Plan.  A Class of Interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the Plan.

### 8.    Treatment of Non-Accepting Classes

- 23 -

Case: 14-30725    Doc# 286    Filed: 01/22/15    Entered: 01/22/15 23:32:50    Page 37 of 48

As noted above, even if not all of the impaired Classes vote to accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Code. The process by which non-accepting Classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on non-accepting Classes of Claims or Interests if it meets all consensual requirements, except the voting requirements of Section 1129(a)(8), and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan as referred to in Section 1129(b) and applicable case law.

### 9. Request for Confirmation Despite Non-acceptance by Impaired Class(es)

The Committee will ask the Bankruptcy Court to confirm this Plan by cramdown on all impaired Classes if any of these Classes do not vote to accept the Plan.

### B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test." Under the Best Interest Test, if a Claimant or Interest holder is in an impaired class and that Claimant or Interest holder does not vote to accept the Plan, then that Claimant or Interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee and generally distributed in the following order: (1) to creditors whose interest was secured by property of the estate; (2) to administrative claim holders; (3) pro-rata to creditors whose interest was not secured by property of the estate; and (4) Interest Holders.

In the instant case, the Committee maintains that this requirement is met because Creditors and Interest Holders receive as much if not more under the Plan as they would if the Debtors' assets were liquidated in a chapter 7 as the Plan involves a controlled liquidation and, through the appointment of the Hashfast Trustee, which has certain limits on his compensation, reduces cost of administration and avoids the additional expenses incurred by the chapter 7 trustee and his or her counsel in the course of a chapter 7 liquidation.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

## C.  **Risk Factors**

HOLDERS OF CLAIMS OR INTERESTS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

The principal risks associated with the Plan are as follows:

1.     While the Bar Date for the filing of Claims has passed, there is a possibility that the Debtors could be subject to as-yet-unknown late-filed Claims or Interests.  Although such Claims or Interest may be entitled to Distributions under the Plan, the Committee believes that such claims would be subordinated to any and all timely-filed Claims and Interests and, thus, would not affect any distribution under the Plan.

3.     There are conditions to the confirmation of the Plan and its consummation that are more particularly described herein and in the Plan.  If the Committee is unable to satisfy those conditions, the Plan may not be confirmed.

4.     Even if all classes of Claims that are entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court.  The Committee believes that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Bankruptcy Code, including under section 1129, but there can be no assurance that the Bankruptcy Court will also conclude that the requirements of confirmation have been satisfied.

5.     Although the Committee believes the claims in the Causes of Action are meritorious, litigation is never certain.  The Plan, however, is not dependent on success in the Causes of Action; rather, the Plan is feasible whether or not the Hashfast Creditor Trust succeed in any of the pending or potential litigation.

6.     The value of certain Estate assets depends on the value of Bitcoin and the cost and performance of equipment offered for sale by competitors.  The value of Bitcoin can vary greatly and the availability and performance of competing equipment is difficult if not impossible to know or predict.  Each of these factors may affect the value the Debtors and/or the Hashfast Creditor Trust receives through the liquidation of these assets.

Case: 14-30725   Doc# 286   Filed: 01/22/15   Entered: 01/22/15 23:32:50   Page 39 of 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**D.** **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. As the Plan calls for liquidation, this requirement is inapplicable.

**XIV.** **MISCELLANEOUS PROVISIONS**

**A.** **Effects of Confirmation**

**1.** **Amendments to the Plan**

The Committee reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

**2.** **Authority to Effectuate the Plan**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Hashfast Creditor Trust shall be authorized, without further application to or Order of the Bankruptcy Court to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

**3.** **Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Hashfast Creditor Trust will file status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

**4.** **Retention of Professionals**

After the Effective Date, the Hashfast Creditor Trust may retain professionals on such terms as the Hashfast Trustee deems reasonable without Bankruptcy Court approval. Persons who

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

served as professionals to the Committee prior to the Effective Date may also serve as professionals to the Hashfast Creditor Trust after the Effective Date.

### 5. United States Trustee Fees

On the Effective Date and thereafter until entry of a Final Decree, the Hashfast Creditor Trust shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code ("U.S. Trustee Fees").

### 6. Governing Law

Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of California, without giving effect to the principles of conflicts of laws thereof.

### 7. Binding Effect of the Plan

Pursuant to 11 U.S.C. 1141, the Plan shall be binding upon the Debtors, the Holders of Claims, Equity Interest Holders, Interests in the Debtors, all creditors and all other parties in interest, and their respective successors and assigns.

### 8. Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and assigns of each entity.

### 9. Inconsistencies

To the extent the Plan is inconsistent with the Disclosure Statement or other Plan Documents, the provisions of the Plan shall be controlling. To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

### 10. Rules of Construction

For the purpose of this Plan, unless otherwise provided in this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

document, exhibit or schedule filed or to be filed means such document, exhibit or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to a person or entity as a holder of a Claim or Interest includes that person or entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions or as amended or as modified; and (viii) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or any other provision in this Section.

### 11. Rules of Interpretation

1. Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

2. Any term used in the Plan that is not a defined term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

3. Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

### B. **Conditions to Effectiveness of Plan**

The Effective Date shall not occur until all of the following conditions have been satisfied:

1. The Confirmation Order in form and substance reasonably satisfactory to the Committee shall have been entered by the Bankruptcy Court and shall have become a final, non-appealable order, and not subject to any stay; provided, however, that, if an appeal of the

- 28 -

605315884.5

Confirmation Order is filed but no stay is granted in connection with the appeal, the Committee may permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.    Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in Article V, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtors, or any property thereof, or against the Hashfast Creditor Trust for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3.    Execution of the Hashfast Creditor Trust Agreement in a form acceptable to the Committee.

4.    All ancillary documents necessary to implement and confirm the Plan have been approved by the Committee and affected or executed by the parties, unless the Committee has waived this requirement in writing.

5.    Upon the satisfaction or waiver of each of the foregoing conditions, the Committee shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met or waived.

**C.    Retention of Jurisdiction**

After the Effective Date, the Hashfast Creditor Trust will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Bankruptcy Cases by Order of the

- 29 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Hashfast Creditor Trust in the ordinary course of business without a Bankruptcy Court Order;

3. Any adversary proceedings or contested matters brought by the Committee or the Hashfast Creditor Trust, including but not limited to the Causes of Action;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

6. The issuance of such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. The removal of the Hashfast Trustee and the election of any successor Hashfast Trustee;

8. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

9. All objections to the allowance of any all Claims arising from the rejection of any executory contract or lease;

10. Such other matters as may be provided for in the Code or the Plan;

11. The protection of property of the estate from adverse claims or interference inconsistent with the Plan; and

12. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

**D. <u>Headings</u>**

Article, section, and paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

Case: 14-30725 Doc# 286 Filed: 01/22/15 Entered: 01/22/15 23:32:50 Page 44 of 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## E.     <u>Regulatory Approval</u>

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code.

## F.     <u>Notices</u>

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

**To Debtors:**

Peter Kravitz, CRO
Hashfast, LLC and Hashfast Technologies, LLC:
29209 Canwood St., Suite 210
Agoura Hills, CA 91301

With copies to:

Peter Siddiqui, Esquire
Katten Muchin Rosenman, LLP
525 W. Monroe St.
Chicago, IL 60661-3693
Email:  peter.siddiqui@kattenlaw.com
Fax:  (312) 902-1061

**Official Committee of Unsecured Creditors of Hashfast Technologies, LLC**

Ashley McDow, Esq.
Baker & Hostetler LLP
11601 Wilshire Blvd., 14th Fl.
Los Angeles, CA 90025-0509
Email: amcdow@bakerlaw.com
Fax: (310) 820-8859

## G.     <u>Manner of Payment</u>

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Hashfast Creditor Trust, by wire transfer, by automated clearing house transfer from a domestic bank, or transfer of Bitcoin from a Bitcoin wallet belonging to the Hashfast Creditor Trust, at the option of the Hashfast Creditor Trust.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

## H. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Hashfast Creditor Trust in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Hashfast Creditor Trust may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Hashfast Creditor Trust, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Hashfast Creditor Trust to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Hashfast Creditor Trust the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Hashfast Creditor Trust to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

## I. Transmittal of Distributions

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Hashfast Creditor Trust pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules not defined or in the Debtors' books and records.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**J.**     **Distribution of Unclaimed Property**

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Hashfast Creditor Trust.

**K.**     **Fractional Cents; Multiple Distributions**

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

**L.**     **Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**M.**     **Tax Treatment**

**1.**     **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors or subsequent transfer of the HashFast Creditor Trust pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**2.**     **Determination of Taxes**

The Committee and the Hashfast Creditor Trust are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any and all tax returns filed for, or on behalf of, the Debtors for any and all taxable period (or portions thereof) through the Effective Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

## N. **Severability**

If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the term and provisions of the Plan may, at the Committee's option remain in full force and effect and not be deemed affected. However, the Committee reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Dated:    January 22, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _____
Ashley M. McDow
Michael T. Delaney

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -