CHRISTOPHER D. SULLIVAN (148083)
GREGORY A. ROUGEAU (194437)
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200
Facsimile: (415) 263-9200
e-mail: csullivan@diamondmccarthy.com
grougeau@diamondmccarthy.com

Counsel for Creditor
LIQUIDBITS CORPORATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company,<br><br>Debtor and Debtor-In-Possession.<br><br>☒Affects HASHFAST LLC, a Delaware limited liability company,<br><br>Debtor and Debtor-In-Possession. | Case No. 14-30725<br><br>(Substantively consolidated with *In re HashFast LLC*, Case No. 14-30866)<br><br>Chapter 11<br><br>**OBJECTION OF LIQUIDBITS CORPORATION TO CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT FOR HASHFAST TECHNOLOGIES, LLC AND HASHFAST, LLC**<br><br>Date: February 17, 2015<br>Time: 9:30 a.m.<br>Place: Courtroom 22<br>Judge: Hon. Dennis Montali |

LIQUIDBITS CORPORATION ("Liquidbits") hereby respectfully objects to the conditional approval of the "Consolidated Plan of Liquidation and Disclosure Statement For


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 1 of 10

HashFast Technologies, LLC and HashFast, LLC" (the "Disclosure Statement") filed by the Official Committee of Unsecured Creditors (the "Committee"), as follows:

## INTRODUCTION

While objections to the Disclosure Statement may be made by creditors at the final confirmation hearing on this matter, creditors should not have to wait for that hearing to voice their objections. The Disclosure Statement is deficient on its face.

The Disclosure Statement simply does not provide creditors and parties in interest with information of the type sufficient for a "hypothetical reasonable investor … to make an informed judgment about the plan," as required by Section 1125(a) of the Bankruptcy Code. The problems with the Disclosure Statement are numerous: the Committee has failed to adequately describe pending or prospective, postconfirmation litigation, the cost of pursuing such litigation, and the likely net benefit to the estate; the Committee has failed to fully describe what unsecured creditors will receive on account of the liquidation proposed in the Plan, and when creditors will receive distributions; and the Committee's liquidation analysis is deficient, erroneous, and self-serving.

The Court should deny approval of the Disclosure Statement, even on a conditional basis. Simply put, it is woefully inadequate, and should not be disseminated to creditors.

## STATEMENT OF FACTS

### I. PROCEDURAL POSTURE OF THESE CHAPTER 11 CASES.

In the Disclosure Statement, the Committee describes generally the history of these cases. That history is hardly a testament to the success of the "orderly liquidation" the Debtors and Committee chose to pursue in these cases. As things presently stand, the Debtors' estates are indisputably administratively insolvent. The administrative insolvency has only been compounded by the Committee's decision to pursue a plan of liquidation, rather than simple conversion to Chapter 7. The Committee claims to have spent substantial time investigating potential claims, but such claims (at best) remain shrouded in mystery.

On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson (collectively, the "Petitioning Creditors") commenced an involuntary bankruptcy under chapter 7 of Title 11 of the United States Code (the "Bankruptcy


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 2 of 10

Code") against HashFast Technologies, LLC ("HashFast Technologies").

HashFast Technologies subsequently consented to entry of an order for relief, and moved to convert the case to Chapter 11. Its case was converted to Chapter 11 on June 4, 2014, by Order of the Court.

On June 6, 2014, HashFast, LLC ("HF," and collectively with Hashfast Technologies, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.

The Debtors were in the business of designing, developing, manufacturing and selling certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

On or about June 23, 2014, the Office of the United States Trustee appointed the Committee, and the Debtors' Chapter 11 cases were later ordered jointly administered. The Debtors have since acted as debtors in possession ever since.

From the outset of the cases, it was made apparent to all creditors and parties in interest that the best interests of the estate dictated an expeditious sale of the Debtors' inventory. Accordingly, on July 18, 2014, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief (the "Liquidbits Sale Motion").

In that Motion, the Debtors sought to, among other things, sell most of the Debtors' inventory to a new entity to be formed by Liquidbits, and assign that purchasing entity certain of Debtors' licenses, in exchange for cash sufficient in the total amount of up to $2,000,000 to pay for any allowed unpaid administrative and priority claims, any cure costs for any executory contracts to be assumed and assigned to the new entity, and a cash reserve to wind up the case. As set forth in that Motion, time was of the upmost essence in that proposed transaction, as the value of the Debtors' inventory would almost certainly diminish with delay, as the Debtors' inventory


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 3 of 10

consisted mainly of ASIC chips, mining boards as well as various other system components used in the Bitcoin mining business, and the value of such processing capabilities was subject to rapid depreciation.

The Committee opposed the Liquidbits Sale Motion, and on or about July 26, 2014, the Court issued a tentative ruling denying that motion. No further motion was filed.

The Committee asserts that following the Court's denial of the Liquidbits Sale Motion, the Committee and the Debtors "worked together to formulate an exit strategy that would provide the Estate with the best possible chance for recovery." (Disclosure Statement, p. 9, ll. 9-10). The end result of those efforts: the Debtors have now ceased ordinary course operations, and have liquidated nearly all, if not all, of their entire inventory, with no return to creditors.

According to the Disclosure Statement, there remains only $78,603 in cash on hand in the estates (Id., p. 11, ll. 20-22); preconfirmation administrative claims alone are projected to be approximately $1,200,000 (Id., p. 12, ll. 17-18).

## II. DESCRIPTION OF THE DISCLOSURE STATEMENT AND PROPOSED PLAN.

The Committee's Disclosure Statement is simple, but its simplicity is not a virtue. It fails to provide any meaningful information that creditors may rely upon in evaluating whether this case should remain in Chapter 11, or be converted to Chapter 7.

### A. Creation of the "Hashfast Creditors Trust."

The Committee proposes the creation of a "Hashfast Creditors Trust" into which all estate assets, following payment of professional fees and other administrative expenses, "shall pass." (Disclosure Statement, p. 1, ll. 21-24). The Disclosure Statement does not include a copy of the proposed trust document, even in draft form.

### B. Description of Litigation.

The Committee asserts that the "Hashfast Trustee" shall administer the "Trust Assets," which essentially means prosecution of litigation. (Id., p. 1, ll. 24-25). The Committee estimates that the "value" of the estates' litigation claims is $10,000,000. (Id., p. 11, l. 21). The Disclosure Statement is completely silent as to how the Committee estimated the value of the estates' claims.

The identity of prospective defendants is also not set forth in the Disclosure Statement. And the description of nature of the claims is hopelessly vague:

> The Committee is in the process of evaluating other potential claims and/or causes of action the Estate may possess against certain Persons, including, but not limited to, avoidance actions under the Bankruptcy Code and/or California law as well as other state and federal causes of action . . . .

(Disclosure Statement, p. 10, ll. 5-10). Additionally, nowhere in the Disclosure Statement has the Committee provided any analysis as to the likely net recovery for creditors, since the Disclosure Statement is silent as to fees and costs associated with prosecuting the undescribed litigation.

In sum, the Disclosure Statement fails to set forth with whom the "Hashfast Trustee" might litigate, under what theories of liability, how much the litigation may cost, and what creditors may receive from that litigation.

**C. Treatment of Impaired Claims.**

The treatment of the impaired classes of claims in the Disclosure Statement is also, and perhaps necessarily, imprecise. Under the Plan, the Debtors' unsecured creditors comprise the sole impaired class of creditors. The Committee states that the total amount of unsecured claims is approximately $40,750,000.

Under the Plan, unsecured creditors are supposed to receive periodic, *pro rata* distributions of "Excess Cash"- defined as "Cash in the Hashfast Creditors Trust remaining after creation of the Trust Reserve and payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust"- at the discretion of the "Hashfast Trustee." (Disclosure Statement, p. 13, ll. 20-23). When the "Hashfast Creditors Trust" is terminated, a final distribution shall be made from residual trust assets.

While the general idea underlying the "Hashfast Creditors Trust" is plain enough, the Disclosure Statement fails to provide an estimate- or even a range of estimates- as to what unsecured creditors might expect as a return on their allowed claims.

**D. Liquidation Analysis.**

Notwithstanding that the Disclosure Statement fails to describe with any precision the litigation which will comprise the trust *res*, or even let creditors know what they might expect in


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 5 of 10

terms of a distribution, the Committee asserts that the "Best Interest of Creditors Test" is met in these cases because the Plan involves a "controlled liquidation" (as opposed to an uncontrolled one) and, with the appointment of the "Hashfast Trustee," costs of administration will be reduced.

In ostensible support for that proposition, the Disclosure Statement includes a "Liquidation Analysis" as Exhibit F. In that analysis, the Committee estimates that the percentage recovery to unsecured creditors through the "controlled liquidation" will be between 4% and 23.63%, versus a distribution to unsecured creditors of between 3.73% and 22.77% in a Chapter 7 case. The analysis presumes that the fees and costs incurred by professionals retained by the "Hashfast Trustee" and a Chapter 7 Trustee will be precisely the same. It therefore minimizes that the "percentage recovery" in the analysis does not provide unsecured creditors with any real idea as to what they might expect to recover in either a Chapter 11, or a Chapter 7.

Perhaps more problematic is that the analysis' math is simply wrong. According to the Committee, the grand total between estimated Chapter 7 administrative expenses, and estimated Hashfast Creditors Trust administrative expenses, is $3,250 (i.e., the "high" estimated Chapter 7 expenses are $348,108.09, and the "high" estimated trust administrative expenses are $344,858.09; the "low" estimated Chapter 7 expenses are $108,108.09, and the "low" estimated trust administrative expenses are $104,858.09), but somehow that $3,250 difference between the administrative cost estimates translates to a $348,108 difference in the proceeds available in Chapter 11, versus Chapter 7. The Committee's liquidation analysis is flawed and mathematically incorrect. Chapter 11 is hardly the attractive alternative the Committee would have the creditors believe it to be.

## <u>LEGAL ARGUMENT</u>

### I. STANDARDS APPLICABLE TO APPROVAL OF DISCLOSURE STATEMENTS.

Meaningful and accurate disclosure is at the heart of the Chapter 11 process. *Oneida Motor Freight, Inc.* v. *United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *H & L Dev., Inc.* v. *Arvida/JMB Partners* (*In re H & L Dev., Inc.)*, 178 B.R. 71, 74 (Bankr. E.D. Pa. 1994). The Disclosure Statement is the Bankruptcy Code's tool for providing interested parties with information to decide how to vote on, and information to decide whether to


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 6 of 10

object to, the Plan. *See In re California Fidelity, Inc.*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996). Effective disclosure requires the dissemination of "adequate information," *Knupfer* v. *Wolfberg* (*In re Wolfberg)*, 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000), defined under the Bankruptcy Code to include:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

What constitutes adequate information varies from case to case. *Texas Extrusion Corp.* v. *Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 560 (Bankr. C.D. Cal. 1988). The determination of what is adequate information is "subjective" and is "largely within the discretion of the bankruptcy court." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (9th Cir. B.A.P.) (internal quotations and citations omitted); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 563 (Bankr. C.D. Cal. 1988). As a general rule, "[t]he [plan] proponent should be biased towards more disclosure than less." *Official Comm. of Unsecured Creditors* v. *Michelson (In re Michelson)*, 141 B.R. 715, 720 (Bankr. E.D. Cal. 1992). In that vein, courts have established certain minimum disclosure requirements — information that must be contained in every disclosure statement — including, but not limited to, a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7, information relevant to the risks being taken by the creditors and interest holders, the actual or projected value that can be obtained from avoidable transfers, and the existence, likelihood and possible success of nonbankruptcy litigation. *See, e.g., In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989); *In re Microwave Prod. of Am., Inc.*, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989).

Measured against the foregoing principles, the Committee's Disclosure Statement is seriously lacking. It should not be approved. It fails to provide adequate information, and what little information it has provided is simply not accurate.


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 7 of 10

## II. THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION, AND CANNOT BE APPROVED, EVEN ON A CONDITIONAL BASIS.

### A. The Disclosure Statement Contains Insufficient Information Concerning The Trust.

As set forth *supra*, apart from mentioning that a trust will be created, that Michael Kasolas will be the trustee, and that the trustee shall essentially have nearly complete discretion to oversee retention of professionals, prosecution of litigation, and distribution of funds, nothing is mentioned as to the terms of the Hashfast Creditor Trust. No proposed trust document is attached to the Disclosure Statement. Instead, the Committee proposes to simply have discretion itself to bind all creditors to trust terms sometime after confirmation. (Disclosure Statement, p. 28, ll. 24-25). The absence of any real disclosures as to trust terms does not satisfy Section 11 U.S.C. § 1125(a)(1)'s requirement that impaired creditors be provided sufficient information to make informed judgment about the Plan.

### B. The Disclosure Statement Contains Insufficient Information Concerning The Distributions To Unsecured Creditors.

It is axiomatic that a creditor should be able to discern three things from a disclosure statement: (1) what it will get; (2) when it will get it, and (3) the conditions precedent to distribution. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Committee's Disclosure Statement fails to meet this minimum standard.

Nowhere in the Disclosure Statement does the Committee state what creditors will get, when creditors will get their distributions, and the conditions precedent to the distributions. Instead, the Committee states, simply, that creditors will receive a *pro rata* share of some undetermined amount, to be distributed by the Hashfast Trustee at a time he chooses, following resolution of ambiguously described litigation the Hashfast Trustee will have sole discretion to prosecute, all pursuant to a Hashfast Creditor Trust whose terms are undisclosed.

Creditors are entitled to know more than what is set forth in the Disclosure Statement before having to vote on the Plan. Approval of a disclosure statement should be withheld if it "does not contain such information so that all creditors . . . can make an intelligent and informed


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 8 of 10

decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988). That description fits the Committee's Disclosure Statement. It should not be approved.

### C. The Estates' Primary Asset, Postconfirmation Litigation, Is Insufficiently Described.

Also militating against approval of the Disclosure Statement is the Committee's complete failure to describe the estates' primary asset- litigation- with any specificity.

It is almost a matter of hornbook law that any pending or contemplated litigation be fully, and completely described, in detail, in a disclosure statement. *See In re Old South Transportation Co., Inc.*, 134 B.R. 660, Fn. 17 (Bankr. M.D. Ala. 1991). With regard to avoidance actions, which seem to be a substantial portion of the Committee's contemplated litigation, *Kmart Corp. v. Intercraft Co.* (*In re Kmart Corp.*), 310 B.R. 107, 115-16 (Bankr. N.D. Ill. 2004), offers an example of the type of disclosure required. In what was a considerably larger and more complex chapter 11 case than this, Kmart was nonetheless able to provide in its disclosure statement (1) an estimate of the total potential preference payments made to prepetition creditors; (2) an estimate of the dollar amount of payments that might be subject to "new value" defenses; (3) an estimate of the dollar amount of payments that might be subject to "ordinary course" defenses; and (4) the impact on recoveries of the costs of litigation and litigation risks - all of which supported an estimated recovery amount that was disclosed.

Nothing even remotely approaching these types of disclosures has been made in the Disclosure Statement. Indeed, despite the Committee's ostensible months-long evaluation of the estates' claims, the Disclosure Statement offers creditors absolutely nothing by way of tangible information regarding litigation, apart from a general recitation of the types of claims the Hashfast Creditor Trust might or might not pursue against unknown defendants. The Committee cannot seriously believe that complies with the requirements of the Bankruptcy Code.

### D. The Liquidation Analysis Is Not Supported By Any Data, And Is Inaccurate.

Bankruptcy courts have long recognized that that a liquidation analysis is one of the most


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 9 of 10

critical components of a disclosure statement. *See In re Sierra-Cal*, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997). That proposition has apparently escaped the Committee.

As described above, the Committee has concluded that unsecured creditors would receive $348,108 more in Chapter 11 than in Chapter 7. That simply is not accurate, and is not supported by any tangible data.

As an initial matter, the Liquidation Analysis presumes those professionals' fees in Chapter 7 and in Chapter 11- presumably the Committee's present counsel- are "likely equal." Nothing supports that proposition. Further, the Committee ignores that in Chapter 7, the Court, the United States Trustee, and creditors may review the terms of the professionals' employment in Chapter 7, and may object to fees. That simply will not occur if the Committee confirms its Plan.

More importantly, the delta between Chapter 11 and Chapter 7, even under the Committee's self-serving analysis, is a mere $3,250, not $348,108; the delta is apparently comprised of Mr. Kasolas' agreement to accept slightly less than he would accept if he were appointed a Chapter 7 trustee in these cases. For $3,250, Liquidbits- and assuredly other creditors- prefers conversion, with the concomitant appointment of a Chapter 7 Trustee that can independently review the propriety of the Chapter 11 professionals' fee applications, and can independently retain Chapter 7 professionals to assist in liquidation of the estates.

**CONCLUSION**

WHEREFORE, Liquidbits respectfully requests that the Court deny approval of the Disclosure Statement. It completely fails to satisfy Section 1125(a)(1), and hardly offers creditors the type of information necessary to evaluate whether these cases should remain in Chapter 11.

Dated: February 10, 2015

DIAMOND McCARTHY LLP

*/s/ Gregory A. Rougeau*
Gregory A. Rougeau
Attorneys for Creditor
LIQUIDBITS CORPORATION


Case: 14-30725 Doc# 303 Filed: 02/10/15 Entered: 02/10/15 17:19:03 Page 10 of 10