Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com

Attorneys for the OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Lead Case No.: 14-30725 DM |
| HASHFAST TECHNOLOGIES, LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor in Possession. | Case No.: 14-30866 DM |
| | Chapter 11 |
| x  Affects HASHFAST LLC, a Delaware limited liability company, | Hearing:<br>Date: [TBD]<br>Time: [TBD]<br>Place: Courtroom 22 |
| Debtor and Debtor in Possession. | U.S. Bankruptcy Court<br>235 Pine Street<br>San Francisco, CA 94104 |

**CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT
FOR HASHFAST TECHNOLOGIES, LLC, AND HASHFAST, LLC,
DATED FEBRUARY 16, 2015**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................. 1

II.     VOTING AND OBJECTING TO CONFIRMATION ........................................ 2

        1.      TIME AND PLACE OF THE CONFIRMATION HEARING ................. 2

        2.      VOTING ON THE PLAN ....................................................... 3

        3.      DEADLINE FOR VOTING ON THE PLAN ........................................... 3

        4.      DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN ............................................................................ 3

        5.      PERSON TO CONTACT FOR FURTHER INFORMATION REGARDING THE PLAN ........................................................... 3

III.    DISCLAIMER ................................................................... 3

IV.     PROCEDURAL AND FACTUAL BACKGROUND ........................................... 4

        A.      PRE-PETITION OWNERSHIP AND MANAGEMENT OF THE DEBTORS; DESCRIPTION AND HISTORY OF DEBTORS' BUSINESS ........................... 4

                1.      FORMATION, OWNERSHIP AND MANAGEMENT OF THE DEBTORS ............................................................... 4

                2.      OPERATION OF THE DEBTORS ........................................... 5

                3.      EVENTS PRECIPITATING BANKRUPTCY ......................... 6

                4.      COMMENCEMENT OF BANKRUPTCY CASES ................................. 6

V.      SIGNIFICANT EVENTS DURING BANKRUPTCY CASES ......................... 6

        A.      JOINT ADMINISTRATION; SUBSTANTIVE CONSOLIDATION ................... 6

        B.      RETENTION OF ESTATE PROFESSIONALS .................................... 7

        C.      ESTABLISHMENT OF CLAIMS BAR DATE .................................... 7

        D.      EXCLUSIVITY ........................................................... 7

        E.      USE OF CASH COLLATERAL ............................................... 7

        F.      DEBTORS' SCHEDULES, INTERIM STATEMENTS AND OPERATING REPORTS ........................................................... 8

        G.      UNEXPIRED LEASES AND EXECUTORY CONTRACTS .............................. 8

        H.      ATTEMPTS TO APPOINT A TRUSTEE AND/OR CONVERT BANKRUPTCY CASES ........................................................ 8

        I.      SALE OF ESTATE PROPERTY .............................................. 8

        J.      ADVERSARY PROCEEDINGS AND RELATED LITIGATION ...................... 9

- i -

K.     CLAIM OBJECTIONS ............................................................. 11

VI.    FINANCIAL INFORMATION REGARDING THE DEBTORS ..................................... 11

VII.   CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 11

VIII.  TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ........................... 12

       A.     NON-ORDINARY COURSE ADMINISTRATIVE CLAIMS .......................... 12

       B.     ADMINISTRATIVE CLAIMS ............................................. 12

       C.     PRIORITY CLAIMS ................................................... 13

IX.    TREATMENT OF UNIMPAIRED CLASSES ................................... 13

X.     TREATMENT OF IMPAIRED CLASSES OF CLAIMS .............................. 13

       A.     DETERMINATION OF ALLOWED AMOUNTS ................................. 13

       B.     CLASS 1 – GENERAL UNSECURED CLAIMS ............................... 14

XI.    TREATMENT OF CLASSES OF INTERESTS ................................. 15

       A.     CLASS 2 – EQUITY INTERESTS ....................................... 15

XII.   UNEXPIRED LEASES AND EXECUTORY CONTRACTS ......................... 15

XIII.  MEANS OF IMPLEMENTATION ..................................... 16

       A.     MEANS OF IMPLEMENTATION .......................................... 16

       B.     CAUSES OF ACTION ................................................. 17

       C.     SELECTION AND COMPENSATION OF HASHFAST TRUSTEE ................ 17

       D.     DISSOLUTION OF COMMITTEE ......................................... 18

       E.     PROFESSIONAL FEES AND EXPENSES ................................. 18

       F.     ADDITIONAL PROVISIONS ........................................... 18

              1.     DISTRIBUTIONS FROM THE HASHFAST CREDITOR TRUST ....... 18

              2.     PROCEDURES FOR RESOLVING AND TREATMENT OF
                     DISPUTED CLAIMS ........................................... 19

XIV.   TAX CONSEQUENCES OF THE PLAN .......................................... 21

       A.     TAX CONSEQUENCES TO CREDITORS AND EQUITY INTEREST
              HOLDERS ........................................................... 21

XV.    CONFIRMATION REQUIREMENTS AND PROCEDURES ....................... 22

       A.     WHO MAY VOTE OR OBJECT ........................................... 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

|     |     |     |     |     |
|-----|-----|-----|-----|-----|
| | | 1. | WHO MAY OBJECT TO CONFIRMATION OF THE PLAN | 22 |
| | | 2. | WHO MAY VOTE TO ACCEPT/REJECT THE PLAN | 23 |
| | | 3. | WHAT IS AN ALLOWED CLAIM/INTEREST | 23 |
| | | 4. | WHAT IS AN IMPAIRED CLAIM/INTEREST | 23 |
| | | 5. | WHO IS NOT ENTITLED TO VOTE | 23 |
| | | 6. | VOTES NECESSARY TO CONFIRM THE PLAN | 24 |
| | | 7. | VOTES NECESSARY FOR A CLASS TO ACCEPT THE PLAN | 24 |
| | | 8. | TREATMENT OF NON-ACCEPTING CLASSES | 24 |
| | | 9. | REQUEST FOR CONFIRMATION DESPITE NON-ACCEPTANCE BY IMPAIRED CLASS(ES) | 25 |
| | B. | | LIQUIDATION ANALYSIS | 25 |
| | C. | | RISK FACTORS | 26 |
| | D. | | FEASIBILITY | 26 |
| XVI. | | | MISCELLANEOUS PROVISIONS | 27 |
| | A. | | EFFECTS OF CONFIRMATION | 27 |
| | | 1. | AMENDMENTS TO THE PLAN | 27 |
| | | 2. | AUTHORITY TO EFFECTUATE THE PLAN | 27 |
| | | 3. | POST-CONFIRMATION STATUS REPORT | 27 |
| | | 4. | RETENTION OF PROFESSIONALS | 27 |
| | | 5. | UNITED STATES TRUSTEE FEES | 28 |
| | | 6. | GOVERNING LAW | 28 |
| | | 7. | BINDING EFFECT OF THE PLAN | 28 |
| | | 8. | SUCCESSORS AND ASSIGNS | 28 |
| | | 9. | INCONSISTENCIES | 28 |
| | | 10. | RULES OF CONSTRUCTION | 28 |
| | | 11. | RULES OF INTERPRETATION | 29 |
| | B. | | CONDITIONS TO EFFECTIVENESS OF PLAN | 29 |
| | C. | | RETENTION OF JURISDICTION | 30 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

D. HEADINGS ................................................................................ 31

E. NOTICES .................................................................................. 31

F. MANNER OF PAYMENT .......................................................... 32

G. COMPLIANCE WITH TAX REQUIREMENTS ................................ 32

H. TRANSMITTAL OF DISTRIBUTIONS ........................................ 33

I. DISTRIBUTION OF UNCLAIMED PROPERTY ............................. 33

J. FRACTIONAL CENTS; MULTIPLE DISTRIBUTIONS .................... 33

K. SATURDAY, SUNDAY OR LEGAL HOLIDAY ............................. 34

L. TAX TREATMENT ...................................................................... 34

1. SECTION 1146 EXEMPTION ................................................ 34

2. DETERMINATION OF TAXES ............................................. 34

M. SEVERABILITY ....................................................................... 34

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 16, 2015

605908435.1

Case: 14-30725    Doc# 311    Filed: 02/16/15    Entered: 02/16/15 22:28:54    Page 5 of 47

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## **DEFINITIONS**

2      For the purpose of this Consolidated Plan of Liquidation and Disclosure Statement, the

3  following terms will have the meanings set forth below:

4      1.     **Administrative Claim** shall mean a Claim for payment of an administrative

5  expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section

6  507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses

7  incurred after the commencement of the Bankruptcy Case, of preserving Debtors' estates and

8  operating the business of the Debtors, including wages, salaries or commissions for services,

9  compensation for legal and other services and reimbursement of expenses awarded under

10  Sections 330(a) or 331 of the Code and all fees and charges assessed against the Bankruptcy

11  Estate under Chapter 123 of Title 28, United States Code.

12      2.     **Administrative Claims Bar Date** shall mean the date by which all Administrative

13  Claims must be filed with the Court to be allowed.  The Administrative Claims Bar Date will be

14  established by the Court as a specific date prior to the Confirmation Date.

15      3.     **Allowed Administrative Claim** shall mean all or that portion of any

16  Administrative Claim, which has been or becomes allowed by Order of the Court**.**

17      4.     **Allowed Amount** shall mean the amount of an Allowed Claim.

18      5.     **Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim

19  that has been filed with the Court in accordance with the provisions of Section 501 of the Code

20  and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or

21  Order of the Court; or (b) deemed an Allowed Claim (including Allowed Secured Claims and

22  Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Court.

23  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim,

24  pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not

25  include any Claim as to which an objection to or proceeding challenging the allowance thereof

26  has been interposed. Notwithstanding the filing of any such objection or the commencement of

27  any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the

28  provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Court, an

Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

6.    **Allowed Equity Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed.

7.    **Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

8.    **Bankruptcy Cases** shall mean these jointly administered and substantively consolidated bankruptcy cases of *In re Hashfast Technology, LLC*, case no. 14-30725 DM, and *In re Hashfast, LLC*, case no. 14-30866 DM, which are pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division pursuant to Chapter 11 of the Code.

9.    **Bar Date** shall mean October 6, 2014—the date fixed by Order of the Court as the last date for the filing of Claims, other than Administrative Claims, in the Bankruptcy Cases.

10.    **Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, Bitcoin, or other similar items.

11.    **Causes of Action** shall mean any and all actions and causes of action (and the proceeds thereof) belonging to the Debtors, the Estate, and/or the Hashfast Creditor Trust, whether or not commenced as of the date hereof, including, but not limited to, all proceedings, commenced or to be commenced pursuant to Code Sections 105, 362, 502, and/or 544-554 (or equivalent provisions of applicable non-bankruptcy laws), as well as other state and federal causes of action founded in tort, contract, and/or equity, such as negligence, breach of fiduciary duty, breach of contract, breach of covenant, errors, omissions, fraud, misleading statements, and neglect, among others.

12.    **Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

13. **Class** shall mean any class into which Claims or Equity Interests are classified pursuant to the Plan.

14. **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof as in effect on the Confirmation Date.

15. **Committee** shall mean the Official Committee of Unsecured Creditors appointed in the bankruptcy case styled *In re HashFast Technologies, LLC*, case no. 14-30725 DM.

16. **Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

17. **Confirmation Date** shall mean the date of entry of the Confirmation Order on the official docket by the Court.

18. **Confirmation Hearing** means the hearing before the Court in connection with Confirmation of the Plan.

19. **Confirmation Order** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

20. **Court** shall mean the United States Bankruptcy Court for the Northern District of California, San Francisco Division, in which Debtors' Bankruptcy Cases are pending, and any court having jurisdiction to hear appeals or certiorari proceedings therefrom.

21. **Creditor** shall have the same meaning as set forth in Section 101(10) of the Code.

22. **Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

23. **Debtors** shall mean Hashfast Technologies, LLC and Hashfast, LLC, collectively.

24. **Disallowed** claim shall mean any Claim (regardless of priority) against either of the Debtors, the Estate and/or the Hashfast Creditor Trust that has been disallowed by a Final Order of the Court.

Case: 14-30725   Doc# 311   Filed: 02/16/15   Entered: 02/16/15 22:28:54   Page 8 of 47

25.     **Disputed** claim shall mean any Claim (regardless of priority) against either of the Debtors, the Estate and/or the Hashfast Creditor Trust that is subject to a pending objection but has not been disallowed by a Final Order of the Court.

26.     **Distribution** shall mean the distribution to the Holders of Allowed Claims and/or Allowed Equity Interest in accordance with the terms of the Plan.

27.     **Effective Date** shall mean a date not later than fifteen (15) days after the Confirmation Date, provided that, in no event shall the Effective Date occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met or otherwise waived as provided herein. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still be deemed to have occurred provided that all other conditions to effectiveness as set forth in the Plan have been met or otherwise waived as provided herein.

28.     **Equity Interest(s)** shall mean any and all issued or authorized membership interests in the Debtors.

29.     **Equity Interest Holder** shall mean the holder of any Equity Interest.

30.     **Estate** shall mean the substantively consolidated bankruptcy estates in the HFT Bankruptcy and HF Bankruptcy, jointly or individually, as applicable.

31.     **Estate Assets** shall mean all tangible and intangible Property of the Estate, including assets recoverable under applicable law, wherever located or of whatever type or nature, including, without limitation, the Causes of Action, Cash, and intellectual property.

32.     **Excess Cash** shall mean the Cash in the Hashfast Creditors Trust remaining after the creation of the Trust Reserve and payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust.

33.     **Final Order** shall mean an Order or judgment of the Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Hashfast Trustee, if a notice of appeal is timely filed and no stay pending appeal has been entered.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

34. **Hashfast Creditor Trust** shall mean a trust created under the Plan for the benefit of Holders of Allowed Claims and/or Allowed Equity Interests.

35. **Hashfast Trustee** shall mean Michael G. Kasolas or such other person as the Committee may designate prior to the Effective Date, who shall be appointed to serve as trustee in accordance with the Plan and any subsequent or ancillary agreement. The Committee shall provide notice to all parties in interest in the event an alternate trustee is selected.

36. **HF** shall mean Hashfast, LLC, a Delaware limited liability company and debtor and debtor in possession in the HF Bankruptcy.

37. **HF Bankruptcy** shall mean *In re Hashfast, LLC*, case no. 14-30866 DM, pending in the United States Bankruptcy Court for the Northern District of California.

38. **HFT** shall mean Hashfast Technologies, LLC, a California limited liability company and debtor and debtor in possession in the HFT Bankruptcy.

39. **HFT Bankruptcy** shall mean *In re Hashfast Technologies, LLC*, case no. 14-30725 DM, pending in the United States Bankruptcy Court for the Northern District of California.

40. **Holder** shall mean the legal or beneficial holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Equity Interest, means a holder of a Claim or Equity Interest in such Class or of such type.

41. **Impaired Class** shall mean any Class whose members are Holders of Claims or Equity Interests, which are impaired within the meaning of Section 1124 of the Code.

42. **Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

43. **Non-ordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

44. **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Court.

45. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 311   Filed: 02/16/15   Entered: 02/16/15 22:28:54   Page 10 of 47

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

46.     **Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

47.     **Petition Date** shall mean the date upon which the Court entered an order for relief in the Bankruptcy Cases.

48.     **Plan** shall mean this Consolidated Plan of Liquidation and Disclosure Statement, as amended or modified in accordance with the terms hereof or in accordance with the Code.

49.     **Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

50.     **Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

51.     **Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

52.     **Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

53.     **Pro Rata** shall mean with respect to an Allowed Claim in a given class, that each Allowed Claim shall receive the same proportionate distribution as other Allowed Claims in the same Class.

54.     **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules adopted by the Court.

55.     **Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws.

56.     **Trust Asset** shall mean any and all Property in the Hashfast Creditor Trust, whenever or however acquired, including, but not limited to, all Estate Assets remaining after

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 16, 2015

605908435.1

payment of all Claims entitled to payment Effective Date under the Plan and any and all Property acquired by the Hashfast Creditor Trust after the Effective Date.

57. **Trust Reserve** shall mean the $50,000 Cash reserve held by the Hashfast Trustee, which shall be set aside only after payment of all Allowed Administrative Claim, Allowed Priority Claim, and administrative expenses of the Hashfast Creditor Trust.

58. **Trust Residue** shall mean any and all Trust Assets remaining after payment of all Allowed Administrative Claims, Priority Claims, administrative expenses of the Hashfast Creditor Trust, and Allowed Unsecured Claims.

59. **Unclaimed Property** shall mean any Estate Asset and/or Trust Asset unclaimed for a period of six (6) months after any Distribution.

60. **Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

61. **Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Administrative Claim or Priority Claim.

62. **Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

63. **Unsecured Creditor Distribution** shall mean the distributions to Holders of Allowed Unsecured Claims as provided for in the Plan.

64. **United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 17 located in the Northern District of California, San Francisco, California.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**CONSOLIDATED PLAN AND DISCLOSURE STATEMENT**

## I. INTRODUCTION

Hashfast Technologies, LLC, a California limited liability company, was engaged in the manufacture and sale of special purpose computers systems and computer chips designed for processing and analyzing Bitcoin transactional information or "Bitcoin mining." HFT is the wholly-owned subsidiary of Hashfast, LLC, a Delaware limited liability company, which owns or otherwise holds the rights to the intellectual property utilized by HFT in its business operations. HF is not engaged in any business endeavor separate and apart from HFT.

HFT is the debtor in the chapter 11 bankruptcy case styled *In re Hashfast Technologies, LLC*, case no. 14-30725 DM, pending in the United States Bankruptcy Court for the Northern District of California. HF is the debtor in the chapter 11 bankruptcy case styled *In re Hashfast, LLC*, case no. 14-30866 DM, pending in the United States Bankruptcy Court for the Northern District of California. The HFT Bankruptcy and HF Bankruptcy were substantively consolidated by order of the Court entered on September 28, 2014.

The Debtors continue to manage the Estate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has not appointed a chapter 11 trustee or examiner in the Bankruptcy Cases.

**THE DOCUMENT YOU ARE READING IS THE CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT.** The Committee is the proponent of the within Plan.

Through the Plan, the Committee proposes the creation of the Hashfast Creditor Trust. Under the Plan, the Debtors shall utilize available Estate Assets to pay certain Claims (discussed *infra*) on the Effective Date. All remaining Estate Assets shall pass into the Hashfast Creditor Trust free and clear of any and all Claims or Interests. Thereafter, the Hashfast Trustee shall administer the Trust Assets, which shall include the prosecution of any Causes of Action. The Hashfast Trustee shall then distribute the proceeds from the administration of the Trust Assets in accordance with the Plan.

- 1 -

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN AND WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

Upon confirmation of the Plan, the treatment of Allowed Claims and Allowed Equity Interests pursuant to the Plan supersedes any agreements or rights the Holders of those Claims or Equity Interests may have with, in or against the Estate, Debtors or Estate assets, except to the extent the Plan expressly provides otherwise, and is in full satisfaction of the legal, equitable, and contractual rights of the Holders of the Claims or Equity Interests. Unless the Plan provides otherwise, no Distributions will be made and no rights will be retained on account of any Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest.

As is required by the Code, the Plan classifies Claims and Equity Interests into various classes according to their right to priority under the Code. The Plan states whether each Class of Claims or Equity Interests is impaired and provides the treatment that the Holders of each Allowed Claim or Allowed Equity Interest within each Class shall receive.

## II. <u>VOTING AND OBJECTING TO CONFIRMATION</u>

The Court has not yet confirmed the Plan described herein. As such, the terms of the Plan are not yet binding on anyone. However, if the Court later confirms the Plan, then the Plan will be binding on the Debtors, all Creditors and Equity Interest Holders, and their successors and assignees.

### 1. Time and Place of the Confirmation Hearing

The Confirmation Hearing will take place on **[INSERT DATE]** in Courtroom 22 of the United States Bankruptcy Court located at 235 Pine Street, San Francisco, CA 94104.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**2. Voting on the Plan**

As discussed further at Section XV, the only Creditors and/or Equity Interest Holders who may vote for or against the Plan are those who have a Claim and/or Equity Interest that is both (1) an allowed (or allowed for voting purposes) and (2) classified in an Impaired Class.

**3. Deadline for Voting on the Plan**

If you are entitled to vote, it is in your best interest to vote in a timely manner on the enclosed ballot and return the ballot in the enclosed envelope to Baker & Hostetler LLP, Attn: Ashley M. McDow, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025-0509.

YOUR BALLOT MUST BE RECEIVED BY **5:00 P.M. ON [INSERT DATE]** OR IT WILL NOT BE COUNTED.

The Debtor shall file a summary of tabulated ballots on or before **[INSERT DATE]**.

**4. Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Committee no later than **[INSERT DATE]**.

**5. Person to Contact for Further Information Regarding the Plan**

Any interested party desiring further information about the Plan may contact Ashley M. McDow of Baker & Hostetler LLP via email addressed to amcdow@bakerlaw.com or phone at (310) 442-8846.

**III. DISCLAIMER**

The information utilized to prepare the Plan and the supporting documents is based upon the records created and maintained by the Debtors. Unless otherwise noted, the underlying records are unaudited. The professionals employed by the Committee prepared the Plan based on such information and, thus, cannot independently warrant the accuracy and/or completeness of the financial data or information contained therein or herein.

The Plan is premised in part on the recovery and liquidation of Bitcoin and/or Bitcoin mining equipment. The value of Bitcoin is volatile. Additionally, the value of Bitcoin mining equipment depends on many factors, including, but not limited to, the difficulty of mining Bitcoin

Case: 14-30725   Doc# 311   Filed: 02/16/15   Entered: 02/16/15 22:28:54   Page 15 of 47

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and the price, availability, and performance of competing equipment. The value of Bitcoin and/or Bitcoin mining equipment may affect distributions to Creditors and Equity Interest Holders.

The liquidation analysis, projections of financial performance, and other information contained herein are estimates only, and the timing, amount, and value of actual distributions to Creditors and Equity Interest Holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or projections may or may not prove to be accurate.

The contents of this Plan should not be construed as legal, business, or tax advice. Any tax disclosure(s) contained herein is not intended to be used and cannot be used for the purpose of avoiding any tax penalties that may be imposed on any Person. All Creditors and Equity Interest Holders should consult their own legal counsel, accountants and/or other advisors as to legal, tax, and other matters concerning their Claims or Equity Interests.

The Court has not yet determined whether the Plan is confirmable, and makes no recommendation as to whether or not you should support the Plan.

## IV. PROCEDURAL AND FACTUAL BACKGROUND

### A. Pre-petition Ownership and Management of the Debtors; Description and History of Debtors' Business

#### 1. Formation, Ownership and Management of the Debtors

HF is a Delaware limited liability company formed on or about May 9, 2013. HFT is a California limited liability company formed on or about June 10, 2013. HF is the parent company of HFT and owner of 100% of the membership interest in HFT. In turn, HF is owned by several individuals and entities in varying percentages, including, but not limited to, Eduardo de Castro, Simon Barber, Chad Spackman,[1] the Port Family Trust, and the Wells Family Trust. Following the formation of HF, the membership interests were redistributed as additional individuals and entities were added members. True and correct copies of the List of Equity Security Holders filed by the Debtors are attached hereto collectively as **Exhibit A** and incorporated herein by reference.

---

[1] Chad Spackman as well as the Port Family Trust and Wells Family Trust, or their trustees, settlors or beneficiaries, are the principals of Sandgate Technologies (Sandgate), which is one of the principal engineering firms used by the Debtors.

- 4 -

Case: 14-30725    Doc# 311    Filed: 02/16/15    Entered: 02/16/15 22:28:54    Page 16 of 47

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

As of the Petition Date, the individuals primarily responsible for the day-to-day management and operation of HFT were Simon Barber, Eduardo de Castro, Monica Hushens, and Tim Wong. Following the commencement of the Bankruptcy Cases, the Committee examined several of HFT's principals to determine whether the Debtors' management mismanaged the business and/or engaged in misconduct. Several of these individuals resigned during the course of this investigation. Thereafter, in or about August 2014, the Debtors retained Peter Kravitz of Province, Inc., as chief restructuring officer. At present, Mr. Kravitz is principally responsible for the day-to-day management and operation of the Debtors.

### 2. Operation of the Debtors

The Debtors have at all relevant times been engaged in a single enterprise—namely, the designing, manufacture and sale of application-specific integrated circuit (ASIC) processors designed to process and analyze Bitcoin transactional information or "Bitcoin mining." HFT is principally responsible for research and development, designing, manufacturing, and selling the ASIC and fully-assembled computer systems incorporating the HFT ASIC. HF is a holding company that owns the rights and/or licenses for the technology and intellectual property used in the course of HFT's business (the Intellectual Property). A true and correct copy of the schedule identifying some of the Intellectual Property is attached hereto as **Exhibit B** and incorporated herein by reference.

In or about June 2013, the Debtors began designing their first generation Golden Nonce ASIC (GN1), with the assistance of Sandgate and Uniquify, Inc. (Uniquify). Following the development of the GN1, the Debtors worked with DXCorr Design (DXC) to design and develop subsequent generations of the GN1—generations 1.5 (GN1.5) and 2.0 (GN2).

In or about July 2013, HFT began advertising a special purpose computer system built around the GN1 (the BabyJet) for sale and started accepting orders for the "batch one" mining computers in early August 2013. "Batch one" sales were quickly followed by batches two through four. Between August and December 2013, the Debtors receive orders for processors, computers, and related equipment totaling approximately $18,000,000.

### 3. Events Precipitating Bankruptcy

Despite a successful pre-sale, the Debtors experienced difficulties and delays in the manufacturing and roll-out of the GN1 that threatened to prevent the Debtors from meeting the delivery date for "batch one" BabyJets. Accordingly, the Debtors paid to expedite production and, in so doing, incurred additional unforeseen manufacturing costs. The Debtors apparently utilized pre-sale revenues and funds obtained through the liquidation of Bitcoin holdings to finance the additional manufacturing expenses. However, despite expedited manufacturing, the GN1 processors were not completed until in or about November 2013, which prevented the Debtors from timely delivering the BabyJet computers and GN1 processors.

As a result, customers began requesting refunds in or about January 2014. The Debtors, however, lacked the financial ability to pay the refunds. The Debtors' inability to pay the refunds requested and fulfill orders in a timely manner ultimately resulted in the commencement of several proceedings, including, but not limited to, multiple lawsuits.

### 4. Commencement of Bankruptcy Cases

On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson commenced the HFT Bankruptcy by filing a chapter 7 involuntary petition against HFT with the Court.

On or about June 3, 2014, HFT filed a conditional consent to entry of an order for relief and moved the Court to convert the HFT Bankruptcy to one under chapter 11 of the Code. On or about June 4, 2014, the Court entered an order converting the HFT Bankruptcy to one under chapter 11 of the Code.

On or about June 6, 2014, HF filed a voluntary petition for relief under chapter 11 of the Code commencing the HF Bankruptcy.

## V. SIGNIFICANT EVENTS DURING BANKRUPTCY CASES

### A. Joint Administration; Substantive Consolidation

On or about June 6, 2014, the Debtors filed a motion seeking authority to jointly administer the Bankruptcy Cases. On or about July 8, 2014, the Court entered an order approving the joint administration of the Bankruptcy Cases.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On or about July 23, 2014, the Committee moved to substantively consolidate the Bankruptcy Cases. The Debtors did not oppose substantive consolidation and, on or about September 28, 2014, the Court entered an order substantively consolidating the Bankruptcy Cases, thereby creating the Estate. The Committee has continued to serve following the substantive consolidation of the Bankruptcy Cases.

**B.      Retention of Estate Professionals**

On or about June 6, 2014, HFT filed an application in the HFT Bankruptcy to employ Katten Muchin Rosenman LLP (Katten) as general bankruptcy counsel (Katten Application). On or about July 8, 2014, the Court approved the employment of Katten by and through the Katten Application.

On or about July 3, 2014, the Committee filed an application to employ Baker & Hostetler LLP (Baker) as general bankruptcy counsel (Baker Application). On or about July 23, 2014, the Court entered an order approving the employment of Baker by and through the Baker Application.

On or about July 17, 2014, the Committee filed an application to employ Province as financial advisor. Thereafter, the Debtors and the Committee agreed to employ Mr. Kravitz as chief restructuring officer for the Debtors. Accordingly, the Committee withdrew its application to employ Province. Thereafter, the Debtors employed Mr. Kravitz as chief restructuring officer.

**C.      Establishment of Claims Bar Date**

On or about June 9, 2014, the Court set October 6, 2014, as the Bar Date.

**D.      Exclusivity**

Pursuant to 11 U.S.C. § 1121(d), a debtor has the exclusive right to file a plan of reorganization and solicit votes on any such plan within the first 120 and 180 days, respectively, after the commencement of a bankruptcy case. The Debtors have not sought or obtained an extension of the exclusivity periods. Accordingly, the exclusivity periods have now expired.

**E.      Use of Cash Collateral**

There are no secured creditors holding a security interest in any Estate Assets; accordingly, cash collateral authority is unnecessary.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### F. Debtors' Schedules, Interim Statements and Operating Reports

On or about June 23, 2014, the Debtors filed their schedules and statements of financial affairs, which describe the Debtors' assets and liabilities. On or about August 14, 2014, the Debtors filed an amended statement of financial affairs and amended summaries of their schedules. Copies of the schedules and operating reports may be obtained through the online PACER system or in the Clerk's office for the Court.

### G. Unexpired Leases and Executory Contracts

The Debtors have yet to assume or reject any unexpired leases or executory contracts. The assumption and rejection of unexpired leases and/or executory contracts and the treatment of any Claims for rejection damages are discussed *infra* at Section XII.

### H. Attempts to Appoint a Trustee and/or Convert Bankruptcy Cases

Immediately following the commencement of the HFT Bankruptcy, Liquidbits Corporation (Liquidbits or LB) filed a motion seeking the appointment of an interim trustee over the HFT estate (Liquidbits Trustee Motion). In an effort to amicably resolve the Liquidbits Trustee Motion, the Debtors and Liquidbits, among others, entered into a stipulation to govern the operation of the Debtors and sale of their assets (Liquidbits Stipulation)—a stipulation which gave partial effect to an order entered in an arbitration proceeding styled *Liquidbits Corp. v. HashFast Technologies LLC*, AAA Case No. 01-14-0000-1357. The Court entered an order approving the Liquidbits Stipulation on or about May 28, 2014.

On or about August 8, 2014, the Office of the United States Trustee (UST) moved to convert the Bankruptcy Cases to cases under chapter 7 or to appoint a chapter 11 trustee over the Estate due to, among other things, alleged mismanagement, loss to the Estate, and failure to maintain corporate formalities (UST Motion to Convert). The Debtors and Committee opposed the UST Motion to Convert. On or about September 16, 2014, the Court entered an order denying the UST Motion to Convert.

### I. Sale of Estate Property

On or about July 18, 2014, the Debtors moved for approval of a sale of substantially all of the Estate Assets to Liquidbits (Liquidbits Sale), the consideration for which was primarily in the

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

form of a promissory note and potential income if and when the contemplated mining operation was successful. The Committee objected on a number of grounds, including, but not limited to, that the Liquidbits Sale was not sufficiently described, the proposed consideration was illusory as Liquidbits could simply return the equipment without providing any payment on the note or equity interest if it deemed the mining operation unsuccessful or cost prohibitive, and the Liquidbits Sale proposed granting Liquidbits a full and complete release from substantial liability for minimal, if any, consideration. Following the hearing, the Court denied the motion to approve the Liquidbits Sale.

Thereafter, the Committee and the Debtors worked together to formulate an exit strategy that would provide the Estate with the best possible chance for recovery. In furtherance of this goal, the Debtors commenced plans to liquidate certain assets to generate funds necessary to complete the manufacture and/or release of valuable products.

On or about October 23, 2014, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of the Debtors assets. Although the Court approved the proposed sale procedure, the Debtors were able to sell the inventory in the ordinary course of business prior to the date of the proposed auction sale.[2] The Debtors, however, proceeded with the sale of certain potential causes of action against Simon Barber (the Barber Claims), one of the officers of HFT. The Court approved the sale of the Barber Claims to Mr. Barber on or about December 23, 2014.

**J.       Adversary Proceedings and Related Litigation**

As of the Petition Date, numerous state court lawsuits and alternative dispute resolution proceedings were pending. The Debtors have not removed any of the aforementioned cases to the Court and none of the plaintiffs have obtained relief from the automatic stay to pursue the litigation.

Following the commencement of the Bankruptcy Case, the Debtors commenced an adversary proceeding against Uniquify and Signetics Korea Co., Ltd. (Signetics), two of HFT's

---

[2] Throughout the Bankruptcy Cases, the Debtors have sold inventory in the ordinary course of business.

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 16, 2015
605908435.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

suppliers, seeking to compel the turnover of certain Estate Assets allegedly within their possession, custody, and/or control. Thereafter, the Debtors reached an agreement for the turnover of the sought-after property with Uniquify and/or Signetics. Accordingly, on or about December 10, 2014, the Debtors voluntarily dismissed the adversary proceeding.

The Committee is in the process of evaluating other potential claims and/or causes of action the Estate may possess against certain Persons, including, but not limited to, avoidance actions under the Bankruptcy Code and/or California law as well as other state and federal causes of action, such as negligence, breach of fiduciary duty, breach of contract, breach of covenant, violation of the automatic stay, errors, omissions, fraud, misleading statements, and neglect, among others.[3] In preparation for the prosecution of such actions, the Committee has prepared at least one complaint to avoid and recover a preferential and fraudulent transfers as well as a motion for writ of attachment to secure any potential recovery on complaint. The Committee has also prepared numerous demand letters seeking to recovery certain preferential transfers, which will be sent as soon as the Committee receives certain supporting documents requested from the Debtors. Additionally, the Committee demanded that the Debtors tender a claim against a certain directors and officers insurance policy. The insurance claims pertains to certain negligence and misconduct committed by insiders of the Debtors, including, but not limited to, breach of duty, errors, omissions, misleading statements, and neglect. On or about January 28, 2015, the insurance carrier agreed to treat the claim tendered by the Debtors as a notice of circumstances that may give rise to a compensable claim and, if any claim arises, it shall be treated as arising on January 5, 2015 (prior to the expiration of the policy).

---

[3] **Exhibit C** contains a table identifying the potential causes of action presently known to the Committee, the potential recovery from these actions, and anticipated expenses associated with litigation. The Debtors and/or the Estate may possess other claims or causes of action. The Committee is continuing to investigate the potential causes of action, and expressly reserves the right to pursue any and all potential causes of action not otherwise released by the Estate. The values provided for the claims and costs of litigation are estimates. The recoveries and costs may be less or greater than stated in the table.

- 10 -

**K.    Claim Objections**

The Committee is presently in the process of analyzing the validity of the claims made against the Estate.  The Committee and/or the Hashfast Trustee anticipates filing objections to certain Claims and/or the classification of certain Claims.  Under the Plan, any Claim objections may be brought at any time prior to the Confirmation Date and/or within the first 120 days after the Effective Date of the Plan.

**VI.    FINANCIAL INFORMATION REGARDING THE DEBTORS**

The Debtors filed schedules in this Bankruptcy Case that provided financial information regarding its assets and liabilities as of the Petition Date.  In addition to such schedules, the Debtors have prepared and filed monthly operating reports as required by the UST.  The schedules are available on-line through PACER or at the Clerk's Office.  True and correct copies of the monthly operating reports filed by the Debtors are collectively attached hereto as **Exhibit D** and incorporated herein by reference.

The Committee estimates that the Estate Assets have a cumulative value of approximately $10,828,603, which is comprised of $78,603 Cash on hand, $10,000,000 for potential litigation recovery, and $750,000 for remaining tangible and intangible Estate Assets, including the Intellectual Property.[4]

**VII.    CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims and Equity Interests are divided into the following classes under the Plan, which shall be mutually exclusive:

Class 1 — General Unsecured Claims

Class 1 consists of the Allowed Unsecured Claims against the Estate.

Class 2 – Equity Interests

Class 2 consists of the Allowed Equity Interests in the Debtors.

---

[4] The Committee has been engaged in informal discussions for the acquisition of the remaining assets of the Estate. The price proposed by the Committee is $750,000.00.

- 11 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# VIII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

## A. Non-ordinary Course Administrative Claims

Any Person, including any Professional, who has rendered services to Debtors or the Committee during the course of the Bankruptcy Cases and/or that asserts an Administrative Claim arising before the Confirmation Date, excluding Ordinary Course Administrative Claims as discussed below, shall file a request with the Court for allowance of such Claim as an Administrative Claim on or before the Administrative Claims Bar Date. Such request shall specify the amount of and basis for the asserted Administrative Claim. Applicants or movants that have previously filed a request for allowance of an Administrative Claim need not file another request for the same Claim. Failure to timely file a request for allowance of an Administrative Claim pursuant to this section and in accordance with all applicable Rules may bar any recovery on such a Claim.

## B. Administrative Claims

Holders of Allowed Administrative Claims against the Debtors shall be paid in full on the Effective Date, unless such Holder(s) agree to alternate treatment. The Committee estimates that Allowed Administrative Claims will total approximately $1,070,000 on the Effective Date.[5] The present and projected Allowed Administrative Claims are as follows:

| Administrative Claimant | Current Claim | Projected Claim (Present to Confirmation) |
|---|---|---|
| Katten Muchin Rosenman LLP (Debtors Counsel) | $389,905 | $20,000 |
| Baker & Hostetler LLP (Committee Counsel) | $328,366 | $50,000 |
| Province Capital | $123,270 | $40,000[6] |

---

[5] The estimate of the Allowed Administrative Claims is an estimate based on the fees of Committee counsel, the fees requested in the prior fee applicable filed by Katten, the fees and costs incurred commencing the involuntary bankruptcy case against HFT, and the expenses incurred by members of the Committee. The inclusion of any Administrative Claim in this estimate does not constitute an admission regarding the reasonableness or necessity of the Administrative Claim or a waiver of the right to object to any Administrative Claim.

[6] The Province success fee for confirmation shall be treated as follows: $25,000 as an Allowed Administrative Claim and $75,000 as an Allowed Unsecured Claim in Class 1. The $40,000 provided does not include the success fee as Province is not entitled to payment of such fee until after confirmation.

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | |
|---|---|---|
| (Chief Restructuring Officer) | | |
| Koi Systems (Petitioning Creditor) | $62,246 | $0 |
| Post-petition Taxes | $17,071 | TBD |
| United States Trustee | $975 | TBD |
| U.S. Patent Filing Fees | $5,702 | TBD |
| CIARA Technologies (based on proposed settlement) | $30,000[7] | $0 |
| Total | $957,535 | $110,000 |

### C. Priority Claims

The Committee is not aware of any bona fide Priority Claims.[8]  To the extent any Allowed Priority Claims do exist, such Claims will be paid (in accordance with their priority under Section 507 of the Code) on the Effective Date from available Cash on hand after payment in full of the Allowed Administrative Claims, unless the Holders agree to alternate treatment under the Plan.

### IX. TREATMENT OF UNIMPAIRED CLASSES

There are no unimpaired classes under the Plan.

### X. TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### A. Determination of Allowed Amounts

Treatment prescribed for Claims and Equity Interests in the following sections shall in all events refer exclusively to the Allowed Amount of each respective Claim or Equity Interest.  In the event the Allowed Amount of any Claim or Equity Interest is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date the Allowed Amount of such Claim or Equity Interest is determined by agreement or Final Order.  Except as may otherwise be provided by order of the Court, the Hashfast Creditor

---

[7] The amount and priority of the settlement payment is subject to further negotiations and Court approval.

[8] Certain creditors have asserted Priority Claims under Section 507(a)(7) of the Code.  True and correct copies of the Claim Registers in the Bankruptcy Cases are collectively attached hereto as **Exhibit E** and incorporated herein by reference.  It is the position of the Committee that the purchase of Bitcoin mining equipment does not constitute a purchase for "personal, family, or household use…."  The Committee intends to object to such classification before the expiration of the period provided herein.

- 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Trust reserves the right to object to any Claim or Equity Interest for any reason authorized by applicable law as well as the right to assert that any Claim or Equity Interest includes amounts subject to setoff, equitable subordination, and/or other equitable relief.

**B.    Class 1 – General Unsecured Claims**

Class 1 consists of all Allowed Unsecured Claims against the Debtors.  The Unsecured Claims asserted against the Estate total approximately $40,750,000.00.  The Committee believes more than $21,500,000.00 of the Unsecured Claims asserted against the Estate are unenforceable.[9]

The Holders of Allowed Unsecured Claims shall receive a Pro Rata share of any and all Unsecured Creditor Distributions, which shall consist of all Excess Cash held by the Hashfast Creditor Trust on the date of the distribution.[10]  Unsecured Creditor Distributions shall be made periodically at the sole discretion of the Hashfast Trustee; *provided, however*, that the Hashfast Trustee shall make an Unsecured Creditor Distribution anytime the Excess Cash reaches an amount greater than or equal to $100,000.  Upon termination of the Hashfast Creditor Trust, the Hashfast Trustee shall make a final Unsecured Creditor Distribution in an amount equal to the lesser of (1) all remaining Trust Assets, including any portion of the Trust Reserve not required to pay senior Claims or administrative expenses of the Hashfast Creditor Trust, and (2) an amount equal to the unpaid portion of the Allowed Unsecured Claims plus interest (based on the original total of Allowed Unsecured Claims) at the federal judgment rate accrued up to and including the date of such final distribution.

The Class 1 Claims are impaired and entitled to vote to accept or reject the Plan.

---

[9] The Unsecured Claims asserted against the Estate totals approximately $63,000,000; however, more than $22,000,000 appear to be duplicative claims asserted against both Debtors individually.  Accordingly, for purposes of this Plan, the Committee assumes any and all duplicative claims shall be excluded from Distributions.  The exclusion of such Claims, however, does not affect the feasibility of the Plan.  Rather, it only affects the Pro Rata share each Creditor receives from each Unsecured Creditor Distribution.

[10] Distributions of Excess Cash shall not include any hold-back on account of any Disputed Claim(s) pursuant to Section XIII.F.1.f.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# XI. TREATMENT OF CLASSES OF INTERESTS

## A. Class 2 – Equity Interests

Class 2 consists of the Allowed Equity Interests. The lists of Equity Interest Holders filed by the Debtors in the Bankruptcy Cases are attached hereto as Exhibit A. The Class 2 Equity Interests are impaired.

Upon confirmation of the Plan, the Debtors' respective articles of organization and/or limited liability company operating agreements shall be deemed amended to prohibit the issuance of any nonvoting equity securities, as required by 11 U.S.C. § 1123(a)(6).

Under the Plan, Equity Interest Holders shall retain their membership interests. Upon termination of the Hashfast Trust, Equity Interest Holders shall receive a Pro Rata share (based on their Equity Interest in HF)[11] of the Trust Residue.

# XII. UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Committee is informed and believes that the Debtors have several executory contracts and unexpired leases that may require assumption pursuant to 11 U.S.C. § 365, including license agreement(s) for certain intellectual property utilized in the manufacture the ASIC processors and BabyJets. True and correct copies of the list of executory contracts and unexpired leases identified by the Debtors in their respective bankruptcy schedules are attached hereto collectively as **Exhibit F** and incorporated herein by reference. At present, the Committee intends to reject all executory contracts and/or unexpired leases identified on Schedule G filed by the Debtors, save and except for (1) the Memorandum of Understanding regarding design of digital currency-related microchips dated August 21, 2013, with DXCorr Design, Inc., (2) the Advisory Services Agreement and Proprietary Information Agreement with Richard G. Bahr, and (3) the Nondisclosure Agreement with Sonny Mirador of Miratek Design. The Committee is unaware of any cure payments that must be made in order to assume any of the foregoing contracts. The Committee shall continue to work with the Debtors to identify the necessary unexpired leases

---

[11] HFT is a wholly-owned subsidiary of HF; accordingly, all Distributions on account of Allowed Equity Interests shall be paid directly to the members of HF in proportion to their ownership interests in HF as any payment to HFT would pass-through to HF, creating an unnecessary second layer of distributions.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and/or executory contract and shall file a final notice of intent to assume and/or reject at least fourteen (14) days prior to the Confirmation Hearing.[12] The Committee reserves the right to assume or reject any executory contract or unexpired lease not identified on the schedules filed by the Debtors.

Any party to an executory contract and/or unexpired lease opposed to the assumption of the agreement must file a written objection with the Court and serve the same on counsel for the Committee at least seven (7) days prior to the Confirmation Hearing.

To the extent the Debtors reject any executory contract or unexpired lease, any party asserting a Claim arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Committee and/or Hashfast Creditor Trust shall have thirty (30) days from the date a rejection damage Claim is filed to object to the allowance of such Claim. Allowed Claims resulting from rejection of an unexpired lease and/or executory contract shall be treated as an Allowed Unsecured Claim in Class 1. At present, the Committee is unaware of any executory contract or unexpired lease the rejection of which will result in a claim for rejection damages.

## XIII.   MEANS OF IMPLEMENTATION

### A.   Means of Implementation

Prior to the Effective Date, the Debtors will continue to sell assets and inventory in the ordinary course of business (or outside the ordinary course with approval of the Court). On the Effective Date, after payment of Allowed Administrative Claims and Allowed Priority Claims, as required, remaining Cash on hand, if any, and all other Estate Assets will be transferred to the Hashfast Creditor Trust free and clear of all liens, claims and encumbrances, except as specifically provided in the Plan. The Hashfast Trustee will liquidate the Trust Assets as soon as practicable and distribute them in accordance with the terms of the Plan. The terms of the Hashfast Creditor Trust agreement shall be consistent with the terms of this Plan. The Committee shall file a copy of the proposed Hashfast Creditor Trust agreement with the Court and serve the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[12] The Committee intends to assume all executory contracts and unexpired leases necessary to facilitate the liquidation of the Debtors' assets through the Hashfast Creditor Trust.

same on all interested parties no later than seven (7) days before the deadline for filing objections to the confirmation of the Plan.

### B.    Causes of Action

All Causes of Action, including any right, claim or cause of action, belonging to the Debtors and/or the Estate against any Person, including without limitation, any claim to avoid a transfer under Section 544, 547, 548, 549 or 553(b) of the Code and other state and federal causes of action, such as negligence, breach of fiduciary duty, breach of contract, breach of any covenant, violation of the automatic stay, errors, omissions, fraud, misleading statements, and neglect, among others, shall be transferred to the Hashfast Creditor Trust.  All expenses associated with prosecuting the Causes of Action and any objections to Claims and/or Equity Interests will be charged as administrative costs to the Hashfast Creditor Trust.  The Hashfast Creditor Trust, in its reasonable discretion, shall pursue, settle or release all such rights of action, as appropriate, in accordance with the best interest of and for the benefit of the Holders of unpaid Allowed Claims and/or Allowed Equity Interests.

### C.    Selection and Compensation of Hashfast Trustee

The Committee has selected Michael G. Kasolas as the trustee for the Hashfast Creditor Trust.  The Committee reserves the right to select an alternate Hashfast Trustee.  In the event an alternate trustee is selected, the Committee shall notify all interested parties of the selection as soon as practicable but no later than ten (10) days prior to the Effective Date.  As compensation for serving as trustee, the Hashfast Trustee shall receive a $50,000 payment (Trustee Fee) plus three percent (3%) of any Distributions in excess of $1,000,000 (Trustee Recovery).  The Hashfast Trustee shall continue to serve until he/she resigns or is removed for cause by order of the Court.  In the event the Hashfast Trustee resigns or is removed for cause, the former Committee members shall propose no less than two individuals to serve as the successor Hashfast Trustee and the Court shall select a replacement from the nominations.  Any alternate or subsequent Hashfast Trustee shall be compensated in accordance with this paragraph, save any except that such successor shall not receive the Trustee Fee.

- 17 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## D.    Dissolution of Committee

Upon the occurrence of the Effective Date, the Committee shall be dissolved, and each individual member and any retained Professional shall be discharged from any further activities in the Bankruptcy Cases. The professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for services rendered or expenses incurred after the Effective Date, except (i) for reasonable fees for services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date as provided for in this Plan, or (ii) if employed after the Effective Date as counsel for the Hashfast Trust.

## E.    Professional Fees and Expenses

Notwithstanding the 120-day limitation of section 331, each Professional retained or requesting compensation in the Bankruptcy Cases in connection with fees incurred prior to the Effective Date shall file an application for allowance of final compensation and reimbursement of expenses in the Bankruptcy Cases within the first thirty (30) days after the Effective Date. Objections, if any, must be filed within fourteen (14) days after an application for final compensation and reimbursement of expenses is filed.

## F.    Additional Provisions

### 1.    Distributions from the Hashfast Creditor Trust

As assets are liquidated, the Hashfast Trustee shall pay any remaining Claims as follows: first, to Holders of Allowed Administrative Claims and the Hashfast Trustee, solely on account of the Trustee Fee, *pro rata*;[13] second, to pay the administrative expenses of the Hashfast Creditor Trust, including, but not limited to, the Trustee Recovery; third, to Holders of Allowed Priority Claims; fourth, to Holders of Allowed Unsecured Claims; and fifth, to Holders of Allowed Equity Interests.

---

[13] Holders of Allowed Administrative Claims may, in their discretion, agreed to alternate treatment.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## 2. Procedures for Resolving and Treatment of Disputed Claims

### a. *Prosecution of Objections to Claims*

Unless otherwise ordered by the Court and except as otherwise provided in the Plan, the Hashfast Creditor Trust shall have the exclusive right to object to any Claims and/or Equity Interests after the Effective Date. The costs and expenses associated with the filing and prosecution of any such objection shall be borne as an administrative expense by the Hashfast Creditor Trust.

Unless another time is set by order of the Court or otherwise set forth herein, all objections to Claims and/or Equity Interests shall be filed with the Court and served upon the Holders of each of the subject Claims and/or Equity Interests within the first 120 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order or any Order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors and/or Estate had immediately prior to the Petition Date. Except as set forth in the Plan, upon Confirmation, the Hashfast Creditor Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses.

### b. *Estimation of Claims*

Pursuant to the Plan, the Committee (or Hashfast Creditor Trust following the Effective Date) and/or the subject Creditor or Equity Interest Holder may, at any time, request that the Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Code, regardless of whether the Committee (or Hashfast Creditor Trust following the Effective Date) have previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent, disputed, and/ or unliquidated Claim and/or Equity Interest, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the

- 19 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Court. If the estimated amount constitutes a maximum limitation on such Claim, the Committee or Hashfast Creditor Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim and/or Equity Interest.

### c. *Cumulative Remedies*

In accordance with the Plan, all of the aforementioned Claim and/or Equity Interest objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim and/or Allowed Equity Interest, as applicable, such Claim or Equity Interest shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes of allocations, Distributions, and voting under the Plan.

### d. *Disallowance of Certain Claims and Interests*

According to the Plan, all Claims held by Persons against whom the Debtors, the Committee or the Hashfast Creditor Trust has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan. Both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to the Hashfast Creditor Trust.

### e. *Distributions on Disputed Claims*

Distributions with respect to and on account of Disputed Claims and/or Equity Interests will be made as soon as practicable after an Order, judgment, or settlement agreement with which approves such Claim and/or Equity Interest becomes a Final Order; *provided, however*, that the applicable Creditor or Equity Interest Holder shall not receive interest on its Allowed Claim and/or Allowed Equity Interest, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim and/or Equity Interest.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

f. *Disputed Claim Reserves*

The Hashfast Trustee shall establish and maintain reserves for all Disputed Claims at the time of any Distribution to Claimant in the same Class as the Disputed Claim(s) at issue. More precisely, at the time of any Distribution, Cash will be set aside equal to the amount the Holder(s) of the Dispute Claim(s) would have received from the Distribution had their Disputed Claims been deemed Allowed Claims. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve on account of such Claim shall be distributed by the Hashfast Trustee to the Creditor. The balance of such Cash, if any remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all holders of Allowed Claims entitled to receive distributions from the Hashfast Creditor Trust in accordance with the Plan.

## XIV. TAX CONSEQUENCES OF THE PLAN

The implementation of the Plan may have federal, state, and local tax consequences to the Debtors, Creditors, and/or Interest Holders. The Committee has not obtained a tax opinion about the effect of the Plan on the Debtors, Creditors or Equity Interest Holders. This Plan does not constitute, and is not intended to constitute, either a tax opinion or tax advice to any person, and the summary contained in the Plan is provided for informational purposes only. **CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR ADVISORS**.

The discussion below summarizes only certain of the federal income tax consequences associated with implementation of the Plan. It does not cover all aspects of federal income taxation that may be relevant to the Debtors, Creditor and/or Equity Interest Holders, nor does the discussion deal with tax issues peculiar to certain types of taxpayers. No aspect of foreign, state, local, or estate and gift taxation is addressed.

### A. Tax Consequences to Creditors and Equity Interest Holders

Holders of a Claim and/or Equity Interest who receive Cash in payment of their Claims and/or Equity Interest may recognize a gain or loss equal to the difference, if any, between the

- 21 -

amount of the Distributions that is/are not attributable to interest and their respective adjusted tax bases in their Claims and/or Equity Interest.

The character of any gain or loss recognized by a holder of a Claim as capital gains or ordinary income and, if capital gains, as long-term or short-term, will depend on the holder's status, the nature of the Claim and/or Equity Interest, and the holder's holding period.  The character of such gain or loss may also be affected by special rules under the Internal Revenue Code.  Any portion of a Claim and/or Equity Interest payment that is attributable to accrued unpaid interest that the holder has not already included in income will result in the recognition of ordinary income.  Holders of Claims and/or Equity Interest should consult with their own tax advisors as to the character and timing of recognition of gain or loss.

## XV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues. The Committee CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic or on those issues that affect the Debtors, Creditors, and/or Equity Interest Holders.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation and, in the case of a liquidating plan, such as the one the Committee proposes, not all requirements are relevant to confirmation.

### A.  Who May Vote or Object

#### 1.  Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 16, 2015

605908435.1

## 2. Who May Vote to Accept/Reject the Plan

A Creditor or Equity Interest Holder has a right to vote for or against the Plan if that Creditor or Equity Interest Holder has an undisputed Claim and/or Equity Interest which is both (1) allowed or allowed for voting purposes and (2) classified in an Impaired Class.

## 3. What is an Allowed Claim/Interest

As noted above, a Creditor or Equity Interest Holder must first have an Allowed Claim or Allowed Equity Interest to have the right to vote. Generally, any proof of claim or interest will be deemed allowed unless there is objection to the claim or interest. When an objection to a Claim or Equity Interest is filed, the Creditor or Equity Interest Holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Equity Interest for voting purposes.

## 4. What is an Impaired Claim/Interest

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is impaired under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, a Class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that Class 100% of what they are owed. In this case, the Committee believes that all Classes of Creditors and Interest Holders are impaired and are entitled to vote to accept or reject the Plan. Parties who dispute the Committee's characterization of their Claim or Interest as being impaired or unimpaired may file an objection to the Plan contending that the Committee has incorrectly characterized the Class.

## 5. Who is Not Entitled to Vote

The following four types of Claims and/or Equity Interests are <u>not</u> entitled to vote: (1) Claims and/or Equity Interests that have been disallowed; (2) Claims and/or Equity Interests that have been objected to and the objection remains unresolved; (3) Claims and/or Equity Interests in unimpaired Classes; (4) Claims entitled to priority pursuant to Section 507(a)(1), (a)(2), (a)(8), or (b); and (5) Claims and/or Equity Interest in classes that do not receive or retain any value under the Plan. Claims and Equity Interests in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Section

- 23 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

507(a)(2), (a)(3), and (a)(8) are not entitled to vote because they are required to receive certain treatment specified by the Code. Claims or Equity Interests in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. **EVEN IF YOUR CLAIM OR EQUITY INTEREST IS THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

### 6. Votes Necessary to Confirm the Plan

If impaired Classes exist, the Court cannot confirm the Plan unless: (1) all Impaired Classes vote to accept the Plan (without counting the votes of any Insiders within that Class); or (2) at least one Impaired Class votes to accept the Plan and the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes.

### 7. Votes Necessary for a Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the Plan. A Class of Interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the Plan.

### 8. Treatment of Non-Accepting Classes

As noted above, even if not all of the impaired Classes vote to accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Code. The process by which non-accepting Classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on non-accepting Classes of Claims and/or Equity Interests if it meets all consensual requirements, except the voting requirements of Section 1129(a)(8), and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan as referred to in Section 1129(b) and applicable case law.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**9.      Request for Confirmation Despite Non-acceptance by Impaired Class(es)**

The Committee will ask the Court to confirm this Plan by cramdown on all impaired Classes if any of these Classes do not vote to accept the Plan.

**B.      Liquidation Analysis**

Another confirmation requirement is the "Best Interest of Creditors Test." Under the Best Interest of Creditors Test, if a Claimant or Equity Interest Holder is in an impaired class and that Claimant or Equity Interest Holder does not vote to accept the Plan, then that Claimant or Equity Interest Holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee and generally distributed in the following order: (1) to creditors whose interest was secured by property of the estate; (2) to administrative claim holders; (3) pro-rata to creditors whose interest was not secured by property of the estate; and (4) Equity Interest Holders.

In the instant case, the Committee maintains that this requirement is met because Creditors and Equity Interest Holders receive as much if not more under the Plan as they would if the Debtors' assets were liquidated in a chapter 7 as the Plan involves a controlled liquidation and, through the appointment of the Hashfast Trustee, which has certain limits on his compensation, reduces cost of administration and avoids the additional expenses incurred by the chapter 7 trustee and his or her counsel in the course of a chapter 7 liquidation, including the costs associated with the chapter 7 trustee's counsel becoming familiar with the Bankruptcy Case and the various complex facts involved in the potential litigation. Additionally, under the Plan, the Estate professionals, including Province, have agreed to alternate treatment and, if necessary, may agree to a voluntary reduction in their Allowed Administrative Claim(s) to ensure the success and confirmability of the Plan. In a chapter 7 liquidation, on the other hand, the chapter 11 Estate professionals are required to receive treatment in accordance with the Code and payment of their full Allowed Administrative Claims before any junior creditors. A Liquidation Analysis is attached hereto as **Exhibit G** and incorporated herein by reference.

Case: 14-30725    Doc# 311    Filed: 02/16/15    Entered: 02/16/15 22:28:54    Page 37 of 47

### C. **Risk Factors**

HOLDERS OF CLAIMS OR INTERESTS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

The principal risks associated with the Plan are as follows:

1. There are conditions to the confirmation of the Plan and its consummation that are more particularly described herein and in the Plan. If the Committee is unable to satisfy those conditions, the Plan may not be confirmed.

2. Even if all classes of Claims and/or Equity Interests that are entitled to vote accept the Plan, the Plan might not be confirmed by the Court. The Committee believes that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Code, including under section 1129, but there can be no assurance that the Court will also conclude that the requirements of confirmation have been satisfied.

3. Although the Committee believes the claims in the Causes of Action are meritorious and likely to result in a recovery of Cash and/or property for the Estate and/or Hashfast Creditor Trust, litigation is never certain. The Plan, however, is not dependent on success in the Causes of Action; rather, the Plan is feasible whether or not the Hashfast Creditor Trust succeed in any of the pending or potential litigation.

4. The value of certain Estate Assets depends on the value of Bitcoin and the cost and performance of equipment offered for sale by competitors. The value of Bitcoin can vary greatly and the availability and performance of competing equipment is difficult if not impossible to know or predict. Each of these factors may affect the value the Debtors and/or the Hashfast Creditor Trust receives through the liquidation of these assets.

### D. **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

such liquidation or reorganization is proposed in the Plan. As the Plan calls for liquidation, this requirement is inapplicable.

## XVI. MISCELLANEOUS PROVISIONS

### A. Effects of Confirmation

#### 1. Amendments to the Plan

The Committee reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

#### 2. Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Court. The Hashfast Creditor Trust shall be authorized, without further application or Order of the Court to take whatever action is necessary to achieve consummation and carry-out the Plan in accordance with this Plan and the Code.

#### 3. Post-Confirmation Status Report

Within 120 days of the entry of the Confirmation Order, the Hashfast Creditor Trust will file status reports with the Court explaining what progress has been made toward consummation of the Plan. The status report will be served on the UST and those parties who have requested special notice post-confirmation. The Court may schedule subsequent status conferences in its discretion.

#### 4. Retention of Professionals

After the Effective Date, the Hashfast Creditor Trust may retain professionals on such terms as the Hashfast Trustee deems reasonable without Court approval. Persons who served as professionals to the Committee prior to the Effective Date may also serve as professionals to the Hashfast Creditor Trust after the Effective Date. Any professionals retained by the Hashfast Creditor Trust will be compensated as an administrative expense of the Hashfast Creditor Trust without further order of the Court.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**5.**      **United States Trustee Fees**

On the Effective Date and thereafter until entry of a Final Decree, the Hashfast Creditor Trust shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code ("U.S. Trustee Fees").

**6.**      **Governing Law**

Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of California, without giving effect to the principles of conflicts of laws thereof.

**7.**      **Binding Effect of the Plan**

Pursuant to 11 U.S.C. 1141, the Plan shall be binding upon the Debtors, Creditors, Claimants, Equity Interest Holders and all other parties in interest, and their respective successors and assigns.

**8.**      **Successors and Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and assigns of each entity.

**9.**      **Inconsistencies**

To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

**10.**      **Rules of Construction**

For the purpose of this Plan, unless otherwise provided in this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing document, exhibit or schedule filed or to be filed means such document, exhibit or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to a person or entity as a Holder of a Claim or Equity Interest includes that person or

- 28 -

entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions or as amended or as modified; and (viii) the rules of construction set forth in Section 102 of the Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or any other provision in this Section.

### 11.     Rules of Interpretation

1.     Except as otherwise provided in the Plan, Rule 9006(a) applies when computing any time period under the Plan.

2.     Any term used in the Plan that is not a defined term, but that is used in the Code or Rules has the meaning assigned to such term in the Code or Rules, as applicable.

3.     Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

### B.     **Conditions to Effectiveness of Plan**

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.     The Confirmation Order in form and substance reasonably satisfactory to the Committee has become a Final Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Committee may permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.     Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in Article V, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Equity Interest against the Debtors, or any property thereof, or against the Hashfast Creditor Trust for the purposes of, directly or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; *provided, that* such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3. Execution of the Hashfast Creditor Trust agreement in a form acceptable to the Committee.

4. All ancillary documents necessary to implement and confirm the Plan have been approved by the Committee and affected or executed by the parties, unless the Committee has waived this requirement in writing.

5. Upon the satisfaction or waiver of each condition precedent to the Plan becoming effective, the Committee shall so notify the Court, and upon the filing of such notice the Plan shall become effective without further Order of the Court.

## C. **Retention of Jurisdiction**

After the Effective Date, the Hashfast Creditor Trust will be free to perform all functions assigned to it under the Plan without approval of the Court, except as specifically set forth herein. However, the Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1. All objections to the allowance of Claims and Equity Interests and the compromise of Claims and Equity Interests;

2. All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Bankruptcy Cases by Order of the Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Hashfast Creditor Trust in the ordinary course of business without a Court Order;

3. Any adversary proceedings and/or contested matters brought by the Committee or the Hashfast Creditor Trust, including but not limited to the Causes of Action;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

Case: 14-30725 Doc# 311 Filed: 02/16/15 Entered: 02/16/15 22:28:54 Page 42 of 47

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6. The issuance of such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. The removal of the Hashfast Trustee and the election of any successor Hashfast Trustee;

8. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

9. All objections to the allowance of any and all Claims arising from the rejection of any executory contract or lease;

10. Such other matters as may be provided for in the Code or the Plan;

11. The protection of Estate Assets and/or Trust Assets from adverse claims or interference inconsistent with the Plan; and

12. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

## D. **Headings**

Article, section, and paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

## E. **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

**To Debtors:**

Peter Kravitz, CRO
Hashfast, LLC and Hashfast Technologies, LLC.
29209 Canwood St., Suite 210
Agoura Hills, CA 91301

With copies to:

Peter Siddiqui, Esquire
Katten Muchin Rosenman, LLP

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

525 W. Monroe St.
Chicago, IL 60661-3693
Email: peter.siddiqui@kattenlaw.com
Fax: (312) 902-1061

**Official Committee of Unsecured Creditors of
Hashfast Technologies, LLC**

Ashley McDow, Esq.
Baker & Hostetler LLP
11601 Wilshire Blvd., 14th Fl.
Los Angeles, CA 90025-0509
Email: amcdow@bakerlaw.com
Fax: (310) 820-8859

### F.    Manner of Payment

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Hashfast Creditor Trust, by wire transfer, by automated clearing house transfer from a domestic bank, or transfer of Bitcoin from a Bitcoin wallet belonging to the Hashfast Creditor Trust, at the option of the Hashfast Creditor Trust and/or the payee, as applicable.

### G.    Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Hashfast Creditor Trust in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Hashfast Creditor Trust may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Hashfast Creditor Trust the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Hashfast Creditor Trust to the appropriate authority. If the Holder of an Allowed Claim and/or Allowed Equity Interest fails to provide to the Hashfast Creditor Trust the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Hashfast Creditor Trust to the Holder of the need for such information, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## H. Transmittal of Distributions

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim and/or Allowed Equity Interest or as provided in this Plan, any property to be distributed on account of an Allowed Claim and/or Allowed Equity Interest shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim and/or Allowed Equity Interest entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim and/or Allowed Equity Interest to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Hashfast Creditor Trust pursuant to Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records. If no address is provided or located or any payment is returned after being sent to such address, Distributions to such Claimant or Equity Interest Holder shall be treated as undeliverable and unclaimed property.

## I. Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Hashfast Creditor Trust.

## J. Fractional Cents; Multiple Distributions

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

### K. Saturday, Sunday or Legal Holiday

If any Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### L. Tax Treatment

#### 1. Section 1146 Exemption

Pursuant to Section 1146(a) of the Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors, Estates, and/or Hashfast Creditor Trust, or subsequent transfer of the HashFast Creditor Trust pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

#### 2. Determination of Taxes

The Committee and the Hashfast Creditor Trust are authorized to request an expedited determination of taxes under section 505(b) of the Code for any and all tax returns filed for or on behalf of the Debtors for any and all taxable period (or portions thereof) through the Effective Date.

### M. Severability

If any term or provision of the Plan is held by the Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the term and provisions of the Plan may, at the Committee's option remain in full force and effect and not be deemed affected. However, the Committee reserves the right not to proceed to Confirmation or

- 34 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Dated: February 16, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _____
Ashley M. McDow
Michael T. Delaney

Attorneys for the OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated: February 16, 2015

By: _____
Rob Edgeworth

Chairman of the OFFICIAL COMMITTEE OF UNSECURED CREDITORS

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 16, 2015

605908435.1

Case: 14-30725    Doc# 311    Filed: 02/16/15    Entered: 02/16/15 22:28:54    Page 47 of 47