1   CHRISTOPHER D. SULLIVAN (148083)
    GREGORY A. ROUGEAU (194437)
2   DIAMOND McCARTHY LLP
3   150 California Street, Suite 2200
    San Francisco, CA 94111
4   Telephone: (415) 692-5200
    Facsimile: (415) 263-9200
5   e-mail: csullivan@diamondmccarthy.com
            grougeau@diamondmccarthy.com
6
    Counsel for Creditor
7   LIQUIDBITS CORPORATION

8

9                  UNITED STATES BANKRUPTCY COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  | In re: | Case No. 14-30725 |
13  | | |
    | HASHFAST TECHNOLOGIES LLC, a | (Substantively consolidated with *In re* |
14  | California limited liability company, | *HashFast LLC*, Case No. 14-30866) |
15  | Debtor and Debtor-In-Possession. | Chapter 11 |
16  | ⌧Affects HASHFAST LLC, a Delaware | **APPLICATION OF LIQUIDBITS** |
17  | limited liability company, | **CORPORATION FOR ALLOWANCE OF** |
    | | **CHAPTER 11 ADMINISTRATIVE** |
18  | Debtor and Debtor-In-Possession. | **EXPENSE UNDER 11 U.S.C. §** |
19  | | **503(b)(1)(A)** |
20  | | Date: TBD[1] |
21  | | Time: TBD |
    | | Place: Courtroom 22 |
22  | | Judge: Hon. Dennis Montali |

23

24

25

26  _____

27  [1] Liquidbits shall set this Motion for hearing, and file any supporting pleadings, once the disposition of the
    United States Trustee's pending motion to convert these Chapter 11 cases to cases under Chapter 7 is
28  determined.

-1-

APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE UNDER 11 U.S.C § 503(b)(1)(A)

LIQUIDBITS CORPORATION ("Liquidbits") hereby respectfully applies for allowance of a Chapter 11 administrative expense, in the amount of $88,726.75, as follows:

## INTRODUCTION

At a critical early juncture in this case, Liquidbits placed, and paid for, orders with the Debtors. As acknowledged by the Debtors themselves, the Debtors could only partially fulfill those orders, leaving $88,726.25 owed to Liquidbits. Liquidbits is entitled to a Chapter 11 administrative claim for that amount, pursuant to 11 U.S.C. § 503(b)(1)(A).

## STATEMENT OF FACTS

**I.      GENERAL CASE BACKGROUND.**

On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson (collectively, the "Petitioning Creditors") commenced an involuntary bankruptcy under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against HashFast Technologies, LLC ("HashFast Technologies").

HashFast Technologies subsequently consented to entry of an order for relief, and moved to convert the case to Chapter 11. Its case was converted to Chapter 11 on June 4, 2014, by Order of the Court.

On June 6, 2014, HashFast, LLC ("HF," and collectively with Hashfast Technologies, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.

The Debtors were in the business of designing, developing, manufacturing and selling certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

On or about June 23, 2014, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). On July 8, 2014, the Debtors' Chapter 11 cases were ordered jointly administered, and the Debtors have since acted as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, no Trustee having been appointed in the cases.

From the outset of the cases, it was made apparent to all creditors and parties in interest that the best interests of the estate dictated an expeditious sale of the Debtors' inventory. Accordingly, on July 18, 2014, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief (the "Liquidbits Sale Motion").

In that Motion, the Debtors sought to, among other things, sell most of the Debtors' inventory to a new entity to be formed by Liquidbits, and assign that purchasing entity certain of Debtors' licenses, in exchange for cash sufficient in the total amount of up to $2,000,000 to pay for any allowed unpaid administrative and priority claims, any cure costs for any executory contracts to be assumed and assigned to the new entity, and a cash reserve to wind up the case.

As set forth in that Motion, time was of the upmost essence in that proposed transaction, as the value of the Debtors' inventory would almost certainly diminish with delay, as the Debtors' inventory consisted mainly of ASIC chips, mining boards as well as various other system components used in the Bitcoin mining business, and the value of such processing capabilities was subject to rapid depreciation. Indeed, the Motion articulated that mining technology had declined approximately 13% every ten (10) days over the two months preceding the filing of the Motion. Of additional, and particular concern, was that the Debtors' inventory was largely in an unfinished state, such that its value was likely to diminish even more precipitously with time.

The Committee opposed the Liquidbits Sale Motion, and on or about July 26, 2014, the Court issued a tentative ruling denying that motion. No further motion was filed.

After the failed Liquidbits Sale Motion, many of the Debtor's employees quit and the Debtor ceased functioning. The Committee and the Debtors then discerned that a "controlled liquidation" of the Debtors' assets served the best interests of the bankruptcy estates and creditors. That "controlled liquidation" has resulted in the liquidation of nearly all, if not all, of the Debtors' inventory. According to an Amended Consolidated Plan of Liquidation and Disclosure Statement

APPLICATION FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE UNDER 11 U.S.C. § 503(b)(9)(A)

(the "Disclosure Statement") filed by the Committee on February 16, 2015, there remains only $78,603 in cash on hand in the estates and preconfirmation administrative claims alone are estimated projected to be approximately $1,070,000.

The Committee's estimation of administrative claims in the Disclosure Statement does not include any mention of Liquidbits' administrative expense, summarized below. No bar date has been set for the filing of administrative claims.

## II.     LIQUIDBITS' ADMINISTRATIVE CLAIM.

Following the commencement of these Chapter 11 cases, and through July 2014, Liquidbits continued to order product from the Debtors. The Debtors' administrative debt to Liquidbits, in the amount of $88,726.75, arises from post-petition orders placed by Liquidbits that were cancelled by the Debtors.

Attached hereto as Exhibits "A," "B" and "C" are three product orders placed by Liquidbits with the Debtors on July 17, 2014, July 23, 2014, and July 31, 2014, respectively. The first two orders were paid for in full, but the second order, Exhibit "B" hereto, was not completely fulfilled by the Debtors, leaving Liquidbits with having paid for product it never received. The final order, Exhibit "C" hereto, was cancelled by the Debtors, apparently when the Debtors ceased ordinary course operations, but the postpetition amounts due from the Debtors to Liquidbits are acknowledged on that order.

As set forth in Exhibit "C," there is presently due and owing from the Debtors to Liquidbits the postpetition sum of $88,726.75. Of that amount, $78,726.75 relates to product that was not delivered and $10,000 was attributed to funds advanced to the Debtor for insurance.

The summary of the orders is as follows:

```
--------------------
Order: 8807171
Title: Long Lead Term Parts
Date: July 17
Value: $110,796.50
Notes:
  Order was revised
  Paid $189,523.25
  Credit due $78,726.75. Notes indicated on order 8807301
  Paid In Full and parts transferred to LBS vendor
```

```
---------------------
Order: 8806175
Title: PCB Order
Date: July 23
Value: $83,250
Notes:
    Paid in full and parts delivered to LBS vendor's facility

---------------------
Order: 8807301
Tite: 3000 Chips, Remaining Long Lead Term Parts
Date: July 31
Value: $435,943.25
Notes:
    Order was revised

    Canceled Order due to employees quitting and failure to move forward with
    proposed asset sale.
```

While the postpetition amounts due to Liquidbits have not been reflected in the Committee's Disclosure Statement, Liquidbits contends that they have been acknowledged by Province Capital. The money is owed to Liquidbits on a postpetition basis, and Liquidbits should be allowed a Chapter 11 administrative expense under 11 U.S.C. § 501(b).

## LEGAL ARGUMENT

Section 503(b)(1)(A) of the Bankruptcy Code states that administrative expenses shall be allowed for "actual, necessary costs and expenses of preserving the estate." While there are various exceptions, administrative expenses are "generally those that are incurred by the estate after entry of the order for relief." 4 King, *Collier on Bankruptcy*, ¶503.01 (15th ed. Rev. 1998).

Liquidbits respectfully requests that the Court presently allow the $88,726.75 due from the Debtors as a Chapter 11 administrative expense, with payment on the administrative expense to be determined at a later date. The postpetition funds paid to the Debtors by Liquidbits were "actual, necessary costs and expenses of preserving the estate," as they permitted the Debtor to realize cash flow and sustain operations. The postpetition debt owed to Liquidbits is entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(A).

APPLICATION FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE UNDER 11 U.S.C. § 503(b)(1)(A)

1

## **CONCLUSION**

2          Wherefore, Liquidbits requests that the Court grant this Application, and allow Liquidbits'

3   postpetition claim in the amount of $88,726.75 as a Chapter 11 administrative expense under 11

4   U.S.C. § 503(b)(1)(A).

5

6   Dated:  February 24, 2015                        DIAMOND McCARTHY LLP

7

8                                                    */s/ Gregory A. Rougeau*
                                                     Gregory A. Rougeau
9                                                    Attorneys for Creditor
                                                     LIQUIDBITS CORPORATION
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-

APPLICATION FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE UNDER 11 U.S.C § 503(b)(1)(A)

**EXHIBIT A**

HashFast Technologies LLC ("HashFast")
100 Bush Street, Suite 650
San Francisco, CA 94104 USA

| DATE |
| --- |
| July 17, 2014 |

# Order Confirmation

*ORDER NUMBER: 8807171 – REVISED 7-31-2014*
*Please have the ORDER Number appear on all related*
*correspondence*

**Buyer:**
Greg Bachrach
Liquidbits Corporation
20201 E Country Club Dr. #1502
Aventura, FL 33180

**Ship To:**
Greg Bachrach
Liquidbits Corporation
20201 E Country Club Dr. #1502
Aventura, FL 33180

| PART | DESCRIPTION | QUANTITY | UNIT | PRICE |
| --- | --- | --- | --- | --- |
| ICE40HX1K | Lattice ICE40HX1K-VQ100 FPGA 72 I/O - 100TQFP – requires 1 per Yoli board | 1,850 | $2.00 | $3,700.00 |
| FP1007R3 | Coiltronics FP1007R3 (IND,SMT,10x7mm, 60A, 150-170nH) – requires 24 per Yoli board | 44,400 | $0.55 | $24,420.00 |
| IR3550 | International Rectifier IR3550 PQFN 6x6mm – requires 24 per Yoli board | 44,400 | $1.57 | $69,708.00 |
| IR3566B | International Rectifier IR3566B Digital PWM Controller IC – requires 4 per Yoli board | 7,400 | $1.63 | $12,062.00 |
| IR3823MTRPBF | International Rectifier IR3823MTRPBF PQFN 4x5mm – requires 1 per Yoli board | 1,850 | $0.49 | $906.50 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Sub-Total | $110,796.50 |
| | Buyer to provide shipping and all applicable taxes and duties | | Shipping | N/A |
| | | | TOTAL | $110,796.50 |

**Payment:** Paid in full on 7/17/2014 by wire transfer of $189,523.25. A credit of $78,726.75 is applied to Order Confirmation # 8807301.

**Wire Instructions:**
**To: Silicon Valley Bank**
**Routing & Transit #: 121140399**
**For the credit of: HashFast Technologies LLC**
**Credit Account #: 3301032418**

**Taxes and Shipping:** Buyer to provide shipping and all applicable taxes and duties.

Case: 14-30725   Doc# 315   Filed: 02/24/15   Entered: 02/24/15 16:20:21   Page 8 of 29

**The Terms and Conditions of Commercial Sale attached to this Order Confirmation governs the sales of all product, licenses and services by Hashfast. Please review Section 2(a) governing delivery and refunds, and other sections that include provisions regarding warranties and refunds.**

This Order Confirmation may be executed in counterparts, which together will constitute one document. Facsimile signatures and electronic signatures obtained through Echosign or Docusign shall have the same legal effect as original signatures.

Buyer agrees that this Agreement is a binding agreement, and hereby confirms Buyer's agreement to its terms and conditions.

**BUYER:**

*Greg Bachrach*
Greg Bachrach (Jul 31, 2014)

Customer Signature _____

Printed Name _____ Greg Bachrach _____

Title _____ CEO _____

Company Name _____ Liquidbits Corporation _____

Email _____ gbachrach@liquidbits.biz _____

Phone _____ 305-903-5088 _____

Fax _____


**HASHFAST TECHNOLOGIES LLC:**

*monica hushen*
monica hushen (Jul 31, 2014)

By: _____

Name: _____ Monica Hushen _____

Title: _____ Chief Financial Officer _____

Date: _____ July 24, 2014 _____

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 9 of 29

**HASHFAST TERMS AND CONDITIONS OF COMMERCIAL SALE**

1.  OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION. These Terms and Conditions of Commercial Sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies LLC ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods, licenses to software, or services ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation or Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), (iii) payment or partial payment, or (iv) other conduct constituting acceptance. Hashfast's Offers are open for acceptance within the acceptance period stated by Hashfast in the Offer or, when no period is stated, within one (1) day from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance.

2.  PAYMENT.

(a)  Payments are due in the amounts, in the currency, and at the time stated in the order or confirmation sent by Hashfast, or if not so stated, due immediately in United Stated Dollars ("USD") wired to the account designated by Hashfast.

(b)  Bitcoin and other virtual currencies may be accepted as a convenience to Buyer via our payment processor, or by direct Bitcoin transfer at a conversion rate and Bitcoin amount quoted to Buyer in writing by Hashfast. Due to price volatility, such conversion rate and Bitcoin amount quote is good only for immediate Bitcoin transfers, and Hashfast may reject payments in its sole discretion that are not made immediately. Any refunds due to Buyer will be made in United States Dollars. For the purposes of calculating refunds and limitations on liability under these Terms, amounts paid in Bitcoin or other virtual currencies will be deemed paid in United States Dollars at: (a) the conversion rate given by Hashfast or its payment processor to Buyer at the time of payment, or if that such rate was not stated and is not known, (b) the conversion rate given by Hashfast to its customers on the order date. Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases.

(c)  Interest will accrue on all late payments, at the rate of 18% per annum or the applicable statutory rate, whichever is higher and to the extent permitted by applicable law, from the due date until payment in full. In the event of any default by Buyer in the payment of any fees or charges due, or any other default by Buyer, Hashfast shall have the right to withhold delivery of any Products until payments are brought current and Hashfast may suspend, delay or cancel any credit, delivery or any other performance by Hashfast. Such right shall be in addition to, and not in lieu of, any other rights and remedies available under these Terms or at law or in equity for Buyer's default.

(d)  Prices are based on delivery Ex-Works (Incoterms 2000) Hashfast's manufacturing facility or other facility designated by Hashfast, unless agreed otherwise by Hashfast in a written Confirmation. Buyer will pay all shipping costs. Prices not include any taxes, insurance, duties or similar levies ("Taxes"). Buyer will pay all Taxes. If Hashfast is required by law to pay or collect Taxes, Buyer will pay such Taxes to Hashfast upon invoice.

3.  DELIVERY.

(a)  Except for "guaranteed" delivery dates described in Section 3(b) below, delivery dates communicated or acknowledged by Hashfast are approximate only, and are dependent upon supply chain interruptions and stoppages, development delays, and other factors. Therefore, Buyer shall not rely upon, and Hashfast shall

not be liable for any other estimation statement of expectation when delivery will occur, or be liable for or in breach of its obligations to Buyer because of delivery made within a reasonable time before or after such stated delivery date, provided that Hashfast use its commercially reasonable best efforts to deliver. Buyer will give Hashfast written notice of breach and ten (10) days within which to cure. Buyer's sole and exclusive remedy for breach under this Section 3(a) is to cancel the undelivered portions of the order after such cure period, and receive a refund for the cancelled portion.

(b)  If Hashfast explicitly states a delivery date using the words "Guaranteed Delivery Date" in the Order Confirmation sent by Hashfast and accepted by Buyer and Hashfast, then Hashfast will deliver the Product by such delivery date. Buyer may cancel the portion of such order that remains undelivered by Hashfast by the Guaranteed Delivery Date at Buyer's request, and Hashfast will refund the payment for such cancelled units. BUYER'S SOLE AND EXCLUSIVE REMEDY FOR FAILING TO DELIVER BY THE GUARANTEED DELIVERY DATE IS TO CANCEL THE UNDELIVERED PORTIONS OF THE ORDER, AND RECEIVE A REFUND FOR THE CANCELLED PORTION.

(c)  In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast's invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date. Delivery may also be contingent on full payment. NO ORDER OR ANY PART THEREOF MAY BE RESCHEDULED OR CANCELLED WITHOUT HASHFAST'S PRIOR WRITTEN CONSENT EXCEPT FOR CANCELLATIONS PERMITTED UNDER THIS SECTION 3.

(d)  Products shall be delivered EXWORKS (Incoterms 2000) Hashfast's manufacturing facility, or other facility as designated by Hashfast.

4.  RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY. All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast's performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein. None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer. Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that a separate license is needed or useful. The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement. Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a)

Case: 14-30725     Doc# 315     Filed: 02/24/15     Entered: 02/24/15 16:20:21     Page 10 of 29

modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast.

Buyer's rights under these Terms are conditioned upon Buyer not performing any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5.    CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database tapes. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6.    COMMERCIAL USE. Buyer represents and agrees that the Products are purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately in writing.

7.    AS IS PROVISION

      BUYER UNCONDITIONALLY ACCEPTS THE EQUIPMENT "AS IS," IN ITS PRESENT CONDITION, WITH ALL DEFECTS, KNOWN OR UNKNOWN, PATENT OR LATENT, AND WITHOUT REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED. THE CONSIDERATION PAID FOR THE EQUIPMENT REFLECTS THE "AS IS" NATURE OF THIS CONVEYANCE.

8.    LIMITATION OF LIABILITY.

(a)   EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b)   EXCEPT AS PROVIDED IN SECTION 9, HASHFAST'S AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (A) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST FROM BUYER IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c)   Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9.    APPLICABLE LAW EXCEPTIONS. NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10.   CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast. Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11.   COMPLIANCE WITH LAWS. Buyer represents that it is duly authorized to enter into these Terms and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12.   EXPORT. Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received. Hashfast's delivery v1of any order is contingent upon the issuance of any applicable export license required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13.   REGULATORY REQUIREMENTS. Hashfast is not responsible for determining whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which such Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14.   ASSIGNMENT AND SETOFF. Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases. Buyer shall not assign any rights or obligations under these Terms without the prior written consent of Hashfast. Buyer hereby waives any and all rights to offset existing and future claims against any payments due for Products sold under these Terms or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15.   GOVERNING LAW AND ARBITRATION.

(a)   These Terms, each Agreement, and any Dispute as defined in Section 15(b) shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect.

(b)   ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, ITS AGENTS, EMPLOYEES, PRINCIPALS, SUCCESSORS, ASSIGNS, AFFILIATES, SUBSIDIARIES, ARISING FROM OR RELATING TO THE PURCHASE OF PRODUCT, THESE TERMS, ITS INTERPRETATION OR THE BREACH, TERMINATION OR VALIDITY THEREOF, OR HASHFAST'S ADVERTISING, (EACH, A "DISPUTE") SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c)   THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d)   The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or these Terms is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed. Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e)   NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 11 of 29

(f)   The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity except that the arbitrator will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law.  This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA).  The award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g)   Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16.   BREACH AND TERMINATION.  Without prejudice to any rights or remedies Hashfast may have under these Terms or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect these Terms, any Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon occurrence of any of the events referred to above under (i) through (iv), all payments to be made by Buyer shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3, 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-25.

17.   PRODUCT AND PRODUCTION CHANGES.  Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18.   U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 100 Bush Street, Suite 650, San Francisco, California, 94104, USA.

19.   FORCE MAJEURE. Hashfast party will not be deemed in default to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20.   ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affiliate.  No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If

any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision will be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21.   REJECTION OF OTHER TERMS; ERRORS. Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast.  No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions provided by Buyer. Hashfast is not responsible for pricing, typographical or other errors in any offer by Hashfast and reserves the right to cancel any orders arising from such errors.

22.   CONTRACT CONSTRUCTION.  In the event that any provision(s) of an Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or".  The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation." If a party is the subject of a sentence, then the word "will" expresses an obligation, and deemed equivalent to "shall".  Batch designations are designated by Hashfast to manage its Product sales, and may or may not be associated with a particular grouping or manufacture of components.  Each party acknowledges that the provisions of these Terms were negotiated to reflect an informed, voluntary allocation between them of all the risks (both known and unknown) associated with the transactions contemplated hereunder. The parties agree the rules contract interpretation that would otherwise require ambiguities to be construed against the drafting party will not apply to these Terms. These Terms are in the English language only, which language will be controlling in all respects.  Any versions of these Terms in any other language will be for accommodation only and will not be binding upon either party.  All communications and documentation to be furnished under these Terms will be in the English language.

23.   WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy  shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24.   NOTICES. All notices or communications to be given under these Terms or an Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25.   RELATIONSHIP OF PARTIES.  The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

HASHFAST TERMS OF SALE (Phone & Email) – Ver.2014.02.21

ORDER CONFIRMATION

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 12 of 29



# Revised Order Confirmation #8807171

EchoSign Document History                    July 31, 2014

| | |
|---|---|
| Created: | July 31, 2014 |
| By: | HashFast Support (cara@hashfast.com) |
| Status: | SIGNED |
| Transaction ID: | XCE23WQ3H5SXZ2F |

# "Revised Order Confirmation #8807171" History

📄 Document created by HashFast Support (cara@hashfast.com)
   July 31, 2014 - 12:13 PM PDT - IP address: 38.88.216.74

📧 Document emailed to Greg Bachrach (gbachrach@liquidbits.biz) for signature
   July 31, 2014 - 12:14 PM PDT

📄 Document viewed by Greg Bachrach (gbachrach@liquidbits.biz)
   July 31, 2014 - 12:15 PM PDT - IP address: 64.233.172.99

✍ Document e-signed by Greg Bachrach (gbachrach@liquidbits.biz)
   Signature Date: July 31, 2014 - 12:24 PM PDT - Time Source: server - IP address: 69.38.214.164

📧 Document emailed to monica hushen (monica@hashfast.com) for signature
   July 31, 2014 - 12:24 PM PDT

📄 Document viewed by monica hushen (monica@hashfast.com)
   July 31, 2014 - 12:38 PM PDT - IP address: 64.233.172.99

✍ Document e-signed by monica hushen (monica@hashfast.com)
   Signature Date: July 31, 2014 - 1:47 PM PDT - Time Source: server - IP address: 38.88.216.74

◎ Signed document emailed to Greg Bachrach (gbachrach@liquidbits.biz), monica hushen
   (monica@hashfast.com) and HashFast Support (cara@hashfast.com)
   July 31, 2014 - 1:47 PM PDT

**EXHIBIT B**

HashFast Technologies LLC ("Hashfast")
100 Bush Street, Suite 650
San Francisco, CA 94104 USA

| DATE |
| --- |
| July 23, 2014 |

# Order Confirmation

*ORDER NUMBER: 8806175*
*Please have the ORDER Number appear on all related*
*correspondence*

**Buyer:**
Greg Bachrach
Liquidbits Corporation
20201 E Country Club Dr. #1502
Aventura, FL 33180

**Ship To:**
Greg Bachrach
Liquidbits Corporation
20201 E Country Club Dr. #1502
Aventura, FL 33180

| PART | DESCRIPTION | QUANTITY | UNIT | PRICE |
| --- | --- | --- | --- | --- |
| PCB's | PCB's – China | 1,850 | $45.00 | $83,250.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  | Sub-Total | $83,250.00 |
|  | Buyer to provide shipping and pay all applicable taxes and duties. |  | Shipping | N/A |
|  |  |  | TOTAL | $83,250.00 |

**Payment:** Payment of the total above is due in full in United Stated Dollars ("USD") by wire transfer upon Buyer's signature.

**Wire Instructions:**
**To: Silicon Valley Bank**
**Routing & Transit #: 121140399**
**For the credit of: HashFast Technologies LLC**
**Credit Account #: 3301032418**

**Taxes and Shipping:** Not applicable

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 15 of 29

The Terms and Conditions of Commercial Sale attached to this Order Confirmation governs the sales of all product, licenses and services by Hashfast. Please review Section 2(a) governing delivery and refunds, and other sections that include provisions regarding warranties and refunds.

This Order Confirmation may be executed in counterparts, which together will constitute one document. Facsimile signatures and electronic signatures obtained through Echosign or Docusign shall have the same legal effect as original signatures.
Buyer agrees that this Agreement is a binding agreement, and hereby confirms Buyer's agreement to its terms and conditions.

**BUYER:**

*Greg Bachrach*
Greg Bachrach (Jul 23, 2014)

Customer Signature _____

Printed Name _____ Greg Bachrach _____

Title _____ CEO _____

Company Name _____ Liquidbits Corporation _____

Email _____ gbachrach@liquidbits.biz _____

Phone _____ 305-903-5088 _____

Fax _____

**HASHFAST TECHNOLOGIES LLC:**

*Tim Wong*
Tim Wong (Jul 23, 2014)

By: _____

Name: _____ Tim Wong _____

Attachment I has been purposely removed as it is not applicable

Case: 14-30725     Doc# 315     Filed: 02/24/15     Entered: 02/24/15 16:20:21     Page 16 of 29

disabled**Attachment II:**

**HASHFAST TERMS AND CONDITIONS OF COMMERCIAL SALE**

1.   OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION.   These Terms and Conditions of Commercial Sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies LLC ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods, licenses to software, or services ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation or Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), (iii) payment or partial payment, or (iv) other conduct constituting acceptance.   Hashfast's Offers are open for acceptance within the acceptance period stated by Hashfast in the Offer or, when no period is stated, within one (1) day from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance.

2.   PAYMENT.

(a)   Payments are due in the amounts, in the currency, and at the time stated in the order or confirmation sent by Hashfast, or if not so stated, due immediately in United Stated Dollars ("USD") wired to the account designated by Hashfast.

(b)   Bitcoin and other virtual currencies may be accepted as a convenience to Buyer via our payment processor, or by direct Bitcoin transfer at a conversion rate and Bitcoin amount quoted to Buyer in writing by Hashfast.  Due to price volatility, such conversion rate and Bitcoin amount quote is good only for immediate Bitcoin transfers, and Hashfast may reject payments in its sole discretion that are not made immediately.  Any refunds due to Buyer will be made in United States Dollars.  For the purposes of calculating refunds and limitations on liability under these Terms, amounts paid in Bitcoin or other virtual currencies will be deemed paid in United States Dollars at: (a) the conversion rate given by Hashfast or its payment processor to Buyer at the time of payment, or if that such rate was not stated and is not known, (b) the conversion rate given by Hashfast to its customers on the order date.  Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases.

(c)   Interest will accrue on all late payments, at the rate of 18% per annum or the applicable statutory rate, whichever is higher and to the extent permitted by applicable law, from the due date until payment in full.  In the event of any default by Buyer in the payment of any fees or charges due, or any other default by Buyer, Hashfast shall have the right to withhold delivery of any Products until payments are brought current and Hashfast may suspend, delay or cancel any credit, delivery or any other performance by Hashfast. Such right shall be in addition to, and not in lieu of, any other rights and remedies available under these Terms or at law or in equity for Buyer's default.

(d)   Prices are based on delivery Ex-Works (Incoterms 2000) Hashfast's manufacturing facility or other facility designated by Hashfast, unless agreed otherwise by Hashfast in a written Confirmation.  Buyer will pay all shipping costs.  Prices not include any taxes, insurance, duties or similar levies ("Taxes").  Buyer will pay all Taxes.  If Hashfast is required by law to pay or collect Taxes, Buyer will pay such Taxes to Hashfast upon invoice.

3.   DELIVERY.

(a)   Except for "guaranteed" delivery dates described in Section 3(b) below, delivery dates communicated or acknowledged by Hashfast are approximate only,

and are dependent upon supply chain interruptions and stoppages, development delays, and other factors. Therefore, Buyer shall not rely upon, and Hashfast shall not be liable for any other estimation statement of expectation when delivery will occur, or be liable for or in breach of its obligations to Buyer because of delivery made within a reasonable time before or after such stated delivery date, provided that Hashfast use its commercially reasonable best efforts to deliver.  Buyer will give Hashfast written notice of breach and ten (10) days within which to cure. Buyer's sole and exclusive remedy for breach under this Section 3(a) is to cancel the undelivered portions of the order after such cure period, and receive a refund for the cancelled portion.

(b)   If Hashfast explicitly states a delivery date using the words "Guaranteed Delivery Date" in the Order Confirmation sent by Hashfast and accepted by Buyer and Hashfast, then Hashfast will deliver the Product by such delivery date.  Buyer may cancel the portion of such order that remains undelivered by Hashfast by the Guaranteed Delivery Date at Buyer's request, and Hashfast will refund the payment for such cancelled units.  BUYER'S SOLE AND EXCLUSIVE REMEDY FOR FAILING TO DELIVER BY THE GUARANTEED DELIVERY DATE IS TO CANCEL THE UNDELIVERED PORTIONS OF THE ORDER, AND RECEIVE A REFUND FOR THE CANCELLED PORTION.

(c)   In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast's invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed.  If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date.  Delivery may also be contingent on full payment.  NO ORDER OR ANY PART THEREOF MAY BE RESCHEDULED OR CANCELLED WITHOUT HASHFAST'S PRIOR WRITTEN CONSENT EXCEPT FOR CANCELLATIONS PERMITTED UNDER THIS SECTION 3.

(d)   Products shall be delivered EXWORKS (Incoterms 2000) Hashfast's manufacturing facility, or other facility as designated by Hashfast.

4.   RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY.  All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast's performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein.  None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer.  Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that a separate license is needed or used.  The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement.  Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

disabledORDER CONFIRMATION                                Page 3 of 6

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a) modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast.

Buyer's rights under these Terms are conditioned upon Buyer not performing any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5.   CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database tapes. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6.   COMMERCIAL USE. Buyer represents and agrees that the Products it purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately in writing.

7.   LIMITED PRODUCT WARRANTY AND DISCLAIMER.

(a)   WARRANTY AGAINST DEFECTS. Hashfast warrants that, under normal use, the Products (excluding those referred to in Section 7(b) below) shall, at the time of delivery to Buyer and be substantially free from defects in material or workmanship and shall substantially conform to Hashfast's specifications for such Product. Buyer will notify Hashfast in writing of any non-conforming Products within ten (10) days of delivery, otherwise Hashfast will have no further obligation or warranty for such Products. Such notice will describe in reasonable detail the non-conformance claimed by Buyer. Delivered Product will be deemed accepted and conforming unless Buyer provides such notice within the ten (10) day period.

(b)   HASHFAST'S SOLE AND EXCLUSIVE OBLIGATION, AND BUYER'S SOLE AND EXCLUSIVE RIGHT, WITH RESPECT TO CLAIMS UNDER ITS WARRANTIES SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF A DEFECTIVE OR NON-CONFORMING PRODUCT, OR IF HASHFAST CANNOT REPAIR OR REPLACE SUCH PRODUCT AFTER USING COMMERCIALLY REASONABLE EFFORTS, THEN A REFUND TO BUYER FOR THE PURCHASE PRICE THEREOF. HASHFAST WILL HAVE A REASONABLE TIME TO REPAIR, REPLACE OR REFUND. THE NON-CONFORMING OR DEFECTIVE PRODUCTS SHALL BECOME HASHFAST'S PROPERTY AS SOON AS THEY ARE RETURNED FOR REPLACEMENT OR REFUND.

(c)   At Hashfast's request, Buyer will ship Products returned under warranty claims to Hashfast's designated facility in conformance with Hashfast's then-current Return Material Authorization policy and are accompanied by a statement of the reason for the return on a Return Material Authorization form issued by Hashfast. Where warranty adjustment is made, Hashfast will pay for freight expenses. Buyer shall pay for returned Products that are not defective or non-conforming together with the freight, testing and handling costs associated therewith. Except as provided in this Section 7, Hashfast has no obligation to accept returns.

(d)   Notwithstanding the foregoing, Hashfast shall have no obligations for breach of warranty if the alleged defect or non-conformance is found to have occurred as a result of environmental or stress testing, misuse, neglect, improper installation, accident or as a result of improper repair, operation at voltages other than as specified by Hashfast, overclocking above the nominal clockrate, operation in an ambient temperature other than 5-22 degrees Celsius (40-72 degrees Fahrenheit), use with equipment other than that sold by Hashfast, alteration, modification, storage, transportation or improper handling. Further, a computing Product will be deemed to operate within its specifications if it varies within twenty (20%) more than, or has the performance stated in its specifications when operated at the

nominal voltage specified by Hashfast.

(e)   THE WARRANTY GRANTED ABOVE SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS, AGENTS OR REPRESENTATIVES. THE EXPRESS WARRANTY GRANTED ABOVE IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE,   MERCHANTABILITY, OR NON-INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. ALL OTHER WARRANTIES WHETHER EXPRESSED OR IMPLIED ARE HEREBY SPECIFICALLY DISCLAIMED BY HASHFAST.

(f)   Except as provided by Section 9, the foregoing states the entire liability of Hashfast, and Buyer's sole and exclusive remedies, in connection with defective or non-conforming Products.

8.   LIMITATION OF LIABILITY.

(a)   EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b)   EXCEPT AS PROVIDED IN SECTION 9, HASHFAST'S AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (1) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST FROM BUYER IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c)   Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9.   APPLICABLE LAW EXCEPTIONS.   NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10.   CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast. Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11.   COMPLIANCE WITH LAWS. Buyer represents that it is duly authorized to enter into these Terms and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12.   EXPORT. Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received.  Hashfast's delivery v1of any order is contingent upon the issuance of any applicable export license required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13.   REGULATORY REQUIREMENTS. Hashfast is not responsible for determining

Case: 14-30725     Doc# 315     Filed: 02/24/15     Entered: 02/24/15 16:20:21     Page 18 of 29

whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which such Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14.    ASSIGNMENT AND SETOFF. Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases. Buyer shall not assign any rights or obligations under these Terms without the prior written consent of Hashfast. Buyer hereby waives any and all rights to offset existing and future claims against any payments due for Products sold under these Terms or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15.    GOVERNING LAW AND ARBITRATION.

(a)    These Terms, each Agreement, and any Dispute as defined in Section 15(b) shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect.

(b)    ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, ITS AGENTS, EMPLOYEES, PRINCIPALS, SUCCESSORS, ASSIGNS, AFFILIATES, SUBSIDIARIES, ARISING FROM OR RELATING TO THE PURCHASE OF PRODUCT, THESE TERMS, ITS INTERPRETATION OR THE BREACH, TERMINATION OR VALIDITY THEREOF, OR HASHFAST'S ADVERTISING, (EACH, A "DISPUTE") SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c)    THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d)    The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or these Terms is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed.  Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e)    NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(f)    The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity except that the arbitrator will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g)    Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16.    BREACH AND TERMINATION. Without prejudice to any rights or remedies Hashfast may have under these Terms or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect these Terms, any Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon

occurrence of any of the events referred to above under (i) through (iv), all payments to be made by Buyer shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3, 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-25.

17.    PRODUCT AND PRODUCTION CHANGES. Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18.    U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 100 Bush Street, Suite 650, San Francisco, California, 94104, USA.

19.    FORCE MAJEURE. Hashfast party will not be deemed in default to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20.    ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affiliate.  No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision will be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21.    REJECTION OF OTHER TERMS; ERRORS.  Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast.  No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions provided by Buyer. Hashfast is not responsible for pricing, typographical or other errors in any offer by Hashfast and reserves the right to cancel any orders arising from such errors.

22.    CONTRACT CONSTRUCTION.  In the event that any provision(s) of an Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or".  The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation." If a party is the subject of a sentence, then the word "will" expresses an obligation, and deemed equivalent to "shall".  Batch designations are designated by Hashfast to manage its Product sales, and may or may not be associated with a particular grouping or manufacture of components.  Each party acknowledges that the provisions of these Terms were negotiated to reflect an informed, voluntary allocation between them of all the risks (both known and unknown) associated with the transactions contemplated hereunder. The parties agree the rules contract interpretation that would otherwise require ambiguities to be construed against the drafting party will not apply to these Terms. These Terms are in the English language only, which language will be controlling in all respects.  Any versions of these Terms in any other language will be for accommodation only and will not be binding upon either party. All communications and documentation to be furnished under these Terms will be in the English language.

23.    WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24.    NOTICES. All notices or communications to be given under these Terms or an

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 19 of 29

Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25. RELATIONSHIP OF PARTIES. The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

HASHFAST TERMS OF SALE (Phone & Email) – Ver.2014.02.21

# Order Confirmation 8806175 - Revised PCB Order

## EchoSign Document History

July 23, 2014



| | |
|---|---|
| Created: | July 23, 2014 |
| By: | HashFast Support (cara@hashfast.com) |
| Status: | SIGNED |
| Transaction ID: | XC2DSYMXD92DI7A |

## "Order Confirmation 8806175 - Revised PCB Order" History

Document created by HashFast Support (cara@hashfast.com)
July 23, 2014 - 12:59 PM PDT - IP address: 38.88.216.74

Document emailed to Tim Wong (tim@hashfast.com) for signature
July 23, 2014 - 1:00 PM PDT

Document viewed by Tim Wong (tim@hashfast.com)
July 23, 2014 - 1:04 PM PDT - IP address: 38.88.216.74

Document e-signed by Tim Wong (tim@hashfast.com)
Signature Date: July 23, 2014 - 1:04 PM PDT - Time Source: server - IP address: 38.88.216.74

Document emailed to Greg Bachrach (gbachrach@liquidbits.biz) for signature
July 23, 2014 - 1:04 PM PDT

Document viewed by Greg Bachrach (gbachrach@liquidbits.biz)
July 23, 2014 - 1:05 PM PDT - IP address: 66.249.84.88

Document e-signed by Greg Bachrach (gbachrach@liquidbits.biz)
Signature Date: July 23, 2014 - 1:09 PM PDT - Time Source: server - IP address: 166.137.187.110

Signed document emailed to HashFast Support (cara@hashfast.com), Tim Wong (tim@hashfast.com) and Greg Bachrach (gbachrach@liquidbits.biz)
July 23, 2014 - 1:09 PM PDT

**EXHIBIT C**

HashFast Technologies LLC ("Hashfast")
100 Bush Street, Suite 650
San Francisco, CA  94104 USA

| DATE |
| --- |
| July 31,2014 |

# Order Confirmation

*ORDER NUMBER: 8807301*
*Please have the ORDER Number appear on all related*
*correspondence*

**To:** _____ **("Buyer")**

**Ship To:**
Greg Bachrach
LiquitBits

| PART | DESCRIPTION | QUANTITY | UNIT | PRICE |
| --- | --- | --- | --- | --- |
| GN ASIC | HashFast Golden Nonce ASIC | 3,000 | US$ 115.00 | US$ 345,000.00 |
| | | | | |
| ICE40HX1K | Lattice ICE40HX1K-VQ100 (IC FPGA 72 I/O - 100TQPF). Requires 1 per Yoli board | 3,000 | US$ 2.00 | US$ 6,000.00 |
| FP1007R3 | Coiltronics FP1007R3-R17-R (IND, SMY,10x7mm, 60A, 150-170nH).  Requires 24 per Yoli board | 72,000 | US$ 0.55 | US$ 39,600.00 |
| IR3550 | International Rectifier IR3550 (PQFN 6x6mm). Requires 24 per Yoli board | 72,000 | US$ 1.57 | US$ 113,040.00 |
| IR3566B | International Rectifier IR3566B (IR3566B Digital PWM Controller IC). Requires 4 per Yoli board | 12,000 | US$ 1.63 | US$ 19,560.00 |
| IR3823 | International Rectifier IR3823MTRPBF (PQFN 4x5mm). Requires 1 per Yoli board | 3,000 | US$ 0.49 | US$ 1,470.50 |
| | | | | |
| ADJ | Credit from cancelling of PSUs/Coolers/Fans from Order 8807171: $189,523.25 paid on 7/17 less $110,796.50 for the 5 long lead-time parts. | | CREDIT | (US$ 78,726.75) |
| ADJ | Credit | | CREDIT | (US $10,000.00) |
| | | | Sub-Total | US$ 435,943.25 |
| | | | Shipping | TBD |
| | | | TOTAL | US$ 435,943.25 |

**Payment:**  Payment of the total above is due in full in United Stated Dollars ("USD") by wire transfer upon Buyer's signature.  **HashFast Technologies LLC confirms that all net proceeds from this sale will be remitted to sellers DIP Account for the benefit of creditors.**

**Wire Instructions:**
**To: Silicon Valley Bank**
**Routing & Transit #: 121140399**
**For the credit of: HashFast Technologies LLC**
**Credit Account #: 3301032418**

**Taxes and Shipping:**  Buyer to pay all taxes, duties and shipping costs.  Shipping method and cost to be selected and paid for by Buyer before shipment.

**Board Component (Lattice, Coiltronics, International Rectifier) Delivery:**  Within 24 hours of full payment and receipt of funds

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 23 of 29

**Distribution Notice:** Any excess cash proceeds from this order above HashFast current month operating expense requirements will go to the creditors DIP account for future distribution to creditors.

**The Terms and Conditions of Commercial Sale attached to this Order Confirmation governs the sales of all product, licenses and services by Hashfast. Please review Section 2(a) governing delivery and refunds, and other sections that include provisions regarding warranties and refunds.**

This Order Confirmation may be executed in counterparts, which together will constitute one document. Facsimile signatures and electronic signatures obtained through Echosign or Docusign shall have the same legal effect as original signatures.

Buyer agrees that this Agreement is a binding agreement, and hereby confirms Buyer's agreement to its terms and conditions.

**BUYER:**

Customer Signature _____ *Greg Bachrach* _____
Greg Bachrach (Aug 1, 2014)

Printed Name _____ Greg Bachrach _____

Title _____ CEO _____

Company Name _____ Liquid Bits Corporation _____

Email _____ gbachrach@coinware.io _____

Phone _____ 305-903-5088 _____

Fax _____

**HASHFAST TECHNOLOGIES LLC:**

By: _____ *monica hushen* _____
monica hushen (Aug 1, 2014)

Name: _____ Monica Hushen _____

Title: _____ Chief Financial Officer _____

Attachment I has been purposely removed as it is not applicable

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 24 of 29

## Attachment II:

### HASHFAST TERMS AND CONDITIONS OF COMMERCIAL SALE

1.   OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION.   These Terms and Conditions of Commercial Sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies LLC ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods, licenses to software, or services ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation or Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), (iii) payment or partial payment, or (iv) other conduct constituting acceptance.   Hashfast's Offers are open for acceptance within the acceptance period stated by Hashfast in the Offer, or, when no period is stated, within one (1) day from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance.

2.   PAYMENT.

(a)   Payments are due in the amounts, in the currency, and at the time stated in the order or confirmation sent by Hashfast, or if not so stated, due immediately in United Stated Dollars ("USD") wired to the account designated by Hashfast.

(b)   Bitcoin and other virtual currencies may be accepted as a convenience to Buyer via our payment processor, or by direct Bitcoin transfer at a conversion rate and Bitcoin amount quoted to Buyer in writing by Hashfast. Due to price volatility, such conversion rate and Bitcoin amount quote is good only for immediate Bitcoin transfers, and Hashfast may reject payments in its sole discretion that are not made immediately.  Any refunds due to Buyer will be made in United States Dollars.  For the purposes of calculating refunds and limitations on liability under these Terms, amounts paid in Bitcoin or other virtual currencies will be deemed paid in United States Dollars at: (a) the conversion rate given by Hashfast or its payment processor to Buyer at the time of payment, or if that such rate was not stated and is not known, (b) the conversion rate given by Hashfast to its customers on the order date. Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases.

(c)   Interest will accrue on all late payments, at the rate of 18% per annum or the applicable statutory rate, whichever is higher and to the extent permitted by applicable law, from the due date until payment in full. In the event of any default by Buyer in the payment of any fees or charges due, or any other default by Buyer, Hashfast shall have the right to withhold delivery of any Products until payments are brought current and Hashfast may suspend, delay or cancel any credit, delivery or any other performance by Hashfast. Such right shall be in addition to, and not in lieu of, any other rights and remedies available under these Terms or at law or in equity for Buyer's default.

(d)   Prices are based on delivery Ex-Works (Incoterms 2000) Hashfast's manufacturing facility or other facility designated by Hashfast, unless agreed otherwise by Hashfast in a written Confirmation. Buyer will pay all shipping costs. Prices not include any taxes, insurance, duties or similar levies ("Taxes"). Buyer will pay all Taxes.  If Hashfast is required by law to pay or collect Taxes, Buyer will pay such Taxes to Hashfast upon invoice.

3.   DELIVERY.

ORDER CONFIRMATION

(a)   Except for "guaranteed" delivery dates described in Section 3(b) below, delivery dates communicated or acknowledged by Hashfast are approximate only, and are dependent upon supply chain interruptions and stoppages, development delays, and other factors. Therefore, Buyer shall not rely upon, and Hashfast shall not be liable for any other estimation statement of expectation when delivery will occur, or be liable for or in breach of its obligations to Buyer because of delivery made within a reasonable time before or after such stated delivery date, provided that Hashfast use its commercially reasonable best efforts to deliver.  Buyer will give Hashfast written notice of breach and ten (10) days within which to cure. Buyer's sole and exclusive remedy for breach under this Section 3(a) is to cancel the undelivered portions of the order after such cure period, and receive a refund for the cancelled portion.

(b)   If Hashfast explicitly states a delivery date using the words "Guaranteed Delivery Date" in the Order Confirmation sent by Hashfast and accepted by Buyer and Hashfast, then Hashfast will deliver the Product by such delivery date.  Buyer may cancel the portion of such order that remains undelivered by Hashfast by the Guaranteed Delivery Date at Buyer's request, and Hashfast will refund the payment for such cancelled units.  BUYER'S SOLE AND EXCLUSIVE REMEDY FOR FAILING TO DELIVER BY THE GUARANTEED DELIVERY DATE IS  TO CANCEL THE UNDELIVERED PORTIONS OF THE ORDER, AND RECEIVE A REFUND FOR THE CANCELLED PORTION.

(c)   In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast's invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed.  If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date.  Delivery may also be contingent on full payment.  No ORDER OR ANY PART THEREOF MAY BE RESCHEDULED OR CANCELLED WITHOUT HASHFAST'S PRIOR WRITTEN CONSENT EXCEPT FOR CANCELLATIONS PERMITTED UNDER THIS SECTION 3.

(d)   Products shall be delivered EXWORKS (Incoterms 2000) Hashfast's manufacturing facility, or other facility as designated by Hashfast.

4.   RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY. All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast's performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein. None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer. Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 25 of 29

a separate license is needed or useful. The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement. Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a) modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast.

Buyer's rights under these Terms are conditioned upon Buyer not performing any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5.    CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database tapes. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6.    COMMERCIAL USE. Buyer represents and agrees that the Products it purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately in writing.

7.    LIMITED PRODUCT WARRANTY AND DISCLAIMER.

(a)    WARRANTY AGAINST DEFECTS. Hashfast warrants that, under normal use, the Products (excluding those referred to in Section 7(b) below) shall, at the time of delivery to Buyer and be substantially free from defects in material or workmanship and shall substantially conform to Hashfast's specifications for such Product.  Buyer will notify Hashfast in writing of any non-conforming Products within ten (10) days of delivery, otherwise Hashfast will have no further obligation or warranty for such Products.  Such notice will describe in reasonable detail the non-conformance claimed by Buyer. Delivered Product will be deemed accepted and conforming unless Buyer provides such notice within the ten (10) day period.

(b)    HASHFAST'S SOLE AND EXCLUSIVE OBLIGATION, AND BUYER'S SOLE AND EXCLUSIVE RIGHT, WITH RESPECT TO CLAIMS UNDER ITS WARRANTIES SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF A DEFECTIVE OR NON-CONFORMING PRODUCT, OR IF HASHFAST CANNOT REPAIR OR REPLACE SUCH PRODUCT AFTER USING COMMERCIALLY REASONABLE EFFORTS, THEN A REFUND TO BUYER FOR THE PURCHASE PRICE THEREOF.  HASHFAST WILL HAVE A REASONABLE TIME TO REPAIR, REPLACE OR REFUND.  THE NON-CONFORMING OR DEFECTIVE PRODUCTS SHALL BECOME HASHFAST'S PROPERTY AS SOON AS THEY ARE RETURNED FOR REPLACEMENT OR REFUND.

(c)    At Hashfast's request, Buyer will ship Products returned under warranty claims to Hashfast's designated facility in conformance with Hashfast's then-current Return Material Authorization policy and are accompanied by a statement of the reason for the return on a Return Material Authorization form issued by Hashfast. Where warranty adjustment is made, Hashfast will pay for freight expenses. Buyer shall pay for returned Products that are not defective or non-conforming together with the freight, testing and handling costs associated therewith.  Except as provided in this Section 7, Hashfast has no obligation to accept returns.

(d)    Notwithstanding the foregoing, Hashfast shall have no obligations for breach of warranty if the alleged defect or non-conformance is found to have occurred as a result of environmental or stress testing, misuse, neglect, improper installation, accident or as a result of improper repair, operation at voltages other than as

specified by Hashfast, overclocking above the nominal clockrate, operation in an ambient temperature other than 5-22 degrees Celsius (40-72 degrees Fahrenheit), use with equipment other than that sold by Hashfast, alteration, modification, storage, transportation or improper handling.  Further, a computing Product will be deemed to operate within its specifications if it varies within twenty (20%) more or less than the performance stated in its specifications when operated at the nominal voltage specified by Hashfast.

(e)    THE WARRANTY GRANTED ABOVE SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS, AGENTS OR REPRESENTATIVES. THE EXPRESS WARRANTY GRANTED ABOVE IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR NON-INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. ALL OTHER WARRANTIES WHETHER EXPRESSED OR IMPLIED ARE HEREBY SPECIFICALLY DISCLAIMED BY HASHFAST.

(f)    Except as provided by Section 9, the foregoing states the entire liability of Hashfast, and Buyer's sole and exclusive remedies, in connection with defective or non-conforming Products.

8.    LIMITATION OF LIABILITY.

(a)    EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b)    EXCEPT AS PROVIDED IN SECTION 9, HASHFAST'S AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (1) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST FROM BUYER IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c)    Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9.    APPLICABLE LAW EXCEPTIONS. NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.  The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10.    CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast. Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11.    COMPLIANCE WITH LAWS. Buyer represents that it is duly authorized to enter into these Terms and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12.    EXPORT. Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received.  Hashfast's delivery of any order is contingent upon the issuance of any applicable export license

Case: 14-30725     Doc# 315     Filed: 02/24/15     Entered: 02/24/15 16:20:21     Page 26 of 29

required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13. REGULATORY REQUIREMENTS. Hashfast is not responsible for determining whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which such Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14. ASSIGNMENT AND SETOFF. Refunds for partial order cancelations or returns will be adjusted for any discounts previously given to Buyer for volume purchases. Buyer shall not assign any rights or obligations under these Terms without the prior written consent of Hashfast. Buyer hereby waives any and all rights to offset existing and future claims against any payments due for Products sold under these Terms or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15. GOVERNING LAW AND ARBITRATION.

(a) These Terms, each Agreement, and any Dispute as defined in Section 15(b) shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect.

(b) ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, ITS AGENTS, EMPLOYEES, PRINCIPALS, SUCCESSORS, ASSIGNS, AFFILIATES, SUBSIDIARIES, ARISING FROM OR RELATING TO THE PURCHASE OF PRODUCT, THESE TERMS, ITS INTERPRETATION OR THE BREACH, TERMINATION OR VALIDITY THEREOF, OR HASHFAST'S ADVERTISING, (EACH, A "DISPUTE") SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c) THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d) The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or these Terms is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed. Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e) NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(f) The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity except that the arbitrator will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g) Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16. BREACH AND TERMINATION. Without prejudice to any rights or remedies Hashfast may have under these Terms or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect these Terms, any Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment

for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon occurrence of any of the events referred to above under (i) through (iv), all payments to be made by Buyer shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3, 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-25.

17. PRODUCT AND PRODUCTION CHANGES. Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18. U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 100 Bush Street, Suite 650, San Francisco, California, 94104, USA.

19. FORCE MAJEURE. Hashfast party will not be deemed in default to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20. ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affiliate. No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision will be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21. REJECTION OF OTHER TERMS; ERRORS. Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast. No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions provided by Buyer. Hashfast is not responsible for pricing, typographical or other errors in any offer by Hashfast and reserves the right to cancel any orders arising from such errors.

22. CONTRACT CONSTRUCTION. In the event that any provision(s) of an Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or". The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation." If a party is the subject of a sentence, then the word "will" expresses an obligation, and deemed equivalent to "shall". Batch designations are designated by Hashfast to manage its Product sales, and may or may not be associated with a particular grouping or manufacture of components. Each party acknowledges that the provisions of these Terms were negotiated to reflect an informed, voluntary allocation between them of all the risks (both known and unknown) associated with the transactions contemplated hereunder. The parties agree the rules contract interpretation that would otherwise require ambiguities to be construed against the drafting party will not apply to these Terms. These Terms are in the English language only, which language will be controlling in all respects. Any versions of these Terms in any other language will be for accommodation only and will not be binding upon either party. All communications and documentation to be furnished under these Terms will be in the English language.

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 27 of 29

23. WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24. NOTICES. All notices or communications to be given under these Terms or an Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25. RELATIONSHIP OF PARTIES. The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

HASHFAST TERMS OF SALE (Phone & Email) – Ver.2014.02.21

Case: 14-30725    Doc# 315    Filed: 02/24/15    Entered: 02/24/15 16:20:21    Page 28 of 29



# HashFast Order Confirmation 8807301 - Revised

| | |
|---|---|
| Created: | July 31, 2014 |
| By: | HashFast Support (cara@hashfast.com) |
| Status: | SIGNED |
| Transaction ID: | XCE9SHAQXZR5SQ8 |

## "HashFast Order Confirmation 8807301 - Revised" History

📄 Document created by HashFast Support (cara@hashfast.com)
July 31, 2014 - 1:33 PM PDT - IP address: 38.88.216.74

📧 Document emailed to Greg Bachrach (gbachrach@liquidbits.biz) for signature
July 31, 2014 - 1:34 PM PDT

📄 Document viewed by Greg Bachrach (gbachrach@liquidbits.biz)
July 31, 2014 - 4:17 PM PDT - IP address: 66.249.84.88

✍ Document e-signed by Greg Bachrach (gbachrach@liquidbits.biz)
Signature Date: August 01, 2014 - 8:01 AM PDT - Time Source: server - IP address: 69.38.214.164

📧 Document emailed to monica hushen (monica@hashfast.com) for signature
August 01, 2014 - 8:01 AM PDT

📄 Document viewed by monica hushen (monica@hashfast.com)
August 01, 2014 - 8:17 AM PDT - IP address: 66.249.84.88

✍ Document e-signed by monica hushen (monica@hashfast.com)
Signature Date: August 01, 2014 - 8:18 AM PDT - Time Source: server - IP address: 67.170.252.82

◎ Signed document emailed to monica hushen (monica@hashfast.com), HashFast Support (cara@hashfast.com) and Greg Bachrach (gbachrach@liquidbits.biz)
August 01, 2014 - 8:18 AM PDT