1 | Ashley M. McDow (245114)
Michael T. Delaney (261714)
2 | **BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
3 | Los Angeles, CA 90025-0509
Telephone: 310.820.8800
4 | Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
5 | mdelaney@bakerlaw.com

6 | Attorneys for the OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

7 |

8 | ## UNITED STATES BANKRUPTCY COURT

9 | ## NORTHERN DISTRICT OF CALIFORNIA

10 | ## SAN FRANCISCO DIVISION

| In re | Lead Case No.: 14-30725 DM |
|---|---|
| HASHFAST TECHNOLOGIES, LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor in Possession. | Case No.: 14-30866 DM |
| | Chapter 11 |
| x Affects HASHFAST LLC, a Delaware limited liability company, | Disclosure Statement Hearing: Date: March 13, 2015 Time: 11:00 a.m. Place: Courtroom 22 U.S. Bankruptcy Court 235 Pine Street San Francisco, CA 94104 |
| Debtor and Debtor in Possession. | |

## CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT FOR HASHFAST TECHNOLOGIES, LLC, AND HASHFAST, LLC, DATED FEBRUARY 25, 2015

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................. 1

II. VOTING AND OBJECTING TO CONFIRMATION ........................................ 2

   1.  TIME AND PLACE OF THE CONFIRMATION HEARING ................. 2

   2.  VOTING ON THE PLAN ............................................ 2

   3.  DEADLINE FOR VOTING ON THE PLAN ............................... 2

   4.  DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN ..................................................... 3

   5.  PERSON TO CONTACT FOR FURTHER INFORMATION REGARDING THE PLAN ............................................. 3

III. DISCLAIMER ................................................................. 3

IV. PROCEDURAL AND FACTUAL BACKGROUND ........................................... 4

   A.  PRE-PETITION OWNERSHIP AND MANAGEMENT OF THE DEBTORS; DESCRIPTION AND HISTORY OF DEBTORS' BUSINESS ................... 4

      1.  FORMATION, OWNERSHIP AND MANAGEMENT OF THE DEBTORS .................................................... 4

      2.  OPERATION OF THE DEBTORS ................................ 5

      3.  EVENTS PRECIPITATING BANKRUPTCY ........................ 6

      4.  COMMENCEMENT OF BANKRUPTCY CASES ....................... 6

V.  SIGNIFICANT EVENTS DURING BANKRUPTCY CASES ................................. 7

   A.  JOINT ADMINISTRATION; SUBSTANTIVE CONSOLIDATION .................. 7

   B.  RETENTION OF ESTATE PROFESSIONALS ............................... 7

   C.  ESTABLISHMENT OF CLAIMS BAR DATE ................................ 7

   D.  EXCLUSIVITY ..................................................... 7

   E.  USE OF CASH COLLATERAL .......................................... 8

   F.  DEBTORS' SCHEDULES, INTERIM STATEMENTS AND OPERATING REPORTS ......................................................... 8

   G.  EXECUTORY CONTRACTS ............................................. 8

   H.  ATTEMPTS TO APPOINT A TRUSTEE AND/OR CONVERT BANKRUPTCY CASES ................................................ 8

   I.  SALE OF ESTATE PROPERTY ......................................... 9

   J.  ADVERSARY PROCEEDINGS AND RELATED LITIGATION ................... 10

- i -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

K.  CLAIM OBJECTIONS ..................................................... 11

VI. FINANCIAL INFORMATION REGARDING THE DEBTORS .................................. 11

VII. CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 12

VIII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ........................... 12

  A.  NON-ORDINARY COURSE ADMINISTRATIVE CLAIMS .......................... 12

  B.  ADMINISTRATIVE CLAIMS ................................................ 13

  C.  NON-VOTING PRIORITY CLAIMS ........................................... 14

IX. TREATMENT OF CLASSES OF CLAIMS ............................................. 14

  A.  DETERMINATION OF ALLOWED AMOUNTS ................................... 14

  B.  CLASS 1 – VOTING PRIORITY UNSECURED CLAIMS ......................... 15

  C.  CLASS 2 – GENERAL UNSECURED CLAIMS ................................. 17

X. TREATMENT OF CLASSES OF INTERESTS ........................................... 41

  A.  CLASS 3 – EQUITY INTERESTS ........................................... 41

XI. EXECUTORY CONTRACTS ....................................................... 42

XII. MEANS OF IMPLEMENTATION ................................................... 43

  A.  MEANS OF IMPLEMENTATION ............................................. 43

  B.  CAUSES OF ACTION .................................................... 44

  C.  SELECTION AND COMPENSATION OF HASHFAST TRUSTEE ................ 44

  D.  DISSOLUTION OF COMMITTEE ............................................ 46

  E.  PROFESSIONAL FEES AND EXPENSES ..................................... 46

  F.  ADDITIONAL PROVISIONS ................................................ 46

    1.  DISTRIBUTIONS FROM THE HASHFAST CREDITOR TRUST ....... 46

    2.  PROCEDURES FOR RESOLVING AND TREATMENT OF DISPUTED CLAIMS ...................................................... 47

XIII. TAX CONSEQUENCES OF THE PLAN ............................................. 49

  A.  TAX CONSEQUENCES TO CREDITORS AND EQUITY INTEREST HOLDERS .............................................................. 49

XIV. CONFIRMATION REQUIREMENTS AND PROCEDURES ..................................... 50

  A.  WHO MAY VOTE OR OBJECT ............................................. 50

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

605955018.2

1.   WHO MAY OBJECT TO CONFIRMATION OF THE PLAN ............... 50

2.   WHO MAY VOTE TO ACCEPT/REJECT THE PLAN ....................... 51

3.   WHAT IS AN ALLOWED CLAIM/INTEREST ................................... 51

4.   WHAT IS AN IMPAIRED CLAIM/INTEREST ................................. 51

5.   WHO IS NOT ENTITLED TO VOTE ....................................... 51

6.   VOTES NECESSARY TO CONFIRM THE PLAN .............................. 52

7.   VOTES NECESSARY FOR A CLASS TO ACCEPT THE PLAN ........ 52

8.   TREATMENT OF NON-ACCEPTING CLASSES ............................... 52

B.   LIQUIDATION ANALYSIS ....................................................... 53

C.   RISK FACTORS .................................................................. 54

D.   FEASIBILITY .................................................................... 54

XV.  MISCELLANEOUS PROVISIONS ..................................................... 55

A.   EFFECTS OF CONFIRMATION .................................................. 55

1.   AMENDMENTS TO THE PLAN ............................................ 55

2.   AUTHORITY TO EFFECTUATE THE PLAN ............................... 55

3.   POST-CONFIRMATION STATUS REPORT ............................... 55

4.   RETENTION OF PROFESSIONALS ....................................... 55

5.   UNITED STATES TRUSTEE FEES ....................................... 56

6.   GOVERNING LAW ....................................................... 56

7.   BINDING EFFECT OF THE PLAN ....................................... 56

8.   SUCCESSORS AND ASSIGNS ............................................ 57

9.   INCONSISTENCIES ...................................................... 57

10.  RULES OF CONSTRUCTION ............................................. 57

11.  RULES OF INTERPRETATION .......................................... 57

B.   CONDITIONS TO EFFECTIVENESS OF PLAN ............................. 58

C.   RETENTION OF JURISDICTION .............................................. 58

D.   HEADINGS ....................................................................... 59

E.   NOTICES ......................................................................... 60

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 4 of 99

F.   MANNER OF PAYMENT ................................................................. 60

G.   COMPLIANCE WITH TAX REQUIREMENTS ................................. 60

H.   TRANSMITTAL OF DISTRIBUTIONS ............................................. 61

I.   DISTRIBUTION OF UNCLAIMED PROPERTY ............................... 62

J.   FRACTIONAL CENTS; MULTIPLE DISTRIBUTIONS .................... 62

K.   SATURDAY, SUNDAY OR LEGAL HOLIDAY ............................... 62

L.   TAX TREATMENT ......................................................................... 62

    1.   SECTION 1146 EXEMPTION .................................................. 62

    2.   DETERMINATION OF TAXES ................................................ 63

M.   SEVERABILITY .............................................................................. 63

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEFINITIONS**

For the purpose of this Consolidated Plan of Liquidation and Disclosure Statement, the following terms will have the meanings set forth below:

1. **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred after the commencement of the Bankruptcy Case, of preserving Debtors' estates and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

2. **Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Court to be allowed. The Administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date.

3. **Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Court**.**

4. **Allowed Amount** shall mean the amount of an Allowed Claim.

5. **Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim that has been filed with the Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Court; (b) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Court; or (c) a liquidated or contingent Claim temporarily allowed for voting purposes pursuant to Rule 3018(a). Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

6. **Allowed Equity Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed.

7. **Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

8. **Bankruptcy Cases** shall mean these jointly administered and substantively consolidated bankruptcy cases of *In re Hashfast Technology, LLC*, case no. 14-30725 DM, and *In re Hashfast, LLC*, case no. 14-30866 DM, which are pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division pursuant to Chapter 11 of the Code.

9. **Bar Date** shall mean October 6, 2014—the date fixed by Order of the Court as the last date for the filing of Claims, other than Administrative Claims, in the Bankruptcy Cases.

10. **Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, Bitcoin, or other similar items.

11. **Causes of Action** shall mean any and all actions and causes of action (and the proceeds thereof) belonging to the Debtors, the Estate, and/or the Hashfast Creditor Trust, whether or not commenced as of the date hereof, including, but not limited to, all proceedings, commenced or to be commenced pursuant to Code Sections 105, 362, 502, and/or 544-554 (or equivalent provisions of applicable non-bankruptcy laws), as well as other state and federal causes of action founded in tort, contract, and/or equity, such as negligence, breach of fiduciary duty, breach of contract, breach of covenant, errors, omissions, fraud, misleading statements, and neglect, among others.

12. **Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

- ii -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

605955018.2

Case: 14-30725 Doc# 316 Filed: 02/25/15 Entered: 02/25/15 20:45:48 Page 7 of 99

legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

13. **Class** shall mean any class into which Claims or Equity Interests are classified pursuant to the Plan.

14. **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof as in effect on the Confirmation Date.

15. **Committee** shall mean the Official Committee of Unsecured Creditors appointed in the bankruptcy case styled *In re HashFast Technologies, LLC*, case no. 14-30725 DM.

16. **Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

17. **Confirmation Date** shall mean the date of entry of the Confirmation Order on the official docket by the Court.

18. **Confirmation Hearing** means the hearing before the Court in connection with Confirmation of the Plan.

19. **Confirmation Order** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

20. **Court** shall mean the United States Bankruptcy Court for the Northern District of California, San Francisco Division, in which Debtors' Bankruptcy Cases are pending, and any court having jurisdiction to hear appeals or certiorari proceedings therefrom.

21. **Creditor** shall have the same meaning as set forth in Section 101(10) of the Code.

22. **Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

23. **Debtors** shall mean Hashfast Technologies, LLC and Hashfast, LLC, collectively.

24. **Disallowed** claim shall mean any Claim (regardless of priority) against either of the Debtors, the Estate and/or the Hashfast Creditor Trust that has been disallowed by a Final Order of the Court.

Case: 14-30725    Doc# 310    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 8 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

25. **Disputed** claim shall mean any Claim (regardless of priority) against either of the Debtors, the Estate and/or the Hashfast Creditor Trust that is subject to a pending objection but has not been disallowed by a Final Order of the Court.

26. **Distribution** shall mean the distribution to the Holders of Allowed Claims and/or Allowed Equity Interest in accordance with the terms of the Plan.

27. **Effective Date** shall mean a date not later than fifteen (15) days after the Confirmation Date, provided that, in no event shall the Effective Date occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met or otherwise waived as provided herein. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still be deemed to have occurred provided that all other conditions to effectiveness as set forth in the Plan have been met or otherwise waived as provided herein.

28. **Equity Interest(s)** shall mean any and all issued or authorized membership interests in the Debtors.

29. **Equity Interest Holder** shall mean the holder of any Equity Interest.

30. **Estate** shall mean the substantively consolidated bankruptcy estates in the HFT Bankruptcy and HF Bankruptcy, jointly or individually, as applicable.

31. **Estate Assets** shall mean all tangible and intangible Property of the Estate, including assets recoverable under applicable law, wherever located or of whatever type or nature, including, without limitation, the Causes of Action, Cash, and intellectual property.

32. **Excess Cash** shall mean the Cash in the Hashfast Creditors Trust remaining after the creation of the Trust Reserve and payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust.

33. **Final Order** shall mean an Order or judgment of the Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Hashfast Trustee, if a notice of appeal is timely filed and no stay pending appeal has been entered.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

34. **Hashfast Creditor Trust** shall mean a trust created under the Plan for the benefit of Holders of Allowed Claims and/or Allowed Equity Interests.

35. **Hashfast Trustee** shall mean Michael G. Kasolas or such other person as the Committee may designate prior to the Effective Date, who shall be appointed to serve as trustee in accordance with the Plan and any subsequent or ancillary agreement. The Committee shall provide notice to all parties in interest in the event an alternate trustee is selected.

36. **HF** shall mean Hashfast, LLC, a Delaware limited liability company and debtor and debtor in possession in the HF Bankruptcy.

37. **HF Bankruptcy** shall mean *In re Hashfast, LLC*, case no. 14-30866 DM, pending in the United States Bankruptcy Court for the Northern District of California.

38. **HFT** shall mean Hashfast Technologies, LLC, a California limited liability company and debtor and debtor in possession in the HFT Bankruptcy.

39. **HFT Bankruptcy** shall mean *In re Hashfast Technologies, LLC*, case no. 14-30725 DM, pending in the United States Bankruptcy Court for the Northern District of California.

40. **Holder** shall mean the legal or beneficial holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Equity Interest, means a holder of a Claim or Equity Interest in such Class or of such type.

41. **Impaired Class** shall mean any Class whose members are Holders of Claims or Equity Interests, which are impaired within the meaning of Section 1124 of the Code.

42. **Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

43. **Non-ordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

44. **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Court.

45. **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:43:48   Page 10 of 99

46.     **Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

47.     **Petition Date** shall mean the date upon which the Court entered an order for relief in the Bankruptcy Cases.

48.     **Plan** shall mean this Consolidated Plan of Liquidation and Disclosure Statement, as amended or modified in accordance with the terms hereof or in accordance with the Code.

49.     **Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

50.     **Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

51.     **Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

52.     **Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

53.     **Pro Rata** shall mean with respect to an Allowed Claim in a given class, that each Allowed Claim shall receive the same proportionate distribution as other Allowed Claims in the same Class.

54.     **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules adopted by the Court.

55.     **Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws.

56.     **Trust Asset** shall mean any and all Property in the Hashfast Creditor Trust, whenever or however acquired, including, but not limited to, all Estate Assets remaining after

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

payment of all Claims entitled to payment Effective Date under the Plan and any and all Property acquired by the Hashfast Creditor Trust after the Effective Date.

57.     **Trust Reserve** shall mean the $50,000 Cash reserve held by the Hashfast Trustee, which shall be set aside only after payment of all Allowed Administrative Claim, Allowed Priority Claim, and administrative expenses of the Hashfast Creditor Trust.

58.     **Trust Residue** shall mean any and all Trust Assets remaining after payment of all Allowed Administrative Claims, Priority Claims, administrative expenses of the Hashfast Creditor Trust, and Allowed Unsecured Claims.

59.     **Unclaimed Property** shall mean any Estate Asset and/or Trust Asset unclaimed for a period of six (6) months after any Distribution.

60.     **Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

61.     **Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Administrative Claim or Priority Claim.

62.     **Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

63.     **Unsecured Creditor Distribution** shall mean the distributions to Holders of Allowed Unsecured Claims as provided for in the Plan.

64.     **United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 17 located in the Northern District of California, San Francisco, California.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## CONSOLIDATED PLAN AND DISCLOSURE STATEMENT

### I.    INTRODUCTION

HFT was engaged in the manufacture and sale of special purpose computers systems and computer chips designed for processing and analyzing Bitcoin transactional information or "Bitcoin mining."  HFT is the wholly-owned subsidiary of HF, which owns or otherwise holds the rights to the intellectual property utilized by HFT in its business operations.  HF is not engaged in any business endeavor separate and apart from HFT.

HFT is the debtor in the HFT Bankruptcy.  HF is the debtor in the HF Bankruptcy.  The HFT Bankruptcy and HF Bankruptcy were substantively consolidated by order of the Court entered on September 28, 2014.

The Debtors continue to manage the Estate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has not appointed a chapter 11 trustee or examiner in the Bankruptcy Cases.

**THE DOCUMENT YOU ARE READING IS THE CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT.**  The Committee is the proponent of the within Plan.

Through the Plan, the Committee proposes the creation of the Hashfast Creditor Trust.  Under the Plan, the Debtors shall utilize available Estate Assets to pay certain Claims (discussed *infra*) on the Effective Date.  All remaining Estate Assets shall pass into the Hashfast Creditor Trust free and clear of any and all Claims or Interests.  Thereafter, the Hashfast Trustee shall administer the Trust Assets, which shall include the prosecution of any Causes of Action.  The Hashfast Trustee shall then distribute the proceeds from the administration of the Trust Assets in accordance with the Plan.

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY.  IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN AND WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT

TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

Upon confirmation of the Plan, the treatment of Allowed Claims and Allowed Equity Interests pursuant to the Plan supersedes any agreements or rights the Holders of those Claims or Equity Interests may have with, in or against the Estate, Debtors or Estate assets. Unless the Plan provides otherwise, no Distributions will be made and no rights will be retained on account of any Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest.

As is required by the Code, the Plan classifies Claims and Equity Interests into various classes according to their right to priority under the Code. The Plan states whether each Class of Claims or Equity Interests is impaired and provides the treatment that the Holders of each Allowed Claim or Allowed Equity Interest within each Class shall receive.

## II.    VOTING AND OBJECTING TO CONFIRMATION

The Court has not yet confirmed the Plan described herein. As such, the terms of the Plan are not yet binding on anyone. However, if the Court later confirms the Plan, then the Plan will be binding on the Debtors, all Creditors and Equity Interest Holders, and their successors and assignees.

### 1.    Time and Place of the Confirmation Hearing

The Confirmation Hearing will take place on **[INSERT DATE]** in Courtroom 22 of the United States Bankruptcy Court located at 235 Pine Street, San Francisco, CA 94104.

### 2.    Voting on the Plan

As discussed further at Section XV, the only Creditors who may vote for or against the Plan are those who have a Claim that is both (1) an allowed (or allowed for voting purposes) and (2) classified in an Impaired Class.[1]

### 3.    Deadline for Voting on the Plan

If you are entitled to vote, it is in your best interest to vote in a timely manner on the enclosed ballot and return the ballot by one of the following methods: (1) via U.S. Mail in the

---

[1] Equity Interest Holders are not impaired under the Plan and, thus, are not entitled to vote.

- 2 -

605955018.2

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:43:48    Page 14 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

enclosed envelope to Baker & Hostetler LLP, Attn: Ashley M. McDow, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025-0509; (2) via facsimile to (310) 820-8859 to with a cover letter stating that the facsimile should be directed to the attention of Ashley M. McDow; or (3) via email addressed to mdelaney@bakerlaw.com and sgaeta@bakerlaw.com with "Hashfast Ballot for [Name of Creditor]" in the subject line of the e-mail. The failure to abide by the guidelines for submitting your ballot may result in loss of the ballot and exclusion of your vote from the final tabulation.

YOUR BALLOT MUST BE <u>RECEIVED</u> BY **5:00 P.M. ON [INSERT DATE]** OR IT WILL NOT BE COUNTED.

The Debtor shall file a summary of tabulated ballots on or before **[INSERT DATE]**.

**4.     Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Committee no later than **[INSERT DATE]**.

**5.     Person to Contact for Further Information Regarding the Plan**

Any interested party desiring further information about the Plan may contact Ashley M. McDow of Baker & Hostetler LLP via email addressed to amcdow@bakerlaw.com or phone at (310) 442-8846, or Michael T. Delaney of Baker & Hostetler LLP via email addressed to mdelaney@bakerlaw.com or phone at (310) 442-8858.

**III.     DISCLAIMER**

The information utilized to prepare the Plan and the supporting documents is based upon the records created and maintained by the Debtors. Unless otherwise noted, the underlying records are unaudited. The professionals employed by the Committee prepared the Plan based on such information and, thus, cannot independently warrant the accuracy and/or completeness of the financial data or information contained therein or herein.

The Plan is premised in part on the recovery and liquidation of Bitcoin and/or Bitcoin mining equipment. The value of Bitcoin is volatile. Additionally, the value of Bitcoin mining equipment depends on many factors, including, but not limited to, the difficulty of mining Bitcoin

- 3 -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2
Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:43:48   Page 15 of 99

and the price, availability, and performance of competing equipment. The value of Bitcoin and/or Bitcoin mining equipment may affect distributions to Creditors and Equity Interest Holders.

The liquidation analysis, projections of financial performance, and other information contained herein are estimates only, and the timing, amount, and value of actual distributions to Creditors and Equity Interest Holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or projections may or may not prove to be accurate.

The contents of this Plan should not be construed as legal, business, or tax advice. Any tax disclosure(s) contained herein is not intended to be used and cannot be used for the purpose of avoiding any tax penalties that may be imposed on any Person. All Creditors and Equity Interest Holders should consult their own legal counsel, accountants and/or other advisors as to legal, tax, and other matters concerning their Claims or Equity Interests.

The Court has not yet determined whether the Plan is confirmable, and makes no recommendation as to whether or not you should support the Plan.

## IV. PROCEDURAL AND FACTUAL BACKGROUND

### A. Pre-petition Ownership and Management of the Debtors; Description and History of Debtors' Business

#### 1. Formation, Ownership and Management of the Debtors

HF is a Delaware limited liability company formed on or about May 9, 2013. HFT is a California limited liability company formed on or about June 10, 2013. HF is the parent company of HFT and owner of 100% of the membership interest in HFT. In turn, HF is owned by several individuals and entities in varying percentages, including, but not limited to, Eduardo de Castro, Simon Barber, Chad Spackman,[2] the Port Family Trust, and the Wells Family Trust. Following the formation of HF, the membership interests were redistributed as additional individuals and entities were added members. As of the Petition Date, the individuals primarily responsible for the day-to-day management and operation of HFT were Simon Barber, Eduardo de Castro,

---

[2] Chad Spackman as well as the Port Family Trust and Wells Family Trust, or their trustees, settlors or beneficiaries, are the principals of Sandgate Technologies (Sandgate), which is one of the principal engineering firms used by the Debtors.

- 4 -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

605955018.2

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 16 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Monica Hushens, and Tim Wong.  Following the commencement of the Bankruptcy Cases, the Committee examined several of HFT's principals to determine whether the Debtors' management mismanaged the business and/or engaged in misconduct.  Several of these individuals resigned during the course of this investigation.  Thereafter, in or about August 2014, the Debtors retained Peter Kravitz of Province, Inc., as chief restructuring officer.  At present, Mr. Kravitz is principally responsible for the day-to-day management and operation of the Debtors.

### 2. Operation of the Debtors

The Debtors have at all relevant times been engaged in a single enterprise—namely, the designing, manufacture and sale of application-specific integrated circuit (ASIC) processors designed to process and analyze Bitcoin transactional information or "Bitcoin mining."  HFT is principally responsible for research and development, designing, manufacturing, and selling the ASIC and fully-assembled computer systems incorporating the HFT ASIC.  HF is a holding company that owns the rights and/or licenses for the technology and intellectual property used in the course of HFT's business (the Intellectual Property).  The Intellectual Property includes, but is not necessarily limited to, (1) United States Provisional Patent Application No. 61/917,828 (Stacked Chips Powered from Shared Voltage), (2) United States Provisional Patent Application No. 61/896,559 (Golden Nonce (GN) ASIC Interface Protocol), and (3) certain other trademarks, trade secrets, copyrights, and mask works related to the ASIC, HFT, and/or HF.[3]

In or about June 2013, the Debtors began designing their first generation Golden Nonce ASIC (GN1), with the assistance of Sandgate and Uniquify, Inc. (Uniquify).  Following the development of the GN1, the Debtors worked with DXCorr Design (DXC) to design and develop subsequent generations of the GN1—generations 1.5 (GN1.5) and 2.0 (GN2).

In or about July 2013, HFT began advertising a special purpose computer system built around the GN1 (the BabyJet) for sale and started accepting orders for the "batch one" mining computers in early August 2013.  "Batch one" sales were quickly followed by batches two

---

[3] The Intellectual Property is based on the information provided by HF in its Schedule B, which is on file with the Bankruptcy Court.

through four. Between August and December 2013, the Debtors receive orders for processors, computers, and related equipment totaling approximately $18,000,000.

### 3.      Events Precipitating Bankruptcy

Despite a successful pre-sale, the Debtors experienced difficulties and delays in the manufacturing and roll-out of the GN1 that threatened to prevent the Debtors from meeting the delivery date for "batch one" BabyJets. Accordingly, the Debtors paid to expedite production and, in so doing, incurred additional unforeseen manufacturing costs. The Debtors apparently utilized pre-sale revenues and funds obtained through the liquidation of Bitcoin holdings to finance the additional manufacturing expenses. However, despite expedited manufacturing, the GN1 processors were not completed until in or about November 2013, which prevented the Debtors from timely delivering the BabyJet computers and GN1 processors.

As a result, customers began requesting refunds in or about January 2014. The Debtors, however, lacked the financial ability to pay the refunds. The Debtors' inability to pay the refunds requested and fulfill orders in a timely manner ultimately resulted in the commencement of several proceedings, including, but not limited to, multiple lawsuits.

### 4.      Commencement of Bankruptcy Cases

On or about May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson commenced the HFT Bankruptcy by filing a chapter 7 involuntary petition against HFT with the Court.

On or about June 3, 2014, HFT filed a conditional consent to entry of an order for relief and moved the Court to convert the HFT Bankruptcy to one under chapter 11 of the Code. On or about June 4, 2014, the Court entered an order converting the HFT Bankruptcy to one under chapter 11 of the Code.

On or about June 6, 2014, HF filed a voluntary petition for relief under chapter 11 of the Code commencing the HF Bankruptcy.

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 18 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# V. SIGNIFICANT EVENTS DURING BANKRUPTCY CASES

## A. Joint Administration; Substantive Consolidation

On or about June 6, 2014, the Debtors filed a motion seeking authority to jointly administer the Bankruptcy Cases. On or about July 8, 2014, the Court entered an order approving the joint administration of the Bankruptcy Cases.

On or about July 23, 2014, the Committee moved to substantively consolidate the Bankruptcy Cases. The Debtors did not oppose substantive consolidation and, on or about September 28, 2014, the Court entered an order substantively consolidating the Bankruptcy Cases, thereby creating the Estate. The Committee has continued to serve following the substantive consolidation of the Bankruptcy Cases.

## B. Retention of Estate Professionals

On or about June 6, 2014, HFT filed an application in the HFT Bankruptcy to employ Katten Muchin Rosenman LLP (Katten) as general bankruptcy counsel (Katten Application). On or about July 8, 2014, the Court approved the employment of Katten by and through the Katten Application.

On or about July 3, 2014, the Committee filed an application to employ Baker & Hostetler LLP (Baker) as general bankruptcy counsel (Baker Application). On or about July 23, 2014, the Court entered an order approving the employment of Baker by and through the Baker Application.

On or about July 17, 2014, the Committee filed an application to employ Province as financial advisor. Thereafter, the Debtors and the Committee agreed to employ Mr. Kravitz as chief restructuring officer for the Debtors. Accordingly, the Committee withdrew its application to employ Province. Thereafter, the Debtors employed Mr. Kravitz as chief restructuring officer.

## C. Establishment of Claims Bar Date

On or about June 9, 2014, the Court set October 6, 2014, as the Bar Date.

## D. Exclusivity

Pursuant to 11 U.S.C. § 1121(d), a debtor has the exclusive right to file a plan of reorganization and solicit votes on any such plan within the first 120 and 180 days, respectively,

Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 19 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

after the commencement of a bankruptcy case. The Debtors have not sought or obtained an extension of the exclusivity periods. Accordingly, the exclusivity periods have now expired.

### E. Use of Cash Collateral

There are no secured creditors holding a security interest in any Estate Assets; accordingly, cash collateral authority is unnecessary.

### F. Debtors' Schedules, Interim Statements and Operating Reports

On or about June 23, 2014, the Debtors filed their schedules and statements of financial affairs, which describe the Debtors' assets and liabilities. On or about August 14, 2014, the Debtors filed an amended statement of financial affairs and amended summaries of their schedules. Copies of the schedules and operating reports may be obtained through the online PACER system or in the Clerk's office for the Court.

### G. Executory Contracts

The Debtors have yet to assume or reject any executory contracts. The assumption and rejection of executory contracts and the treatment of any Claims for rejection damages are discussed *infra* at Section XII.

### H. Attempts to Appoint a Trustee and/or Convert Bankruptcy Cases

Immediately following the commencement of the HFT Bankruptcy, Liquidbits Corporation (Liquidbits or LB) filed a motion seeking the appointment of an interim trustee over the HFT estate (Liquidbits Trustee Motion). In an effort to amicably resolve the Liquidbits Trustee Motion, the Debtors and Liquidbits, among others, entered into a stipulation to govern the operation of the Debtors and sale of their assets (Liquidbits Stipulation)—a stipulation which gave partial effect to an order entered in an arbitration proceeding styled *Liquidbits Corp. v. HashFast Technologies LLC*, AAA Case No. 01-14-0000-1357. The Court entered an order approving the Liquidbits Stipulation on or about May 28, 2014.

On or about August 8, 2014, the Office of the United States Trustee (UST) moved to convert the Bankruptcy Cases to cases under chapter 7 or to appoint a chapter 11 trustee over the Estate due to, among other things, alleged mismanagement, loss to the Estate, and failure to maintain corporate formalities (UST Motion to Convert). The Debtors and Committee opposed

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the UST Motion to Convert. On or about September 16, 2014, the Court entered an order denying the UST Motion to Convert.

On or about February 13, 2015, the UST filed a second motion to convert the Bankruptcy Cases to chapter 7 or to appoint a chapter 11 trustee over the Estate due to, among other things, alleged administrative insolvency, purported breach of fiduciary duty by the Debtors, and failure to file timely monthly operating reports. Oppositions to the motion are due on or before February 27, 2015. The Committee intends to oppose the motion. The hearing is set for March 13, 2015, at 11:00 a.m., before the Bankruptcy Court.

**I.      Sale of Estate Property**

On or about July 18, 2014, the Debtors moved for approval of a sale of substantially all of the Estate Assets to Liquidbits (Liquidbits Sale), the consideration for which was primarily in the form of a promissory note and potential income if and when the contemplated mining operation was successful. The Committee objected on a number of grounds, including, but not limited to, that the Liquidbits Sale was not sufficiently described, the proposed consideration was illusory as Liquidbits could simply return the equipment without providing any payment on the note or equity interest if it deemed the mining operation unsuccessful or cost prohibitive, and the Liquidbits Sale proposed granting Liquidbits a full and complete release from substantial liability for minimal, if any, consideration. Following the hearing, the Court denied the motion to approve the Liquidbits Sale.

Thereafter, the Committee and the Debtors worked together to formulate an exit strategy that would provide the Estate with the best possible chance for recovery. In furtherance of this goal, the Debtors commenced plans to liquidate certain assets to generate funds necessary to complete the manufacture and/or release of valuable products.

On or about October 23, 2014, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of the Debtors assets. Although the Court approved the proposed sale procedure, the Debtors were able to sell the inventory in the ordinary course of business[4]

---

[4] Throughout the Bankruptcy Cases, the Debtors have sold inventory in the ordinary course of business.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  prior to the date of the proposed auction sale.  The Debtors, however, proceeded with the sale of

2  certain potential causes of action against Simon Barber (the Barber Claims), one of the officers of

3  HFT.  No other assets were sold during the auction.  The Court approved the sale of the Barber

4  Claims to Mr. Barber on or about December 23, 2014.

5          **J.**      **Adversary Proceedings and Related Litigation**

6          As of the Petition Date, numerous state court lawsuits and alternative dispute resolution

7  proceedings were pending.  The Debtors have not removed any of the aforementioned cases to the

8  Court and none of the plaintiffs have obtained relief from the automatic stay to pursue the

9  litigation.

10         Following the commencement of the Bankruptcy Case, the Debtors commenced an

11  adversary proceeding against Uniquify and Signetics Korea Co., Ltd. (Signetics), two of HFT's

12  suppliers, seeking to compel the turnover of certain Estate Assets allegedly within their

13  possession, custody, and/or control.  Thereafter, the Debtors reached an agreement for the

14  turnover of the sought-after property with Uniquify and/or Signetics.  Accordingly, on or about

15  December 10, 2014, the Debtors voluntarily dismissed the adversary proceeding.

16         On or about February 17, 2015, the Debtors commenced an adversary proceeding against

17  Mark Lowe (Lowe) seeking to recover 3000 BTC fraudulently transferred to Lowe in or about

18  September 2014 (the Lowe Adversary).  The Lowe Adversary is still pending.  The potential

19  recovery from the Lowe Adversary (i.e., 3000 BTC) presently exceeds $700,000, exclusive of

20  litigation costs.

21         The Committee is in the process of evaluating other potential claims and/or causes of

22  action the Estate may possess against certain Persons, including, but not limited to, avoidance

23  actions under the Bankruptcy Code and/or California law as well as other state and federal causes

24  of action, such as negligence, breach of fiduciary duty, breach of contract, breach of covenant,

25  violation of the automatic stay, errors, omissions, fraud, misleading statements, and neglect,

26  among others.[5]  In preparation for the prosecution of such actions, the Committee has prepared at

27  _____

28  [5] **Exhibit A** contains a table identifying the potential causes of action presently known to the Committee, the potential recovery from these actions, and anticipated expenses associated with litigation.   The Debtors and/or the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 22 of 99

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

605955018.2

least one complaint to avoid and recover a preferential and fraudulent transfers as well as a motion for writ of attachment to secure any potential recovery on complaint. The Committee has also prepared numerous demand letters seeking to recovery certain preferential transfers, which will be sent as soon as the Committee receives certain supporting documents requested from the Debtors. Additionally, the Committee demanded that the Debtors tender a claim against a certain directors and officers insurance policy. The insurance claims pertains to certain negligence and misconduct committed by insiders of the Debtors, including, but not limited to, breach of duty, errors, omissions, misleading statements, and neglect. On or about January 28, 2015, the insurance carrier agreed to treat the claim tendered by the Debtors as a notice of circumstances that may give rise to a compensable claim and, if any claim arises, it shall be treated as arising on January 5, 2015 (prior to the expiration of the policy).

### K. Claim Objections

The Committee is presently in the process of analyzing the validity of the claims made against the Estate. The Committee and/or the Hashfast Trustee anticipates filing objections to certain Claims and/or the classification of certain Claims. Under the Plan, any Claim objections may be brought at any time prior to the Confirmation Date and/or within the first 120 days after the Effective Date of the Plan.

## VI. FINANCIAL INFORMATION REGARDING THE DEBTORS

The Debtors filed schedules in this Bankruptcy Case that provided financial information regarding its assets and liabilities as of the Petition Date. In addition to such schedules, the Debtors have prepared and filed monthly operating reports as required by the UST. The schedules are available on-line through PACER or at the Clerk's Office. True and correct copies of the monthly operating reports filed by the Debtors are available for inspection at the Bankruptcy Court or through the CM/ECF system.

---

Estate may possess other claims or causes of action. The Committee is continuing to investigate the potential causes of action, and expressly reserves the right to pursue any and all potential causes of action not otherwise released by the Estate. The values provided for the claims and costs of litigation are estimates. The recoveries and costs may be less or greater than stated in the table.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Committee estimates that the Estate Assets have a cumulative value of approximately $10,850,000, which is comprised of $100,000 Cash on hand on the Effective Date,[6] $10,000,000 for potential litigation recovery, and $750,000 for remaining tangible and intangible Estate Assets, which includes the Intellectual Property.[7]

## VII. CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Equity Interests are divided into the following classes under the Plan, which shall be mutually exclusive:

Class 1 – Priority Unsecured Claims

Class 1 consists of the Allowed Priority Unsecured Claims against the Estate.

Class 2 – General Unsecured Claims

Class 2 consists of the Allowed Unsecured Claims against the Estate.

Class 3 – Equity Interests

Class 3 consists of the Allowed Equity Interests in the Debtors.

## VIII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

### A. Non-ordinary Course Administrative Claims

Any Person, including any Professional, who has rendered services to Debtors or the Committee during the course of the Bankruptcy Cases and/or that asserts an Administrative Claim arising before the Confirmation Date, excluding Ordinary Course Administrative Claims as discussed below, shall file a request with the Court for allowance of such Claim as an Administrative Claim on or before the Administrative Claims Bar Date. Such request shall specify the amount of and basis for the asserted Administrative Claim. Applicants or movants that have previously filed a request for allowance of an Administrative Claim need not file another request for the same Claim. Failure to timely file a request for allowance of an Administrative Claim pursuant to this section and in accordance with all applicable Rules may bar any recovery on such a Claim.

---

[6] The sale of any Estate Assets or settlement of any pending litigation prior to the Effective Date would result in an increase in Cash on hand.

[7] The Committee and the Debtors have been engaged in informal discussions for the acquisition of the remaining assets of the Estate. The price proposed by the Committee is $750,000.00.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## B.  Administrative Claims

Holders of Allowed Administrative Claims against the Debtors shall be paid in full on the Effective Date, unless such Holder(s) agree to alternate treatment.  The Committee estimates that Allowed Administrative Claims will total approximately $1,150,000 on the Effective Date.[8]  The present and projected Allowed Administrative Claims are as follows:[9]

| Claimant | Current Claim | Projected Claim (Present to Confirmation) |
|---|---|---|
| Katten Muchin Rosenman LLP (Debtors Counsel) | $389,905 | $20,000 |
| Baker & Hostetler LLP (Committee Counsel) | $412,000 | $50,000 |
| Province Capital (Chief Restructuring Officer) | $123,270 | $40,000[10] |
| Koi Systems (Petitioning Creditor) | $62,246 | $0 |
| Post-petition Taxes | $17,071 | TBD |
| United States Trustee | $975 | TBD |
| U.S. Patent Filing Fees | $5,702 | TBD |
| CIARA Technologies (based on proposed settlement) | $30,000[11] | $0 |
| Total | $1,041,169 | $110,000 |

Baker and Katten have agreed to accept payment of their respective Allowed Administrative Claims over time if necessary to confirm the Plan.  Additionally, Baker and Katten have agreed to reduce their respective Allowed Administrative Claims by $10,000 each if necessary to satisfy the best interests of creditors test (*see* Liquidation Analysis, *infra*, at Section XV.B) and subordinate

---

[8] The estimate of the Allowed Administrative Claims is an estimate based on the fees of Committee counsel, the fees requested in the prior fee applicable filed by Katten, the fees and costs incurred commencing the involuntary bankruptcy case against HFT, and the expenses incurred by members of the Committee.  The inclusion of any Administrative Claim in this estimate does not constitute an admission regarding the reasonableness or necessity of the Administrative Claim or a waiver of the right to object to any Administrative Claim.

[9] On or about February 24, 2015, Liquidbits filed the *Application of Liquidbits Corporation for Allowance of Chapter 11 Administrative Expense Under 11 U.S.C. §  503(b)(1)(A)* [Docket Entry 315] seeking the allowance of a $88,726.75 administrative priority claim.  As the requested administrative claim was not allowed as of the filing of the Plan, the Committee has not included it here.  Furthermore, the Committee has conferred with the Debtors regarding the request.  The Debtors have informed the Committee that the requested administrative claim lacks merit or, at very least, is subject to a significant offset.  Accordingly, the Committee intends to oppose the application.  In the event that the Court grants the application, the resulting Claim shall be paid in full on the Effective Date.

[10] The Province success fee for confirmation shall be treated as follows: $25,000 as an Allowed Administrative Claim and $75,000 as an Allowed Unsecured Claim in Class 1.  The $40,000 provided does not include the success fee as Province is not entitled to payment of such fee until after confirmation.

[11] The amount and priority of the settlement payment is subject to further negotiations and Court approval.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

an additional $15,000 each to the same priority as Allowed Priority Unsecured Claims in Class 1 (assuming Class 1 votes in favor of the Plan).

## C. Non-Voting Priority Claims

Under the Code, certain Priority Unsecured Claims are entitled to certain treatment as a matter of law and, as such, the Claims are not placed into a Class and are not entitled to vote on the Plan. The non-voting Priority Unsecured Claims are as follows:

| Claimant | POC # | POC Amount | Priority Claim | Comments |
|---|---|---|---|---|
| City/County of San Francisco (HFT) | 325 | $7,938.58 | $7,938.58 | |
| Franchise Tax Board (HF)[12] | 6 | $8,130.68 | $7,646.68 | |
| Franchise Tax Board (HFT) | 137 | $14,194.98 | $13,430.53 | |
| Wong, Timothy G. (HFT) | 173 | $957.90 | $957.90 | 507(a)(2); Disputed |
| Total | | $31,222.14 | $29,973.69 | |

Unless the Claimants agree to alternate treatment or are disputed as of the Effective Date, the non-voting Priority Unsecured Claims ($29,973.69) shall be paid in full on the Effective Date.

## IX. TREATMENT OF CLASSES OF CLAIMS

### A. Determination of Allowed Amounts

Treatment prescribed for Claims and Equity Interests in the following sections shall in all events refer exclusively to the Allowed Amount of each respective Claim or Equity Interest. In the event the Allowed Amount of any Claim or Equity Interest is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date the Allowed Amount of such Claim or Equity Interest is determined by agreement or Final Order. Except as may otherwise be provided by order of the Court, the Hashfast Creditor Trust reserves the right to object to any Claim or Equity Interest for any reason authorized by applicable law as well as the right to assert that any Claim or Equity Interest includes amounts subject to setoff, equitable subordination, and/or other equitable relief.

---

[12] The Franchise Tax Board filed proofs of claim numbers 4 and 6. As noted on the claims register, proof of claim number 6 was filed in an attempt to amend proof of claim number 4; accordingly, proof of claim number 4, which also includes a priority claim, is not included here.

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## B. Class 1 – Voting Priority Unsecured Claims

Class 1 consists of all Priority Unsecured Claims, except non-voting Priority Unsecured Claims (*see* Section VIII.C), against the Debtors. The voting Priority Unsecured Claims total approximately $184,321.86. The voting Priority Unsecured Claims are as follows:

HF Priority Unsecured Claims

| Claimant | POC # | POC Amount | Priority Claim | Comments |
|---|---|---|---|---|
| Accountemps of Robert Half | 22 | $6,412.42 | $6,412.42 | Unspecified |
| Accountemps of Robert Half | 23 | $1,802.78 | $1,802.78 | Unspecified |
| Connelly, Brian | 10 | $5,000.00 | $2,775.00 | 507(a)(7) |
| Ericson, Paul | 16 | $2,271.98 | $2,271.98 | 507(a)(7) |
| Total | | $15,487.18 | $13,262.18 | |

HFT Priority Unsecured Claims

| Claimant | POC # | POC Amount | Priority Claim | Comments |
|---|---|---|---|---|
| Amanda Van Nuys Consulting | 153 | $9,750.00 | $9,750.00 | 507(a)(4) |
| Arghavan, Nik | 172 | $2,468.24 | $2,468.24 | 507(a)(7) |
| Avery, Terri | 62 | $2,699.13 | $2,699.13 | Other (unspecified) |
| Bolton, Thadius | 93 | $4,235.52 | $2,775.00 | 507(a)(7) |
| Cavion, Davide | 249 | $364,840.21 | $2,600.00 | 507(a)(7) |
| Cheaney, Avram | 311 | $3,881.85 | $3,881.85 | 507(a)(4) |
| Crowder, Ralph | 123 | $48,000.00 | $12,475.00 | 507(a)(4) |
| Devcic, Sinisa[13] | 160 | $7,620.90 | $2,775.00 | 507(a)(7) |
| Devito, Reno | 281 | $7,096.11 | $7,096.11 | 507(a)(7); Other (unspecified) |
| Eller, Chad | 312 | $8,298.27 | $2,775.00 | 507(a)(7) |
| Erickson, Paul | 87 | $2,271.98 | $2,271.98 | 507(a)(7); Duplicate of HF Claim |
| Fu, Zhao | 318 | $2,326.02 | $2,326.02 | 507(a)(7) |
| Gibson, Matt | 5 | $4,519.98 | $4,519.98 | Unspecified |
| Hall, Dylan | 146 | $7,999.25 | $2,775.00 | 507(a)(7) |
| Hammond, Edward | 64 | $6,000.00 | $2,775.00 | 507(a)(7) |
| Hansen, Lonnie[14] | 220 | $4,048.62 | $2,775.00 | 507(a)(7) |
| Hashfast Technologies LLC (Dahlke, Matthew Robert)[15] | 327 | $100,000.00 | $100,000.00 | 507(a)(1); Disputed |

---

[13] Sinisa Devcic asserts a total claim of $7,620.90 and claims the entire amount as priority under § 507(a)(7), which exceeds the statutory maximum of $2,775.00. Accordingly, only $2,775.00 of the claim is included as a Priority Unsecured Claim. The remainder is included as an Unsecured Claim.

[14] Lonnie Hansen asserts a total claim of $4,048.62 and claims the entire amount as priority under § 507(a)(7), which exceeds the statutory maximum of $2,775.00. Accordingly, only $2,775.00 of the claim is included as a Priority Unsecured Claim. The remainder is included as an Unsecured Claim.

| | | | | |
|---|---|---|---|---|
| Herbon, Daniel[16] | 67 | $35,000.00 | $35,000.00 | |
| Hernandez, Rodrigo | 91 | $2,420.34 | $2,420.34 | 507(a)(7) |
| Hopson, Benjamin | 284 | $3,790.01 | $2,775.00 | 507(a)(7) |
| Irvin, Jan | 175 | $4,107.30 | $2,775.00 | 507(a)(7) |
| Lam, Nathen | 176 | $2,495.67 | $2,495.67 | 507(a)(7) |
| Lei, Shi | 12 | $6,765.09 | $6,765.09 | 507(a)(7) (and other subsections of § 507); Disputed |
| Li, Jiongye | 129 | $2,275.17 | $2,275.17 | 507(a)(7) |
| Liu, Yichun Catherine | 147 | $6,566.90 | $6,566.90 | 507(a)(7); Other (unspecified) |
| Miller, David | 252 | $6,411.11 | $2,775.00 | 507(a)(7) |
| Moc, LyLy | 319 | $7,716.85 | $7,716.85 | 507(a)(4); 507(a)(7) |
| Montague, Paul | 100 | $6,939.80 | $6,939.80 | Unspecified |
| Morici, Peter | 29 | $156,928.61 | $2,775.00 | 507(a)(7) |
| Nahum, Nir | 55 | $2,643.99 | $2,643.99 | 507(a)(7) |
| Raiss-Elfenni, Youssef | 96 | $4,200.00 | $1,500.00 | 507(a)(7) |
| Richards, Matt | 326 | $10,000.00 | $2,775.00 | 507(a)(7) |
| Riedel, Wolfgang | 110 | $2,590.34 | $2,590.34 | Unspecified |
| Robinson, Stacy (Robinson SM Consulting) | 94 | $4,000.00 | $4,000.00 | 507(a)(4) |
| Sadowski, Patrick[17] | 78 | $3,812.03 | $2,775.00 | 507(a)(7) |
| Schmitt, William[18] | 165 | $4,850.00 | $2,775.00 | 507(a)(7) |
| Shurb, Jason | 107 | $4,543.86 | $2,775.00 | 507(a)(7) |
| Smallwood, Peter | 135 | $14,547.43 | $14,547.43 | Other (unspecified) |
| Sneddon, Russell | 13 | $4,146.58 | $4,146.58 | Other (unspecified) |
| Sorensen, Marcus[19] | 36 | $12,837.68 | $2,775.00 | 507(a)(7) |
| Tsang, Warren (LogicShark Consulting) | 43 | $1,520.13 | $1,520.13 | 507(a)(7) |
| Twohy, John (24K Gold Plating) | 52 | $2,397.41 | $2,397.41 | 507(a)(7) |
| WaltherCorp LLC (William Walther) | 264 | $4,292.30 | $2,775.00 | 507(a)(7) |
| Windham, Rick | 20 | $6,565.70 | $2,775.00 | 507(a)(7) |
| Wingquist, Thomas | 285 | $6,307.99 | $2,775.00 | 507(a)(7) |
| Woodward, Anthony | 297 | $2,495.67 | $2,495.67 | 507(a)(7) |

[15] See note 23, at p. 23.

[16] See note 23, at p. 23.

[17] Patrick Sadowski asserts a total claim of $3,812.03 and claims the entire amount as priority under § 507(a)(7), which exceeds the statutory maximum of $2,775.00. Accordingly, only $2,775.00 of the claim is included as a Priority Unsecured Claim. The remainder is included as an Unsecured Claim.

[18] William Schmitt asserts a total claim of $4,850.00 and claims the entire amount as priority under § 507(a)(7), which exceeds the statutory maximum of $2,775.00. Accordingly, only $2,775.00 of the claim is included as a Priority Unsecured Claim. The remainder is included as an Unsecured Claim.

[19] Marcus Sorensen asserts a total claim of $12,837.68 and claims $5,500.00 as priority under § 507(a)(7), which exceeds the statutory maximum of $2,775.00. Accordingly, only $2,775.00 of the claim is included as a Priority Unsecured Claim. The remainder is included as an Unsecured Claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Claimant | | Schedule | Scheduled Amount | POC # | POC Amount | Comments |
|---|---|---|---|---|---|---|
| Yue, Hong-Quan[20] | | 169 | $7,586.86 | | $7,586.86 | Other |
| | Total | | | $926,810.90 | $171,059.68 | |

As discussed herein, the right to object to any Claim belongs to the Hashfast Creditor Trust.  After the Effective Date, the Hashfast Trustee shall evaluate each Priority Unsecured Claim and determine whether to file a motion to disallow such Claim or Equity Interest.[21]

Allowed Priority Unsecured Claims shall receive the following treatment: (a) a Pro Rata share of the first $30,000 distributed by the Hashfast Creditor Trust, sharing with Allowed Administrative Claims; and (b) thereafter, the Priority Unsecured Claims shall receive Distributions in accordance with the Hashfast Creditor Trust Agreement and this Plan until all Allowed Priority Unsecured Claims are paid in full.[22]  Priority Unsecured Claims shall accrue interest at the federal default interest rate until paid in full.

Class 1 is impaired and entitled to vote on the Plan.

**C.    Class 2 – General Unsecured Claims**

Class 2 consists of all Allowed Unsecured Claims against the Debtors.  The Unsecured Claims asserted against the Estate total $44,934,595.74.[23]  The Unsecured Claims asserted against the Estate are as follows:

HF General Unsecured Claims

| Claimant | Schedule | Scheduled Amount | POC # | POC Amount | Comments |
|---|---|---|---|---|---|
| Ahluwalia, Rajpreet | | | 15 | $2,292.38 | |

[20] Hong-Quan Yue claims $7,586.86 as a Priority Unsecured Claim under § 507(a)(1) but contends that the Claim is related to Good Sold.  Hong-Quan Yue further contends that the Claim is a Secured Claim but provides no basis for the assertion.  Accordingly, the Claim is included as an Unsecured Claim in the full amount of the Claim but excluded from the total for Priority Unsecured Claims.

[21] Based on the Committee's preliminary analysis, it appears that the voting Priority Unsecured Claims may be objectionable due to the fact that the alleged deposits were for business purposes, the Claims exceed the statutory maximums for certain types of Priority Unsecured Claims, or fail to provide any basis for the priority treatment.  Whether to object to the Claims shall be left to the Hashfast Trustee post-Confirmation.

[22] See, infra, at pp. 40-41 for a further discussion of the distribution scheme under the Hashfast Creditor Trust Agreement.  Although the discussion therein refers to Unsecured Claims, the distribution scheme shall be identical for Allowed Priority Unsecured Claims.

[23] This total includes Disputed Claims.  The inclusion of such Disputed Claims shall not be interpreted as an admission regarding their validity or consent to payment of such Claims under the Plan.

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Claimant | Schedule | | POC # | POC Amount | Comments |
|---|---|---|---|---|---|
| American InfoSource, LP as agent for T Mobile/USA | | | 2 | $562.01 | |
| Bao, Lei | | | 11 | $66,374.14 | |
| Bao, Lei | | | 18 | $66,374.14 | Duplicate |
| Celaj, Jetmir | | | 21 | $17,755.09 | |
| Collins, Aaron | | | 7 | $2,250.00 | |
| Cypher Enterprises, LLC | F Amended | $6,018.00 | | | |
| Dolak, Paul | | | 3 | $5,670.00 | |
| EarthRise Trust | | | 13 | $131,868.00 | |
| Krieger, Kevin | | | 20 | $23,000.00 | |
| Minchenkov, Alexey | | | 12 | $2,854.82 | |
| Monsoon Company, Inc. | | | 14 | $57,660.00 | |
| Morici, Peter | | | 1 | $157,314.64 | |
| Pederson, Grant | | | 17 | $3,790.00 | |
| Perkins Coie LLP | | | 19 | $107,871.53 | |
| Schorfmann, Thomas | | | 9 | $3,955.58 | |
| TimeFire, Inc. | | | 5 | $21,500,000.00 | Disputed; Unliquidated |
| Wallace, Nathan | | | 8 | $6,321.64 | |
| Total | | $6,018.00 | | $22,089,539.83 | |

## HFT General Unsecured Claims[24]

| Claimant | Schedule | Scheduled Amount | POC # | POC Amount | Comments |
|---|---|---|---|---|---|
| Aamodt, Eivind | F Amended | $2,656.20 | | | |
| Abdelgawad, Amro | F Amended | $7,999.25 | | | |
| Adams, Graham | F Amended | $2,590.00 | 14 | $2,590.34 | |
| Ag, Elpix and Joerg Margane | F Amended | $41,902.60 | | | |
| Ahluwalia, Rajpreet | F Amended | $2,292.00 | | | Duplicate of HF Claim |
| Ahmad, Irwin | F Amended | $7,664.36 | 75 | $7,664.36 | |
| Alary, Antoine | F Amended | $7,819.85 | 230 | $34,333.10 | |
| Albarron, Dario | F Amended | $4,078.74 | | | |
| Alexiou, Antonios | F Amended | $2,657.22 | | | |
| Allure Marine | F Amended | $4,520.19 | | | |

_____

[24] The Claims scheduled by the following claimants are excluded from the table as they were scheduled as disputed and the claimants failed to file a proof of claim: (a) Graeme Middleton; (b) Seah Elton, and (c) Otto Bubenicek.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Name | Status | Amount | Claim # | Amount | Notes |
|------|--------|--------|---------|--------|-------|
| Limited | | | | | |
| Alonso, Jesus Martin | F Amended | $2,640.84 | 290 | $2,640.84 | |
| Alonso, Jesus Martin | F Amended | (see above) | 292 | $2,640.84 | Duplicate Claim |
| Alonso, Jesus Martin | F Amended | (see above) | 293 | $2,640.84 | Duplicate Claim |
| Alonso, Jesus Martin | F Amended | (see above) | 294 | $2,640.84 | Duplicate Claim |
| Amanda Van Nuys Consulting | F Amended | $9,750.00 | 153 | $9,750.00 | |
| Ambar, Abraham | F Amended | $8,052.06 | | | |
| American Arbitration Association | F Amended | $3,950.00 | 132 | $7,386.50 | |
| Anders, John | F Amended | $2,669.57 | | | |
| Anguiano, Jose | | | 323 | $2,535.00 | |
| Anthem Blue Cross | F Amended | $6,786.00 | | | |
| Appel, Sascha | F Amended | $2,654.37 | | | |
| Araujo, Leopoldo Martinez | F Amended | $13,689.14 | | | |
| Arberg, Lars | F Amended | $4,292.11 | | | |
| Arghavan, Nik | F Amended | $2,468.00 | 172 | $2,468.24 | |
| Armada Works Inc. | F Amended | $7,432.87 | | | |
| Armatys, Zbigniew | F Amended | $2,998.97 | | | |
| Arna, Jeanette | F Amended | $7,622.00 | 171 | $7,622.11 | |
| Ash, Lee | F Amended | $9,294.59 | 231 | $37,342.36 | |
| Askar, Allan (Allancolabs LLP) | F Amended | $6,498.96 | | | |
| Ation, s.r.o. | F Amended | $8,985.78 | 278 | $8,985.78 | |
| Atlas, Yazz (EntropyWorks Inc.) | F Amended | $4,018.52 | | | |
| Aupacom Enterprises | F Amended | $9,329.00 | | | |
| Austin, Jennifer | F Amended | $2,275.28 | 58 | $2,275.28 | |
| Avery, Terri | F Amended | $2,699.13 | 62 | $2,699.13 | |
| Avroutski, Max | F Amended | $1,654.87 | 232 | $38,212.22 | |
| Ayotte, Shawn | F Amended | $2,468.24 | | | |
| Babcock, James | F Amended | $7,556.17 | 270 | $7,556.17 | |
| Badarlis, Andreas | F Amended | $2,590.34 | | | |
| Badua, Jason | F Amended | $24,029.54 | | | |
| Baker, Joseph | | | 280 | $11,400.00 | |

- 19 -

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 31 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Name | Status | Amount | No. | Amount 2 | Notes |
|------|--------|--------|-----|----------|-------|
| William | | | | | |
| Baldinger, Mattia | | | 258 | $7,509.79 | |
| Baldkinger, Mattia | F Amended | $1,809.96 | | | |
| Bao, Lei | F Amended | $11,966.00 | 23 | $66,374.14 | Duplicate of HF Claim |
| Bao, Lei | F Amended | (see above) | 154 | $66,374.14 | Duplicate Claim |
| Bao, Lei | F Amended | (see above) | 225 | $66,374.14 | Duplicate Claim |
| Baranbdiaran, Jose | F Amended | $6,861.78 | | | |
| Barbee, Brian | F Amended | $2,459.05 | 156 | $2,459.05 | |
| Baringer, Maximilian | F Amended | $2,590.34 | | | |
| Barrinat, Osmany | F Amended | $4,058.96 | 177 | $4,058.96 | |
| Baum, Luke | F Amended | $1,639.25 | | | |
| Bayona, Roberto | F Amended | $2,698.57 | | | |
| Beauchesne, Thierry | F Amended | $2,457.54 | | | |
| Beaumont, Adam | F Amended | $2,590.34 | | | |
| Beck, Tara | F Amended | $6,377.63 | 81 | $6,377.63 | |
| Beckwith, Benjamin (Flat Rate Computer G) | F Amended | $2,271.98 | 108 | $2,271.98 | |
| Beckwith, Ted | F Amended | $14,000.00 | | | |
| Beech, Craig | F Amended | $512,960.00 | | | |
| Beju, Catalin | F Amended | $3,812.03 | | | |
| Belfield, Justin (AGNQ Tech LLC) | F Amended | $2,278.59 | | | |
| Bellosta, Marcelino | F Amended | $7,210.00 | | | |
| Bemmira, Lotfi | F Amended | $6,161.67 | | | |
| Benoit, Bergic | F Amended | $2,602.00 | | | |
| Berger, Kyle | F Amended | $2,478.00 | | | |
| Bester, Andrew | F Amended | $2,754.00 | 53 | $2,753.58 | |
| Biggin, Shaun | F Amended | $6,599.00 | 105 | $6,598.90 | |
| Bigler, Benjamin | F Amended | $2,640.84 | | | |
| Billaud, Matthieu | F Amended | $26,925.00 | | | |
| Birke, Marian | F Amended | $20,237.99 | | | |
| Bit Coin LLC (James Braden) | | | 320 | $51,250.00 | |
| Bit-Stop Computer | F Amended | $1,765.59 | | | |
| Black Oak Computers | | | 254 | $29,380.11 | |
| Blancett, Phil | F Amended | $6,925.73 | | | |

- 20 -

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 32 of 99

| | | | | | |
|---|---|---|---|---|---|
| Bolton, Thadius | F Amended | $4,235.52 | 93 | $4,235.52 | |
| Bond, Jason (Cameron) | F Amended | $6,115.00 | 233 | $47,340.88 | |
| Boothby, David | F Amended | $2,422.00 | | | |
| Bosschert, Bas | | | 15 | $2,600.01 | |
| Bosse, Donald | F Amended | $2,893.14 | | | |
| Bottai, Alessandro | F Amended | $1,765.59 | 226 | $1,765.59 | |
| Bouckaert, Tom | F Amended | $12,173.89 | 265 | $12,177.89 | |
| Bower, Jonathan | F Amended | $2,670.00 | | | |
| Boytler, Bruce | F Amended | $6,326.04 | 298 | $6,500.00 | |
| Bradian, Jeffrey | F Amended | $7,465.87 | 242 | $49,107.47 | |
| Bradley, (Peter) Lukas | F Amended | $74,400.00 | 178 | $74,400.00 | |
| Bressler, Brandon | F Amended | $2,496.00 | | | |
| Brewis, Deon | F Amended | $5,785.30 | | | |
| Brewis, Deon | F Amended | $1,553.59 | | | |
| Bronder, Justin | F Amended | $3,840.72 | 179 | $4,603.85 | |
| Brusseau, Toby | F Amended | $4,028.30 | 180 | $4,038.30 | |
| Bui, Royce | F Amended | $22,982.00 | 251 | $168,943.47 | |
| Bulcke, Lieven Vanden | F Amended | $4,365.60 | | | |
| Bullock, Trenton | F Amended | $6,000.00 | | | |
| Burgin, Daniel | F Amended | $25,161.61 | 104 | $25,161.60 | |
| Burke, Craig | F Amended | $6,556.00 | 182 | $6,556.41 | |
| Buybenicek, Otto | F Amended | $2,564.00 | 181 | $2,563.54 | |
| Buzko, Oleksandr | F Amended | $4,100.88 | 49 | $4,100.88 | |
| Bywater, Stephen | F Amended | $6,376.09 | 144 | $2,326.02 | |
| Cain, James | F Amended | $4,068.96 | | | |
| Calderon, Ray | F Amended | $2,420.34 | 73 | $2,644.21 | |
| Cameron, Scott | F Amended | $2,291.71 | | | |
| Carmichael, Craig | F Amended | $2,461.39 | | | |
| Carrillo, Anthony | F Amended | $1,623.82 | | | |
| Carroll, James | F Amended | $32,758.60 | 307 | $32,758.60 | |
| Carver, Dain | F Amended | $6,430.00 | | | |
| Casacci, Dan | F Amended | $1,561.88 | 109 | $1,561.88 | |
| Casey, Ryan | F Amended | $7,280.20 | 234 | $34,203.91 | |
| Castro, Damian | F Amended | $4,244.27 | | | |
| Cater2.me (Acacia NPU) | F Amended | $3,747.99 | 222 | $4,158.02 | |
| Cavion, Davide | F Amended | $115,102.00 | 249 | $364,840.21 | |
| Celaj, Jetmir | F Amended | $17,755.09 | 303 | $17,755.09 | Duplicate of HF |

- 21 -

| | | | | | Claim |
|---|---|---|---|---|---|
| Central Computers | F Amended | $840.00 | | | |
| Chan, Hing tat | F Amended | $6,707.36 | | | |
| Chan, Jeremy | F Amended | $6,939.80 | | | |
| Chandra, Suresh | F Amended | $2,326.02 | 54 | $2,326.02 | |
| Chang, Richard | F Amended | $6,587.87 | 145 | $6,587.87 | |
| Chappell, Frank | F Amended | $2,275.17 | 283 | $2,250.00 | |
| Chappell, Frank | F Amended | (see above) | 316 | $2,250.00 | Duplicate Claim |
| Chase, Kyle | F Amended | $7,615.29 | | | |
| Cheaney, Avram | F Amended | (see above) | 311 | $3,881.85 | |
| Cheaney, Avram | F Amended | $6,377.52 | 310 | $2,495.67 | |
| Chino, Theo | F Amended | $6,565.70 | | | |
| Chiong, Michael | F Amended | $3,797.53 | | | |
| Cho, David | F Amended | $4,048.90 | | | |
| Christmas, Eric | F Amended | $7,347.00 | 133 | $7,346.90 | |
| Ciara Technologies (a/k/a Hypertechnologie Ciara, Inc.) | F Amended | $197,000.00 | 174 | $193,207.85 | |
| Clark, Jarod | F Amended | $2,397.41 | 183 | $2,397.41 | |
| Clauw, Sven | F Amended | $2,563.54 | | | |
| Coe, Laruen | F Amended | $3,777.36 | | | |
| Cogent Communications | F Amended | $1,600.00 | | | |
| Coie, Perkins | F Amended | $101,769.89 | | | Duplicate of HF Claim |
| Collins, Aaron | F Amended | $2,299.00 | | | Duplicate of HF Claim |
| Conangla, Xavier | F Amended | $2,654.00 | | | |
| Connors, Wayne | F Amended | $3,927.13 | | | |
| Contreras, Tommy E. | F Amended | $2,100.00 | | | |
| Cooke, Harrison | F Amended | $8,957.59 | | | |
| Cordova, Luis | F Amended | $7,190.00 | | | |
| Coroama, Adrian | F Amended | $4,730.00 | 76 | $4,730.50 | |
| Courtright, William | F Amended | $2,498.31 | | | |
| Craig-Wood, Kate (Wood Technology LLP) | F Amended | $12,493.17 | | | |
| Crain, Donald | F Amended | $4,548.26 | 25 | $4,548.26 | |
| Cremer, Shlomo | F Amended | $7,547.26 | | | |

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 34 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Name | | Amount | Claim # | Amount | Note |
|---|---|---|---|---|---|
| Crockford, Andrew | F Amended | $4,244.27 | | | |
| Croscup, Paul | F Amended | $5,363.73 | 241 | $5,497.00 | |
| CT Corp | F Amended | $90.00 | 128 | $910.00 | |
| Curtiss, Chaz | F Amended | $3,835.52 | 184 | $3,835.52 | |
| Cypher Enterprises, LLC | F Amended | $6,018.00 | 305 | $32,252.05 | Duplicate of HF Claim |
| Cyrus, Timothy | F Amended | $2,420.34 | 4 | $2,420.34 | |
| Dadachanji, Jamshed | F Amended | $4,384.27 | 185 | $4,384.27 | |
| Dahlke, Matthew[25] | F Amended | $4,186.09 | 327 | $100,000.00 | |
| Damm, Michael | | | 90 | $41,642.24 | |
| Dankowski, Brian | F Amended | $1,588.40 | 186 | $1,588.40 | |
| Davies, Aneurin | F Amended | $4,273.55 | | | |
| Davis Wright Tremaine LLP | F Amended | $11,280.00 | 51 | $11,280.00 | |
| Davis, Myron | F Amended | $1,593.81 | 142 | $7,311.68 | |
| Day, Jonathan | F Amended | $1,798.90 | | | |
| de Romijn, Alwin | F Amended | $4,244.27 | | | |
| DeLeon, Eddie | F Amended | $2,250.00 | | | |
| Delporte, Kevin | F Amended | $2,600.00 | | | |
| Deming, Mike | F Amended | $7,499.87 | 261 | $38,390.72 | |
| Desai, Gautam | F Amended | $2,496.00 | 187 | $2,495.67 | |
| Desotell, Michael | F Amended | $3,931.89 | 138 | $3,931.89 | |
| Devcic, Sinisa | | | 160 | $5,054.80 | |
| Devito, Reno | F Amended | $9,393.18 | 281 | $7,096.11 | |
| Dewey, Antonio | F Amended | $2,318.00 | | | |
| Di Pardo BVBA | F Amended | $6,697.00 | 3 | $6,696.58 | |
| Diener, Jonas | F Amended | $1,647.51 | 304 | $1,647.51 | |
| DigiKey Corporation | F Amended | $90.17 | | | |
| Digimex, LTD | | | 48 | $3,608,946.20 | Disputed |
| Ding, Jun | F Amended | $2,316.08 | 161 | $2,316.08 | |
| Dionisatos, Aristeidis | F Amended | $3,812.03 | 188 | $3,812.03 | |
| Ditthardt, Robert (Olivine Labs LLC) | F Amended | $4,058.96 | | | |
| Dixon, Lance | F Amended | $72,300.00 | | | |

[25] Matthew Dahlek and Daniel Herbon erroneously asserted Priority Unsecured Claims under § 507(a)(1). The full amount of the Claims is included as Unsecured Claims and has been excluded from the total for Class 1 Claims (although it is listed in Class 1) as they do not qualify as a Unsecured Priority Claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| (Intervid FZ LLC) | | | | | |
| Dolak, Paul | F Amended | $5,670.00 | | | Duplicate of HF Claim |
| Dolman, Christopher | F Amended | $2,607.17 | | | |
| Dorman, Joshua | F Amended | $7,416.62 | 255 | $45,588.20 | |
| Dorr, Jack | F Amended | $7,096.11 | 189 | $7,096.11 | |
| Doyle, Tyler | F Amended | $5,227.81 | 32 | $5,227.81 | |
| Duke, Fon Allen | | | 16 | $0.00 | |
| Duppstadt, Seth | F Amended | $2,275.00 | 95 | $2,250.00 | |
| Dvorak, Petr | F Amended | $2,998.97 | 247 | $2,998.97 | |
| DXCorr Design, Inc. | F Amended | $0.00 | | | Duplicate of HF Claim |
| EarthRise Trust | | | 248 | $28,358.96 | Duplicate of HF Claim |
| Eclipse Metal Fabrication | F Amended | $3,279.90 | | | |
| Edwards, Robert (Awesome Possum LLC) | F Amended | $6,565.70 | | | |
| Elfassy, Ilan | F Amended | $4,226.92 | 31 | $4,226.92 | |
| Elfassy, Ilan | F Amended | (see above) | 70 | $3,750.00 | |
| Eller, Chad | F Amended | $8,298.97 | 312 | $8,298.27 | |
| Elliott, Randall | F Amended | $7,735.88 | 190 | $7,735.88 | |
| Employment Matter Counseling & Consulting | F Amended | $2,170.00 | | | |
| Endres, Alexander | F Amended | $6,776.90 | | | |
| Ergen, Chris (c/o Summit Capital LLC) | F Amended | $36,758.96 | | | |
| Erickson, Paul | F Amended | $2,271.98 | 87 | $2,271.98 | Duplicate of HF Claim |
| Ernst, Sven | F Amended | $4,454.00 | | | |
| Famania, Fernando | F Amended | $6,910.20 | | | |
| Farag, Joseph (Trinity Bitcoin) | F Amended | $6,565.70 | | | |
| Farnsworth, Eli | F Amended | $2,420.00 | | | |
| Farry, Dean | F Amended | $4,168.85 | | | |
| Faruqi, Muhammad Zahid | F Amended | $6,842.00 | 134 | $6,842.00 | |
| Faruqi, Muhammad Zahid | F Amended | (see above) | 136 | $6,842.00 | Duplicate Claim |
| Fefer, Vladimir | F Amended | $2,331.00 | | | |
| Feler System | F Amended | $4,273.55 | | | |

- 24 -

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 36 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Integration | | | | | |
| Feng, Victor (VIP Networks) | F Amended | $3,307.64 | 37 | $48,107.00 | |
| Fernandez, Jensy | F Amended | $2,365.25 | | | |
| Fetterly, Christopher | F Amended | $3,994.04 | 86 | $3,994.04 | |
| Fiechter, Frederick | F Amended | $20,777.19 | | | |
| Filippov, Alex | F Amended | $73,457.00 | 306 | $73,457.00 | |
| Fiorentino, Mark | F Amended | $1,639.25 | 77 | $1,639.25 | |
| Fischer, Maximilian N (and Gerald R. Fischer) | F Amended | $40,857.96 | 288 | $40,858.36 | |
| Fishchenko, Andrey | F Amended | $3,955.58 | | | |
| Floyd, Raymond (Floyd Company) | F Amended | $7,067.00 | | | |
| Franko, Janez | F Amended | $2,584.82 | | | |
| Froud, Dominic | F Amended | $2,600.01 | 106 | $2,600.01 | |
| Fu, Zhao | F Amended | $2,326.00 | 318 | $2,326.02 | |
| Fuchs, Dan | F Amended | $25,175.00 | 102 | $25,175.00 | |
| Fuck, Kai | F Amended | $2,600.01 | 268 | $2,990.00 | |
| Fusaro, Nicholas | F Amended | $2,275.17 | 192 | $2,275.17 | |
| Future Electronics | F Amended | $372,637.80 | 1 | $372,637.80 | |
| Galburt, Gamain Jean | F Amended | $2,563.54 | | | |
| Galburt, Paula Jean | F Amended | $2,328.40 | 113 | $2,345.40 | |
| Gallegos, Matt | F Amended | $2,422.71 | | | |
| Gamborino, Joah | F Amended | $6,842.00 | | | |
| Gao, Michael (c/o Honqui Yang) | F Amended | $682,038.00 | | | |
| Gatchalian, Ryan | F Amended | $58,342.83 | 256 | $312,103.27 | |
| Gibson, Matt (Allure Marine Limited) | F Amended | $2,692.00 | 5 | $4,519.98 | |
| Giovinco, Michael | F Amended | $1,638.62 | | | |
| Givens, Price | F Amended | $7,170.00 | 193 | $7,169.69 | |
| Gladden, David | F Amended | $3,873.20 | | | |
| GLO Ventures | F Amended | $25,000.00 | | | |
| Glocovs, Aleksandrs | F Amended | $5,068.19 | | | |
| Godoy, Edgar | F Amended | $6,160.00 | 245 | $40,919.75 | |
| Goes, Christopher | | | 194 | $5,743.10 | |
| Golbs, Christian | F Amended | $6,777.00 | 88 | $6,776.92 | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

| | | | | | |
|---|---|---|---|---|---|
| Gorman, Pete | F Amended | $2,670.40 | | | |
| Gotleib, Jon | F Amended | $51,250.00 | | | |
| Gould, Todd | F Amended | $6,411.11 | 17 | $6,411.11 | |
| Govoni, Steve | | | 302 | $31,875.00 | |
| Gray, Scott | F Amended | $6,507.52 | | | |
| Greenwood, Evan | F Amended | $6,335.67 | 289 | $6,335.67 | |
| Greinier, Michael | F Amended | $11,523.80 | | | |
| Grevich, Justin | F Amended | $4,176.48 | | | |
| Grez, Patricio | F Amended | $2,420.34 | | | |
| Griffin, Garrett | F Amended | $2,495.67 | 195 | $2,495.67 | |
| Grimes, Aaron | F Amended | $2,275.28 | | | |
| Gruat, Michael | | | 10 | $1,766.00 | |
| Gruat, Michael | | | 11 | $5,600.00 | Duplicate Claim |
| Guerrero, Luis | F Amended | $7,409.06 | 235 | $48,283.34 | |
| Gutelius, Dave | F Amended | $4,119.90 | 41 | $4,119.90 | |
| Haden, Doug | F Amended | $6,925.73 | | | |
| Hagan, Matthew | F Amended | $4,146.58 | 97 | $4,146.58 | |
| Hajje, Hani | F Amended | $12,760.00 | 162 | $12,760.00 | |
| Hall, Dylan (Geeks on Wheels) | F Amended | $7,999.25 | 146 | $7,999.25 | |
| Hall, Jason (Thor) | F Amended | $2,482.00 | 196 | $2,481.63 | |
| Hall, Justin | F Amended | $1,528.08 | 27 | $6,000.00 | |
| Halley, Zach | F Amended | $2,600.01 | | | |
| Haltiner, Maia | F Amended | $2,291.52 | | | |
| Hammond, Edward | F Amended | $1,517.94 | 64 | $6,000.00 | |
| Hamner, Stephen | F Amended | $4,687.50 | 21 | $5,589.43 | |
| Han, Larry | F Amended | $1,621.11 | 259 | $7,321.11 | |
| Hancock, Mark | F Amended | $2,518.64 | | | |
| Handler, Dan | F Amended | $0.00 | | | |
| Hans Hess Elevation Franchise Ventures | F Amended | $19,697.10 | 223 | $19,697.10 | |
| Hansen, Lonnie | F Amended | $4,048.62 | 220 | $1,273.62 | |
| Harmacolindaor Informatikai | F Amended | $6,359.00 | 244 | $40,251.24 | |
| Harnett, Dane | F Amended | $13,763.46 | | | |
| Harris, (Roland) Payu | F Amended | $7,127.40 | 127 | $7,100.00 | |
| Harris, Peter | F Amended | $4,244.27 | | | |
| Haverstock, Adam | F Amended | $2,458.99 | | | |

- 26 -

| | | | | | |
|---|---|---|---|---|---|
| Hawk Ridge Systems | F Amended | $8,653.60 | 35 | $8,653.60 | |
| Hazlehurst, Harry | F Amended | $2,563.54 | | | |
| Hee, Hamilton | | | 295 | $1,228,123.88 | |
| Hellmann, Ronny | F Amended | $2,590.34 | | | |
| Henderson, Reginald | F Amended | $6,342.70 | | | |
| Hendrick, Glenn, Bitminer | F Amended | $1,639.25 | | | |
| Hendrickson, Peter | F Amended | $11,006.25 | | | |
| Hennequin, Franck | F Amended | $2,590.34 | | | |
| Hennessy, Adam | F Amended | $1,500.00 | | | |
| Henriksen, Tore | F Amended | $4,418.91 | | | |
| Henson, David | F Amended | $11,565.00 | 236 | $68,779.87 | |
| Herbon, Daniel | | | 67 | $35,000.00 | |
| Hernandez, Rodrigo | F Amended | $2,420.34 | 91 | $2,420.34 | |
| Hessenflow, Allan | F Amended | $15,625.00 | 39 | $15,625.00 | |
| Hicks, James | F Amended | $2,446.88 | | | |
| Hilderal, Daniel | F Amended | $2,590.00 | | | |
| Hill, Derek | F Amended | $6,322.00 | | | |
| Hilt, Charles | F Amended | $4,550.56 | | | |
| Hlavaty, Jack | F Amended | $2,275.28 | | | |
| Hoang, Tony | F Amended | $7,862.78 | 126 | $7,862.78 | |
| Hopson, Benjamin | F Amended | $3,790.01 | 284 | $3,790.01 | |
| Howery, Kris | F Amended | $2,275.00 | 170 | $2,275.28 | |
| Hu, Wenxie | F Amended | $2,584.70 | | | |
| Huang, Kevin | F Amended | $2,293.55 | | | |
| Huber, Beat | F Amended | $2,641.00 | | | |
| Huckvale, Stephen | F Amended | $2,590.00 | | | |
| Hui, Lin Cheng | F Amended | $29,631.20 | | | |
| Huizinga, Patrick | F Amended | $1,756.25 | | | |
| Hunt, David Govinder | | | 262 | $28,500.00 | |
| Innerspin, Samuel Koh | F Amended | $6,955.20 | 168 | $6,955.20 | |
| Ino, Yasuo | F Amended | $4,215.09 | | | |
| Intervid FZ LLP | F Amended | $0.00 | 273 | $72,300.00 | |
| Ionascu, Madalin | F Amended | $2,584.70 | 130 | $2,584.70 | |
| I-PMART Network USA Ltd | F Amended | $62,332.00 | 197 | $62,332.00 | |
| Irvin, Jan | F Amended | $4,106.94 | 175 | $4,107.30 | |

- 27 -

| | | | | | |
|---|---|---|---|---|---|
| 1 | Islamov, Timur | F Amended | $7,691.11 | | |
| 2 | Jacos, Peter | F Amended | $7,157.98 | | |
| 3 | Jaffe, Nicholas | F Amended | $2,675.65 | | |
| 4 | James Lowry, LLC | F Amended | $15,592.23 | | |
| 5 | Jang, Lewis | F Amended | $2,550.17 | | |
| 6 | Janke, Larson | F Amended | $38,252.00 | | |
| 7 | Jelle, Maes (BVBA) | F Amended | $13,144.00 | | |
| 8 | Jiang, Damon | | | 114 | $6,142.82 | |
| 9 | JK Internet Solutions Partner | F Amended | $2,590.00 | | |
| 10 | Johnson, Darwin | F Amended | $7,347.00 | | |
| 11 | Johnson, Drew | F Amended | $2,316.08 | 143 | $2,316.08 | |
| 12 | Johnson, James | F Amended | $6,552.00 | 60 | $6,551.72 | |
| 13 | Johnson, Jeremy | F Amended | $12,750.00 | 122 | $12,750.00 | |
| 14 | Jones, Jeremy | F Amended | $5,624.00 | 237 | $45,527.90 | |
| 15 | Jover, Alvaro Fraguas | F Amended | $7,625.00 | 191 | $7,624.57 | |
| 16 | Juez, Alejandro Besada | F Amended | $6,842.11 | | |
| 17 | Kaarakainen, Mika | F Amended | $2,669.57 | | |
| 18 | Kalram, Mohit | F Amended | $4,405.27 | | |
| 19 | Kamstra, Peter | F Amended | $4,346.59 | 38 | $4,346.00 | |
| 20 | Karau, Holden | F Amended | $2,495.67 | | |
| 21 | Kaushish, Manu (Nirvana Digital, Inc.) | F Amended | $8,172.03 | 83 | $6,672.03 | |
| 22 | Kelly, Shaun | F Amended | $2,692.00 | 125 | $3,111.16 | |
| 23 | Keyes, Marion (Riverstone LLC) | F Amended | $13,076.70 | | |
| 24 | Killion, Marcus | F Amended | $2,268.00 | 198 | $2,268.39 | |
| 25 | King, David | F Amended | $2,272.00 | | |
| 26 | Klein, Oliver | F Amended | $2,607.17 | | |
| 27 | Koi Systems Ltd | F Amended | $280,366.00 | 159 | $280,366.00 | |
| 28 | Komissarov, Aleksandr | F Amended | $2,275.00 | | |
| | Konal, Murat | F Amended | $6,838.00 | 42 | $6,838.47 | |
| | Kondrat'ev, Ivan | F Amended | $1,561.88 | | |
| | Kovach, Kenneth | F Amended | $2,301.63 | | |
| | Kozachenko, Igor | F Amended | $38,250.00 | | |
| | Kraus, Alfred | F Amended | $3,777.36 | | |
| | Kravchik, Oren | F Amended | $6,652.99 | | |

- 28 -

| | | | | | |
|---|---|---|---|---|---|
| Kulys, Robert | F Amended | $7,564.33 | 257 | $7,564.33 | |
| Kwan, Law Yui | F Amended | $5,278.00 | 199 | $2,638.90 | |
| Kwiecien, Piotr | F Amended | $2,644.00 | 40 | $2,644.21 | |
| Kwok, Tin Yan | F Amended | $3,879.01 | | | |
| Lachmann, Frank | F Amended | $5,940.00 | 238 | $31,460.78 | |
| Lam, Nathen | F Amended | $2,496.00 | 176 | $2,495.67 | |
| Lambert, Dennis F | | | 200 | $1,638.62 | |
| Lance, Edward | F Amended | $4,551.56 | | | |
| Laron, Etamar | F Amended | $7,547.26 | | | |
| Larsen, Kjetil | F Amended | $3,336.47 | 267 | $14,736.47 | |
| Larson, Jason | F Amended | $6,926.00 | 151 | $6,925.73 | |
| LaShot, Craig | F Amended | $2,297.07 | 119 | $2,297.07 | |
| Lau, Brion (Financial Fitness Por) | F Amended | $2,458.00 | | | |
| Lauck, Anthony | F Amended | $4,094.63 | 121 | $4,094.63 | |
| Laun, Duane | F Amended | $32,940.30 | | | |
| Le, Dat | F Amended | $4,048.90 | | | |
| Lee, Edward | F Amended | $9,215.77 | | | |
| Lehming, Tim | F Amended | $2,590.34 | | | |
| Lehrer, Mark | F Amended | $2,386.63 | | | |
| Lei, Shi | F Amended | $6,765.09 | 12 | $6,765.09 | |
| Lei, Shi | F Amended | (see above) | 61 | $6,765.09 | Duplicate Claim |
| Lenet, Adam (Lenit IT Solutions) | F Amended | $2,291.52 | | | |
| Leong, Matthew | F Amended | $7,450.54 | | | |
| Li, Jiongye | F Amended | $2,275.00 | 129 | $2,275.17 | |
| Lindner, Benjamin | F Amended | $115,391.00 | 291 | $730,088.31 | |
| Liquidbits Corp | F Amended | $5,364,725.00 | 111 | $5,364,725.00 | Disputed; 502(d) |
| Listener Approved LLC | F Amended | $7,332.86 | | | |
| Liu, Eric | F Amended | $1,634.98 | | | |
| Liu, Yichun Catherine | F Amended | $6,567.00 | 147 | $6,566.90 | |
| Lo, Andy | F Amended | $5,868.00 | 239 | $31,308.30 | |
| LookSmart, Ltd | | | 68 | $208,000.00 | |
| Lord, Michael | F Amended | $88,019.21 | 7 | $64,375.74 | |
| Lord, Michael | F Amended | (see above) | 8 | $0.00 | Duplicate Claim |
| Loudon, George | F Amended | $2,275.28 | | | |
| Lu, Kang | F Amended | $12,859.00 | 141 | $13,630.79 | |

| | | | | | |
|---|---|---|---|---|---|
| 1 | Luecke, Christian | F Amended | $9,318.47 | | |
| 2 | Ma, Ting | F Amended | $4,466.48 | | |
| 3 | Mahan, Kevin (Michael) (Tanard Corporation) | F Amended | $3,873.86 | 214 | $3,873.86 |
| 4 | Malinen, Juri | F Amended | $2,628.74 | | |
| 5 | Mann, Elkin (LDI Imports) | F Amended | $2,275.28 | | |
| 6 | Mantle, Mick | F Amended | $2,564.00 | 201 | $2,563.54 |
| 7 | Marcak, Ivan | F Amended | $2,326.02 | 101 | $2,326.02 |
| 8 | Marin, Santiago | F Amended | $2,326.02 | | |
| 9 | Martin, Allan | | | 315 | $32,526.13 |
| 10 | Martin, Pascal | F Amended | $4,081.50 | 45 | $4,081.50 |
| 11 | Matas, Francisco Joee Romero | F Amended | $4,292.11 | | |
| 12 | Mathias, Michael | F Amended | $2,600.01 | | |
| 13 | Mathue, David | F Amended | $3,955.58 | 224 | $3,955.58 |
| 14 | Maxwell, Gregory | F Amended | $6,136.00 | | |
| 15 | Mazovec, Anze | F Amended | $2,854.82 | | |
| 16 | McCormick, Matthew | F Amended | $6,566.00 | 202 | $6,565.70 |
| 17 | McCray, Nathaniel | F Amended | $4,038.30 | | |
| 18 | McGhan, Allen | F Amended | $4,109.89 | | |
| 19 | McGough, Tim (John) | F Amended | $7,785.00 | 203 | $2,020.88 |
| 20 | McGurgan, Michael | F Amended | $2,309.84 | 139 | $2,250.00 |
| 21 | McKittrick, Brian | F Amended | $6,416.00 | | |
| 22 | McNamara Financial | F Amended | $25,145.00 | | |
| 23 | Medeiros, Martin | F Amended | $3,791.52 | | |
| 24 | Mediabistro.com, Inc. | | | 99 | $7,500.00 |
| 25 | Meese, Kelly | F Amended | $2,397.00 | | |
| 26 | Meijburg, Cees | F Amended | $2,590.34 | | |
| 27 | Mengel, Amos | F Amended | $2,692.00 | | |
| 28 | Merkabahnk | F Amended | $3,795.30 | | |
| 29 | Metzler, Jared | F Amended | $3,784.03 | | |
| 30 | Miceli, Fabio | F Amended | $7,576.50 | 69 | $7,576.00 |
| 31 | Mikesell, Jean-Andrew | F Amended | $6,928.88 | | |
| 32 | Miller, David | F Amended | $8,834.87 | 252 | $6,411.11 |
| 33 | Miller, James | F Amended | $2,326.02 | | |

- 30 -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Miller, Karen (Eberhart Accounting Services, P.C.) | F Amended | $73,138.52 | 98 | $8,788.52 | |
| Miller, Warren | F Amended | $1,756.25 | | | |
| Minchenkov, Alexey | F Amended | $2,854.82 | 112 | $2,854.82 | Duplicate of HF Claim |
| Minhaj, Ahmed | F Amended | $6,565.70 | | | |
| Miranda, Joaquin Mellado | F Amended | $7,458.82 | | | |
| Miratek | F Amended | $5,525.00 | | | |
| Moc, LyLy | F Amended | $7,656.85 | 319 | $7,716.85 | |
| Moc, Tong | F Amended | $4,583.43 | | | |
| Molai, Bo | F Amended | $1,090.10 | | | |
| Monsoon Company, Inc. | F Amended | $13,500.00 | 82 | $13,500.00 | Duplicate of HF Claim |
| Monsoon Company, Inc. | F Amended | (see above) | 221 | $57,660.00 | Duplicate Claim |
| Montague, Paul | F Amended | $6,939.80 | 100 | $6,939.80 | |
| Morales, Jose | F Amended | $2,460.00 | | | |
| Morici, Peter | F Amended | $14,665.57 | 29 | $156,928.61 | Duplicate of HF Claim |
| Mosley, Edward | F Amended | $6,346.45 | 72 | $6,346.45 | |
| Mosneron, Charles | F Amended | $2,600.01 | | | |
| Mueller, Florian | F Amended | $2,656.20 | | | |
| Mueller, Ken (Public Service Insurance Co.) | F Amended | $6,344.09 | 166 | $6,344.09 | |
| Munoz, Victor | F Amended | $6,529.00 | | | |
| Murray, Stuart | F Amended | $14,183.62 | 79 | $14,182.61 | |
| Myers, Peter | F Amended | $7,627.00 | 204 | $7,627.00 | |
| Nahum, Nir | F Amended | $2,644.00 | 55 | $2,643.99 | |
| Navarry, Albert | F Amended | $2,640.84 | | | |
| Nepomuceno, Ferdinand | F Amended | $6,498.96 | 167 | $6,498.96 | |
| Neth, Alex | F Amended | $12,151.30 | | | |
| Neumann, Tobias | F Amended | $2,590.34 | | | |
| Newbern, Saint Clair | F Amended | $10,363.20 | | | |
| Ngo, Jimson | F Amended | $2,431.56 | | | |
| Nguyen, (Phuc) Van | F Amended | $0.00 | 205 | $2,420.34 | |
| Nguyen, Phuc | F Amended | $2,420.00 | | | |
| Nguyen, Thang | F Amended | $3,795.50 | | | |

- 31 -

| | | | | | |
|---|---|---|---|---|---|
| 1 | Ni, Zhongwei | F Amended | $3,982.16 | | |
| 2 | Nimtsch, Daniel | F Amended | $1,766.79 | | |
| 3 | Nirvana Digital, Inc. | F Amended | $8,172.03 | | |
| 4 | Noble, Julian | F Amended | $1,884.32 | | |
| 5 | Noorullah, Rafez (Gazelle Informatics Ltd) | F Amended | $4,168.50 | 158 | $4,168.50 |
| 6 | North, Jonathon | F Amended | $6,128.20 | | |
| 7 | Novtech, Inc. | F Amended | $9,000.00 | | |
| 8-9 | Ochoa, Guido (Sistemas Operativos Sanitarios C.A.) | F Amended | $800,000.00 | 286 | $832,000.00 |
| 10 | Oregan Networks Ltd. | F Amended | $2,590.00 | | |
| 11 | O'Shea James | F Amended | $23,078.00 | 2 | $0.00 |
| 11 | O'Shea James | F Amended | (see above) | 18 | $0.00 |
| 12 | Package Science | F Amended | $32,000.00 | | |
| 13 | Paez, Henzy | F Amended | $2,275.28 | 56 | $2,285.28 |
| 13 | Park, Trent Nathan | F Amended | $0.00 | 296 | $4,466.51 |
| 14 | Parotte, Maximin | F Amended | $2,563.54 | 46 | $2,563.54 |
| 15 | Patel, Siraj | F Amended | $4,308.15 | | |
| 16 | Peace, William | F Amended | $2,262.81 | | |
| 16 | Peay, Timothy | F Amended | $6,339.54 | | |
| 17 | Pederson, Grant | F Amended | $3,790.01 | 59 | $3,790.01 | Duplicate of HF Claim |
| 18 | Pei, Qingshou | F Amended | $3,811.74 | | |
| 19 | Peregoy, John | F Amended | $6,461.00 | | |
| 20 | Perez, Julio | F Amended | $15,551.74 | | |
| 20 | Pescatrice, Mark (Hot Sun) | F Amended | $37,856.53 | 116 | $37,856.53 |
| 21-22 | Pescatrice, Mark (Matrice Consulting LLC) | F Amended | $7,387.91 | 117 | $7,387.91 |
| 23 | Petersen, Russell | F Amended | $2,271.88 | | |
| 23 | Pilecki, Pawel | F Amended | $13,131.40 | 250 | $13,131.40 |
| 24 | Piper, Derek | F Amended | $5,715.25 | 275 | $7,290.33 |
| 25 | Pirestani, Kayvon | F Amended | $4,168.85 | | |
| 26 | Plowman, Jason | F Amended | $2,275.28 | 206 | $2,275.28 |
| 26 | Pojar, Daniel | F Amended | $2,326.00 | | |
| 27 | Poluhin, Anton | F Amended | $2,998.97 | | |
| 28 | Polymathica Pte. Ltd | F Amended | $43,662.27 | | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

| | | | | | |
|---|---|---|---|---|---|
| Poon, Weng Kay | F Amended | $4,252.37 | 243 | $4,252.37 | |
| Pop, Adrian | F Amended | $4,583.42 | | | |
| Pope, Bryan | F Amended | $7,999.25 | 47 | $8,000.00 | |
| Postma, Tom (PC Central) | F Amended | $4,365.60 | 66 | $4,365.60 | |
| Prasanna, Jeyaraman | F Amended | $2,687.47 | | | |
| Prentice, Jonathan (Network Service Prov) | F Amended | $1,500.00 | | | |
| Prikryl, Ales | F Amended | $3,897.24 | 207 | $3,897.24 | |
| Proctor, Osric | F Amended | $9,492.00 | 227 | $7,991.50 | |
| Proven Tolerance Specialist | F Amended | $5,706.96 | | | |
| Pryor, Michael | F Amended | $6,328.18 | | | |
| Pushkin, Sergey | F Amended | $2,855.00 | | | |
| Quirante, Joseph John | F Amended | $7,691.11 | | | |
| Raday, Christopher | F Amended | $3,795.50 | | | |
| Radhawa, Ram | F Amended | $6,598.90 | | | |
| Raiss-Elfenni, Youssef | F Amended | $1,500.00 | 96 | $4,200.00 | |
| Ramos, Dominic | F Amended | $2,654.00 | | | |
| Randall, Scott (Advanced Legal Systems, Inc.) | F Amended | $3,997.68 | | | |
| Rankin, Frank | F Amended | $15,441.98 | | | |
| Rebeyrat, Olivier | F Amended | $4,081.50 | | | |
| Reckman, Regan | F Amended | $6,000.00 | 279 | $6,994.80 | |
| Reed, Mari | F Amended | $1,688.02 | | | |
| Reid, Novia | F Amended | $6,429.62 | 317 | $6,429.62 | |
| Reith, Bruno | F Amended | $2,590.34 | | | |
| Richards, Matt | F Amended | $13,000.00 | 326 | $10,000.00 | |
| Richardson, Alan | F Amended | $9,200.00 | | | |
| Richardson, Robert Alan | F Amended | $29,900.00 | | | |
| Richmond, George | F Amended | $3,887.90 | | | |
| Richmond, George | F Amended | $3,887.90 | | | |
| Riedel, Wolfgang | F Amended | $2,590.34 | 110 | $2,590.34 | |
| Ries, James | F Amended | $7,550.50 | 157 | $7,550.50 | |
| Rihn, Bernie (Prudentia Permanens LLC) | F Amended | $6,533.60 | | | |

- 33 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Riley, Verne Paul | F Amended | $6,939.00 | 208 | $6,939.00 | |
| 2 | Rinab, Martin | F Amended | $2,275.17 | 103 | $2,275.17 | |
| 3 | Rising, Joshua | F Amended | $1,656.97 | | | |
| | Ritz, Jay | F Amended | $12,685.40 | | | |
| 4 | Robert Alkire Consulting | F Amended | $28,800.00 | | | |
| 5 | Robinson, Shamus | F Amended | $2,277.00 | 287 | $2,277.43 | |
| 6 | Robinson, Stacy (Robinson SM Consulting) | F Amended | $2,000.00 | 94 | $4,000.00 | |
| 7 | Roeder, Paul | F Amended | $2,318.45 | | | |
| 8 | Roganov, Alexander | F Amended | $1,638.62 | 300 | $1,638.62 | |
| 9 | Rojas, Manuel | F Amended | $2,515.94 | 26 | $2,515.94 | |
| 10 | Romero, Hugo Gonzlalez | F Amended | $4,292.11 | | | |
| 11 | Rooney, Ric (Sun Spot) | F Amended | $15,260.54 | | | |
| 12 | Rouvier, Joe | F Amended | $6,925.73 | | | |
| 13 | Roy, Mark | F Amended | $120,729.17 | | | |
| | Ruble, Nathan | F Amended | $9,410.48 | 84 | $7,910.48 | |
| 14 | Russell, Joe | F Amended | $353.61 | | | |
| 15 | Sadowski, Patrick | F Amended | $3,812.03 | 78 | $1,037.03 | |
| 16 | Safranek, Martin | F Amended | $4,583.11 | 246 | $4,583.11 | |
| | Sajan, Anthony | F Amended | $2,275.28 | | | |
| 17 | Samas, Brian | F Amended | $2,326.00 | 30 | $2,326.02 | |
| 18 | Samios, Nicholas | F Amended | $7,723.00 | | | |
| 19 | Sanders, Bruce (Bruce Sanders Design) | F Amended | $6,566.70 | | | |
| 20 | Sandgate Technologies | F Amended | $89,377.00 | | | Disputed |
| 21 | Santos, Jose | F Amended | $2,600.01 | | | |
| 22 | Santos, Michel | F Amended | $3,795.30 | 269 | $4,195.30 | |
| | Sattler, Detlef | F Amended | $21,994.00 | 9 | $21,943.95 | |
| 23 | Schaum, Uwe | F Amended | $4,288.47 | 89 | $4,288.47 | |
| 24 | Schemenauer, Neil | F Amended | $6,572.77 | | | |
| 25 | Schicker, Florian | F Amended | $4,292.11 | | | |
| 26 | Schildknecht, Timo | F Amended | $6,871.00 | | | |
| | Schmidt, Sebastian | F Amended | $3,609.41 | 240 | $89,582.10 | |
| 27 | Schmitt, William | F Amended | $4,652.04 | 165 | $2,075.00 | |
| 28 | Schortmann, Thomas | F Amended | $3,955.58 | 149 | $3,955.58 | Duplicate of HF Claim |

- 34 -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Schultz, Carl | F Amended | $2,426.00 | 155 | $2,425.73 | |
| Schwartz, Vicki | F Amended | $2,326.02 | | | |
| Schwarz, Steven | F Amended | $6,000.00 | | | |
| Schwarz, Viktor | F Amended | $6,842.11 | | | |
| Schwuchow, Lee (Monkey Business) | F Amended | $2,431.23 | 266 | $2,431.23 | |
| Senegal, Brenton | | | 33 | $2,750.00 | |
| Shanghai Chooyu Chemical Company, Ltd | F Amended | $2,128.00 | | | |
| Shannon, Michael | F Amended | $2,583.51 | 65 | $2,583.51 | |
| Shave, John | F Amended | $6,565.70 | | | |
| Shaw, Christopher | F Amended | $0.00 | 271 | $9,329.00 | |
| Shen, Chunliu | F Amended | $4,942.00 | 85 | $4,942.39 | |
| Shurb, Jason | F Amended | $4,544.00 | 107 | $4,543.86 | |
| Shy, Kathleen | F Amended | $515.00 | | | |
| Sidles, Kyle (Kaysid, LLC) | F Amended | $31,875.00 | | | |
| Sierra Proto Express | F Amended | $11,160.98 | | | |
| Siew, Chengxi Bernad | F Amended | $2,646.00 | 209 | $2,670.40 | |
| Silvia, Matthew (Ford) | F Amended | $6,566.00 | 210 | $6,565.70 | |
| Sim, Sylvia (IP Mart Network) | F Amended | $62,332.00 | | | |
| Simmons, Nick | F Amended | $16,352.00 | 140 | $16,352.00 | |
| Simms, Jonathan (Jhashybor Mining) | F Amended | $4,058.96 | | | |
| Simpson, Craig | F Amended | $2,600.01 | | | |
| Sine, Terry | F Amended | $3,773.67 | | | |
| Skreen, Evan (Lawrence) | F Amended | $6,330.21 | 211 | $6,330.21 | |
| Slavkov, Aleksandar | F Amended | $0.00 | 212 | $2,992.78 | |
| Slavkov, Evan Lawrence | F Amended | $0.00 | | | |
| Smallwood, Peter | F Amended | $14,547.43 | 135 | $14,547.43 | |
| Smith, William (Henry) | F Amended | $7,303.58 | 228 | $7,303.58 | |
| Sneddon, Russell | F Amended | $4,226.92 | 13 | $4,146.58 | |
| Snisarenko, Kostyantyn | F Amended | $2,583.51 | | | |
| Soler, Selim | F Amended | $2,275.28 | 324 | $10,000.00 | |

- 35 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Sonic Manufacturing Technologies | F Amended | $149,313.05 | | | |
| Sorensen, Marcus | F Amended | $12,838.14 | 36 | $10,062.68 | |
| Springer, David | F Amended | $32,952.00 | 213 | $32,950.99 | |
| Starr, Daniel | F Amended | $2,699.13 | | | |
| Stehr Music Productions | F Amended | $2,644.00 | | | |
| Steinberg, David | F Amended | $6,928.00 | | | |
| Steiner, Raymond | F Amended | $2,656.20 | | | |
| Stiegler, Thomas | F Amended | $4,519.97 | 63 | $4,519.97 | |
| Stolowitz Ford Cowger, LLP | F Amended | $5,637.55 | | | |
| Stonn, Ryan | | | 120 | $4,050.00 | |
| Stonn, Ryan | | | 124 | $4,050.00 | Duplicate Claim |
| Stoychev, Ivo | F Amended | $6,777.00 | | | |
| Strategic Counsel Corp. | F Amended | $127,225.00 | 308 | $135,422.00 | |
| Su, Hsiaofen | F Amended | $4,950.78 | | | |
| Sudakov, Sergiy | F Amended | $2,275.28 | | | |
| Suddarth, James | F Amended | $6,320.83 | | | |
| Sullivan, Mark (Cyclotronics) | F Amended | $19,018.05 | | | |
| Suter, Heinz | F Amended | $4,292.11 | | | |
| Symons, Peter | F Amended | $4,146.58 | 253 | $4,146.58 | |
| Synter Resource Group, LLC | F Amended | $40.72 | | | |
| Syvert Holbeck Feed | F Amended | $2,669.57 | | | |
| Tait, Ian | F Amended | $13,414.16 | | | |
| Talmacel, Milhail (Calle Beleten) | F Amended | $19,899.68 | | | |
| Tanaka, Hideyuki | F Amended | $3,271.50 | | | |
| Taylor, Guy | F Amended | $2,590.34 | | | |
| Telford, Jeannie | F Amended | $6,401.59 | | | |
| Teltarif.de | F Amended | $1,765.59 | | | |
| Teo, Albert | F Amended | $4,048.90 | | | |
| Terry, Bruce | F Amended | $2,507.38 | 299 | $2,507.38 | |
| Teta, Jesse | F Amended | $2,386.63 | | | |
| Theron Rodriguez Bitlab LLC | F Amended | $6,549.00 | | | |
| Thomas, Bryce | F Amended | $3,806.06 | 71 | $3,806.06 | |
| Thomas, James - eServiZes ( | F Amended | $8,725.24 | 215 | $8,725.24 | |

- 36 -

605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | |
|---|---|---|---|---|
| Thompson, Chris | F Amended | $1,561.66 | | |
| Thompson, Sam (UBE Enterprises) | F Amended | $38,250.00 | 44 | $38,250.00 |
| Tilkin, Servaas | F Amended | $2,600.01 | 148 | $2,600.01 |
| TimeFire, Inc. | | | 115 | $21,500,000.00 | Duplicate of HF Claim; Disputed; Unliquidated |
| Tipple, Peter | F Amended | $2,563.54 | | |
| Tollefson, Eric | F Amended | $2,431.23 | 50 | $2,431.23 |
| Tooley, Marc | F Amended | $3,203.54 | | |
| Tran, Phat | F Amended | $2,275.17 | 163 | $2,275.17 |
| Tran, Thanh Lanh | F Amended | $6,794.00 | 229 | $6,794.27 |
| Traver, Elric | F Amended | $2,417.46 | | |
| Trowbridge, Douglas | F Amended | $1,638.62 | | |
| TrueTech Communications | F Amended | $560.00 | | |
| Tsang, Warren (LogicShark Consulting) | F Amended | $1,520.13 | 43 | $1,520.13 |
| Tucker, Matt | F Amended | $25,045.00 | | |
| Turygin, Ivan | F Amended | $25,000.00 | | |
| Twigg, Simon | F Amended | $4,876.80 | | |
| Twohy, John (24K Gold Plating) | F Amended | $2,397.41 | 52 | $2,397.41 |
| Uline | F Amended | $1,044.88 | | |
| Uniquify, Inc. | F Amended | $424,427.10 | 309 | $768,680.44 | Disputed |
| Urakhchin, George | | | 6 | $30,000.00 |
| Vaandrager, Reinoud | | | 34 | $6,000.00 |
| Vaida, Tudor (Ovidiu) | F Amended | $2,008.30 | 260 | $7,708.30 |
| Valcheva, Indra Koli | F Amended | $13,416.71 | | |
| van der Feest, Stephan | F Amended | $2,600.01 | | |
| van der Linden, Robin (mimoCloud Computing UG) | F Amended | $36,732.77 | 314 | $36,731.57 |
| Van Vuuren, Henco Janse | F Amended | $3,012.89 | | |
| Vasquez, Raul | F Amended | $2,495.67 | | |
| Vela, Allan | F Amended | $4,418.53 | | |
| Vermaat, L.J. | F Amended | $6,794.00 | | |

- 37 -

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 49 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Vidana, Joshua (skidhacker.com) | F Amended | $16,860.36 | 263 | $85,260.36 | |
| Vit, Alan | F Amended | $11,480.00 | 80 | $11,479.73 | |
| Vkal Design LLC | F Amended | $840.00 | | | |
| Vo, Antony | F Amended | $115,177.27 | 28 | $464,273.25 | |
| Voight, Forrest | F Amended | $3,158.57 | 276 | $3,158.57 | |
| Vokey, Corey | F Amended | $4,073.71 | 22 | $4,073.71 | |
| von Germeten, Mark | F Amended | $3,848.35 | | | |
| vonGermeten, Jeffrey (Raymond) | F Amended | $2,284.75 | 216 | $2,284.75 | |
| Voorhees, Erik-Bitcoin FTW | F Amended | $36,636.38 | 272 | $243,872.18 | |
| Vorac, Oldrich | F Amended | $5,048.00 | | | |
| Vykoukal, Ferdinand | F Amended | $5,282.00 | | | |
| Wagner, Marcel | F Amended | $4,244.27 | | | |
| Wallace, Duncan (Duncwa LLC) | F Amended | $28,374.11 | 24 | $14,630.71 | |
| Wallace, Nathan | F Amended | $6,322.00 | | | Duplicate of HF Claim |
| Walsh, Kat and Gregory Maxwell | F Amended | $6,143.00 | | | |
| Walsh, Sean (Bertram Capital) | F Amended | $6,888.71 | | | |
| WaltherCorp LLC (William Walther) | F Amended | $1,500.00 | 264 | $4,292.30 | |
| Wang, George | F Amended | $2,290.00 | | | |
| Wang, Hamilton | F Amended | $13,228.00 | | | |
| Wang, Xiwen | F Amended | $34,038.55 | | | |
| Watson, Trevor (Prestige Trophies & Engraving) c/o Gallo LLP) | F Amended | $6,882.00 | 217 | $6,881.73 | |
| Weaver, Jay | F Amended | $2,496.97 | 57 | $2,741.71 | |
| Weinderg, Donald | F Amended | $7,355.00 | 118 | $7,354.61 | |
| Weiner, Bryce | F Amended | $2,515.94 | | | |
| Wen, Luke | F Amended | $2,365.25 | | | |
| Wenzel, Cort | F Amended | $7,355.29 | 152 | $24,389.98 | |
| Whatley, Jerry (JWC Consulting) | F Amended | $14,388.00 | 274 | $14,388.00 | |
| Whyne, Eric | F Amended | $2,420.34 | | | |
| Wiesman, Jazz | F Amended | $4,040.00 | | | |
| Williams, Daniel | F Amended | $2,275.28 | | | |

- 38 -

| | | | | | | |
|---|---|---|---|---|---|---|
| Williams, Jess | F Amended | $3,826.80 | 92 | $3,826.80 | |
| Williams, Jess | F Amended | (see above) | 164 | $3,826.80 | Duplicate Claim |
| Williams, Mark (Off Road Unlimited) | F | $3,890.37 | | | |
| Windham, Rick | F | $6,556.70 | 20 | $6,565.70 | |
| Wingquist, Thomas | F | $6,307.99 | 285 | $6,307.99 | |
| Wise, Cory | F | $6,344.00 | 282 | $6,344.09 | |
| Witty, Stephen | F | $3,795.44 | | | |
| Wong, Timothy G | | | 173 | $957.90 | |
| Wong, Will | F | $46,434.60 | 277 | $46,441.29 | |
| Woodward, Anthony | F | $2,495.67 | 297 | $2,495.67 | |
| Workbridge Associates | F | $19,890.00 | | | |
| World Electronics | F | $196,940.22 | | | |
| Worrall, Robert (Todd) | F | $13,166.00 | 218 | $13,165.62 | |
| Wrablewski, Ryszrd | F | $7,334.94 | 321 | $7,334.94 | |
| Wu, Gonbo | F | $6,010.00 | | | |
| Wu, James | F | $2,459.00 | | | |
| WY Gost | F | $120,000.00 | | | |
| Wysong, Corey | F | $2,277.31 | | | |
| Xu, Zhengxian | F | $2,636.78 | | | |
| Xue, Yipu | F | $3,158.57 | | | |
| Yampolskiy, Greg | F | $2,397.41 | 219 | $2,397.41 | |
| Yang, Xunyu | F | $7,716.00 | | | |
| Yap, Jet | F | $8,241.95 | | | |
| Yee, Kevin Fu Hong | F | $3,182.99 | 19 | $3,182.99 | |
| Yellowlees, Jon (Dan Rose Tech Set) | F | $7,999.25 | | | |
| Yi, Jason | F | $6,912.00 | 74 | $6,912.41 | |
| Yotov, Tsvetomir | F | $7,376.69 | | | |
| Young, Alexander | F | $2,264.96 | | | |
| Yue, Hong-Quan | F | $7,586.86 | 169 | $7,586.86 | |
| Zepeda, Manuel | F | $13,777.00 | | | |
| Zheng, Chris | F Amended | $2,275.00 | | | |
| Zhou, Wie | F | $7,009.10 | | | |
| Zifon, Toshiya | F | $2,584.70 | | | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | | | |
|---|---|---|---|---|---|
| Zizka, Andreas | F | $3,340.60 | | | |
| Zizka, Jochen | F | $4,311.78 | | | |
| Zuber Lawler & Del Duca LLP | F | $111,115.91 | 322 | $133,651.58 | |
| Total | | $14,340,688.26 | | $18,461,182.00[26] | |

The Committee believes more than $21,500,000.00 of the Unsecured Claims asserted against the Estate are duplicative.[27] The Committee also believes that other Unsecured Claims are unenforceable or overstated. The Committee, however, is not charged with objecting to such claims under the Plan; rather, the Hashfast Creditor Trustee shall evaluate and determine whether to object to any of the Unsecured Claims following the Effective Date.[28]

The Holders of Allowed Unsecured Claims shall receive a Pro Rata share of any and all Unsecured Creditor Distributions, which shall consist of all Excess Cash held by the Hashfast Creditor Trust on the date of the distribution.[29] Unsecured Creditor Distributions shall be made periodically at the sole discretion of the Hashfast Trustee; *provided, however*, that the Hashfast Trustee shall make an Unsecured Creditor Distribution anytime the Excess Cash reaches an amount greater than or equal to $100,000. Upon termination of the Hashfast Creditor Trust, the Hashfast Trustee shall make a final Unsecured Creditor Distribution in an amount equal to the lesser of (1) all remaining Trust Assets, including any portion of the Trust Reserve not required to pay senior Claims or administrative expenses of the Hashfast Creditor Trust, and (2) an amount

---

[26] The Total for HFT General Unsecured Claims excludes duplicative Unsecured Claims, which are included in the HF General Unsecured Claims.

[27] The Unsecured Claims asserted against the Estate totals approximately $63,000,000; however, more than $22,000,000 appear to be duplicative claims asserted against both Debtors individually. Accordingly, for purposes of this Plan, the Committee assumes any and all duplicative claims shall be excluded from Distributions. The exclusion of such Claims, however, does not affect the feasibility of the Plan. Rather, it only affects the Pro Rata share each Creditor receives from each Unsecured Creditor Distribution.

[28] Based on the Committee's preliminary analysis, the Committee has identified several potential objections, including, but not limited to, the following: (1) many of the Claims are duplicative; (2) several Claims are asserted against each Estate although the Claims relate to a single secured obligation; (3) several Claims calculate the amount of the Claim based on the value of BTC on the Effective Date, which the Committee contends is either not allowed under the Code as BTC is not a recognized currency and/or the valuation date for the Claim should be either (a) the date the Claimant was purportedly entitled to a refund or (b) the Effective Date (in either case such Claims would be substantially less than currently stated); (4) several Claims assert an entitlement to lost profits without establishing any legal basis for such entitlement; and (5) certain Claims are premised on alleged liability (including the TimeFire, Inc. and Liquidbits Claims) to which the Estate has defenses and/or a right to setoff.

[29] Distributions of Excess Cash shall not include any hold-back on account of any Disputed Claim(s) pursuant to Section XIII.F.1.e.

- 40 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

equal to the unpaid portion of the Allowed Unsecured Claims plus interest (based on the original total of Allowed Unsecured Claims) at the federal judgment rate accrued up to and including the date of such final distribution.

The Class 1 Claims are impaired and entitled to vote to accept or reject the Plan.

## X.    TREATMENT OF CLASSES OF INTERESTS

### A.    Class 3 – Equity Interests

Class 3 consists of the Allowed Equity Interests.  The Class 3 Equity Interests are unimpaired.  The current Equity Interest Holders are as follows and hold type, priority and percentage interest indicated:[30]

| Member | Security Class | Number of Securities | Type/Percentage of Interest |
|---|---|---|---|
| Amy Abascal | Class A Option | 30,000 | Option |
| Asia Alternative Asset Management | Preferred Units | 455,000 | 4.09% |
| Cara Johnson | Class A Option | 15,000 | Option |
| Chad Spackman | Class A | 666,667 | 11.97% |
| EarthRise Trust | Preferred Units | 200,200 | 1.80% |
| Eduardo de Castro | Class B | 3,000,000 | 26.94% |
| Hannes Eisele | Preferred Units | 75,834 | 0.68% |
| James de Castro | Class A Option | 400,000 | Option |
| Joe Russel | Class A Option | 20,000 | Option |
| John Skrodenis | Class A | 43,740 | 0.39% |
| Mardi Jackson | Class A Option | 120,000 | Option |
| Mark Willey | Class A Option | 50,000 | Option |
| Mike Damn | Class A Option | 20,000 | Option |
| Monica Hushen | Class A Option | 370,000 | Option |

---

[30] In preparing the Equity Interest table contained herein, the Committee relied on the information provided by HF in the List of Equity Security Holders.  Accordingly, the Committee cannot attest to the accuracy of such information.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | | |
|---|---|---|---|
| Naval Ravikant | Preferred Units | 75,834 | 0.68% |
| Naval Ravikant | Class A Option | 40,000 | Option |
| Phil Sadow | Class A Option | 200,000 | Option |
| Port Family Trust | Class A | 666,667 | 11.97% |
| Roy Petrushka | Class A Option | 30,000 | Option |
| RS Ventures Ltd. | Preferred Units | 37,917 | 0.34% |
| Sean Taffler | Class A Option | 80,000 | Option |
| Simon Barber | Class B | 3,000,000 | 26.94% |
| Spring Surprise Limited | Preferred Units | 75,834 | 0.68% |
| Strategic Counsel Corp. | Preferred Units | 52,539 | 0.47% |
| Tim Wong | Class A Option | 280,000 | Option |
| Wells Family Trust | Class A | 666,667 | 11.97% |
| Xavier | Class A Option | 20,000 | Option |

Upon confirmation of the Plan, the Debtors' respective articles of organization and/or limited liability company operating agreements shall be deemed amended to prohibit the issuance of any nonvoting equity securities, as required by 11 U.S.C. § 1123(a)(6).

Under the Plan, Equity Interest Holders shall retain their membership interests. Upon termination of the Hashfast Trust, Equity Interest Holders shall receive a Pro Rata share (based on their Equity Interest in HF)[31] of the Trust Residue. Those holding any right identify as an "Option" shall not receive any portion of the distributed Trust Residue as such options were not exercised as of the Petition Date.

## XI. EXECUTORY CONTRACTS

The Committee is informed and believes that the Debtors have several executory contracts that may require assumption pursuant to 11 U.S.C. § 365, including license agreement(s) for certain intellectual property utilized in the manufacture the ASIC processors and BabyJets. At

---

[31] HFT is a wholly-owned subsidiary of HF; accordingly, all Distributions on account of Allowed Equity Interests shall be paid directly to the members of HF in proportion to their ownership interests in HF as any payment to HFT would pass-through to HF, creating an unnecessary second layer of distributions.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

present, the Committee intends to reject all executory contracts and/or unexpired leases, save and except for (1) the Memorandum of Understanding regarding design of digital currency-related microchips dated August 21, 2013, with DXCorr Design, Inc., (2) the Advisory Services Agreement and Proprietary Information Agreement with Richard G. Bahr, (3) the Nondisclosure Agreement with Sonny Mirador of Miratek Design, (4) the purchase order by and between HFT and Guido Ochoa dated on or about November 13, 2014, (5) the Independent Contractor Agreement by and between the Debtors and Simon Barber dated on or about December 16, 2014, and (6) any executory contract related to the Intellectual Property. The Committee is unaware of any cure payments that must be made in order to assume any of the foregoing contracts.

Any party to an executory contract and/or unexpired lease opposed to the assumption thereof or contesting the fact that no cure payment must be made to assume such contract must file a written objection to the Confirmation of the Plan with the Court and serve the same on counsel for the Committee in accordance with applicable rules prior to the Confirmation Hearing.

To the extent the Debtors reject any executory contract or unexpired lease, any party asserting a Claim arising from such rejection shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease or confirming the Plan, whichever is earlier. The Committee and/or Hashfast Creditor Trust shall have thirty (30) days from the date a rejection damage Claim is filed to object to the allowance of such Claim. Allowed Claims resulting from rejection of an unexpired lease and/or executory contract shall be treated as an Allowed Unsecured Claim in Class 2. At present, the Committee is unaware of any executory contract or unexpired lease the rejection of which will result in a Claim for rejection damages.

## XII. MEANS OF IMPLEMENTATION

### A. Means of Implementation

Prior to the Effective Date, the Debtors will continue to sell assets and inventory in the ordinary course of business (or outside the ordinary course with approval of the Court). On the Effective Date, after payment of Allowed Administrative Claims and Allowed Priority Claims, as required, remaining Cash on hand, if any, and all other Estate Assets will be transferred to the Hashfast Creditor Trust free and clear of all liens, claims and encumbrances, except as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 43 -

specifically provided in the Plan. The Hashfast Trustee will liquidate the Trust Assets as soon as practicable and distribute them in accordance with the terms of the Plan. The terms of the Hashfast Creditor Trust agreement shall be consistent with the terms of this Plan. The Committee shall file a copy of the proposed Hashfast Creditor Trust agreement with the Court and serve the same on all interested parties no later than seven (7) days before the deadline for filing objections to the confirmation of the Plan.

## B. Causes of Action

All Causes of Action, including any right, claim or cause of action, belonging to the Debtors and/or the Estate against any Person, including without limitation, any claim to avoid a transfer under Section 544, 547, 548, 549 or 553(b) of the Code and other state and federal causes of action, such as negligence, breach of fiduciary duty, breach of contract, breach of any covenant, violation of the automatic stay, errors, omissions, fraud, misleading statements, and neglect, among others, shall be transferred to the Hashfast Creditor Trust.[32] All expenses associated with prosecuting the Causes of Action and any objections to Claims and/or Equity Interests will be charged as administrative costs to the Hashfast Creditor Trust. The Hashfast Creditor Trust, in its reasonable discretion, shall pursue, settle or release all such rights of action, as appropriate, in accordance with the best interest of and for the benefit of the Holders of unpaid Allowed Claims and/or Allowed Equity Interests; *provided, however*, that the Hashfast Creditor Trust shall seek Court approval of any settlement in accordance with Bankruptcy Rule 9019 where the amount in controversy exceeds $100,000.

## C. Selection and Compensation of Hashfast Trustee

The Committee has selected Michael G. Kasolas as the trustee for the Hashfast Creditor Trust. The Committee reserves the right to select an alternate Hashfast Trustee. In the event an

---

[32] As noted *supra*, the Debtors sold all Causes of Action the Estate holds or may hold against Simon Barber, with the exception of any Causes of Action against third parties based on his actions, by order entered on December 23, 2014. Accordingly, as the Debtors and/or the Estate no longer hold these Causes of Action, such Causes of Action shall not pass into the Hashfast Creditors Trust and the Hashfast Creditors Trust shall be bound by the release provided to Simon Barber consequent to the sale to the same extent as the Debtors and/or Committee were bound prior to the Confirmation of the Plan.

- 44 -

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

605955018.2

Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:43:48    Page 56 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alternate trustee is selected, the Committee shall notify all interested parties of the selection as soon as practicable but no later than ten (10) days prior to the Effective Date.

As compensation for serving as trustee, the Hashfast Trustee shall be entitled to (i) $30,000 of the first $500,000 of Distributions, (ii) $20,000 of the second $500,000 of Distributions, and (ii) three percent (3%) of any Distributions in excess of $1,000,000 (Trustee Recovery). The Hashfast Trustee shall withhold the Trustee Recovery from the Distributions. Accordingly, for example, the first $500,000 in Distributions shall result in $470,000 in payments to Creditors (including administrative creditors of the Hashfast Creditor Trust) according to their priority under the Plan and $30,000 in payments to the Hashfast Trustee. Prior to paying any amount of the Trustee Recovery,[33] the Hashfast Creditor Trust shall file a notice of payment with the Court and serve the same on all creditors via U.S. Mail. Creditors and Equity Interest Holders shall have fourteen (14) days from the date the Hashfast Trustee filed the notice of payment to file an objection and request for hearing. The failure to file an objection and request for hearing shall be deemed consent to the payment of the Trustee Recovery on a final basis and waiver of any objections thereto. If an objection and request for hearing is filed, the Hashfast Trustee shall set the matter for a hearing before the Court on no less than fourteen (14) days notice and provide notice of the hearing to the objecting party and the UST.

The Hashfast Trustee shall continue to serve until he/she resigns or is removed for cause by order of the Court. In the event the Hashfast Trustee resigns or is removed for cause, the former Committee members shall propose no less than two individuals to serve as the successor Hashfast Trustee and the Court shall select a replacement from the nominations. Any alternate or subsequent Hashfast Trustee shall be compensated in accordance with this paragraph, save any except that such successor shall not be entitled to any Trustee Recovery paid to his/her predecessor.

---

[33] The Trustee Recovery related to the first and second $500,000 in Distributions shall be paid only after the Distributions hit the $500,000 and $1,000,000 benchmarks, respectively. After surpassing $1,000,000 in distributions, inclusive of Trustee Recovery payments, the Hashfast Trustee may file a notice of payment no more frequently than every 120 days and only if Distributions since the last Trustee Recovery payment total at least $500,000, including the proposed Trustee Recovery payment.

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 57 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The terms of the Hashfast Creditor Trust, including the compensation of the Hashfast Trustee, are set forth in the proposed Hashfast Creditor Trust Agreement, which is attached hereto as **Exhibit B**. Confirmation of the Plan shall constitute approval of the terms of the Hashfast Creditor Trust Agreement.

### D. Dissolution of Committee

Upon the occurrence of the Effective Date, the Committee shall be dissolved, and each individual member and any retained Professional shall be discharged from any further activities in the Bankruptcy Cases. The professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for services rendered or expenses incurred after the Effective Date, except (i) for reasonable fees for services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date as provided for in this Plan, or (ii) if employed after the Effective Date as counsel for the Hashfast Trust.

### E. Professional Fees and Expenses

Notwithstanding the 120-day limitation of section 331, each Professional retained or requesting compensation in the Bankruptcy Cases in connection with fees incurred prior to the Effective Date shall file an application for allowance of final compensation and reimbursement of expenses in the Bankruptcy Cases within the first thirty (30) days after the Effective Date. Objections, if any, must be filed within fourteen (14) days after an application for final compensation and reimbursement of expenses is filed.

### F. Additional Provisions

#### 1. Distributions from the Hashfast Creditor Trust

As assets are liquidated, the Hashfast Trustee shall pay any remaining Claims as follows: first, to Holders of Allowed Administrative Claims and the administrative expenses of the Hashfast Creditor Trust *pro rata*;[34] second, to Holders of Allowed Priority Claims; third, to

---

[34] Holders of Allowed Administrative Claims may, in their discretion, agreed to alternate treatment. This tranche shall also include the $30,000 payment to Class 1 if voting Priority Unsecured Claims vote in favor of the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Holders of Allowed Unsecured Claims; and <u>fourth</u>, to Holders of Allowed Equity Interests. The Trustee Recovery shall be paid in accordance with the provisions discussed *supra* at Section XII.C. and in the Hashfast Creditor Trust Agreement (*see* Exhibit B).

**2.      Procedures for Resolving and Treatment of Disputed Claims**

a.      *Prosecution of Objections to Claims*

Unless otherwise ordered by the Court and except as otherwise provided in the Plan, the Hashfast Creditor Trust shall have the exclusive right to object to any Claims and/or Equity Interests after the Effective Date. The costs and expenses associated with the filing and prosecution of any such objection shall be borne as an administrative expense by the Hashfast Creditor Trust.

Unless another time is set by order of the Court or otherwise set forth herein, all objections to Claims and/or Equity Interests shall be filed with the Court and served upon the Holders of each of the subject Claims and/or Equity Interests within the first 180 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order or any Order in aid of Confirmation shall constitute or be deemed to constitute a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable right or defense that the Debtors and/or Estate had immediately prior to the Petition Date. Except as set forth in the Plan, upon Confirmation, the Hashfast Creditor Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable rights or defenses.

b.      *Estimation of Claims*

Pursuant to the Plan, the Committee (or Hashfast Creditor Trust following the Effective Date) and/or the subject Creditor or Equity Interest Holder may, at any time, request that the Court estimate any contingent or unliquidated Claim, pursuant to Section 502(c) of the Code, regardless of whether the Committee (or Hashfast Creditor Trust following the Effective Date) have previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time during litigation concerning

- 47 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent and/ or unliquidated Claim and/or Equity Interest, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Committee or Hashfast Creditor Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim and/or Equity Interest.

c. *Cumulative Remedies*

In accordance with the Plan, all of the aforementioned Claim and/or Equity Interest objection(s), estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim and/or Allowed Equity Interest, as applicable, such Claim or Equity Interest shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes of allocations, Distributions, and voting under the Plan.

d. *Distributions on Disputed Claims*

Distributions with respect to and on account of Disputed Claims and/or Equity Interests will be made as soon as practicable after an Order, judgment, or settlement agreement with which approves such Claim and/or Equity Interest becomes a Final Order; *provided, however*, that the applicable Creditor or Equity Interest Holder shall not receive interest on its Allowed Claim and/or Allowed Equity Interest, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim and/or Equity Interest.

e. *Disputed Claim Reserves*

The Hashfast Trustee shall establish and maintain reserves for all Disputed Claims at the time of any Distribution to Claimants in the same Class as the Disputed Claim(s) at issue. More precisely, at the time of any Distribution, Cash will be set aside equal to the amount the Holder(s) of the Dispute Claim(s) would have received from the Distribution had their Disputed Claims

- 48 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

been deemed Allowed Claims.  If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve on account of such Claim shall be distributed by the Hashfast Trustee to the Creditor. The balance of such Cash, if any remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all holders of Allowed Claims entitled to receive distributions from the Hashfast Creditor Trust in accordance with the Plan.

## XIII.  TAX CONSEQUENCES OF THE PLAN

The implementation of the Plan may have federal, state, and local tax consequences to the Debtors, Creditors, and/or Interest Holders.  The Committee has not obtained a tax opinion about the effect of the Plan on the Debtors, Creditors or Equity Interest Holders.  This Plan does not constitute, and is not intended to constitute, either a tax opinion or tax advice to any person, and the summary contained in the Plan is provided for informational purposes only. **CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR ADVISORS**.

The discussion below summarizes only certain of the federal income tax consequences associated with implementation of the Plan.  It does not cover all aspects of federal income taxation that may be relevant to the Debtors, Creditor and/or Equity Interest Holders, nor does the discussion deal with tax issues peculiar to certain types of taxpayers.  No aspect of foreign, state, local, or estate and gift taxation is addressed.

### A.    Tax Consequences to Creditors and Equity Interest Holders

Holders of a Claim and/or Equity Interest who receive Cash in payment of their Claims and/or Equity Interest may recognize a gain or loss equal to the difference, if any, between the amount of the Distributions that is/are not attributable to interest and their respective adjusted tax bases in their Claims and/or Equity Interest.

The character of any gain or loss recognized by a holder of a Claim as capital gains or ordinary income and, if capital gains, as long-term or short-term, will depend on the holder's status, the nature of the Claim and/or Equity Interest, and the holder's holding period.  The

- 49 -

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:43:48   Page 61 of 99

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

character of such gain or loss may also be affected by special rules under the Internal Revenue Code. Any portion of a Claim and/or Equity Interest payment that is attributable to accrued unpaid interest that the holder has not already included in income will result in the recognition of ordinary income. Holders of Claims and/or Equity Interest should consult with their own tax advisors as to the character and timing of recognition of gain or loss.

## XIV. CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues. The Committee CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic or on those issues that affect the Debtors, Creditors, and/or Equity Interest Holders.

Many requirements must be met before the Court can confirm the Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation and, in the case of a liquidating plan, such as the one the Committee proposes, not all requirements are relevant to confirmation.

### A. Who May Vote or Object

#### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2. Who May Vote to Accept/Reject the Plan

A Creditor has a right to vote for or against the Plan if that Creditor has an undisputed Claim which is both (1) allowed or allowed for voting purposes and (2) classified in an Impaired Class.[35]

### 3. What is an Allowed Claim/Interest

As noted above, a Creditor or Equity Interest Holder must first have an Allowed Claim or Allowed Equity Interest to have the right to vote. Generally, any proof of claim or interest will be deemed allowed unless there is objection to the claim or interest. When an objection to a Claim or Equity Interest is filed, the Creditor or Equity Interest Holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Equity Interest for voting purposes.

### 4. What is an Impaired Claim/Interest

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is impaired under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, a Class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that Class 100% of what they are owed. In this case, the Committee believes that all Classes of Creditors and Interest Holders are impaired and are entitled to vote to accept or reject the Plan. Parties who dispute the Committee's characterization of their Claim or Interest as being impaired or unimpaired may file an objection to the Plan contending that the Committee has incorrectly characterized the Class.

### 5. Who is Not Entitled to Vote

The following four types of Claims and/or Equity Interests are <u>not</u> entitled to vote: (1) Claims and/or Equity Interests that have been disallowed; (2) Claims and/or Equity Interests that have been objected to and the objection remains unresolved or the Claim or Equity Interest has not be estimated for voting purposes; (3) Claims and/or Equity Interests in unimpaired Classes; (4) Claims entitled to priority pursuant to Section 507(a)(1), (a)(2), (a)(8), or (b); and (5) Claims

---

[35] Equity Interest Holders in Class 3 are unimpaired and, thus, not entitled to vote on the Plan.

and/or Equity Interest in classes that do not receive or retain any value under the Plan. Claims and Equity Interests in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Section 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because they are required to receive certain treatment specified by the Code. Claims or Equity Interests in Classes that do not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM OR EQUITY INTEREST IS THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 6.       Votes Necessary to Confirm the Plan

If impaired Classes exist, the Court cannot confirm the Plan unless: (1) all Impaired Classes vote to accept the Plan (without counting the votes of any Insiders within that Class); or (2) at least one Impaired Class votes to accept the Plan and the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes.

### 7.       Votes Necessary for a Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the Plan. A Class of Interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the Plan.

### 8.       Treatment of Non-Accepting Classes

As noted above, even if not all of the impaired Classes vote to accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Code. The process by which non-accepting Classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on non-accepting Classes of Claims and/or Equity Interests if it meets all consensual requirements, except the voting requirements of Section 1129(a)(8), and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan as referred to in Section 1129(b) and applicable case law.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 52 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The Committee will ask the Court to confirm this Plan by cramdown on all impaired

2   Classes if any of these Classes do not vote to accept the Plan.

3       **B.    Liquidation Analysis**

4    Another confirmation requirement is the "Best Interest of Creditors Test." Under the Best

5   Interest of Creditors Test, if a Claimant or Equity Interest Holder is in an impaired class and that

6   Claimant or Equity Interest Holder does not vote to accept the Plan, then that Claimant or Equity

7   Interest Holder must receive or retain under the Plan property of a value not less than the amount

8   that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

9   Bankruptcy Code. In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee

10   and generally distributed in the following order: (1) to creditors whose interest was secured by

11   property of the estate; (2) to administrative claim holders; (3) *pro rata* to creditors whose interest

12   was not secured by property of the estate; and (4) Equity Interest Holders.

13    In the instant case, the Committee maintains that this requirement is met because

14   Creditors and Equity Interest Holders receive as much if not more under the Plan as they would if

15   the Debtors' assets were liquidated in a chapter 7 as the Plan involves a controlled liquidation

16   and, through the appointment of the Hashfast Trustee, which has certain limits on his

17   compensation, reduces cost of administration and avoids the additional expenses incurred by the

18   chapter 7 trustee and his or her counsel in the course of a chapter 7 liquidation, including the costs

19   associated with the chapter 7 trustee's counsel becoming familiar with the Bankruptcy Case and

20   the various complex facts involved in the potential litigation. Additionally, under the Plan, the

21   Estate professionals, including Province, have agreed to alternate treatment and, excluding

22   Province, have agreed to a voluntary reduction in their Allowed Administrative Claim(s) if

23   necessary to ensure the success and confirmability of the Plan. In a chapter 7 liquidation, on the

24   other hand, the chapter 11 Estate professionals are required to receive treatment in accordance

25   with the Code and payment of their full Allowed Administrative Claims before any junior

26   creditors. A Liquidation Analysis is attached hereto as **Exhibit C** and incorporated herein by

27   reference.

28

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

### C. **Risk Factors**

HOLDERS OF CLAIMS OR INTERESTS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

The principal risks associated with the Plan are as follows:

1.      There are conditions to the confirmation of the Plan and its consummation that are more particularly described herein and in the Plan.  If the Committee is unable to satisfy those conditions, the Plan may not be confirmed.

2.      Even if all classes of Claims and/or Equity Interests that are entitled to vote accept the Plan, the Plan might not be confirmed by the Court.  The Committee believes that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Code, including under section 1129, but there can be no assurance that the Court will also conclude that the requirements of confirmation have been satisfied.

3.      Although the Committee believes the claims in the Causes of Action are meritorious and likely to result in a recovery of Cash and/or property for the Estate and/or Hashfast Creditor Trust, litigation is never certain.  The Plan, however, is not dependent on success in the Causes of Action; rather, the Plan is feasible whether or not the Hashfast Creditor Trust succeed in any of the pending or potential litigation.

4.      The value of certain Estate Assets depends on the value of Bitcoin and the cost and performance of equipment offered for sale by competitors.  The value of Bitcoin can vary greatly and the availability and performance of competing equipment is difficult if not impossible to know or predict.  Each of these factors may affect the value the Debtors and/or the Hashfast Creditor Trust receives through the liquidation of these assets.

### D. **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 54 -

such liquidation or reorganization is proposed in the Plan.  As the Plan calls for liquidation, this requirement is inapplicable.

## XV.    MISCELLANEOUS PROVISIONS

### A.    Effects of Confirmation

#### 1.    Amendments to the Plan

The Committee reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

#### 2.    Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Court. The Hashfast Creditor Trust shall be authorized, without further application or Order of the Court to take whatever action is necessary to achieve consummation and carry-out the Plan in accordance with this Plan and the Code.

#### 3.    Post-Confirmation Status Report

Within 120 days of the entry of the Confirmation Order, the Hashfast Creditor Trust will file status reports with the Court explaining what progress has been made toward consummation of the Plan.  The status report will be served on the UST and those parties who have requested special notice post-confirmation. The Court may schedule subsequent status conferences in its discretion.

#### 4.    Retention of Professionals

After the Effective Date, the Hashfast Creditor Trust may retain professionals on such terms as the Hashfast Trustee deems reasonable. Persons who served as professionals to the Committee prior to the Effective Date may also serve as professionals to the Hashfast Creditor Trust after the Effective Date.  Any professionals retained by the Hashfast Creditor Trust will be compensated as an administrative expense of the Hashfast Creditor Trust.  To the extent the Hashfast Creditor Trust retains counsel or other professionals on a contingency fee basis, the Hashfast Trustee shall file a notice of intent to retain counsel outlining the terms of the proposed

- 55 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

employment. Unless an objection and request for hearing is filed and served on the Hashfast Trustee within fourteen (14) days of the notice, the employment shall be deemed approved on the terms stated in the notice without further order of the Court. If an objection is filed, the Hashfast Trustee shall set the matter for hearing on no less than fourteen (14) days notice to the objecting party and the UST. The compensation of professionals retained on a contingency fee basis shall not be subject to further Court review. To the extent the Hashfast Creditor Trust retains counsel or other professionals on an hourly fee basis, the employment of such professionals shall not be subject to Court review; however, the compensation shall be subject to notice and opportunity for a hearing. More precisely, before any fees are paid to such professionals, the Hashfast Trustee shall file a notice of payment outlining the amount of the proposed payment and a brief description of the work performed by the subject professional (including the number of hours billed and the professionals performing such services). Unless an objection and request for hearing is filed and served on the Hashfast Trustee within fourteen (14) days of the notice, the payment shall be deemed approved without further order of the Court and any potential objections thereto waived. If an objection is filed, the Hashfast Trustee shall set the matter for hearing on no less than fourteen (14) days notice to the objecting party and the UST.

### 5. United States Trustee Fees

On the Effective Date and thereafter until entry of a Final Decree, the Hashfast Creditor Trust shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code.

### 6. Governing Law

Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of California, without giving effect to the principles of conflicts of laws thereof.

### 7. Binding Effect of the Plan

Pursuant to 11 U.S.C. 1141, the Plan shall be binding upon the Debtors, Creditors, Claimants, Equity Interest Holders and all other parties in interest, and their respective successors and assigns.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 8. Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and assigns of each entity.

### 9. Inconsistencies

To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

### 10. Rules of Construction

For the purpose of this Plan, unless otherwise provided in this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing document, exhibit or schedule filed or to be filed means such document, exhibit or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to a person or entity as a Holder of a Claim or Equity Interest includes that person or entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions or as amended or as modified; and (viii) the rules of construction set forth in Section 102 of the Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or any other provision in this Section.

### 11. Rules of Interpretation

1. Except as otherwise provided in the Plan, Rule 9006(a) applies when computing any time period under the Plan.

- 57 -

2.      Any term used in the Plan that is not a defined term, but that is used in the Code or Rules has the meaning assigned to such term in the Code or Rules, as applicable.

3.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

**B.      Conditions to Effectiveness of Plan**

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.      The Confirmation Order in form and substance reasonably satisfactory to the Committee has become a Final Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Committee may permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.      Execution of the Hashfast Creditor Trust agreement in a form acceptable to the Committee.

3.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Committee and affected or executed by the parties, unless the Committee has waived this requirement in writing.

4.      Upon the satisfaction or waiver of each condition precedent to the Plan becoming effective, the Committee shall so notify the Court, and upon the filing of such notice the Plan shall become effective without further Order of the Court.

**C.      Retention of Jurisdiction**

After the Effective Date, the Hashfast Creditor Trust will be free to perform all functions assigned to it under the Plan without approval of the Court, except as specifically set forth herein. However, the Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1.      All objections to the allowance of Claims and Equity Interests and the compromise of Claims and Equity Interests;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Bankruptcy Cases by Order of the Court

- 58 -

to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Hashfast Creditor Trust in the ordinary course of business without a Court Order;

   3. Any adversary proceedings and/or contested matters brought by the Committee or the Hashfast Creditor Trust, including but not limited to the Causes of Action;

   4. All controversies and disputes arising under or in connection with the Plan;

   5. The enforcement and interpretation of the provisions of the Plan;

   6. The issuance of such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

   7. The removal of the Hashfast Trustee and the election of any successor Hashfast Trustee;

   8. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

   9. All objections to the allowance of any and all Claims arising from the rejection of any executory contract or lease;

   10. Such other matters as may be provided for in the Code or the Plan;

   11. The protection of Estate Assets and/or Trust Assets from adverse claims or interference inconsistent with the Plan; and

   12. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

  **D.** **<u>Headings</u>**

 Article, section, and paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015
605955018.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### E. Notices

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

**To Debtors:**

Peter Kravitz, CRO
Hashfast, LLC and Hashfast Technologies, LLC:
29209 Canwood St., Suite 210
Agoura Hills, CA 91301

With copies to:

Peter Siddiqui, Esquire
Katten Muchin Rosenman, LLP
525 W. Monroe St.
Chicago, IL 60661-3693
Email: peter.siddiqui@kattenlaw.com
Fax: (312) 902-1061

**Official Committee of Unsecured Creditors of Hashfast Technologies, LLC**

Ashley McDow, Esq.
Baker & Hostetler LLP
11601 Wilshire Blvd., 14th Fl.
Los Angeles, CA 90025-0509
Email: amcdow@bakerlaw.com
Fax: (310) 820-8859

### F. Manner of Payment

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Hashfast Creditor Trust, by wire transfer, by automated clearing house transfer from a domestic bank, or transfer of Bitcoin from a Bitcoin wallet belonging to the Hashfast Creditor Trust, at the option of the Hashfast Creditor Trust.

### G. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Hashfast Creditor Trust in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Hashfast Creditor Trust may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such

- 60 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Holder provides to the Hashfast Creditor Trust the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Hashfast Creditor Trust to the appropriate authority. If the Holder of an Allowed Claim and/or Allowed Equity Interest fails to provide to the Hashfast Creditor Trust the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Hashfast Creditor Trust to the Holder of the need for such information, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

### H.    Transmittal of Distributions

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim and/or Allowed Equity Interest or as provided in this Plan, any property to be distributed on account of an Allowed Claim and/or Allowed Equity Interest shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim and/or Allowed Equity Interest entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim and/or Allowed Equity Interest to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Hashfast Creditor Trust pursuant to Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.  If no address is provided or located or any payment is returned after being sent to such address, Distributions to such Claimant or Equity Interest Holder shall be treated as undeliverable and unclaimed property.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 61 -

## I. Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Hashfast Creditor Trust.

## J. Fractional Cents; Multiple Distributions

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

## K. Saturday, Sunday or Legal Holiday

If any Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## L. Tax Treatment

### 1. Section 1146 Exemption

Pursuant to Section 1146(a) of the Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtors, Estates, and/or Hashfast Creditor Trust, or subsequent transfer of the HashFast Creditor Trust pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. The Committee does not believe that any transaction performed by the Hashfast Creditor Trust would result in any potential exemptions under section 1146; however, if such a transaction is proposed, the Hashfast Trustee shall file a motion with the Court seeking approval of the transaction and shall provide notice to the potentially affected taxing authority in accordance with applicable law.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2. Determination of Taxes

The Committee and the Hashfast Creditor Trust are authorized to request an expedited determination of taxes under section 505(b) of the Code for any and all tax returns filed for or on behalf of the Debtors for any and all taxable period (or portions thereof) through the Effective Date.

### M. <u>Severability</u>

If any term or provision of the Plan is held by the Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the term and provisions of the Plan may, at the Committee's option remain in full force and effect and not be deemed affected. However, the Committee reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Dated:    February 25, 2015          Respectfully submitted,

                                     BAKER & HOSTETLER LLP

                                     By:  _____
                                          Ashley M. McDow
                                          Michael T. Delaney

                                     Attorneys for the OFFICIAL COMMITTEE OF
                                     UNSECURED CREDITORS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated:    February 25, 2015

By: _____

Rob Edgeworth

Chairman of the OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED FEBRUARY 25, 2015

603933018.2

# Exhibit "A"

# Exhibit --- Litigation Analysis

| Defendant Name / Last Known Address | Description | Payment/Damages | Estimated Cost of Litigation[1] | Net Recovery |
|---|---|---|---|---|
| **Adrian Port**<br>488 Richmond Road<br>Cambridge, Tas., 7170, Australia | Preferential Transfers[2] | $9,139.66 | $3,198.88 | $5,940.78 |
| **Allan N. Hessenflow**<br>23097 Summit Road<br>Los Gatos, CA 95033-9318 | Preferential Transfers | $21,690.00 | $7,591.50 | $14,098.50 |
| **Amy Woodward**<br>57 Oakwood Street<br>San Francisco, CA 94110 | Preferential Transfers | $7,582.50 | $2,653.88 | $4,928.63 |
| **Avram Cheaney**<br>1305 Laguna Street, Apt. 4<br>San Francisco, CA 94115 | Preferential Transfers | $10,090.14 | $3,531.55 | $6,558.59 |
| **Cater2.Me**<br>345 E. 93rd Street, Apt. 19H<br>New York, NY 10128 | Preferential Transfers | $8,968.71 | $3,139.05 | $5,829.66 |
| **Christopher Bishop**<br>4701 San Leandro Street, Apt. 1G<br>Oakland, CA 94601 | Preferential Transfers | $6,886.11 | $2,410.14 | $4,475.97 |
| **Ciara Technologies**<br>9300 Transcanada Highway<br>Saint-Laurent, Quebec<br>H4S1K5, Canada | Preferential Transfers | $224,000.00 | $78,400.00 | $145,600.00 |
| **DigiKey Corporation**<br>701 Brooks Avenue South<br>Thief River Falls, MN 56701 | Preferential Transfers | $15,864.08 | $5,552.43 | $10,311.65 |
| **Federal Express Corporation**<br>942 South Shady Grove Road<br>Memphis, TN 38120 | Preferential Transfers | $31,223.05 | $10,928.07 | $20,294.98 |

---

[1] The estimated amounts that will be incurred to pay the professionals for pursuing litigation for the preferential transfers will likely not exceed 35% (estimated 30% for fees and estimated 5% for expenses) of the amount transferred in each matter.

[2] The Preference Amount for each Defendant is in accordance with the Statement of Financial Affairs, Docket Entry #178 filed on August 14, 2014, and thus, it may be subject to change.

1

| | | | | |
|---|---|---|---|---|
| **Future Electronics Corp.**<br>3255 Payshere Circle<br>Chicago, IL 60674 | Preferential Transfers | $10,000.00 | $3,500.00 | $6,500.00 |
| **JAMS, Inc.**<br>Two Embarcadero Center, #1500<br>San Francisco, CA 94111 | Preferential Transfers | $20,550.00 | $7,192.50 | $13,357.50 |
| **Kathleen Shy**<br>1137 Meadowlark Drive<br>Fairfield, CA 94533 | Preferential Transfers | $14,975.90 | $5,241.57 | $9,734.34 |
| **Mouser Electronics**<br>1000 North Main Street<br>Mansfield, TX 76063 | Preferential Transfers | $7,651.31 | $2,677.96 | $4,973.35 |
| **Package Science**<br>3287 Kifer Road<br>Santa Clara, CA 95051 | Preferential Transfers | $8,000.00 | $2,800.00 | $5,200.00 |
| **Peter Hendrickson**<br>773 East El Camino Real, #142<br>Sunnyvale, CA 94087–2919 | Preferential Transfers | $20,422.99 | $7,148.05 | $13,274.94 |
| **Proven Tolerance Specialist**<br>570 Suite C Marine View Avenue<br>Belmont, CA 94002 | Preferential Transfers | $8,954.25 | $3,133.99 | $5,820.26 |
| **Salesforce.com, Inc.**<br>The Landmark @ One Market<br>Suite 30<br>San Francisco, CA 94105 | Preferential Transfers | $7,592.50 | $2,657.38 | $4,935.13 |
| **S.F. Court Appointed Special Advocates**<br>2535 Mission Street<br>San Francisco, CA 94110 | Preferential Transfers | $23,591.55 | $8,257.04 | $15,334.51 |
| **Sonic Manufacturing Technologies**<br>P.O. Box 225<br>Santa Clara, CA 95052 – 0225 | Preferential Transfers | $313,154.45 | $109,604.06 | $203,550.39 |
| **Stephen Hanner**<br>51 Gladys Street<br>San Francisco, CA 94110 | Preferential Transfers | $13,593.75 | $4,757.81 | $8,835.94 |

| | | | |
|---|---|---|---|
| **Strategic Counsel Corp.**<br>227 Broadway, Suite 306<br>Santa Monica, CA 90401 | Preferential Transfers | $37,500.00 | $13,125.00 | $24,375.00 |
| **Uniquify, Inc.**<br>2030 Fortune Drive, #200<br>San Jose, CA 95131 | Preferential Transfers | $53,274.90 | $18,646.22 | $34,628.69 |
| **UPS**<br>55 Glenlake Parkway NE<br>Atlanta, GA 30328 | Preferential Transfers | $41,407.02 | $14,492.46 | $26,914.56 |
| **Zuber Lawler & Del Duca LLP**<br>777 S. Figueroa Street, 37th Floor<br>Los Angeles, CA 90017 | Preferential Transfers | $37,500.00 | $13,125.00 | $24,375.00 |
| **Perkins Cole**<br>131 S. Dearborn Street, Suite 1700<br>Chicago, IL 60603 | Preferential Transfers | $40,000.00 | $14,000.00 | $26,000.00 |
| **Tim Wong**<br>100 Bush Street, Suite 650<br>San Francisco, CA 94103 | Preferential Transfers | $18,698.32 | $6,544.41 | $12,153.91 |
| **Tommy E. Contreras**<br>855 Folsom Street, #514<br>San Francisco, CA 94107 | Preferential Transfers | $10,000.00 | $3,500.00 | $6,500.00 |
| **Eduardo De Castro**<br>340 11th Street<br>San Francisco, CA 94103 | Preferential Transfers | $168,972.52 | $59,140.38 | $109,832.14 |
| **Liquidbits Corporation**<br>20201 E. Country Club Dr., #1502<br>Aventura, FL 33180 | Preferential Transfers, Breach of Contract, breach of covenants[3] | $3,500,000.00 | $500,000.00 | $3,000,000.00 |

[3] Liquidbits received several deliveries of chips (approx. 2000) and other mining equipment during the preference period with a value of approximately $1,500,000 to establish a mining operation. Liquidbits failed to establish the mining operation in violation of a contract with the Debtors, causing damages estimated to be approximately $2,000,000. The Estate may hold additional or assert different theories of liability.

Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 80 of 99

| | | | | |
|---|---|---|---|---|
| **Marc Lowe** 230 W. Pueblo St., 2nd Fl. Santa Barbara, CA 93105 | Fraudulent Transfers, Preferential Transfers | 3000.00 BTC (approx. $670,000.00) $37,800.00 | $50,000.00[4] | $657,800.00 |
| **Uniquify, Inc.** 2030 Fortune Drive, Ste. 200 San Jose, CA 95131 | Breach of contract, breach of covenants[5] | $500,000.00[6] | $100,000.00 | $2,500,000.00 |
| **Tim Wong** 100 Bush Street, Suite 650 San Francisco, CA 94103 | Director and Officer liability for errors, omissions, misleading statements, neglect and breach of duty | $3,000,000.00 | $500,000.00 | $2,500,000.00 |
| **Eduardo De Castro** 340 11th Street San Francisco, CA 94103 | Director and Officer liability for errors, omissions, misleading statements, neglect and breach of duty | $3,000,000.00 | $500,000.00 | $2,500,000.00 |
| **Simon Barber** 9 Ignacio Avenue San Francisco, CA 94124 | Director and Officer liability for errors, omissions, misleading statements, neglect and breach of duty | $3,000,000.00 | $500,000.00 | $2,500,000.00 |
| **Monica Hushen** [Unknown] | Director and Officer liability for errors, omissions, misleading statements, neglect and breach of duty | $3,000,000.00[7] | $500,000.00 | $2,500,000.00 |
| | **TOTAL** | $9,079,371.52 | $1,630,050.06 | $7,449,321.46 |

---

[4] Estimates are based on the projected costs for attorneys' fees on an hourly basis and litigation expenses. In estimating these amounts, the Committee assumed hourly rates similar to those charged by the Committee's and Debtors' counsel, the relative difficulty of the recovery, and the estimated expenses associated with similar litigation.

[5] It has been suggested that Uniquify breach its contract with the Debtors and other duties and/or covenants by failing to properly design the ASIC used in the BabyJet and failing to manufacture ASIC processors of sufficient quality to meet the test passage rate required under the contract.

[6] The $500,000 estimate excludes the claims relating to the quality and test passage violations of the contract. Damages for such claims are calculated by multiplying the amounts paid for ASIC by the number of failures over the permitted amount.

[7] The Committee seeks to recover on the claims for errors, omissions, misleading statements, neglect and breach of duty against Tim Wong, Eduardo de Castro, Simon Barber, and Monica Hushen from an insurance policy with a $3,000,000.00 policy limit. The value of the claim as listed in each row is $3,000,000—the aggregate value of the claims, not the expected recovery against each director or officer. The expected costs and net recovery listed in each row are the total expected costs and recovery from the litigation, not the costs associated with litigating against and/or recovery from each party.

# Exhibit "B"

| | |
|---|---|
| In re | Case No.: 14-30725 |
| HASHFAST TECHNOLOGIES, LLC, *et al.,*[1] | (Jointly Administered with Hashfast, LLC, Case No. 14-30866) |
| Debtors. | Chapter 11 |

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of _____ (the "Effective Date"), is established pursuant to the Consolidated Plan of Liquidation and Disclosure Statement Dated February 25, 2015, as modified (the "Plan") filed in the substantively consolidated bankruptcy cases (the "Bankruptcy Cases") of Hashfast Technologies, LLC ("HFT") and Hashfast, LLC ("HF") (collectively, the "Debtors") pending under Chapter 11 proceedings under Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of California (the "Court"). The trust hereby established (the "Trust") is created for the benefit of the Holders of Allowed Claims and/or Allowed Equity Interests under the Plan,[2] whether such Claims and/or Equity Interests become Allowed Claims and/or Allowed Equity Interests on or after the Effective Date of the Plan (the "Beneficiaries"). The trustee of the Trust (the "Trust") shall be Michael G. Kasolas (the "Trustee").

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, each of the Debtors, the Committee, and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS

1.01 All capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Plan and/or the Bankruptcy Code.

---

[1] The Debtors are HashFast, LLC (FEIN 46-2943354) and HashFast Technologies, LLC (FEIN 38-3913245).

[2] All capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Plan, and/or the Bankruptcy Code.

# ARTICLE II

## PURPOSE OF THE TRUST

2.01 The Trust shall be established for the sole purpose of liquidating the Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of any trade or business. Accordingly, the Trustee shall, in an expeditious but orderly manner, administer the Trust Assets, by, among other things, liquidating and converting to Cash the Trust Assets, make timely distributions as provided for herein and in the Plan, and not unduly prolonging the duration of the Trust. The liquidation of the Trust Assets may be accomplished, as more specifically provided for herein and in the Plan (a) through the sale or assignment of the Trust Assets (in whole or in combination), including the sale of any claims, rights or Causes of Action, (b) through the prosecution or settlement of any claims, rights or Causes of Action (whether directly or through an assignee or subsidiary of the Trust), or (c) through abandonment of any Trust Assets that are burdensome to the Trust or of inconsequential value or benefit to the Trust.

# ARTICLE III

## ESTABLISHMENT OF THE TRUST

3.01 <u>Name of the Trust</u>. The name of the Trust shall be the Hashfast Creditor Trust.

3.02 <u>Transfer of Trust Assets to the Trust</u>. Among the assets being transferred to the Trust (i.e., the "Trust Assets") pursuant to the Plan upon the Effective Date are as follows:

(a) All Causes of Action, including any right, claim or cause of action, belonging to the Debtors, the Committee, and/or the Estate against any Person or Entity, including without limitation, any claim to avoid a transfer under Section 544, 547, 548, 549 or 553(b) of the Code and other state and federal Causes of Action, such as negligence, breach of fiduciary duty, breach of contract, breach of any covenant, violation of the automatic stay, errors, omissions, fraud, misleading statements, and neglect, among others, and any claims against any officer or director of the Debtors, or any applicable insurance policy, shall be transferred to the Trust;

(b) All rights and authority under the Plan or otherwise to accept, enforce and benefit from any obligation of any of the Debtors to or for the benefit of the Beneficiaries, the Trust or the Trustee, whether set forth in the Plan, this Trust Agreement, or otherwise; and

(c) Any Cash or cash equivalent held by the Estate on the Effective Date of the Plan.

3.03 <u>Title to the Trust Assets</u>.

(i) The transfer of the Trust Assets to the Trust shall be made by the Debtors for the benefit and on behalf of the Beneficiaries, whether Allowed on or after the Effective Date. In this regard, the Trust Assets will be treated for tax purposes as being transferred (subject to the

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 84 of 99

liabilities and Allowed Claims indicated herein, whether such Claims are Allowed Claims on or after the Effective Date of the Plan) by the Debtors to the Beneficiaries, and then by such Beneficiaries to the Trust in exchange for interests (the "Trust Interests") for the benefit of such holders in accordance with the Plan. The Trustee will then distribute (and shall be deemed to have distributed) the Trust Interests to the Beneficiaries, in exchange for the Trust Assets and the partial interest in such Beneficiaries' Claims as have been so transferred to the Trustee. Upon such transfer of the Trust Assets, the Trustee shall succeed to all of the Debtors' right, title and interest in the Trust Assets, free and clear of all liens, claims, encumbrances and other interests but subject to the terms of the Plan, and the Debtors will have no further interest in or with respect to the Trust Assets or this Trust, and the Trustee shall be vested with all rights and discretion regarding the Trust Assets.

(ii) For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Trustee, and the Beneficiaries) shall treat the transfer of Trust Assets to the Trust, as set forth in this Article 3 and in accordance with the Plan, as a transfer of the Trust Assets to the Beneficiaries, followed by a transfer of such assets by such holders to the Trust, and the Beneficiaries shall be treated as the grantors and owners hereof.

3.04 Appointment of the Trustee. The Trustee shall be Michael G. Kasolas. Entry of an order confirming the Plan shall constitute an order approving the appointment of Michael G. Kasolas as Trustee.

3.05 Provision of Information. On the Effective Date, the Debtors shall provide the Trustee a written report ("Claims Ledger"), certified by one of the Debtors' CEO or CFO, certifying the (a) Allowed Unsecured Claims, individually and collectively (and the amounts of each), and the identity, address, and contact information for the holders thereof, (b) the Disputed Claims, individually and collectively (and the amounts of each), and the identity, address, and contact information for the holders thereof, and (c) the amount, date, method, destination, and status of all distributions made by or on behalf of the Debtors to any such Claim holder. Any change in the Claims Ledger shall require the consent of the Trustee.

3.07 Nontransferability. The Trust Interests shall be nontransferable unless, and only if, the corresponding Allowed Unsecured Claim(s) is also transferred; provided, however, the transfer of any Trust Interest shall also require the Trustee's consent and be at the Trustee's discretion.

## ARTICLE IV

## AUTHORITY, POWERS, LIMITATIONS AND COMPENSATION

4.01 Authority of the Trustee. The Trustee is hereby empowered to, subject to the limitations set forth in this Trust Agreement, take any and all actions to effectuate the purpose of the Trust, including without limitation, any trust power now or hereafter permitted under the law of the State of California, or any other state that becomes the domicile of the Trust, which is not inconsistent with the provisions of this Trust or with the Court's orders relating to the Trust or with the Plan; without limiting the generality of the previous paragraph, the Trustee shall have the power to, for the benefit of the Beneficiaries:

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 85 of 99

(i) Employ professionals and/or agents to assist the Trustee in effectuating the Trust and/or Plan and administer the Trust Assets, the reasonable cost of which shall be paid by the Trust subject to the notice requirements set forth in the Plan.  To the extent the Trust retains counsel or other professionals on a contingency fee basis, the Trustee shall file a notice of intent to retain counsel outlining the terms of the proposed employment.  Unless an objection and request for hearing is filed and served on the Trustee within fourteen (14) days of the notice, the employment shall be deemed approved on the terms stated in the notice without further order of the Court.  If an objection is filed, the Trustee shall set the matter for hearing on no less than fourteen (14) days notice to the objecting party and the United States Trustee (the "UST").  To the extent the Trust retains counsel or other professionals on an hourly fee basis, the employment of such professionals shall not be subject to Court review;

(ii) Invest any moneys held as part of the Trust in accordance with the terms of Section 5.01 hereof, limited, however, to such investments that are consistent with the Trust's status as a Trust within the meaning of Treasury Regulation Section 30 I. 770 1-4( d); and

(iii) Prosecute, settle, release, or otherwise administer (directly or through any Trust professional or agent) any claim, right, or Cause of Action; provided, however, that

(iv) Notwithstanding any other authority granted by this Section, the Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Trust as a trust within the meaning of Treasury Regulation Section 301.770 1-4( d).

4.02 <u>Disposition of Trust Assets; Bankruptcy Court Approval</u>. A request for Court authority to transfer or assign Trust Assets shall be governed by Bankruptcy Code § 363 (including Bankruptcy Code § 363(f) with respect to any sale free and clear of Liens and the right of each Creditor holding a valid and enforceable Lien to adequate protection of that Lien). Notwithstanding the foregoing, the Trustee shall have the authority hereunder (but not the obligation) to move the Court or any other court of competent jurisdiction for approval of any action (or inaction) that the Trustee or the Trust, including seeking a ruling from the Court that such action or inaction is authorized hereby.

4.03 <u>Application of Trust Assets and Other Property for Fees and Expenses</u>.

(i) As compensation for serving as trustee, the Trustee shall receive $30,000 of the first $500,000 of Distributions, (ii) $20,000 of the second $500,000 of Distributions, and (ii) three percent (3%) of any Distributions in excess of $1,000,000 (the "Trustee Recovery").  The Trustee Recovery related to the first and second $500,000 in Distributions shall be paid only after the Distributions hit the $500,000 and $1,000,000 benchmarks, respectively.  After surpassing $1,000,000 in distributions, inclusive of Trustee Recovery payments, the Hashfast Trustee may file a notice of payment no more frequently than every 120 days and only if Distributions since the last Trustee Recovery payment total at least $500,000, including the proposed Trustee Recovery payment.  Prior to paying any amount of the Trustee Recovery, the Hashfast Creditor Trust shall file a notice of payment with the Court and serve the same on all creditors via U.S. Mail.  Creditors and Equity Interest Holders shall have fourteen (14) days from

Page - 4

the date the Hashfast Trustee filed the notice of payment to file an objection and request for hearing. The failure to file an objection and request for hearing shall be deemed consent to the payment of the Trustee Recovery on a final basis and waiver of any objections thereto. If an objection and request for hearing is filed, the Hashfast Trustee shall set the matter for a hearing before the Court on no less than fourteen (14) days notice and provide notice of the hearing to the objecting party and the UST.

(ii) The Trustee shall be allowed to apply Cash constituting a Trust Asset toward (a) expenses incurred toward making cash distributions to beneficiaries and (b) expenses of the professional(s) selected to assist in the administration of the Trust Assets in accordance with the Plan (together, the "Allowed Initial Trust Fund Expenses"). The fees of any professionals retained by the Trust on a contingency fee basis shall not be subject to Court review and the Trustee may pay such fees without prior notice or Court order. Before any fees are paid to professionals or agents employed by the Trust on an hourly basis, the Trustee shall file a notice of payment outlining the amount of the proposed payment and a brief description of the work performed by the subject professional (including the number of hours billed and the professionals performing such services). Unless an objection and request for hearing is filed and served on the Trustee within fourteen (14) days of the notice, the payment shall be deemed approved without further order of the Court and any potential objections thereto waived, and the Trustee shall be authorized to pay such fees (to the extent funds are available to do so) without further notice or Court order. If an objection is filed, the Trustee shall set the matter for hearing on no less than fourteen (14) days notice to the objecting party and the UST. In the event of an objection to the payment of a professional or agent retained on an hourly basis, the Trustee shall pay the subject fees if and only if the Court enters an order approving the payment of such fees.

(iii) All expenses associated with prosecuting the Causes of Action and any objections to Claims and/or Equity Interests will be charged as administrative costs to the Trust.

4.04 Distributions to Beneficiaries

Subject to the Plan, the Trustee shall distribute within two weeks of the Effective Date all available Cash on hand as of the Effective Date, net Cash income and all Cash proceeds from the liquidation of the Trust Assets except for (i) any reserves that the Trustee in his or her determination may set aside for Disputed Claims or otherwise as described herein or in the Plan, (ii) any amounts, determined in the Trustee's sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement, and (iii) any expenses of the Trust or Trustee, subject to Section 4.03 of this Trust Agreement.

All distributions made by the Trustee to holders of Trust Interests shall be payable to the holders of Trust Interests of record as of the 15th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day, as follows: first, to Holders of Allowed Administrative Claims and the administrative

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 87 of 99

expenses of the Hashfast Creditor Trust *pro rata*;[3] second, to Holders of Allowed Priority Claims; third, to Holders of Allowed Unsecured Claims; and fourth, to Holders of Allowed Equity Interests.

If the distribution shall be in Cash, the Trustee shall distribute such Cash by such method as the Trustee deems appropriate under the circumstances. The Trustee and the Trust shall bear no responsibility or liability for the failure of any banking or financial institution to properly execute and effect any instruction concerning distribution.

4.05 Reporting Duties.

(i) Federal Income Tax. The Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), as and to the extent determined necessary by the Trustee.

(ii) Other. The Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Trust that are required by any governmental authority or deemed advisable by the Trustee.

4.06 Compliance with Laws. Any and all distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with the Plan and applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE V

## PERMITTED INVESTMENTS OF TRUST PROPERTY

5.01 Investment of Trust Assets. The Trustee shall be under no liability for interest or producing income on any moneys received by him or her hereunder and held for distribution or payment to the holders of Trust Interests, except as such interest shall actually be received by the Trustee. Investments of any moneys held by the Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Trustee to invest the Trust Assets, the proceeds thereof, or any income earned by the Trust, shall be limited to the right and power to invest such Trust Assets (pending periodic distributions in accordance with Section 4.03 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills ("Permitted Investments"); and provided further, that the scope of the Permitted Investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a Trust, within the meaning of Treasury

---

[3] Holders of Allowed Administrative Claims may, in their discretion, agreed to alternate treatment. This tranche shall also include the $30,000 payment to Class 1 if voting Priority Unsecured Claims vote in favor of the Plan.

605950161.3
Case: 14-30725   Doc# 316   Filed: 02/25/15   Entered: 02/25/15 20:45:48   Page 88 of 99

Regulation Section 301.7701-4, may be permitted to invest in, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

## ARTICLE VI

## THE TRUSTEE

6.01 Generally. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Trust Agreement and not otherwise, except that the Trustee may deal with the Trust Assets for his or her own account as permitted herein.

6.02 Responsibilities of the Trustee. The Trustee shall, in an expeditious but orderly manner, administer the Trust Assets, including by liquidating and converting to Cash the Trust Assets (to the extent possible and to the extent that the Trustee considers doing so advisable, in the Trustee's absolute discretion), making timely distributions and not unduly prolonging the duration of the Trust. In so doing, the Trustee will exercise his or her reasonable business judgment in liquidating the Trust Assets. The liquidation of the Trust Assets may be accomplished through the sale or assignment of Trust Assets (in whole or in combination), including the sale of any Causes of Action, or through the prosecution or settlement of any or all Causes of Action, or otherwise. Except as expressly set forth herein or in the Plan, the Trustee shall have absolute discretion to pursue or not to pursue any and all Causes of Action or objections to claims, including the settlement thereof, as he or she determines are in the best interests of the holders of the Trust Interests and consistent with the purposes of the Trust, and shall have no liability for the outcome of his or her decision.

6.03 Liability of the Trustee. The Trustee shall not be personally liable for any claim asserted against the Trust (or any of its assignees or subsidiaries) or the Trustee, except as set forth below. Notwithstanding anything to the contrary set forth herein, no provision of this Trust Agreement shall be construed to relieve the Trustee from liability for his or her own grossly negligent actions, his or her own grossly negligent failure to act, or his or her own fraud or willful misconduct, except that, without limiting the foregoing exoneration of the Trustee from liability on a personal basis, but in addition thereto:

(i) the Trustee may be liable only for the performance of such duties and obligations as are specifically set forth in this Trust Agreement as being mandatory and part of the Trustee's duties or responsibilities under this Trust Agreement, and

(ii) the Trustee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the Trustee was grossly negligent.

6.04 Extension of Limitations on Personal Liability. Limitations on personal liability as described above may be made applicable, at the Trustee's discretion and in the form and to the extent to be determined by the Trustee, to any professionals, officers, directors, agents, representatives, partners, members, or employees of any subsidiary or affiliate thereof.

605950161.3

6.05 Reliance of the Trustee.

     (i) the Trustee may rely upon and shall be protected in acting or refraining from acting based upon any certificates, opinions, statements, notices, requests, consents, instruments or reports believed by him or her to be genuine and to have been signed or presented by the proper Person or Persons (or believed by him or her to be complete and accurate copies thereof); and the Trustee may, at his or her discretion, have the same examined to determine whether or not such writings conform to the requirements of this Trust Agreement;

     (ii) the Trustee may consult with competent legal counsel, to be selected by him or her at his or her discretion, and the Trustee shall not be liable for any action taken or omitted to be taken by him or her in accordance with the advice of such counsel; and

     (iii) Persons dealing with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Trust Agreement, and the Trustee shall have no personal obligation to satisfy any such liability.

6.06 Indemnification. The Trust shall and hereby does indemnify and hold harmless the Trustee and his or her agents, representatives, Professionals, and employees, and may so indemnify and hold harmless any subsidiary or assignee of the Trust, or any director, officer, member, partner, employee or agent thereof, at the Trustee's discretion, from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust, the implementation or administration of the Plan or otherwise concerning any matters contemplated hereby; provided, however, that no such indemnification will be made to such Persons for such actions or instances of willful misconduct, gross negligence or fraud.

6.07 Expenses and Costs of the Trustee. The Trust Assets shall be subject to the claims of the Trustee arising under Section 6.06, and the Trustee shall be entitled to reimburse himself or herself out of any available Cash in the Trust, for his or her actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under this Trust Agreement.

6.08 Claims Against the Trustee. In accepting the Trust hereby created, the Trustee acts solely as Trustee hereunder, and all Persons having any claim against the Trustee in connection with his or her performance of his or her rights, powers and duties as such Trustee shall only look to the Trust Assets for payment or satisfaction thereof.

6.09 Resignation of the Trustee. The Trustee may resign as Trustee at any time by giving notice to the Court, the Debtors, and the Committee; provided, however, that such resignation shall not be effective earlier than thirty (30) days after the date of such notice, unless an earlier effective date is allowed by the Court. The Trustee may nominate a successor. The Trustee may not be removed, except by order of the Court, following notice and an opportunity for hearing.

Page - 8

6.1 0 Successor Trustee. In the event the Trustee resigns or is removed for cause, the former Committee members shall propose no less than two individuals to serve as the successor Trustee and the Court shall select a replacement from the nominations (the "Successor Trustee"). Any alternate or subsequent Trustee shall be compensated in accordance with this paragraph, save any except that such successor shall not receive the Trustee Fee. If the Trustee vacates the position and a Successor Trustee is not appointed within seventy-five (75) days following such vacancy, any holder of Trust Interests may petition the Court for the appointment of a Successor Trustee.

## ARTICLE VII

## TERMINATION

7.01 Termination. The duties, responsibilities and powers of the Trustee shall terminate at the later of (i) when all Trust Assets, including Causes of Action transferred and assigned to the Trust or involving the Trustee on behalf of the Trust are fully resolved, abandoned or liquidated and the Cash has been distributed in accordance with the Plan and this Trust Agreement, or (ii) five (5) years from the Effective Date. However, subject to the approval of the Court, the term of the Trust may be extended one or more times for a finite period. Prior to and upon termination of the Trust, the Trust Assets will be distributed to the holders of Trust Interests, pursuant to the provisions set forth in Section 4.04 hereof, but subject to the final two sentences of this Section and the final sentence of Section 3.04 (i) hereof. If any Trust Assets are not then duly claimed, such Trust Assets will be distributed, pro rata, according to holders' Trust Interests, subject to the other provisions of this Trust Agreement. Thereafter, if there are still any Trust Assets not duly claimed, such Trust Assets will be disposed of in accordance with applicable law or the Plan, subject to the other provisions of this Trust Agreement.

7.02 Bankruptcy Court Order. Without limiting any other provision of this Trust Agreement regarding termination, the Trustee or any party in interest may apply to the Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Court may establish.

## ARTICLE VIII

## JURISDICTION

Any provision of this Trust Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

The Court shall retain jurisdiction over this Trust Agreement and the Trust established hereby to the extent set forth in the Plan and Confirmation Order. Any other action or proceeding to enforce, or arising out of, this Trust Agreement may be commenced in the Central District for the

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 91 of
99

State of California and shall be governed by, and construed under, as applicable, the United States Bankruptcy Code and the internal laws of the State of California.

# ARTICLE IX

## MISCELLANEOUS

9.01 Intention to Establish Grantor Trust. This Trust Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

9.02 Reporting.

(i) Securities Laws. Under Bankruptcy Code Section 1145, the issuance of Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities. If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

(ii) Quarterly Reports. The Trustee shall have no obligation with regard to any quarterly fees which may be due to the United States Trustee under 28 U.S.C. § 1930(a)(6), and any obligation therefor shall remain that of the Debtors.

9.03 Organization. This Trust Agreement is not intended to create and shall not be interpreted as creating an association, corporation, partnership or joint venture of any kind; it is intended as a trust, to be governed and construed in all respects as a trust.

9. 04 Liabilities of the Debtors. All obligations of the Debtors hereunder shall be joint and several.

9.05 Books and Records. The Debtors shall give reasonable notice to the Trustee before destroying any material records or files relating to (i) the Causes of Action available to the Trustee, the Trust, the Allowed Unsecured Claims or Trust Assets.

9.06 Amendment and Waiver. Any substantive provision of this Trust Agreement may be amended or waived with the approval of the majority of holders of Trust Interests. Technical amendments to this Trust Agreement may be made, as necessary to clarity this Trust Agreement or enable the Trustee to effectuate the terms of this Trust Agreement, with the consent of the Trustee.

9.07 Assignment. Except as provided herein, the obligations, duties and/or rights of the Trustee

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 92 of 99

under this Trust Agreement shall not be assignable, voluntarily, involuntarily or by operation of law, and any such assignment shall be void. All covenants and agreements contained herein shall be binding upon and are personal to the Trustee and shall inure to the benefit of the Trustee and any Successor Trustee in the same manner.

9.08 Laws as to Construction. This Trust Agreement shall be governed and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of law.

9.09 Entire Trust Agreement. This Trust Agreement, together with the related instruments expressly referred to herein, constitutes the entire agreement of the parties, and all such agreements and the Plan shall be construed as integrated and complementary of each other and intended to carry out the terms of the Plan.

9.10 Severability. If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.11 Trustee Acts for the Trust. To the extent this Trust Agreement describes or references a power, authority, right or prerogative available to or of the Trust, this Trust Agreement shall be interpreted as providing to the Trustee such power, authority, right or prerogative and authorizing (though not requiring) the Trustee to use, enforce and otherwise employ such power, authority, right or prerogative, in the Trustee's absolute discretion, for the benefit of the Beneficiaries, but subject to the other terms of this Trust Agreement.

9.12 No Conflict. Each of the Debtors and the Beneficiaries hereby recognizes and acknowledges that (i) the Trustee, (ii) any officer, member, agent or other principal of a subsidiary of or assignee of the Trust, and/or (iii) any professional retained by the Trust or a subsidiary or assignee thereof may have served as a professional in any of the Chapter 11 Cases. Each of the Debtors and the Beneficiaries hereby waives any conflict which may exist or result from the circumstances described herein above.

9.13 Notices. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited by certified mail, postage prepaid, in a post office or letter box addressed to the Person for whom such notice is intended:

> For the Trustee:
> Michael G. Kasolas
> P.O. Box 26650
> San Francisco, CA 94126
> Phone (415) 504-1926
> Email: kasolas@7trustee.net

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 93 of 99

For the Debtors (or any of them):

Katten Muchin Rosenman LLP
Attn: Jessica M. Mickelsen, Esq.
2029 Centry Park E 26th Fl.
Los Angeles, CA 90067-3012
Email: jessica.mickelsen@kattenlaw.com


For the Committee:

Baker & Hostetler LLP
Attn: Ashley McDow, Esq.
11601 Wilshire Blvd. #1400
Los Angeles, CA 90025-0509
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com


For the Trust Interest:

To the name and address set forth on the Trust Interest Register
maintained by the Trustee with a copy to the Debtors and the
Committee at the addresses referenced above.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

605950161.3

Case: 14-30725     Doc# 316     Filed: 02/25/15     Entered: 02/25/15 20:45:48     Page 94 of
99

IN WITNESS **WHEREOF,** the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

AGREED AND ACCEPTED BY THE TRUSTEE, MICHAEL G. KASOLAS:

Date: _____          _____
                                                                Michael G. Kasolas

AGREED AND ACCEPTED BY COUNSEL FOR HASHFAST, LLC
AND HASHFAST TECHNOLOGIES, LLC:

                                                                KATTEN MUCHIN ROSENMAN LLP

Date: _____          _____
                                                                Jessica M. Mickelsen, Esq.

AGREED AND ACCEPTED BY COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF HASHFAST TECHNOLOGIES, LLC:

                                                                BAKER & HOSTETLER, LLP

Date: _____
                                                                Ashley McDow, Esq.

AGREED AND ACCEPTED BY
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF HASHFAST TECHNOLOGIES, LLC
and its Members, as follows:

Hamilton Hee
761 Irwindale Ave.
Las Vegas, NV 89123

By:_____

Its:_____          Dated:_____

Sistemas Operativos Sanitarios ca
Calle 35 entre Av. 2 y 3 #2-34

605950161.3

Hamilton Hee
761 Irwindale Ave.
Las Vegas, NV 89123

By:_____

Its:_____          Dated:_____

Merida, Venezuela 5101
Attn: Guido Ochoa

By:_____

Its:_____          Dated:_____


Uniquify, Inc.
2030 Fortune Drive #200
San Jose, CA 95131
Attn: Robert Smith

By:_____          Dated:_____


Antony Vo
319 S. Mitchell St.
Bloomington, IN 47401

By:_____

Its:_____          Dated:_____


Koi Systems Ltd.
1191 Center Point Drive
Suite A
Henderson, NV 890074
Attn: Robert Edgeworth

By:_____

Its:_____          Dated:_____


Digimex Ltd.
Bel Air on the Peak, Phase 4
Tower 7, Unit 19A
Pok Fu Lam, Hong Kong
Attn: Willem van Rooyen

605950161.3
Case: 14-30725    Doc# 316    Filed: 02/25/15    Entered: 02/25/15 20:45:48    Page 96 of
99

Uniquify, Inc.
2030 Fortune Drive #200
San Jose, CA 95131
Attn: Robert Smith

By:_____          Dated:_____

By:_____

Its:_____          Dated:_____

Peter Morici
1430 Patapsco St.
Baltimore, MD 21230

By:_____

Its:_____          Dated:_____

605950161.3

# Exhibit "C"

In re Hashfast
Liquidation Analysis

| | Chapter 11 | | Chapter 7 | |
|---|---|---|---|---|
| | High (1) | Low | High | Low |
| **Total Assets:** | | | | |
| Estimated cash on hand as of the Effective Date (2) | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 |
| Estimated good will and going concern value of the company | $ 750,000.00 | $ 750,000.00 | $ 750,000.00 | $ 750,000.00 |
| Litigation Proceeds (3) | $ 10,000,000.00 | $ 2,000,000.00 | $ 10,000,000.00 | $ 2,000,000.00 |
| **Total Available Assets** | $ 10,850,000.00 | $ 2,850,000.00 | $ 10,850,000.00 | $ 2,850,000.00 |
| **Less:** | | | | |
| Estimated Chapter 7 Trustee fees and expenses (4) | | | $ (548,108.09) | $ (308,750.00) |
| Estimated Chapter 11 administrative expenses (4) (5) | $ (1,130,000.00) | $ (1,130,000.00) | $ (1,150,000.00) | $ (1,150,000.00) |
| HashFast Creditor's Trust administrative expenses | $ (344,858.09) | $ (105,500.00) | | |
| Proceeds available for distribution to unsecured creditors - Chapter 7 | | | $ 9,151,891.91 | $ 1,391,250.00 |
| Proceeds available for distribution to unsecured creditors - Chapter 11 | $ 9,375,141.91 | $ 1,614,500.00 | | |
| **Percentage recovery to unsecured creditors (Chapter 11 basis)** | 20.76% | 3.58% | | |
| **Percentage recovery to unsecured creditors (Chapter 7 basis)** | | | 20.27% | 3.08% |
| | | | | |
| **Priority Claims/ Unsecured Claims** | | | | |
| Priority Claims | $ (214,295.55) | $ (214,295.55) | $ (214,295.55) | $ (214,295.55) |
| General unsecured allowed claims (6) | $ (44,934,595.74) | $ (44,934,595.74) | $ (44,934,595.74) | $ (44,934,595.74) |

(1) The values provided are the estimated possible recoveries from the administration of assets identified. The "high" values account for the full value of the assets. The "low" values account for the liquidation value of the assets.

(2) The amount is based on cash on hand as provided in December 2014 Monthly Operating Report (Dkt. No. 284).

(3) The amount included in the liquidation analysis is an estimate of potential recovery. The amount may be greater or less than the $10,000,000 estimate. The exact amount recovered does not affect the liquidation analysis, as any decrease or increase would be the same under Chapter 7 or Chapter 11.

(4) The amounts exclude the estimated amounts that will be incurred to pay the professionals for pursuing the Litigation, as such expenses are likely equal under a Chapter 7 and Chapter 11 analysis. The liquidation analysis attached herewith, however, provides estimates of what these expenses may be.

(5) These amounts are only estimates and are subject to change. The unpaid amount of allowed final fees and costs may be higher or lower. Also, in the event the Court approves and the Debtor pays any or all of Baker's fees and expenses pre-confirmation, the amount herein stated will decrease by the amount paid, which will result in a corresponding decrease in the amount of cash on hand on the Effective Date.

(6) The Unsecured Claims asserted against the Estate total approximately $40,750,000.00. The Committee believes more than $21,500,000.00 of the Unsecured Claims asserted against the Estate are unenforceable. However, such amounts are included herein to account for the possibility of paying some or all of such claims. If such claims are disallowed, distributions to creditors may increase substantially.