KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor-In-Possession | Case No. 14-30866 |
| | Chapter 11 |
| ☒ Affects HASHFAST LLC, a Delaware limited liability company, | **DECLARATION OF PETER KRAVITZ IN SUPPORT OF DEBTORS' MOTION FOR APPROVAL OF COMPROMISE WITH HYPERTECHNOLOGIE CIARA, INC.** |
| Debtor and Debtor-In-Possession | |
| | Date:<br>Time:<br>Place: 235 Pine St., 19th Floor<br>San Francisco, CA 94104<br>Judge: Honorable Dennis Montali |

I, Peter Kravitz, hereby declare under penalty of perjury,

1. I am the Chief Restructuring Officer ("CRO") of HashFast Technologies LLC ("HashFast Technologies") and HashFast LLC ("HashFast" and, together with HashFast Technologies, the "Debtors").

1

2. This Declaration is submitted in connection with the Debtors' Motion for Approval of Compromise Relating to Hypertechnologie Ciara, Inc. (the "Motion"). I make this declaration based on my own personal knowledge of the facts. If called upon, I would testify as set forth herein.

3. I was retained as the Debtors' CRO on August 15, 2014.

4. The Debtors design, develop, manufacture and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining."

5. Prior to the Petition Date, on September 23, 2013, HashFast Technologies LLC and Ciara entered into that certain Supply Agreement (the "Supply Agreement"), pursuant to which Ciara provided certain goods to HashFast Technologies LLC, which goods have remained in Ciara's possession since prior to the Petition Date (the "Stored Inventory").

6. The Debtors bought the Stored Inventory as a part of its Bitcoin mining business, which remains ongoing.

7. Under the Supply Agreement and applicable local law, Ciara has asserted that it is lawfully entitled to storage costs from the Debtors on account of the Stored Inventory that exceed $200,000 (the "Storage Fees"). The Debtors deny any liability to Ciara in connection with the Stored Inventory and/or the Storage Fees.

8. After extensive settlement discussions between the Debtors and Ciara, the parties entered into that certain Settlement Agreement (the "Settlement Agreement"), dated November 5, 2014, by which they propose to resolve and settlement their disputes regarding the Stored Inventory and Storage Fees, without resorting to litigation. An executed copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

9. But for the Settlement Agreement, the Debtors otherwise would have filed an adversary proceeding to obtain the Stored Inventory.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: December 5, 2014

_____
Peter Kravitz
Chief Restructuring Officer of HashFast
Technologies LLC and HashFast LLC

# EXHIBIT 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "*Agreement*") is hereby entered into on November 5, 2014, by and between HashFast Technologies LLC (the "*Debtor*") and Hypertechnologie Ciara Inc. ("*Ciara*"). The Debtor and Ciara (together, the "*Parties*") hereby agree as follows.

## RECITALS

**WHEREAS**, on May 9, 2014 (the "*Petition Date*"), certain of the Debtor's creditors filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California (the "*Bankruptcy Court*"). On June 3, 2014, the Bankruptcy Court entered an order converting the bankruptcy case to one under chapter 11 of the Bankruptcy Code;

**WHEREAS**, prior to the Petition Date, on September 23, 2013, the Debtor and Ciara entered into that certain Supply Agreement (the "*Supply Agreement*"), pursuant to which Ciara provides certain goods to HashFast, which goods have remained in Ciara's possession since prior to the Petition Date (the "*Stored Inventory*");

**WHEREAS**, Ciara asserts that it is lawfully entitled to charge storage costs to the Debtor on account of the Stored Inventory ("*Storage Fees*");

WHEREAS, the Debtor has denied any liability to Ciara in connection with the Stored Inventory and/or the Storage Fees;

**WHEREAS**, after discussion and extensive settlement discussions between the Parties, the Parties desire to avoid the expense and uncertainty of litigation in connection with the Adversary Proceeding;

**WHEREAS**, the Parties wish to resolve and settle their disputes amicably, without having to resort to any litigation.

**NOW, THEREFORE**, in consideration of the mutual covenants, representations, warranties and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. <u>Incorporation of Recitals</u>. The Recitals set forth above are incorporated herein.

2. <u>Payment by Debtor</u>. Within five (5) business days after the Bankruptcy Court enters an order approving this Agreement and the Parties satisfy all conditions and contingencies to this Agreement as set forth in herein (whichever is later), the Debtor shall pay to Ciara USD$30,000 (the "*Settlement Amount*"). The Settlement Amount shall be paid by wire transfer using wire instructions provided to the Debtor by Ciara without deduction or reduction.

`Error! Unknown document property name.`

3.      Transport of Stored Inventory. As soon as practicable after the execution of this Agreement, the Debtor shall, at its sole cost, and liability cause to be removed the Stored Inventory from Ciara's possession. Ciara shall make available to the Debtors the Stored Inventory.

4.      Limited Release. Upon full payment of the Settlement Amount required by paragraph 2 herein and the performance of the obligations set forth in paragraph 3 herein, each Party hereto, on behalf of itself and its respective agents, representatives, assigns, employees, officers, directors, attorneys, affiliates, subsidiaries, successors, predecessors, and insurers releases and forever discharges each other Party and its respective agents, representatives, employees, officers, directors, attorneys, subsidiaries, affiliates, successors, predecessors, insurers and assigns from liability from any and all claims, controversies, actions, causes of action, demands, debts, liens, contracts, agreements, promises, representations, torts, damages, costs, losses, attorneys' fees, moneys due on account, obligations, judgments or liabilities of any kind whatsoever in law or equity, arising out of agreement or imposed by statute, common law or otherwise, from the beginning of time to the date this Agreement is signed, whether or not known now, anticipated, unanticipated, suspected or claimed, fixed or contingent, whether yet accrued or not and whether damage has resulted from such or not, which arise out of, or are otherwise related solely to the Stored Inventory and/or the Storage Fees. The releases in this section 4 are not general releases, but are limited exclusively to Ciara's retention of the Stored Inventory and/or the Storage Fees. All other claims, rights, and defenses the Parties may have with respect to the Supply Agreement or any other matter are expressly reserved; *provided, however*, that upon removal of the Stored Inventory from Ciara's premises, Ciara releases and forever discharges any liens, charges, or encumbrances in and to such Stored Inventory.

5.      Entire Agreement. This Agreement constitutes the entire agreement between the Parties and supercedes all other prior agreements and understandings, both written and oral, and may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever as to any Party, except by a writing duly executed by each Party.

6.      Approval. Each Party represents and warrants that it has taken all requisite action to approve this Agreement and, upon due execution by all Parties, this Agreement shall be a valid and binding obligation of such Party enforceable in accordance with its terms. Each Party that executes this Agreement on behalf of a given Party represents and warrants that he or she is lawfully authorized to do so on behalf of such Party. All representations and warranties contained herein shall survive the execution and delivery of this Agreement.

7.      Further Assurances. The Parties will, at their own cost and expense, cause to be promptly and duly taken, executed, acknowledged and delivered all such further acts, documents and assurances as may be necessary or as the Parties may reasonably request in order to carry out the intent and purposes of this Agreement and the transactions contemplated herein.

8.      Execution of Counterparts. This Agreement may be executed in any number of identical counterparts, by the respective Parties, each of which, for all purposes, shall be deemed to be an original and all of which shall constitute, collectively, one Agreement. This Agreement may be executed via facsimile, and any facsimile execution shall be fully effective as an original.

Error! Unknown document property name.

Case: 14-30725    Doc# 328-1    Filed: 02/27/15    Entered: 02/27/15 13:06:35    Page 6 of 8

9. No Inducement. This Agreement is the result of arms-length negotiations among the Parties. The Parties hereby represent and warrant that they have not been induced to agree to and execute this Agreement by any statement, act or representation of any kind or character by anyone, except as contained herein. The Parties further represent that each of them has fully reviewed this Agreement and has full knowledge of its terms, and each executes this Agreement of its own choice and free will, after having received the advice of their respective attorneys.

10. Construction. The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against any Party.

11. Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, legal representatives, successors and assigns.

12. Court Approval and Jurisdiction. The Parties agree that this Agreement is subject to and conditioned upon the approval of the compromise reflected herein by the Bankruptcy Court. The Parties further agree that this Agreement shall be construed and governed by the applicable federal law and/or under the laws of the State of California, irrespective of its choice of law rules, and the Bankruptcy Court shall have exclusive jurisdiction over this Agreement and the Parties.

13. Costs and Expenses. If any Party makes any claim or demand or commences any action, lawsuit, or other legal proceeding in violation of this Agreement, such Party shall pay all costs, expenses, and attorneys' fees incurred by the non-breaching Party in defending such claim, demand, action, lawsuit or other proceeding. Notwithstanding the foregoing, each party shall be responsible for their own legal fees associated with this settlement.

14. Notices. Any notice or communication required or permitted to be given hereunder will be in writing and addressed to the respective Party (and its counsel) set forth below its signature hereunder, or to such other address as the Party may designate in writing.

15. Headings. The titles, captions or headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement.

**[remainder of page intentionally left blank; signature page follows]**

3

*Error! Unknown document property name.*

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the date first written above.

**HashFast Technologies LLC**

By: _____
Its: _____ Peter Kravitz - CRO

with a copy to

Peter A. Siddiqui
Katten Muchin Rosenman LLP
525 W. Monroe
Chicago, IL 606611
Telephone: (312) 902-5455
peter.siddiqui@kattenlaw.com

**Hypertechnologie Ciara Inc.**

By: _Eliot Aladoot_
Its: _EVP Operations_

With a copy to

Neil G. Oberman., LL.M.
Spiegel Sohmer
1255 Peel, Suite 1000
Montreal, Quebec H3B 2T9
Canada
Telephone: (514) 875-5310
noberman@spiegelsohmer.com