CHRISTOPHER D. SULLIVAN (148083)
GREGORY A. ROUGEAU (194437)
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200
Facsimile: (415) 263-9200
e-mail: csullivan@diamondmccarthy.com
        grougeau@diamondmccarthy.com

Counsel for Creditor
LIQUIDBITS CORPORATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company,<br><br>    Debtor and Debtor-In-Possession.<br>_____<br>☒Affects HASHFAST LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor-In-Possession. | Case No. 14-30725<br><br>(Substantively consolidated with *In re HashFast LLC*, Case No. 14-30866)<br><br>Chapter 11<br><br>**OBJECTION OF LIQUIDBITS CORPORATION TO CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT FOR HASHFAST TECHNOLOGIES, LLC AND HASHFAST, LLC**<br><br>Date: March 13, 2015<br>Time: 11:00 a.m.<br>Place: Courtroom 22<br>Judge: Hon. Dennis Montali |

LIQUIDBITS CORPORATION ("Liquidbits") hereby respectfully objects to the conditional approval of the "Consolidated Plan of Liquidation and Disclosure Statement For HashFast Technologies, LLC and HashFast, LLC, Dated February 25, 2015" (the "Disclosure

Statement") filed by the Official Committee of Unsecured Creditors (the "Committee"), as follows:

**INTRODUCTION**

While the Committee has made some effort to ameliorate the glaring deficiencies of its two previously filed Disclosure Statements in this case, its latest contortion remains deficient. The Court should not only not approve the Disclosure Statement, it should convert the case to a case under Chapter 7.[1]

Even with the changes the Committee has made at the insistence of the Court and creditors, the Committee's most recent, February 25, 2015 Disclosure Statement hardly provides creditors and parties in interest with information of the type sufficient for a "hypothetical reasonable investor … to make an informed judgment about the plan," as required by Section 1125(a) of the Bankruptcy Code. First, the Committee's summation of existing administrative claims is an effort in nondisclosure, not full disclosure: while the Committee has summarized some administrative claims in Section VIII(B) of the Disclosure Statement, it had made the decision- improperly- to omit that Liquidbits retains a Chapter 11 administrative claim against the estate in the amount of $88,726.75. Second, the Committee's latest Disclosure Statement continues to fail to adequately describe pending or prospective, postconfirmation litigation. Further, the Committee has failed to fully describe what unsecured creditors will receive on account of the liquidation proposed in the Plan, and its analysis of scheduled debts and filed claims is wrong on its face. The Liquidation Analysis included as part of the Disclosure Statement is nonsense. Additionally, the Disclosure Statement is wholly lacking in summarizing the risk factors to creditors, and addressing whether the Plan described by the Disclosure Statement is really feasible. Simply put, although more detail has been added, the Committee's latest Disclosure Statement suffers from the same infirmities as its previous efforts.

---

[1] Through a separate pleading, filed concurrently herewith, Liquidbits is joining the presently pending motion filed by the Office of the United States Trustee to convert this case from Chapter 11 to a case under Chapter 7.

-2-
OBJECTION TO DISCLOSURE STATEMENT

Case: 14-30725    Doc# 337    Filed: 03/06/15    Entered: 03/06/15 16:28:26    Page 2 of 10

With the lack of any meaningful data upon which unsecured creditors may make informed decisions as to acceptance or rejection of the Plan, and the apparent reluctance of the Committee to concede that Chapter 11 will likely net unsecured creditors nothing at all, the Court should put a stop to the Committee's quixotic- and for the creditors, costly- exercise to liquidate the Debtors' estates through Chapter 11. The Committees' Disclosure Statement remains deficient; the Disclosure Statement describes a Plan that is unconfirmable; and the best interest of creditors would be served through conversion.

## STATEMENT OF FACTS

### I. PROCEDURAL POSTURE OF THESE CHAPTER 11 CASES.

The procedural posture of this Chapter 11 case has been described in detail in Liquidbits' previously filed Objection To Consolidated Plan Of Liquidation And Disclosure Statement For HashFast, Technologies, LLC And HashFast, LLC (Docket No. 303) (the "February 10 Objection"). For the sake of convenience, Liquidbits summarizes, below, what has occurred since February 10, 2015.

In the February 10 Objection, Liquidbits observed, correctly, that the filings made by the Committee and the Debtors over the preceding months indicated that the Debtors' estates are indisputably administratively insolvent. Liquidbits also observed that the administrative insolvency had only been compounded by the Committee's decision to pursue a plan of liquidation, rather than simple conversion to Chapter 7. While the Committee claimed to have spent substantial time investigating potential claims, from the perspective of Liquidbits, such claims (at best) remained shrouded in mystery. The state of affairs has only diminished since February 10.

When the Court considered the Committee's initial Disclosure Statement (filed February 2, 2015), the information available to the Court and creditors indicated that only $78,603 in cash on hand remained in the estates. When the Committee filed its latest Disclosure Statement, on February 25, 2015, it somehow estimated that approximately $100,000 remained in the estates. But the Debtors' latest operating report (Docket No. 336), for January 2015, filed on March 2, 2015 but signed by Peter Kravitz the very same day (February 25, 2015) that the Committee

estimated cash on hand was $100,000, indicates that only $290 remained in the estates as of that date. Presumably, that balance has eroded. As with the previously submitted Disclosure Statements, the Committee believes that the estates assets also include litigation valued at $10,000,000, and other "tangible and intangible" assets valued at $750,000 (Disclosure Statement, Section VI, p. 12, ll. 1-4), though the latest MOR has not values for any assets other than the $290 in cash, and, as discussed in greater detail below, creditors have little information as to how those assets were valued in the Disclosure Statement.

With less than $290 now remaining in in the estate, the Committee's decision to pursue Chapter 11 liquidation, rather than Chapter 7, appears even more misguided than before. Estimated Chapter 11 expenses, according to the Committee's Disclosure Statement, will be $1,150,000 on the Plan's "Effective Date," and that sum fails to consider the $88,726.25 administrative claim recently submitted by Liquidbits (and, given that there is only $290 in the estate, further amounts that may come due postpetition). Against the $290 in cash, and in addition to the $1,238,726.25 in Chapter 11 administrative claims, there is $29,973.69 in "non-voting" priority claims that must be paid on the "Effective Date" of the plan without any available funds, there is $171,059.68 in "voting" priority claims, and, of course, $44,934,595.74 in general unsecured claims.

## II. DESCRIPTION OF THE DISCLOSURE STATEMENT AND PROPOSED PLAN.

If there were any doubt as to whether this case should be converted previously, the Committee, through its latest Disclosure Statement, has removed that doubt. The Committee's latest Disclosure Statement not only fails to provide adequate information, it describes a Plan that cannot be confirmed, on its face.

### A. Creation of the "Hashfast Creditors Trust."

The Committee proposes the creation of a "Hashfast Creditors Trust" into which all estate assets, following payment of professional fees and other administrative expenses, "shall pass." (Disclosure Statement, p. 1, ll. 21-24). The Committee has attached the trust agreement for that trust to its Disclosure Statement, as Exhibit "B." The assets that "shall pass" into the "Hashfast Creditors Trust" will include, presumably, $290 in cash (far less than the $100,000 that the

Committee estimated would be available in the Disclosure Statement), $10,000,000 in litigation claims (discussed below), and $750,000 in "tangible and intangible assets" that are simply not described at all, either by the Committee in its Disclosure Statement or the Debtors themselves in their latest operating reports.

### B. Description of Litigation.

The Committee asserts that the "Hashfast Trustee" shall administer the "Trust Assets," which essentially means prosecution of litigation. The Committee estimates that the "value" of the estates' litigation claims is $10,000,000. (Id., p. 12, ll. 1-4).

Exhibit "A" to the Disclosure Statement is a spreadsheet which summarizes the litigation retained by the estate. Exhibit "A" demonstrates that the Committee's "valuation" of the litigation as $10,000,000 is grossly inaccurate on its face. Exhibit "A" discloses that the face value of identified litigation is $9,079,371.52, that the costs of litigation will be $1,630,050.06, and that the potential net recovery to the estate is $7,449,321.46. That is a significant difference from $10,000,000.

The Committee's erroneous "valuation" of the litigation is particularly troublesome in that it does not take into account that the various defendants identified in Exhibit "A" may either have meritorious defenses to the identified claims or may not be able to answer for any judgment. Even though the $7,449,321.46 recovery figure on Exhibit "A" varies, by a magnitude of over $2,500,000, from what the Committee has estimated, for months, is the likely return on estate litigation, it represents the "best case" scenario. Any real valuation of the estates' litigation is less than that.

### C. Treatment of Claims.

The treatment of the various voting and nonvoting classes of claims in the Disclosure Statement is also imprecise.

With regard to administrative claims, the Disclosure Statement discloses that approximately $1,150,000 will be due on the Plan's "Effective Date." That amount does not include taxes, United States Trustee fees, and filing fees that may come due. And that amount does not include Liquidbits' $88,726.75 administrative claim. $40,000 of the administrative

claims is a "success fee" to be paid to Province Capital, payable upon Plan confirmation. The attorneys for the Debtor and Committee have apparently agreed to "accept payment" of their administrative claims "over time if necessary to confirm the Plan."

Notwithstanding that the estate professionals will agree to accept payment over time, the Disclosure Statement ignores that there are insufficient funds to pay Chapter 11 administrative expenses under any scenario, on the "Effective Date" or even after that. There is only $290 in the estates at this point. The estates have no real ability to pay Chapter 11 administrative claims.

To make matters worse, the Disclosure Statement states that there are at least $29,973.69 in "non-voting" priority claims that must be paid on the "Effective Date" of the Plan. As with Chapter 11 administrative claims, there is no discussion- none- as to how the Committee proposes to bridge the gap between the $290 of cash on hand, and the $29,973.69 that must be paid.

The Disclosure Statement also sets forth that there is a total of $184,321.86 in "voting" priority claims. The Committee proposes to pay the "voting" priority claimants a "Pro Rata share of the first $30,000 distributed by the Hashfast Creditor Trust" and will receive distributions thereafter until paid in full, pursuant to the Hashfast Creditor Trust. (Disclosure Statement, Section IX (B), p. 17, ll. 6-10).

With regard to unsecured claims, the Committee states that there are $44,934,595.74 in general unsecured claims. General unsecured creditors are supposed to receive periodic, *pro rata* distributions of "Excess Cash"- defined as "Cash in the Hashfast Creditors Trust remaining after creation of the Trust Reserve and payment of Allowed Administrative Claims, Allowed Priority Claims, and administrative expenses of the Hashfast Creditor Trust"- at the discretion of the "Hashfast Trustee." (Disclosure Statement, p. 40, ll. 10-18). When the "Hashfast Creditors Trust" is terminated, a final distribution shall be made from residual trust assets.

The Disclosure Statement fails to provide an estimate- or even a range of estimates- as to what "voting" priority claimants or general unsecured might expect as a return on their allowed claims.

**D. Liquidation Analysis.**

The Committee asserts that the "Best Interest of Creditors Test" is met in these cases because the Plan involves a "controlled liquidation" (as opposed to an uncontrolled one) and, with the appointment of the "Hashfast Trustee," costs of administration will be reduced.

In ostensible support for that proposition, the Disclosure Statement includes a "Liquidation Analysis" as Exhibit "C." In that analysis, the Committee estimates that the percentage recovery to unsecured creditors through the "controlled liquidation" will be between 20.76% and 3.58%, versus a distribution to unsecured creditors of between 20.27% and 3.08% in a Chapter 7 case. The analysis presumes that the fees and costs incurred by professionals retained by the "Hashfast Trustee" and a Chapter 7 Trustee will be precisely the same. It therefore minimizes that the "percentage recovery" in the analysis does not provide unsecured creditors with any real idea as to what they might expect to recover in either a Chapter 11, or a Chapter 7.

Apparently, from the Committee's perspective, the sole difference between Chapter 11 and Chapter 7 liquidation is that, under the Plan, Michael Kasolas is willing to take less to be to be the Hashfast Creditor Trustee than a Chapter 7 Trustee would receive. Even then, the difference, in terms of potential percentage distributions to creditors, is only 0.5%.

## LEGAL ARGUMENT

**I. STANDARDS APPLICABLE TO APPROVAL OF DISCLOSURE STATEMENTS.**

Meaningful and accurate disclosure is at the heart of the Chapter 11 process. *Oneida Motor Freight, Inc.* v. *United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *H & L Dev., Inc.* v. *Arvida/JMB Partners* (*In re H & L Dev., Inc.*), 178 B.R. 71, 74 (Bankr. E.D. Pa. 1994). The Disclosure Statement is the Bankruptcy Code's tool for providing interested parties with information to decide how to vote on, and information to decide whether to object to, the Plan. *See In re California Fidelity, Inc.*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996). Effective disclosure requires the dissemination of "adequate information," *Knupfer* v. *Wolfberg* (*In re Wolfberg*), 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000), defined under the Bankruptcy Code to include:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the

> condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

What constitutes adequate information varies from case to case. *Texas Extrusion Corp.* v. *Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 560 (Bankr. C.D. Cal. 1988). The determination of what is adequate information is "subjective" and is "largely within the discretion of the bankruptcy court." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (9th Cir. B.A.P.) (internal quotations and citations omitted); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 563 (Bankr. C.D. Cal. 1988). As a general rule, "[t]he [plan] proponent should be biased towards more disclosure than less." *Official Comm. of Unsecured Creditors* v. *Michelson (In re Michelson)*, 141 B.R. 715, 720 (Bankr. E.D. Cal. 1992).

Measured against the foregoing principles, the Committee's Disclosure Statement is seriously lacking. It should not be approved. It fails to provide adequate information, and what little information it has provided is simply not accurate.

## II. THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION, AND CANNOT BE APPROVED, EVEN ON A CONDITIONAL BASIS.

### A. The Disclosure Statement Contains Insufficient Information Concerning Administrative Claims.

As set forth *supra*, the Disclosure Statement fails to properly describe Chapter 11 administrative claims. The Committee acknowledges that Liquidbits has requested allowance of an administrative claim, but has chosen not to include it because the Committee "intends" to oppose Liquidbits' application for allowance of the administrative claim. The Committee cannot "pick and choose" which Chapter 11 administrative expenses must be disclosed in the Disclosure Statement. No objection to Liquidbits' application for allowance of an administrative claim has been filed (though objections to allowance of the Committee's fees have been filed, and the

Committee has seen fit to include those fees); until Liquidbits' application is formally disputed or disallowed, its request for allowance of an administrative expense must be accounted for.

**B.    The Estates' Assets, Including Postconfirmation Litigation, Are Insufficiently Described Throughout The Disclosure Statement.**

Also militating against approval of the Disclosure Statement is the Committee's inability to accurately describe estate assets.

First and foremost, the Committee must disclose to creditors that there is only $290 remaining in the estate, not $100,000.

Second, the Committee's description of contemplated litigation is simply wrong. Throughout the Disclosure Statement, the Committee has stated that the value of litigation claims is $10,000,000; Exhibit "A" completely undercuts that assertion. The value of the estates' potential litigation claims is millions of dollars' less than what the Committee asserts in the Disclosure Statement, even under the best of circumstances.

Third, the Committee states that there are other "tangible and intangible" assets in the estates, with a valuation of $750,000. No such assets are described in the Debtors' recently filed operating reports, and the Disclosure Statement fails to describe what the assets are, and how they have been valued. More disclosure is necessary.

Creditors have been provided with little information about what might actually be administered through the liquidating Plan, and what has been disclosed is simply wrong. The Committee cannot seriously believe that complies with the requirements of the Bankruptcy Code.

**C.    Risk Factors Have Note Been Described.**

In light of the Committee's failure to describe contemplated litigation with any sort of precision, it is perhaps not surprising that the Disclosure Statement's summary of risk factors is seriously lacking. The impression creditors will receive from the Disclosure Statement is that there is little risk associated with the Plan, and that the Plan, in the words of the Committee, "is not dependent upon success" of postconfirmation litigation. The opposite is true. There are substantial risks to creditors, and, since there is only $290 remaining in the estate, the Plan is *completely* dependent on the litigation. The Committee must say as much.

## III. THE DISCLOSURE STATEMENT DESCRIBES AN UNCONFIRMABLE PLAN.

A plan accompanying a disclosure statement which clearly does not meet the confirmation requirements under § 1129 of the Bankruptcy Code should not proceed to certain defeat at confirmation. Courts may consider "confirmation issues [at a Disclosure Statement hearing] where, as here, . . . the plan is so fatally and obviously flawed that confirmation is impossible." *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) *In re Moorpark Adventure,* 161 B.R. 254 (Bankr. C.D. Cal. 1993). If a plan is not confirmable on its face, proceeding with a full confirmation hearing would be an exercise in futility, which a bankruptcy court could avoid by denying the approval of the proposed disclosure statement. *See*, *e.g.*, *In re Pecht*, 53 B.R. 768, 772 (Bankr. E.D. Va. 1985). The Committee's Plan is unconfirmable.

Putting aside the debatable question of whether the Disclosure Statement and Plan have been proposed in good faith, the Committee's Plan is simply not feasible. There is $290 left in the estate (and even that will be eroded by the time the Court would hold a confirmation hearing); the Plan requires payment of Chapter 11 administrative claims and "non voting" priority claims on the Effective Date. There simply are no funds, and no mechanism to get funds, to make such required distributions. The Plan simply does not work; it cannot be confirmed.

## CONCLUSION

WHEREFORE, Liquidbits respectfully requests that the Court deny approval of the Disclosure Statement. It completely fails to satisfy Section 1125(a)(1), and hardly offers creditors the type of information necessary to make informed decisions. Further, because the Plan described by the Committee is not feasible in any event, Liquidbits requests that the Court immediately convert this case to a case under Chapter 7 of the Bankruptcy Code.

Dated: March 6, 2015                                        DIAMOND McCARTHY LLP


*/s/ Gregory A. Rougeau*
Gregory A. Rougeau
Attorneys for Creditor
LIQUIDBITS CORPORATION