Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859
Email:  amcdow@bakerlaw.com
        mdelaney@bakerlaw.com

Attorneys for the OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES, LLC, a California limited liability company,<br><br>    Debtor and Debtor in Possession.<br><br>x  Affects HASHFAST LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor in Possession. | Lead Case No.: 14-30725 DM<br><br>Jointly Administered and Substantively Consolidated with:<br><br>Case No.: 14-30866 DM<br><br>Chapter 11<br><br>Confirmation Hearing:<br>Date:  May 27, 2015<br>Time:  1:30 p.m.<br>Place:  Courtroom 22<br>         U.S. Bankruptcy Court<br>         235 Pine Street<br>         San Francisco, CA 94104 |

**MEMORANDUM IN SUPPORT OF CONFIRMATION OF THE CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED MARCH 27, 2015**

The Official Committee of Unsecured Creditors (the "Committee") submits this memorandum in support of confirmation of the *Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC, and Hashfast, LLC, dated March 27, 2015* (Doc. No. 344) (the "Plan") and in response to the *United States Trustee's Objection to Committee's Plan of*

*Liquidation* (Doc. No. 361). Also in support of confirmation of the Plan, the Committee submits the declaration of Victor Delaglio (the "Delaglio Declaration"), which is attached hereto.

## I. BACKGROUND

Prior to the involuntary Petition Date (defined below), Hashfast Technologies, LLC ("HFT") was engaged in the manufacture and sale of special purpose computer systems and computer chips designed for processing and analyzing Bitcoin transactional information or "Bitcoin mining." HFT is the wholly-owned subsidiary of Hashfast LLC ("HF"), which owns or otherwise holds the rights to the intellectual property utilized by HFT it its business operations. HF is not engaged in any business endeavor separate and apart from HFT.

On or about May 9, 2014 (the "Petition Date") various petitioning creditors filed an involuntary Chapter 7 petition against HFT in this Court. Thereafter, the HFT bankruptcy case was converted to Chapter 11 and HF filed a voluntary Chapter 11 petition. The HFT and HF bankruptcy cases were substantively consolidated by order of the Court dated September 28, 2014. *See* Doc. No. 202.

On or about July 18, 2014, the Debtors sought approval of a sale of substantially all of the Estate assets to Liquidbits Corporation (the "Liquidbits Sale"), the consideration for which was primarily in the form of a promissory note and potential income to be received if and when the contemplated mining operation was successful (Doc. No. 134). The Committee objected on a number of grounds (Doc. No. 159). Following a hearing, the Court denied the motion to approve the Liquidbits Sale. Thereafter, the Committee and the Debtors worked together to formulate an exit strategy that would provide the bankruptcy estates with the best possible chance of recovery. As part of that goal, the Debtors commenced plans to liquidate certain estate assets to generate funds necessary to complete the manufacture and/or release of valuable products.

On or abou tOctober 23, 2014, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of the Debtors' assets. Although the Court approved the proposed sale procedure, the Debtors were able to sell the inventory in the ordinary course of business prior to the date of the proposed auction. The Debtors, however, proceeded with the sale of certain potential causes of action against Simon Barber, one of the officers of HFT. No other assets

were sold during the auction. The Court approved the sale of those causes of action on or about December 23, 2014.

## II. OVERVIEW OF THE PLAN

By and through the Plan, the Committee proposes the creation of the Hashfast Creditor Trust.[1] Under the Plan, the Debtors' shall utilize available estate assets to pay non-voting Priority Unsecured Claims and certain Allowed Administrative Expense Claims on the Effective Date. All remaining estate assets, consisting primarily of causes of action, shall pass into the Hashfast Creditor Trust free and clear of all Claims or Interests.

The Hashfast Trustee shall liquidate the Trust Assets for the benefit of the Debtors' creditors, and thereafter, distribute the proceeds in accordance with the Plan. The Plan generally provides that distributions from the Hashfast Creditor Trust will be used to satisfy claims in the following order of priority: first, to Holders of Allowed Administrative Claims and administrative expenses of the Hashfast Creditor Trust *pro rata*; second, to Holders of Allowed Priority Claims; third, to Holders of Allowed Unsecured Claims; and fourth, the Holders of Allowed Equity Interests.

## III. THE PLAN COMPLIES WITH ALL OF THE REQUIREMENTS OF SECTION 1129(a).

In order to confirm the Plan, the Court must find by a preponderance of the evidence that both the Plan and the plan proponent, here the Committee, have complied with all of the applicable provisions of the Bankruptcy Code[2] and that the Plan has been proposed in good faith. *See* 11 U.S.C. § 1129; *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994) *aff'd on other grounds*, 85 F.3d 1415 (9th Cir. 1996). As set forth below, the Plan satisfies all the applicable statutory requirements of Section 1129, and therefore, may be confirmed.

///

---

[1] Capitalized terms used in this Memorandum not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[2] All references herein to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq.*

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

### A. Plan Compliance - Section 1129(a)(1).

Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code. The most significant of these provisions are set forth in Sections 1122 and 1123.

The Plan satisfies Section 1122. That section provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests in such class." The process of classifying claims cannot be used to gerrymander classes in order to create an impaired, accepting class of claims. *See Montclair Retail Ctr., L.P. v. Bank of the West (In re Montclair Retail Ctr., L.P.)*, 177 B.R. 663, 665066 (9th Cir. BAP 1995). Section VII of the Plan classifies claims and interests into three (3) mutually-exclusive classes: priority unsecured claims (Class 1); general unsecured claims (Class 2); and equity interests (Class 3). The Plan classifies claims and interest in particular classes based on their similarity to other claims or interests in that case, and accordingly, the Plan complies with Section 1122.

The Plan also satisfies Section 1123. Among other things, that section requires that the plan: (1) designate classes of claims and interests; (2) identify classes of claims or interests that are not impaired under the plan; (3) identify classes of claims or interests that are impaired under the plan; (4) provide the same treatment for each claim or interest of a particular class; and (5) provide adequate means for the Plan's execution. The Plan satisfies each of these requirements: Section VII of the Plan classifies all claims and interests; Section XI discloses that Classes 1 and 2 are impaired under the Plan and that Class 3 is unimpaired and describes the uniform treatment for each claim or interest in a particular class; and Section XII describes the means of implementation of the Plan.

The UST argues that the Plan fails to comply with §§ 1129(a)(1) and (a)(3) due to the inclusion of exculpation clauses in the Hashfast Creditor Trust agreement.[3] Section 1129(a)(1) provides that a court may only confirm a plan that "complies with the application provisions of

---

[3] Although section 1129(a)(3) is addressed separately *infra*, the Committee addresses both of these arguments in this section due to the related subject matter of the objection—namely, the exculpation and indemnification provisions of the Hashfast Creditor Trust.

this title." 11 U.S.C. § 1129(a)(1). Similarly, section 1129(a)(3) provides that a court may only confirm a plan that "has been proposed in good faith and [is] not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

As to the argument that the Plan fails to comply with section 1129(a)(1), it is unclear which provision of the Bankruptcy Code the UST believes the Plan violates. The only section of the Bankruptcy Code cited by the UST is section 1125(e). Section 1125(e), however, pertains to protections provided to persons soliciting the acceptance or rejection of a plan in good faith, which have no bearing on the exculpation clauses in the Hashfast Creditor Trust agreement— especially since the Hashfast Trustee did not solicit votes on the Plan. 11 U.S.C. § 1125(e). As the UST has failed to provide any cognizable basis for the contention that the exculpation clause violates any provision of the Bankruptcy Code, the Committee requests that the Court overrule this objection.

As to the argument that the Plan fails to comply with section 1129(a)(3), the UST argues that the Plan must be denied confirmation because limitations to liability are disfavored in the Ninth Circuit. *See* Doc. No. 361, at p. 9. Section 1129(a)(3), however, requires that the provision be "forbidden by law" or proposed in bad faith. The UST fails to provide any support for the contention that the subject clauses are "forbidden by law"; rather, the UST merely argues that they are disfavored. Viewing such clauses with disfavor, however, is substantially different from finding the clauses "forbidden by law." Furthermore, the UST has failed to provide any basis to conclude that the Plan or Hashfast Trust was proposed in bad faith. To the contrary, the Committee proposed the Plan in a good faith effort to obtain the greatest distribution for creditors possible. The protections provided in the Hashfast Trust are standard limitations on liability for trustees of post-confirmation liquidating trustee.

Additionally, while the UST is certainly at liberty to express its opinion regarding the liability limitations, it cannot be understated that the creditors have overwhelmingly voted in favor of confirmation and liquidation through the Hashfast Creditor Trust.

As the exculpation and indemnification provisions do not violate any provision of the Bankruptcy Code, are not legally prohibited, and are deemed acceptable by the only parties

potentially affected by the scope of such provisions (i.e., the Creditors), the Committee respectfully requests that the Court overrule the UST's objection.

### B. Proponent Compliance - Section 1129(a)(2).

Section 1129(a)(2) requires that the plan proponents comply with the applicable provisions of the Bankruptcy Code. The principal purpose of Section 1129(a)(2)'s requirements is to ensure that plan proponents comply with the Bankruptcy Code's requirements regarding the solicitation of plan acceptances. *See In re Texaco, Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988). Those requirements are largely contained in Section 1125(b), which provides that acceptances or rejections of a plan may not be solicited after the commencement of a case unless, at the time of or before solicitation, there is transmitted to that party the plan, or a summary of the plan, and a written disclosure statement approved by the court as containing adequate information.

In this case, the Committee has complied with Section 1129(a)(2). On April 2, 2015, the Court entered an order tentatively approving the disclosures contained in the Plan and establishing various deadlines relating to solicitation and confirmation of the Plan (Doc. No. 345) (the "Scheduling Order"). In accordance with the Scheduling Order, the Committee served the Plan and associated solicitation materials on the United States Trustee and all creditors, equity security holders and parties in interest listed on the Court's mailing matrices for the bankruptcy cases. However, on April 15, 2015, the Committee discovered that certain creditors listed on Amended Schedule F for HFT (Doc. No. 179) and in the list of equity security holders for HF were not listed on the mailing matrixes for the bankruptcy cases. Once discovering the issue, the Committee immediately served the omitted creditors and equity security holders. Additionally, the Committee also filed an *Ex Parte Motion to Continue Confirmation Hearing and Extend Solicitation Deadlines* (Doc. No. 350) (the "Service Motion") to provide those creditors who had not previously been served with sufficient time to object to the Plan and/or vote on the Plan. The Court granted the Service Motion the next day, thus ensuring that the inadvertently delayed service would not jeopardize affected parties' rights to review and act upon the Plan. Additionally, prior to the Court's entry of the Scheduling Order, which, among other things,

tentatively approved the Disclosure Statement pursuant to section 1125, the Committee took no action to solicit votes in favor of the Plan. Accordingly, this requirement is satisfied.

### C. Good Faith - Section 1129(a)(3).

Section 1129(a)(3) requires that the Plan be "proposed in good faith and not by any means forbidden by law." The term "good faith" is not defined in the Bankruptcy Code, but the Ninth Circuit has held that "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Slymar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002) (citations omitted). This determination in based on the totality of the circumstances. *Id.*

The good faith requirement is met in this case. Early in these cases, the Debtors moved for approval of a sale of substantially all of the Estate Assets via the Liquidbits Sale. The Committee objected to the proposed sale, and the Court eventually denied the motion to approve the Liquidbits Sale. Since that time, the Committee and the Debtors worked together to formulate an exit strategy that would provide the bankruptcy estates with the best possible chance of recovery. Ultimately, the Plan is the result of that effort. Confirmation of the Plan will clear the way for the Hashfast Trustee to evaluate and prosecute all causes of action the Debtors may possess for the benefit of the Debtors' creditors. For these reasons, the Committee asserts that the Plan is proposed in good faith and not be any means forbidden by law.

### D. Payments to Professionals – Section 1129(a)(4).

Section 1129(a)(4) requires that any and all payments requiring Court approval have been approved or remain subject to court approval under the Plan. 11 U.S.C. § 1129(a)(4); *see In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988). In this case, all administrative expense payments made, or to be made, by the Debtors and/or Hashfast Creditor Trust in connection with the Plan, either have been approved by or are subject to the approval of this Court. Section VII(A) of the Plan requires that non-ordinary course administrative claimants "file a request with the Court for allowance of such Claim as an Administrative Claim on or before the Administrative Claims Bar Date." Section XII(F)(1) similarly provides that only Allowed

Administrative Claims are entitled to distributions from the Hashfast Creditor Trust. Accordingly, the requirements of Section 1129(a)(4) are satisfied.

### E. Post-Confirmation Management – Section 1129(a)(5)

Section 1129(a)(5)(A) requires that: (i) the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director or officer of the reorganized debtor, an affiliate of the debtor, or as a successor to the debtor, and (ii) the appointment of such individuals must be consistent with the interests of creditors and shareholders and with public policy. Similarly, section 1129(a)(5)(B) requires that the proponent of a plan disclose the identity of any insider that will be employed or retained by the reorganized debtor and the nature of the compensation for the employment.

The Plan contemplates a liquidation of the estate's assets via the Hashfast Creditor Trust. Thus, in accordance with section 1129(a)(5)(A), the Plan discloses the identity of the individual the Committee has selected to serve after confirmation as the trustee of the Hashfast Creditor Trust, Michael G. Kasolas. As no insiders of the Debtors will be employed or retained by the Hashfast Creditor Trust (the equivalent of the reorganized debtor), no disclosures under section 1129(a)(5)(B) are required.

The UST argues that the Plan fails to provide adequate disclosures regarding the Hashfast Trustee.[4] More precisely, the UST argues that the Plan and Hashfast Creditor Trust agreement fail to "fully disclose Mr. Kasolas' affiliations or connections with the Debtors, creditors, or other parties in interest" or conflicts of interest. *See* Doc. No. 361, at p. 8. The reason there are no disclosures of that nature is quite simple: The proposed Hashfast Trustee does not have any "affiliations or connections with the Debtors, creditors, or other parties in interest" or conflicts of interests, which is one of the reasons for his selection. Although it is true the Plan could have provided a statement to this effect, section 1129(a)(5)(A) only requires the disclosure of affiliations. If no affiliations exist, there is, quite frankly, nothing to disclose.

---

[4] While not determinative, it is worth noting that the UST did not raise this disclosure objection when the Court was considering the adequacy of the disclosures in the Plan pursuant 11 U.S.C. § 1125

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The UST also presents an argument based upon section 9.12 of the Hashfast Creditor Trust agreement, which provides that the Debtors and beneficiaries of the Hashfast Creditor Trust (i.e., the Creditors) waive any conflict of interest arising from the prior involvement of the Hashfast Trustee or any professional for the Hashfast Creditor Trust as a professional in the Bankruptcy Case. The UST argues that the existence of this provision would allow the Hashfast Trustee to "serve without full disclosure ordinarily expected of a disinterested trustee or fiduciary." *See* Doc. No. 361, at p. 8. Not only is the assertion factually inaccurate, it is legally irrelevant. Regardless of section 9.12, section 1129(a)(5)(A) requires disclosures of any affiliations of the proposed Hashfast Trustee. As previously noted, Mr. Kasolas has no affiliations to disclose and can be available to attest to this fact at confirmation. Additionally, the contention that section 9.12 is a blanket waiver of any conflict that would allow the Hashfast Trustee to somehow serve despite some sort of affiliation is simply untrue. Section 9.12 is limited to conflicts arising from the prior involvement of the Hashfast Trustee or any professional for the Hashfast Creditor Trust as a professional in the Bankruptcy Case. Even assuming the waiver of a conflict of interest by a liquidating trustee was an impediment to confirmation, Mr. Kasolas is not a professional in the Bankruptcy Case and, thus, section 9.12 is inapplicable.

In sum, the Plan discloses the identity of the proposed Hashfast Trustee. As the Hashfast Trustee is not affiliated with the Debtors in any way, no disclosures beyond the identity of the Hashfast Trustee are required under section 1129(a)(5)(A). Moreover, even assuming, *arguendo*, that the Plan should have disclosed the absence of any "affiliations" (which the Committee respectfully submits is not required), the omission of such disclosures is harmless error as the incorporation of such disclosures would not provide any additional information. Accordingly, the Committee respectfully submits that the Plan satisfies the disclosure requirements of section 1129(a)(5) and, thus, requests that the Court overrule the UST's objection.

### F.     Government Approval – Section 1129(a)(6).

Section 1129(a)(6) requires that any governmental regulatory commission with jurisdiction (after the confirmation of the Plan) over the rates of a debtor approve any rate changes provided in a plan. This section is satisfied because the Debtors do not require the

approval of any governmental regulatory commission to approve the rates of the Debtors, and no rate changes are contemplated in the Plan.

### G. Best Interest of Creditors – Section 1129(a)(7).

Section 1129(a)(7) requires that, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class has either (a) accepted the plan, or (b) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

As demonstrated by the Liquidation Analysis, Creditors and Equity Interest Holders receive as much if not more under the Plan than they would in a chapter 7 liquidation because the Plan involves a controlled liquidation and provides for lower compensation to the Hashfast Trustee than would be payable to a chapter 7 trustee under the same circumstances. Furthermore, the proposed Plan avoids additional expenses incurred by the chapter 7 trustee and his or her counsel in the course of the chapter 7 liquidation, including the costs associated with the chapter 7 trustee's counsel becoming familiar with this case and the various complex facts involved in the potential litigation. Moreover, under the Plan, certain estate professionals have agreed to alternate treatment or a voluntary reduction in their Allowed Administrative Claims if necessary to ensure the success and confirmability of the Plan. In a chapter 7 liquidation, on the other hand, the chapter 11 Estate professionals are required to receive treatment in accordance with the Bankruptcy Code and payment of their full Allowed Administrative Claims before any junior creditors. Accordingly, the Committee submits the Plan satisfies the best interest of creditors test contained in Section 1129(a)(7).

Notwithstanding the foregoing, the UST argues that the Plan fails to satisfy the best interests test because (1) the UST believes the projected cash on hand is overstated, (2) the UST believes there are not adequate disclosures about the "success" fee payable to Province, Inc., (3) the Plan does not specifically identify the costs of administering the Hashfast Liquidating Trust, and (4) professional fees in a chapter 7 liquidation may be less than the professional fees of the Hashfast Liquidating Trust because the former is subject to court review and reduction.

With respect to the first two arguments, these arguments are immaterial when considering the best interests of creditors. First, the amount of cash on hand on the Effective Date is irrelevant to the question of whether the Plan satisfies the best interests test as the cash available on any given date is a function of the Debtors performance, not the chapter, and, thus, would be identical in chapter 7. Rather, the argument relates to the feasibility of the Plan—an issue addressed *infra*. Similarly, the disclosures regarding the "success" fee payable to Province, Inc. is a disclosure issue and does not change the fact that distributions under the Plan are projected to be greater than distributions under chapter 7, which is outlined in the Liquidation Analysis. As for the disclosure argument, the Plan specifically discloses Province's entitlement to a success fee and the treatment of the success fee under the Plan.[5] Such information is more than sufficient to allow a reasonable investor to determine whether to vote for or against the Plan, and, based on the votes in this case, it is clear Creditors did not take issue with the payment of the relatively *de minimis* success fee.

As to the third argument, the contention that the Plan fails to estimate the costs of administering the Hashfast Creditor Trust is simply inaccurate. The Plan is a litigation plan in which a post-confirmation liquidating trust prosecutes the causes of action held by the estate. As such, the primary administrative costs will be the cost of litigation and the Hashfast Trustee compensation. Accordingly, the Plan provides detailed estimates of litigation costs in Exhibit A to the Plan and identifies the compensation payable to the Hashfast Trustee. As the administrative costs depend on future costs and recoveries (in the case of contingency fees) in litigation, the cost of administering the Hashfast Creditor Trust (or a chapter 7 estate) cannot be known with greater specificity.

As to the final argument, the UST posits that chapter 7 administrative expense may be less than the Hashfast Creditor Trust administrative expenses as the Court may reduce professional compensation in a chapter 7. This is not a *bona fide* argument; rather, it is a bald assertion

---

[5] Although not determinative, it is worth noting the UST failed to raise this argument at the disclosure statement phase.

supported by not one scintilla of data or other evidence. Indeed, the converse could as easily be true and, based on the Liquidation Analysis, is true. Additionally, the Hashfast Trustee also has the authority and obligation to use his business judgment to realize the greatest benefit for the beneficiaries. In exercising this judgment, the Hashfast Trustee is empowered to negotiate professional compensation, including the ability to reduce unreasonable professional fees.

In sum, the UST has failed to provide any reasonable basis to conclude that chapter 7 may result in greater distributions to Creditors.[6] The Plan, on the other hand, provides that the Plan will provide greater distributions based on the reduced commission payable to the Hashfast Trustee and elimination of the unavoidable "start-up" cost of any chapter 7 estate.

### H. Acceptance or Rejection of the Plan – Section 1129(a)(8).

Section 1129(a)(8) requires that each class of claims or interests must have either accepted the plan or such class is not impaired under the Plan. The failure to vote is not recognized as an implied acceptance. *See Bell Rd. Investment Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. BAP 1989). Acceptance of a plan is governed by Section 1126, and generally provides that a class accepts a plan if the plan has been accepted by creditors holding at least two-thirds in amount and more than one-half in number of the allowed claims of such class that have voted.

As reflected by the Ballot Tabulation (filed concurrently herewith), Class 1 and Class 2 (the only impaired classes) voted to accept the Plan:

| Class | Creditor | Status | Percentage of Amount Accepting | Percentage of Claims Accepting | Result |
|-------|----------|--------|-------------------------------|-------------------------------|--------|
| 1 | Priority unsecured claims | Impaired | 100% | 100% | Accept |

---

[6] Indeed, based on the complexity of the litigation, it is much more likely that conversion will result in the abandonment of the complex and valuable causes of action due to the relatively minimal cash on hand to ensure payment of chapter 7 administrative claims if litigation proves unsuccessful—a risk professionals of the Hashfast Creditor Trust will have to accept.

Case: 14-30725  Doc# 368  Filed: 05/23/15  Entered: 05/23/15 01:43:45  Page 12 of 19
606407817.4

| Class | Creditor | Status | Percentage of Amount Accepting | Percentage of Claims Accepting | Result |
|---|---|---|---|---|---|
| 2 | General unsecured claims[7] | Impaired | 74.3% | 77.4% | Accept |
| 3 | Equity interests | Unimpaired | | | |

## I.  Priority and Administrative Claims – Section 1129(a)(9).

Section 1129(a)(9) requires that unless the holder of a claim agrees to a different treatment of its claim, certain administrative and priority claims must receive specific treatment under a plan. The Plan satisfies this section. The Plan provides that the holders of Allowed Administrative Expense Claims and allowed non-voting Priority Unsecured Claims will either be paid in full on the Effective Date or have agreed to alternative treatment. *See* Plan, Section VIII. Under the Plan, Katten Muchin Rosenman LLP, Baker & Hostetler LLP, Province, Inc., and Koi System Ltd. have waived the right to payment on the Effective Date and agreed to receive payment on account of their administrative claim over time.

The UST argues that the Committee has failed to evidence sufficient cash on hand to pay all amounts due on the Effective Date. As set forth in the Delaglio Declaration, the Estate shall have approximately $110,000 on the Effective Date to pay the Effective Date payments, which total approximately $53,721.00.[8] As such, the UST's objection should be overruled.

///

///

///

---

[7] The calculation excludes ballots that were not received by the balloting deadline. *See* Declaration of Michael T. Delaney, which is filed contemporaneously herewith.

[8] As explained in the Delaglio Declaration, the administrative claim asserted by CIARA Technologies ("CIARA") shall be paid prior to the Effective Date, unless they agree to alternate treatment. If the CIARA claim is not paid pre-confirmation, the amount of cash on hand on the Effective Date and the amount of the Effective Date payments will each increase by $30,000. The projected Effective Date payment also excludes the claim asserted by Liquidbits Corp. as (i) the claim has not been allowed and, thus, does not constitute an Allowed Administrative Expense Claim under the Plan entitled to payment on the Effective Date, and (ii) the Debtors are engaged in settlement discussion and anticipates that the Debtor and Liquidbits Corp. will entered into a settlement agreement prior to the Effective Date involving a withdrawal of the motion seeking allowance of the asserted administrative claim.

**J.  Acceptance by Impaired Class – Section 1129(a)(10).**

Section 1129(a)(10) requires that at least one impaired class has accepted the Plan without including acceptances by insiders. That requirement is met in this case. Indeed, every impaired class (Class 1 and Class 2) accepted the Plan.

**K.  Feasibility – Section 1129(a)(11).**

As the Plan entails a controlled liquidation of the remaining assets of the Estate, the Committee submits that the Plan satisfies the requirements of section 1129(a)(11), to the extent applicable.

**L.  Trustee Fees – Section 1129(a)(12).**

Section 1129(a)(12) requires that a chapter 11 plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of the quarterly fee payable to the US Trustee) be paid on or before the plan's effective date. Section XV(5) of the Plan provides for the payment of all such fees on the Effective Date. Therefore, this provision is satisfied.

**M.  Retiree Claims – Section 1129(a)(13).**

There are no unsecured claims for contributions to a retiree benefit plan, because the Debtors do not have any retirement benefit plans.

**IV.  THE PLAN MAY BE CONFIRMED OVER THE DISSENT OF THE NON-ACCEPTING CLASSES BECAUSE THE PLAN SATISFIES SECTION 1129(b).**

As set forth above, the Plan satisfies all of the requirements of Section 1129(a); however, even if it is determined that the Plan fails to satisfy section 1129(a)(8), which requires that all impaired classes have voted to accept the Plan, the Plan may still be confirmed if it satisfied the "cramdown" provisions of Section 1129(b). To allow confirmation via cramdown, Section 1129(b) requires that the court find that the Plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan."

**A.  The Plan is Fair and Equitable.**

To be fair and equitable with respect to a class of unsecured claims, the plan must satisfy the requirements set forth in Section 1129(b)(2)(B). Commonly known as the "absolute priority

rule," that section requires that unsecured creditors receive property that is equal to the allowed amount of their claims or that all junior creditors or interest-holders not receive anything under the plan on account of such junior or interest any property. This requirement is satisfied because the Plan provides that equity interests are only entitled to distributions under the Plan if Allowed Unsecured Claims are paid an amount equal to the allowed amount of their claims as of the Effective Date. *See* Plan, Sections IX(c), XII(f)(1).

### B. The Plan Does Not Discriminate Unfairly.

Although unfair discrimination is not defined in the Bankruptcy Code, it is generally accepted to mean that a dissenting class must receive relative value equal to the value given to all other similarly situated classes and cannot bear disproportionate risk as compared with other similarly situation classes. Here, the assets of the Hashfast Creditor Trust will be orderly liquidated by the Hashfast Trustee and converted to cash, which will be distributed in accordance with the Bankruptcy Code and the terms of the Plan. Simply put, in the event a dissenting class exists, the Plan does not unfairly discriminate against its members. Thus, this second element of Section 1129(b) is satisfied.

## IV. CONCLUSION

Based on the foregoing, the Plan meets all of the requirements for confirmation, and the Committee respectfully requests that Court enter and order confirming the Plan, and granting all other relief that is appropriate under the circumstances.

Dated: May 23, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _____
Ashley M. McDow
Michael T. Delaney

Attorneys for the OFFICIAL COMMITTEE OF UNSECURED CREDITORS

# DECLARATION OF VICTOR DELAGLIO

I, Victor Delaglio, hereby declare:

1. My name is Victor Delaglio. I am over 18 years of age and fully competent to make this declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration. Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them under the *Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC, and Hashfast, LLC, dated March 27, 2015* (Doc. No. 344) (the "Plan"). I submit the within declaration in support of the confirmation of the Plan

2. I am employed by Province, Inc, and work closely with Peter Kravitz, the chief restructuring officer in the Bankruptcy Case. In that capacity I am generally familiar with the financial and business affairs of the Debtors and the terms of the Plan.

3. All of the facts contained in the *Memorandum in Support of Confirmation of the Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC, and Hashfast, LLC, dated March 27, 2015* (the "Memorandum") are true and correct to the best of my knowledge, information and belief, and those facts are incorporated herein by reference.

4. At present, the Estate holds about $10,754 in cash on hand. I believe the Estate shall collect $128,000 in accounts receivable on or about May 26, 2015. The accounts receivable relate to a sale of the remnant tangible personal property assets of the Estate to Guido Ochoa in or about May 2015. From these amounts, the Debtors intend to pay the sum of $30,000 to CIARA Technologies prior to the Effective Date. Thus, I estimate that the Estate will have approximate $110,000 cash on hand on the Effective Date.

5. Based on the figure available, it appears that approximately $53,721.00 in payments will be due on the Effective Date. This amount does not include the CIARA Technologies payment as such amount should be paid prior to the Effective Date. The projected Effective Date payments also excludes the administrative claim asserted by Liquidbits Corp. as the motion requesting allowance of the administrative claim has not been granted and, more importantly, it appears very likely that the Debtors and Liquidbits Corp. will enter into a

settlement agreement before the Effective Date involving a withdrawal of the motion seeking the allowance of the presently-asserted administrative claim.

6. I have reviewed the Plan and believe that the Plan satisfies all applicable requirements of 11 U.S.C. § 1129.

I declare the foregoing is true and correct under penalty of perjury. Executed this 23rd day of May, 2015, at Las Vegas, Nevada.

_____
Victor Delaglio

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509

A true and correct copy of the foregoing document entitled (*specify*): **MEMORANDUM IN SUPPORT OF CONFIRMATION OF THE CONSOLIDATED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT DATED MARCH 27, 2015** will be served or was served in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: The foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 23, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL OR EMAIL** (state method for each person or entity served): On (*date*) **May 23, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, addressed and/or by email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*Via U.S. mail*
Presiding Judge
Hon. Dennis Montali
U.S. Bankruptcy Court
PO Box 7341
San Francisco, CA 94120-7341

*Via U.S. mail*
Julie M. Glosson
Office of the United States Trustee
235 Pine St. #700
San Francisco, CA 94104

*Via Email:*
Ray E. Gallo  rgallo@gallo-law.com
Graham Adams  gadams@takelap.com
Servaas Tilkin  servaas.tilkin@gmail.com
Process General c/o Victor Delaglio  NEF@Processgeneral.com
William R. Gougér  bill.gouger@summitcapitalllc.com
Michael Gao  Urazexo378@gmail.com
Scott Gray  elphenom@yahoo.com
Wy Gost  wygost@yahoo.com

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, OR FACSIMILE TRANSMISSION** (state method for each person or entity served): On (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), and/or by facsimile transmission as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 23, 2015 | Sonia Gaeta | /s/Sonia Gaeta |
|---|---|---|
| Date | Printed Name | Signature |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**
Venkat Balasubramani     venkat@focallaw.com, pete.morici@alumni.purdue.edu
Greg P. Campbell     ecfcanb@piteduncan.com, gc@ecf.inforuptcy.com
Patrick Chesney     pchesney@gallo-law.com, mvananda@gallo-law.com
Michael Delaney     mdelaney@bakerlaw.com, SGaeta@bakerlaw.com
Caroline R. Djang     cdjang@rutan.com
Fahim Farivar     ffarivar@bakerlaw.com, sgaeta@bakerlaw.com
W. Keith Fendrick     keith.fendrick@hklaw.com, Andrea.Olson@hklaw.com
Beth E. Gaschen     bgaschen@wgllp.com
Julie M. Glosson     julie.m.glosson@usdoj.gov
Elizabeth A. Green     egreen@bakerlaw.com, jdriggers@bakerlaw.com
Robert G. Harris     rob@bindermalter.com
Ori Katz     okatz@sheppardmullin.com
Ashley McDow     amcdow@bakerlaw.com, SGaeta@bakerlaw.com
Jessica M. Mickelsen     jessica.mickelsen@kattenlaw.com
Office of the U.S. Trustee / SF     USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
David M. Poitras     dpoitras@jmbm.com
Gregory A. Rougeau     grougeau@diamondmccarthy.com, MDomer@diamondmccarthy.com
Craig Stuppi     craig@stuppilaw.com
Sarah M. Stuppi     sarah@stuppilaw.com
Christopher D. Sullivan     csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com
Nancy Weng     nweng@trinhlawfirm.com, kim@trinhlawfirm.com


2. **SERVED BY UNITED STATES MAIL:**

   **PARTIES REQUESTING SPECIAL NOTICE:**

Eric W. Benisek
Vasquez Benisek and Lindgren LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549

Craig A. Barbarosh
Katten Muchin Rosenman LLP
650 Town Center Dr. 7th Fl.
Costa Mesa, CA 92626-7122

Edward Hammond
3103 Powell Cir.
Austin, TX 78704

Timothy Lam
6156 Temple City Blvd.
Temple City, CA 91780

Kang Lu
5753 Hwy 85 North #2442
Crestview, FL 32536

Ainsley G. Moloney
Morgan Lewis & Bockius LLP
1 Federal St.
Boston, MA 02110

Grant Pederson
12538 Botanical Ln.
Frisco, TX 75035

Peter A. Siddiqui
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661-3693