Ashley M. McDow (245114)
Michael T. Delaney (261714)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com

Attorneys for MICHAEL G. KASOLAS,
Liquidating Trustee

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Lead Case No.: 14-30725 DM |
| HASHFAST TECHNOLOGIES, LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor in Possession. | Case No.: 14-30866 DM |
| x Affects HASHFAST LLC, a Delaware limited liability company, | Chapter 11 |
| Debtor and Debtor in Possession. | |

### LIQUIDATING TRUSTEE'S SIXTH OMNIBUS OBJECTION TO CLAIMS

### (DISALLOWANCE OF CLAIMS FOR LACK OF EVIDENCE OF PRIORITY)

Michael G. Kasolas (the "Trustee" or "Mr. Kasolas"), the duly appointed, qualified and

acting trustee for the Hashfast Liquidating Trust (the "Trust"), by and through counsel, Baker &

Hostetler LLP ("Baker"), hereby files his Sixth Omnibus Objection to Claims (Disallowance of

Claims for Lack of Evidence of Priority) (the "Sixth Omnibus Objection"). The list of claimants

in the Sixth Omnibus Objection is as follows:

| Last Name or Company's Name | First Name |
| --- | --- |
| Yue | Hong-Quan |
| Hammond | Edward |
| Lei | Shi |
| Dahlke | |
| Amanda Van Nuys Consulting | |
| Crowder | Ralph |
| Smallwood | Peter |
| Cheaney | Avram |
| Sneddon | Russell |
| Avery | Terri |
| Montague | Paul |
| Riedel | Wolfgang |
| Connelly | Brian C. |
| Hall | Dylan |
| Liu | Yichun Catherine |
| Woodward | Anthony |
| Schmitt | William |
| Hansen | Lonnie J. |
| Walther | William |

True and correct copies of the objections to the claims held by the above-referenced claimants are attached hereto as **Exhibit A.**

Dated:     November 30, 2015          Respectfully submitted,

                                      **BAKER & HOSTETLER LLP**

                                              */s/ Ashley M. Mcdow*
                                      By:     _____
                                              Ashley M. McDow
                                              Michael T. Delaney

                                      Attorneys for MICHAEL G. KASOLAS,
                                      Liquidating Trustee

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re:

HASHFAST TECHNOLOGIES, LLC, a
California limited liability company

\* Affects HASHFAST LLC, a Delaware limited
liability company

Debtor(s) _____ /

Chapter **11**
Case No. **14-30725 (Lead Case)** (Jointly Administered and
Substantively Consolidated with Case No. 14-30866 DM)
OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR
HEARING; CERTIFICATE OF SERVICE
CLAIMANT: **Hong-Quan Yue**
CLAIM NO: **169**

The Debtor(s) [or Trustee] object(s) to the allowance of the claim described as:

| NAME & ADDRESS OF CLAIMANT (as set forth on Proof of Claim) | DOLLAR AMT | DATE FILED |
|---|---|---|
| \* Hong-Quan Yue | $7,586.86 | 09/02/2014 |
| \* 606-210 Woodridge Crescent, Nepean, Ontario | | |
| \* Canada K2B 8E9 | | |

The basis for the objection is that the claim:

_____ duplicates claim no. _____ filed on _____ by _____.
_____ does not include a copy of the underlying judgment.
_____ does not include a copy of the security agreement and evidence of perfection.
__X__ fails to assert grounds for priority.
_____ does not include a copy of the assignment(s) upon which it is based.
_____ appears to include interest or charges accrued after the filing of this case on _____
_____ is not timely filed.
_____ _____
_____ _____

The Objecting Party will ask the Court to enter an Order providing that the claim is:

_____ allowed as a secured claim in the amount of: $ _____.
__X__ allowed as an unsecured claim in the amount of: $ 7,586.86 _____.
_____ allowed as a priority claim in the amount of: $ _____.
_____ disallowed in its entirety
_____ _____

**NOTICE IS HEREBY GIVEN**, pursuant to FRBP 3007 as modified by Local Rule 9014: 1) that any objection to the requested relief, or a request for hearing on the matter must be filed and served on the requesting party within twenty–one (21) days of mailing of the notice; 2) that a request for hearing or objection must be accompanied by any declarations or memoranda of law the party objecting or requesting wishes to present in support of its position; 3) that if there is not a timely objection to the requested relief or a request for hearing, the Court may enter an order granting the relief by default; and 4) that the initiating party will give at least seven (7) days written notice of hearing to the objecting or requesting party, and to any trustee or committee appointed in the case, in the event an objection or request for hearing is timely made.

Dated: 11/25/2015 _____

~~Trustee's~~
~~DEBTOR(S')~~ ADDRESS:

\* Michael G. Kasolas (the Trustee for the Liquidating Trust)
\* P.O. Box 26650
\* San Francisco, CA 94126

Ashley M. McDow

[Attorney for] Objecting Party, Michael G. Kasolas, the Trustee
\* BAKER HOSTETLER LLP
\* 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509
\* Email: amcdow@bakerlaw.com

\* Telephone: 310.820.8800

CERTIFICATE OF SERVICE

I am not less than 18 years of age and not a party to the within case. My business address is: 11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509 . I served this OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR HEARING by first-class United States Mail, postage pre-paid, at Los Angeles , California, on the date noted below and addressed to the Claimant above, and on those listed below. If entitled to notice, the Chapter 13 Trustee will receive such notice upon the electronic filing of this document I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: _____ at Los Angeles _____, California.
\* _____ \* _____ \* _____
\* _____ \* _____ \* _____
\* _____ \* _____ \* _____
\* _____ \* _____ \* _____

Rev. 1/2010

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Northern District of California | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br><br>HashFast Technologies LLC<br>649 Mission Street, 5th Floor<br>San Francisco, CA 94105 | Case Number:<br><br>14-30725 | **FILED**<br>SEP 2 – 2014<br>UNITED STATES BANKRUPTCY COURT<br>SAN FRANCISCO, CA |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Hong-Quan Yue

**COURT USE ONLY**

| Name and address where notices should be sent:<br>606-210 Woodridge Crescent<br>Nepean, Ontario<br>Canada K2B 8E9<br><br>Telephone number: (613) 780-7347    email: hongquan.yue@gmail.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**    $_____ 7,586.86

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Goods sold
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>2  9  1  9 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ 7,586.86

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☑ Other
**Describe:** Baby Jet 400 GH/s X 2, Baby Jet Upgrade Kit 400 GH/s X2 and shipping fee

**Basis for perfection:** Goods sold

**Value of Property: $** 7,586.86

**Amount of Secured Claim:**  $ 7,586.86

**Annual Interest Rate**_____% ☐ Fixed or ☐ Variable
(when case was filed)

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**
$_____ 7,586.86

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

2

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Hong-Quan Yue
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature)                    08/25/2014
                               (Date)

Telephone number: (613) 780-7347     email: hongquan.yue@gmail.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any one category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____**DEFINITIONS**_____      _____**INFORMATION**_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system
(www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re:

HASHFAST TECHNOLOGIES, LLC, a
California limited liability company

\* Affects HASHFAST LLC, a Delaware limited
liability company

Debtor(s)                                        /

Chapter **11**
Case No. **14-30725 (Lead Case)** (Jointly Administered and
Substantively Consolidated with Case No. 14-30866 DM)
OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR
HEARING; CERTIFICATE OF SERVICE
CLAIMANT: **Shi Lei**
CLAIM NO: **12-1**

The Debtor(s) [or Trustee] object(s) to the allowance of the claim described as:

| NAME & ADDRESS OF CLAIMANT (as set forth on Proof of Claim) | DOLLAR AMT | DATE FILED |
|---|---|---|
| \* Shi Lei | $6,765.09 | 06/12/14 |
| \* 1000 Lakes Dr., Ste. 430 | | |
| \* West Covina, CA 91790 | | |

The basis for the objection is that the claim:

____ duplicates claim no. _____ filed on _____ by _____.
____ does not include a copy of the underlying judgment.
____ does not include a copy of the security agreement and evidence of perfection.
_X_ fails to assert grounds for priority.
____ does not include a copy of the assignment(s) upon which it is based.
____ appears to include interest or charges accrued after the filing of this case on _____.
____ is not timely filed.
_X_ Claimant fails to provide any evidence substantiating claim to priority. Additionally, the payment does not qualify for priority under Section 507(a)(7) as the Bitcoin mining
computer is not an item for personal or household use.

The Objecting Party will ask the Court to enter an Order providing that the claim is:

____ allowed as a secured claim in the amount of: $_____.
_X_ allowed as an unsecured claim in the amount of: $ 6,765.09
____ allowed as a priority claim in the amount of: $_____.
____ disallowed in its entirety

**NOTICE IS HEREBY GIVEN,** pursuant to FRBP 3007 as modified by Local Rule 9014: 1) that any objection to the
requested relief, or a request for hearing on the matter must be filed and served on the requesting party within twenty–one
(21) days of mailing of the notice; 2) that a request for hearing or objection must be accompanied by any declarations or
memoranda of law the party objecting or requesting wishes to present in support of its position; 3) that if there is not a
timely objection to the requested relief or a request for hearing, the Court may enter an order granting the relief by default;
and 4) that the initiating party will give at least seven (7) days written notice of hearing to the objecting or requesting party,
and to any trustee or committee appointed in the case, in the event an objection or request for hearing is timely made.

Dated: 11/25/2015

Trustee's
~~DEBTOR(S)~~ ADDRESS:

\* Michael G. Kasolas (the Trustee for the Liquidating Trust)
\* P.O. Box 26650
\* San Francisco, CA 94126

Ashley M. McDow

[Attorney for] Objecting Party, Michael G. Kasolas, the Trustee
\* BAKER HOSTETLER LLP
\* 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509
\* Email: amcdow@bakerlaw.com

\* Telephone: 310.820.8800

CERTIFICATE OF SERVICE

I am not less than 18 years of age and not a party to the within case. My business address is: 11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509 . I served this OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR HEARING by first-class
United States Mail, postage pre-paid, at Los Angeles , California, on the date noted below and addressed to the
Claimant above, and on those listed below. If entitled to notice, the Chapter 13 Trustee will receive such notice upon the electronic filing
of this document   I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: _____ at Los Angeles , California.                    h

| \* | \* | \* |
|---|---|---|
| \* | \* | \* |
| \* | \* | \* |
| \* | \* | \* |

Rev. 1/2010

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Hashfast Technologies LLC | Case Number:<br>14−30725 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**FILED**

U.S. Bankruptcy Court
Northern District of California

**6/12/2014**

Edward J. Emmons, Clerk
COURT USE ONLY

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Shi Lei

Name and address where notices should be sent:
Shi Lei
1000 Lakes Drive, Suite 430, West Covina, CA
West Covina, CA 91790

Telephone number: 310−9680832    email: starrysl@gmail.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
BLK 62 Teban Gardens Road
#16−627
Singapore 600062
Singapore, 60006
Telephone number: 6584212763    email: starrysl@gmail.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**  $ ____6765.09____
If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.
☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ____goods sold____ (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 3539 | 3a. Debtor may have scheduled account as:<br><br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**
**Value of Property:** $_____
**Annual Interest Rate (when case was filed) ___% ☐ Fixed or ☐ Variable

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ _____

Basis for perfection: _____

Amount of Secured Claim: $_____

Amount Unsecured:  $____0.00____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☑ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier — 11 U.S.C. §507(a)(4).

☑ Contributions to an employee benefit plan — 11 U.S.C. §507(a)(5).

☑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use — 11 U.S.C. §507(a)(7).

☑ Taxes or penalties owed to governmental units — 11 U.S.C. §507(a)(8).

☐ Other — Specify applicable paragraph of 11 U.S.C. §507(a)(_).

**Amount entitled to priority:**
$ ____6765.09*____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**cuments:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running ...nts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8) Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Shi Lei
Title:
Company:
Address and telephone number (if different from notice address above):

s/ Shi Lei
(Signature)

6/12/2014
(Date)

Telephone number: ____  email: ____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re:

HASHFAST TECHNOLOGIES, LLC, a
California limited liability company

* Affects HASHFAST LLC, a Delaware limited
liability company

Debtor(s) _____/

Chapter **11**

Case No. **14-30725 (Lead Case)** (Jointly Administered and
Substantively Consolidated with Case No. 14-30866 DM)

OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR
HEARING; CERTIFICATE OF SERVICE

CLAIMANT: **Edward Hammond**

CLAIM NO: **64-1**

The Debtor(s) [or Trustee] object(s) to the allowance of the claim described as:

| NAME & ADDRESS OF CLAIMANT (as set forth on Proof of Claim) | DOLLAR AMT | DATE FILED |
|---|---|---|
| * Edward Hammond<br>* 3103 Powell Circle<br>* Austin, TX 78704 | $6,000.00 | 6/26/2014 |

The basis for the objection is that the claim:

___    duplicates claim no. _____ filed on _____ by _____.
___    does not include a copy of the underlying judgment.
___    does not include a copy of the security agreement and evidence of perfection.
**X**    fails to assert grounds for priority.
___    does not include a copy of the assignment(s) upon which it is based.
___    appears to include interest or charges accrued after the filing of this case on _____.
___    is not timely filed.
___    507(a)(7) Goods were not purchased for personal, family or household use. Exceeds statutory maximum allowed by 11 USC 507(a)(7).

_____

The Objecting Party will ask the Court to enter an Order providing that the claim is:

___    allowed as a secured claim in the amount of:    $_____.
___    allowed as an unsecured claim in the amount of:    $_____.
___    allowed as a priority claim in the amount of:    $_____.
**X**    disallowed in its entirety
     To the extent unsecured claim allowed, $2775.00 should be a priority claim and $3,225.00 should be a general unsecured claim.

**NOTICE IS HEREBY GIVEN,** pursuant to FRBP 3007 as modified by Local Rule 9014: 1) that any objection to the requested relief, or a request for hearing on the matter must be filed and served on the requesting party within twenty–one (21) days of mailing of the notice; 2) that a request for hearing or objection must be accompanied by any declarations or memoranda of law the party objecting or requesting wishes to present in support of its position; 3) that if there is not a timely objection to the requested relief or a request for hearing, the Court may enter an order granting the relief by default; and 4) that the initiating party will give at least seven (7) days written notice of hearing to the objecting or requesting party, and to any trustee or committee appointed in the case, in the event an objection or request for hearing is timely made.

Dated: 11/25/2015 _____

~~Trustee's~~
~~DEBTOR(S)~~ ADDRESS:

* Michael G. Kasolas (the Trustee for the Liquidating Trust)
* P.O. Box 26650
* San Francisco, CA 94126

Ashley M. McDow _____

[Attorney for] Objecting Party, Michael G. Kasolas, the Trustee
* BAKER HOSTETLER LLP
* 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509
* Email: amcdow@bakerlaw.com

* Telephone: 310.820.8800

## CERTIFICATE OF SERVICE

I am not less than 18 years of age and not a party to the within case. My business address is: 11601 Wilshire Boulevard, Suite 1400 Los Angeles, CA 90025-0509 . I served this OBJECTION TO CLAIM; NOTICE OF OPPORTUNITY FOR HEARING by first-class United States Mail, postage pre-paid, at Los Angeles _____, California, on the date noted below and addressed to the Claimant above, and on those listed below. If entitled to notice, the Chapter 13 Trustee will receive such notice upon the electronic filing of this document  I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: _____ at Los Angeles _____, California.

| * | * | * |
|---|---|---|
| * | * | * |
| * | * | * |
| * | * | * |

Rev. I/2010

**B10 (Official Form 10) (04/13)**

| UNITED STATES BANKRUPTCY COURT Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Hashfast Technologies LLC | Case Number:<br>14–30725 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*
*You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Edward Hammond

Name and address where notices should be sent:

Edward Hammond
3103 Powell Circle
Austin, TX 78704

　Telephone number: 325–347–2829　　email: gerencia@chisgonon.com

Name and address where payment should be sent (if different from above):

Telephone number:　　email:

**FILED**

U.S. Bankruptcy Court
Northern District of California

**6/26/2014**

Edward J. Emmons, Clerk
COURT USE ONLY

☐ Check this box if this claim
　amends a previously filed
　claim.

**Court Claim Number:**
　　　　　　　　　　　*(If known)*

Filed on: _____

☐ Check this box if you are
　aware that anyone else has
　filed a proof of claim
　relating to this claim. Attach
　copy of statement giving
　particulars.

**1. Amount of Claim as of Date Case Filed:** $ ___6000.00___
If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ___Goods purchased not delivered___ (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: ___1564___ | 3a. Debtor may have scheduled account as:<br><br>Order 1564 – Miner Protec<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_____<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
　Check the appropriate box if the claim is secured by a lien on property or a right of
setoff, attach required redacted documents, and provide the requested information.
**Nature of property or right of setoff:** ☐ Real Estate　☐ Motor Vehicle　☐ Other
**Describe:**
**Value of Property:** $ _____
**Annual Interest Rate** (when case was filed) ___% ☐ Fixed or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed,
included in secured claim, if any:

　　$ _____

Basis for perfection: _____

Amount of Secured Claim: $ _____

Amount Unsecured:　　$ ___3225.00___

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(___).

**Amount entitled to priority:**

$ ___2775.00___

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8) Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)     ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Edward Hammond

Title:

Company:

Address and telephone number (if different from notice address above):

                                s/ Edward Hammond            6/26/2014

                                 (Signature)                   (Date)

Telephone number:          email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

 **HashFast**

HashFast Technologies, Inc.
("Hashfast")
97 South Second Street #175
San Jose, 95113 United States

| DATE |
| --- |
| September 3, 2013 |

# Order Confirmation

ORDER NUMBER:1564
Please have the Order Number appear on all related
Correspondence and shipping papers

**To:          ("Buyer")**
Edward Hammond
3103 Powell Cir
Austin, Texas 78704

**Ship To:**
Edward Hammond
3103 Powell Cir
Austin, Texas 78704

| QTY | PRODUCT | DESCRIPTION | UNIT PRICE | TOTAL |
| --- | --- | --- | --- | --- |
| [1] | Baby Jet | Buyer purchases Baby Jet unit(s) incorporating (20) GN ASICs @ 400 Ghash at nominal clock speed (nominal voltage).<br><br>Payment:<br><br>100% via **Wire Transfer**<br>In addition, for delivery 1 unit UPS Next Day Air Saver. Expected shipping date: October 30, 2013* | **[$5,600 USD]** | |
| | | SUBTOTAL | | |
| | | SHIPPING | | $ 164.34 |
| | | TOTAL | | **[$5,764.34 US Dollars]** |

- Baby Jet Delivery Dates. All of the 550 Baby Jet units from HashFast's first production batch are guaranteed for delivery by December 31, 2013. If Buyer ordered one or more units of such Baby Jets, and HashFast does not deliver such units by that date, then Buyer may cancel the undelivered portion of the order at Buyer's request and HashFast will refund the payment for the units that Buyer purchased but did not receive and cancelled. This cancellation and refund is Buyer's sole and exclusive remedy for HashFast failing to deliver by the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by January 15, 2014 to avail itself of this remedy. Buyer to pay all taxes, duties and shipping costs.

**Buyer to pay all taxes, duties and shipping costs.**

ORDER CONFIRMATION - EDWARD HAMMOND                                                                 Page 1 of 4

Case 14-30725     Claim 64-1 Part 2     Filed 06/26/14     Desc Attachment 1     Page 1 of 4
Case: 14-30725     Doc# 408     Filed: 11/30/15     Entered: 11/30/15 22:49:45     Page 14 of 21

## ADDITIONAL TERMS AND CONDITIONS

This Order Confirmation and the sales of all product, licenses and services by Hashfast are be governed by the Hashfast Terms of Sale attached to this Order Confirmation, or otherwise made available upon request.

### HASHFAST TERMS OF SALE

1. OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION. These terms and conditions of sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies, Inc. ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods or licenses to software ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation and Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), or (iii) payment or partial payment, or (iv) other conduct constituting acceptance. Hashfast' Offers are open for acceptance within the period stated by Hashfast in the Offer or, when no period is stated, within ten (10) days from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance. No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions, and Hashfast does not intend to enter into an Agreement other than under these Terms.

2. PURCHASE AND PAYMENT.

(a) Guaranteed Baby Jet Delivery Dates. All of the 550 Baby Jet units from Hashfast's first production batch are guaranteed for delivery by December 31, 2013. If Buyer ordered one or more units of such Baby Jets, and Hashfast does not deliver such units by that date, then Buyer may cancel the undelivered portion of the order at Buyer's request and Hashfast will refund the payment for the units that Buyer purchased but did not receive and cancelled. This cancellation and refund is Buyer's sole and exclusive remedy for Hashfast failing to deliver by the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by January 15, 2014 to avail itself of this remedy.

(b) Other Delivery Dates. Except for the delivery dates described in Section 3(a) above and delivery dates explicitly guaranteed using the words "guaranteed delivery" in the order confirmation sent by Hashfast: (i) delivery dates communicated or acknowledged by Hashfast are approximate only; (ii) Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date; and (iii) Buyer will give Hashfast written notice of failure to deliver and ten (10) days within which to cure. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order, and receive a refund for the undelivered portions that were cancelled.

(c) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer.

(d) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date. Delivery may also be contingent on full payment. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent except for cancellations permitted under this Section 3.

3. DELIVERY AND QUANTITIES.

(a) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer. Except for delivery dates explicitly guaranteed in the Order or Confirmation, delivery dates communicated or acknowledged by Hashfast are approximate only, and Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date.

(b) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent.

(c) Buyer will give Hashfast written notice of failure to deliver and thirty (30) days within which to cure, unless the Order or Confirmation explicitly guarantees a delivery date. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order.

4. RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY. All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast' performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein. None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer. Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that a separate license is needed or useful. The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement. Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a) modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available

Case 14-30725   Claim 64-1 Part 2   Filed 06/26/14   Desc Attachment 1   Page 2 of 4
Case: 14-30725   Doc# 408   Filed: 11/30/15   Entered: 11/30/15 22:49:45   Page 15 of 21

the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast. Signatures required under these Terms do not include electronic signatures as may otherwise be permitted by applicable law.

Buyer's rights under the Agreement are conditioned upon Buyer not performing any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5. CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database types. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6. COMMERCIAL USE. Buyer represents and agrees that the Products it purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately.

7. LIMITED PRODUCT WARRANTY AND DISCLAIMER.

(a) WARRANTY AGAINST DEFECTS. Hashfast warrants that under normal use the Products (excluding those referred to in Section 7(b) below) shall, at the time of delivery to Buyer and be substantially free from defects in material or workmanship and shall substantially conform to Hashfast's specifications for such Product. Buyer will notify Hashfast in writing of any non-conforming Products within ten (10) days of delivery, otherwise Hashfast will have no further obligation or warranty for such Products. Such notice will describe in reasonable detail the non-conformance claimed by Buyer. Delivered Product will be deemed accepted and conforming unless Buyer provides such notice within the ten (10) day period.

(b) HASHFAST' SOLE AND EXCLUSIVE OBLIGATION, AND BUYER'S SOLE AND EXCLUSIVE RIGHT, WITH RESPECT TO CLAIMS UNDER ITS WARRANTIES SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF A DEFECTIVE OR NON-CONFORMING PRODUCT, OR IF HASHFAST CANNOT REPAIR OR REPLACE SUCH PRODUCT AFTER USING COMMERCIALLY REASONABLE EFFORTS, THEN A REFUND TO BUYER FOR THE PURCHASE PRICE THEREOF. HASHFAST WILL HAVE A REASONABLE TIME TO REPAIR, REPLACE OR REFUND. THE NON-CONFORMING OR DEFECTIVE PRODUCTS WILL BECOME HASHFAST' PROPERTY AS SOON AS THEY ARE RETURNED FOR REPLACEMENT OR REFUND.

(c) At Hashfast's request, Buyer will ship Products returned under warranty claims to Hashfast's designated facility in conformance with Hashfast's then-current Return Material Authorization policy and are accompanied by a statement of the reason for the return on a Return Material Authorization form issued by Hashfast. Where warranty adjustment is made, Hashfast will pay for freight expenses. Buyer shall pay for returned Products that are not defective or non-conforming together with the freight, testing and handling costs associated therewith. Except as provided in this Section 7, Hashfast has no obligation to accept returns.

(d) Notwithstanding the foregoing, Hashfast shall have no obligations for breach of warranty if the alleged defect or non-conformance is found to have occurred as a result of environmental or stress testing, misuse, neglect, improper installation, accident or as a result of improper repair, operation at voltages other than as specified by Hashfast, use with equipment other than that sold by Hashfast, alteration, modification, storage, transportation or improper handling. Further, a computing Product will be deemed to operate within its specifications if it varies within ten (10%) more or less than the performance stated in its specifications when operated at the nominal voltage specified by Hashfast.

(e) THE WARRANTY GRANTED ABOVE SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS, AGENTS OR REPRESENTATIVES. THE EXPRESS WARRANTY GRANTED ABOVE IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A

PARTICULAR PURPOSE, MERCHANTABILITY, OR NON-INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. ALL OTHER WARRANTIES WHETHER EXPRESSED OR IMPLIED ARE HEREBY SPECIFICALLY DISCLAIMED BY HASHFAST.

(f) Except as provided by Section 9, the foregoing states the entire liability of Hashfast, and Buyer's sole and exclusive remedies, in connection with defect or non-conforming Products.

8. LIMITATION OF LIABILITY.

(a) EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b) EXCEPT AS PROVIDED IN SECTION 9, HASHFAST' AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (1) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c) Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9. APPLICABLE LAW EXCEPTIONS. NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10. CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast. Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11. COMPLIANCE WITH LAWS. Each party hereto represents that it its duly authorized to enter into the Agreement and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12. EXPORT. Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received. Hashfast's acceptance of any order is contingent upon the issuance of any applicable export license required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13. REGULATORY REQUIREMENTS. Hashfast is not responsible for determining whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14. ASSIGNMENT AND SETOFF. Buyer shall not assign any rights or obligations under the Agreement without the prior written consent of Hashfast. Buyer hereby

ORDER CONFIRMATION - Edward Hammond                                                    Page 3 of 4

Case 14-30725    Claim 64-1 Part 2    Filed 06/26/14    Desc Attachment 1    Page 3 of 4
Case: 14-30725    Doc# 408    Filed: 11/30/15    Entered: 11/30/15 22:49:45    Page 16 of 21

waives any and all rights to offset existing and future claims against any payments due for Products sold under the Agreement or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15.  GOVERNING LAW AND ARBITRATION.

(a)  ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising (each, a "Dispute") shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect on this Agreement.

(b)  ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c)  THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d)  The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or the Agreement is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed. The arbitrator(s) will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law. Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e)  NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(f)  The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g)  Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16.  BREACH AND TERMINATION. Without prejudice to any rights or remedies Hashfast may have under the Agreement or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect the Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon occurrence of any of the events referred to above under (i) through (iv), all

payments to be made by Buyer under the Agreement shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3(b)-(c), 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-24.

17.  PRODUCT AND PRODUCTION CHANGES. Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18.  U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 97 South Second Street #175, San Jose, 95113 United States.

19.  FORCE MAJEURE. Hashfast party will not be deemed in default of an Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20.  ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affiliate. No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision shall be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21.  REJECTION OF OTHER TERMS, ACCEPTANCE BY AGENTS. Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast.

22.  CONTRACT CONSTRUCTION. In the event that any provision(s) of the Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or". The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation."

23.  WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24.  NOTICES. All notices or communications to be given under this Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25.  RELATIONSHIP OF PARTIES. The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

ORDER CONFIRMATION - EDWARD HAMMOND                                        Page 4 of 4
HASHFAST TERMS OF SALE - Revised August 5, 2013

Case 14-30725   Claim 64-1 Part 2   Filed 06/26/14   Desc Attachment 1   Page 4 of 4
Case: 14-30725   Doc# 408   Filed: 11/30/15   Entered: 11/30/15 22:49:45   Page 17 of 21



NAVIGATION ≡

---

# Miner Protection Program™

## We want our customers to succeed.

At HashFast, we understand that healthy, prosperous customers make for a healthy and prosperous company. We know that our customers are concerned about the rapid growth of the network hashrate – and we stand by our customers. We designed our silicon so efficiently per square mm, that we are able offer you this protection.

If the Bitcoin network hashrate increases so that your Baby Jet doesn't generate more Bitcoins in ninety days than you paid for it, HashFast will give you additional ASICs. In fact, **we will give you up to 400% more hashing capacity** than the Baby Jet you purchased. Yes, that does mean that if you don't make your money back in 90 days, we will increase your mining capacity to up to **2 Terahashes!**

The Miner Protection Program™ applies to all customers of Baby Jets purchased from Batch 1 of our production. For the second batch, the Miner Protection Program™ will be sold separately.

## Two examples of how it will work:

**Example 1 –** You buy a Baby Jet from HashFast for 50 BTC and we ship it October 25th. By January 23, your machine has mined 60 BTC. You are happy and the miner protection is not needed.

**Example 2 –** You buy a Baby Jet for 50 BTC, and we ship it on October 25th. January 23, 2014 comes and goes, and it turns out that at the Baby Jet's nominal hashrate, it would only have generated 25 BTC during that 90 day period. Calculated out, it would have taken an additional 400 Ghash/s of capacity shipped with your Baby Jet on October 25, 2013 to generate 50 BTC. We can't go back in time to give you that 400Ghash/s. Instead, HashFast *will double* that and give you 800 Ghash/s in additional capacity. In this example, HashFast will give you two additional Golden Nonce ASICs, each with 400 nominal GHash/s.

## Frequently Asked Questions

### *What if I overclock? Underclock?*

We calculate the ROI based on network difficulty adjustments, the estimated hashrate, and what hashrate the average Baby Jet achieves. If, in the example above, you overclock your machine and generated more Bitcoin, it will not affect our calculations. Likewise, if you underclocked it to save energy costs, it will not affect our calculations.

### *What if I have to turn off my Baby Jet during a terrible storm?*

Again, we do not calculate the ROI for the MPP based on your individual operation of the Baby Jet. Thus, we don't need to figure out if you went on vacation, underclocked, or forgot to plug it in for the first month.

### *What do I do with the ASIC(s) you send me? They can't generate Bitcoin while I hold it in my hand, can it?*

No, generating Bitcoin while grasping any semiconductor is very unlikely. You will need a rig that has everything but the HashFast ASIC. We designed our ASIC with this in mind. We will sell ASIC-ready rigs, and expect licensed rig manufacturers to also offer ASIC-ready rigs.

### *What if a super-duper Exa-hash machine shows up?*

The MPP coverage extends to up to 400% of the capacity purchased. For a Baby Jet, with a nominal 400 Ghash/s capacity, the MPP is limited to sending an additional 1.6 Terrahash/s of additional ASIC hashing capacity, **for a total of 2 Terahashes!**

### *If BTC value doubles against the dollar, are you still going to give me up to four times my original capacity?*

Yes. The entire MPP program is based on BTC, which is a key reason we sell our machines for BTC. The increase in BTC-to-USD exchange rates may mean that you achieve fantastic ROI, even though your Baby Jet doesn't generate the amount of Bitcoin you paid for it. We ignore that in our MPP calculations, and will give you additional hashing capacity even though you achieved ROI on a USD basis.

### *If I didn't pay in Bitcoin, how do you calculate the purchase price under the MPP and compare it to the amount Bitcoin generated?*

If you paid in USD or other fiat currency, HashFast will base the calculations on the BTC to USD (or other currency) exchange rate we gave our customers the day of your purchase.

### Limitations

The Miner Protection Program is not a form of insurance, has no cash value, and cannot be sold, licensed or transferred by a customer. Customer will pay and be responsible for all taxes, duties and shipping for ASICs supplied under the Miner Protection Program. Additional ASICs supplied under the Miner Protection Program will be supplied only to the original purchaser, and may only be shipped to the same address as the original purchase. Nothing in the description of the Miner Protection Program should be read as a reliable or binding forecast of network hashrates, difficulty levels or other future events. The HashFast Terms of Sale sent to you (or if not sent to you, then found here: Terms of Sale) apply to the Miner Protection Program. "HashFast" as used above refers to

HashFast Technologies LLC. HashFast™, the HashFast logo, Miner Protection Program™, and MPP™ are the trademarks and service marks of HashFast Technologies LLC.

**LATEST NEWS**

Pictures of the Ciara Assembly Floor

Open Source Interface Protocol Released

Pictures of the Sierra

Updated Shipping News

We're Upping the Power on HashFast Rigs!



**© HASHFAST TECHNOLOGIES LLC 2013**

All Rights Reserved.

**SIGN UP FOR THE HASHFAST NEWSLETTER!**

First Name*

Last Name*

Email Address*

Case 14-30725    Claim 64-1 Part 3    Filed 06/26/14    Desc Attachment 2    Page 3 of 4
Case: 14-30725    Doc# 408    Filed: 11/30/15    Entered: 11/30/15 22:49:45    Page 20 of
21

\* = required field

SUBSCRIBE