AVRAM CHEANEY. (Creditor, Pro Se)
1305 LAGUNA ST APT 4
SAN FRANCISCO CA 94115
415-851-4573



# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Hashfast Technologies, LLC,<br><br>           Debtor(s). | ) Case No. 14-30725<br>) Chapter 11<br>)<br>) AVRAM CHEANEY'S RESPONSE TO THE<br>) DEBTOR'S OBJECTION TO CLAIMS NO. 310,<br>) 311 AND "311-1" AND REQUEST FOR<br>) HEARING<br>)<br>) |

AVRAM CHEANEY ("Claimant"), an unsecured creditor in the above-entitled Bankruptcy proceeding, hereby submits the following response to the Debtor's Objection to Claim #310 and (2) Objections to claim #311, filed by Liquidating Trust as part of multiple Omnibus Objections to Claim(s) and mailed on 12/1/15. Claimant requests a hearing on Trustee's Objections, which are founded on part on a Demand for Return of Preferential Transfers; the validity of this Demand is also requested to be addressed.

1. Claimant was both a customer and an employee of Debtor. Claimant placed and paid for a valid order for (1) Baby Jet mining system on November 25, 2013. This order is the subject of Claim 310.

2. Subsequently through further interaction with company management Debtor inquired about possible employment with the company and was hired as an independent consultant on January 1, 2014. When company ran out of cash claimant was abruptly terminated with worked hours unpaid in the amount of $3881.85. This is the subject of claim 311.

AVRAM CHEANEY'S RESPONSE TO THE DEBTOR'S OBJECTION TO CLAIMS NO. 310, 311 AND "311-1" AND REQUEST FOR HEARING  - 1

3. Claimant's title was "Lab Instrumentation & Shipping Consultant" however the circumstances of Claimant's engagement were altered within one week by Hashfast executives to a low-level but critical staff role that was central to the company's "ordinary course of business." Even though Claimant was not offered W-2 status, the circumstances of the engagement established a de facto employer relationship with Claimant per California and Federal employment law.

4. At the time of employment, Hashfast was in crisis mode, with substantial cash and working ASIC Bitcoin Mining chips on hand but a backlog of order commitments that proved impossible to fill on time due to technical issues with system design.

5. Claimant worked onsite at the Company's contract manufacturing facility in Fremont, CA, performing hands-on assembly, technical support, supply-chain logistics and order fulfilment. Various customer commitment deadlines necessitated working 12-hour days. Claimant personally shipped the first customer orders ever fulfilled by Hashfast. That this work was in the "ordinary course of business" of the company is obvious. This fact is central to this Response.

6. Despite being an employee, Claimant's Baby Jet order was treated the same as any other customer. As such, being late in order sequence it was never delivered.

7. Trustee objects to claim 310 (Baby Jet Order) in part on grounds that "evidence provided fails to establish the existence or amount of the claim." Claimant is intimately aware of the status and workings of the order management system at Hashfast, as it drove his daily workflow. The "Order Chain" was sacrosanct and to be followed in exact sequence. Claimant asserts that extensive investement in verifying this data and transferring it into salesforce.com software was undertaken by company

AVRAM CHEANEY'S RESPONSE TO THE DEBTOR'S OBJECTION TO CLAIMS NO. 310, 311 AND "311-1" AND REQUEST FOR HEARING   - 2

Case: 14-30725   Doc# 427   Filed: 12/18/15   Entered: 12/22/15 12:09:55   Page 2 of 13

executives, customer service staff and outside consultants. The status of outstanding orders for individual small customers was very well known at the time of bankruptcy filing. Transactions with larger volume customers may have been unclear due to multiple revisions to contracts and agreements, but the list of small purchasers is clear, and there is no reason to doubt the list of order liabilities in the initial Chapter 11 Filing. Many claimants attempted to claim larger numbers due to bitcoin price variations and potential lost revenue, but the actual US dollar amount paid for unshipped orders should not be in dispute in this case.

8. Throughout this case complete disregard for these small purchasers and the intent of the bankruptcy process has been shown. 11 U.S.C 507(a)(7) provides for priority claim status of up to $2775 of deposits towards purchase, lease or rental of propery for personal, family or household use. Claimant has seen no evidence that this aspect of the law has been considered in the case thus far. The Baby Jet system was specifically engineered to be suitable for home or small office use. Unlike the commercial-grade Sierra system it was quiet and moderate in power consumption and had the form factor of an ordinary personal computer. Claimant prays the Court address this question that purchasers of small quantites of Baby Jet systems, including Claimant, should be considered to have priority claims for the US$ price paid at the time of purchase, up to $2775. The remainder should be considered an ordinary claim. It is inappropriate for the Trustee to attempt to disallow purchase price when records on these purchases were quite clear at the time of filing.

9. Trustee claims a preference period of 90 days (February 8, 2014 – May 9, 2014). Trustee claims (3) payments were made to Claimant during

AVRAM CHEANEY'S RESPONSE TO THE DEBTOR'S OBJECTION TO CLAIMS NO. 310, 311 AND "311-1" AND REQUEST FOR HEARING   - 3

Case: 14-30725   Doc# 427   Filed: 12/18/15   Entered: 12/22/15 12:09:55   Page 3 of 13

this time. This fact is not disputed. These payments were:

2/12/14 - $4750, 2/18/14 - $3750, 4/28/14 - $1590.14. The February

payments were for hours worked. Due to an accounting issue the $3750

payment was actually made in error and treated as an advance towards

future hours worked and later billed. The April payment was an expense

report reimbursement for expenses paid out of pocket by Claimant.

10. At the time of Chapter 11 filing Claimant was owed $3881.85 for hours already worked and invoiced. In fact, the actual amount owed was understated as Claimant voluntarilly discounted his hourly rate and capped his hours worked per day as it became clear the company was in financial trouble. The entire month of April worked after 3/25/14 up to termination and various expenses acrued were not billed to the company.

11. When faced with inability to make payroll, Hashfast terminated multiple employees on the same day. These employees were paid for all work up to that time in accordance with labor law. Claimant was terminated at this time, but was not paid. No formal documentation of this termination or the terms thereof were provided. When payment was requested in an email to CFO Monica Hushen on May 22, 2014, Ms. Hushen replied "Avram, as I have indicated verbally to you, we have every intention of paying our defacto employees when we have cash to pay them."

12. All payments received were clearly Contemporaneus Exchange for New Value and in the Ordinary Course of Business.

13. The circumstances of Claimants engagement with the company did not meet the letter or spirit of IRS or California EDD labor classification law. Classifying Claimant as an Independent Contractor may have been appropriate initially, but the circumstances of the

Case: 14-30725    Doc# 427    Filed: 12/18/15    Entered: 12/22/15 12:09:55    Page 4 of 13

engagement quickly changed to a defacto employer-employee relationship. In a meeting with the acting HR manager, the possibility of W2 employment was offered as a future possibility but not offered at the time.

14. The rank-and-file employees and contract engineers of this company were working around the clock to salvage the company and the technology during this time. Many made great personal sacrifice and were left unpaid. The list of parties the Trustee is attempting to recover Preferences from is shocking to someone who actually worked at the company and knows the roles those parties played. Rather than expecting some relief as Creditors from the process, they now find themselves rewarded with threats to return payment for work performed in good faith. Punishing contract hardware and software engineers as well as "shipping consultants" for hours worked in good faith in a company that was never revealed to be "insolvent" by executive management is not the intent of the Trustee's right to avoid preferences.

15. Supporting documents are attached and additional proof can be provided. Claimant is available to provide expert testimony to support any other invalid avoidance actions being filed.

Claimant requests a hearing where it may be considered that:
1. Trustee's Demand for Return of Preferential Transfers is without merit.
2. Claimant's Claim 310 for $2495.67 be upheld.
3. Claimant's Claim 310 be considered for elevation to priority status under 11 U.S.C 507(a)(7) in the context of similar elevation for all purchasers of Baby Jet systems.
4. Claimant's Claim 311 for $3881.85 in unpaid wages be upheld with Priority status.

Dated this 17th Day of December, 2015

_____
AVRAM CHEANEY

# CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing AVRAM CHEANEY'S RESPONSE TO THE DEBTOR'S OBJECTION TO CLAIMS NO. 310, 311 AND "311-1" AND REQUEST FOR HEARING upon the Attorney for the Objecting Party, Ashley M. McDow, Baker Hostetler, 11601 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025, by email to amcdow@bakerlaw.com and by U.S. Mail, by mailing a full, true and correct copy thereof in a sealed, first-class, postage prepaid envelope, and deposited with the United States Postal Service at San Francisco California on on the date shown below.

DATED: November 18, 2015

*/s/ Avram Cheaney*

AVRAM CHEANEY

PRO SE

From: **HashFast Technologies** sales@hashfast.com  
Subject: Your HashFast Technologies order from November 19, 2013 is complete  
Date: November 25, 2013 at 12:14 PM  
To: avram@





# Your order is complete

Hi there. Your recent order on HashFast Technologies has been completed. Your order details are shown below for your reference:

## Order: #3068

| Product | Quantity | Price |
|---|---|---|
| Baby Jet 400 GH/s | 1 | $2,250 |

Thank you for your business. Please contact sales@hashfast.com, if you have any questions about your order. We will be sending you a confirmation of your purchase within the next few days.

| | |
|---|---|
| **Cart Subtotal:** | $2,250 |
| **Shipping:** | $48.79 via Next Day Air Saver (UPS) |
| **CA Sales Tax:** | $196.88 |
| **Order Total:** | $2,495.67 |

## Customer details

Email: avram@

Tel: 41

## EXHIBIT A

### DESCRIPTION OF WORK AND APPROVAL FORM
### INDEPENDENT CONSULTANT AGREEMENT

1. Independent Consultant Agreement dated January 1, 2014 between Hashfast Technologies LLC ("Company"), and Avram Cheaney ("Consultant").

2. Principal Consultant Contact(s) and Title(s): Eduardo deCastro, CEO

4. **Services to be Provided.** Consultant will render such services as Company may from time to time request in writing in connection with the following project:

   General description of project: Lab Instrumentation & Shipping Consultant.

   Percent of time anticipated to be spent on premises: 80%

   Consultant will upon Company's request, but in any event no less frequently than once each month, report to Company on the status of the project or projects performed by Consultant hereunder. Upon notice to Consultant, Company has the right to inspect Consultant's work in progress and to receive copies of all or any portion thereof.

5. **Fee Schedule.**

   Option A. Project Fees. Consultant's fee will be $30 per hour for the project described in Section 4, with no estimated completion date at this time.

6. **Total Fees.** The total amount authorized to be paid to Consultant under the Independent Contract Agreement for fees is $30 per hour plus such expenses as deemed necessary. This amount will not be exceeded without a written modification of this Description of Work.

7. **Best Effort.** Consultant agrees to use Consultant's best effort and professional skills to accomplish the project goals. If at any time during the performance of this project it appears to be impossible to complete the project or if any phase of the project cannot be completed on schedule, it is agreed that Consultant will notify Company of the same within five (5) days of such determination. At the time of such notification, Consultant will explain to Company the reasons the project cannot be completed in a timely manner and, at Company's option, the parties will develop an alternative procedure and schedule for achieving the desired result.

9. **Stand-Off Period.** Consultant agrees that for the term of this Agreement and for a period of six (6) months following the termination of this Agreement, Consultant will not, in any of the jurisdictions set forth in Section 10, directly or indirectly, as a sole proprietor, partner, member, officer, director, employee, agent or consultant: (a) engage in any business that Company is engaged in while Consultant is providing services to Company hereunder (any business which is similar to or competes with such business will be referred to herein as a "Competing Business"); (b) provide services to a Competing Business substantially similar to the services described on the Description of Work attached as Exhibit A, (c) purchase or acquire, directly or indirectly, a record or beneficial interest exceeding a five percent (5%) equity interest in any entity which is engaged in a Competing Business; (d) assist or be involved with any other person or entity to be so engaged; or (e) solicit to hire or retain, or assist any person or entity in such solicitation, any person then engaged by the Company as an employee, officer, director or consultant, or so engaged within the then prior six (6) months. If a court of competent jurisdiction finds that any provision of this Section 9 is invalid or unenforceable, this Section 9 will be deemed amended to delete or modify, to the minimum extent necessary, the offending provisions (or jurisdictions listed in Section 10) and to read the balance of the provisions (including such listed jurisdictions) valid and enforceable to the fullest extent permissible.

10. **Jurisdictions.** Consultant's obligations in Section 9 apply to the following jurisdictions: (a) the California counties of Alameda, Alpine, Calaveras, Contra Costa, El Dorado, Fresno, Glenn, Kern,

Report ID: 3778720

# Supplies and Equipment for Assembly/Shipping/Lab

Report Policy: (not shared)

**$1,590.14**

To: kmshy@hashfast.com
From: avram@hashfast.com
Dates: Jan 8, 2014 to Apr 3, 2014

## Report Items

Uncategorized - $1,590.14

| Date | Merchant | Comment | Total |
|---|---|---|---|
| Apr 3, 2014 | Staples | Shipping Tape, Pens | $31.30 ‡ |
| Apr 3, 2014 | Staples | Shipping tape | $22.53 ‡ |
| Apr 3, 2014 | Staples | Dell Inspiron All-in-one PC and high speed Brother laser printer for shipping at Sonic | $493.33 ‡ |
| Mar 10, 2014 | Staples | Shipping labels, 100 bush | $66.86 ‡ |
| Mar 9, 2014 | Cole Fox Hardware | Supplies for Baby Jet Upgrade kit build | $34.07 ‡ |
| Mar 8, 2014 | Out The Door | Lunch for Eduardo, Chris Bishop, Joseph Cavellero, Sunday | $79.07 ‡ |
| Mar 7, 2014 | Cole Fox Hardware | supplies for Baby Jet upgrade build | $38.18 ‡ |
| Feb 24, 2014 | Rem Works | (2) Used TRIPP LITE PDUMH20ATNET 20 Amp Power Distribution Unit w Amp readout, retail $480 each | $250.00 ‡ |
| Feb 13, 2014 | Staples | Label printer labels, Shipping labels, misc Sonic supplies | $131.68 ‡ |
| Feb 3, 2014 | Hyatt | Hotel by Sonic for extreme late night/early morning scenario | $126.89 ‡ |
| Jan 17, 2014 | Staples | Toner for Sonic Printer, other Sonic supplies | $289.30 ‡ |
| Jan 8, 2014 | Rj Leahy Company Inc | Copper Bus bars for Phil's power supply chip characterization project | $32.63 ‡ |
| | | | $1,590.14 |

## Notes

‡ This is a manually entered expense.

## Report History

| | |
|---|---|
| Apr 7 2014 5:38pm PDT | simon@hashfast.com approved and forwarded this report to kmshy@hashfast.com |
| Apr 3 2014 7:15pm PDT | avram@hashfast.com submitted this report to simon@hashfast.com (cc: avram@hashfast.com) |
| Mar 31 2014 12:27pm PDT | simon@hashfast.com rejected this report, saying 'Please talk to me re: this report - need receipts for some things.' |
| Mar 17 2014 11:29pm PDT | avram@hashfast.com submitted this report to simon@hashfast.com (cc: tim@hashfast.com, avram@hashfast.com), saying 'note: I am not expensing company for mileage or parking' |

Powered By Expensify



Kathleen Shy <kmshy@hashfast.com>

# Wire 2/18/2014 $3750
2 messages

Avram

**Avram C** <avram@hashfast.com>  Tue, Mar 25, 2014 at 3:03 PM
To: Kathleen Shy <kmshy@hashfast.com>

Hi Kathleen,

This wire actually represents a double payment.

The payments made so far are:

| | |
|---|---|
| 1/9/2014 | $5,000.00 |
| 2/12/2014 | $4,750.00 |
| 2/20/2014 | $3,750.00 |

The first represented a $5000 advance.
My first invoice was $6000, so the second payment of $4750 represented $1000 remaining and the second $3750 invoice.
The third payment of $3750 was extra and should be a debit (or credit? whichever one it is, I can never remember) to my balance...

A third invoice will follow in my next message.

Thanks!

On Fri, Feb 14, 2014 at 2:37 PM, Kathleen Shy <kmshy@hashfast.com> wrote:

| ACheney Electronic | $3,750.00 | 2/18/2014 | **Confirmation #:** 93 <br> From Account: Primary Checking <br> Est Arrival: 2/20/2014 <br> Delivery: Standard <br> Invoice/Comment: None |

Kathleen Shy
415.254.9586
415.795.4809 fax

New Mailing Address:
Hashfast Technologies LLC
100 Bush Street Suite 650
San Francisco, CA 94104

**Kathleen Shy** <kmshy@hashfast.com>  Tue, Mar 25, 2014 at 3:04 PM
To: Avram C <avram@hashfast.com>

Thank you Avram.

# INVOICE

**Avram Cheaney**
~~Laguna St Apt~~
San Francisco CA 94115
Phone: 4~~15-___-____~~
avram@~~____.___~~com

| DATE: | 1/28/2014 |
|---|---|
| INVOICE # | 101 |

**BILL TO:**
Hashfast Technologies
100 Bush St STE 650
San Francisco CA 94104

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Consulting | 200 | $30.00 | 6,000.00 |
| 1/2/2014 -- 9 | | | |
| 1/3/2014 -- 9 | | | |
| 1/4/2014 -- 11 | | | |
| 1/5/2014 -- 7 | | | |
| 1/6/2014 -- 10 | | | |
| 1/7/2014 -- 10 | | | |
| 1/8/2014 -- 10 | | | |
| 1/9/2014 -- 10 | | | |
| 1/10/2014 -- 12 | | | |
| 1/11/2014 -- 12 | | | |
| 1/13/2014 -- 3 | | | |
| 1/14/2014 -- 1 | | | |
| 1/15/2014 -- 10 | | | |
| 1/16/2014 -- 9 | | | |
| 1/17/2014 -- 11 | | | |
| 1/18/2014 -- 7 | | | |
| 1/19/2014 -- 3 | | | |
| 1/20/2014 -- 10 | | | |
| 1/21/2014 -- 9.5 | | | |
| 1/22/2014 -- 12 | | | |
| 1/23/2014 -- 9.5 | | | |
| 1/24/2014 -- 12 | | | |
| 1/26/2014 -- 3 | | | 0.00 |
| | | | 0.00 |
| | | SUBTOTAL | $6,000.00 |
| **OTHER COMMENTS** | | TAX RATE | 0.000% |
| ACH: | | TAX | $0.00 |
| Account: ~~_____~~ | | OTHER | $0.00 |
| Bank: ~~_____~~ | | TOTAL | $6,000.00 |

*[PAID stamp]*
*[ENTERED stamp]*

< 5000.00
$1,000.00

# INVOICE

**Avram Cheaney**
~~Laguna St~~
San Francisco CA 94115
Phone: 415-~~████~~
avram~~████~~

| DATE: | 2/10/2014 |
|---|---|
| INVOICE # | 102 |

**BILL TO:**
Hashfast Technologies
100 Bush St STE 650
San Francisco CA 94104

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Consulting | 125 | $30.00 | 3,750.00 |
| 1/27/2014 -- 12 | | | |
| 1/28/2014 -- 14 | | | |
| 1/29/2014 -- 12 | | | |
| 1/30/2014 -- 14 | | | |
| 1/31/2014 -- 13 | | | |
| 2/3/2014 -- 12 | | | |
| 2/4/2014 -- 11 | | | |
| 2/5/2014 -- 14 | | | |
| 2/6/2014 -- 12 | | | |
| 2/7/2014 -- 11 | | | |
| | | | 0.00 |
| | | | 0.00 |
| | | SUBTOTAL | $3,750.00 |
| ~~████~~ | | TAX RATE | 0.000% |
| ACH: | | TAX | $0.00 |
| Account: ~~████~~ | | OTHER | $0.00 |
| Bank: ~~████~~ | | TOTAL | $3,750.00 |

(ENTERED stamp)


