# EXHIBIT A

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Northern District of California | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor: Hashfast Technologies, LLC and HashFast LLC | Case Number: 14-30725 and 14-30866 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Ryan Casey

**COURT USE ONLY**

Name and address where notices should be sent:
Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

Notice by email delivery is acceptable and preferred to:

rgallo@gallo-law.com and copied to:

Telephone number: (415) 257-8800   email: pchesney@gallo-law.com, mvananda@gallo-law.com

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:         email:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**         $_____34,203.91_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Goods sold
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** ___ ___ ___ ___ | **3a. Debtor may have scheduled account as:** _____ (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏Real Estate  ❏Motor Vehicle  ❏Other
**Describe:**

**Value of Property: $**_____

**Annual Interest Rate_____% ❏Fixed  or  ❏Variable**
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**    $_____

**Amount Unsecured:**    $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Ray E. Gallo
Title:   Attorney
Company:   Gallo LLP
Address and telephone number (if different from notice address above):

(Signature)       9/17/2014    (Date)

Telephone number:      email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____ _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# ADDENDUM TO PROOF OF CLAIM

## *In re HashFast Tech., LLC*, Case No. 14-30725 &

## *In re HashFast, LLC*, Case No. 14-30866

## 1.    List of Exhibits

| Exhibit # | Title |
|---|---|
| 1 | Calculation of claim and proof of purchase documentation |
| 2 | Declaration of Ray E. Gallo |
| 2-A | August 10, 2013 message by Simon Barber posted on bitcointalk.org |
| 2-B | Transcript of July 8, 2014 examination of Simon Barber |
| 2-C | HashFast terms of sale for Batch-1 customers |
| 2-D | Email from HashFast confirming Bitcoin refund policy for Batch-1 customers |
| 3 | Declaration of Carmel Manion |
| 4 | Declaration of Patrick V. Chesney |

## 2.    Summary of Claim and Exhibits

Claimant was an early (Batch-1) customer of HashFast. Claimant paid for his Batch-1 order(s) in Bitcoin. The terms of sale for his Batch-1 order(s) included a "Guaranteed Delivery Date" of December 31, 2013. The terms of sale also provided that, should HashFast fail to meet the guaranteed delivery date, HashFast would return Claimant's "Payment." Claimant's Payment was made in Bitcoin (BTC). HashFast failed to deliver Claimant's promised Batch-1 order(s) and then failed to refund Claimant's Payment.

HashFast took the position that Claimant is not entitled to a refund of his Payment, but only the then-dollar-value of the bitcoins he paid.

This is not what the contract provides for, nor what it was understood to mean. Claimant's claim amount, as recorded in Box 1 of the accompanying Proof of Claim, is calculated using a conversion rate of $770.4357 U.S. Dollars per Bitcoin, which was the average quoted exchange rate as of January 1, 2014 (the day HashFast incurred its refund obligation). See Exhibit 4.

Exhibit 1 consists of a schedule explaining how Claimant's Box 1 amount was calculated, using the January 1, 2014 $770.4357 USD/BTC exchange rate for all Batch-1 orders, and Claimant's proof of purchase documentation.

Exhibit 2 consists of the declaration of Claimant's counsel, Ray E. Gallo, and supporting exhibits. Mr. Gallo's declaration and supporting exhibits establish that HashFast understood the Batch-1 terms of sale to provide for a refund of Claimant's Payment, in Bitcoin, if HashFast failed to deliver the orders by the December 31, 2013 Guaranteed Delivery Date.

Exhibit 3 is the declaration of former HashFast employee Carmel Manion. Ms. Manion's declaration, which recounts a conversation she overheard between HashFast principals and then-officers Simon Barber and Eduardo deCastro, evidencing HashFast's understanding that, in the event of a refund, Batch-1 customers were entitled to a refund of the bitcoins they paid.

Exhibit 4 consists of the declaration of Claimant's counsel, Patrick V. Chesney, establishing the average exchange rate of Bitcoin to U.S. Dollars on January 1, 2014, as recorded by the CoinDesk Bitcoin Price Index (an aggregate of the closing rates reported by the major Bitcoin exchanges). As noted on Exhibit 4, January 1, 2014's closing exchange rate was $770.4357 USD/BTC.

# EXHIBIT 1

*In re HashFast Technologies, LLC*
U.S. Bankruptcy Court, ND Calif., Case No. 14-30725
and *In re HashFast LLC,* Case No. 14-30866

| Proof of Claim Calculation | | | | |
|---|---|---|---|---|
| Creditor Ryan Casey | | | | |
| | | | | |
| Order No. | Batch-1, qualifying for Bitcoin refund | Payment in Bitcoin | Average U.S. Dollar exchange rate at 1/1/2014 | U.S. Dollar amount paid |
| 1525 | Yes | 44.39554278 | $770.4357 | $34,203.91 |
| | | | | |
| | | Total claimed amount | | $34,203.91 |



Gmail by Google

**Ryan C. <ryepdx@gmail.com>**

**Your HashFast Technologies order receipt from August 29, 2013**

1 message

**HashFast Technologies** <sales@hashfast.com> Thu, Aug 29, 2013 at 1:55 PM

To: ryepdx@gmail.com

HashFast

# Thank you for your order

Your order has been received and is now being processed. Your order details are shown below for your reference:

Please send your bitcoin payment as follows:

| | |
|---|---|
| Amount (**BTC**): | **44.39554278** |
| Address: | **1FPFohodRQa3YkTksmkbc8tcwyWrsb5jwW** |
| QR Code: | |

Please note:

1. You must make a payment within 1 hour, or your order will be cancelled
2. As soon as your payment is received in full you will receive email confirmation with order delivery details.
3. You may send payments from multiple accounts to reach the total required.

# Order: #1525

| Product | Quantity | Price |
|---|---|---|
| First Batch Baby Jet – as low as $2.80/Ghash! | 1 | $5,600 |
| **Cart Subtotal:** | | $5,600 |
| **Shipping:** | | $136.02 *via Next Day Air Saver (UPS)* |
| **Order Total:** | | $5,736.02 |

# Customer details

**Email:** ryepdx@gmail.com

**Tel:** 503 913 1665

# Billing address

Ryan Casey
904 NE 157th Ave
Portland, Oregon 97230

# Shipping address

Ryan Casey
904 NE 157th Ave
Portland, Oregon 97230

If you have quesitons about your order, please contact customer service at sales@hashfast.com or call us during pacific standard business hours at (800)609-3445.

# EXHIBIT 2

1  Ray E. Gallo (State Bar No. 158903)
   Patrick V. Chesney (SBN 267587)
2  Gallo LLP
   1299 Fourth St., Suite 505
3  San Rafael, CA 94901
   Phone: 415.257.8800
4  rgallo@gallo-law.com

5  *Attorneys for Petitioning Creditors*
   *Hamilton Hee, et al.*

6

7

8

9

10            **UNITED STATE BANKRUPTCY COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12             **SAN FRANCISCO DIVISION**

13

14  In re                                    Case No. 14-30725
                                             (jointly administered with Case No. 14-
15  HASHFAST TECHOLOGIES, LLC,               30866)

16                          Debtor,          Chapter 11

17  and                                      **DECLARATION OF RAY E. GALLO IN**
                                             **SUPPORT OF PROOFS OF CLAIMS**
18  In re

19  HASHFAST LLC,

20                          Debtor.          Judge: Honorable Dennis Montali

21

22

23

24

25

26

27

28

Page 1

DECLARATION OF RAY E. GALLO

Case 14-30725   Doc# 442-1   Filed 06/19/14   Entered 06/19/14 12:58:33   Page 12
Case 14-30725   Claim 25-1   Filed 06/19/14   Desc Main Document   Page 11 of 32
of 34

# DECLARATION OF RAY E. GALLO

I, Ray E. Gallo, declare as follows:

1.    I am an attorney at law duly licensed to practice before this Court. I have personal knowledge of the following facts and, if called as a witness, I would testify as follows.

## *Preface*

2.    I represent approximately 80 customer creditors of Debtor HashFast Technologies, LLC in this proceeding. These creditors include numerous early ("Batch-1") purchasers, including the Claimant to whose claim this declaration is attached. Each of these Batch-1 creditors, and Claimant, has the contractual right—per the express terms of the contract drafted by HashFast—to a refund of the bitcoins it paid for the equipment HashFast failed to timely deliver. Specifically, the purchase contract terms (as posted on Hashfast's website and written on its Order Confirmation forms), provide for a refund of the "Payment" made by the customer upon a failure to timely deliver. (Around September 5, 2013 Hashfast apparently changed these terms, so later purchasers do not have the same claim.)

3.    While Hashfast has in 2014 contended that its refund obligation is only to repay the time-of-purchase dollar value of the bitcoins paid: (a) all Batch-1 Payments indisputably were made and were required to be made (and were denoted on the Order Confirmations) in bitcoins; (b) Hashfast told the public, for the benefit of customers and prospective customers, that the refund right *meant* that customers would get their bitcoins back if Hashfast failed to timely deliver; (c) if the take-it-or-leave-it contract at issue is ambiguous as to whether the refunds right is to a refund of bitcoins paid or a refund of time-of-purchase dollar value of the bitcoins paid, then that contract of adhesion must be construed against Hashfast as drafter and Hashfast owes its Batch-1 customers the bitcoins they paid. Point (a) is factual, indisputable, and manifest from Hashfast's order confirmation forms. Point (c) is an inarguable matter of law. *The following evidence*

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

*proves-up point (b) and further proves that Hashfast shared my clients' understanding*

*that Payments in bitcoins had to be refunded in bitcoins.*

### *Evidence*

4.        The official committee of unsecured creditors in the above captioned case met at the office of the U.S. Trustee on July 8, 2014 under Rule 341(a), and examination was conducted.  I personally examined Simon Barber, then the CEO of HashFast Technologies, LLC, regarding an August 10, 2013 early-morning exchange on the bitcointalk.org forum (a true and correct copy of that exchange is attached as Exhibit 2-A hereto).  At the time of that exchange it is undisputed that Mr. Barber was CTO of the Debtor.  A true and correct copy of the transcript of my examination of Mr. Barber, obtained by my office from the U.S. Trustee's office, is attached hereto as Exhibit 2-B.

5.        During that examination, I showed Mr. Barber a copy of Exhibit 2-A.  Mr. Barber confirmed he was familiar with the online forum from which it is taken.  See excerpt of meeting transcript attached as Exhibit 2-B at page 104:6-8.

6.        Then, Mr. Barber confirmed that he personally made the postings showing in Exhibit 2-A as being made by him, and that they were intended "for the benefit of HashFast customers and prospective customers."  Exhibit 2-B at p. 104:9-25.

7.        As Exhibit 2-A shows, Mr. Barber's public statements from August 10, 2013, among other things, confirm that HashFast's promise, in the event it failed to timely deliver, was that it would refund the bitcoins paid by its customers—not an out-of-date August 2013 dollar valuation of those bitcoins as HashFast has since contended.

8.        Specifically, as reflected on Exhibit 2-A, a potential HashFast customer asked the following specific question, obviously seeking to remove all ambiguity regarding what HashFast's promise of a refund (in the event it failed to timely deliver) meant:

> Now since the only payment option is [BTC] **Will I get the same amount of BTC back should you fail to deliver by December 31st?** Or are you going to pull BFL and give refunds at exchange equivalent to USD/BTC indexed to the current fiat price per unit?  Maybe I am too paranoid but I get a feeling this is another company that will take preorders hedging on

BTC to rise by the deadline and gladly refund any customer while constantly pumping empty promises and fake news. [Emphasis added.] ["BFL" refers to Butterfly Labs, another bitcoin mining equipment manufacturer accused of wrongdoing by its customers.]

9. Mr. Barber confirmed on July 8, 2014, in his testimony under oath, that he wrote the posted response to the above-quoted question. As Exhibit 2-A shows, the response, which was posted at 6:08 a.m. on August 10, 2013 in Mr. Barber's name, reads:

*Orders are taken in BTC [bitcoin], in the unlikely event we get to refunds they will be given in BTC.*

See excerpt of meeting transcript attached as Exhibit 2-B at page 104:20. This testimony clarifies HashFast's promise to provide a refund of the "Payment" in the event it failed to timely deliver.

10. Other evidence indicating that HashFast understood that it had promised full Bitcoin refunds to its Batch-1 customers[1] who paid in bitcoins includes:

    a. The terms of sale for Batch-1 customers, attached as Exhibit 2-C. The terms governing refunds and the "Guaranteed Delivery Date" of December 31, 2013, appear in section 3(a) and expressly provide that the Payment, which as shown was made in Bitcoin, would be refunded upon a failure to timely deliver;[2]

    b. The Declaration of former HashFast employee Carmel Manion, who in December 2013 overheard Mr. Barber and Eduardo deCastro (HashFast's then CEO) discussing and acknowledging Hashfast's obligation to return the number of bitcoins each Batch-1 customer paid if HashFast failed to deliver their Batch-1 order(s) by the promised December 31, 2013 delivery deadline. A true and correct copy of Ms.

---

[1] HashFast later revised its terms of sale, for post-Batch-1 customers, to provide that refunds would be paid in U.S. Dollars only, and in the amount reflected on the customer's order confirmation.

[2] Although HashFast revised their terms of sale multiple times during the Batch-1 order period, the terms governing HashFast's refund policy remained the same.

Page 4

c. An email exchange between a HashFast sales representative and a customer confirming the refund policy, attached as Exhibit 2-D.

I certify under penalty of perjury under California law that the foregoing is true and correct. Signed this 15th day of September 2014 at San Rafael, California.

Ray E. Gallo

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

Page 5

DECLARATION OF RAY E. GALLO

# EXHIBIT 2-A



(Available at https://bitcointalk.org/index.php?topic=270384.msg2903196#msg2903196)

...



(Available at https://bitcointalk.org/index.php?topic=270384.msg2903338#msg2903338)

# EXHIBIT 2-B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA


IN RE: HASHFAST, LLC / CASE NO. 14-30866

IN RE: HASHFAST TECHNOLOGIES, LLC / CASE NO. 14-30725

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

STENOGRAPHICALLY TRANSCRIBED VIA PRE-RECORDED AUDIO

MEETING OF CREDITORS BEFORE JULIE GLOSSON

DATE TAKEN:          JULY 8, 2014

TIME:                11:00 A.M.

TRANSCRIBED BY:      ALISON PRESLEY
                     STENOGRAPHIC SHORTHAND REPORTER
                     NOTARY PUBLIC STATE OF FLORIDA
                     COMMISSION NO. FF111939
                     EXPIRES: APRIL 22, 2018

Case 14-30725    Doc# 252-1    Filed 09/28/14    Entered 09/28/16 12:58:33    Page 19 of 30
of 34

Electronically signed by Alison Presley (001-159-987-5451)                92be47ea-a665-4c9d-be42-899f3e91c918

1      **A      (By Ms. Hushen) Or equal value.**

2      Q      That's what you are saying here today.  But the

3      document we are looking at says that Hashfast --

4      **A      (By Ms. Hushen) I am just giving you my**

5      **opinion.  It says refund of payments.**

6      Q      It says Hashfast will refund the payment,

7      correct?

8      **A      (By Ms. Hushen) Right.  And not all the**

9      **documents are the same.**

10      Q      They changed after a certain time period,

11      right?

12      **A      (By Ms. Hushen) Right.**

13      Q      Mr. Barber, do you know when these terms and

14      conditions changed, was it about September 6th?

15      **A      (By Mr. Barber) I was focused on technical**

16      **development at that time, not sales and marketing.  So I**

17      **am not familiar with the evolution of documents.**

18      Q      Okay.  But at some point, Hashfast realized

19      that it had significant exchange risk in connection with

20      these refund guarantees; is that correct?

21      **A      (By Mr. Barber) I -- this was all under sales**

22      **and marketing department.  Any policy or changes thereof**

23      **are not things that I am familiar with.**

24      Q      Okay.  At some point, you personally made some

25      statements about the refund policy on the web, correct?

Electronically signed by Alison Presley (001-159-987-5451)                92be47ea-a665-4c9d-be42-899f3e91c918

Page 104

1      A    (By Mr. Barber) Correct.

2      Q    Have you seen this before?

3      A    (By Mr. Barber) I'm sorry, this is?

4      Q    It is some printed out exchange from Bitcoin

5   form.

6      A    (By Mr. Barber) Yes.  I have not seen this one

7   before, but I am generally familiar with the Bitcoin

8   form, yeah.

9      Q    At the bottom left, it indicates you speaking

10   on the first page; is that you?

11      A    (By Mr. Barber) Correct.

12      Q    And are these things that you posted here?

13      A    (By Mr. Barber) Yes, they are.

14      Q    Okay.  And would you look at the top of page

15   two?

16      A    (By Mr. Barber) Indeed.

17      Q    Is that your statement, quote, Orders are taken

18   in BTC, in the unlikely event that we get to refunds,

19   they will be given in BTC?

20      A    (By Mr. Barber) Correct.

21      Q    You made that statement?

22      A    (By Mr. Barber) Correct.

23      Q    And it was intended for the benefit of Hashfast

24   customers and prospective customers?

25      A    Correct.

Case 14-30725    Doc# 252-1   Filed 09/28/14   Entered 09/28/14 12:58:33   Page 22
Case 14-30725   Doc# 252-1   Filed 09/28/14   Document   02/11/16 12:58:33   Page 21 of 32
of 34

Electronically signed by Alison Presley (001-159-987-5451)          92be47ea-a665-4c9d-be42-899f3e91c918

# EXHIBIT 2-C

This Order Confirmation and the sales of all product, licenses and services by Hashfast are be governed by the Hashfast Terms of Sale attached to this Order Confirmation, or otherwise made available upon request.

## HASHFAST TERMS OF SALE

1. OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION. These terms and conditions of sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies, Inc. ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods or licenses to software ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation and Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), or (iii) payment or partial payment, or (iv) other conduct constituting acceptance. Hashfast' Offers are open for acceptance within the period stated by Hashfast in the Offer or, when no period is stated, within ten (10) days from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance. No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions, and Hashfast does not intend to enter into an Agreement other than under these Terms.

2. PURCHASE AND PAYMENT.

(a) Guaranteed Baby Jet Delivery Dates. All of the 550 Baby Jet units from Hashfast's first production batch are guaranteed for delivery by December 31, 2013. If Buyer ordered one or more units of such Baby Jets, and Hashfast does not deliver such units by that date, then Buyer may cancel the undelivered portion of the order at Buyer's request and Hashfast will refund the payment for the units that Buyer purchased but did not receive and cancelled. This cancellation and refund is Buyer's sole and exclusive remedy for Hashfast failing to deliver by the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by January 15, 2014 to avail itself of this remedy.

(b) Other Delivery Dates. Except for the delivery dates described in Section 3(a) above and delivery dates explicitly guaranteed using the words "guaranteed delivery" in the order confirmation sent by Hashfast: (i) delivery dates communicated or acknowledged by Hashfast are approximate only; (ii) Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date; and (iii) Buyer will give Hashfast written notice of failure to deliver and ten (10) days within which to cure. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order, and receive a refund for the undelivered portions that were cancelled.

(c) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer.

(d) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date. Delivery may also be contingent on full payment. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent except for cancellations permitted under this Section 3.

3. DELIVERY AND QUANTITIES.

(a) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer. Except for delivery dates explicitly guaranteed in the Order or Confirmation, delivery dates communicated or acknowledged by Hashfast are approximate only, and Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date.

(b) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent.

(c) Buyer will give Hashfast written notice of failure to deliver and thirty (30) days within which to cure, unless the Order or Confirmation explicitly guarantees a delivery date. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order.

4. RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY. All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast' performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein. None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer. Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that a separate license is needed or useful. The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement. Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a) modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available

Case 14-30725   Doc# 234-1   Filed 02/11/16   Entered 02/11/16 12:58:33   Page 23 of 34

the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast. Signatures required under these Terms do not include electronic signatures as may otherwise be permitted by applicable law.

Buyer's rights under the Agreement are conditioned upon Buyer not performing any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5.   CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database tapes. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6.   COMMERCIAL USE.   Buyer represents and agrees that the Products it purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately.

7.   LIMITED PRODUCT WARRANTY AND DISCLAIMER.

(a)   WARRANTY AGAINST DEFECTS. Hashfast warrants that under normal use the Products (excluding those referred to in Section 7(b) below) shall, at the time of delivery to Buyer and be substantially free from defects in material or workmanship and shall substantially conform to Hashfast's specifications for such Product.   Buyer will notify Hashfast in writing of any non-conforming Products within ten (10) days of delivery, otherwise Hashfast will have no further obligation or warranty for such Products.  Such notice will describe in reasonable detail the non-conformance claimed by Buyer.  Delivered Product will be deemed accepted and conforming unless Buyer provides such notice within the ten (10) day period.

(b)   HASHFAST' SOLE AND EXCLUSIVE OBLIGATION, AND BUYER'S SOLE AND EXCLUSIVE RIGHT, WITH RESPECT TO CLAIMS UNDER ITS WARRANTIES SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF A DEFECTIVE OR NON-CONFORMING PRODUCT, OR IF HASHFAST CANNOT REPAIR OR REPLACE SUCH PRODUCT AFTER USING COMMERCIALLY REASONABLE EFFORTS, THEN A REFUND TO BUYER FOR THE PURCHASE PRICE THEREOF.   HASHFAST WILL HAVE A REASONABLE TIME TO REPAIR, REPLACE OR REFUND.  THE NON-CONFORMING OR DEFECTIVE PRODUCTS SHALL BECOME HASHFAST' PROPERTY AS SOON AS THEY ARE RETURNED FOR REPLACEMENT OR REFUND.

(c)   At Hashfast's request, Buyer will ship Products returned under warranty claims to Hashfast's designated facility in conformance with Hashfast's then-current Return Material Authorization policy and are accompanied by a statement of the reason for the return on a Return Material Authorization form issued by Hashfast. Where warranty adjustment is made, Hashfast will pay for freight expenses. Buyer shall pay for returned Products that are not defective or non-conforming together with the freight, testing and handling costs associated therewith.  Except as provided in this Section 7, Hashfast has no obligation to accept returns.

(d)   Notwithstanding the foregoing, Hashfast shall have no obligations for breach of warranty if the alleged defect or non-conformance is found to have occurred as a result of environmental or stress testing, misuse, neglect, improper installation, accident or as a result of improper repair, operation at voltages other than as specified by Hashfast, use with equipment other than that sold by Hashfast, alteration, modification, storage, transportation or improper handling.  Further, a computing Product will be deemed to operate within its specifications if it varies within ten (10%) more or less than the performance stated in its specifications when operated at the nominal voltage specified by Hashfast.

(e)   THE WARRANTY GRANTED ABOVE SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS, AGENTS OR REPRESENTATIVES. THE EXPRESS WARRANTY GRANTED ABOVE IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A

PARTICULAR PURPOSE, MERCHANTABILITY, OR NON-INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. ALL OTHER WARRANTIES WHETHER EXPRESSED OR IMPLIED ARE HEREBY SPECIFICALLY DISCLAIMED BY HASHFAST.

(f)   Except as provided by Section 9, the foregoing states the entire liability of Hashfast, and Buyer's sole and exclusive remedies, in connection with defect and non-conforming Products.

8.   LIMITATION OF LIABILITY.

(a)   EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b)   EXCEPT AS PROVIDED IN SECTION 9, HASHFAST' AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (1) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c)   Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9.   APPLICABLE LAW EXCEPTIONS.   NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.  The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10.   CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast.  Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11.   COMPLIANCE WITH LAWS.   Each party hereto represents that it its duly authorized to enter into the Agreement and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12.   EXPORT.  Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received.   Hashfast's acceptance of any order is contingent upon the issuance of any applicable export license required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13.   REGULATORY REQUIREMENTS. Hashfast is not responsible for determining whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which such Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14.   ASSIGNMENT AND SETOFF.  Buyer shall not assign any rights or obligations under the Agreement without the prior written consent of Hashfast. Buyer hereby

Case 14-30725    Doc# 234-1   Filed 09/28/16   Entered 09/28/16 12:58:33    Page 24
of 34

waives any and all rights to offset existing and future claims against any payments due for Products sold under the Agreement or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15.  GOVERNING LAW AND ARBITRATION.

(a)  ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising (each, a "Dispute") shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect on this Agreement.

(b)  ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c)  THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d)  The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or the Agreement is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed. The arbitrator(s) will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law. Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e)  NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(f)  The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g)  Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16.  BREACH AND TERMINATION. Without prejudice to any rights or remedies Hashfast may have under the Agreement or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect the Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon occurrence of any of the events referred to above under (i) through (iv), all

payments to be made by Buyer under the Agreement shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3(b)-(c), 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-24.

17.  PRODUCT AND PRODUCTION CHANGES. Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18.  U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 97 South Second Street #175, San Jose, 95113 United States.

19.  FORCE MAJEURE. Hashfast party will not be deemed in default of an Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20.  ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affiliate. No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision will be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21.  REJECTION OF OTHER TERMS, ACCEPTANCE BY AGENTS. Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast.

22.  CONTRACT CONSTRUCTION. In the event that any provision(s) of the Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or". The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation."

23.  WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24.  NOTICES. All notices or communications to be given under this Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25.  RELATIONSHIP OF PARTIES. The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

Case 14-30725    Doc# 234-1    Filed 09/01/16    Entered 09/01/16 12:58:33    Page 25 of 34

# EXHIBIT 2-D

```
1
2   I only want what HashFast promised me, which is the following
3
4   if the hardware is not delivered by Dec 31, 2013, a full refund will be given.(210.39313812
    BTC).
5
6   There are 2 important clauses pertinent to this situation, one from the order confirmation
    agreement and one email between me and HashFast.  I specifically asked hashfast vie email of
    the refund policy if all my bitcoins would be returned in the event they did not deliver.
7
8
9   1. ORDERCONFIRMATION:  (HASHFAST WILL REFUND THE PAYMENT )  PAYMENT WAS IN BITCOINS.
10
11          Baby Jet Delivery Dates. All of the 550 Baby Jet units from HashFast's first
            production batch are guaranteed for delivery by December
12  31, 2013. If Buyer ordered one or more units of such Baby Jets, and HashFast does not
            deliver such units by that date, then Buyer may
13          cancel the undelivered portion of the order at Buyer's request and HashFast WILL
            REFUND THE PAYMENT for the units that Buyer purchased
14          but did not receive and cancelled. This cancellation and refund is Buyer's sole and
            exclusive remedy for HashFast failing to deliver by
15          the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by
            January 15, 2014 to avail itself of this remedy.
16          Buyer to pay all taxes, duties and shipping costs.
17
18
19  2. EMAIL OF REFUND POLICY BEFORE I ORDERED.
20
21          HashFast Support <bitpaysupport@hashfast.com>
22          8/16/13
23
24          Hi Jim,
25          Thank you so much for your patience while I got the answer for you, I greatly
            appreciate it.
26
27          The answer is if you buy Baby Jet for 51 BitCoins today and it does not ship, you will
            be refunded the 51 BitCoins you paid.
28
29          I hope that helps and hope you have a good weekend!
30
31          Thanks,
32          Cara
33
```

Case 14-30725    Doc# 46-1    Filed 02/11/16    Entered 02/11/16 12:58:33    Page 27
Case 14-30725    Doc# 144-1    Filed 08/12/16    Document    Page 1 of 38    Page 28
of 34

# EXHIBIT 3

Ray E. Gallo (State Bar No. 158903)
Patrick V. Chesney (SBN 267587)
Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Phone: 415.257.8800
rgallo@gallo-law.com
pchesney@gallo-law.com

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

In re

HASHFAST TECHOLOGIES, LLC,

                Debtor,

and

In re

HASHFAST LLC,

                Debtor.

Case No. 14-30725
(jointly administered with Case No. 14-30866)

Chapter 11

**DECLARATION OF CARMEL MANION IN SUPPORT OF PROOFS OF CLAIM SUBMITTED ON BEHALF OF "BATCH 1" UNSECURED CREDITORS REPRESENTED BY GALLO LLP**

Judge: Hon. Dennis Montali

I, Carmel Manion, declare as follows:

1.      From October 16, 2013 until on or about May 7, 2014, I worked for debtor HashFast Technologies, LLC ("HashFast") as the Executive Assistant to HashFast's then-CEO, Eduardo deCastro. As a result, I was in a position to personally see and hear the things described below, and did so. I therefore have personal knowledge of the following facts. If called and sworn as a witness, I could and would testify competently

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

as follows.

2.      In early to mid-December, 2013, while sitting at my desk, I overheard a conversation between Hashfast's then-CEO and founder Eduardo deCastro and Hashfast's Chief Technology Officer and founder Simon Barber. These two men were just a few feet away from my desk at the time. There was no background noise or other circumstance that limited my ability to hear clearly, and I heard their conversation.

3.      As I listened, DeCastro and Barber discussed their realization that Hashfast would be unable to meet the December 31, 2013 delivery deadline for Batch-1 orders, and that Hashfast would therefore owe refunds to Batch-1 customers who requested them.

4.      As I listened, Barber specifically reminded deCastro that he (Barber) and Hashfast had promised Batch-1 customers that Hashfast would return the Bitcoin each customer paid if Hashfast failed to deliver their Batch-1 order(s) by the promised December 31, 2013 delivery deadline. As I listened, DeCastro specifically acknowledged that this was his understanding of the Batch-1 order terms and conditions as well.

5.      As I listened, Barber and deCastro then discussed Hashfast's inability to repay those bitcoins, and the dramatic increase in the value of Bitcoin since the timeframe of the August 2013 Batch 1 orders.

I, Carmel Manion, declare under penalty of perjury under the laws of the United States of America that the foregoing statement is true and correct. Executed on August 20, 2014 at Fremont, California.

Carmel Manion
Carmel Manion

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

# EXHIBIT 4

1    Ray E. Gallo (State Bar No. 158903)
     Patrick V. Chesney (SBN 267587)
2    Gallo LLP
     1299 Fourth St., Suite 505
3    San Rafael, CA  94901
     Phone:  415.257.8800
4    rgallo@gallo-law.com

5    *Attorneys for Petitioning Creditors*
     *Hamilton Hee, et al.*
6

7

8

9

10              **UNITED STATE BANKRUPTCY COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                  **SAN FRANCISCO DIVISION**

13

14   In re                              Case No. 14-30725
                                        (jointly administered with Case No. 14-
15   HASHFAST TECHOLOGIES, LLC,         30866)

16                      Debtor,         Chapter 11

17   and                               **DECLARATION OF PATRICK V.**
                                        **CHESNEY IN SUPPORT OF PROOFS OF**
18   In re                             **CLAIMS**

19   HASHFAST LLC,

20                      Debtor.         Judge: Honorable Dennis Montali

21

22

23

24

25

26

27

28
                              Page 1

Case 14-30725    Claim 25-1   **DECLARATION OF PATRICK V. CHESNEY**   Desc Main Document   Page 32 of 33
                              of 34

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

1

## DECLARATION OF PATRICK V. CHESNEY

2

I, Patrick V. Chesney, declare as follows:

3

      1.     I am an attorney at law duly licensed to practice before this Court. I have

4

personal knowledge of the following facts and, if called as a witness, I would testify as

5

follows:

6

      2.     Claimant's claim amount, as recorded in Box 1 of the accompanying Proof

7

of Claim, is calculated using a conversion rate of $770.4357 U.S. Dollars per Bitcoin,

8

which was the quoted exchange rate as of the close of business on January 1, 2014, by the

9

CoinDesk Bitcoin Price Index ("BPI").

10

      3.     The CoinDesk BPI is calculated by averaging the exchange rates recorded

11

by the major Bitcoin exchanges. The CoinDesk BPI's historical price data may be found

12

online at http://www.coindesk.com/price/.

13

14

I certify under penalty of perjury under California law that the foregoing is true and

15

correct. Signed this 16th day of September 2014 at Los Angeles, California.

16

17



18

               Patrick V. Chesney

19

20

21

22

23

24

25

26

27

28