Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
          mdelaney@bakerlaw.com

- and -

Mark E. Felger (*pro hac vice*)
**COZEN O'CONNOR**
1201 North Market Street, Suite 1001
Wilmington, DE 19899
Telephone: 302-295-2000
Facsimile: 302-295-2013
Email: mfelger@cozen.com

Attorneys for MICHAEL G. KASOLAS,
Trustee of the Hashfast Creditor Trust

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Lead Case No.: 14-30725 DM |
| HASHFAST TECHNOLOGIES, LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor. | Case No.: 14-30866 DM |
| | Chapter 11 |
| x  Affects HASHFAST LLC, a Delaware limited liability company, | [No Hearing Required – B.L.R. 9014-1(b)(3)] |
| Debtor. | |

## MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY WITH CERTAIN FORMER DIRECTORS AND OFFICERS OF THE DEBTORS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Michael G. Kasolas, (the "Liquidating Trustee"), the trustee for the Hashfast Creditor Trust ("Trust"), pursuant to Local Bankruptcy Rule 9014-1(b)(4), Rule 9019(a) of the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules"), and Section 105(a) of the Bankruptcy Code, files this motion (the "Motion") for approval of compromise of controversy with certain former directors and officers of the above-captioned debtors (the "Debtors"), and in support of the motion respectfully represents as follows:

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (San Francisco Division) (the "Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 1334 and 157.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

1.      On May 9, 2014 (the "Petition Date"), certain petitioning creditors filed a chapter 7 Involuntary Petition against Hashfast Technologies LLC under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") [Doc. No.1].  On June 3, 2014, Hashfast Technologies LLC filed its Conditional Consent to an Order for Relief [Doc. No. 36] and its Motion to Convert to Chapter 11 [Doc. No. 35].  This Court entered its order converting Hashfast Technologies LLC's case to one under chapter 11 on June 5, 2014 [Doc. No. 40].

2.      On June 6, 2014, Hashfast LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      On July 9, 2014, this Court granted the Debtors' motion to jointly administer their cases [Doc. No. 12].

4.      On or about July 23, 2014, the Official Committee of Unsecured Creditors (the "Committee") filed its motion to substantively consolidate the Debtors' bankruptcy estates, which this Court granted on September 28, 2014 [Doc. No. 202].

- 2 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5.      On June 23, 2015, this Court entered its Order Approving on a Final Basis and Confirming the Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC and Hashfast LLC, dated June 4, 2015 (the "Confirmation Order"). The Confirmation Order confirmed the Consolidated Plan of Liquidation for Hashfast Technologies, LLC and Hashfast LLC [Doc. No. 316] (the "Plan").

6.      Pursuant to the Plan and the Confirmation Order, the Debtors and their estates transferred all causes of action, including, without limitation, all claims and causes against the Debtors' former directors and officers, to the Trust. Accordingly, the Trust is the proper party with full authority and standing to assert and compromise the claims and causes of action formerly belonging to the Debtors and/or their creditors. The Liquidating Trustee is the duly appointed trustee for the Trust with exclusive authority to act on behalf of the Trust.

7.      According to the terms of the Plan and the Trust agreement, the Liquidating Trustee may retain counsel on a contingency fee basis, provided that he files a notice setting out the terms of the retention and provides a fourteen (14) day period for parties to object. If no timely objection is filed, then the retention is deemed approved and the Liquidating Trustee may retain and compensate counsel without further order of the Court.

8.      The Liquidating Trustee retained Cozen O'Connor as special counsel to investigate and potentially pursue claims and causes of action against the Debtors' former directors and officers. Pursuant to the terms of the Plan, the Liquidating Trustee filed and served a notice with the Court setting out the terms of Cozen's retention, and no objections were filed.

9.      The Liquidating Trustee, through his special counsel (with assistance from his general counsel (former Committee counsel)), undertook an investigation[1] to determine whether claims and causes of action should be pursued against the Debtors' former directors and officers based upon their acts and omissions both prior to and during these chapter 11 cases (the "D&O Claims").

---

[1] The investigation was commenced by the Committee, by and through its counsel, Baker Hostetler, before it was dissolved. On December 31, 2014, the Committee served a notice of circumstances upon the Debtors, which in turn was delivered to the D&O Carrier (defined herein), preserving insurance coverage for the D&O Claims.

- 3 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

10.    The Liquidating Trustee's investigation of the D&O Claims has included a review of voluminous documents from the Debtors and third parties, including the Committee. The investigation has also included interviews and the review of transcripts of Rule 2004 examinations of numerous individuals, including potential fact witnesses, and an analysis of various legal issues under both Delaware and California law.

11.    The investigation revealed, among other things, that on or about January 24, 2014, the Debtors took out a business and management indemnity policy (the "D&O Policy"). The issuer of the D&O Policy is Scottsdale Insurance Company ("D&O Carrier") and the maximum aggregate coverage amount is $3 million. The D&O Policy is what is commonly referred to as a "wasting policy" which means that the aggregate coverage amount is depleted by the costs of defense.

12.    The investigation lead to a conclusion by the Liquidating Trustee that the D&O Claims ought to be pursued at least initially against certain former directors and/or officers, Eduardo DeCastro, Simon Barber and Roy Petruschka (the "Former Directors and Officers"), and a direction to counsel to prepare and draft a complaint.

13.    Rather than commencing litigation against the Former Directors and Officers, the Liquidating Trustee, through his special counsel, delivered a copy of the draft complaint to counsel for the Former Directors and Officers and the D&O Carrier and inquired whether they were willing to engage in a pre-litigation mediation process to determine whether the claims and causes against the Former Directors and Officers could be settled without litigation.

14.    All parties agreed to this procedure, and on November 10, 2016, the Liquidating Trustee, the Former Directors and Officers, and the D&O Carrier (and their respective counsel) participated in an all-day voluntary mediation session with respect to the D&O Claims with former California Superior Court (now with ADR Services, Inc.) Judge Enrique Romero serving as mediator (the "Mediator").

15.    With the assistance of the Mediator, the Liquidating Trustee, and the Former Directors and Officers have agreed to settle and resolve the D&O Claims on the terms and conditions set forth in the Settlement Agreement. The Settlement Agreement is the product of

- 4 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

arm's length, good faith negotiations between and among the Liquidating Trustee, the Former Directors and Officers and the D&O Carrier.

## RELIEF REQUESTED

By this Motion, the Liquidating Trustee respectfully seeks an order of this Court approving the attached Settlement Agreement (**Exhibit A**), authorizing the Liquidating Trustee to take any and all actions as may be necessary and appropriate to implement the terms and provisions of the Settlement Agreement, and providing that the Court retain jurisdiction to enforce the Settlement Agreement.

The complete terms and conditions of the Liquidating Trustee's settlement with the Former Directors and Officers are more fully set forth in the Settlement Agreement, which should be read in its entirety. Key provisions of the Settlement Agreement include, *inter alia*, the following:[2]

a.      __Consideration and the Timing Requirements Thereof.__

(i)      The Insureds shall cause to be paid $650,000 (six hundred and fifty thousand dollars) by check to the Liquidating Trustee or his authorized representative (the "Settlement Payment").

(ii)      It is a condition precedent to the duty to make the Settlement Payment that the Settlement Agreement become effective and binding upon the Parties as provided in the above section describing the requirement of the Approval Order becoming final, and if that condition is met, the Settlement Payment will be made within ten (10) business days after all of the following events have occurred:

(a)      D&O Carrier's receipt of a copy of its confidential related separate agreement with the Insureds signed by each of the Insureds (which confidential related separate agreement the Insureds represent is currently in a form acceptable to the D&O Carrier and the Insureds and will be delivered to the D&O Carrier within five (5) days after the Approval Order becomes final);

(b)      D&O Carrier's receipt of a fully executed copy of the Settlement Agreement (which the Insureds represent they will provide to the D&O Carrier promptly after receiving a fully executed copy of the Settlement Agreement);

---

[2] To the extent the settlement terms referenced in the Motion are inconsistent with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control. Further, capitalized terms not defined in this Motion shall have the meaning ascribed to such terms in the Settlement Agreement.

- 5 -

MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY
610140008.4

(c) D&O Carrier's receipt of a copy of the Approval Order (which the Insureds represent they will promptly provide to the D&O Carrier after receiving it from the Liquidating Trustee);

(d) The expiration of fifteen (15) calendar days after the date of entry of the Approval Order without any appeal having been filed therefrom, affirmance of the Approval Order on appeal, or dismissal of all appeals from the Approval Order, whichever occurs first; and

(e) D&O Carrier's receipt of a completed W-9 form for the payee of the Settlement Payment and all necessary payment instructions (which the Insureds represent that they will provide to the D&O Carrier promptly after the Liquidating Trustee provides it to them), which document and payment instructions will need to be provided to the D&O Carrier within five (5) business days prior to the deadline to send the Settlement Payment.

b. **Releases**

(i) **The Liquidating Trustee's Release of the Insured Parties.** Except for the rights and obligations created or preserved by the Settlement Agreement, and contingent upon full and timely performance by the Insureds of their obligations hereunder, as well as the entry of the Approval Order described herein, Liquidating Trustee, on behalf of the Trust and the Estate, fully and forever generally releases, acquits and discharges the Insureds, Monica Hushen, Tim Wong, all other "Directors and Officers" as defined under the D&O Policy, Roy Petruschka,[3] and their respective past, present, and future agents, representatives, attorneys, successors, heirs, executors, administrators, principals, assigns and insurers, including but not limited to D&O Carrier (collectively, the "Insured Parties") from any and all claims, demands, rights, rights to fees of all kinds, causes of action, damages, losses, attorneys' fees and expenses, and costs of every kind and nature whatsoever, known or unknown, fixed or contingent, which the Estate and Trust ever had or now have against the Insured Parties, without limitation, but expressly including (i) the D&O Claims, (ii) D&O claims the Liquidating Trustee alluded to at the mediation against Monica Hushen and Tim Wong and (iii) preference claims against the Insureds, Monica Hushen, Tim Wong and all other individuals who are covered under the D&O Policy, and Roy Petruschka. The Liquidating Trustee expressly agrees that each and every person and entity identified above within the scope of the definition of "Insured Parties," who is not a signatory to the Settlement Agreement, is nonetheless, a third party beneficiary of this Release.

---

[3] The D&O Claims identify Roy Petruschka as a former director of the Debtors, with the corresponding fiduciary duties alleged in the D&O Claims. The Parties are informed and believe that Mr. Petruschka denies ever serving as an officer or director of the Debtors, and for purposes of the Settlement Agreement, the Parties do not dispute his denial. Therefore, the Parties specifically agree that the Liquidating Trustee's release of the Insureds is special, as pertaining to Mr. Petruschka, in two important respects: (1) it is granted to him even though he denies ever serving as an officer, director or executive of the Debtors, and (2) it is voidable by the Liquidating Trustee in the event Mr. Petruschka asserts a claim against the Estate or the Trust.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(ii)     **The Insureds' Release of the Trustee.**  Except for the rights and obligations created or preserved by the Settlement Agreement, and contingent upon the entry of an Approval Order as described herein, the Insureds fully and forever generally release, acquit and discharge the Liquidating Trustee, the Debtors and the Estate, together with any and all of the Liquidating Trustee's and/or the Estate's past and present affiliates, parents, subsidiaries, predecessors, successors, employees, agents, partners, officers, directors, shareholders, members, insurers, attorneys, assigns, servants, heirs, executors, administrators and representatives (the "Estate Released Parties"), from any and all claims, demands, rights, rights to fees of all kinds, causes of action, damages, losses, attorneys' fees and expenses, and costs of every kind and nature whatsoever, known or unknown, fixed or contingent, which the Insureds ever had or now have against the Estate Released Parties, including, without limitation, any rights or interest in any distribution that may be made by the Trust in connection with the Debtors' bankruptcy cases.

(iii)     **Waiver of California Civil Code § 1542.**  The Parties acknowledge that they have read, considered and understand the provisions and significance of Section 1542 of the California Civil Code which presently provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

The Parties expressly waive any and all rights they have or may have under Civil Code § 1542, as now worded or hereafter amended, with respect to the releases set forth in Section 4 of the Settlement Agreement.   In connection with this waiver, the Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to the claims, matters and causes of action released by the Settlement Agreement.  Nevertheless, the Parties intend by the Settlement Agreement to release fully, finally and forever all matters released in the Settlement Agreement.  In furtherance of such intention, the releases as set forth in the Settlement Agreement shall be and remain in effect as full and complete releases of such matters notwithstanding the discovery or existence of any additional or different claims or facts relevant thereto.  It is expressly understood and agreed that this waiver of Civil Code § 1542 and the releases are material terms of the Settlement Agreement, and were negotiated between and among the Parties.

c.     **Tolling of Statutes of Limitations and Time Based Defenses.**  The Parties stipulate and agree that all statutes of limitations, statutes of repose, all other time limitations or constraints, and defenses based upon the passage of time that have not expired before the date of the Settlement Agreement (pursuant to applicable law and/or prior tolling agreements executed by the Parties) including, without limitation, laches, waiver, estoppel, and the two year extension of all applicable statutes of limitations under 11 U.S.C. §§ 108(a) and 546(a), applicable to any and all claims against or relating to the Insureds, including, but not limited to the D&O

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725     Doc# 515     Filed: 01/06/17     Entered: 01/06/17 16:26:37     Page 7 of 30
610140008.4

Claims, are and shall be tolled from the date of the Settlement Agreement through and including the sixtieth (60th) day after the Approval Order becomes final (the "<u>Tolling Period</u>"), unless the Tolling Period is further extended in writing by the Parties to be affected. Notwithstanding anything herein to the contrary, this provision shall survive and remain in effect and binding on the Parties, even in the event that the Settlement Agreement is not approved by the Bankruptcy Court.

## BASIS FOR RELIEF REQUESTED

The Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Rule 9019(a) of the Bankruptcy Rules provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The Court has great latitude in approving a compromise agreement. *In re Woodson*, 839 F2.d 610, 620 (9th Cir. 1988).

Settlement of time-consuming and burdensome litigation claims, especially in the bankruptcy context, is encouraged. *In re Protective Comm. For Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). For a compromise to be approved, the proposed compromise must be fair and equitable. *Id.* In determining the fairness and equity of a compromise, the bankruptcy court must apprise itself of all facts necessary to form an intelligent and objective opinion of the probability of ultimate success should the claims be litigated, and estimate the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Id.*; *see also Martin v. Kane*, 784, F.2d 1377, 1380-84 (9th Cir. 1986). The Court need not, however, conduct an exhaustive investigation into the validity of the claims to be compromised, nor is the Court expected to conduct a mini-trial on the merits. *Walsh Const., Inc. v. Alaska Nat'l Bank of the North*, 669 F.2d 1325, 1328 (9th Cir. 1982).

The purpose of any compromise agreement is to avoid the expenses and burdens associated with litigating sharply contested and dubious claims. *Walsh Constr.*, 669 F.2d at 1328 (citing *Wil-Rud Corp. v. Lynch (In re Cal Assoc. Prod.*), 183 F.2d 946, 949-50 (9th Cir. 1950)). The law favors compromise and not litigation for its own sake. *Port O'Cail mv. V. Blair (In re*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

610140008.4

*Blair*), 538 F.2d 849, 851 (9th Cir. 1976). In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, a court should consider: "(1) the probability of success in litigation, (2) the difficulties, if any, to be encountered in the matter of collection, (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of the creditors and the proper deference to their reasonable views. *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). Consideration of these factors does not require the Court to decide questions of law and fact in the parties' dispute or to determine that the settlement is the best possible resolution; instead, the Court need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

The Liquidating Trustee submits that the Settlement Agreement meets the foregoing requirements. Applying the above standards to the circumstances here, the Motion should be granted and the Settlement Agreement approved.

### A.    <u>Probability of Success in Litigation</u>

The D&O Claims are hotly contested and extremely complex. The claims resolved by the Settlement Agreement involve complicated issues regarding: (i) a number of extremely fact intensive issues over whether the D&O Policy provides coverage for the D&O Claims; (ii) whether and at what point the Debtors became insolvent; (iii) whether under California and/or Delaware law the Former Directors and Officers owed and breached their fiduciary duties of loyalty, good faith, and/or care; (iv) whether and to what extent the Debtors sustained damages caused by the actions or inaction of the Former Directors and Officers; and (v) certain other defenses which have been or may be asserted by the Former Directors and Officers. While the Liquidating Trustee avers with vigor that the Former Directors and Officers engaged in various acts and omissions that are actionable, the Former Directors and Officers deny with equal vigor that they engaged in any wrongful activities. Further, the D&O Carrier disputes that the D&O policy provides coverage for the D&O Claims for a number of reasons, including a breach of representations and warranties in connection with the insurance application. The D&O Carrier is prepared to file a declaratory judgment complaint to contest coverage. The parties believe that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

they have strong legal positions, but they also recognize that litigation is inherently risky and that the outcome is far from certain. Any litigation also would involve addressing and resolving complicated California and/or Delaware entity governance issues, including the effects of various clauses in the Debtors' organizational documents and the business judgment rule on the D&O Claims against the Former Directors and Officers. The issues, no matter how they would be decided by the Court, are such that the losing party would be likely to pursue appellate review. While there are a myriad of disputed issues, there are certain issues that, if decided against the Liquidating Trustee, could severely impair, if not preclude, a recovery for the creditors. Litigation over these issues would serve only to delay and erode the ultimate recovery for the creditors.

### B. Likely Difficulties in Collection

The D&O Policy covering the D&O Claims has an applicable $3 million "wasting asset" limit of liability, meaning that payment of defense costs reduces the limit of liability and, therefore, the amount available to respond to settlements and judgments. The D&O Carrier has been advancing defense costs to three law firms for the directors' and officers' defense in connection with the Liquidating Trustee's demand; the voluntary exchange of documents and information; the preparation of mediation statements and materials; the preparation for and participation in formal mediation; and the memorialization of the terms of the settlement as set forth in the Settlement Agreement. Absent approval of the Settlement Agreement, litigation will commence on two fronts (Liquidating Trustee's complaint and the D&O Carrier's declaratory judgment complaint), which would likely serve to substantially deplete the remaining available insurance proceeds through the conclusion of a trial and any and all appeals. Indeed, because the Former Directors and Officers believe that the Liquidating Trustee's allegations impugn their motives and integrity and could negatively affect their reputations, the directors and officers would be motivated to "leave no stone unturned" in their litigation defense, incurring concomitantly substantial defense costs that would erode significantly the remaining D&O Policy proceeds available to satisfy any judgment the Liquidating Trustee may recover. The Liquidating Trustee has inquired into the adequacy of the personal assets of the Former Directors and Officers

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to satisfy a judgment – particularly one that is materially greater than the Settlement Payment amount – and the result of this inquiry suggests that the Former Directors and Officers are not "deep pockets" and any adverse judgment would not result in a recovery greater than the settlement amount and likely would result in bankruptcy filings by some or all of the individuals.

## C. Complexity of Litigation Involved, and Expense, Inconvenience, and Delay Associated with Litigation

As set forth above, the D&O Claims involve complex legal and factual issues regarding insurance coverage issues, and alleged breaches of fiduciary duty, based on challenges to actions, inactions, and business decisions made by some or all of the Former Directors and Officers (and possibly others) in connection with the operations and business dealings and transactions of and among the Debtors, insiders, and others, which would likely require protracted litigation. In addition, litigation would be complex and expensive to pursue because it will require, among other tasks, forensic accounting of the Debtors, factual discovery and expert witness testimony at trial that, as noted above, will erode the D&O Policy by having to pay the defense costs of the various professionals representing and working on behalf of the Former Directors and Officers. Further, the Former Directors and Officers (and the D&O Carrier) have raised substantial defenses to the D&O Claims and, as noted above, have convinced the Liquidating Trustee of their intention to vigorously defend the claims at trial and appellate levels, if a settlement is not effectuated. The settlement avoids these obstacles in favor of a prompt and efficient resolution.

## D. Paramount Interest of Creditors

The settlement also serves the paramount interest of creditors. Resolution of the D&O Claims through the Settlement Agreement represents a successful outcome for the Debtors' creditors by efficiently settling significant claims on favorable terms, while obviating the need for potentially protracted litigation, which would likely serve to substantially deplete the remaining available insurance proceeds if required to litigate through the conclusion of trial and any and all appeals. Further, the settlement will enable the Liquidating Trustee to move forward with the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  completion of the administration of these cases and distributions to creditors, and avoid what

2  could be years of litigation, including appeals, in connection with these claims.

3      Based on the foregoing, the Liquidating Trustee submits that approval of the Settlement

4  Agreement is in the best interests of the creditors, because it eliminates the risk of no recovery,

5  and the possibility of any protracted litigation with the settling parties; eases the administrative

6  burden on these estates; and provides for a meaningful recovery in the amount of $650,000 (less

7  special counsel's costs and one third contingency fee) for the Debtors' creditors.  The Settlement

8  Agreement therefore represents a compromise between and among the Liquidating Trustee and

9  the Former Directors and Officers that is fair and equitable and in the best interests of the

10  creditors.

11                                      **NOTICE**

12      Notice of this Motion will be given to:  (a) counsel to the Debtors; (b) the United States

13  Trustee; (c) counsel for each of the Former Directors and Officers; (d) counsel for the D&O

14  Carrier; (e) the Debtors' twenty largest unsecured creditors; and (f) all parties in interest having

15  requested notice to date pursuant to Rule 2002 of the Bankruptcy Rules.  In light of the nature of

16  the relief requested herein, the Liquidating Trustee submits that no other or further notice need be

17  given.

18      No previous motion or other request for the relief sought herein has been made to this or

19  any other Court.

20                                    **CONCLUSION**

21      WHEREFORE, the Liquidating Trustee respectfully requests that the Court enter an order

22  in the form attached hereto (a) granting this Motion in its entirety, (b) approving the Settlement

23  Agreement without material modification, (c) authorizing the Liquidating Trustee to take any and

24  all actions necessary or appropriate to implement the terms and provisions of the Settlement

25  Agreement, and (d) providing that the Court retain jurisdiction to enforce the Settlement

26  Agreement.

27

28

Dated:    January 6, 2017         Respectfully submitted,

**BAKER & HOSTETLER LLP**


By:    /s/ Michael T. Delaney
       Ashley M. McDow
       Michael T. Delaney

Attorneys for MICHAEL G. KASOLAS,
Trustee of the Hashfast Creditor Trust

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725    Doc# 515    Filed: 01/06/17    Entered: 01/06/17 16:26:37    Page 13 of 30
610140008.4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF MICHAEL G. KASOLAS

I, Michael G. Kasolas, hereby declare:

1.     I am the duly appointed, qualified and acting trustee for the Hashfast Creditor Trust.  I make this declaration in support of the *Motion for Approval of Compromise of Controversy with Certain Former Directors and Officers of the Debtors* (the "Motion").  Unless otherwise defined herein, all capitalized terms shall have the same meaning as ascribed to them in the Motion.  Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to the same.

2.     Pursuant to the Plan and the Confirmation Order, the Debtors and their estates transferred all causes of action, including, without limitation, all claims and causes against the Debtors' former directors and officers, to the Trust.  Following the confirmation of the Plan, I undertook an investigation to determine whether certain potential claims and causes of action should be pursued against the Debtors' former directors and officers based upon their acts and omissions both prior to and during these chapter 11 cases.

3.     My investigation of the D&O Claims has included reviewing of voluminous documents from the Debtors and third parties, including the Committee.  The investigation has also included interviews and the review of transcripts of Rule 2004 examinations of numerous individuals, including potential fact witnesses, and analyzing various legal issues under both Delaware and California law.

4.     The investigation revealed, among other things, that on or about January 24, 2014, the Debtors took out a business and management indemnity policy.  The issuer of the D&O Policy is Scottsdale Insurance Company and the maximum aggregate coverage amount is $3 million.  The D&O Policy is what is commonly referred to as a "wasting policy," which means that the aggregate coverage amount is depleted by the costs of defense.

5.     Based on the investigation, I concluded that the D&O Claims ought to be pursued at least initially against certain former directors and/or officers, Eduardo DeCastro, Simon Barber and Roy Petruschka.  Accordingly, I directed counsel to prepare and draft a complaint.

/ / /

- 14 -

Case: 14-30725     Doc# 515     Filed: 01/06/17     Entered: 01/06/17 16:26:37     Page 14 of
30

6.      Rather than commencing litigation against the Former Directors and Officers, the Trust's special counsel delivered a copy of the draft complaint to counsel for the Former Directors and Officers and the D&O Carrier and inquired whether they were willing to engage in a pre-litigation mediation process to determine whether the claims and causes against the Former Directors and Officers could be settled without litigation.

7.      All parties agreed to this procedure, and on November 10, 2016, the Former Directors and Officers, the D&O Carrier, and I participated in an all-day voluntary mediation session with respect to the D&O Claims with retired California Superior Court Judge Enrique Romero serving as mediator.

8.      With the assistance of the Mediator, the Former Directors and Officers and I have agreed to settle and resolve the D&O Claims on the terms and conditions set forth in the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.** The Settlement Agreement is the product of arm's length, good faith negotiations between and among the Liquidating Trustee, the Former Directors and Officers and the D&O Carrier. I believe the Settlement Agreement represents the best resolution of the D&O Claims as it avoids complex, expensive and uncertain litigation that would substantially erode the potential recovery under the D&O Policy due to the "wasting" nature of the D&O Policy. This belief is further supported by (a) our understanding that the Former Directors and Officers do not have the financial resources to satisfy a substantial judgment and the D&O Policy is the only source for a meaningful recovery, and (b) the fact that resolving the D&O Claims pursuant to the Settlement Agreement provides a guaranteed recovery for the Estates without the need to incur potentially substantial costs and expose the Estates to the risks and delay associated with prosecuting the D&O Claims.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of January, 2017, at San Francisco, California.

Michael G. Kasolas

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is entered into as of November 10, 2016, and is by and among Michael G. Kasolas, in his capacity as trustee of the Hashfast Creditor Trust (the "Liquidating Trustee"), Simon Barber ("Barber") and Edward L. Rodriguez deCastro ("deCastro"). Barber and deCastro are sometimes collectively referred to herein as the "Insureds." The Liquidating Trustee and the Insureds are sometimes collectively referred to hereinafter as the "Parties."

## RECITALS

**WHEREAS**, on May 9, 2014 (the "Petition Date"), five (5) petitioning creditors commenced a bankruptcy case against Hashfast Technologies LLC ("HFT") by filing a chapter 7 involuntary petition against HFT with the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), case number 14-30725, which case was thereafter converted to a case under chapter 11 of the Bankruptcy Code on June 3, 2014;

**WHEREAS**, on June 6, 2014, Hashfast LLC ("HF" and together with HFT, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, case number 14-30866;

**WHEREAS**, on or about September 28, 2014, the Bankruptcy Court entered an order substantively consolidating the HFT and HF bankruptcy cases, thereby creating one bankruptcy estate (the "Estate");

**WHEREAS**, on June 4 2014, HFT and HF filed their *Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC and Hashfast, LLC, Dated June 4, 2015* (the "Plan"). The Plan contemplated the establishment of the Hashfast Creditor Trust (the "Trust"), appointment of the Liquidating Trustee as trustee for the Trust, and the transfer of all of the Estate's causes of action to the Trust, which causes of action would be administered by the Liquidating Trustee for the benefit of the creditors and beneficiaries of the Trust;

**WHEREAS**, on June 25, 2015, the Bankruptcy Court entered its *Order Approving on a Final Basis and Confirming the Consolidated Plan of Liquidation and Disclosure Statement for Hashfast Technologies, LLC and Hashfast, LLC, dated June 4, 2015* (the "Order Confirming Plan");

**WHEREAS**, on July 13, 2016, the Trustee sent a demand letter and draft complaint to the Insureds and Scottsdale Insurance Company (the "D&O Carrier") identifying various allegedly wrongful acts by the Insureds in their management of Debtors (the "D&O Claims");

/ / /

/ / /

1

**WHEREAS,** D&O Carrier issued Business and Management Indemnity Policy No. EKS3120738 to HFT for the period from January 24, 2014, through January 24, 2015 (the "D&O Policy");

**WHEREAS,** on November 10, 2016, the Parties participated in a day-long mediation in San Francisco, California, wherein they reached a good faith consensual resolution and agreed to the basic terms to be included in the Settlement Agreement;

**WHEREAS,** the primary purpose of the Settlement Agreement is to settle and resolve all of the claims against the Insureds related to the Debtors' Bankruptcy Cases that the Estate, the Trust and the Liquidating Trustee may have, including all claims arising from the D&O Claims, and preference claims, and settle all outstanding known and unknown claims and disputes between the Liquidating Trustee, on the one hand, and the Insureds, on the other hand;

**WHEREAS,** the Parties require Bankruptcy Court approval of the Settlement Agreement in accordance with Bankruptcy Rule 9019, as a condition precedent to all of the agreements and covenants of all of the Parties set forth in the Settlement Agreement, and the Liquidating Trustee is willing to, and will take the lead in seeking the Bankruptcy Court's approval of the Settlement Agreement;

**NOW, THEREFORE,** in consideration of the agreements and covenants hereinafter set forth, the Parties, intending to be legally bound, agree as follows:

**TERMS**

1.      **Recitals.** The Recitals set forth above are incorporated herein by this reference. The Recitals set forth above are not only recitals but form an integral part of the Settlement Agreement.

2.      **Approval Order.** The Settlement Agreement shall not become effective and binding upon the Parties until an order of the Bankruptcy Court approving the Settlement Agreement becomes final. Promptly after full and complete execution of the Settlement Agreement by all Parties, the Liquidating Trustee will file a motion and/or commence other appropriate proceedings requesting that the Bankruptcy Court issue an order approving and authorizing the Settlement Agreement (the "Approval Order"). For purposes of the Settlement Agreement, the Parties agree that the Approval Order shall be considered final after the expiration of fifteen (15) calendar days after the date of entry of the Approval Order, without any appeal having been filed therefrom, affirmance of the Approval Order on appeal, or dismissal of all appeals from the Approval Order, whichever occurs first. The Parties hereby waive any right to appeal, petition for certiorari, or move for re-argument or rehearing the entry of the Approval Order. All rights and obligations of the Parties identified in the Settlement Agreement are specifically conditioned upon the Parties obtaining a final Approval Order. The Parties agree to cooperate with the Liquidating Trustee in seeking the Approval Order, and to take such action, and to execute any and all further documents that may be reasonably necessary or appropriate to request the Approval Order.

2

3. **Consideration and the Timing Requirements Thereof.**

a. The Insureds shall cause to be paid $650,000 (six hundred and fifty thousand dollars) by check to the Liquidating Trustee or his authorized representative (the "Settlement Payment").

b. It is a condition precedent to the duty to make the Settlement Payment that the Settlement Agreement become effective and binding upon the Parties as provided in the above section describing the requirement of the Approval Order becoming final, and if that condition is met, the Settlement Payment will be made within ten (10) business days after all of the following events have occurred:

(i) D&O Carrier's receipt of a copy of its confidential related separate agreement with the Insureds signed by each of the Insureds (which confidential related separate agreement the Insureds represent is currently in a form acceptable to D&O Carrier and the Insureds and will be delivered to the D&O Carrier within five (5) days after the Approval Order becomes final);

(ii) D&O Carrier's receipt of a fully executed copy of the Settlement Agreement (which the Insureds represent hereby they will provide to D&O Carrier promptly after receiving a fully executed copy of the Settlement Agreement);

(iii) D&O Carrier's receipt of a copy of the Approval Order (which the Insureds represent hereby they will promptly provide to D&O Carrier after receiving it from the Liquidating Trustee);

(iv) The expiration of fifteen (15) calendar days after the date of entry of the Approval Order without any appeal having been filed therefrom, affirmance of the Approval Order on appeal, or dismissal of all appeals from the Approval Order, whichever occurs first; and,

(v) D&O Carrier's receipt of a completed W-9 form for the payee of the Settlement Payment and all necessary payment instructions (which the Insureds represent hereby that they will provide to D&O Carrier promptly after the Liquidating Trustee provides it to them), which document and payment instructions will need to be provided to D&O Carrier within five (5) business days prior to the deadline to send the Settlement Payment.

4. **Releases**

a. **The Liquidating Trustee's Release of the Insured Parties.** Except for the rights and obligations created or preserved by the Settlement Agreement, and contingent upon full and timely performance by the Insureds of their obligations hereunder, as well as the entry of the Approval Order described herein, Liquidating Trustee, on behalf of the Trust and the Estate, fully and forever generally releases, acquits and discharges the Insureds, Monica Hushen, Tim Wong, all other "Directors and Officers"

3

as defined under the D&O Policy, Roy Petruschka[1], and their respective past, present, and future agents, representatives, attorneys, successors, heirs, executors, administrators, principals, assigns and insurers, including but not limited to D&O Carrier (collectively, the "Insured Parties") from any and all claims, demands, rights, rights to fees of all kinds, causes of action, damages, losses, attorneys' fees and expenses, and costs of every kind and nature whatsoever, known or unknown, fixed or contingent, which the Estate and Trust ever had or now have against the Insured Parties, without limitation, but expressly including (i) the D&O Claims, (ii) D&O claims the Liquidating Trustee alluded to at the mediation against Monica Hushen and Tim Wong and (iii) preference claims against the Insureds, Monica Hushen, Tim Wong and all other individuals who are covered under the D&O Policy, and Roy Petruschka. The Liquidating Trustee expressly agrees that each and every person and entity identified above within the scope of the definition of "Insured Parties," who is not a signatory to the Settlement Agreement, is nonetheless, a third party beneficiary of this Release.

b.    **The Insureds' Release of the Trustee.**  Except for the rights and obligations created or preserved by the Settlement Agreement, and contingent upon the entry of an Approval Order as described herein, the Insureds fully and forever generally release, acquit and discharge the Liquidating Trustee, the Debtors and the Estate, together with any and all of the Liquidating Trustee's and/or the Estate's past and present affiliates, parents, subsidiaries, predecessors, successors, employees, agents, partners, officers, directors, shareholders, members, insurers, attorneys, assigns, servants, heirs, executors, administrators and representatives (the "Estate Released Parties"), from any and all claims, demands, rights, rights to fees of all kinds, causes of action, damages, losses, attorneys' fees and expenses, and costs of every kind and nature whatsoever, known or unknown, fixed or contingent, which the Insureds ever had or now have against the Estate Released Parties, without limitation including any rights or interest in any distribution that may be made by the Trust in connection with the Debtors' bankruptcy cases.

5.    <u>**Waiver of California Civil Code § 1542.**</u>  The Parties acknowledge that they have read, considered and understand the provisions and significance of Section 1542 of the California Civil Code which presently provides as follows:

"**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**"

---

[1] The D&O Claims identify Roy Petruschka as a former HF and/or HFT officer and director, with the corresponding fiduciary duties alleged in the D&O Claims. The Parties are informed and believe that Mr. Petruschka denies ever serving as an officer or director of HF and/or HFT, and for purposes of the Settlement Agreement, the Parties do not dispute his denial. Therefore, the Parties specifically agree that the Liquidating Trustee's Release of the Insured Parties is special, as pertaining to Mr. Petruschka, in two important respects: (1) it is granted to him even though he denies ever serving as an officer, director or executive of HF and/or HFT and (2) it is voidable by the Liquidating Trustee in the event Mr. Petruschka makes a claim against the Estate or the Trust.

4

The Parties expressly waive any and all rights they have or may have under Civil Code § 1542, as now worded or hereafter amended, with respect to the releases set forth in Section 4 above. In connection with this waiver, the Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to the claims, matters and causes of action released by the Settlement Agreement. Nevertheless, the Parties intend by the Settlement Agreement to release fully, finally and forever all matters released herein. In furtherance of such intention, the releases as set forth in the Settlement Agreement shall be and remain in effect as full and complete releases of such matters released herein notwithstanding the discovery or existence of any additional or different claims or facts relevant thereto. It is expressly understood and agreed that this waiver of Civil Code § 1542 and the releases set forth herein are material terms of the Settlement Agreement, and were negotiated between and among the Parties.

6.     **Tolling of Statutes of Limitations and Time Based Defenses.** The Parties stipulate and agree that all statutes of limitations, statutes of repose, all other time limitations or constraints, and defenses based upon the passage of time that have not expired before the date of the Settlement Agreement (pursuant to applicable law and/or prior tolling agreements executed by the Parties) including, without limitation, laches, waiver, estoppel, and the two year extension of all applicable statutes of limitations under 11 U.S.C. §§ 108(a) and 546(a), applicable to any and all claims against or relating to the Insureds, including, but not limited to the D&O Claims, are and shall be tolled from the date of the Settlement Agreement through and including the sixtieth (60th) day after the Approval Order becomes final (the "Tolling Period"), unless the Tolling Period is further extended in writing by the Parties hereto to be affected. Notwithstanding anything herein to the contrary, this provision shall survive and remain in effect and binding on the Parties hereto, even in the event that the Settlement Agreement is not approved by the Bankruptcy Court.

7.     **Representations and Warranties.** The Parties hereby represent and warrant to one another the following:

a.     each natural person signing the Settlement Agreement on behalf of any person or entity, represents and warrants that he or she has the authority to bind such person or entity to the Settlement Agreement;

b.     that they have had the benefit and advice of counsel in connection with the settlement embodied in the Settlement Agreement;

c.     that the Settlement Agreement is executed without reliance on any statement, representation, promise, inducement, understanding, or agreement by or on behalf of any other party hereto or by or on behalf of any representative or agent employed by any of them, other than the matters expressly set forth herein;

d.     that no promise, inducement, understanding or agreement not expressed herein has been made to or with any party, and the Settlement Agreement contains the entire written agreement between the Parties;

e.     that the Settlement Agreement is the product of the efforts of the Parties and, as a result, it will not be construed, and no presumption will arise, based upon who drafted this Settlement Agreement;

5

f.    that no claim or obligation referred to or released in this Settlement Agreement has been assigned, transferred, hypothecated, pledged, mortgaged, or set over in any manner whatsoever, in whole or in part, to any third person, and each party to the Settlement Agreement has the sole and exclusive right to release all of the claims and obligations described and released in the Settlement Agreement;

g.    that, to the extent applicable, each of the Parties has all corporate power and authority to perform its/his/her obligations hereunder and to consummate the terms of the Settlement Agreement; and

h.    that the various headings in the Settlement Agreement are inserted for convenience only and shall not affect the Settlement Agreement or any provisions hereof.

8.    **No Admission of Liability.**  The Settlement Agreement effects the settlement of claims which are contested, and nothing contained herein shall be construed as an admission by any of the Parties of any liability of any kind to any of the other Parties or to any other person or entity.

9.    **Confidentiality**:  The Settlement Agreement is confidential between the Parties and shall not be disclosed or discussed with anyone else except as shall be necessary to seek the Approval Order, or pursuant to obligations imposed upon the Parties as a result of subpoena, court order, or other applicable law, and except to allow the Insureds to share the Settlement Agreement with the D&O Carrier. If any of the Parties is asked about the resolution of any claims in the Bankruptcy Court, they are permitted to provide the questioner with a copy of the Settlement Agreement (which is "public" in the sense that it must be filed to obtain the Approval Order), and the Parties who are questioned about it are permitted to point out to the questioner there was no admission of liability and the claims were contested per the preceding paragraph 8.

10.    **Settlement Agreement Binds and Inures.**  The Settlement Agreement shall bind and inure to the benefit of the respective successors and assigns of the Parties.

11.    **Governing Law.**  The Settlement Agreement is executed and delivered within the County of Los Angeles, State of California. The Settlement Agreement shall be governed by and interpreted under the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and, where appropriate, the laws of the State of California.

12.    **Jurisdiction.**  The Bankruptcy Court shall retain exclusive jurisdiction (subject only to the right of appeal) to resolve any and all disputes pertaining to the Settlement Agreement, including the enforcement of any of its terms.

13.    **Attorneys' Fees.**  In any legal action or proceeding to enforce the terms of the Settlement Agreement, the prevailing party shall be entitled to recover its reasonable costs, expenses and attorneys' fees.

14.    **Waiver, Novation, Modification and Amendment.**  The terms of the Settlement Agreement may be waived, novated, modified or amended only by a writing signed by all Parties.

6

15. **No Personal Liability to Liquidating Trustee.** The Liquidating Trustee undertakes no obligations or responsibility for the Settlement Agreement other than in his capacity as the Trustee of the Trust. No personal liability of any kind may attach to the Liquidating Trustee individually or to any professional employed by him on account of the Settlement Agreement or the actions and non-actions which lead to the Settlement Agreement or result from it.

16. **No Modification of Prior Written Agreement Between the Estate and Barber.** Nothing in the Settlement Agreement modifies the written releases and the relative rights, privileges, duties and obligations set forth in that certain written agreement Barber already executed with the Estate, which was filed with the Bankruptcy Court on December 5, 2014, and which was approved by order of the Bankruptcy Court on December 23, 2014, Docket No. 260; provided, however, that the exception within that prior agreement pertaining to the Liquidating Trustee's right to pursue claims against Barber to the extent there is insurance coverage to pay such claims is expressly superseded by the release of the D&O Carrier in Paragraph 4(a) of this Settlement Agreement.

17. **Best Efforts and Cooperation.** The Parties shall cooperate and exercise their best efforts to implement the terms of the Settlement Agreement, to obtain approval of the Settlement Agreement by the Bankruptcy Court, and to reasonably avoid the occurrence of events that would lead to termination of the Settlement Agreement.

18. **Termination of the Settlement.** In the event the Bankruptcy Court does not approve the Settlement Agreement, then the Settlement Agreement shall be deemed to be null and void, no Party shall have any obligation to any other Party arising out of the Settlement Agreement, no statement made herein may be used by or against any Party or any non-Party for any purpose, and the Parties will be returned to the positions they were in prior to the execution date of the Settlement Agreement. Notwithstanding the foregoing, paragraphs 6 and 9 shall survive termination of the Settlement Agreement.

19. **Settlement Agreement Supported by Consideration; No Duress.** The Parties agree, covenant, represent, and warrant that the Agreement is supported by Consideration and that the Settlement Agreement is being entered into knowingly, voluntarily, without mental reservation, with no purpose of evasion, and with the intent to be legally bound hereby, without coercion of any kind, in part to remove the uncertainty and expenses of additional negotiations and further or possible future litigation and with an adequate opportunity for the actual benefit of the assistance and advice of legal counsel.

20. **Acknowledgment of Legal Advice.** The Parties acknowledge and agree that they enter into the Settlement Agreement after consultation with their attorneys, that their attorneys have explained the terms of the Settlement Agreement, and that they fully understand and voluntarily accept the terms of the Settlement Agreement.

21. **Entire Agreement.** The Settlement Agreement represents the entire agreement between the Parties and supersedes all prior agreements and discussions. There are no warranties, representations, agreements, promises or terms other than set forth herein.

///

7

22.    **Execution in Counterparts.**  The Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signatures transmitted by facsimile or e-mail may be used and shall be binding on all Parties.

**WHEREFORE** the Parties have executed the Settlement Agreement as of November 10, 2016.

The Hashfast Creditor Trust

By: _____

Michael G. Kasolas, Liquidating
Trustee

_____
Edward L. Rodriguez deCastro

_____
Simon Barber

8

22.    **Execution in Counterparts.**  The Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signatures transmitted by facsimile or e-mail may be used and shall be binding on all Parties.

   **WHEREFORE** the Parties have executed the Settlement Agreement as of November 10, 2016.

The Hashfast Creditor Trust

By:_____
     Michael G. Kasolas, Liquidating
     Trustee

_____
Edward L. Rodriguez deCastro

_____
Simon Barber

8

22.   **Execution in Counterparts.**   The Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signatures transmitted by facsimile or e-mail may be used and shall be binding on all Parties.

   **WHEREFORE** the Parties have executed the Settlement Agreement as of November 10, 2016.

The Hashfast Creditor Trust


By:_____
   Michael G. Kasolas, Liquidating
   Trustee


_____
Edward L. Rodriguez deCastro


_____   Jan 6th 2017
Simon Barber

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY WITH CERTAIN FORMER DIRECTORS AND OFFICERS OF THE DEBTORS** will be served or was served (a) on the judge in chambers; and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: The foregoing document will be served by the court via NEF and hyperlink to the document. On January 6, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On January 6, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Presiding Judge</u>
Judge Dennis Montali
Mail Box 36099
San Francisco, CA 94102

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): On January 6, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Via Email:</u>

| Recipient Name | Email |
|---|---|
| Graham Adams | gadams@takelap.com |
| Servaas Tilkin | servaas.tilkin@gmail.com |
| Ray E. Gallo | rgallo@gallo-law.com |
| Process General c/o Victor Delaglio | NEF@Processgeneral.com |
| William R. Gougér | bill.gouger@summitcapitalllc.com |
| Craig Beech | craigbeech@gmail.com |
| Michael Gao | Urazexo378@gmail.com |
| Scott Gray | elphenom@yahoo.com |
| Wy Gost | wygost@yahoo.com |
| Paul Montague | paul_montague99@hotmail.com |
| Allan Vela | allan@velcorp.com.au |
| Eduardo DeCastro | eduardo.decastro@gmail.com |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 6, 2017 | Sonia Gaeta | /s/ Sonia Gaeta |
|---|---|---|
| Date | Printed Name | Signature |

MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY
610140008.4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   **1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

Venkat Balasubramani     venkat@focallaw.com, pete.morici@alumni.purdue.edu
Thomas R. Burns     tom@tburnslaw.com
Greg P. Campbell     ecfcanb@aldridgepite.com, gc@ecf.inforuptcy.com
Patrick Chesney     pchesney@gallo-law.com, mvananda@gallo-law.com
Michael Delaney     mdelaney@bakerlaw.com, SGaeta@bakerlaw.com
Michele M. Desoer     mdesoer@zuberlaw.com, dellis@zuberlaw.com
Caroline R. Djang     cdjang@rutan.com
Fahim Farivar     ffarivar@bakerlaw.com, sgaeta@bakerlaw.com
W. Keith Fendrick     keith.fendrick@hklaw.com, Andrea.Olson@hklaw.com
Beth E. Gaschen     bgaschen@wgllp.com
Elizabeth A. Green     egreen@bakerlaw.com, jdriggers@bakerlaw.com
Robert G. Harris     rob@bindermalter.com
Geoffrey A. Heaton     gheaton@duanemorris.com
Reginald R. Hindley     hindleylaw@gmail.com
David Holtzman     david.holtzman@hklaw.com
Michael G. Kasolas     trustee@kasolas.net, CA30@ecfcbis.com
Ori Katz     okatz@sheppardmullin.com, smccabe@sheppardmullin.com
Lynette C. Kelly     lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
Barbara A. Matthews     barbara.a.matthews@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
Ashley McDow     amcdow@bakerlaw.com, SGaeta@bakerlaw.com
Jessica M. Mickelsen     jessica.mickelsen@kattenlaw.com
Office of the U.S. Trustee / SF     USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
Aron M. Oliner     roliner@duanemorris.com
Tyler Olson     tolson@rehonroberts.com
Douglas R. Pahl     dpahl@perkinscoie.com, etherrien@perkinscoie.com
David M. Poitras     dpoitras@jmbm.com
Gregory A. Rougeau     grougeau@brlawsf.com
Dominique Sopko     dsopko@diemerwhitman.com, ecfnotice@diemerwhitman.com
Craig Stuppi     craig@stuppilaw.com
Sarah M. Stuppi     sarah@stuppilaw.com
Christopher D. Sullivan     csullivan@diamondmccarthy.com, morourke@diamondmccarthy.com
Donna S. Tamanaha     Donna.S.Tamanaha@usdoj.gov
Nancy Weng     nweng@trinhlawfirm.com, monique@trinhlawfirm.com

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

## 2. **SERVED BY UNITED STATES MAIL**:

| | | |
|---|---|---|
| Simon Barber<br>9 Ignacio Ave.<br>San Francisco, CA 94124-3725 | Simon Barber<br>97 S. Second St., #175<br>San Jose, CA 95113 | Monica Hushen<br>62 Esparito Place<br>Fremont, CA 94539 |
| Tim Wong<br>195 Tenby Terrace<br>Danville, CA 94506 | Roy Petrushka<br>17 Tamar Street<br>Kiriat Tivo'n, Israel | Roy Petrushka<br>Hadekel Street 1,<br>Kiriat Tivo'n, Israel |
| Roy Petruschka<br>c/o David Bayles<br>Arent Fox LLP<br>555 W. Fifth St., 48th Fl.<br>Los Angeles, CA 90013 | Scottsdale Insurance Company<br>c/o Joseph M. Lipps<br>Bailey Cavalieri LLC<br>One Columbus<br>10 W. Broad St., Ste. 2100<br>Columbus, OH 43215 | |
| Scottsdale Insurance Company<br>Attention: Claims Manager<br>7 World Trade Center, 37th Floor<br>250 Greenwich Street<br>New York, NY 10007 | Scottsdale Insurance Company<br>8877 North Gainey Center Drive<br>Scottsdale, Arizona 85258 | |

## PARTIES REQUESTING SPECIAL NOTICE

| | | |
|---|---|---|
| Craig A. Barbarosh<br>Katten Muchin Rosenman LLP<br>100 Spectrum Center Dr, Ste 1050<br>Irvine CA 92618-4977 | Eric W. Benisek<br>Vasquez Benisek and Lindgren LLP<br>3685 Mt. Diablo Blvd., Suite 300<br>Lafayette, CA 94549 | Oleksandr V. Buzko<br>5824 Oak Bend Lane #101<br>Oak Park, CA 91377-5662 |
| Avram S. Cheaney<br>1305 Laguna Street, #4<br>San Francisco, CA 94115 | Luke Dashjr<br>17318 Sweetwater Rd.<br>Dade City, FL 33523 | Paul M. Dolak<br>P.O. Box 590276<br>San Francisco, CA 94159 |
| Duane Morris,LLP<br>One Market Plaza<br>Spear Street Tower, Suite 2200<br>San Francisco, CA 94105-1127 | Mohammad Zahid Faruqi<br>Ruthnergasse 42/Tuer 9<br>1210-Wien, Austria | ~~Ray E. Gallo~~<br>~~Gallo LLP~~<br>~~1299 Fourth St., Suite 505~~<br>~~San Rafael, CA 94901~~<br>(prefers email - rgallo@gallo-law.com) |
| Edward Hammond<br>3103 Powell Cir.<br>Austin, TX 78704 | John E. Hlavaty<br>35 Swanson Court, #16D<br>Boxborough, MA 01719 | Brian E. Klein<br>Baker Marquart, LLP<br>2029 Century Park East, 16th Floor<br>Los Angeles, CA 90067 |
| Timothy Lam<br>6156 Temple City Blvd.<br>Temple City, CA 91780 | Kang Lu<br>5753 Hwy 85 North #2442<br>Crestview, FL 32536 | Ainsley G. Moloney<br>Morgan Lewis & Bockius LLP<br>1 Federal St.<br>Boston, MA 02110 |
| Grant Pederson<br>12538 Botanical Ln.<br>Frisco, TX 75035 | ~~Process General~~<br>~~5915 Edmond St. #102~~<br>~~Las Vegas, NV 89118-2860~~<br>(Returned 11/28/16) | James J. Ries<br>450 Sunlight Ct., #2<br>Powell, WY 82435 |
| Peter A. Siddiqui | Strategic Counsel Corp | 100 Bush Corporation |

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

| | | |
|---|---|---|
| 1 | Katten Muchin Rosenman LLP<br>525 W. Monroe St.<br>Chicago, IL 60661-3693 | c/o Adam T. Ettinger<br>Sheppard Mullin Richter & Hampton<br>LLP<br>1901 Ave of the Stars, #1600<br>Los Angeles, CA 90067-6017 | 100 Bush Street, Suite 218<br>San Francisco, CA 94104 |
| 4 | San Francisco Court Appointed Special<br>Advocates<br>2535 Mission Street<br>San Francisco, CA 94110 | AQS<br>401 Kato Terrace<br>Fremont, CA 94539 | Robert G. Harris<br>Binder & Malter LLP<br>2775 Park Avenue<br>Santa Clara, CA 95050 |
| 7 | Dylan Hall<br>79 Madison Ave, 2nd fl<br>New York, NY 10016 | | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 14-30725    Doc# 515    Filed: 01/06/17    Entered: 01/06/17 16:26:37    Page 30 of 30
610140008.4