KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Pre-Effective Date Counsel for Debtor and Debtor-In-Possession
HashFast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | Jointly Administered and Substantively Consolidated with: |
| Debtor and Debtor-In-Possession | Case No. 14-30866 |
| _____ | Chapter 11 |
| ☒ Affects HASHFAST LLC, a Delaware limited liability company, | Hearing Date: February 10, 2017 Time: 9:30 am Ctrm: Hon. Dennis Montali |
| Debtor and Debtor-In-Possession | 235 Pine Street, Courtroom 22 San Francisco, CA 94104 |
| | **FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION (KATTEN MUCHIN ROSENMAN LLP)** |

**TO THE HONORABLE DENNIS MONTALI AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

This is the Final Application (the "Application") for allowance of compensation and reimbursement of expenses of Katten Muchin Rosenman LLP (the "Firm" or "Applicant"),

counsel for HashFast Technologies LLC and HashFast LLC (collectively, "HashFast" or the "Debtors") in the above-captioned case. The Firm seeks approval of compensation for professional legal services rendered and reimbursement of expenses incurred as counsel for the Debtors for the time period of June 6, 2014, through July 31, 2015 (the "Application Period"). The Application requests Court approval of compensation for professional legal services rendered and expenses incurred by the Firm as counsel to the Debtors during the Application Period totaling $496,496.69. This amount consists of professional fees of $456,415.50 and reimbursement of expenses of $40,081.19 incurred during the Application Period.

The Debtors provided the Firm with a retainer of $130,000 ("Retainer"), paid as follows: $40,000 on May 5, 2014; $35,000 on May 8, 2014; $5,000 on May 22, 2014; and $50,000 on May 28, 2014. As of June 2, 2014, the Firm had drawn down the sum of $100,000 to cover all fees and expenses incurred on behalf of the Debtors prior to the filing of the entry of the order for relief. On or around February 3, 2015, the Firm applied the remaining $30,000 of the Retainer to certain of its post-petition fees, which was authorized pursuant to this Court's Order on Amended First Interim application for Compensation and Reimbursement of Expenses of Counsel to the Debtor and Debtor-in-Possess (Katten Muchin Rosenman LLP) [Doc. No. 298].

Applicant's request for relief is based on the Application and separately filed Exhibits thereto, the notice (the "Notice") of the hearing on the Application, and the Declaration of Peter A. Siddiqui filed in support of the Application.

The Application is made pursuant to the provisions of 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016. The Application conforms to the United States Trustee's Guidelines (the "Trustee's Guidelines") for the compensation of professional persons.

In support of the Application, Applicant respectfully represents as follows:

### I. STATEMENT OF THE CASE

On May 9, 2014, certain petitioning creditors filed a chapter 7 involuntary petition against Hashfast Technologies LLC [Doc No. 1]. On June 3, 2014, HashFast Technologies LLC consented to the petition and filed a motion to convert the case from chapter 7 to chapter 11 (the

"Motion to Convert") [Doc Nos. 35, 36]. The Court granted the Motion to Convert on June 5, 2014 [Doc No. 40]. On June 6, 2014, HashFast LLC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors filed a motion to jointly administer the chapter 11 case of HashFast LLC with the case of its wholly-owned subsidiary HashFast Technologies LLC (collectively, these "Chapter 11 Cases"). On or about July 23, 2014, the Committee filed its motion to substantively consolidated the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 105(a) (the "Substantive Consolidation Motion"). This Court granted the Substantive Consolidation Motion on September 28, 2014 [Doc. No. 202]. On June 25, 2015, this Court entered its Order Approving on a Final Basis and Confirming the Consolidated Plan of Liquidation and Disclosure Statement for HashFast Technologies, LLC, and HashFast, LLC, Dated June 4, 2015 [Doc. No. 387].

## II. GENERAL BACKGROUND OF THE FIRM'S SERVICES

On June 6, 2014, the Firm filed its *Application for Order Under 28 U.S.C. § 327(a) Authorizing Retention of Katten Muchin Rosenman LLP* [Doc. No. 45] requesting that it be appointed counsel to the Debtors effective as of the Petition Date. The *Order Authorizing Debtors to Retain and Employ Katten Muchin Rosenman LLP as Counsel* was entered on the docket on July 9, 2014 [Doc. No. 120]. A true and correct copy of that order is attached hereto as **Exhibit A**.

By this Application, the Firm seeks approval of compensation for professional legal services rendered and reimbursement of expenses incurred as counsel for the Debtors for the Application Period. The Application requests Court approval of compensation for professional legal services rendered and expenses incurred by Applicant as counsel to the Debtors during the Application Period totaling $496,496.69. This amount consists of professional fees of $456,415.50 and reimbursement of expenses of $40,081.19 incurred during the Application Period.

## III. PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

In accordance with the Northern District Guidelines and the Local Rules, the Firm classified all services performed for which compensation is sought into categories. The Firm attempted to place the services performed in the category that best relates to the services provided. However, because certain services in these Chapter 11 Cases affected multiple categories, services pertaining to one category may occasionally be included in another category. The Firm established the following billing categories:

- First Day Motions
- Asset Sales/Bidding Procedures
- Litigation/Adversary Proceedings
- Claims Analysis and Objections
- Executory Contracts and Leases
- Case Administration
- Professional Retention and Compensation
- Plan and Disclosure Statement
- Employee Matters
- Tax Matters
- Non-Working Travel
- Hearings and Court Matters
- Schedules/Statement of Financial Affairs
- Automatic Stay Matters
- Insurance Matters

Attached as **Exhibit B** hereto are true and correct copies of the Firm's invoices for the Application Period, which include a detailed breakdown of the time entries and expenses incurred.

Those invoices set forth the time and expense records as kept in the ordinary course of business, and contains the name of each attorney performing services, a description of the services, and the amount of time incurred for the services. The time entries are in chronological order by billing category.

## IV. SUMMARY OF PROFESSIONAL SERVICES RENDERED

The Firm spent 774.9 hours in performing the services described in the Application, at an average hourly billing rate of $592.87. The billing rates charged by the Firm's professionals in this case are the Firm's standard billing rates in effect at the applicable times billed. A summary of the hours spent by individual attorneys during the Application Period, along with each individual's hourly rate, is as follows:

| Name of Professional | Position | Date of Bar Admission | Hourly Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| Craig A. Barbarosh | Partner | CA 1992 | $810 | 19.2 | $15,552 |
| Peter A. Siddiqui | Partner | IL 2002 | $630-675[1] | 433.8 | $276,799 |
| Karin H. Berg | Partners | IL 2003 | $615 | 1.1 | $676.50 |
| Jessica M. Mickelsen | Associate | CA 2011 | $575-615[2] | 188.8 | $110,096 |
| Paul T. Musser | Associate | IL 2011 | $460 | 90 | $41,400 |
| Victoria A. Jepson | Associate | IL 2014 | $330 | 25.6 | $8,448 |
| Vickie Hayden Lee | Paralegal | -- | $210 | 16.4 | $3,444 |
| **Total** | | | | | **$456,415.50** |

## V. SUMMARY BY BILLING Category

A. **Use Of Project Categories**

The Firm performed services in the following categories:

---

[1] Peter Siddiqui's billing rate increased twice during the Application Period. At the outset, his rate was $630. In January 2015, his rate increased to $650. In April 2015, his rate increased to $675. At all times, the rates charged the Debtors were the same charged to all other Katten clients.

[2] Jessica Mickelsen's billing rate increased during the Application Period. At the outset, her rate was $575. In January 2015, her rate increased to $615. At all times, the rates charged the Debtors were the same charged to all other Katten clients.

| Project Category | Hours | Total: |
|---|---|---|
| First Day Motions | 17.8 | $10,430.50 |
| Asset Sales/Bidding Procedures | 179.8 | $109,040 |
| Litigation / Adversary Proceedings | 170.3 | $105,004.50 |
| Claims Analysis and Objections | 5.0 | $3,133.50 |
| Executory Contracts and Leases | 28.7 | $18,082.50 |
| Case Administration | 152.7 | $84,388.50 |
| Professional Retention and Compensation | 47.4 | $21,604.50 |
| Plan and Disclosure Statement | 40.9 | $27,253.00 |
| Employee Matters | 8.9 | $5,787.00 |
| Non-Working Travel | 16.0 | 10,080.00 |
| Hearings and Court Matters | 35.8 | $21,990.50 |
| Schedules / Statements of Financial Affairs | 71.4 | $38,865.00 |
| Automatic Stay Matters | .2 | $126.00 |
| Insurance Matters | 1.0 | $630.00 |
| Total | | **$456,415.50** |

1. **First Day Motions**

The Firm filed and prosecuted various first day motions during the Application Period, including motions for joint administration and to retain its cash management system, as well as address various matters arising out of the order for relief. This category included negotiating objections and comments received by the Committee and the United States Trustee, especially as it relates to the Debtors' Bitcoin account management.

The Firm spent a total of 17.80 hours and incurred fees totaling $10,430.50 during the Application Period on this category.

2. **Asset Sales/Bidding Procedures**

The Firm negotiated, drafted pleadings, and, in certain instances, orchestrated the closing of the sale of the Debtors' inventory, including the drafting and negotiation of documents related thereto. This category encompasses two primary categories of tasks. First, the Firm spent considerable time developing and implementing a strategy of ordinary course sales. Ordinary course sales constitute the Debtors' inventory sales to its existing customer base. The Firm

advised the Debtors in connection with the form and terms of such sales, prosecuted motions for authority to undertake ordinary course sales, and negotiated agreed orders with the Untied States Trustee, Committee, and the Debtors' other creditor constituencies.

The second category of tasks involved representing the Debtors in their efforts to sell substantially all of their assets outside the ordinary course. The Firm represented the Debtors in their efforts to market and sell their assets, including related negotiations and documentation of definitive documents. The first such effort resulted in a motion to approve the sale of substantially all of the Debtors' assets to Liquidbits Corporation. The Firm prosecuted a motion to sell and negotiated several transaction documents. After that sale effort was not consummated, the Firm represented the Debtors in their effort to find alternative buyers, structuring alternative acquisition structures and negotiations with potential purchasers. The Firm worked closely with the Committee and the Debtors' new management to orchestrate and effectuate asset auctions, sales, and closings. In the end, substantially all of the Debtors' assets were sold pursuant to Court-approved transactions that were jointly supported by the Debtors and the Committee. The Firm expended 178.8 hours and fees of $109,040.00 in this category.

### 3. Litigation/Adversary Proceedings

The Firm spent time in this category responding to the Committee's 2004 examination subpoenas, including the coordination and gathering of documents for production, and the review of the documents for privilege and responsiveness. The Firm also commenced adversary proceedings seeking turnover of critical inventory that the Debtors eventually sold and to recover fraudulent transfers made to a marketing professional the Debtors engaged prepetition. Those adversary proceedings resulted in the prompt turnover of inventory that enabled the Debtors' sale efforts to be consummated. The adversary proceeding against the marketing professional ultimately resulted in a substantial recovery for the estate. In addition, the Firm spent time responding to the United States Trustee's efforts to convert or dismiss these Chapter 11 Cases and to appoint a chapter 11 trustee. The Firm also prepared other litigation against vendors holding inventory and customers failing to pay agreed-upon purchase prices. While certain adversary

proceedings were not filed, the threat of bringing those claims directly resulted in the capitulation of those vendors.

The Firm spent 170.30 hours and incurred $105,004.50 in fees during the Application Period on this category.

**4.  Claims Analysis and Objections**

The Firm reviewed and examined claims filed against the Debtors and evaluated what, if any, objections would be appropriate. In particular, the Firm investigated what effect of Bitcoin prices might have on proof of claim amounts.

The Firm spent a total of 5.0 hours and incurred fees totaling $3,133.50 during the Application Period on this category.

**5.  Executory Contracts and Leases**

The Firm addressed issues related to the assumption and assignment of executory contracts and the cure amounts and notices associated therewith and the resolution of cure amounts with creditors. In addition, the Firm addressed issues arising from executory contracts and leases raised by counterparties thereto, including the termination of the Debtors' office lease, and fees, claims, and charges attempted to be assessed in connection with significant vendor leases. Most significantly among the vendor leases, the Firm represented the Debtors in their negotiations with their supply chain service providers in connection with potential assumption or rejection of such leases, as well as efforts to compel performance by such contract counterparties.

The Firm spent a total of 28.70 hours and incurred fees of $18,082.50 during the Application Period on this category.

**6.  Case Administration**

The Firm's time in this category relates to two sub-categories: (i) representing the Debtors in connection with their interactions with the United States Trustee and then with the Committee and its counsel, including responding to document and information inquires, and (ii) attending meetings with the Debtors' management and the Committee in order to effectuate a collaborate and mutually acceptable strategy to the resolution of these Chapter 11 Cases.

Regarding the United States Trustee, the Applicant prepared for and participated in the Debtors' lengthy, multi-day 341 meeting, as well as addressed subsequent information requests, document requests, and interviews in connection therewith. The United States Trustee conducted a lengthy initial debtor interview, which required detailed document production and multiple conferences and meetings with the United States Trustee's analysts and additional follow-up document requests and inquiries. The Firm assisted the Debtors in their preparation and filing of monthly operating reports and other information requests from the United States Trustee.

Regarding the Committee, the Applicant represented the Debtors in connection with three depositions and a comprehensive document production request. There was significant time devoted to responding those requests, including gathering and reviewing documents, and preparing witnesses for their examinations. Thereafter, the Debtors and the Committee worked collaboratively and with a mutual goal of finding a mutually acceptable resolution to these Chapter 11 Cases. The Debtors and Committee had in person and telephonic meetings to strategize and resolve differences in order to maximize the value of these Chapter 11 Cases.

The Firm expended 152.70 hours and incurred $84,388.50 in fees during the Application Period on this category.

### 7. Professional Retention and Compensation Matters

The Firm's prepared applications to retain professionals, including the Debtors' counsel and chief restructuring officer, as well as reviewed documents related to the Committee's retention of professionals. In addition, the Firm filed and prosecuted an interim fee application, as well as reviewed and responded to inquiries in connection with other fee applications filed during the Chapter 11 Cases.

The Firm spent a total of 47.40 hours and incurred fees totaling $21,604.50 during the Application Period on this category.

### 8. Plan and Disclosure Statement

The Applicant addressed issues related to and drafted a plan term sheet and disclosure statement, while negotiating the same with the Committee. The Firm also assisted and supported

the Committee in the prosecution and confirmation of the Plan, including document production, witness preparation, and strategy discussions.

The Firm spent 40.90 hours and incurred fees of $27,253.00 during the Application Period on this category.

### 9. Employee Matters

The Firm addressed issues regarding the Debtors' employees, including resignation issues, compensation issues, indemnification issues, and California labor law issues. The Applicant will continue to address any post-sale employee matters in the month of May 2015.

The Firm spent 8.90 hours and incurred $5,787.00 in fees during the Application Period on this category.

### 10. Non-Working Travel

The Firm traveled to many hearings and meetings during the Application Period.

The Firm spent 16.00 hours and incurred fees of $10,080.00 during the Application Period on this category.

### 11. Hearings and Court Matters

The Firm attended numerous hearings, including the first day hearing, hearings on the Debtors' motion to sell assets in the ordinary course, and on the United States Trustee's motion to appoint a trustee.

The Firm spent a total of 35.80 hours and incurred fees totaling $21,990.50 during the Application Period on this category.

### 12. Schedules/Statement of Financial Affairs

The Firm spent significant time assisting the Debtors in compiling information and completing the Debtors' schedules of assets and liabilities and statements of financial affairs.

The Firm spent a total of 71.40 hours and incurred fees totaling $38,865.00 during the Application Period on this category.

### 13. Automatic Stay Matters

The Firm filed certain notices of bankruptcy and suggestions of stay in connection with prepetition litigation pending against the Debtors.

The Firm spent a total of .20 hours and incurred fees totaling $126.00 during the Application Period on this category.

**14. Insurance Matters**

The Firm addressed certain issues related to insurance coverage for the Debtors' assets, as well as reviewed E&O insurance policies in effect.

The Firm spent a total of 1.00 hour and incurred fees of $630.00 during the Application Period on this category.

B. **Summary of Expenses**

The Firm seeks expense reimbursement for costs totaling $40,081.19. A summary of expenses advanced is set forth below. At the request of the United States Trustee, the Firm will not charge the Debtors for Employee Overtime.

| **Expense** | **Total:** |
|---|---|
| Local Courier | $5,740.05 |
| Postage | $5,243.14 |
| Employee Overtime | $400.00 (*will be written off*) |
| Airfare (lowest available coach fares) | $9,131.12 |
| Court Costs (filing fees for various petitions and pleadings) | $4,701.10 |
| Out of Town Travel | $4,322.08 |
| Legal Research (at actual cost) | $507.72 |
| Telephone Charges | $63.60 |
| Court Reporter Fees | $1,612.85 |
| Service Fees | $139.00 |

| | |
|---|---|
| Photocopy Costs ($0.10/page) | $8,506.00 |
| Document Imaging - Outside Service (at actual cost) | $114.53 |
| **Net Total (after deducting employee overtime)** | **$40,081.19** |

## VII.  COMPLIANCE WITH GUIDELINES

The Firm has prepared the Application in compliance with all applicable guidelines.  The Firm has not entered into any agreement, written or oral, express or implied, with any other party-in-interest or any attorney for any party-in-interest in the cases for the purpose of fixing the amount of any fee or compensation to be paid from the assets of the Debtor's estate.

The Firm has read the Application.  To the best of the Firm's knowledge, information, and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with these guidelines, except as specifically noted.  The compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the Applicant and generally accepted by the Firm's clients.  This Application along with a cover letter is being sent to the Debtors concurrently.  The cover letter invites the Debtor to discuss with the Firm and/or the Office of the United States Trustee any objections, concerns, questions the Debtors may have with regard to the requested compensation and reimbursement set forth in this Application.  A copy of the letter is attached hereto as **Exhibit C**.

Notice of the submission of this Application and the hearing thereon will be provided to the Office of the United States Trustee, the Debtors, all parties requesting special notice and other interested parties in accordance with the Local Bankruptcy Rules. Complete copies of the Application will be promptly furnished to any other party upon specific request.  Therefore, notice should be deemed adequate under the circumstances and in accordance with Federal Bankruptcy Rules 2002(a)(6) and 2002(c)(2).

# VII. THE FEES AND EXPENSES SHOULD BE AWARDED BASED ON APPLICABLE LAW

Pursuant to Bankruptcy Code section 330, the Court may award to a professional person reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred. Pursuant to Bankruptcy Code section 331, the Court may award interim compensation and reimbursement to a professional. As set forth above, the fees for which the Firm requests compensation and the costs incurred are for actual and necessary services rendered and costs

In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.)*, 853 F.2d 687, 691 (9th Cir. 1988). In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir. 1977) (Johnson criteria applicable in bankruptcy cases).

The time for which compensation is sought is detailed in the Firm's professional fee statements contained in **Exhibit B** annexed hereto. The Firm's services and time expenditures are reasonable in light of the labor required and outcome achieved in this case. The Firm's charges for its professional services are based upon the time, nature, extent, and value of such services and the cost of comparable services, other than in a case under the Bankruptcy Code. The

compensation the Firm seeks by way of this Application is the customary compensation commonly sought by the Firm and other professionals representing trustees and debtors in similar circumstances.

Bankruptcy Code section 330(a)(3) sets forth five (5) factors to be considered by the Court. 11 U.S.C. § 330 (a)(3). Although several of these factors (such as the time involved, the timeliness of the Firm's performance, and the complexity of the case) were addressed above, the Firm believes two of the five factors should be discussed separately again here. First, Bankruptcy Code section 330(a)(3)(C) requires that the professional services be necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, the case. The Firm believes the facts of this case make it evident that the Firm's services were both necessary and beneficial to the estate. Second, Bankruptcy Code section 330(a)(3)(E) requires the compensation to be reasonable based on customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. The Firm believes its attorneys are skilled and have performed well in this case, and that the fees charged by the Firm are commensurate with the fees charged by the Firm's counterparts engaged in non-bankruptcy specialties of the law.

The Firm understands that the estates has funds available for the payment of fees and costs requested herein.

### VII. CONCLUSION

WHEREFORE, the Firm respectfully requests that the Court enter its order:

(1) Granting approval of aggregate compensation sought in the Application totaling $456,415.50 and aggregate expenses of $40,081.19 during the Application Period by the Firm on behalf of the Debtor;

(2) Directing payment of the forgoing amounts, net of prior payments; and

(2) Granting such other and further relief as the Court may deem just and proper.

Dated: January 13, 2017    KATTEN MUCHIN ROSENMAN LLP

Peter A. Siddiqui
Craig A. Barbarosh

By: /s/ *Peter A. Siddiqui*
Pre-Effective Date Counsel for Debtor and Debtor-In-Possession HashFast Technologies LLC and HashFast LLC